# Exhibit 2

Case: 1:24-cv-05700-JD Document #: 45 Filed: 06/27/24 Page 2 of 35 PageID #:35

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Q.J., a minor, through his parent and legal guardian, J.J., individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | Case No.: 1:23-cv-05689 |
| -vs- | ) | Hon. Jorge L. Alonso |
| POWERSCHOOL HOLDINGS LLC, et al., | ) | |
| Defendants. | ) | |

**DEFENDANTS'[1] MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

[1] PowerSchool Holdings LLC, Hobsons, Inc., Unknown Employees and Officers of PowerSchool Holdings, and Unknown Employees and Officers of Hobsons, Inc.

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................2

A. PowerSchool's Naviance Platform. ........................................................................2

B. PowerSchool's Use of Heap. ..................................................................................3

C. Plaintiff's Allegations. ..........................................................................................6

LEGAL STANDARD...............................................................................................8

ARGUMENT ........................................................................................................9

I. PLAINTIFF LACKS ARTICLE III STANDING. ........................................................9

II. PLAINTIFF FAILS TO ADEQUATELY PLEAD ANY CAUSE OF ACTION. ............12

A. Plaintiff Does Not Plausibly Allege Any Viable Claim Under § 1983. ................13

1. Plaintiff Fails to Plausibly Allege that PowerSchool or the PowerSchool Doe Defendants Were Acting Under Color of State Law. ..............................................................13

2. Plaintiff Does Not Allege Any Deprivation of Rights Under the Fourth Amendment. ..............................................................16

B. Plaintiff's Breach of Contract Claims Fail as a Matter of Law. ...........................18

C. PowerSchool Is Not Subject to Liability Under Either CIPA or the Illinois Eavesdropping Act. ..............................................................................20

D. The SCA Does Not Apply to PowerSchool. ..........................................................21

E. Plaintiff Cannot State a Claim for Unjust Enrichment. ........................................23

F. Plaintiff Cannot Apply the Illinois Eavesdropping Act Nor ISSRA Extraterritorially to PowerSchool. ...........................................................24

CONCLUSION.....................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) ....................................................3, 8

*Ambrosius v. Chi. Athletic Clubs, LLC*,
203 N.E.3d 239 (Ill. App. Ct. 2021) ....................................................23

*Andersen Consulting LLP v. UOP*,
991 F. Supp. 1041 (N.D. Ill. 1998) ....................................................22

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009) ....................................................3, 8

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ....................................................23, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................8, 22

*Avery*, *v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (2005)....................................................24

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023) ....................................................11, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................3, 8, 9

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ....................................................23

*Bissessur v. Ind. Univ. Bd. of Trustees*,
581 F.3d 599 (7th Cir. 2009) ....................................................8

*Black Bear v. Mid-Central Educ. Coop.*,
941 N.W.2d 207 (N.D. 2020) ....................................................18

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
567 F.Supp.3d 667 (D.S.C. 2021)....................................................24

*Camara v. Mun. Ct. of City & Cnty. of San Francisco*,
387 U.S. 523 (1967)....................................................16

**TABLE OF AUTHORITIES (CONT'D)**

*Carlson v. Rehab. Inst. of Chi.*,
50 N.E.3d 1250 (Ill. App. Ct. 2016) ....................19

*Carpenter v. U.S.*,
138 S.Ct. 2206 (2018) ....................17

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ....................23

*Cox v. Valley Hope Ass'n.*,
2016 WL 4680165 (W.D. Mo. Sept. 6, 2016) ....................9

*Crabtree v. Experian Info Sols., Inc.*,
2018 WL 1872112 (N.D. Ill. Apr. 17, 2018) ....................9

*Craig v. Ontario Corp.*,
543 F.3d 872 (7th Cir. 2008) ....................8

*Crisafulli v. Ameritas Life Ins. Co.*,
2015 WL 1969176 (D.N.J. Apr. 30, 2015) ....................9

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ....................9, 11, 12

*Dix v. Edelman Fin. Servs., LLC*,
978 F.3d 507 (7th Cir. 2020) ....................18

*Duqum v. Scottrade, Inc.*,
2016 WL 3683001 (E.D. Mo. July 12, 2016) ....................9

*Fed. Trade Comm'n v. Kochava, Inc.*,
2023 WL 3249809 (D. Idaho May 4, 2023) ....................11

*First Midwest Bank Guardian of Est. of LaPorta v. City of Chi.*,
988 F.3d 978 (7th Cir. 2021) ....................16

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) ....................20

*Gonzales v. Uber Technologies, Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................23

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................21

*Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*,
2023 WL 6388148 (N.D. Ill. Sept. 30, 2023) ....................11

**TABLE OF AUTHORITIES (CONT'D)**


*Hodges by Hodges v. Pub. Bldg. Comm'n of Chi.*,
864 F. Supp. 1493 (N.D. Ill. 1994) ........................................................................18

*In re: Illuminate Edu. Data Sec. Incident Litig.*,
2023 WL 3158954 (C.D. Cal. Apr. 19, 2023) ..........................................................10

*Johnson v. LaRabida Children's Hosp.*,
372 F.3d 894 (7th Cir. 2004) ....................................................................................14

*Khan v. Children's Nat'l Health Sys.*,
188 F. Supp. 3d 524 (D. Md. 2016)..............................................................................9

*Kim v. McDonald's USA, LLC*,
2022 WL 4482826 (N.D. Ill. Sept. 27, 2022) ..........................................................10

*Kylie S. v. Pearson PLC*,
475 F.Supp.3d 841 (N.D. Ill. 2020) ......................................................................10, 25

*L.P. v. Marian Cath. High Sch.*,
852 F.3d 690 (7th Cir. 2017) ...........................................................................13, 14, 15

*Lewis v. Metro Enf't*,
2016 WL 861295 (N.D. Ill. March 7, 2016)..........................................................13, 15, 16

*London v. RBS Citizens, N.A.*,
600 F.3d 742 (7th Cir. 2010) ....................................................................................13

*Low v. LinkedIn Corp.*,
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) .........................................................11

*Martis v. Grinnell Mut. Reinsurance Co.*,
905 N.E.2d 920 (Ill. App. Ct. 2009) ........................................................................18

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
20 F.4th 311 (7th Cir. 2021) .....................................................................................23

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022)..............................................................11, 12

*McCauley v. City of Chi.*,
671, F.3d 611, 616 (7th Cir. 2011) ...........................................................................18

*Medlock v. Trustees of Indiana Univ.*,
738 F.3d 876 (7th Cir. 2013) ..................................................................................16, 18

*Naperville Smart Meter Awareness v. City of Naperville*,
900 F.3d 521 (7th Cir. 2018) ...........................................................................16, 17, 18

**TABLE OF AUTHORITIES (CONT'D)**


*Nettles v. Midland Funding LLC*,
983 F.3d 896 (7th Cir. 2020) ....................8

*Saleh v. Nike, Inc.*,
562 F.Supp. 3d 503 (C.D. Cal. 2021) ....................21

*Snyder v. Jack Schmitt Ford, Inc.*,
2022 WL 1197374, *appeal denied*, 197 N.E.3d 1075 (Ill. 2022) ....................19

*Souza v. City of W. Chi.*,
181 N.E.3d 276 (Ill. App. Ct. 2021) ....................19

*Spiegel v. McClintic*,
916 F.3d 611 (7th Cir. 2019) ....................14

*Strautins v. Trustwave Holdings, Inc.*,
27 F. Supp. 3d 871 (N.D. Ill. 2014) ....................10

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009) ....................12

*Super Pawn Jewelry & Loan, LLC v. Am. Env't. Energy, Inc.*,
2013 WL 1337303 (N.D. Ill. Mar. 29, 2013) ....................25

*Swarts v. Home Depot, Inc.*,
2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ....................21

*Toulon v. Cont'l Cas. Co.*,
877 F.3d 725 (7th Cir. 2017) ....................23

*In re Toys R Us, Inc., Priv. Litig.*,
2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ....................22

*U.S. v. White*,
781 F.3d 858 (7th Cir. 2015) ....................16

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ....................21

*Vulcan Golf, LLC v. Google Inc.*,
552 F. Supp. 2d 752 (N.D. Ill. 2008) ....................25

*Wade v. Byles*,
83 F.3d 902 (7th Cir. 1996) ....................13

*Wesch v. Yodlee, Inc.*,
2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ....................22

Case 1:23-cv-05690-JD Document #: 45-1 Filed: 06/27/24 Page 8 of 35 PageID #:319

## TABLE OF AUTHORITIES (CONT'D)

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 21

*Wyoming v. Houghton*,
526 U.S. 295 (1999) ........ 16

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ........ 20

*Zak v. Bose Corp.*,
2020 WL 2762552 (N.D. Ill. May 27, 2020) ........ 21

*In re Zappos.com, Inc.*,
108 F. Supp. 3d 949 (D. Nev. 2015) ........ 9

**Statutes**

18 U.S.C. § 2510(17) ........ 22

18 U.S.C. § 2702(a)(1) ........ 21, 22

**Rules**

Fed. R. Civ. P. 12(b)(1) ........ *passim*

Fed. R. Civ. P. 12(b)(6) ........ *passim*

**INTRODUCTION**

Plaintiff's sprawling 341-paragraph Complaint seeks to hold Defendants PowerSchool, Hobsons, and their unidentified employees liable on a plethora of novel and baseless theories—all of which stem from his claim that PowerSchool disclosed student data to a third-party data analytics vendor, Heap, Inc. ("Heap").[2] Unfortunately for Plaintiff, none of the 341 paragraphs come anywhere close to stating plausible claims, particularly because PowerSchool ***did not share*** any identifiable student data with Heap. Plaintiff's Complaint thus fails for lack of standing, among other clear legal defects and should be dismissed in its entirety and with prejudice, for the following reasons.

***First***, Plaintiff cannot allege any injury sufficient to open the doors to federal court. Plaintiff pleads no injury beyond an invasion of privacy, which courts routinely hold insufficient to establish Article III standing. What is more, Plaintiff's factual allegations are incorrect. PowerSchool does not use and has ***never used*** Heap's "session replay" offering—the only Heap product mentioned by name in Plaintiff's Complaint. Any information shared with Heap as part of PowerSchool's effort to optimize the Naviance platform via data analytics was anonymized and not traceable to any particular student. As a result, no student's personal information, such as their name, email address, phone number, age, preferred colleges, or financial need, was ***ever*** shared by PowerSchool with Heap in any identifiable manner. Put simply, Heap has no ability to link any data received from PowerSchool with any individual student-user of Naviance. Accordingly,

---

[2] Hobsons is a dissolved entity and therefore improperly named in the Complaint. In any event, the arguments herein apply equally to all claims brought against PowerSchool and/or Hobsons. For this reason, unless otherwise stated, PowerSchool and Hobsons are collectively referred to as "PowerSchool" throughout this brief, while the unnamed employees and officers of both companies are collectively referred to as the "PowerSchool Doe Defendants."

Plaintiff cannot establish that he or any class member suffered any harm. His Complaint is thus subject to dismissal for lack of Article III standing under Rule 12(b)(1).

***Second***, Plaintiff fails to state a claim against PowerSchool on which relief can be granted. He cannot fit his square peg constitutional claims into the round hole alleged facts, which at most claim privacy violations by a technology company. Nor can be bring a claim for breach of contract regarding PowerSchool's contract with CPS, as he is neither a party to that contract nor a third-party beneficiary, and thus has no standing to bring such a claim. In any event, the contract between PowerSchool and CPS ***expressly permits*** PowerSchool to share data—even if it were not de-identified—with subcontractors like Heap. Finally, Plaintiff's claims under a smattering of additional privacy statutes likewise fall short, as he cannot escape the existence of statutory exemptions and requirements to plead injury that he is unable to overcome. For these reasons, all thirteen claims brought against PowerSchool and the PowerSchool Doe Defendants should be dismissed under Rule 12(b)(6).

## BACKGROUND

### A. PowerSchool's Naviance Platform.

PowerSchool Holdings LLC ("PowerSchool") is the "leading provider of cloud-based software" to the K-12 education market, serving "more than ninety of the top 100 school districts [] in the United States." ECF 1, Compl. ¶ 16. One of PowerSchool's products is Naviance—a college, career, and life-readiness platform, which, among other features, "[p]rovide[s] students with tools" to achieve their "postsecondary goals." *Id.* ¶¶ 45, 46. To this end, Naviance connects schools with families, offering a single platform that provides students with "holistic counseling [] where students, families, and staff can collaborate to build and track students' plans for future success." *Id.* ¶ 46. Naviance contains a variety of tools for student users, including surveys,

Case 1:23-cv-05690-JD Document 45 Filed 12/21/23 Page 4 of 34

assessments, and college search features that "use students' academic profiles and interests to help them explore and discover colleges that are a 'fit.'" *Id.* ¶ 53, 55.

Beginning in 2015, Chicago Public Schools ("CPS") contracted to use the Naviance platform. Ex 1, Hobsons-CPS Contract.[3] At the time, Naviance was provided by Hobsons, Inc. ("Hobsons"), which was acquired by PowerSchool in 2021. Compl. ¶ 22. CPS continued to license Naviance from PowerSchool until 2023, choosing not to renew its contract with PowerSchool for the 2023-2024 school year. Ex. 2, A. Reitz Dec. ¶ 4.[4]

**B. PowerSchool's Use of Heap.**

Like the millions of other companies that operate websites, PowerSchool utilizes usage analytics providers to optimize the performance of its products and improve user functionality. Ex. 2, A. Reitz Dec. ¶ 5. Specifically, PowerSchool first engaged Heap in August 2020 to provide basic data analytics tools to improve the user experience of Naviance. *Id.* ¶ 6. Although Heap offers a variety of services to website operators, PowerSchool's use of Heap was limited and did not include all of its offerings. *Id.* ¶ 7.

PowerSchool used the products in Heap's Platform Package to analyze at an aggregate level how Naviance users engaged with the platform and to improve the product. Ex. 2, A. Reitz Dec. ¶ 8. PowerSchool used Heap to view aggregated data regarding anonymized events, without user input values or identifiers, (*i.e.*, without any data reflecting information typed into fields, etc.).

---

3 The Hobsons-CPS Contract is incorporated by reference in the Complaint. *See* Compl. ¶¶ 57-68. Courts may take judicial notice of the full contents of materials cited in a complaint. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (holding court "was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn"); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (holding court could consider materials cited in complaint, and plaintiffs' argument to the contrary was "frivolous").

4 When considering a Rule 12(b)(1) motion that launches a "factual attack" against Article III standing, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (citations omitted).

*Id.* ¶ 9. For example, for Fall 2023, PowerSchool launched a new student homepage experience to simplify the navigation functionality in Naviance. *Id.* ¶ 10. PowerSchool used Heap usage analytics to understand what pages students most commonly visited to determine what information to make more readily available on the Naviance home page, and to reduce the number of clicks needed to get to the most visited pages. For instance, PowerSchool made changes to its student homepage experience to reduce the number of clicks needed to get to the "Colleges I'm Applying To" page. *Id.*

More important to this motion, however, is what PowerSchool did ***not*** do: provide Heap access to ***any*** students' personally identifiable student information. *Id.* ¶ 11. As shown below, PowerSchool automatically assigns a randomly generated identification number for any data sent to Heap from the Naviance platform, which is then affiliated with any information collected regarding page views and interactions; Heap does not collect or have access to the content or substance of any information input into any field. *Id.* ¶ 12.







Likewise, and as shown above, the ***type*** of data that was shared with Heap was extremely limited. Heap captured and reported on only a student's—identified only by their multi-digit randomly generated identifier—page views and interactions. *Id.* ¶ 13. No data regarding information a student typed into any form within Naviance or other student record data stored within Naviance was ever transmitted to Heap. *Id.* ¶ 14. At most, Heap could see that

"student:b982005de08520ccd633…" viewed the Naviance homepage, clicked on another page, and so forth. Heap could not see ***who*** that student was (the student's ID number was not transmitted, nor was any identifiable information) or ***what*** information they may have entered or stored in Naviance. *Id.*

Contrary to Plaintiff's assertion that PowerSchool's use of Heap caused students to "forfeit their privacy," Compl. ¶ 3, the number string randomly generated by PowerSchool cannot be traced back to any Naviance profile data or user information. Ex. 2, A. Reitz Dec. ¶ 15. Other than information collected via IP address, which is often shared in a way that forecloses even hypothetical identification of a user (*e.g.*, IP addresses shared across schools, IP addresses reflecting public computers), no identifying information is collected through PowerSchool's use of Heap. *Id.* This applies to any data shared by students with PowerSchool—no identifiable student data was shared by PowerSchool with Heap. *Id.*

In addition, Heap's session replay feature was never used by PowerSchool. *Id.* ¶ 16. Indeed, PowerSchool understands that Heap did not even offer session replay until 2022—two years ***after*** the contract was executed—when it acquired another technology company with a session replay offering.[5] And even after acquiring a session replay product, Heap continued to offer its customers the option of purchasing its services ***without*** session replay.[6] And although Heap made its session replay offering available to PowerSchool, PowerSchool never enabled or

---

[5] Ex. 2, A. Reitz Dec. ¶ 17 (citing to "Heap Acquires Session Replay Leader Auryc," Business Wire (June 1, 2022), available at https://www.businesswire.com/news/home/20220601005235/en/Heap-Acquires-Session-Replay-Leader-Auryc).

[6] *Id.* ¶ 18 n. 4 ("To integrate session replay with Heap's powerful quantitative analytics, companies now have two options – a market first. They can either purchase Heap's comprehensive native solution, or they can leverage Heap's Open APIs to integrate their session replay tool of choice, including LogRocket, Heap's first qualitative solutions partner.").

used the product, as reflected in the image below, a screenshot of PowerSchool's Heap account and user page from October 2023.




Ex. 2, A. Reitz Dec. ¶ 19. Put simply, PowerSchool never shared any data with Heap that was identifiable or could be traced to any personally identifiable information from the Naviance platform. Rather, and in compliance with all applicable data privacy laws, Heap collected anonymized data from Naviance user sessions, which was then aggregated and used by PowerSchool to help improve the Naviance product.[7]

### C. Plaintiff's Allegations.

Plaintiff, a minor and student at CPS, filed this class action complaint on August 18, 2023. Compl. Plaintiff alleges that PowerSchool integrated Heap products into the Naviance platform, thereby "intercepting, monitoring, capturing, and recording all of the actions, interactions, data transmissions and communications of students while accessing and navigating the Naviance platform." Compl. ¶ 113. The only Heap product mentioned by name in the Complaint is its

[7] Prior to the present litigation, and for reasons entirely unrelated to the meritless claims brought here, PowerSchool determined it would not renew its contract with Heap, which expired on September 30, 2023. *Id.* ¶ 20.

"session replay" product. *Id.* ¶¶ 107-109. But as noted, PowerSchool never used that Heap product.

Plaintiff brings thirteen wide-ranging claims against PowerSchool, Hobsons, and/or the unnamed PowerSchool and Hobsons Doe Defendants in his Complaint:

i. **Count One** – Violation of the Fourth Amendment under § 1983 against the Doe Defendants;

ii. **Count Two** – Conspiracy to Deprive Constitutional Rights under § 1983 against the Doe Defendants;

iii. **Count Three** – Policy and Practice Claim under § 1983 against PowerSchool;

iv. **Count Four** – Policy and Practice Claim under § 1983 against Hobsons;

v. **Count Six** – Violation of the California Invasion of Privacy Act ("CIPA") against PowerSchool and Hobsons;

vi. **Count Eight** – Violation of the Stored Communications Act ("SCA") against PowerSchool and Hobsons;

vii. **Count Nine** – Violation of the Illinois Eavesdropping Act against PowerSchool and Hobsons;

viii. **Count Eleven** – Breach of Contract against Hobsons;

ix. **Count Twelve** – Breach of Contract against PowerSchool;

x. **Count Fifteen** – Breach of the Illinois Student School Records Act against PowerSchool;

xi. **Count Sixteen** – Unjust Enrichment against PowerSchool and Hobsons;

xii. **Count Seventeen** – Respondeat Superior against PowerSchool; and

xiii. **Count Eighteen** – Respondeat Superior against Hobsons.

Plaintiff brings his Complaint on behalf of four putative classes of different groups of students who used the Naviance platform and whose data was allegedly captured by Heap: (i) all U.S. students; (ii) nationwide public-school students; (iii) Illinois students; and (iv) CPS students.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim if it lacks subject-matter jurisdiction over it, including because the plaintiff lacks standing. *See Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) ("Article III standing is jurisdictional and cannot be waived.") (citations omitted). In reviewing a 12(b)(1) motion to dismiss that "launches a factual attack against jurisdiction," courts may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital*, 572 F.3d at 444. Indeed, "[o]nce such evidence is proffered, the presumption of correctness that we accord to a complaint's allegations falls away, and the plaintiff bears the burden of coming forward with competent proof that standing exists." *Id.* (citations omitted); *see also Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008) ("Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof.").

Rule 12(b)(6) requires dismissal when a complaint lacks allegations of fact that, if true, would enable the court to infer a defendant is liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 555-57). Instead, "a plaintiff has the obligation to provide the factual 'grounds' of his entitlement to relief (more than 'mere labels and conclusions'), and a 'formulaic recitation of a cause of action's elements will not do.'" *Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 547). For this reason, when ruling on a 12(b)(6) motion, a court should disregard allegations in the form of legal conclusions. *Iqbal*, 556 U.S. at 678; *Adams*, 742 F.3d at 728. Where, as here, the complaint lacks non-conclusory facts from which a court could infer an entitlement to relief, "this basic deficiency

should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal citations omitted).

## ARGUMENT

The Court should dismiss all claims against PowerSchool and the PowerSchool Doe Defendants for two separate and independent reasons. ***First***, Plaintiff cannot show the required constitutional "injury-in-fact" necessary to support Article III standing. ***Second***, even if Plaintiff satisfied Article III's requirements, Plaintiff still fails to state any claim upon which relief may be granted.[8]

### I. PLAINTIFF LACKS ARTICLE III STANDING.

Article III standing requires that the plaintiff suffered an injury-in-fact that is "concrete, particularized, and actual or imminent." *Dinerstein v. Google, LLC*, 73 F.4th 502, 511-12 (7th Cir. 2023). Here, however, Plaintiff's allegations of injury are almost entirely limited to an alleged loss of his right to privacy.[9] *See, e.g.* Compl. ¶¶ 3, 4, 9, 11, 134, 196.

Courts routinely hold "that [allegations of] loss of privacy and breach of confidentiality are too abstract to establish Article III standing." *Duqum v. Scottrade, Inc.*, 2016 WL 3683001, at *8 (E.D. Mo. July 12, 2016); *see also Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (same); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) (same); *Cox v. Valley Hope Ass'n.*, 2016 WL 4680165, at *1 n.1 (W.D. Mo. Sept. 6, 2016) (same). As this

---

8 To avoid duplication and per this Court's standing orders, both Defendants CPS and Heap join the argument that Plaintiff's claims must be dismissed under Rule 12(b)(1) for lack of Article III standing. Defendant Heap joins the argument that Plaintiff's claims fail under Rule 12(b)(6). *See* Hon. Judge Jorge L. Alonso's Case Procedures, Multiple Defendants Represented by Different Counsel.

9 Plaintiff includes a single allegation of "emotional distress" in relation to his first cause of action against the Doe Defendants under § 1983. Compl. ¶ 151. But "bare allegations" that plaintiff was "depressed, humiliated, or the like are not sufficient" to establish Article III injury. *Crabtree v. Experian Info Sols., Inc.*, 2018 WL 1872112, at *3-4 (N.D. Ill. Apr. 17, 2018). Courts reject such allegations as a basis for standing in data privacy cases. *Id*; *see also Crisafulli v. Ameritas Life Ins. Co.*, 2015 WL 1969176, at *4 (D.N.J. Apr. 30, 2015) (same).

Court has explained, allegations of loss of "rights," including the right to privacy, "are not a type of injury by itself." *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 879, 882 (N.D. Ill. 2014) (rejecting "loss of privacy" as a basis for standing); *see also Kylie S. v. Pearson PLC*, 475 F.Supp.3d 841, 850 (N.D. Ill. 2020) (dismissing claims brought by student following data breach of defendant's educational technology platform for lack of standing because the student did not suffer any economic loss from the breach of her confidentiality). Indeed, the Central District of California recently dismissed claims brought against another education technology company following a data breach of personally identifiable student information, including academic, behavioral, and demographic information. *See In re: Illuminate Edu. Data Sec. Incident Litig.*, 2023 WL 3158954, at *5 (C.D. Cal. Apr. 19, 2023). As the court explained, "other federal courts have similarly rejected the argument that a loss of privacy arising from the theft of non-sensitive personal information, standing alone, supports Article III standing." *Id.* (quoting *Kim v. McDonald's USA, LLC*, 2022 WL 4482826, at *5 (N.D. Ill. Sept. 27, 2022)) (cleaned up). Because Plaintiff fails to adequately allege anything beyond the loss of privacy here, his claims should likewise be dismissed.

Even assuming loss of privacy were sufficient to establish standing (and it is not), Plaintiff cannot establish that any loss of privacy actually occurred. Critically, ***no*** personally identifiable information regarding Plaintiff—or any other student—was captured by, or otherwise shared with, Heap. Ex. 2, A. Reitz. Dec. ¶¶ 11-15. There is no way for Heap to identify any Naviance user or otherwise know any of the information any particular user entered or shared with PowerSchool through his or her use of Naviance. *Id.* Because none of the data collected by Heap through Naviance can be associated with any particular student, no data can be associated with Plaintiff or any member of the purported class, eliminating the possibility of any particularized privacy harm.

Courts, including the Seventh Circuit, routinely dismiss claims for lack of Article III standing under similar circumstances. *See Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 980 (7th Cir. 2023) (affirming dismissal for lack of Article III standing where plaintiff failed to allege beyond speculation that data disclosed could lead to any harm); *Fed. Trade Comm'n v. Kochava, Inc.*, 2023 WL 3249809, at *9 (D. Idaho May 4, 2023) (consumers whose personal data is used for analytics but not tied to them "cannot be said to have suffered any privacy injury"). This is true in relation to the specific statutory violations Plaintiff alleges here, as well. *See, e.g.*, *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (dismissing claims under CIPA, Federal Wiretap Act, and California Constitution for lack of Article III standing because the plaintiffs failed to explain how "anonymized, non-personal data regarding their browsing activities" captured by session replay software "harms their privacy interests in any way"); *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *3 (N.D. Cal. Nov. 11, 2011) (dismissing SCA claim, among others, for lack of Article III standing because "Plaintiff has not alleged *how* third party advertisers would be able to infer [plaintiff's] personal identity from LinkedIn's anonymous user ID combined with his browsing history") (emphasis in original); *see also Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, 2023 WL 6388148, at *17 (N.D. Ill. Sept. 30, 2023) (holding that the ISSRA "does not protect a document that removes any individually identifying information").

Indeed, a recent decision from the Seventh Circuit cements Plaintiff's inability to prove Article III standing here. In *Dinerstein v. Google*, the plaintiff alleged that the defendants impermissibly invaded his privacy when his anonymized health information was shared by the University of Chicago with Google, thereby providing Google with enough information to identify him and uncover "intimate private details in his medical histories." 73 F.4th at 510 (quotation omitted). The Seventh Circuit found plaintiff's theory lacking. It affirmed dismissal for lack of

standing, as "the dissemination of *anonymized* information" was unlikely to "give rise to any injury at all—let alone one concrete enough to support Article III standing." *Id.* at 513 (emphasis in original). The same holds true here. Any data captured by Heap from the Naviance platform was anonymized and untraceable to any individual user, meaning neither Plaintiff nor any putative class member has suffered any injury.

Plaintiff's request for injunctive relief likewise fails for lack of Article III standing. Such a request requires a plaintiff to allege a threat that is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Here, because no identifiable information was captured by Heap, there is no threat of future harm, let alone one that exceeds conjecture. Moreover, there can be no threat of future harm based on Plaintiff's allegations to CPS students specifically, as CPS has decided not to renew its contract with PowerSchool, Ex. 2, A. Reitz. Dec. ¶ 4, nor to any student using the Naviance platform, as PowerSchool no longer uses Heap, either, *id.* ¶ 20.

Put simply, Plaintiff plausibly alleges neither an injury-in-fact nor any threat of future harm. His alleged loss of privacy is insufficient to adequately plead a concrete or particularized injury necessary to establish standing. Because Plaintiff has not (and cannot) establish Article III standing, his Complaint should be dismissed in its entirety under Rule 12(b)(1). *See, e.g.*, *Dinerstein*, 73 F.4th at 510; *Baysal*, 78 F.4th at 980; *Massie*, 2022 WL 534468, at *5.

## II. PLAINTIFF FAILS TO ADEQUATELY PLEAD ANY CAUSE OF ACTION.

Even assuming Plaintiff could establish Article III standing (and he cannot), his Complaint should be dismissed in its entirety for the independent reason that he fails to state any claim for relief. Indeed, Plaintiff's causes of action suffer from the following fatal flaws.

### A. Plaintiff Does Not Plausibly Allege Any Viable Claim Under § 1983.

Plaintiff stretches to shoehorn his allegations into Fourth Amendment claims against a private technology company alleged to have disclosed data to a private third-party vendor. But Plaintiff misses the mark. His own allegations make clear that neither PowerSchool nor the PowerSchool Doe Defendants were state actors subject to liability under § 1983. Moreover, any alleged "search and seizure" was reasonable, warranting dismissal of all Plaintiff's § 1983 claims.

#### 1. Plaintiff Fails to Plausibly Allege that PowerSchool or the PowerSchool Doe Defendants Were Acting Under Color of State Law.

Plaintiff can hold neither PowerSchool nor the PowerSchool Doe Defendants liable under § 1983, as they were either private entities or individuals engaged in private conduct. Indeed, private entities or persons "may not be sued [under § 1983] for merely private conduct, no matter how discriminatory or wrongful." *London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010) (quotation omitted). Rather, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017).

Plaintiff appears to put forth two theories under which he alleges PowerSchool and the PowerSchool Doe Defendants were acting under color of state law. Neither passes muster. ***First***, Plaintiff alleges that PowerSchool was a state actor because public schools delegated certain "public functions" to PowerSchool. Compl. ¶ 20; *see also id.* ¶ 26. But, "[a] private corporation providing services to a municipal corporation does not automatically transform that entity into a state actor." *Lewis v. Metro Enf't*, 2016 WL 861295, at *3 (N.D. Ill. March 7, 2016). Rather, a private corporation is considered a state actor under § 1983 only if a state delegates its "entire" power and that power is "exclusively reserved to the state." *Id.* (citing *Wade v. Byles*, 83 F.3d 902,

906 (7th Cir. 1996)). Here, Plaintiff alleges CPS delegated to PowerSchool only its "public function of collecting, storing, handling, protecting, overseeing and otherwise maintaining education and school student records." Compl. ¶¶ 20, 26. These purported functions fall far short of a power exclusively reserved to the state. Rather, the Seventh Circuit has held that even ***education "as a whole"*** does not "fall[] solely in the province of the state, to the exclusion of private parties." *Marian Cath. High School*, 852 F.3d at 697 (emphasis added). Obviously, Plaintiff has not (and could not) allege that CPS delegated its "entire power" to the PowerSchool Defendants. The PowerSchool Defendants are "no substitute for [schools]," and thus they are "therefore not state actor[s]." *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 898 (7th Cir. 2004) (affirming dismissal of § 1983 claim against private security guard because state did not delegate "entire" police power).

***Second***, Plaintiff alleges that the PowerSchool Doe Defendants engaged in a conspiracy with each other and other unidentified individuals to "deprive Plaintiff and [other putative class] members of their Fourth Amendment rights." Compl. ¶ 159. To begin, Plaintiff's allegations—which obliquely allege a conspiracy among ***unidentified individuals*** from unspecified entities—are far too thin to plausibly allege a conspiracy. Moreover, this theory likewise fails to establish that either PowerSchool or the PowerSchool Doe Defendants can be held liable under § 1983. To state a claim against a private party under § 1983 on a conspiracy theory, "a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). This requires "evidence of a *concerted effort* between a state actor and that individual." *Marian Cath. High Sch.*, 852 F.3d at 696 (emphasis in original) (internal citations omitted).

Plaintiff alleges no such understanding nor concerted effort between CPS and the PowerSchool Defendants. Far from it. Plaintiff's only theory of liability regarding CPS is that it was ***negligent*** in allowing PowerSchool to use Heap; he does not allege that CPS took a single active step in engaging with Heap, using any of its analytics, or invading any student's privacy. *See* Compl. Count Fourteen (Plaintiff's only claim against CPS, for negligence). Plaintiff fails to allege that CPS was ***even aware*** PowerSchool was using any product from Heap. Rather, Plaintiff explicitly alleges that CPS neither "provide[d] adequate oversight" nor "monitor[ed] the activities and conduct of Defendants PowerSchool Holdings and Hobsons." Compl. ¶¶ 302, 308. Plaintiff further alleges that the purported wrongdoing was "undertaken pursuant to the polic[ies] and practice[s] of Defendant PowerSchool Holdings" and "Defendant Hobsons," ***not*** CPS. *Id.* ¶¶ 152, 153. Indeed, Plaintiff concedes that CPS has never required PowerSchool to use Heap's software. *Id.* ¶ 114. In sum, Plaintiff's allegations fall far short of plausibly alleging the PowerSchool Defendants were acting in concert with CPS; they instead allege the exact opposite. And Plaintiff's conclusory allegations that the PowerSchool Defendants were "state actors," *Id.* ¶¶ 20, 26, or acting under color of state law, *id.* ¶¶ 35, 36, 141, 144, do not save his claim. "[T]he Seventh Circuit has explicitly held that state action is something that plaintiffs must support in their complaints with factual allegations, rather than simply formulaic recitations, and that failure to do so will result in dismissal." *Lewis*, 2016 WL 861295, at *4 (citing cases).

Such a result is likewise warranted here. Plaintiff's allegations make clear that neither PowerSchool nor the PowerSchool Doe Defendants acted "in concert" with CPS to somehow "deprive" him of any constitutional rights. Because Plaintiff otherwise fails to allege they were acting under color of state law, he fails to state any claim under § 1983. *See, e.g.*, *Marian Cath.*

*High Sch.*, 852 F.3d at 696 (affirming dismissal of § 1983 claims against school counselor); *Lewis*, 2016 WL 861295, at *4 (dismissing § 1983 claims against private security guards).[10]

### 2. Plaintiff Does Not Allege Any Deprivation of Rights Under the Fourth Amendment.

Plaintiff's § 1983 claims fail for the independent additional reason that he has not plausibly alleged a violation of the Fourth Amendment, as any alleged "search and seizure" was objectively reasonable—even based on the facts as alleged. Indeed, "[t]he touchstone of the Fourth Amendment is reasonableness." *Naperville Smart Meter Awareness v. City of Naperville*, 900 F.3d 521, 528 (7th Cir. 2018) (affirming dismissal of Fourth Amendment claims because defendants acted reasonably) (citations omitted). Where, as here, a plaintiff does not allege that any searches were "performed as part of a criminal investigation," the Court "can turn immediately to an assessment of whether they are reasonable." *Id*. In assessing reasonableness, the Court "look[s] to the totality of the circumstances, balancing the degree to which the search intrudes on individual liberty and the degree to which it promotes legitimate governmental interests." *U.S. v. White*, 781 F.3d 858, 862 (7th Cir. 2015) (citing *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

Here, Plaintiff has not alleged (because he cannot) that any search was undertaken with prosecutorial intent; there is no allegation of any law enforcement participation whatsoever. As a result, any alleged privacy interest is automatically "lessen[ed.]" *Naperville*, 900 F.3d at 528 (citing *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 530 (1967)); *Medlock v. Trustees of Indiana Univ.*, 738 F.3d 876, 873 (7th Cir. 2013) (finding alleged search was reasonable because search was not performed "for law enforcement purposes").

---

[10] Counts Seventeen and Eighteen of Plaintiff's Complaint, claims for Respondeat Superior against PowerSchool and Hobsons, fail for the additional reason that § 1983 "does not incorporate the common-law doctrine of respondeat superior." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021). Even assuming Plaintiff had plausibly alleged PowerSchool to be a state actor (and he has not), PowerSchool "cannot be held liable for the constitutional torts of its employees and agents." *Id.*

Nor is there any risk that the student records alleged to have been captured by Heap could lead to "corollary prosecution." *Naperville*, 900 F.3d at 528. The information Plaintiff alleges was disclosed to Heap includes information about a student's preferred career paths, Compl. ¶ 52, grade point average, *id.* ¶ 51, and standardized test scores, *id.* It is difficult if not impossible to conceive of any prosecution that would result from a government entity somehow obtaining that information—*i.e.*, that a student was interested in a possible career in architecture, or that she scored a 1050 on the SATs, or that she had a 3.2 GPA—from Heap (even if those data points were captured by Heap, which they are not).

What is more, even the data Plaintiff claims (incorrectly) was captured by Heap is "far less invasive than the prototypical Fourth Amendment search of a home." *Naperville*, 900 F.3d at 528. It does not provide "an intimate window into [a student's] life, revealing ... his familial, political, professional, religious, and sexual associations" to the degree the United States Supreme Court has recognized as unreasonable. *Carpenter v. U.S.*, 138 S.Ct. 2206, 2217 (2018).

On the other side of the scale, however, schools' governmental interest in using the Naviance product to assist its students in college and job placement is substantial. As Plaintiff concedes, Naviance is the "leading [College, Career and Life Readiness] platform" equipment students "with skills to reach their postsecondary goals." Compl. ¶ 45. It "[p]rovide[s] students with tools to plan for a future that aligns with their strengths and interests," provides "holistic counseling" where "students, families, and [school] staff can collaborate to build and track students' plans for future success," and "[e]nsure[s] ***every student*** has access to high-quality resources to achieve milestones toward their postsecondary goals." *Id.* ¶ 46. It is hard to conceive of more important government interests for schools than providing their students and families with the tools and resources to help ensure "future success" for all of their pupils.

The balance thus easily tips in favor of finding that any alleged "search and seizure" was reasonable. Counts One, Two, Three, Four, Seventeen, and Eighteen of Plaintiff's Complaint, all based on a predicate violation of the Fourth Amendment, should thus be dismissed. *Naperville*, 900 F.3d at 529; *Medlock*, 738 F.3d at 874; *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 518 (7th Cir. 2020); *McCauley v. City of Chi.*, 671, F.3d 611, 616 (7th Cir. 2011).

**B. Plaintiff's Breach of Contract Claims Fail as a Matter of Law.**

Plaintiff's breach of contract claims against PowerSchool are subject to dismissal under Rule 12(b)(6) for the following two reasons. ***First***, even setting aside the absence of Article III standing, Plaintiff is otherwise unable to establish standing for his contract claims because he is neither a party nor an intended third-party beneficiary to the contract between PowerSchool and CPS. Under Illinois law, there is a strong presumption that a contract's provisions "apply only to [parties], and not to third parties," unless evidenced by an "***express provision*** in the contract identifying the third-party beneficiary." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009) (emphasis added). This presumption against third-party beneficiaries is ***even greater*** in the context of government contracts. *See Hodges by Hodges v. Pub. Bldg. Comm'n of Chi.*, 864 F. Supp. 1493, 1509-1510 (N.D. Ill. 1994) (dismissing breach of contract claim brought by students against city, board of education, and public building commission because contract did not manifest "specific intent to give individual citizens enforceable rights to compensation for its breach"); *Black Bear v. Mid-Central Educ. Coop.*, 941 N.W.2d 207, 213–14 (N.D. 2020) (dismissing breach of contract claim brought by students against an educational cooperative that had contracted with the state Department of Education, noting that "when a public contract is involved, *private citizens are presumed not to be third-party beneficiaries*" (emphasis in original)).

The contract between PowerSchool and CPS contains no provisions conferring intended third-party beneficiary status to Plaintiff. Although the contract refers to students (along with administrators, teachers, and parents) as "Licensed Users," Ex. 1, Hobsons-CPS Contract § 7.3, "the mere reference to a party in a contract will not confer third-party beneficiary status." *See Carlson v. Rehab. Inst. of Chi.*, 50 N.E.3d 1250, 1256 (Ill. App. Ct. 2016). Neither does the knowledge and intent that an agreement will benefit a third-party by itself confer third-party beneficiary status. *See Souza v. City of W. Chi.*, 181 N.E.3d 276, 302 (Ill. App. Ct. 2021) ("[E]ven if the contracting parties know, expect, or intend that others will benefit from their agreement, that alone is insufficient to overcome the strong presumption that the contract was intended only for the contracting parties' direct benefit."). The licensed user provision—like provisions referencing student users and data—does not "reveal[] any promise to render any performance to any third person," nor does it "name [students] as a third-party beneficiary of the contract." *Snyder v. Jack Schmitt Ford, Inc.*, 2022 WL 1197374, at *37, *appeal denied*, 197 N.E.3d 1075 (Ill. 2022) (holding plaintiff was not third-party beneficiary of contract). Without such status clearly set forth in the contract, Plaintiff is unable to establish standing for his breach of contract claim, and it is thus subject to dismissal. *See Carlson*, 50 N.E.3d at 1256 (affirming dismissal because "[w]ithout a third-party beneficiary status, 'a litigant lacks standing to attack [a contract]'").

***Second***, far from establishing breach, Plaintiff's factual allegations of purportedly improper data sharing by PowerSchool with Heap reflect conduct that—even if it occurred as alleged—is expressly ***permitted*** under PowerSchool's contract with CPS. Specifically, the contract states that PowerSchool may share "confidential" student data from the Naviance platform with "subcontractors who have a need to access the Confidential Information for the performance of the obligations set forth in this Agreement." Ex. 1, Hobsons-CPS Contract § 8.3. Confidential

Information is defined in the contract as "information that is not generally known to others," and includes the same information Plaintiff alleges Heap captured, including student name, date of birth, contact information, grade point average, and test scores. *Id.* § 8.1; *see also* Compl. ¶ 51, 112. Moreover, PowerSchool's use of Heap was in furtherance of ensuring it performed its contractual obligations to CPS, which included providing a product that was "free from defects," "function[ed] properly," and was "compatible with and shall support implementation and full utilization" of all services and features included with Naviance. Ex. 1, Hobsons-CPS Contract § 7.8; *id.*, Ex. A (full list of services and features PowerSchool was obligated to provide to CPS through Naviance). As a result, even assuming the truth of Plaintiff's allegations, he has not alleged PowerSchool took any action in violation of its contract with CPS. Counts Eleven and Twelve should accordingly be dismissed.

### C. PowerSchool Is Not Subject to Liability Under Either CIPA or the Illinois Eavesdropping Act.

Plaintiff's claims under both CIPA and the Illinois Eavesdropping Act fail for the same reason: as a party to the alleged communications at issue, PowerSchool is exempt from liability under both statutes. *See, e.g.*, *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *5 (S.D. Cal. July 13, 2023) (dismissing CIPA claims because "parties to a conversation cannot eavesdrop on their own conversations"); *Zak v. Bose Corp.*, 2019 WL 1437909, at *5 (N.D. Ill. Mar. 31, 2019) (dismissing claims under Illinois Eavesdropping Act because the statute "only applies where a person is not a party to the private electronic communication") (quotation omitted).

Plaintiff's allegations that data was captured by Heap's embedded software do not save his claims under either statute. Critically, Plaintiff does not (because he cannot) allege that Heap used any data from the Naviance platform itself. Rather, as "a service provider, [Heap] is an extension of [PowerSchool]," providing "a tool—like [a] tape recorder . . . that allows [PowerSchool] to

record and analyze its own data in aid of [PowerSchool's] business." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021); *see also Zak v. Bose Corp.*, 2020 WL 2762552, at *3 (N.D. Ill. May 27, 2020) (dismissing amended claim under Illinois Eavesdropping Act despite allegations that defendant "redirect[ed] communications" to a third party because this did "not change the fact" that defendant "was a party to the communications"); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (finding defendant exempt from liability under CIPA because the third-party's "software was merely a tool that [defendant] used to record its own communications with plaintiff" and that there were "no facts" to suggest that the third-party software provider used the data itself); *Saleh v. Nike, Inc.*, 562 F.Supp. 3d 503, 521 (C.D. Cal. 2021) (finding that the third-party "did not become a 'party' to the communication simply because it was providing recording and transmission services" for the defendant). It is for this same reason that PowerSchool cannot be held "liable for aiding and abetting [Heap's] wrongdoing because there is no wrongdoing." *Graham*, 533 F. Supp. 3d at 832; *see also Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *8 (N.D. Cal. Aug. 30, 2023) (dismissing aiding and abetting claims under CIPA). Counts Six and Nine should accordingly be dismissed against PowerSchool.[11]

**D. The SCA Does Not Apply to PowerSchool.**

Count Eight of Plaintiff's Complaint, brought under the SCA, suffers from two insurmountable hurdles. ***First***, PowerSchool is not subject to the SCA because it is not a provider of "an electronic communication service to the public." 18 U.S.C. § 2702(a)(1). Indeed, this Court has interpreted the SCA to cover only entities that "provide[] electronic communication service . . .

[11] Plaintiff's CIPA claim must be dismissed against Hobsons for the independent reason that as a non-California resident, Plaintiff cannot sustain a claim against a non-California Defendant. *See* Compl. ¶ 23 (alleging Hobsons was a Delaware corporation with its principal place of business in Virginia); *see also Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1027 (N.D. Cal. 2011) (explaining that under California law, it is "clearly establish[ed] that a non-California defendant cannot be liable to a non-California plaintiff for violations of CIPA").

to the community at large." *Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1042 (N.D. Ill. 1998). Here, Plaintiff's allegation that PowerSchool allowed Naviance users "to send and receive email messages" is insufficient to bring PowerSchool within the purview of the statute. Compl. ¶ 218. Rather, "giving [students] access to its e-mail system is not equivalent to providing e-mail to the public." *Andersen*, 991 F. Supp. at 1043.

***Second***, even assuming PowerSchool is a provider of an "electronic communication service" (and it is not), Plaintiff's SCA claim fails for the independent reason that he has not alleged that PowerSchool divulged "the contents of a communication ***while in electronic storage***." 18 U.S.C. § 2702(a)(1) (emphasis added). The SCA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17). Courts have interpreted this provision to mean the SCA "only protects electronic communications stored 'for a limited time' in the 'middle' of a transmission, *i.e.*, when an electronic communication service temporarily stores a communication while waiting to deliver it.'" *In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252, at *3 (N.D. Cal. Oct. 9, 2001). Here, Plaintiff alleges no facts regarding the temporary storage of any electronic communications by PowerSchool. Rather, he includes only the conclusory allegation that the "email messages received by Plaintiff and Class members were in electronic storage." Compl. ¶ 219. This type of conclusory allegation is entitled to no weight as a matter of law. *See Iqbal*, 556 U.S. at 678.

Because Plaintiff has not claimed that PowerSchool's alleged storage "is incidental to the electronic transmission" nor that PowerSchool stores the data "for the purposes of providing backup protection for the communication," Count Eight should be dismissed. *Wesch v. Yodlee,*

*Inc.*, 2021 WL 1399291, at *4 (N.D. Cal. Feb. 16, 2021); *see also Gonzales v. Uber Technologies, Inc.*, 305 F. Supp. 3d 1078, 1087-88 (N.D. Cal. 2018) (dismissing SCA claim because plaintiff alleged only that location data was stored indefinitely, "not stored temporarily" which did "not fall under [the SCA]").

**E. Plaintiff Cannot State a Claim for Unjust Enrichment.**

Under Illinois law, unjust enrichment "does not constitute an independent cause of action." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741–42 (7th Cir. 2017); *see also Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324 (7th Cir. 2021). Thus, because Plaintiff's other claims fail, his claim for unjust enrichment—which is based on the same allegedly improper conduct—also fails. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) ("Because Benson failed to state a claim under the ICFA, she also failed to state a claim for unjust enrichment."); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[U]njust enrichment will stand or fall with the related claim."). For these reasons alone, Count Sixteen of Plaintiff's Complaint must be dismissed.

In any event, Plaintiff fails to allege any benefit conferred by Plaintiff or retained by PowerSchool sufficient to support a claim for unjust enrichment. *Ambrosius v. Chi. Athletic Clubs, LLC*, 203 N.E.3d 239, 255 (Ill. App. Ct. 2021) (dismissing unjust enrichment claim because plaintiff failed to state sufficient facts that defendant "unjustly retained a benefit to [Plaintiff's] detriment" and that defendant's "retention of the benefit violates the principles of justice, equity, and good conscience"). Plaintiff does not allege that he was ever a customer of PowerSchool or otherwise conferred any other type of monetary benefit. And courts have "routinely rejected the 'proposition that an individual's personal identifying information has an independent monetary value.'" *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022)

(dismissing unjust enrichment claim). Thus, neither the mere possession nor disclosure of Plaintiff's information would be sufficient to constitute a benefit to PowerSchool. *See id.*

Put simply, Plaintiff does not (and cannot) allege that he provided any benefit to PowerSchool he otherwise wouldn't have had he been aware of PowerSchool's alleged data usage.[12] He likewise fails to allege that PowerSchool unjustly retained any benefit. Count Sixteen should thus be dismissed against PowerSchool. *Id.*; *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F.Supp.3d 667, 688 (D.S.C. 2021) (dismissing unjust enrichment claim because "[p]laintiffs [did] not allege that they chose to utilize Blackbaud's services in the first place, nor have they alleged that they would not have sought or purchased Blackbaud's services had they known its data security was inadequate").

### F. Plaintiff Cannot Apply the Illinois Eavesdropping Act Nor ISSRA Extraterritorially to PowerSchool.

Plaintiff's claims brought against PowerSchool under the Illinois Eavesdropping Act and ISSRA fail for the independent reasons that they cannot apply extraterritorially. The Illinois Supreme Court has repeatedly held that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery*, *v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (2005). None of the express provisions of the Illinois Eavesdropping Act or ISSRA indicate either was intended to have extraterritorial effect. Thus, to be actionable against a foreign company like PowerSchool, it must have violated those acts within Illinois. This means Plaintiff must show that PowerSchool's alleged violations of the statutes "occur[red] ***primarily and substantially***" in Illinois. *Id.* at 854 (emphasis added).

---

[12] By his own allegations, Plaintiff could not have even made such a decision if he wanted to, as he alleges that he was "required" to use Naviance by CPS. Compl. ¶ 72.

Here, Plaintiff's only alleged wrongdoing is the purported transmission of data between PowerSchool and Heap, both of which Plaintiff alleges are located California. Compl. ¶¶ 14, 27. As a result, Plaintiff has not plausibly alleged that any information was impermissibly transferred by PowerSchool to Heap ***within Illinois***, dooming his claims. Nor does Plaintiff's residency in Illinois provide him any help. Courts routinely reject a plaintiff's residency in Illinois, without more, as sufficient to plausibly allege a violation occurred primarily and substantially in Illinois. *See, e.g.*, *Super Pawn Jewelry & Loan, LLC v. Am. Env't. Energy, Inc.*, 2013 WL 1337303, at *7 (N.D. Ill. Mar. 29, 2013) (finding no substantial connection when only connection to Illinois is plaintiff being an Illinois business); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing claim under Illinois statute, even though plaintiffs resided in Illinois, because "plaintiffs point to no allegations that plausibly suggest that the purported deceptive [conduct] occurred primarily and substantially in Illinois"). Counts Nine and Fifteen of Plaintiff's Complaint should accordingly be dismissed. [13]

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice in its entirety under Rule 12(b)(1) and Rule 12(b)(6) because Plaintiff has not—and cannot—establish Article III standing nor state any viable claim against PowerSchool or the PowerSchool Doe Defendants.

[13] Plaintiff's claim under ISSRA fails for the independent reason that he has failed to allege any injury, a required element under the statute. *Kyle S.*, 475 F. Supp. 3d at 850 ("[A] claim brought under ISSRA requires an actual injury."). Courts within the Northern District do not treat "the disclosure of student data as an injury [under ISSRA] unless the plaintiff suffers actual damages." *Id.* at 849. Accordingly, even assuming the truth of Plaintiff's allegations—that identifiable student data was disclosed to Heap—his ISSRA claim nonetheless fails because he has not pled any harm beyond mere disclosure.

Case 1:24-cv-05689-DJD Document #: 45 Filed: 06/27/24 Page 34 of 35 PageID #:345

Dated: December 21, 2023

Respectfully submitted,

By: */s/ Martin L. Roth*

Martin L. Roth, P.C.
Alyssa C. Kalisky
Amelia H. Bailey
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
(312) 862-2200
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C.
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
(214) 972-1770
olivia.adendorff@kirkland.com

*Counsel for PowerSchool Holdings LLC, Hobsons, Inc., Unknown Employees and Officers of PowerSchool Holdings, LLC, and Unknown Employees and Officers of Hobsons, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on December 21, 2023, I electronically filed the foregoing document and any attachments with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

/s/ *Martin L. Roth*
Martin L. Roth