# Exhibit 4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| QJ, a minor (through his parent and legal guardian, JJ), individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | Case No. 23-CV-5689 |
| v. | ) | Judge Jorge L. Alonso |
| POWERSCHOOLS HOLDINGS LLC, *et al,* | ) | |
| Defendants. | ) | |

**DEFENDANT BOARD OF EDUCATION OF THE CITY OF CHICAGO'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR STRIKE**

The Complaint spans across 70 pages containing 341 paragraphs directed at the conduct of three tech companies and its employees. Included among the nineteen separate counts, Plaintiff asserts violations of numerous state and federal statutes related to eavesdropping, wiretapping, and the invasion of privacy. Only one of these counts is directed at Defendant Board of Education of the City of Chicago (hereinafter "the Board"), Count Fourteen. This count does not assert any statutory violation or civil rights claim, it is just a claim for simple negligence. Conspicuously absent, however, is any allegation that the Board actually did anything wrong. Count Fourteen merely alleges that the Board failed to detect the alleged wrongdoing of the tech companies that, even if true (which it is not), would breach their obligations to the Board, not Plaintiff.

When placed in the proper context, Count Fourteen becomes even more tenuous. The Complaint alleges that Plaintiff's (and his putative classmates') privacy rights were violated when Defendant Heap ***surreptitiously*** captured data that allegedly constituted student records by inserting its code into the Naviance software. Thus, to comport with the standard of care that Plaintiff demands, the Board would have had to inspect and monitor the code of the Naviance

software to ensure that no student record could be intercepted. There is no basis in common law or statute to impose such a duty on the Board.

The allegations against the Board are even more implausible, given the absence of any assertion in the Complaint that Plaintiff's data was publicly disclosed or compromised in a data breach that would expose Plaintiff or the class to the risk of identity theft. Similarly, Plaintiff does not allege that CPS's agreement with PowerSchool[1] was improper in any way nor does Plaintiff object to PowerSchool's possession of his student records. Plaintiff does not even allege that Heap's possession of his data was improper. Rather, the sole source of Plaintiff's nineteen counts appears to be the manner in which that data was allegedly collected—an issue which is completely outside the knowledge or control of the Board or any duty it may owe Plaintiff.

For these reasons, including the arguments contained in Sections I and II.B of Defendant PowerSchool's Memorandum of Law in Support of its Motion to Dismiss, which are incorporated here by reference, the Court should dismiss Count Fourteen, and thus dismiss the Board from this case entirely, pursuant to Federal Rules 12(b)(1) and/or 12(b)(6). In the alternative, the Court should strike certain portions of Plaintiff's Prayer for Relief as they pertain to the Board pursuant to Rule 12(f), including Plaintiff's requests for statutory damages, punitive damages and/or attorneys' fees from all Defendants. These remedies would not be proper against CPS who is only accused of simple negligence.

## **BACKGROUND**

For the purposes of this Motion to Dismiss, the factual allegations in the Complaint are accepted as true. *United States ex rel Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th

[1] As explained in PowerSchool's Motion, Hobsons and PowerSchool may be referred to collectively as "PowerSchool."

Cir. 2018); *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009). The Complaint (ECF 1) alleges each of the following matters:

QJ was a student enrolled in schools that were part of the Chicago Public Schools system ("CPS"). (*Id.* ¶ 13.) At all relevant times, the Board operated CPS. (*Id.* ¶¶ 13, 32; 105 ILCS 5/34-2.) While he was a student at CPS, QJ used computer software called Naviance. (*Id.* ¶¶ 118–123.) Naviance is an internet-based software platform that provides students with tools to help them plan for their post-secondary future. (*Id.* ¶¶ 5, 45–46, 52–56, 72, 123.) For example, some students used Naviance to help with their college selection process. (*Id.* ¶ 53).

**<u>The Board's Agreements with Hobsons/PowerSchool</u>**

The Naviance software was owned by Defendant Hobsons, Inc. until it was acquired by Defendant PowerSchool Holdings. (*Id.* ¶¶ 22, 24.) The Board first entered into a contract with Hobsons regarding Naviance in 2015. (*See* Ex. 1;[2] *see also* Compl. ¶ 58.) This 2015 Agreement contained numerous provisions regarding the handling of confidential information. For example, § 5 required Hobsons to "perform all Services required of it under this Agreement with that degree of professionalism, skill, care and diligence normally shown by a vendor performing services" of a comparable scope. Section 5 expressly acknowledged that if Hobsons "is entrusted with or has access to valuable and confidential information and records of the Board….[Hobsons] agrees to be held to a commercially reasonable standard." (Ex. 1 at 3–4.) Section 11 of the 2015 Agreement consists of approximately six pages painstakingly dedicated to the handling of "Confidential

[2] While ordinarily the Court is limited to the four corners of the complaint on a motion pursuant to Fed. R. Civ. P. 12(b)(6), "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the claims]." *Stastny v. Bhanti,* 2023 WL 6388258, at *1 (N.D. Ill. Sept. 30, 2023) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F. 2d 429, 431 (7th Cir. 1993)). Here, the 2015 Agreement between the Board and Hobsons (Ex. 1), and the 2020 Agreement between the Board and Hobsons, which was subsequently assigned to and adopted by PowerSchool (Ex. 2), are quoted from and referred to extensively, but even though Plaintiff asserts claims for breach of these agreements, he did not attach them to the Complaint. Nevertheless, these agreements are central to Plaintiff's claims against CPS and therefore may be considered without converting a 12(b)(6) motion into a motion for summary judgment. *MNdustries, Inc. v. MC Mach. Sys., Inc.*, 2019 WL 1317744, at *3 (N.D. Ill. Mar. 21, 2019) (considering a contract attached to a motion to dismiss because it is repeatedly cited in the complaint).

Information, Including Student Data." (*Id*. at 8–14.) These provisions are clearly intended to track and ensure Hobson's compliance with the statutes protecting student data, including the Family Educational Rights and Privacy Act ("FERPA") and the Illinois School Student Records Act ("ISSRA"). (*See, e.g.*, *id*. § 11.2.) The 2015 Agreement also contains provisions requiring Hobsons to comply with the Board's Information Security Policy (§ 12) and an express warranty that Hobsons shall remain in compliance with all applicable laws. (*Id*. § 13.2.) For good measure, § 38.2 again reflects the parties' acknowledgement of the obligations imposed by FERPA and agreement to comply with them.

The Board entered into a second contract with Hobsons on July 1, 2020, which was assigned to PowerSchool after the acquisition. (*See* Ex. 2; *see also* Compl. ¶ 59.) In this agreement, the Standards of Performance term was moved to § 6 but contains similar requirements of professionalism in the handling of confidential information. (Ex. 2 at 4.) The detailed provisions on the handling of student data can be found in § 8 of the 2020 Agreement. (*Id*. at 6–12.) Again, § 8 carefully tracks the language of and duties imposed by FERPA and ISSRA. Section 11.2 contains the express promise to comply with all laws, expressly including FERPA and ISSRA. (*Id*. at 13.) After it acquired Hobsons, PowerSchool expressly assumed all of the rights and obligations of Hobsons under the Agreement. (*Id*. at 1.)

**<u>Heap's Technology</u>**

According to the Complaint, Heap "is a software-as-a-service provider whose software enables the interception, monitoring, capture and recording of the entirety of a website users' actions…" (Compl. ¶ 103.) Heap's technology can allegedly be installed "by embedding and integrating a snippet of code, written in JavaScript, into the website." (*Id*. ¶ 104.) The Complaint alleges that once the "snippet of code" is embedded, Heap's software can "surreptitiously intercept, monitor, capture and record in real-time the actions, interactions, data transmissions and

communications of website users and contemporaneously transmits that information and data to Heap's servers." (*Id.* ¶ 110.) At some unspecified point in time, Plaintiff alleges that PowerSchool embedded this snippet of code into the Naviance platform. (*Id.* ¶ 113.) The Complaint avers that Plaintiff found out about the embedding of Heap's technology into Naviance in July 2023. (*Id.* ¶ 127.) This Complaint was filed on August 18, 2023.

The Complaint alleges that the Heap technology (along with the integration of other unspecified technologies) violated the reasonable expectation of privacy he had while interacting with the Naviance platform. (*Id.* ¶¶ 117, 122–26.) Apparently, this alleged violation of the confidentiality of his school records was distressing. (*Id.* ¶¶ 253, 315.) While the Complaint also accuses the Board of negligence, it does not allege that the Board had wrongfully collected or disclosed any data about him via Naviance. Instead, QJ alleges that the Board undertook (1) a duty to supervise its vendors, and (2) a duty to supervise any use of (or access to) student data and records. (*Id.,* ¶¶ 298–300.) QJ then alleges that the Board negligently failed in that supervision. More specifically, QJ alleges that the Board negligently failed to supervise its vendors (PowerSchool and Hobsons). (*Id.* ¶¶ 302(c), 305, 308(a), 311(b) and 311(c) (alleging that the Board's failure to supervise the vendors ended up compromising student data and records); *see also id.* ¶ 313.) And QJ alleges that the Board failed to supervise the use of, and access to, sensitive student records and data. (*Id.* ¶¶ 302–304, 306, 308(b), 309–310, 311(a) (claiming that the Board's failure to supervise led to wrongful use of student records and data); *see also id.* ¶ 313.).

QJ's negligent supervision claim—pled as Count Fourteen—was his only claim against the Board, despite a plethora of other claims pled against Hobsons, PowerSchool, Heap, and their employees. (*Id.* ¶¶ 296–315.) Nevertheless, the Complaint includes a Prayer for Relief that addresses all Defendants collectively. (*Id.* at 69.)

## ARGUMENT

There are several reasons that the Court should dismiss Count Fourteen, the sole count pled against the Board, each alone sufficient to dismiss the Board from this case entirely. First, as established in the Motion to Dismiss submitted contemporaneously by PowerSchool, the Complaint fails to allege a sufficiently concrete injury to establish standing, and thus the Court lacks subject matter jurisdiction and must dismiss pursuant to Rule 12(b)(1). Second, Count Fourteen should be dismissed pursuant to Rule 12(b)(6) because it fails to state a plausible claim for negligence on which relief can be granted. Third, even if Count Fourteen did state a claim, a claim for negligent supervision against the Board is barred by the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq*. Finally, in the event the Court does not dismiss the Board in its entirety, it should at least strike Plaintiff's allegations to the extent that they seek statutory damages, punitive damages and/or attorneys' fees from the Board, which would not be appropriate to award in a claim for simple negligence.

### I. QJ did not suffer any injury that conferred Article III standing.

Pursuant to this Court's Standing Order for Multiple Defendants Represented by Different Counsel and Fed. R. Civ. P. 12(g), the Board hereby incorporates Section I of PowerSchool's Memorandum of Law in Support of Its Motion to Dismiss, which asserts that the Complaint must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) for failing to plead an injury sufficient to confer standing to Plaintiff or the putative class.

### II. Count Fourteen fails to state a claim on which relief can be granted against the Board.

Count Fourteen attempted, but failed, to plead a common-law negligence claim against the Board. (Compl. ¶¶ 296–315). In Illinois, to state a cause of action for negligence, "a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff,

a breach of that duty, and an injury proximately caused by that breach." *Simpkins v. CSX Transp., Inc.,* 2012 IL 110662, ¶ 14. QJ's Complaint fails on all three fronts.

**A. The Complaint improperly seeks to bootstrap a common law duty from FERPA and ISSRA**

Under Illinois law, a duty "may exist by way of a statute or at common law." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.,* 210 F. Supp. 3d 1022, 1041 (S.D. Ill. 2016). Here, the Complaint alleges that the Board's duty arises from "the FERPA and the ISSRA, as well as pursuant to the Initial and Subsequent Contracts [between the Board and Hobsons]." (Compl. ¶ 298.) These allegations fail to state a claim on which relief can be granted and should be dismissed.

"Nearly two decades ago, the Supreme Court held that FERPA's 'nondisclosure provisions fail to confer enforceable rights.'" *Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 850 (N.D. Ill. 2020) (dismissing claims against an educational software provider asserted under FERPA and ISSRA) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002)); *see also Shockley v. Svoboda*, 342 F.3d 736, 741 (7th Cir. 2003) ("where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit under § 1983 or under an implied right of action."). QJ may not circumvent this long-standing precedent by alleging that he has a right to privately enforce FERPA by asserting a negligence claim.

In *Kylie S* this Court dismissed a claim under ISSRA that sought to expand the rights conferred by the statute. 475 F. Supp. 3d at 849–50. Just like with FERPA, this Court held that failure to plead an actual violation of ISSRA was fatal to plaintiff's claim. *Id*. at 849 ("while the complaint elaborates a dozen different causes of action, it does not allege that Pearson ran afoul of FERPA or ISSRA."). Here, Plaintiff attempts to plead that the Board's negligent supervision breached a duty of care owed to him under ISSRA, but not that the Board actually violated ISSRA. Particularly in light of the fact that ISSRA does authorize a private right of action for negligent

violations, 105 ILCS 10/9(b), this posturing is confounding. In reality, both Kylie S and QJ (who are represented by the same counsel) are similarly attempting to end-run the legislature's intended scope of ISSRA. This should not be permitted.

**B. The Complaint fails to establish a breach of duty.**

Even if there was an applicable duty of care, the Complaint fails to establish how the Board may have breached it. In part, this is simply because the allegations of the Complaint make no sense, particularly as they pertain to the Board.

On its face, Count Fourteen asserts that the Board was negligent because it failed to stop Hobsons, PowerSchool, and/or Heap from allegedly breaching their contractual obligations to the Board, for which Plaintiff claims to be a third-party beneficiary. To begin, the "breach" Plaintiff alleges did not occur, as outlined in Section II.B of PowerSchool's motion to dismiss, which the Board hereby incorporates as if set forth fully herein. The Board cannot be held liable for "allowing" a breach that did not occur.

Even assuming, *arguendo*, that a breach did occur, Plaintiff's allegations against the Board do not make sense. Plaintiff does not dispute that there was a valid agreement in place between the Board and Hobsons/PowerSchool and does not dispute that this agreement contains provisions requiring Hobsons/PowerSchool to comply with all applicable laws, including FERPA and ISSRA. (*See, e.g.*, Compl. ¶ 278.) Rather, Plaintiff claims that he is entitled to performance of the contractual duties that PowerSchool owed to the Board, and that the Board negligently allowed the alleged breach to happen. Since the "breach" occurred by inserting Heap's code into the Naviance platform, the only way for the Board to live up to the standard of conduct demanded by Plaintiff would be to require the Board to monitor and inspect every single line of code in the

Naviance software.[3] Not only do these allegations fly far beyond the statutory boundaries of FERPA and ISSRA, they are manifestly unreasonable. Indeed, Plaintiff seemingly has no objection to the fact that the Board entered into the Agreement with PowerSchool, to the use of the Naviance platform, or even to the fact that by virtue of the agreement, PowerSchool had access to student data. Nor does Plaintiff really suggest that there is a problem with Heap being in possession of his data. (*See*, *e.g.*, Compl. at Count 13). Rather, Plaintiff appears to take umbrage with the manner in which the data was allegedly ***collected***, an issue that is not addressed by either FERPA and ISSRA, let alone the basis for the breach of a duty owed to Plaintiff.

In the absence of any legally cognizable breach, Count Fourteen must be dismissed.

**C. The Complaint fails to allege an injury proximately caused by the alleged breach.**

Count Fourteen also fails because Plaintiff did not plead an injury proximately caused by the Board's supposed failure to supervise. To be sure, Count Fourteen includes ¶ 315, which described two types of losses: "losing control over their sensitive and confidential records and data" and "distress" (Compl. ¶ 315). But neither of those supposed losses are enough to plead an injury to support a negligence claim.

To adequately plead a claim for negligence, Plaintiff must describe a harm that is separate and distinct from the supposed breach of a duty. *See Kim v. Hemingway House Condo. Ass'n,* 2023 IL App (1st) 211115-U, ¶ 110; *see also Wills v. Foster*, 229 Ill. 2d 393, 401 (2008) ("The purpose of compensatory tort damages is to compensate; it is not the purpose of such damages to punish defendants or bestow a windfall upon plaintiffs.") (citations omitted). That is, a plaintiff cannot plead a viable claim for negligence merely by alleging that a defendant breached a duty. *Lewis v. Lead Indus. Ass'n,* 2020 IL 124107, ¶ 29. QJ has failed to meet that standard here in his

---

[3] Of course, this would require the Board to fully inspect the Naviance code at the inception of the agreement, but also each and every time the code is updated or altered in any way to ensure that no third-party monitoring software was ever inserted.

claim that the Board permitted an intrusion into his purportedly sensitive data/records, which caused him to suffer a loss of control over those records. The breach and the harm are one and the same.

QJ's other supposed loss—that the Board's supposed breach of its duty distressed him—is not an injury that will support a negligence claim. In a negligence claim, a plaintiff must allege more than distress or anxiety; he must show serious or severe emotional injury. *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 707-08 (7th Cir. 2009). To plead a viable negligence claim, Illinois courts require a plaintiff to allege "medically verifiable manifestations of severe emotional distress." *Majca v. Beekil,* 289 Ill. App. 3d 760, 763 (1st Dist. 1997). QJ's Complaint does not even attempt to plead facts showing that level of emotional injury, and thus must be dismissed.

## III. Count Fourteen is barred by the Tort Immunity Act.

Notwithstanding all of the above deficiencies, QJ's claim against the Board for negligent supervision of PowerSchool must be dismissed pursuant to Section 3-108(a) of the Local Governmental and Governmental Employees Tort Immunity Act, which provides:

> Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.

745 ILCS 10/3-108(a). The plain language of Section 3-108(a) bars Count Fourteen, which seeks to hold the Board (a local public entity) liable for an allegedly negligent failure to supervise the conduct of PowerSchool in its performance of its contractual obligations to the Board.

Courts have applied Section 3-108 at the pleadings stage to dismiss claims that are barred. Indeed, in both *Lane v. DuPage Cnty. Sch. Dist.,* 2014 WL 518445, *4-5 (N.D. Ill. Feb. 10, 2014), and *Dixon v. Chicago Bd. of Educ.,* 304 Ill. App. 3d 744, 747–50 (1st Dist. 1999), the plaintiffs'

claims failed on the pleadings because Section 3-108 barred their claims for negligent failure to supervise.

Notably, Section 3-108(a) has a "willful and wanton" exception. That is, a local public entity can be liable for failing to supervise if its failure involves willful and wanton misconduct. 745 ILCS 10/3-108(a). Under the statute, "willful and wanton conduct" means "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others of their property." 745 ILCS 10/1-210. But Count Fourteen contains no such allegations. (*See* Compl. ¶¶ 296–315 (not alleging "actual or deliberate" intent to harm).) Similarly, Count Fourteen does not plead facts showing that the Board had an "utter indifference" or "conscious disregard" for the safety of any person or property. (*Id.*) At most, Count Fourteen obliquely mentions the term "grossly negligent," that alone is not sufficient. (*See id.* ¶ 315.) When a complaint does not plead facts showing willful and wanton conduct, a court can dismiss it at the pleadings stage. *Lane,* 2014 WL 518445, *4-5.

## IV. This Court should strike the claims for relief that cannot be charged against the Board.

Although motions to strike are generally disfavored, courts will use Rule 12(f) to strike portions of a pleading that are "patently defective and could not succeed under any circumstances." *Harris v. City of West Chicago,* 2002 WL 31001888, *9-10 (N.D. Ill. Sept. 3, 2002); *see also* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). The Complaint includes a Prayer for Relief that improperly lumps all of the Defendants together. (Compl. ¶ 69.) By pleading collectively, QJ's Complaint asked this Court for relief that QJ could never recover from the Board. For example, the Prayer for Relief does not distinguish between Defendants in Paragraph (b), which seeks "statutory, compensatory, punitive, exemplary, consequential, general and any other type of permissible damages in amounts to be determined at trial." In the event the Board is not dismissed

from this case entirely, these allegations should be stricken.

As an initial matter, Plaintiff nor the class should be entitled to any statutory damages from the Board as there is no allegation that the Board violated any statute.

Additionally, there can be no reasonable argument that the Board could be held liable for punitive or exemplary damages. Section 2-102 of the Tort Immunity Act provides that: "Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." 745 ILCS 10/2-102. Thus, a motion to strike would be appropriate. *Harris*, 2002 WL 31001888, at * 9 (striking claims for punitive damages against city and school defendants); *Clark v. City of Chicago*, 595 F. Supp. 482, 488 (N.D. Ill. 1984) ("the punitive damages prayers are stricken."). Moreover, "Illinois does not authorize punitive damages for ordinary negligence." *Jentz v. ConAgra Foods, Inc.*, 767 F. 3d 688, 693 (7th Cir. 2014) (overturning jury award of $1,000,000 in punitive damages). To justify a demand for punitive damages, Illinois requires willful and wanton conduct. *Id*.

Similarly, a common law claim for simple negligence does not warrant the award of attorney's fees as requested in Paragraph (f) of the Prayer. *Nutrasweet Co. v. X-K Eng'g Corp.*, 926 F. Supp. 767, 771 (N.D. Ill. 1996) ("the court agrees with Defendants that Plaintiff may not recover attorneys' fees based on negligence claims."). In the absence of any statutory or contractual provisions allowing the recovery of attorneys' fees, the "American Rule" is that attorneys' fees are not recoverable on Illinois negligence claims. *Bailey v. Worthington Cylinder Corp.*, 2017 WL 106461, at *3 (N.D. Ill. 2017); *see also Clark*, 595 F. Supp. at 488.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Board's Motion to Dismiss under either Rule 12(b)(1) or 12(b)(6). At no point in the 70-page Complaint does the Plaintiff, alone or

as part of the putative classes, plead a viable claim against the Board.

Respectfully submitted,

**DEFENDANT BOARD OF EDUCATION OF THE CITY OF CHICAGO**

December 21, 2023

By: /s/ Christopher J. Esbrook
Christopher J. Esbrook
Zachary L. Sorman
ESBROOK, P.C.
321 N. Clark Street
Suite 1930
Chicago, IL 60654
(312) 319-7680
Christopher.Esbrook@esbrook.com
Zachary.Sorman@esbrook.com

Ruchi Verma, General Counsel
Thomas A. Doyle, Assistant Deputy General Counsel
Board of Education of the City of Chicago
Department of Law
One North Dearborn Street
Suite 900
Chicago, Illinois 60602
773-553-1720
tadoyle2@cps.edu

*Counsel for Board of Education of the City of Chicago*

**CERTIFICATE OF SERVICE**

I certify that on December 21, 2023, I caused a copy of the foregoing document to be served upon Counsel of Record, via the Court's electronic filing system.

/s/ Christopher J. Esbrook