1  Robyn E. Bladow
   KIRKLAND & ELLIS LLP
2  555 South Flower Street, Suite 3700
   Los Angeles, CA 90071
3  Telephone: (213) 680-8400
   robyn.bladow@kirkland.com
4
   Martin L. Roth, P.C. (*pro hac vice*)
5  Alyssa C. Kalisky (*pro hac vice*)
   Amelia H. Bailey (*pro hac vice*)
6  KIRKLAND & ELLIS LLP
   300 North LaSalle
7  Chicago, IL 60654
   Telephone: (312) 862-2000
8  martin.roth@kirkland.com
   alyssa.kalisky@kirkland.com
9  amelia.bailey@kirkland.com

10 Olivia Adendorff, P.C. (*pro hac vice*)
   Rachael A. Rezabek
11 KIRKLAND & ELLIS LLP
   4550 Travis Street
12 Dallas, TX 75205
   Telephone: (214) 972-1770
13 olivia.adendorff@kirkland.com
   rachael.rezabek@kirkland.com
14
   *Attorneys   for   the   Defendant*
15 *PowerSchool   Holdings, Inc.*

16

17                 **UNITED STATES DISTRICT COURT**

18                **NORTHERN DISTRICT OF CALIFORNIA**

19                   **SAN FRANCISCO DIVISION**

20 EMILY CHERKIN, et al.,              CASE NO. 3:24-CV-02706-JD

21            Plaintiffs,              **NOTICE OF MOTION AND MOTION
                                       BY DEFENDANT TO DISMISS THE**
22 v.                                  **CLASS ACTION COMPLAINT**

23 POWERSCHOOL HOLDINGS, INC.,         Complaint filed: May 6, 2024

24            Defendant.               Judge:      The Hon. James Donato
                                       Courtroom:  Courtroom 11, 19th Floor
25                                     Date:       November 7, 2024
                                       Time:       10:00 a.m.
26

27

28

---

DEFENDANT'S NOTICE OF MOTION              CASE NO. 3:24-CV-02706-JD
AND MOTION TO DISMISS

1     TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

2          PLEASE TAKE NOTICE that, on November 7, 2024, at 10:00 a.m., or as soon thereafter as

3     the Court is available, Defendant PowerSchool Holdings, Inc. ("PowerSchool") will and hereby does

4     move the Court in Courtroom 11 of the federal courthouse located at 450 Golden Gate Avenue, San

5     Francisco, CA 94102, 19th Floor, to dismiss the Class Action Complaint (the "Complaint") filed by

6     Plaintiffs Emily Cherkin, on behalf of herself and as parent and guardian of her minor child, S.G., and

7     David Concepción, on behalf of himself and as parent and guardian of his minor children, L.M.C. and

8     M.M.C. (collectively, "Plaintiffs"), in the above-captioned action, pursuant to Federal Rule of Civil

9     Procedure 12(b)(6) on the basis that the pleading fails to state a claim upon which relief can be granted.

10         PowerSchool's motion is based on this Notice of Motion and Motion, the following

11    Memorandum of Points and Authorities, any additional briefing on this subject, and any evidence and

12    arguments that will be presented to the Court at the hearing on this matter.

13    DATED:  July 22, 2024                          Respectfully submitted,

14                                                   KIRKLAND & ELLIS LLP

15                                                   *Olivia Adendorff*

16                                                   _____
                                                     Olivia Adendorff, P.C.

17                                                   *Attorney for Defendant PowerSchool*
                                                     *Holdings, Inc.*
18

19

20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

Introduction ....................................................................................................................... 1

Background ........................................................................................................................ 1

I.    PowerSchool Provides Administrative and Pedagogical Assistance to Schools as Authorized by Federal and State Law ............................................................... 1

II.    PowerSchool Publicly Discloses Its Data Practices .................................................. 3

III.    Plaintiffs Seek to Bring a Privacy Class Action Based on Scattershot Factual Allegations Untethered to Their Legal Claims. .................................................. 4

Legal Standard .................................................................................................................. 5

Argument ........................................................................................................................... 5

I.    Plaintiffs Fail to Plead an Expectation of Privacy or Offensiveness for Counts I and VI. ....................................................................................................................... 6

II.    Count II Must Be Dismissed for Failure to Plead Reliance. .................................... 8

III.    Plaintiffs' CIPA Claims (Counts III) Fail as a Matter of Law ................................. 9

IV.    Plaintiffs Fail to State Any Unfair Competition Claim (Count IV) ....................... 10

V.    Plaintiffs' CDAFA Claim (Count V) Fails as a Matter of Law. ............................ 11

VI.    Plaintiffs Cannot State a Claim for Statutory Larceny (Count VII). ..................... 12

VII.    Plaintiffs' Unjust Enrichment Claim (Counts VIII) Fails as a Matter of Law ...... 13

VIII.    The Court Should Dismiss All of Plaintiffs S.G.'s and Cherkin's Claims Because They Cannot Sue Under California Law ........................................................... 13

Conclusion ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amin v. Subway Restaurants, Inc.*
2021 WL 11680840 (N.D. Cal. Oct. 7, 2021)..........................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................5

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...............................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................5, 9, 11

*Blinka v. Wash. State Bar Ass'n*,
36 P.3d 1094 (Wash. App. 2001) ........................................................................................14

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................................................11

*Cafasso, U. S. ex rel v. Gen Dynamics C4 Sys., Inc.,* 637 F.3d 1047 (9th Cir. 2011) ....................5

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ......................................................................14

*Clark v. VIP Petcare, LLC*,
2023 WL 2779090 (N.D. Cal. Apr. 4, 2023) ..........................................................................8

*Cousart v. OpenAI LP*,
2024 WL 3282522 (N.D. Cal. May 24, 2024) ....................................................................1, 5

*Cousineau v. Microsoft Corp.*,
992 F. Supp. 2d 1116 (W.D. Wash. 2012)............................................................................15

*Davis v. Wells Fargo Bank, N.A.*,
2010 WL 2724090 (N.D. Cal. July 8, 2010).........................................................................11

*Deteresa v. American Broadcasting Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) ...............................................................................................7

*Diaz v. Fed. Express Corp.*,
373 F. Supp. 2d 1034 (C.D. Cal. 2005) .................................................................................8

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
392 F. Supp. 3d 1074 (N.D. Cal. 2019) ...............................................................................13

*Doe v. Kaiser Found. Health Plan, Inc.*,
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ...................................................................12, 13

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) ...............................................................................11

*Elsayed v. McAlee*,
  2018 WL 3659249 (N.D. Cal. Aug. 2, 2018) .......................................................................12

*In re Facebook Priv. Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ...................12

*Frenzel v. AliphCom*,
  76 F. Supp. 3d 999 (N.D. Cal. 2014) ...................................................................................13

*Frezza v. Google Inc.*,
  2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) .....................................................................15

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d at 827 ..........................................................................................................10

*In re Google, Inc. Priv. Pol'y Litig.*,
  2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .........................................................................6

*In re Google, Inc. Privacy Pol'y Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ...................................................................................11

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................................................9

*Habelt v. iRhythm Techs., Inc.*,
  2022 WL 971580 (N.D. Cal. Mar. 31, 2022), *appeal dismissed*, 83 F.4th 1162
  (9th Cir. 2023).........................................................................................................................3

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..........................................................................11, 13

*Heeger v. Facebook, Inc.*,
  509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......................................................................4, 6, 10

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ......................................................................11

*Hill v. Nat'l Collegiate Athletic Assn.*,
  865 P.2d 633 (Cal. 1994) .................................................................................................6, 7

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..............................................................................7, 8

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..............................................................................8

*Lau v. Gen Digital Inc.*,
    2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ...............................................12, 13

*Licea v. Am. Eagle Outfitters, Inc.*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023) ................................................................9

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021).............................................................10

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale
    Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ................14, 15

*McClung v. AddShopper, Inc.*,
    2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......................................................10

*McLellan v. Fitbit, Inc.*,
    2018 WL 2688781 (N.D. Cal. June 5, 2018) .......................................................13

*In re Meta Pixel Tax Filing Cases*,
    2024 WL 1251350 (N.D. Cal. Mar. 25, 2024)....................................................13

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ..................................................................8

*Sheehan v. San Francisco 49ers, Ltd.*,
    201 P.3d 472 (Cal. 2009) .......................................................................................8

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) .................................................................................3

*Sullivan v. Oracle Corp.*,
    254 P.3d 237 (Cal. 2011) ...............................................................................13, 14

*Tanner v. Acushnet Co.*,
    2023 WL 8152104 (C.D. Cal. Nov. 20, 2023)................................................10, 12

*Taylor v. San Francisco Sheriff's Dep't*,
    2024 WL 2808650 (N.D. Cal. May 31, 2024) ......................................................8

*Wade Cook Seminars, Inc. v. Mellon*,
    95 Wash. App. 1008 (1999)..................................................................................15

*Zinn v. Ex–Cell–O Corp.*,
    306 P.2d 1017 (Cal. App. 1957) ..........................................................................15

**Statutes**

20 U.S.C. § 1232g(f) ........................................................................................................2

Cal. Bus. & Prof. Code § 17204 ....................................................................................10

Cal. Civ. Code § 1709 ......................................................................................................8

Cal. Civ. Code § 1710 ......................................................................................................8

Cal. Educ. Code § 49073.1(a)(1) ...........................................................................3, 6, 12

Cal. Educ. Code § 49076(a) .......................................................................................2, 7

Cal. Penal Code § 496(c) ................................................................................................12

Cal. Penal Code § 502 ..............................................................................................11, 12

Cal. Penal Code § 631(a) .................................................................................................9

Wash. Rev. Code Ann. § 9.73.030(1)(a) ........................................................................15

Wash. Rev. Code Ann. § 9A.90.010 *et seq* ...................................................................14

**Rules**

Fed. R. Civ. P. 8(a)(2) ......................................................................................................5

Fed. R. Civ. P. 9(b) .......................................................................................................5, 8

Fed. R. Civ. P. 12(b)(6) ...........................................................................................2, 1, 5

**Other Authorities**

34 C.F.R. § 99.31(a)(1)(i)(B) ...................................................................................2, 6, 7

34 C.F.R. § 99.33(a)(2) ....................................................................................................2

1

## **INTRODUCTION**

2      In the past 30 years, schools—like every other part of the modern economy—have transformed

3  from pen-and-paper records to digital recordkeeping and web-based communications.  Instead of

4  spiral-bound grading books or "blue books" for essay exams, schools now utilize sophisticated online

5  portals and programs.  Defendant PowerSchool Holdings, Inc. ("PowerSchool") provides education

6  software products to schools and school districts to digitize student record management and other

7  educational or administrative functions.  The federal and state laws governing student records,

8  including the Family Educational Rights and Privacy Act ("FERPA") and the California Education

9  Code, explicitly authorize the use of such tools and allow schools to rely on contractors like

10  PowerSchool to manage student data.  The school and/or school district maintains ownership and

11  control of its students' records and chooses the products that will aid its specific educational mission.

12      Plaintiffs' sprawling Complaint includes extensive citations to broad, general social critiques

13  condemning surveillance capitalism, cybercrimes, and manipulative digital product design, in an

14  apparent attempt to mask that they cannot make specific allegations of wrongdoing by PowerSchool.

15  The "general policy concerns and irrelevant information" included at length in the Complaint unduly

16  "interfere[] with a clear presentation of the legal claims at issue," warranting dismissal on that ground

17  alone.  *Cousart v. OpenAI LP*, 2024 WL 3282522, at *1 (N.D. Cal. May 24, 2024).  And when stripped

18  of the near endless rhetoric, the Complaint includes no more than vague and unsupported generic

19  allegations of privacy theories that are in direct conflict with the more specific legislation that

20  authorizes the challenged conduct.  Plaintiffs do not (because they cannot) adequately plead the core

21  elements for any of their legal claims.  The Court should therefore dismiss their Complaint with

22  prejudice under Rule 12(b)(6).

23

## **BACKGROUND[1]**

24  **I.   PowerSchool Provides Administrative and Pedagogical Assistance to Schools as

25        Authorized by Federal and State Law.**

26      PowerSchool is an education technology company that provides administrative and

27  pedagogical assistance to schools and school districts.  ECF 1, Compl. ¶¶ 33, 36.  It assists its school

28

---

[1]   Except as otherwise noted, the facts herein are drawn from the Complaint and accepted as true for
this motion only.

1   and school district customers in collecting and managing their own student records. *Id.* ¶ 40.

2   PowerSchool has not altered the traditional school–student relationship. Schools have always

3   collected and maintained records on their students about a wide range of academic and social issues,

4   including, for example, students' academic capabilities, family status, vaccines, health-related

5   absences, disciplinary records, and visits to the school guidance counselor, just to name a few. *Id.*

6   PowerSchool simply provides software to make that process easier and help a school more efficiently

7   utilize its own information in meaningful ways, such as by helping the school connect students with

8   relevant job or higher education opportunities, *id.* ¶¶ 61, 70–72 (explaining how PowerSchool's AI

9   chatbot offers the services of "guidance counselors for the purpose of post-K12 planning"), or by

10   flagging at-risk kids in need of additional school resources, *id.* ¶ 61.

11        Governing laws expressly allow schools to share their student data with contractors like

12   PowerSchool without having to collect consent from individual students or their parents. FERPA, as

13   interpreted by its enforcer, the Department of Education, *see* 20 U.S.C. § 1232g(f), allows student data

14   to be shared with contractors who "[p]erform[] an institutional service or function for which the

15   [educational] agency or institution would otherwise use employees" without parental consent. *Id.*

16   § 1232g(b)(1)(A); 34 C.F.R. § 99.31(a)(1)(i)(B)(1). Consistent with that federal authorization, the

17   California Education Code allows school districts to provide "access to pupil records" to a person

18   authorized by federal regulation to have them "without written parental consent." Cal. Educ. Code

19   § 49076(a). The Code also independently permits school districts to release student records to

20   contractors providing "outsourced institutional services or functions" to the districts "without written

21   parental consent." *Id.* § 49076(a)(2)(G)(i).

22        Of course, a contractor must meet certain requirements to be entrusted with student records.

23   Both FERPA and the California Education Code require contractors to act under the direct control of

24   the schools they serve and comply with contractual obligations to the schools. On the federal side,

25   contractors like PowerSchool must act "under the direct control of the [educational institution] with

26   respect to the use and maintenance of education records" and use the student records "only for the

27   purposes for which the disclosure was made." 34 C.F.R. §§ 99.31(a)(1)(i)(B)(2), 99.33(a)(2).

28   Likewise, in California, the Education Code clarifies that student records are "the property of and

1    under the control of" the schools.  Cal. Educ. Code § 49073.1(b)(1).  A contractor must also promise

2    to its school customers that it will not "us[e] any information in the pupil record for any purpose other

3    than those required or specifically permitted by the contract."  *Id.* § 49073.1(b)(3).

4         PowerSchool duly implements these requirements in its contracts with its school customers.

5    Indeed, Plaintiffs admit that PowerSchool's handling of student data "is strictly controlled by the

6    customer ***through contractual obligations***, including data privacy agreements or privacy impact

7    assessments."  Compl. ¶ 151; *accord id.* ¶ 153 (reemphasizing the same); *id.* ¶ 155 ("[PowerSchool]

8    do[es] not use Student Data for any purpose other than to provide the services . . . ."); *id*. ¶ 153

9    (PowerSchool acknowledges that "schools own and control student data").

10        Critically, ***Plaintiffs <u>do not allege</u> that PowerSchool acted in contravention of its contractual***

11   ***requirements with any customer nor that it operated outside the bounds of FERPA or the California***

12   ***Education Code.***

13        As with PowerSchool, other companies also provide products for schools as contractors.  *When*

14   *schools direct PowerSchool to do so*, PowerSchool can connect its systems to these other products

15   (such as EAB, Capture, and Finalsite) so that the schools' suite of software providers can interoperate.

16   *See, e.g.*, *id.* ¶ 108 (EAB provides services to "education institutions"); *id.* ¶ 115 (Capture provides

17   tools to "school personnel"); *id.* ¶ 116 (Finalsite provides services for "educational institutions").

18   **II.    PowerSchool Publicly Discloses Its Data Practices.**

19        PowerSchool publicly discloses its data practices in its Global Privacy Statement.  Ex. 1.[2]

20   PowerSchool receives two types of data about students:  data about students that PowerSchool receives

21   directly from the school, parent, or student,[3] and data passively generated by PowerSchool applications

22   and websites as a user interacts with them.  The second category is technical "device and usage

23   information" generated by PowerSchool's websites or software when users interact with them, which

24

25   [2]  Plaintiffs reference this document extensively in the Complaint.  *See, e.g.*, *id.* ¶¶ 145, 146, 149,
     173, 181.  As a result, the Court may consider "the full text of" these disclosures, "including
26   portions which were not mentioned in the complaint[] in a ruling on a motion to dismiss."  *Habelt*
     *v. iRhythm Techs., Inc.*, 2022 WL 971580, at *5 (N.D. Cal. Mar. 31, 2022), *appeal dismissed*, 83
27   F.4th 1162 (9th Cir. 2023) (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir.
     1996)).
28   [3]  *See* Ex. 1, "Customer Data" and "Information You Provide" sections.  All citations in the form of
     "Ex. __" are to exhibits to the Rezabek Declaration, filed herewith.

DEFENDANT'S NOTICE OF MOTION          3          CASE NO. 3:24-CV-02706-JD
AND MOTION TO DISMISS

includes their "unique device identifier, IP address, [their] browser type and configuration, the date and time of [their] use of the product or service and cookie data."[4]   PowerSchool discloses that it collects such data automatically.[5]

### III.   Plaintiffs Seek to Bring a Privacy Class Action Based on Scattershot Factual Allegations Untethered to Their Legal Claims.

Plaintiffs—a Washington parent, a California parent, and their respective minor children—bring a plethora of privacy-related claims against PowerSchool.  Plaintiffs seek to represent four classes:  a nationwide student class, *id.* ¶ 414, a nationwide parent class, *id.* ¶ 415, a California student subclass, *id.* ¶ 416, and a California parent subclass, *id.* ¶ 417.

The allegations that purport to support Plaintiffs' privacy claims are far from clear.  The Complaint reads "like a book report that simply summarizes" horror stories about surveillance capitalism (*id.* ¶¶ 19–32), cybercrimes (*id.* ¶¶ 192–94), and targeted marketing and "datafication" (*id.* ¶¶ 304–09, 311–13).  *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1187 (N.D. Cal. 2020) (Donato, J.).  This extensive background is tied to PowerSchool by nothing other than Plaintiffs' insinuations.  *See, e.g.*, Compl. ¶¶ 191, 303, 321.

Where Plaintiffs *do* attempt to tie their allegations to PowerSchool in a concrete way, they ignore the operative legal framework.  For example, a core theme of Plaintiffs' Complaint is PowerSchool's alleged non-consensual collection of student data.  *See id.* ¶¶ 136, 137, 140, 144–49, 166–90, 253–69.  Yet nowhere in the Complaint do Plaintiffs cite or even acknowledge FERPA or the California Education Code, which expressly authorize schools to hire contractors to receive student data *without* having to obtain individual student or parent consent.  Another core theme of Plaintiffs' allegations is PowerSchool's alleged "commercialization" of student data.  *See id.* ¶¶ 43–46, 56, 58–62, 68, 82–91, 104–137.[6]  But Plaintiffs once again ignore that providing schools tools to manage, analyze, and generate insights from *their own data* is precisely what laws such as FERPA and the

---

[4]   *See* Ex. 1, "Collected Data," "Transaction Data," and "Information We Collect Automatically" sections.
[5]   *See* Ex. 1, "Information We Collect Automatically" section.
[6]   Note that Plaintiffs' commercialization allegations rely in part on their allegations related to a product called P20W.  *See* Compl. ¶¶ 93–101.  P20W is in development and has not been launched with a single customer.  In any case, the hope for P20W is simply to offer schools or their governing departments of education additional tools for analyzing and tracking *their own data*.

California Education Code allow.  The law does not require PowerSchool to provide these tools for free.  Plaintiffs do not (and cannot) allege that PowerSchool exceeds what it can lawfully do by merely charging a fee for its valuable services.

Stripped of these hodgepodge allegations and mischaracterizations, Plaintiffs' Complaint has little left.  For most claims, Plaintiffs present "threadbare recitals of a cause of action's elements, supported by mere conclusory statements"—or less.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  And to survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The allegations must be sufficiently concrete to give the defendant an idea of "where to begin" in responding to the complaint. *Id*. at 565 n.10.  For claims sounding in fraud, plaintiffs must additionally satisfy the requirement of Rule 9(b) that they "state with particularity the circumstances constituting fraud" by "identify[ing] the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1054–55 (9th Cir. 2011) (internal quotations omitted).

## ARGUMENT

Plaintiffs cite many privacy-related theories but fail to support a claim under any of them.  Very few paragraphs within the Complaint are devoted to actual allegations about PowerSchool.  Thus, despite its length, the Complaint is readily dismissible because its "swaths of unnecessary and distracting allegations mak[es] it nearly impossible to determine the adequacy of [P]laintiffs' legal claims." *Cousart* 2024 WL 3282522, at *1.  In any case, the Complaint should also be dismissed because Plaintiffs fail to allege "enough facts to state [any] claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Even if one disregards the express authorization under FERPA and the California Education Code for PowerSchool to perform the alleged actions, each count fails on its own merits.

1

**I.      Plaintiffs Fail to Plead an Expectation of Privacy or Offensiveness for Counts I and VI.**

2          Plaintiffs' claims for common law intrusion upon seclusion (Count I) and invasion of privacy

3   under the California Constitution (Count VI) are "distinct claims with different elements." *Heeger*,

4   2019 WL 7282477, at *3 (Donato, J.).  But when brought together on the same factual basis, "it is

5   appropriate to assess the two claims together and examine . . . (1) the nature of any intrusion upon

6   reasonable expectations of privacy, ***and*** (2) the offensiveness or seriousness of the intrusion, including

7   any justification and other relevant interests." *Id.* (emphasis added).  Plaintiffs' claims here touch on

8   the two categories of data described above:  (1) data shared directly by schools, students, or parents

9   about students, and (2) passively generated technical data.  *See* Compl. ¶¶ 448, 449, 542; *supra* at 3–

10  4.  The claims fail to meet the required elements for either category of data.

11         Regarding the first category, Plaintiffs fail to plead that they have a reasonable expectation of

12  privacy vis-à-vis their schools and their schools' contractor with respect to the information they

13  knowingly provide to their own schools.  To satisfy this element, Plaintiffs must plead that they have

14  "an objectively reasonable expectation of seclusion or solitude in the place, conversation or data

15  source." *In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL 6248499, at *15 (N.D. Cal. Dec. 3, 2013)

16  (internal quotations omitted).  A reasonable expectation "is an objective entitlement founded on

17  broadly based and widely accepted community norms." *Hill v. Nat'l Collegiate Athletic Assn.*, 865

18  P.2d 633, 655 (Cal. 1994).  "Advance notice" of the allegedly intruding action can diminish an

19  expectation of privacy. *Id.*

20         As alleged by Plaintiffs, all data falling into the first category is what students would provide

21  their school even if their school did not use PowerSchool as a contractor.  Community norms expect

22  schools to keep students' "[s]chool records" such as "enrollment data," "student grades," and

23  "extracurricular program membership," their "[c]ontact information," "[d]emographic information,"

24  "[d]isciplinary and behavioral information," "[m]edical information," and communications with their

25  parents.  Compl. ¶ 40.  And the schools are legally authorized to hire PowerSchool to help with the

26  "digital storage, management, and retrieval of" of these routine student records.  Cal. Educ. Code

27  § 49073.1(a)(1); *accord* 34 C.F.R. § 99.31(a)(1)(i)(B).  It is entirely reasonable and within accepted

28  community norms for a school to share student data with the exact contractor hired to manage (and

often, even directly interact with the student on the school's behalf to collect) that data.

Indeed, schools are legally authorized to give PowerSchool access to such data *without* having to collect consent from individual students and parents. *See* 34 C.F.R. § 99.31(a)(1)(i)(B); Cal. Educ. Code § 49076(a). Under the governing legal framework, Plaintiffs cannot seriously claim they reasonably expect their schools to keep their records shielded from a contractor whose role in processing these records is explicitly authorized by law. Moreover, as Plaintiffs allege, they are well aware that the schools they attend use PowerSchool to assist them with student records management. Compl. ¶ 348. In fact, they directly interact with PowerSchool products in order to share their information with their schools (*e.g.*, submitting a homework assignment through PowerSchool's Schoology product). *Id.* ¶¶ 376, 377, 380. Such "advance notice" diminishes Plaintiffs' alleged expectation of privacy. *Hill*, 865 P.2d at 655. Thus, Plaintiffs have no reasonable expectation of privacy in data submitted to their own schools, and they cannot sustain a claim for intrusion upon seclusion or invasion of privacy as to that data.[7]

***Second***, as to passively collected technical data, Plaintiffs' allegations of offensiveness also fail. To be "highly offensive," the alleged intrusion must be "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an *egregious breach* of the social norms underlying the privacy right." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). Although the offensiveness determination usually requires factual assessment, where the allegations are obviously inadequate, as they are here, the question of offensiveness may be decided as a matter of law. *See Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 465 (9th Cir. 1997) ("If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law.").

Even as described by Plaintiffs, the technical data collected by PowerSchool is only data about students' devices and use of PowerSchool's own products, such as "unique device identifiers," "IP address," "browser type and configuration," and "cookie data," which is generated when they are using

---

[7]  Plaintiffs spill much ink alleging PowerSchool has "offensive" data practices, including allegedly "monetiz[ing]" their data and using their data to develop products. *See, e.g., id.* ¶¶ 448, 452. As PowerSchool points out, these allegations are based on Plaintiffs' own confusion. *Supra* at 4–5. Regardless, Plaintiffs' failure to plead a reasonable expectation of privacy dooms their claim without the need to consider the offensiveness element.

1   PowerSchool products.  Compl. ¶ 277.  As courts have repeatedly held, collecting this kind of data,

2   which is ubiquitous across the internet, does not egregiously breach social norms.  *See, e.g.*, *In re*

3   *iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (disclosing "unique device identifier number,

4   personal data, and geolocation information" to third parties does not constitute an egregious breach of

5   social norms)).[8]  Further, PowerSchool adequately discloses that it collects such device and use data.

6   *See supra* at 3–4.  In short, the obvious nature of this metadata collection, which occurs when Plaintiffs

7   choose to knowingly interact with PowerSchool's products and websites, defeats Plaintiffs'

8   offensiveness allegation.  *See Sheehan v. San Francisco 49ers, Ltd.*, 201 P.3d 472, 478 (Cal. 2009)

9   ("If voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a

10  reasonable person'").  Thus, Plaintiffs' claims as to this category of data fail as well.  *See In re iPhone*

11  *Application Litig.*, 844 F. Supp. 2d at 1063; *see also Taylor v. San Francisco Sheriff's Dep't*, 2024

12  WL 2808650, at *18 (N.D. Cal. May 31, 2024).

13  **II.     Count II Must Be Dismissed for Failure to Plead Reliance.**

14          In order for Plaintiffs' claim under California Civil Code §§ 1709-10 (Count II) to survive

15  dismissal, Plaintiffs must allege, among other elements, justifiable reliance on an alleged

16  misrepresentation.  *See Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1066–67 (C.D. Cal. 2005)

17  (internal quotations omitted).  Moreover, this claim is subject to the heightened pleading standards of

18  Rule 9(b).  *See Clark v. VIP Petcare, LLC,* 2023 WL 2779090, at *1 (N.D. Cal. Apr. 4, 2023).

19          Plaintiffs' fraud claim must be dismissed because they do not allege reliance.  Nowhere in the

20  Complaint do Plaintiffs allege that they actually *read* PowerSchool's privacy representations.  Without

21  reading them, Plaintiffs cannot have *relied* on those statements in choosing to provide their

22  information.  *See Amin v. Subway Restaurants, Inc.* 2021 WL 11680840, at *3 (N.D. Cal. Oct. 7, 2021)

23  (dismissing fraud claim because plaintiff failed "describe the specific statements they saw and relied

24  upon, when they saw the statements, and where the statements appeared") (citing *Kearns v. Ford*

25  *Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)).  As such, Count II should be dismissed.

---

26  [8]   *See also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (capturing "(a) [t]he user's
27        mouse clicks; (b) [t]he user's keystrokes; (c) [t]he user's payment card information, including card
        number, expiration date, and CCV code; (d) [t]he user's IP address; (e) [t]he user's location at the
        time of the visit; and (f) [t]he user's browser type and the operating system on their devices" does
28        not constitute "a serious invasion of a protected privacy interest").

1    **III.**    **Plaintiffs' CIPA Claims (Counts III) Fail as a Matter of Law.**

2    In Count III, Plaintiffs bring a claim under each clause of section 4(a) of the California Invasion

3 of Privacy Act ("CIPA"). Cal. Penal Code § 631(a). Of the section's four clauses, the first prohibits

4 making "unauthorized connection[s]" with "any telegraph or telephone wire, line, cable, or

5 instrument," the second prohibits eavesdropping on communications, the third prohibits using

6 information learned from eavesdropping, and the fourth imposes liability on aiders, abettors, and

7 conspirators. *Id.* Plaintiffs' CIPA claim fails under each clause.

8    Under the first clause, Plaintiffs do not plead that PowerSchool ever made connection with a

9 "*telegraph or telephone* wire, line, cable, or instrument." Cal. Penal Code § 631(a) (emphasis added).

10 Courts have "consistently interpreted this clause as applying only to communications over telephones

11 and not through the internet." *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1079 (C.D.

12 Cal. 2023) (dismissing internet-based CIPA claim under first clause and summarizing similar cases).

13 Without the predicate communication through the required channel, the claim fails at the gate.

14    Plaintiffs also cannot state a claim under the second clause. As an initial matter, it is unclear

15 what Plaintiffs' theory about eavesdropping really is. It is legally implausible for them to allege that

16 PowerSchool attempted to learn the contents of their communications *with PowerSchool's own*

17 *websites and products*,[9] because "[a] party to a communication can record it (and is not eavesdropping

18 when it does)." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). But to the extent

19 Plaintiffs allege that PowerSchool eavesdrops on their communications with unspecified third parties,

20 Plaintiffs' barebone assertions that they communicated with "one or more entities based in California,

21 or with one or more entities whose servers were located in California," Compl. ¶ 477, give

22 PowerSchool no idea of "where to begin" in responding to the Complaint. *Twombly*, 550 U.S. at 565,

23 n.10. For these reasons, regardless of which interpretation Plaintiffs may try to assert in their

24 opposition, their CIPA claim under the second clause of § 631(a) must be dismissed.

25    Given Plaintiffs cannot state a claim under the first two clauses, their remaining CIPA claim

---

26 [9]    Paragraph 473 of the Complaint is especially difficult to parse. It alleges that "PowerSchool

27 intentionally tapped and tracked Plaintiffs' and Class members' communications during and after navigating away from PowerSchool's websites." Reading this sentence in the most charitable

28 manner possible, PowerSchool interprets the freestanding "during" as implying communications that take place during Plaintiffs' visits to PowerSchool websites.

necessarily fails. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 827 (for third clause, "the information at issue" must be "obtained through a violation of the first or second clauses"); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (no underlying violation, no claim under the fourth clause).

**IV.   Plaintiffs Fail to State Any Unfair Competition Claim (Count IV).**

Plaintiffs bring a claim under all three prongs of California's Unfair Competition Law ("UCL").  Yet for all three prongs, the UCL requires them to "ha[ve] lost money or property" due to the alleged unfair competition.  Cal. Bus. & Prof. Code § 17204.  Plaintiffs have alleged no such loss.

Plaintiffs' allegations about "harm" are filled with general commentaries about the importance of data protection that bear no connection to Plaintiffs themselves.  Compl. ¶¶ 301, 304–09, 311–13, 323–27, 330–34, 345–50, 355–56.  Once "these fillers are stripped away," *Heeger*, 509 F. Supp. 3d at 1188, all Plaintiffs have left is their belief that their data has value in PowerSchool's hands, Compl. ¶¶ 353–59, and their disapproval of PowerSchool's generating revenue from providing valuable pedagogical and administrative services and tools to schools, *id.* ¶ 367.  But "[t]hat the information has external value, but no economic value to [a] plaintiff, cannot serve to establish that [the] plaintiff has personally lost money or property."  *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019).[10]  Plaintiffs fail exactly that requirement.

In an attempt to save their claim, Plaintiffs resort to conjecture:  "PowerSchool caused Plaintiffs to participate in a transaction for less than they otherwise would have had they been given a choice, including the choice not to participate at all."  Compl. ¶ 364.  This is not cognizable harm under the UCL.  Plaintiffs do not allege that they "intended or attempted to participate in [any] data market" or that they "lost the ability to participate in [any] data market."  *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *8 (C.D. Cal. Nov. 20, 2023).  Without alleging that they "personally lost money or property," *Bass*, 394 F. Supp. at 1040, Plaintiffs cannot proceed.

Plaintiffs' UCL claim fails on each of the three prongs for additional reasons as well.  For the

---

[10]   *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024) (disapproving of the "theory that California's statutory standing requirement[s]" like monetary loss or actual damages "can be satisfied simply by alleging that the defendant was unjustly enriched by the misappropriation of personal information") (collecting cases).

1    unlawful prong, Plaintiffs' allegations are derivative of their other claims in the Complaint.[11]  Because

2    those other claims fail, Plaintiffs' claims under the UCL unlawful prong fail by association.  *See, e.g.*,

3    *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 984 (N.D. Cal. 2014).  For the fraudulent

4    prong, although Plaintiffs recite that they "reasonabl[y] reli[ed] on PowerSchool's misrepresentations

5    and omissions," Compl. ¶ 492, they fail to plead with particularity "the circumstances in which they

6    were exposed to" PowerSchool's alleged misrepresentations, *Herrington v. Johnson & Johnson*

7    *Consumer Cos.,* 2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010).  And given that Plaintiffs do not

8    state a claim under either the unlawful or the fraudulent prong, their claim under the unfair prong also

9    fails.  *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022).  Thus, Plaintiffs'

10   UCL claim must be dismissed.

11   **V.    Plaintiffs' CDAFA Claim (Count V) Fails as a Matter of Law.**

12          Plaintiffs also cannot state a claim under the Comprehensive Computer Data Access and Fraud

13   Act ("CDAFA").  *See* Cal. Penal Code § 502.  The CDAFA is California's "state law counterpart to"

14   the Computer Fraud and Abuse Act, a federal statute that was "enacted primarily to address the

15   growing problem of computer hacking" and not intended as "a sweeping Internet-policing mandate."

16   *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 129 (N.D. Cal. 2020) (internal quotations omitted).

17   Plaintiffs' CDAFA claim fails for two reasons.

18          ***First***, under the CDAFA, a plaintiff must "suffer[] damage or loss by reason of a violation" of

19   the statute.  Cal. Penal Code § 502(e)(1).  As with their other statutory claims, Plaintiffs do not allege

20   any cognizable loss.  *See supra* at 10; *infra* at 13.  For this alone, Plaintiffs' CDAFA claim should be

21   dismissed.  *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081–82 (N.D. Cal. 2023).

22          ***Second***, Plaintiffs cannot show PowerSchool tampered with computer systems "without

23   permission," as they are required to under all four provisions of the CDAFA.  Cal. Penal Code §

24   502(c)(1), (6), (7), (8); *see also id.* subsec. (12).  Given CDAFA's dual civil-and-criminal nature,

---

[11]   Plaintiffs reference the Student Online Personal Information Protection Act, but do not allege how PowerSchool purportedly violated that Act.  PowerSchool has no idea of "where to begin" in responding to the Complaint."  *Twombly*, 550 U.S. at 565, n.10; *accord Davis v. Wells Fargo Bank, N.A.*, 2010 WL 2724090, at *1 (N.D. Cal. July 8, 2010) ("A plaintiff alleging unfair business practices under the UCL must state with reasonable particularity the facts supporting the statutory elements of the violation." (internal quotations omitted)).

courts interpret the term "without permission" strictly to "provide adequate notice of the conduct which it criminally prohibits." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715–16 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014). Under that interpretation, defendants "may only be subjected to liability for acting without permission under Section 502 if they access[] or us[e] a computer, computer network, or website in a manner that overcomes technical or code-based barriers." *Id.* at 715 (internal quotations omitted). The 87-page Complaint contains but ***one sentence*** reciting this requirement. Compl. ¶ 527. This one sentence is nothing more than "a legal conclusion, devoid of factual content, and insufficient to carry Plaintiffs' burden at the pleading stage." *Elsayed v. McAlee*, 2018 WL 3659249, at *3 (N.D. Cal. Aug. 2, 2018) (internal quotations omitted).

## VI.    Plaintiffs Cannot State a Claim for Statutory Larceny (Count VII).

Plaintiffs' statutory larceny claim (Count VII) fails for three reasons. ***First***, as with Plaintiffs' other statutory claims, the claim must be dismissed on account of Plaintiffs' failure to state "actual damages." Cal. Penal Code § 496(c); *accord Tanner v. Acushnet Co.*, 2023 WL 8152104, at *10 (C.D. Cal. Nov. 20, 2023) (statutory larceny claim must include actual damages). *See supra* at 10.

***Second***, Plaintiffs fail to plead that any property was taken by PowerSchool with respect to either category of data PowerSchool receives. For data PowerSchool receives directly from schools, parents, or students, Plaintiffs cannot plausibly allege that they have property interest in it. "Under California law, property must be capable of exclusive possession or control." *Lau v. Gen Digital Inc.*, 2024 WL 1880161, at *4 (N.D. Cal. Apr. 3, 2024) (internal quotations omitted). Plaintiffs cannot have exclusive possession or control over such data because it is the "property of and under the control of" their schools. *See* Cal. Educ. Code § 49073.1(b)(1). And even assuming they can, no larceny has occurred because PowerSchool "has the authority to" receive such data as a contractor of the schools (the owners of the data), and in fact, does so at the school's own request. *See* Compl. ¶ 164 (admitting that PowerSchool collect such data "on behalf of" its school customers); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *26 (N.D. Cal. Apr. 11, 2024); *supra* at 2–3. Further, to the extent Plaintiffs allege PowerSchool develops tools for schools to collect information from them, PowerSchool has not committed larceny, because rather than "*actively* stealing users' data," as the statute requires, PowerSchool "merely create[ed] conditions that allow[]" Plaintiffs' schools to collect

their data.  *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at \*23 (N.D. Cal. Mar. 25, 2024).

For technical data, again, such device and user information generated by PowerSchool's own websites

and products is by its nature not subject to Plaintiffs' exclusive control or possession and therefore

cannot give rise to a larceny claim.  *See Lau*, 2024 WL 1880161, at \*4 ("By its nature, browsing data

is shared with a variety of service providers that facilitate access to the website at issue.").

   ***Third***, to the extent Plaintiffs allege PowerSchool steals their data by false pretense, Compl.

¶¶ 548–52, their claim fails for the same reason as their fraud claims.  *See In re Meta Pixel Tax Filing

Cases*, 2024 WL 1251350, at \*23 ("Absent a misrepresentation and reliance, the theft by false pretense

theory fails.").

## VII. Plaintiffs' Unjust Enrichment Claim (Counts VIII) Fails as a Matter of Law.

   Finally, Plaintiffs' unjust enrichment claim cannot survive because "unjust enrichment is a

remedy and not an independent claim."  *McLellan v. Fitbit, Inc.*, 2018 WL 2688781, at \*4 (N.D. Cal.

June 5, 2018) (Donato, J.) (dismissing unjust enrichment claim with prejudice).  In addition, Plaintiffs'

unjust enrichment claim must also be dismissed because their failure to state a claim under all other

counts means that they "have not plausibly pleaded an actionable wrong."  *Hammerling,* 615 F. Supp.

3d at 1096.

## VIII. The Court Should Dismiss All of Plaintiffs S.G.'s and Cherkin's Claims Because They Cannot Sue Under California Law.

   Finally, the Court should dismiss all claims brought by Plaintiffs S.G. and Cherkin, residents

of Washington, because they cannot sue under California law.[12]  To begin, S.G. and Cherkin cannot

invoke California law because they have not overcome the presumption against extraterritoriality.  *See

Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 & n.9 (Cal. 2011) (the presumption gives effect to the

"limitations on the extraterritorial application of state law" imposed by the "due process clause of the

United States Constitution").  In keeping with the presumption, California generally does not extend

its laws beyond state lines.  *See, e.g.*, *Kaiser Found. Health Plan,* 2024 WL 1589982, at \*13 ("[O]nly

a California Plaintiff can bring a CIPA claim."); *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F.

---

[12] *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1007–08 (N.D. Cal. 2014) (holding that it is appropriate to address choice of law on motion to dismiss where "further development of the factual record is not reasonably likely to materially impact" the determination).

Supp. 3d 1074, 1094 (N.D. Cal. 2019) ("It is well-established that the UCL does not apply extraterritorially."). Unless Plaintiffs can show a "clearly expresse[d]" legislative intent to apply the statutes they cite extraterritorially, *Sullivan*, 254 P.3d at 248, or point to "authority from the California courts or the California legislature" directing California common law to have "extraterritorial effect," *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044, at \*7 (N.D. Cal. Apr. 24, 2017), S.G. and Cherkin cannot sue under California law. Plaintiffs have not done so.

Even assuming the Washington Plaintiffs could overcome the presumption against extraterritoriality, their claims should nevertheless be governed by their home state's laws because "California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (internal quotations omitted), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). To determine whether the interests of other states outweigh California's interest, California courts use a three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza*, 666 F.3d at 590. All three steps weigh against applying California law to S.G. and Cherkin.

***First***, the relevant Washington privacy laws are materially different than the California laws Plaintiffs invoke. For instance, unlike their California counterparts, Washington courts have "consistent[ly] refus[ed]" to "recognize a cause of action in tort for constitutional violations." *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. App. 2001). Likewise, Washington's equivalent of the CDAFA provides for no civil remedy. *See* Wash. Rev. Code Ann. § 9A.90.010 *et seq*. Further,

1    Washington's version of CIPA affords much narrower protection than California's.  Of the two

2    operative clauses of the Washington Privacy Act's eavesdropping provision, one protects

3    communications "between two or more individuals," and the other protects only "oral" conversation.

4    *See* Wash. Rev. Code Ann. § 9.73.030(1)(a); *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116,

5    1129 (W.D. Wash. 2012).  Neither is at issue here.  And Washington's unfair competition law, unlike

6    California's, requires private plaintiffs to establish that the "public interest was impacted." *Wade Cook*

7    *Seminars, Inc. v. Mellon*, 95 Wash. App. 1008 (1999).

8         *Second*, a true conflict exists between Washington's and California's interest in applying their

9    laws.  The states offer different protections for consumers and thus, different legal obligations and

10   responsibilities for businesses operating within their borders.  As in *Mazza*, it would be inappropriate

11   to "discount[] or not recogniz[e]" Washington's valid "interest in setting the appropriate level of

12   liability for companies conducting business within its territory."  666 F.3d at 592.

13        Finally, Washington would be most impaired by the application of California law.  In

14   particular, California recognizes that "with respect to regulating or affecting conduct within its

15   borders, the place of the wrong has the predominant interest." *Mazza*, 666 F.3d at 593.  As to S.G. and

16   Cherkin, the place of the wrong is *Washington* (where these Plaintiffs interact with PowerSchool).

17   *See, e.g.*, *Zinn v. Ex–Cell–O Corp.,* 306 P.2d 1017, 1032 n.6 (Cal. App. 1957) (concluding in a fraud

18   case the place of the wrong is the state where the misrepresentations were communicated to the

19   plaintiffs, not where the intention to misrepresent was formed).  California, on the other hand, has but

20   an "attenuated" interest in applying its law to protect residents of foreign states.  *Mazza*, 666 F.3d at

21   593–594.

22        In sum, all three steps of California's governmental interest test support applying Washington,

23   instead of California, law to S.G. and Cherkin's claims.  Thus, their California law claims should be

24   dismissed.  *See Frezza v. Google Inc.*, 2013 WL 1736788, at *7 (N.D. Cal. Apr. 22, 2013) (dismissing

25   North Carolina plaintiffs' California law claims after concluding that North Carolina law applies).

26                                        **<u>CONCLUSION</u>**

27        For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

28

1

DATED:  July 22, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KIRKLAND & ELLIS LLP

*Olivia Adendorff*

_____

Olivia Adendorff, P.C.

*Attorney for Defendant PowerSchool Holdings, Inc.*

1

## <u>ATTESTATION</u>

2

I, Rachael Rezabek, am the ECF user whose ID and password are being used to file this Notice

3
of Motion and Motion by Defendant to Dismiss the Class Action Complaint.  In compliance with

4
Local Rule 5-1(i)(3), I hereby attest that concurrence in this filing has been obtained from all

5
signatories.

6

   DATED:  July 22, 2024

7

                                           Rachael A. Rezabek

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28