Shana E. Scarlett (217895)
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Julie Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY CHERKIN, et al. | Case No.: 3:24-cv-02706-JD |
| Plaintiffs, | |
| v. | <u>CLASS ACTION</u> |
| POWERSCHOOL HOLDINGS, INC., | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT** |
| Defendant. | Judge: Honorable James Donato<br>Courtroom: Courtroom 11, 19th Floor<br>Date: November 7, 2024<br>Time: 10:00 a.m. |

# TABLE OF CONTENTS

I.   Plaintiffs State a Claim Under Counts I and VI (Privacy Claims) ......................................... 1

    A.   FERPA is inapplicable to Plaintiffs' claims. .............................................................. 1

    B.   Plaintiffs have an expectation of privacy in their own personal information even—and especially—at school, as codified by FERPA. ............................................................. 3

    C.   Even if FERPA provided a private defense, PowerSchool does not meet FERPA's school-official exception to the parental-consent requirement. ............................................. 4

II.  Plaintiffs State a Claim Under Count II (Deceit) ............................................................... 5

III. Plaintiffs State a Claim Under Count III (CIPA) ............................................................... 6

IV.  Plaintiffs State a Claim Under Count IV (UCL) ............................................................... 7

    A.   Plaintiffs allege loss of money or property. ............................................................... 8

    B.   Plaintiffs state a claim under all three prongs of the UCL. ............................................. 9

V.   Plaintiffs State a Claim Under Count V (CDAFA) .............................................................. 10

VI.  Plaintiffs State A Claim Under Count VII (Statutory Larceny) ........................................... 11

VII. Plaintiffs State a Claim Under Count VIII (Unjust Enrichment) ......................................... 12

VIII. The Cherkin Plaintiffs Can Sue PowerSchool Under California Law ..................................... 12

    A.   The presumption against extraterritoriality does not apply because the alleged misconduct   occurred in California by a California defendant. ......................................... 12

    B.   PowerSchool fails to demonstrate that California law should not apply under a  proper choice-of-law analysis ............................................................................................. 13

IX.  Conclusion ............................................................................................................... 15

1

2

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1440 Sports Mgmt. Ltd. v. PGA Tour, Inc.*,
No. 22-CV-02774-TLT, 2023 WL 3149249 (N.D. Cal. Mar. 13, 2023) ...............................................9

*A.B. by & through Turner v. Google LLC*,
2024 WL 3052969 (N.D. Cal. June 18, 2024) .............................................................................. 8, 12

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .................................................................................................8

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......................................................................................... 8, 10

*BRV, Inc. v. Superior Ct.*,
143 Cal. App. 4th 742 (2006) (20 U.S.C. § 1232g) ...............................................................1, 2, 3, 11

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .............................................................................................. 11

*Collazo v. Wen by Chaz Dean, Inc.*,
2015 WL 4398559 (C.D. Cal. July 17, 2015) .................................................................................... 13

*CTI III, LLC v. Devine*,
No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508 (E.D. Cal. May 26, 2022) ................................. 10

*D'Angelo v. FCA US, LLC*,
No. 323CV00982WQHMMP, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024).............................. 6, 7

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
392 F. Supp. 3d 1074 (N.D. Cal. 2019) ............................................................................................ 13

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) .............................................................................................................9

*People ex rel. DuFauchard v. U.S. Fin. Mgmt., Inc.*,
169 Cal. App. 4th 1502 (2009) .......................................................................................................... 13

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) .............................................................................................. 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ............................................................................................................. 10

*Forcellati v. Hyland's, Inc.*,
876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............................................................................................ 15

*Gladstone v. Amazon Web Servs., Inc.*,
No. 2:23-CV-00491-TL, 2024 WL 3276490 (W.D. Wash. July 2, 2024)........................................ 14

ii

*Griffith v. TikTok, Inc.*,
   697 F. Supp. 3d 963 (C.D. Cal. 2023).............................................................................12

*Hasso v. Hapke*,
   227 Cal. App. 4th 107 (2014)..........................................................................................6

*Heinz v. Amazon.com Inc.*,
   No. 2:23-CV-1073, 2024 WL 2091108 (W.D. Wash. May 8, 2024)...........................14, 15

*Herrington v. Johnson & Johnson Consumer Cos.*,
   No. C 09–1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010).................................9

*Kellman v. Spokeo, Inc.*,
   599 F. Supp. 3d 877 (N.D. Cal. 2022) ...........................................................................14

*Khan v. CitiMortgage, Inc.*,
   975 F. Supp. 2d 1127 (E.D. Cal. 2013) .......................................................................9, 15

*Lau v. Gen Digital Inc.*,
   No. 22-CV-08981-RFL, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024).......................11, 12

*Lovejoy v. AT&T Corp.*,
   92 Cal. App. 4th 85 (2001) .............................................................................................6

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ......................................................................................14, 15

*Mirabelli v. Olson*,
   691 F. Supp. 3d 1197 (S.D. Cal. 2023) ...........................................................................3

*Occidental Land, Inc. v. Superior Court*,
   556 P.2d 750 (Cal. 1976)................................................................................................6

*Opperman v. Path, Inc.*,
   2016 WL 3844326 (N.D. Cal. July 15, 2016)..............................................................14, 15

*Owasso Indep. Sch. Dist. No. I-011 v. Falvo*,
   534 U.S. 426 (2002) ....................................................................................................2, 3

*Rasidescu v. Midland Credit Mgmt., Inc.*,
   496 F.Supp.2d 1155 (S.D. Cal. 2007)............................................................................14

*Smith v. Google*,
   No. 23-cv-03527-PCP, 2024 WL 2808270 (N.D. Cal. 2024).........................................7

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
   534 F. Supp. 3d 1067 (N.D. Cal. 2021) ........................................................................7, 9

*Valentine v. NebuAd, Inc.*,
   804 F. Supp. 2d 1022 (N.D. Cal. 2011) ..........................................................................13

*Valenzuela v. Nationwide Mut. Ins. Co.*,
    686 F. Supp. 3d 969 (C.D. Cal. 2023)..........................................................................7

*Wang v. OCZ Tech. Grp., Inc.*,
    276 F.R.D. 618 (N.D. Cal. 2011) ...............................................................................13

*Washington Mut. Bank, FA v. Superior Court*,
    15 P.3d 1071 (2001) ..............................................................................................14, 15

*Woods v. City of Hayward*,
    No. 19-CV-01350-JCS, 2020 WL 1233841 (N.D. Cal. Mar. 13, 2020)......................3, 12

**Statutes**

20 United States Code § 1232g..............................................................................................2, 5

California Business & Professional Code § 17204 ...................................................................8

California Penal Code § 631 .........................................................................................6, 7, 14

California Civil Code §§ 1709–10 ........................................................................................5, 6

Children Invation of Privacy Act ..................................................................................*passim*

Family Educational Rights and Privacy Act .................................................................*passim*

**Other Authorities**

34 Code of Federal Regulations §§ 99.30(a), 99.31(a)(1)(i) .........................................................5

120 Congressional Record 39,862 (1974) ..................................................................................3

Federal Rule of Civil Procedure 8...........................................................................................4

Federal Rule of Civil Procedure 12........................................................................................4

The allegations in this case describe privacy and property rights violations by Defendant PowerSchool Holdings, Inc. ("PowerSchool") against students and their parents ("Plaintiffs") in the compulsory setting of K–12 education. Consistent with its invasive data practices, PowerSchool's motion to dismiss Plaintiffs' complaint ("Motion" or "MTD") treats children as a resource to be mined and exploited for profit. It argues that laws enacted to enhance student privacy actually undermine student privacy—specifically by letting a private company take and use any data from students and their parents by any means, so long as those acts are performed under the auspices of an agreement with a school. That is a radical position unsupported by any law, *especially* laws enacted to protect children's personal information and parents' rights over that information.

Schools have always collected certain student and parent personal information to provide education services, and they must be able to continue to do so within the bounds of the law. Until recently, that collection was transparent and limited: parents generally knew what information was collected, by whom, and for what purpose, and they could decide if a school crossed a line based on their family's values. Although times—and technology—have changed, the law has not. Families may not be made to forgo their basic rights in exchange for the education to which they are legally entitled. As stated in the complaint, "[b]y sending their children to school as the law requires, parents do not forfeit their right to decide what personal information may be extracted from their children and themselves and how that information may be used." Compl. ¶ 8. This cannot be the new cost of public education. Defendant may make money providing services to schools, but it may not violate the rights of children and their parents in doing so by surreptitiously taking and using their personal data.

## I.    Plaintiffs State a Claim Under Counts I and VI (Privacy Claims)

### A.    FERPA is inapplicable to Plaintiffs' claims.

As a preliminary matter, PowerSchool repeatedly and falsely contends that the Family Educational Rights and Privacy Act ("FERPA")[1] lets schools share any "student data" with

---

[1] For brevity, this response refers primarily to FERPA, which does not materially differ from California's student-privacy law cited by PowerSchool, and PowerSchool does not appear to argue otherwise. *See BRV, Inc. v. Superior Ct.*, 143 Cal. App. 4th 742, 751–52 (2006) ("[California] Education Code section 49076 is part of a statutory response to Congress's adoption of the Family Educational

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                    3:24-cv-02706-JD

contractors like PowerSchool without parental consent. MTD at 2, 4, 6. But FERPA governs only a narrow subset of student data—education records—and not all student data, as PowerSchool states. *See* 20 U.S.C. § 1232g(a); *see also Owasso Indep. Sch. Dist. No. I-011 v. Falvo*, 534 U.S. 426, 436 (2002) (narrowly interpreting "education records" as used in FERPA, holding that "even assuming a teacher's grade book is an education record, . . . the grades on students' papers would not be covered under FERPA at least until the teacher has collected them and recorded them in his or her grade book," observing that to hold otherwise "would impose a substantial burden" of confidentiality on school staff). And, generally, schools may *not* disclose education records to any third party without prior written parental consent. 20 U.S.C. § 1232g(b)(1).

More significant than PowerSchool's misrepresentation of FERPA, however, is its attempt to implicate FERPA at all. PowerSchool correctly observes that Plaintiffs do not allege a violation of FERPA. MTD at 3. That is because FERPA is irrelevant to Plaintiffs' claims: FERPA regulates *schools*, not private companies. It does not provide a private right of action and may be enforced only by the Department of Education. *Id.* at § 1232g(f). And it provides only one enforcement mechanism—the withholding of federal funding from schools if they disclose student education records without written parental consent. *See id.*; *see also BRV, Inc. v. Superior Ct.*, 143 Cal. App. 4th 742, 752 (2006). Just as FERPA does not provide individuals a private right of action, it also does not provide school vendors a private defense—especially against non-FERPA claims. So Plaintiffs do not "ignore the operative legal framework," as PowerSchool contends, MTD at 4; rather, PowerSchool grossly contorts student-privacy laws to avoid liability for its nonconsensual data practices. PowerSchool fails to cite a single case in which a company tried to contort FERPA in this way, let alone a decision permitting it.

Finally, by its express terms, FERPA governs only disclosure by schools of student education records maintained by schools to third parties. *See generally* 20 U.S.C. § 1232g. FERPA does not govern collection and disclosure of data in excess of education records. FERPA does not permit a private company to take all manner of personal data directly from students and their parents through

---

Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g. . . .The California Legislature adopted a statutory scheme to eliminate potential conflicts between FERPA and state law[.]").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                3:24-cv-02706-JD

1    persistent tracking and surveillance simply because a school uses its services. And FERPA does not

2    grant schools sweeping authority to agree to such invasive data practices on behalf of students and

3    their parents without notice or consent—or even, as PowerSchool's argument implies, over parents'

4    express objections. In short, nothing in FERPA supports PowerSchool's argument.

5    **B.    Plaintiffs have an expectation of privacy in their own personal information even—**
         **and especially—at school, as codified by FERPA.**

6

7            PowerSchool argues that children and their parents "have no reasonable expectation of privacy

8    in data submitted to their own schools." MTD at 7. But the very existence of FERPA refutes that

9    argument. Congress enacted FERPA to codify the expectation of privacy that PowerSchool argues

10   does not exist. As one California court explained,

11           Congress enacted FERPA to assure parents of students . . . access to
             their educational records and to protect such individuals' rights to
12           privacy by limiting the transferability of their records without their
             consent. Under its terms, educational institutions, with a few
13           exceptions not material here, must obtain written parental consent
             prior to releasing students' records or information derived therefrom.
14

15   *BRV*, 143 Cal. App. 4th at 751–52 (cleaned up); *see also* 120 Cong. Rec. 39,862 (1974) (joint statement

16   of Sens. Pell and Buckley explaining major amendments to FERPA).

17           FERPA explicitly safeguards children's privacy in their own information in education records,

18   as well as parents' rights over those records. Indeed, "[t]he constitutional right of parents to direct

19   their child's education is [] protected through Congressional policy, as exemplified by [FERPA]."

20   *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1211 (S.D. Cal. 2023). Accordingly, schools are broadly

21   prohibited from disclosing that information to third parties, including PowerSchool and its sprawling

22   network of third-party "partners" described in the complaint. Compl. ¶¶ 102–134. Because not all the

23   information collected by PowerSchool can reasonably be construed as education records, *see Falvo*,

24   534 U.S. at 436, and PowerSchool fails to distinguish education records from other forms of personal

25   data it takes from students and their parents, PowerSchool fails to show that students and their parents

26   have no expectation of privacy in other forms of personal data, as is its burden. *Woods v. City of Hayward*,

27   No. 19-CV-01350-JCS, 2020 WL 1233841, at *10 (N.D. Cal. Mar. 13, 2020) (moving party has burden

28

1   of persuasion that claims warrant dismissal under Rule 12(b)(6)).[2]

2           PowerSchool further argues that families have no expectation of privacy in their "passively

3   collected technical data." MTD at 7–8. But the cases on which it relies are inapposite, as they do not

4   involve (1) children (2) in compulsory education environments (3) whose data (including non-technical

5   data) was taken through their use of school-provided services (4) and shared with untold third parties

6   (5) of which parents had no knowledge (6) and to which parents did not provide consent—facts that

7   are each critical to analysis of Plaintiffs' claims. Nor was the data at issue in those cases combined with

8   other data to create dossiers on parents and children used by public and private third parties for non-

9   education purposes. PowerSchool's authorities thus do not support its argument.

10          In sum, PowerSchool argues that FERPA—a statute enacted to bolster children's rights to

11  privacy over their own records and parents' rights over that information—actually eviscerates those

12  rights, as well as families' rights in all other personal data collected by a private company purportedly

13  at the behest of a school. PowerSchool's interpretation of FERPA would transform a statute that

14  Congress intended to serve as shield to protect children's privacy into a sword for companies to

15  undermine it. Nothing supports such a perverse interpretation of this law or its state-law counterparts.

16  **C.      Even if FERPA provided a private defense, PowerSchool does not meet FERPA's
         school-official exception to the parental-consent requirement.**

18          Despite the express purpose and inapplicability of FERPA, PowerSchool contends that an

19  exception to FERPA's robust parental-consent requirement shields it from all liability under any law

20  for its nonconsensual data practices. Specifically, PowerSchool argues that FERPA allows schools "to

21  share student data with contractors like PowerSchool without having to collect consent from

22  individual students or their parents," citing an exception to the law's express prohibition against

23  disclosure of education records. MTD at 2. This "school official" exception permits a *school* to

24  "release [] education records" without parental consent to "other school officials, including teachers

---

[2] PowerSchool also argues that Plaintiffs have not pled an expectation of privacy or offensiveness in
their complaint. MTD at 6. But such allegations are made throughout the complaint. *See, e.g.*, Compl.
¶¶ 41–42, 45, 298, 330–35, 344–52, 400, 447, 449, 475, 539–40. It is unclear what formalistic
requirement PowerSchool contends Plaintiffs failed to satisfy by their pleading, but it does not
comport with applicable law. *See* Fed. R. Civ. P. Rule 8.

within the educational institution or local educational agency, who have been determined by such agency or institution to have legitimate educational interests, including the educational interests of the child for whom consent would otherwise be required[.]" 20 U.S.C. § 1232g(b)(1)(A).

Under strictly limited circumstances, a contractor may be considered a "school official," but only if it (1) performs an institutional service or function for which the school would otherwise use employees; (2) is under the direct control of the school as to the use and maintenance of education records; and (3) does not redisclose any personally identifiable information from education records without prior parental consent. 34 C.F.R. §§ 99.30(a), 99.31(a)(1)(i). Further, a school must ensure those receiving records under this exception obtain access only to records in which they have legitimate educational interests. *Id.* § 99.31(a)(1)(ii).

Even if FERPA authorized a contractor to invoke this exception as a private defense against non-FERPA claims brought by private litigants—which it plainly does not—PowerSchool does not meet that exception. Taking Plaintiffs' allegations as true, (1) schools do not control the maintenance and use of the data PowerSchool collects from children and their parents, including education records, Compl. ¶¶ 261–270; (2) PowerSchool does not perform an institutional service or function for which the school would otherwise use employees, *id.* ¶¶ 37, 56–135; (3) PowerSchool collects data in excess of student education records, *id.* ¶¶ 3, 37, 40, 225; (4) PowerSchool collects and uses data in excess of "legitimate educational interests," *id.* ¶¶ 56–135; and (5) PowerSchool rediscloses personal information to many third parties without parental consent, *id.* ¶¶ 82–135, 254–289.

In short, PowerSchool cannot avoid liability by invoking an exception that it does not meet to a student-privacy law that does not apply. PowerSchool's interpretation would permit a narrow exception to swallow the purpose of FERPA, which is to protect student privacy and parents' rights by prohibiting disclosure of education records.

## II.    Plaintiffs State a Claim Under Count II (Deceit)

PowerSchool next argues that Plaintiffs fail to state a claim under California Civil Code sections 1709–10 because they do not allege reliance. PowerSchool's Privacy Statement cited in its Terms of Use states that schools provide consent to the collection and use of student data on behalf of parents. Compl., *e.g.*, ¶¶ 157, 158, 169, 258, 260. Plaintiffs allege that PowerSchool's

5

1   misrepresentations and omissions render any such consent impossible. *Id.*, *e.g.*, ¶¶ 140–149, 160–162,

2   166–240, 272. And "an inference of reliance arises if a material false representation was made to

3   persons whose acts thereafter were consistent with reliance upon the representation." *Occidental Land,*

4   *Inc. v. Superior Court*, 556 P.2d 750, 754 (Cal. 1976). Schools' use of PowerSchool's products is

5   consistent with its reliance on PowerSchool's misrepresentations and omissions obscuring the

6   exploitative nature of its data practices. Thus, to the extent PowerSchool will argue that schools

7   consented on behalf of parents and/or children to PowerSchool's sweeping data practices—whether

8   under some theory of agency or other derivative-consent theory—Plaintiffs have indirectly relied on

9   PowerSchool's misrepresentations and omissions on which schools (as Plaintiffs' purported agents)

10  relied in consenting to PowerSchool's data practices. *See Hasso v. Hapke*, 227 Cal. App. 4th 107, 129

11  (2014) ("[L]iability for a fraud worked on an agent is imposed where it is the agent who not only places

12  reliance on the misrepresentations, but also makes the decision and takes action based upon the

13  misrepresentations."); *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 95 (2001) ("Under the principle of

14  indirect reliance, a fraudulent misrepresentation is actionable if it was communicated to an agent of

15  the plaintiff and was acted upon by the agent to plaintiff's damage.").[3]

16  ### III.    Plaintiffs State a Claim Under Count III (CIPA)

17  PowerSchool next argues that Plaintiffs fail to state a claim under the California Invasion of

18  Privacy Act ("CIPA"), arguing that Plaintiffs' eavesdropping theory is unclear. MTD at 9; Cal. Penal

19  Code § 631(a). The complaint, however, describes PowerSchool's eavesdropping scheme in enough

20  detail at this stage. It explains how PowerSchool enables many other companies to intercept data

21  collected by PowerSchool in real time through automatic-syncing and data-transmission technologies

22  like plug-ins, software development kits (SDKs), and application programming interfaces (APIs),

23  which violates the second clause of CIPA section 631(a). Compl. ¶¶ 106, 121, 129, 131, 233; *D'Angelo*

24  *v. FCA US, LLC*, No. 323CV00982WQHMMP, 2024 WL 1625771, at *11 (S.D. Cal. Mar. 28, 2024)

25  (violation of second clause of section 631(a) where defendant let third party secretly intercept chat

26  communications in real time). Plaintiffs further allege that those companies use the data they intercept

27

28  _____

    [3] Should PowerSchool argue direct parental consent, Plaintiffs will amend their complaint as necessary.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                    3:24-cv-02706-JD

for their own business purposes, such as to facilitate their marketing, communication, and student-identification services, which violates the third clause of section 631(a). Compl. ¶¶ 122, 129, 233; *D'Angelo*, 2024 WL 1625771, at *12 (violation of third clause where third party used data intercepted for its own monetary gain). These allegations support a finding that PowerSchool is liable under the fourth clause of section 631(a) for aiding and abetting many companies in violating its second and third clauses. *See D'Angelo*, 2024 WL 1625771, at *9–14.

PowerSchool contends that it cannot be an eavesdropper on its own website and products, arguing application of the party exception to the derivative-liability provision. MTD at 9. But that exception does not apply when the party enabled a third party to eavesdrop on communications with Plaintiffs in real time for the third party's own purposes. *See D'Angelo*, 2024 WL 1625771, *13–14. And Plaintiffs allege that PowerSchool maintains a vast network of third-party companies that pay PowerSchool for the ability to intercept data from PowerSchool's products in real time for their own financial gain, an arrangement central to PowerSchool's business model—and unknown to the students and parents whose information is intercepted. Compl. ¶¶ 102–134; *D'Angelo*, 2024 WL 1625771, *13–14 ("'[P]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule.'") (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)); *see also Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) (finding CIPA liability where a party "allowed a third-party interloper to listen in on communications in real time"). Those allegations are enough to support Plaintiffs' CIPA claim.

Plaintiffs further allege that PowerSchool's website contains numerous hidden tracking technologies that enable PowerSchool to continue collecting the contents of communications after children and their parents have navigated away from PowerSchool's site. ¶¶ 54, 281, 282, 287, 288, 392, 473. Such allegations provide an additional basis for Plaintiffs' CIPA claim. *See Smith v. Google*, No. 23-cv-03527-PCP, 2024 WL 2808270, at *4–5 (N.D. Cal. 2024).

## IV.    Plaintiffs State a Claim Under Count IV (UCL)

A plaintiff may pursue a claim under the UCL through any or all of three prongs: the unlawful prong, the unfair prong, or the fraudulent prong. *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F.

Supp. 3d 1067, 1100 (N.D. Cal. 2021). The UCL requires a showing that the plaintiff lost money or property due to any alleged violation. Cal. Bus. & Prof. Code § 17204. Here, Plaintiffs allege violations of all three prongs and that those violations caused them to lose money or property.

**A.      Plaintiffs allege loss of money or property.**

PowerSchool contends that Plaintiffs have not alleged loss of money or property. MTD at 10. But the complaint is replete with allegations that PowerSchool caused Plaintiffs to lose money or property by taking and using their data without their consent. Compl. ¶¶ 347, 357, 362, 366, 407, 454, 480, 491, 502. Unlike PowerSchool's cited authority, Plaintiffs have alleged a "market for the personal information[.]" *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019). That is why Plaintiffs included an explanation of the data economy, which PowerSchool denigrates as "'a book report that simply summarizes' horror stories about surveillance capitalism . . . and targeted marketing and 'datafication.'" MTD at 4. Those allegations describe the robust market for the data PowerSchool misappropriates. That they read as "horror stories," as PowerSchool admits, only underscores the gravity of Plaintiffs' claims. Further, and as PowerSchool notes, Plaintiffs allege that "PowerSchool caused Plaintiffs to participate in a transaction for less than they otherwise would have had they been given a choice, including the choice not to participate at all." MTD at 10 (citing Compl. ¶ 364); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. 2023) ("Plaintiffs have shown that there is a market for their browsing data and Google's alleged surreptitious collection of the data inhibited plaintiffs' ability to participate in that market.").

In addition to meeting the requirements of PowerSchool's cited authorities, more recent and analogous authority from this District holds that allegations of loss of personal information through data collection alone are enough to support a UCL claim. In June, for example, a court held that "'[p]rivacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL.'" *A.B. by & through Turner v. Google LLC*, 2024 WL 3052969, at *7 (N.D. Cal. June 18, 2024) (quoting *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *24 (N.D. Cal. Mar. 25, 2024)). As in that case, "[b]ecause Plaintiffs allege that they can 'no longer realize the full economic value of their Personal Information' due to the data collection by defendants, they adequately plead an economic injury resulting from defendants' purported misconduct." *Id.*

1    **B.    Plaintiffs state a claim under all three prongs of the UCL.**

2        **Unlawful.** PowerSchool contends that Plaintiffs do not meet the unlawful prong of the UCL

3    because (1) their allegations are derivative of their other claims and (2) Plaintiffs' other claims

4    purportedly fail. MTD at 10–11. But, as addressed herein, Plaintiffs' other claims do not fail, thus

5    Plaintiffs sufficiently allege a claim under the unlawful prong.

6        **Fraudulent.** PowerSchool argues that Plaintiffs have not pled with particularity "the

7    circumstances in which they were exposed to" PowerSchool's alleged misrepresentations. MTD at 11.

8    Under the UCL, however, a "plaintiff need not show that he or others were actually deceived or

9    confused by the conduct or business practice in question." *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d

10   1127, 1145 (E.D. Cal. 2013) (cleaned up). Rather, the fraudulent prong of the UCL requires only that

11   a plaintiff show "deception to some members of the public, or harm to the public interest," or allege

12   that "members of the public are likely to be deceived[.]" *Id.* (cleaned up); *see also 1440 Sports Mgmt. Ltd.*

13   *v. PGA Tour, Inc.*, No. 22-CV-02774-TLT, 2023 WL 3149249, at *9 (N.D. Cal. Mar. 13, 2023). The

14   complaint contains many allegations that PowerSchool's misrepresentations and omissions were likely

15   to mislead and harm the public. *See*, *e.g.*, Compl. ¶¶ 173–188, 453, 492, 501. PowerSchool's cited

16   authority, by contrast, did not involve allegations of public deception or *material omissions*, the

17   circumstances of which need not be pled with particularity. *Herrington v. Johnson & Johnson Consumer*

18   *Cos.*, No. C 09–1597 CW, 2010 WL 3448531, at *7-8 (N.D. Cal. Sept. 1, 2010).

19       **Unfair.** Finally, PowerSchool's only challenge to Plaintiffs' claims under the unfair prong is

20   that they fail because Plaintiffs' claims under the unlawful and fraudulent prongs fail. MTD at 11. But

21   these prongs are independent of each other, *Toyota*, 534 F. Supp. 3d at 1100, and PowerSchool fails to

22   explain how Plaintiffs' allegations of unfairness rise or fall with their allegations about the other

23   prongs. Further, the complaint contains numerous allegations as to the unfairness of PowerSchool's

24   conduct, which PowerSchool fails to challenge, as is its burden. Compl., *e.g.*, ¶¶ 300–370, 495–500; *see*

25   *also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (under UCL's unfairness prong,

26   courts consider (1) whether the challenged conduct is tethered to any underlying constitutional,

27   statutory or regulatory provision; (2) whether the practice is immoral, unethical, oppressive,

28

1  unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the

2  victim outweighs the reasons, justifications, and motives of the alleged wrongdoer).

3      Plaintiffs' allegations thus support their claims under all three prongs of the UCL.

4              **V.      Plaintiffs State a Claim Under Count V (CDAFA)**

5      PowerSchool first argues that Plaintiffs allege no cognizable loss. MTD at 11. But as explained

6  in section IV.A., *supra*, Plaintiffs do allege cognizable loss. *See also Brown*, 685 F. Supp. 3d at 940

7  ("Because plaintiffs proffer evidence that there is a market for their data—one Google itself has

8  created—the Court cannot rule, as a matter of law, that plaintiffs suffered no damages under

9  CDAFA."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) (holding that

10  plaintiffs can state an economic injury for their misappropriated data).

11      PowerSchool next argues that Plaintiffs cannot show that PowerSchool tampered with

12  computer systems "without permission," which it contends cannot be found unless it accessed or used

13  "a computer, computer network, or website in a manner that overcomes technical or code-based

14  barriers." MTD at 11–12 (citing *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715–16

15  (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014)). But more recent cases—including cases from

16  the Ninth Circuit—have held that "without permission" must not be construed so narrowly:

17
18          As another district court stated: "[c]ircumventing technical barriers may be
          sufficient to show that a person acted 'without permission,' but that does not
19          mean it is necessary for a person to circumvent technical barriers to act
          'without permission.' *Christensen* makes this clear." *West v. Ronquillo-Morgan*, 526
20          F.Supp.3d 737, 746 (C.D. Cal. 2020). As the *West* court noted, in *Christensen*,
          the Ninth Circuit affirmed convictions under CDAFA of individuals who
21          accessed databases with the authority to do so, without circumventing any
          technical or code-based barriers. *Christensen*, 828 F.3d at 790. Accordingly, no
22          such allegation is required to state a claim under CDAFA.

23  *CTI III, LLC v. Devine*, No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508, at *5

24  (E.D. Cal. May 26, 2022) (citing *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015))

25      Even if such a showing was required, Plaintiffs do allege that PowerSchool accessed their

26  computers in a way that overcame technical barriers: "PowerSchool and third parties embed tracking

27  technologies on the person's device that allow the person to be followed across the internet and even

28  across other devices, *including technologies that are designed to evade ad-tracking tools*. This enables a visitor to

1  be tracked long after they have navigated away from the website—until those technologies are

2  manually removed, if ever." Compl. ¶ 282 (emphasis added).

3  **VI.    Plaintiffs State A Claim Under Count VII (Statutory Larceny)**

4      PowerSchool first argues that Plaintiffs do not allege actual damages. MTD at 11. But, as

5  explained in section IV.A., *supra*, Plaintiffs do allege actual damages. *See also Calhoun v. Google LLC*,

6  526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) (holding that personal data can be the subject of a statutory

7  larceny claim, observing that "courts have recognized the growing trend across courts to recognize

8  the lost property value of personal information") (cleaned up).

9      PowerSchool further argues that, "[f]or data PowerSchool receives directly from schools,

10  parents, or students, Plaintiffs cannot plausibly allege that they have property interest in it," advancing

11  a byzantine argument based on California's student-privacy law. MTD at 12–13. But that law does not

12  divest students or their parents of their rights over their own personal information; rather, like

13  FERPA, it was enacted to bolster protection of those rights. *See BRV*, 143 Cal. App. 4th at 751–52.

14      No authority supports PowerSchool's radical position that student-privacy laws (1) grant

15  schools unlimited authority to take any information they choose from students and their parents and

16  deem them "education records"; (2) authorize schools to permit a private company to take and use

17  any such information on schools' behalf without parental consent; or (3) authorize schools to permit

18  a private company to take and use information directly from students and parents in excess of what

19  the school requests and in excess of what the company makes available to schools. And PowerSchool

20  has provided no authority that allows schools to consent on behalf of students absent any

21  agreement—especially over parents' objections—to the unfettered taking and use of students'

22  personal information by a private company.

23      Furthermore, the complaint alleges that PowerSchool takes data far beyond that which could

24  be fairly characterized as "education records" under student-privacy laws, Compl. ¶¶ 3, 37, 40, 225,

25  and far beyond that requested or controlled by schools, *id.* at ¶¶ 261, 269, 270, which PowerSchool

26  does not challenge. Its argument that Plaintiffs do not own their unspecified "technical data" also

27  lacks support. PowerSchool cites *Lau v. Gen Digital Inc.*, No. 22-CV-08981-RFL, 2024 WL 1880161, at

28  *4 (N.D. Cal. Apr. 3, 2024), which held that the "browsing data" at issue was not subject to exclusive

11

possession. MTD at 13. But PowerSchool fails to identify which of the data it collects is "browsing data" purportedly deserving of different treatment. PowerSchool also fails to explain how *Lau*—which did not involve a company taking vast troves of personal information from children in a compulsory environment using school services of which their parents were unaware, and providing countless third parties access to that information—supports its position as applied to the allegations in this case.[4]

Further, other cases have held that browsing data can be the subject of a larceny claim. *See Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 975-76 (C.D. Cal. 2023) (rejecting defendant's argument that browsing-history data cannot be personal property subject to statutory larceny, noting that, "consistent with a 'growing trend across courts'—the taking of personal information was adequate to allege deprivation of a property interest") (quoting *Calhoun*, 526 F. Supp. 3d at 635) (holding that personal information, including browsing history, can be the subject of a statutory larceny claim).

## VII.    Plaintiffs State a Claim Under Count VIII (Unjust Enrichment)

PowerSchool next argues that Plaintiffs' unjust-enrichment claim cannot survive because "unjust enrichment is a remedy and not an independent claim." MTD at 13. But courts in this District have repeatedly held otherwise, including authority cited by PowerSchool. *See Lau*, 2024 WL 1880161, at *5; *Turner*, 2024 WL 3052969, at *10. And PowerSchool's argument that Plaintiffs' unjust-enrichment claim fails because their other claims fail also lacks support, as explained herein.

## VIII.    The Cherkin Plaintiffs Can Sue PowerSchool Under California Law

Plaintiffs seek nationwide application only of CIPA, the UCL, and common-law intrusion upon seclusion.[5] The remaining claims are brought only by and on behalf of California residents. Therefore, Plaintiffs do not address PowerSchool's arguments regarding other laws.

**A.    The presumption against extraterritoriality does not apply because the alleged misconduct occurred in California by a California defendant.**

PowerSchool argues that California law should not apply because the Cherkin Plaintiffs are not California residents, thus triggering the presumption against extraterritorial application of

---

[4] Notably, *Lau* held that, "[t]o be sure, users have a strong privacy interest" even in their browsing data, *Lau*, 2024 WL 1880161 at *4, contrary to PowerSchool's assertions. *See* MTD at 7–8.

[5] Because PowerSchool makes no argument as to Plaintiffs' intrusion upon seclusion claim, Plaintiffs address only CIPA and the UCL. *See Woods*, 2020 WL 1233841, at *10 (movant has initial burden).

California law. Mot. at 14. But that argument misstates the law. That the injury was suffered by an out-of-state plaintiff does not alone trigger application of the presumption against extraterritoriality. *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 629 (N.D. Cal. 2011). Rather, the presumption applies when the alleged *conduct* occurs outside of California. *Id.*; *see also Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1131 (N.D. Cal. 2014); *People ex rel. DuFauchard v. U.S. Fin. Mgmt., Inc.*, 169 Cal. App. 4th 1502, 1517–18 (2009). In fact, PowerSchool's own authority holds that extraterritoriality is not implicated where out-of-state plaintiffs allege misconduct by a California defendant in California that causes harm out of state. *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1094 (N.D. Cal. 2019) (holding UCL applied where "a direct causal link between Uber's alleged misconduct in California and the out-of-state affiliates' loss of revenue"); *see also Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (upholding application of CIPA, holding that "[a] legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents").

Although the Cherkin Plaintiffs are not California residents and were harmed out of state, PowerSchool is located in California, and Plaintiffs' "injuries emanate from PowerSchool's actions in California." *See* Compl. ¶¶ 408–412. PowerSchool's principal place of business and headquarters are in California. *Id.* ¶ 409–10. All relevant decisions were made in California. *Id.* ¶ 408. Its "C-Suite members and employees responsible for creating, implementing, maintaining, and monetizing the data-harvesting scheme" are located in California. *Id.* ¶ 410. In other words, the conduct supporting Plaintiffs' claims occurred in California. That the injury was suffered out of state is not dispositive. *See Wang*, 276 F.R.D. at 630 (applying California law where misconduct alleged was "conceived, reviewed, approved or otherwise controlled from [defendant's] headquarters in California"); *Collazo v. Wen by Chaz Dean, Inc.*, 2015 WL 4398559, at *3–4 (C.D. Cal. July 17, 2015) ("[T]here is not a single published case that suggests a California company, with a principal place of business and headquarters in California, cannot be sued in California for violating California consumer protection laws.").

**B.    PowerSchool fails to demonstrate that California law should not apply under a proper choice-of-law analysis.**

In a class action, the plaintiff bears the initial burden to show that California has "significant

1  contact or significant aggregation of contacts" to the claims of each class member. *Mazza v. Am. Honda*

2  *Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). The burden then shifts to the defendant to show that

3  foreign law, rather than California law, should apply to class claims by way of a three-step

4  governmental-interest test. *Id.* at 590. Only when one step is met does a court move to the next step.

5  *See Rasidescu v. Midland Credit Mgmt., Inc.*, 496 F.Supp.2d 1155, 1159 (S.D. Cal. 2007); *Washington Mut.*

6  *Bank, FA v. Superior Court*, 15 P.3d 1071, 1080–81 (2001). A separate conflict-of-laws inquiry must be

7  made regarding each issue. *Washington*, 15 P.3d at 1081. Further, the choice-of-law analysis is generally

8  conducted "at class certification, not the pleadings stage," especially when discovery is necessary to

9  clarify fact relevant fact issues such as the location of relevant decisionmakers and data processes

10  alleged. *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 894 (N.D. Cal. 2022).

11      Because Plaintiffs have alleged facts demonstrating sufficient contacts between California and

12  Plaintiffs' claims, as previously discussed (and which PowerSchool does not challenge), PowerSchool

13  has the burden to prove that California should not apply. *See Mazza*, 666 F.3d at 590. It has not met

14  its burden, instead only cursorily summarizing how the choice-of-law test should apply.

15      **CIPA.** PowerSchool's only argument regarding purported differences between CIPA and

16  analogous Washington law is that the latter protects communications "between two or more

17  individuals" and oral conversation, which it contends are not "at issue here." Mot. at 15 (citing Wash.

18  Rev. Code § 9.73.030(1)(a)). This statement does not show how these provisions are materially

19  different from relevant provisions in CIPA or how any such differences would preclude application

20  of CIPA to Plaintiffs' claims. Furthermore, CIPA expressly requires consent from "all parties to the

21  communication," which would include communications between two or more individuals. Cal. Penal

22  Code § 631(a); *see also Gladstone v. Amazon Web Servs., Inc.*, No. 2:23-CV-00491-TL, 2024 WL 3276490,

23  at *4 (W.D. Wash. July 2, 2024) (construing CIPA, observing that "only a third party can listen secretly

24  to a private conversation") (cleaned up); *Heinz v. Amazon.com Inc.*, No. 2:23-CV-1073, 2024 WL

25  2091108, at *4 (W.D. Wash. May 8, 2024) (finding no material differences between CIPA and

26  Washington law). Plaintiffs allege communications between at least two parties—themselves and

27  PowerSchool—as previously discussed at section III, *supra*. And PowerSchool fails to show that

28  application of Washington law would produce a different outcome. *See Opperman v. Path, Inc.*, 2016 WL

1  3844326, at *10 (N.D. Cal. July 15, 2016). ("The analysis must be based on the facts and circumstances

2  of *this* case, and *these* Plaintiffs' allegations.") (cleaned up, emphasis in original).

3      **UCL.** PowerSchool's only argument regarding purported differences between the UCL and

4  Washington's unfair competition law is that the latter requires private plaintiffs to show that the public

5  interest was impacted. Mot. at 15. But PowerSchool does not explain how the UCL differs or why any

6  such difference would be material based on Plaintiffs' allegations. *See Forcellati v. Hyland's, Inc.*, 876 F.

7  Supp. 2d 1155, 1160 (C.D. Cal. 2012) (rejecting defendant's argument that UCL should not apply,

8  observing that "Defendants do not even discuss the differences between the consumer protection

9  laws of New Jersey and California, let alone address whether these differences are material based on

10  the facts and circumstances of this case"); *Heinz*, 2024 WL 2091108, at *4. Furthermore, Plaintiffs

11  allege fraud, in part, on the basis that PowerSchool's actions were likely to harm the public interest, as

12  permitted under the UCL. *See Khan*, 975 F. Supp. 2d at 1145; Compl. ¶¶ 173–188, 453, 492, 501.

13  PowerSchool thus does not demonstrate material differences, as is its burden.

14      Because PowerSchool fails to meet the first step of the governmental-interest test, the Court

15  should not consider whether it has met the second or third step. *See Washington*, 15 P.3d at 1080–81.

16  Even if it did, PowerSchool's cursory arguments under those steps—which do not even cite the

17  specific laws it purports to challenge—are equally unavailing. Mot. at 15; *see Mazza*, 666 F.3d at 590–

18  91 (differences in states' laws "must have a significant effect on the outcome of the trial in order to

19  present an actual conflict in terms of choice of law"). A court "cannot conclude that the interests of

20  other states would be impaired by the application of California law" when a defendant offers only

21  generalized arguments and fails to show "how the application of California state law would frustrate

22  the interests of any foreign state." *Opperman*, 2016 WL 3844326, at *10.

## IX.    Conclusion

24      Children and their parents cannot be compelled to surrender their private lives for unchecked

25  data mining in exchange for the education to which they are legally entitled. Plaintiffs have sufficiently

26  pled allegations supporting each of their claims and intend to hold PowerSchool to account for

27  operating as though their rights do not exist. The Court should deny PowerSchool's motion to dismiss

28  in its entirety. To the extent necessary, however, Plaintiffs respectfully request leave to amend.

1   Dated: September 6, 2024                    Respectfully Submitted,

2

3                                              By  _/s/ Julie Liddell_____
                                               JULIE LIDDELL
4                                              Julie Liddell (*pro hac vice*)
                                               EDTECH LAW CENTER PLLC
5                                              P.O. Box 300488
                                               Austin, Texas 78705
6                                              Telephone: 737.351.5855
                                               julie.liddell@edtech.law
7
8                                              Leonard W. Aragon (*pro hac vice*)
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
9                                              11 West Jefferson Street, Suite 1000
                                               Phoenix, Arizona 85003
10                                             Telephone: 602.840.5900
                                               leonard@hbsslaw.com
11
12                                             Shana E. Scarlett (SBN 217895)
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
13                                             715 Hearst Avenue, Suite 202
                                               Berkeley, California 94710
14                                             Telephone: 510.725.3000
                                               shanas@hbsslaw.com
15
16                                             Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                    3:24-cv-02706-JD