Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky (*pro hac vice*)
Amelia H. Bailey (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Rachael A. Rezabek
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
rachael.rezabek@kirkland.com

*Attorneys for the Defendant PowerSchool Holdings, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMILY CHERKIN, et al,<br><br>Plaintiffs,<br><br>v.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>Defendant. | CASE NO. 3:24-CV-02706-JD<br><br>**REPLY IN SUPPORT OF DEFENDANT POWERSCHOOL HOLDINGS, INC.'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT**<br><br>Complaint Filed Date: May 6, 2024<br><br>Judge: The Hon. James Donato<br>Hearing Date: November 7, 2024<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 11, 19th Floor |

## TABLE OF CONTENTS

Page

Introduction ..... 1

Argument ..... 1

I. Plaintiffs Fail to Plead a Reasonable Expectation of Privacy or Offensiveness Required to Support Counts I and VI. ..... 1

II. Plaintiffs' Deceit Claim (Count II) Must Be Dismissed for Failure to Plead Reliance. ..... 4

III. Plaintiffs' CIPA Claim (Count III) Fails as a Matter of Law. ..... 5

IV. Plaintiffs Fail to State any Unfair Competition Claim (Count IV). ..... 6

V. Plaintiffs' CDAFA Claim (Count V) Fails as a Matter of Law. ..... 8

VI. Plaintiffs Cannot State a Claim for Statutory Larceny (Count VII). ..... 9

VII. Plaintiffs' Unjust Enrichment Claim (Count VIII) Also Fails. ..... 9

VIII. The Court Should Dismiss Plaintiffs S.G.'s and Cherkin's Claims Because They Cannot Sue Under California Law. ..... 10

Conclusion ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*420 Caregivers, LLC v. City of Los Angeles*,
219 Cal. App. 4th 1316 (2012) ....................3, 4

*A.B. by & Through Turner v. Google LLC*,
2024 WL 3052969 (N.D. Cal. June 18, 2024) ....................6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5

*BHRS Grp., LLC v. Brio Water Tech., Inc.*,
2020 WL 9422352 (C.D. Cal. Dec. 14, 2020) ....................7

*Brodksy v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................9

*Brown v. Google, LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ....................6

*BRV, Inc. v. Superior Ct.*,
143 Cal. App. 4th 742 (Cal. 2006), *as modified on denial of reh'g* (Oct. 26, 2006) ....................2

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................9

*Callaghan v. BMW of N. Am., LLC*,
2014 WL 6629254 (N.D. Cal. Nov. 21, 2014) ....................10

*In re Capacitors Antitrust Litig.*,
106 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................10

*In re Capacitors Antitrust Litig.*,
2020 WL 6462393 (Nov. 2, 2020) ....................10

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................8

*D'Angelo v. FCA US, LLC*,
2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ....................6

*Diaz v. Fed. Express Corp.*,
373 F. Supp. 2d 1034 (C.D. Cal. 2005) ....................5

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) ....................6, 7, 9

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Doe v. Kaiser Foundation Health Plan*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ..........10

*Doe v. Meta Platforms*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..........6, 8

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ..........8, 9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ..........5

*Gutierrez v. Converse Inc.*,
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023)..........9

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ..........8

*Hill v. Nat'l Collegiate Athletic Assn.*,
865 P.2d 633 (Cal. 1994) ..........3

*Hoai Dang v. Samsung Elecs.Co.*,
2018 WL 6308738 (N.D. Cal. Dec. 3, 2018)..........8

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ..........7

*Lau v. Gen Digital Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ..........9

*McLellan v. Fitbit, Inc.*,
2018 WL 2688781 (N.D. Cal. June 5, 2018)..........10

*Mirkin v. Wasserman*,
858 P.2d 568 (Cal. 1993) ..........4

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022), *review denied* (Dec. 14, 2022)..........6

*Occidental Land, Inc. v. Superior Court*,
556 P.2d 750 (Cal. 1976) ..........4

*Owasso Indep. Sch. Dist. No. I-011 v. Falvo*,
534 U.S. 426 (2002)..........2

*Quigley v. Yelp, Inc.*,
2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)..........8

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ..........4

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
2022 WL 17170159 (N.D. Cal. Nov. 22, 2022) ........ 8

*Snapkeys, Ltd. v. Google LLC*,
2020 WL 6381354 (N.D. Cal. Oct. 30, 2020) ........ 7

*Sullivan v. Oracle Corporation*,
254 P.3d 237 (Cal. 2011) ........ 10

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ........ 9

*In re Tobacco II Cases*,
207 P.3d 20 (Cal. 2009) ........ 7

*United States v. Tuggle*,
4 F.4th 505 (7th Cir. 2021) ........ 3

**Statutes**

20 U.S.C. § 1232g ........ 2

Cal. Educ. Code § 49073.1 ........ 2, 9

Cal. Educ. Code § 49076 ........ 2

Cal. Penal Code § 502 ........ 8

**Rules**

Fed. R. Civ. P. 8 ........ 5

**Other Authorities**

34 C.F.R. § 99.31 ........ 2, 3

34 C.F R. § 99.33(a) ........ 3

REPLY IN SUPPORT OF DEFENDANT POWERSCHOOL HOLDING INC.'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT
iv
CASE NO. 3:24-CV-02706-JD

## INTRODUCTION

Plaintiffs' Opposition to PowerSchool's motion to dismiss underscores that their Complaint is heavy on social commentary and policy views, but light on factual allegations that would support their sweeping claims. For instance, with respect to their claims for intrusion upon seclusion and invasion of privacy (Counts I and VI), Plaintiffs contend that FERPA and the California Education Code are inapplicable to their claims, but in doing so completely ignore their own allegations about PowerSchool's relationship with schools that require consideration of this legal framework to evaluate with full context what is a "reasonable" expectation of privacy. Similarly, with respect to the deceit claim (Count II), Plaintiffs implicitly concede that they cannot have relied on representations they never even allege they heard or saw, so they instead concoct an unsupported "agency" theory found nowhere in their Complaint. As for their CIPA claim (Count III), Plaintiffs do not grapple with their failure to allege that the data at issue qualifies as "contents" under the statute's plain text. Further, with respect to their UCL, CDAFA, and larceny claims (Counts IV, V, and VII), Plaintiffs contend they have alleged a "market" for their data sufficient to show economic harm or damages, but omit that their own allegations—that data commercialization harms students—bely any proper inference that Plaintiffs would have otherwise sold their data in any such "market." Finally, Plaintiffs ignore multiple clear holdings by this very Court dooming their unjust enrichment claim (Count VIII). For these reasons and the reasons that follow, Plaintiffs' Complaint must be dismissed.

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLEAD A REASONABLE EXPECTATION OF PRIVACY OR OFFENSIVENESS REQUIRED TO SUPPORT COUNTS I AND VI.

Plaintiffs acknowledge their intrusion upon seclusion and invasion of privacy claims (Counts I and VI) touch on two distinct types of data: (1) student data (i.e., data shared by schools, students, or parents about students) and (2) passively generated technical data. Opp. at 1, 4. They then contend that FERPA and the California Education Code are inapplicable to analyzing whether they have a reasonable expectation of privacy in their student data. *Id.* at 1-4. They are incorrect, as FERPA and the California Code expressly and directly govern the relationship between students, schools, and PowerSchool (and the disclosure of student data shared pursuant to those relationships) and, consequently, directly implicate the

legal evaluation of what is a *reasonable* expectation of privacy in this regulatory context. Separately, Plaintiffs entirely fail to respond to PowerSchool's argument that Plaintiffs have not satisfied the "offensiveness" prong of their claims with respect to passively generated technical data. Consequently, both claims fail.

With respect to student data, contrary to Plaintiffs' assertions, both FERPA and the California Education Code define education or pupil records "broad[ly]." *See, e.g.*, *BRV, Inc. v. Superior Ct.*, 143 Cal. App. 4th 742, 753-54 (Cal. 2006) ("Congress intended the definition of 'education record' to be broad."), *as modified on denial of reh'g* (Oct. 26, 2006) (cited by Plaintiffs' Opp. at 2).[1] Such records thus include, among other things, "records, files, documents, and other materials" that "(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or *by a person acting for such agency or institution*." 20 U.S.C. § 1232g(a)(4)(A) (emphasis added); *see also* Cal. Educ. Code § 49073.1(d)(5)(A) (defining "pupil records" as "[a]ny information acquired directly from the pupil through the use of instructional software or applications assigned to the pupil by a teacher or other local educational agency employee"). Under these same governing laws, ***schools*** (and not parents or students) own "pupil" or "education" records, and consequently, ***schools*** are permitted to outsource the management of such records to third-party contractors. *See* 20 U.S.C. § 1232g(b)(1)(A); 34 C.F.R. § 99.31(a)(1)(i)(B)(1); Cal. Educ. Code § 49076(a), (a)(2)(G)(i). Of course, third-party contractors are not free to do with student data whatever they wish; rather, they must perform certain functions pursuant to their contracts with schools, which curtail how data is used. *See* Mot. at 9; Opp. at 5.

Critically, Plaintiffs' ***own allegations*** illustrate that PowerSchool interacts with student data under the auspices of these governing laws. The data implicated in Plaintiffs' Complaint, including "[s]chool records," "[c]ontact information," "[d]emographic information," "[d]isciplinary and behavioral information," and "[m]edical information," Compl. ¶ 40, falls within the broad definitions of "education" or "pupil" records under FERPA and the California Education Code. The schools own such data and are legally permitted to employ contractors to manage such data, as occurs here. Compl. ¶ 34 ("PowerSchool's

[1] *Owasso Indep. Sch. Dist. No. I-011 v. Falvo*, 534 U.S. 426 (2002), says nothing different. It does not challenge the truism that "a teacher's grade book is an education record," and it holds only that "peer-graded student papers do not constitute 'education records' while they remain in the possession of the peer grader"—that is, before they are actually recorded. *Id.* at 436 (Scalia, J., concurring).

***primary customers*** are ***schools and school districts***." (emphasis added)). PowerSchool helps schools manage routine student records and assists schools in providing functions like additional learning opportunities or college counseling information, *see* Compl. ¶¶ 40, 61 (describing how PowerSchool's products help educators and school officials perform their jobs), thereby providing "an institutional service or function for which the agency or institution would otherwise use employees." 34 C.F.R. § 99.31(a)(1)(i)(B)(1). PowerSchool's handling of student data is "strictly controlled by [its] customer[s] ***through contractual obligations***," Compl. ¶ 151, invoking the requisite "direct control of the agency or institution with respect to the use and maintenance of education records," § 99.31(a)(1)(i)(B)(2). And PowerSchool "do[es] not use Student Data for any purpose other than to provide [its] services," *see* Compl. ¶ 155, in compliance with FERPA's use and redisclosure restriction, §§ 99.31(a)(1)(i)(B)(3), 99.33(a).

It is amidst this legal backdrop that the Court must analyze whether Plaintiffs have a "reasonable expectation of privacy" in their student data. And the contextual analysis required to determine an appropriate expectation of privacy includes consideration of the general social and regulatory context. *Cf. Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 655 (Cal. 1994) ("The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place." (internal quotations omitted)); *420 Caregivers, LLC v. City of Los Angeles*, 219 Cal. App. 4th 1316, 1348-49 (2012) (explaining that government regulation can reduce a person's privacy expectations). The answer is that Plaintiffs' expectation of privacy cannot be reasonable when the law constructs a regulatory regime that expressly contemplates and allows schools to share data with (and also *among*) service providers. *Cf. United States v. Tuggle*, 4 F.4th 505, 527 (7th Cir. 2021) ("[S]ociety's expectations of privacy will change as citizens increasingly rely on and expect these new technologies."). PowerSchool does not operate under the fall of night or otherwise surreptitiously engage with student data. Quite to the contrary, and ***according to Plaintiffs' own allegations***, PowerSchool operates at the behest of schools and school districts pursuant to strict contractual obligations, all of which Plaintiffs acknowledge is publicly available information. PowerSchool likewise shares a school's student information with the school's other service providers if and as directed to by the school itself. And Plaintiffs knowingly engage with PowerSchool as facilitated by their own school. In this context, Plaintiffs do not have a reasonable expectation of privacy in the data sharing challenged in the Complaint. *See Hill*, 865 P.2d at 655 ("advance notice" of the allegedly intruding

action can diminish any expectation of privacy); *420 Caregivers*, 219 Cal. App. 4th at 1348-49. To the extent Plaintiffs believe certain kinds of sharing or certain kinds of data are problematic, but other kinds are not, the burden is on *them* to draw those distinctions in the Complaint. They did not do so.[2]

Regarding the second category—passively collected technical data such as the IP address from which students connect to the internet—Plaintiffs do not respond to PowerSchool's argument that Plaintiffs have not plausibly alleged the "offensiveness" of generating this data. Opp. at 4. Instead, they contend that PowerSchool's cited authorities—which clearly establish that the collection and sharing of technical data is not highly offensive—are "inapposite." *Id.* Not true: just like in *Saleh v. Nike, Inc.*, technical data about Plaintiffs' device or use of PowerSchool products is not "intimate or sensitive personally identifiable information." 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021). The only caselaw proffered here—PowerSchool's—demonstrates that generating this kind of technical data does not egregiously breach social norms. *See* Mot. at 7-8.

In light of the foregoing, the Court should dismiss Plaintiffs' claims under Counts I and VI.

## II. PLAINTIFFS' DECEIT CLAIM (COUNT II) MUST BE DISMISSED FOR FAILURE TO PLEAD RELIANCE.

Plaintiffs do not dispute that their statutory deceit claim (Count II) requires them to allege justifiable reliance on PowerSchool's purported "misrepresentations and omissions," and yet they do not allege Plaintiffs here relied on (or even saw or read) any misrepresentations or omissions. Opp. at 5-6. Rather, Plaintiffs argue that the Court can ***infer*** reliance by the ***schools*** (citing *Occidental Land, Inc. v. Superior Court*, 556 P.2d 750, 754 (Cal. 1976)), and in turn assume ***indirect*** reliance by Plaintiffs, through a purported agency relationship between Plaintiffs and their school. Opp. at 6. But *Occidental* simply "do[es] not support an argument for presuming reliance on the part of persons who never read or heard the alleged misrepresentations;" indirect reliance is legally insufficient. *Mirkin v. Wasserman*, 858 P.2d 568, 574 (Cal. 1993). Further, Plaintiffs have not alleged an agency relationship between themselves and the schools. To the contrary, Plaintiffs' Complaint contends that there is allegedly ***no*** agency relationship

[2] Implicitly acknowledging their Complaint's deficiencies, Plaintiffs try to shift the burdens. First, they argue "***PowerSchool*** fails to distinguish education records from other forms of personal data it takes from students and their parents." Opp. at 3 (emphasis added). Next, they say ***PowerSchool*** "fails to show that students and their parents have no expectation of privacy in other forms of personal data." *Id.* No, it is ***Plaintiffs'*** burden to adequately allege they have a reasonable expectation of privacy in ***all of the data*** they allege was improperly shared.

between Plaintiffs and their schools. *See, e.g.*, Compl. ¶ 268 (asserting that "schools cannot legally consent to the direct collection or use of personal information about and belonging to children"). Because Plaintiffs have not pleaded justifiable reliance, their deceit claim must be dismissed. *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1066-67 (C.D. Cal. 2005) (dismissing deceit claim for failure to allege reliance).

## III. PLAINTIFFS' CIPA CLAIM (COUNT III) FAILS AS A MATTER OF LAW.

Plaintiffs concede, as they must, that their claim under the first clause of CIPA fails for failure to plead a connection with a "telegraph or telephone wire, line, cable, or instrument." *See* Compl. ¶ 467; Opp. at 5-6. Instead, Plaintiffs assert that they have pleaded "enough" to show a violation of the second through fourth clauses of CIPA by alleging without support and in a conclusory fashion that PowerSchool enables its "partners" to "intercept" some unknown "data" from PowerSchool's products. *Id.* Again, these barebones allegations, *see, e.g.*, Compl. ¶ 106 ("PowerSchool shares data with many of these companies automatically and in real or near-real time"), are insufficient to state a claim under CIPA; they do not put PowerSchool on sufficient notice of what sharing or partnership is even at issue, as is required under Rule 8 and would be important to appropriately cabin discovery. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Complaint lists "[e]xamples of PowerSchool 'Partners'" (Compl. ¶¶ 108-31), there is no indication of *which* of these partnerships are problematic, why, or what information is shared with which of these partners. For example, the Complaint describes Finalsite and alleges that customers (schools) integrate with their purchased PowerSchool products so that the school's student data (housed in PowerSchool systems) can be used "for contact lists, online directories, class pages, and rosters." Compl. ¶ 120. Is this problematic? Isn't it a standard part of school administration to maintain such lists?

In addition, Plaintiffs wholly fail to allege that the unknown "data" purportedly shared with third parties constitutes the "contents" of a communication as required under CIPA's second clause. Interception of "information" (Opp. at 7) is not sufficient. *See, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (information such as "name, address . . . or identity of a [customer] . . . [and] geolocation data" is not "content" under CIPA, and thus dismissing CIPA claim).[3] And because Plaintiffs'

[3] *Cf. D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *6, *12 (S.D. Cal. Mar. 28, 2024) (finding CIPA allegations sufficient where plaintiffs alleged interception of "private and deeply personal" chat conversations).

REPLY IN SUPPORT OF DEFENDANT POWERSCHOOL HOLDING INC.'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT

5

CASE NO. 3:24-CV-02706-JD

claim under CIPA's second clause fails, their claims under the third and fourth clauses are likewise doomed. *See* Mot. at 9-10. Plaintiffs' CIPA claim (Count III) should be dismissed.

## IV. PLAINTIFFS FAIL TO STATE ANY UNFAIR COMPETITION CLAIM (COUNT IV).

Plaintiffs' UCL claim (Count IV) fails because they have failed to plead that they lost money or property, and they have not adequately alleged a substantive violation.

Plaintiffs concede that the UCL "requires a showing that the plaintiff lost money or property due to any alleged violation," Opp. at 8, but argue Plaintiffs have made the requisite showing by (1) "alleg[ing] a market for personal information," citing *Brown v. Google, LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021), or, alternatively, (2) simply "alleg[ing] [a] loss of personal information through data collection alone," citing *A.B. by & Through Turner v. Google LLC*, 2024 WL 3052969 (N.D. Cal. June 18, 2024). *Id.* Plaintiffs are wrong on both counts.

With respect to the first, unlike in *Brown*, Plaintiffs here have not identified any platform where they "can and do directly monetize their own data." 2021 WL 6064009, at *15 (permitting UCL claim where plaintiffs alleged that Google paid participants "up to $3 per week to be tracked") (emphasis removed). And even assuming they had, they "fail to explain" why PowerSchool's alleged conduct makes them now unable to "sell their data in the market they allege exists." *Doe I v. Google LLC*, 2024 WL 3490744, at *7 (N.D. Cal. July 22, 2024) (dismissing UCL claim despite allegations of a market for plaintiffs' personal data because the "allegations fail[ed] to explain why any alleged acquisition of personal information would necessarily mean that the plaintiffs could not still sell their data in the market"); *accord Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022), *review denied* (Dec. 14, 2022) (dismissing UCL claim because plaintiffs did not "allege that any prospective purchaser of their PII might learn that their PII had been stolen . . . and, as a result, refuse to enter into a transaction with them, or insist on less favorable terms"). Perhaps more critically, Plaintiffs' ***own allegations*** indicate that Plaintiffs wish to keep their student data private and consequently, negate any inference they would ever sell their data. *See, e.g.*, Compl. ¶ 321 (contending that the alleged monetization of student data is "profoundly un-American"); *see also id.* ¶¶ 300-70 (asserting harm from commercialization of student data); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1090 (N.D. Cal. 2023) (dismissing UCL claim and finding existence of data market irrelevant where plaintiffs "apparently [did] not want

Meta or anyone other than their healthcare providers to have [such data]"). In sum, Plaintiffs' first argument fails because even assuming they adequately alleged a "market" for their data, they do not (and cannot) allege that they wanted but were unable to participate in that market, or that they received less money for selling their data than they otherwise would have.

Regarding the second, although *Turner* arguably supports Plaintiffs' contention they need only allege a "loss of personal information alone," the "weight of authority in this district and the state . . . point[s] in the opposite direction: that the 'mere misappropriation of personal information does not establish compensable damages'" under the UCL. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943-44 (N.D. Cal. 2023) (collecting cases); *accord Doe I*, 2024 WL 3490744, at *7 ("Simply because a plaintiff's information is valuable in the abstract, and simply because a company might have made money from it, that does not mean that the plaintiff has lost money or property as a result.") (internal quotations omitted). "Because Plaintiffs have not alleged a specific monetary or economic loss," their UCL claim must be dismissed. *Katz-Lacabe*, 668 F. Supp. 3d at 944.

Separately, Plaintiffs' UCL claim fails because they do not adequately allege a substantive violation. First, Plaintiffs' claim under the "unlawful" prong fails because it is derivative of Plaintiffs' other inadequately pleaded claims. *See* Mot. at 10-11. Second, with respect to the "fraudulent" prong, the California Supreme Court has made clear that there is an "actual reliance requirement [for] plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009); *accord BHRS Grp., LLC v. Brio Water Tech., Inc.*, 2020 WL 9422352, at *7 (C.D. Cal. Dec. 14, 2020) ("[C]ourts have held that plaintiffs bringing a claim under the UCL's fraud prong must allege their *own* reliance.") (collecting cases). Because Plaintiffs concede they have not alleged actual reliance, *see* Opp. at 9, their claim under the "fraud" prong fails. *See Snapkeys, Ltd. v. Google LLC*, 2020 WL 6381354, at *6 (N.D. Cal. Oct. 30, 2020) ("Because Snapkeys does not allege its own reliance, Snapkeys does not have standing to challenge this statement under the fraudulent prong of the UCL."). Finally, with respect to the "unfair" prong, Plaintiffs' response is only a citation to a case noting the anodyne proposition that the UCL has three prongs and a plaintiff is free to try any of them. *See* Opp. at 9. But that case says nothing about whether a plaintiff's claim under one prong can pass the pleading bar when its claim under another, based on the same allegations, necessarily fails. Plaintiffs' "unfair UCL

claim as pled in the Complaint is based on the same conduct underlying the other two UCL claims, and it must therefore be dismissed." *Sidhu v. Bayer Healthcare Pharms. Inc.*, 2022 WL 17170159, at *9 (N.D. Cal. Nov. 22, 2022); *accord Hoai Dang v. Samsung Elecs. Co.*, 2018 WL 6308738, at *10 (N.D. Cal. Dec. 3, 2018) ("[W]here the [alleged] unfair business practices . . . overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.").

## V. PLAINTIFFS' CDAFA CLAIM (COUNT V) FAILS AS A MATTER OF LAW.

CDAFA provides that only an individual who has "suffer[ed] damage or loss by reason of a violation" of the statute may bring a civil action "for compensatory damages and injunctive relief or other equitable relief." Cal. Penal Code § 502(e)(1). As with their UCL claim, Plaintiffs claim they alleged a "cognizable loss" as required under CDAFA by pleading a market for their data. Opp. at 10. As discussed above, Plaintiffs are incorrect because even if they alleged a "market," they have not alleged any facts regarding their inability to participate in that market. *See supra* § IV. Plaintiffs' CDAFA claim fails on this basis alone. *See, e.g.*, *Meta Platforms*, 690 F. Supp. 3d at 1081-82 (finding the plaintiffs' allegations of "diminished value" of their personal information insufficient to sustain their CDAFA claim); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023) (dismissing CDAFA claim and explaining that "CDAFA's private right of action contemplates some damage to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website"); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (dismissing CDAFA claim because "Plaintiffs offer[ed] no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data . . . is 'damage or loss'" within the meaning of CDAFA).

Plaintiffs' CDAFA claim also fails on the merits. Although Plaintiffs identify limited caselaw broadly construing CDAFA's "without permission" requirement, Opp. at 10, the weight of authority goes the other way. *See, e.g.*, *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715-16 (N.D. Cal. 2011) (construing "without permission" requirement strictly and dismissing CDAFA claim); *Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023) (following *In re Facebook* and dismissing CDAFA claim); *Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *5 (N.D. Cal. Jan. 22, 2018)

REPLY IN SUPPORT OF DEFENDANT POWERSCHOOL HOLDING INC.'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT 8 CASE NO. 3:24-CV-02706-JD

(same). And Plaintiffs' boilerplate, conclusory allegations regarding their CDAFA violation—that PowerSchool and some unidentified "third parties" use some unidentified "tracking technologies" that Plaintiffs contend are somehow "designed to evade" unidentified "ad tracking tools" (which are not even alleged to have been used by Plaintiffs), *see* Opp. at 10—are insufficient to state a CDAFA claim or give sufficient notice to PowerSchool of the conduct at issue. *See, e.g.*, *Brodksy v. Apple Inc.*, 445 F. Supp. 3d 110, 119 (N.D. Cal. 2020) (dismissing similar "boilerplate" CDAFA allegations). Plaintiffs' CDAFA claim must be dismissed.

## VI. PLAINTIFFS CANNOT STATE A CLAIM FOR STATUTORY LARCENY (COUNT VII).

As with the UCL and CDAFA claims, Plaintiffs' statutory larceny claim (Count VII) fails because Plaintiffs have not adequately alleged "actual damages." *See supra* §§ IV-V; *accord Tanner v. Acushnet Co.*, 2023 WL 8152104, at *10 (C.D. Cal. Nov. 20, 2023) (dismissing statutory larceny claim premised on misappropriation of personal information for failing to allege "actual damages"). Plaintiffs cite *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021), for the proposition that "personal data can be the subject of a statutory larceny claim." But as with their (few) other authorities on this point, *Calhoun* contravenes the weight of authority on this issue, and has recently been questioned by other courts. *See, e.g.*, *Doe I*, 2024 WL 3490744, at *7 (finding the "support cited" in *Calhoun* to be "tenuous").

Turning to the merits, Plaintiffs' statutory larceny claim fails because Plaintiffs do not explain why they have the required "exclusive possession or control" over either the data they provide to their schools or the technical data generated by PowerSchool products. *Lau v. Gen Digital Inc.*, 2024 WL 1880161, at *4 (N.D. Cal. Apr. 3, 2024). For the first category, Plaintiffs share their views about what the governing laws ***should*** say, *see* Opp. at 11, but fail to acknowledge that the California Education Code, in clear language, provides that such data is "the property of and under the control of the local educational agency," ***not*** Plaintiffs. Cal. Educ. Code § 49073.1(b)(1). For the second, Plaintiff's ultimate support is, again, *Calhoun*. *See* Opp. at 12. This Court should not adopt *Calhoun*'s questionable take on California law.

## VII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM (COUNT VIII) ALSO FAILS.

Plaintiffs completely ignore that *this Court* has repeatedly dismissed unjust enrichment claims with prejudice because "unjust enrichment is a remedy and not an independent claim." *See, e.g.*, *McLellan v. Fitbit, Inc.*, 2018 WL 2688781, at *4 (N.D. Cal. June 5, 2018) (Donato, J.) (dismissing unjust enrichment

claim with prejudice); *Callaghan v. BMW of N. Am., LLC*, 2014 WL 6629254, at *4 (N.D. Cal. Nov. 21, 2014) (Donato, J.) (same); *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015) (Donato, J.) (same). Plaintiffs' claim under Count VIII should likewise be dismissed here.

**VIII. THE COURT SHOULD DISMISS PLAINTIFFS S.G.'S AND CHERKIN'S CLAIMS BECAUSE THEY CANNOT SUE UNDER CALIFORNIA LAW.**

Plaintiffs now seek nationwide application only of "CIPA, the UCL, and common-law intrusion upon seclusion." Opp. at 12. They claim that Washington residents S.G. and Cherkin can sue under California law as to these claims because the "presumption against extraterritoriality does not apply" given that the alleged misconduct occurred in California by a California defendant or because PowerSchool "fails to demonstrate" that California law should not apply under a conflict-of-laws analysis. *Id.* at 12-13. But these claims cannot be brought by non-California plaintiffs. For instance, in *Doe v. Kaiser Foundation Health Plan*, the court concluded, notwithstanding the fact that the defendant corporation was headquartered in California, that "only a California [p]laintiff can bring a CIPA claim." 2024 WL 1589982, at *12-13 (N.D. Cal. Apr. 11, 2024) (further noting that CIPA contains "express geographical limitations" that cabin liability to communications sent or received "at any place *within the state*"). Similarly, *Sullivan v. Oracle Corporation* involved a California-based defendant, yet the court nevertheless declined to apply the UCL to non-residents who performed work outside of the state. 254 P.3d 237, 248 (Cal. 2011). *See also In re Capacitors Antitrust Litig.*, 2020 WL 6462393, at *7-8 (N.D. Cal. Nov. 3, 2020) (Donato, J.) (noting that "[t]he limits on the extraterritorial application of the . . . UCL [is] another reason to doubt the propriety of a multi-state class" and holding that "[c]ertification of a multi-state class under California law is denied"). Plaintiff S.G.'s and Cherkin's California claims should similarly be dismissed because they are not California residents. *See* Mot. at 13-15.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

REPLY IN SUPPORT OF DEFENDANT POWERSCHOOL HOLDING INC.'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT 10 CASE NO. 3:24-CV-02706-JD

DATED: October 7, 2024

Respectfully submitted,
Kirkland & Ellis LLP

*Olivia Adendorff, P.C.*

Olivia Adendorff, P.C.

*Attorney for Defendant PowerSchool Holdings, Inc.*

**ATTESTATION**

I, Rachael Rezabek, am the ECF user whose ID and password are being used to file this Notice of Motion and Motion by Defendant to Dismiss the Class Action Complaint. In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in this filing has been obtained from all signatories.

DATED:  October 7, 2024

*Rachael A. Rezabek*
Rachael A. Rezabek