| | |
|---|---|
| Shana E. Scarlett (217895)<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>715 Hearst Avenue, Suite 202<br>Berkeley, California 94710<br>Telephone: (510) 725-3000<br>shanas@hbsslaw.com<br><br>Julie Liddell (*pro hac vice pending*)<br>EDTECH LAW CENTER PLLC<br>P.O. Box 300488<br>Austin, Texas 78705<br>Telephone: (737) 351-5855<br>julie.liddell@edtech.law<br><br>Robert B. Carey (*pro hac vice pending*)<br>Leonard W. Aragon (*pro hac vice pending*)<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>11 West Jefferson Street, Suite 1000<br>Phoenix, Arizona 85003<br>Telephone: (602) 840-5900<br>rob@hbsslaw.com<br>leonard@hbsslaw.com<br><br>*Attorneys for Plaintiffs* | Robyn E. Bladow<br>KIRKLAND & ELLIS LLP<br>555 South Flower Street, Suite 3700<br>Los Angeles, California 90071<br>Telephone: (213) 680-8400<br>robyn.bladow@kirkland.com<br><br>Martin L. Roth, P.C. (pro hac vice)<br>Alyssa C. Kalisky (pro hac vice)<br>Amelia H. Bailey (pro hac vice)<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br>martin.roth@kirkland.com<br>alyssa.kalisky@kirkland.com<br>amelia.bailey@kirkland.com<br><br>Olivia Adendorff, P.C. (pro hac vice)<br>Rachael A. Rezabek<br>KIRKLAND & ELLIS LLP<br>4550 Travis Street<br>Dallas, TX 75205<br>Telephone: (214) 972-1770<br>oliva.adendorff@kirkland.com<br>rachael.rezabek@kirkland.com<br><br>*Attorneys for Defendant* |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY CHERKIN, on behalf of herself and as parent and guardian of her minor child, S.G., and on behalf of all others similarly situated, DAVID CONCEPCIÓN, on behalf of himself and as parent and guardian of his minor children, L.M.C. and M.M.C., and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>   Defendant. | Case No.: 3:24-cv-02706<br><br>**[PROPOSED] STIPULATED ORDER REGARDING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**<br><br>Complaint Filed: May 6, 2024 |

**1.    PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2.    COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3.    LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4.    DEFINITIONS**

The following definitions shall control the production of discoverable documents and electronically stored information when production commences. The following terms shall be defined:

a) "Archival Systems" refers to long-term repositories for the storage of records that preserve the content of the documents, prevent or track alterations, and control access.

b) "Bates Number" means an identifier that consists of a short two to ten letter prefix, associated with the Producing Party's name, followed by seven numbers (e.g., ABCD0000001). The prefix should include only letters, dashes, or underscores. The prefix and number should not be separated by a space. Each page in the production is assigned a unique, incremental Bates Number.

c) "Custodian" shall mean any individual of a producing party, as identified and agreed by the parties, as likely having possession, custody, or control of potentially relevant documents.

d) "Custodial data source" means any data source used for business purposes in or on which a custodian may store potentially relevant documents including, but not limited to, personal computers, laptops, tablets, email (whether stored locally or centrally), mobile devices, shared network servers, shared or individual network folders, cloud storage systems, structured data systems, and collaborative hubs.

e) "Document(s)" shall have the same definition as set forth in Federal Rule of Civil Procedure

       34, and when used herein, refers to both ESI (including, but not limited to, loose documents/unstructured data, email, structured data, data compilations) and hard copy documents. As used herein, "documents" and "data" are synonymous.

    f) "Extracted Text" means all text content extracted from a Native File, and includes all header, footer, and document body information.

    g) "Load File" means an electronic data file containing information identifying documents containing (i) an indication of which individual pages or files constitute each Document and/or (ii) relevant data relevant to each individual Document, including extracted metadata.

    h) "Metadata" means: (i) information associated with or embedded in an electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when an electronic file or Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

    i) "Native File(s)" or "Native Format" means ESI that has an associated file structure defined by the creating or viewing application in the file type for (or of) the application in which such ESI is normally created, viewed, and/or modified in the usual course of business and its regularly conducted activities.

    j) "Non-custodial data source" means any data source that is not kept or maintained by any particular custodian, but which may contain relevant documents, including data sources used by any department, business unit, function, or division of a producing party, and shared storage systems that may contain relevant documents.

    k) "OCR" means optical character recognition, generating a text from an image of text using software and making such text searchable using appropriate software.

    l) "Producing Party" means the party or non-party producing Documents or ESI under this Protocol.

    m) "Receiving Party" means the party receiving production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

    n) "Search Term" means a word, or a string of words or phrases joined by proximity and Boolean connectors and other syntax designed to capture potentially relevant ESI.

**5. PRESERVATION**

The parties have discussed their preservation obligations and needs and have agreed that preservation of potentially relevant ESI will be reasonable and proportionate.

**6. SCOPE OF DISCOVERY**

The Parties agree that pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure the scope of discovery is limited to those matters that are both relevant to the Parties' claims and defenses and proportional to the needs of the case. The Parties agree to meet and confer in an attempt to reach agreement on the scope of discovery as it relates to search parameters designed to locate relevant, non-

privileged information, including but not limited to:

- Data sources;
- Date ranges;
- File types; and
- Custodians

## 7. EXCLUSIONS – INACCESSIBLE SOURCES

Consistent with the proportionality standard, and absent a Party's specific written notice for good cause, the following categories of ESI are presumed to be inaccessible and the producing party need not search them:

- Deleted, slack, fragmented, unallocated, or other data only accessible by forensics.

- Temporary data stored in a computer's random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

- Online access data such as temporary Internet files, history, cache, and cookies.

- Data in metadata fields that are frequently updated automatically, such as last-opened dates.

- Data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

- Recorded voice messages, including audio, video, or audio visual information, including telephonic recordings or voicemail (e.g., .wav, .mp3, .avi., .swf, etc.) unless captured in collected email records.

- Electronic data (e.g., call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

- Server, system, or network logs.

- Automatically saved versions of documents

- Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

- Data remaining from systems no longer in use that is unintelligible on systems in use.

- Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

- ESI deleted in the normal course of business before the time a preservation obligation in this matter came into effect.

**8.     SEARCH METHODOLOG(IES)**

The parties agree to meet and confer in good faith regarding methods to search ESI for the purpose of identifying ESI that is subject to production in discovery and to filter out ESI that is not subject to discovery. To the extent either Party wishes to use key word search terms, they agree to meet and confer regarding any such proposed terms. To the extent that either party wishes to use Technology Assisted Review (TAR) to make responsiveness determinations, the Parties agree to meet and confer regarding the process proposed by producing party.

**9.     PRODUCTION FORMATS**

a) <u>Documents shall be produced in the following formats:</u>

   i. **Electronic Production of Paper Documents**. Documents that are maintained in paper format shall be scanned as black and white images at 300 DPI resolution or greater, in Group IV compression single-page TIFF (or JPG for color images) image format that represents the full and complete information contained in the original Document. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately. Documents produced under this agreement shall also be produced with the associated OCR text, and with a load file.

   ii. **Electronically Stored Information.** Except as set forth in paragraph 3.e below, Document images shall be generated from electronic Documents 300 DPI, black and white Group IV TIFF images or color JPEG images, one file per page, that reflects the full and complete information contained on the original document, together with a load file containing required metadata as set forth in Section 13 of this Protocol. If the receiving party reasonably believes that production of a document in color is material to the understanding of the document, the Party may request that the Producing Party provide a replacement document that has been imaged in color, to include color versions of hard copy documents imaged in black and white. The Producing Party will honor reasonable requests to reproduce certain documents in color. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document, and there should be OCR text generated after the redaction has been applied.

b) <u>Load Files</u>**:** Each production shall include a .dat metadata load file, which is a delimited text file format. The first row of the file shall contain a list of metadata columns. Each subsequent row shall contain the metadata for a single document. Each column of each row shall contain one metadata value, with values encapsulated by a special "quote" character and columns

separated by a special "separator" character throughout.

  i. The load file should use Concordance standard delimiters, a thorn (þ, ASCII character 231) as a quote character and the special, non-printing character DC4 (ASCII character 20) as a separator.

  ii. First line must contain the column/field names.

  iii. Each subsequent row must contain the metadata for one document.

  iv. Every row must have the same number of columns/fields (empty values are acceptable).

  v. Text must be encoded in either ASCII, UTF-8, or UTF-16.

  vi. An Image Load File which associates each Bates number with its corresponding single-page TIFF or multi-page PDF image file for each Document included in the production in Opticon (*.opt) format.

  vii. Load Files should be placed in the Data folder of the production in the root directory.

c) <u>Extracted Text and OCR Files (.txt files)</u>

  i. A single text file for each document containing all the document's pages, in text.

  ii. Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the document.

  iii. No other information should be provided in text filenames, including confidentiality status.

  iv. Files should be placed in the text/ subdirectory.

d) <u>Image Files</u>

  i. A single image per TIFF file for each page in a document. No multi-page TIFF image files.

  ii. Filenames should be in the form: <Bates num>.tif/.jpeg, where <Bates num> is the BATES number of the page of the document.

  iii. A single-page placeholder image should be produced in the images directory for each native file with the same bates number as the native file. The placeholder shall state "DOCUMENT PRODUCED IN NATIVE FORMAT" and contain the bates stamp on the lower right of the page and the confidentiality designation, if applicable, on the lower left.

  iv. Files should be placed in the images/ subdirectory.

  v. No other information should be provided in image filenames, including confidentiality status.

e) <u>Native Files</u>

  i. File names must be named by the Bates number of the first page of the associated

   document.

  ii. The filename must retain the file extension corresponding to the original native format; for example, an Excel 2003 spreadsheet's extension must be .xls.

  iii. Each filename, including extension, must correspond to the NativePath metadata field in its corresponding document's row in the load file.

  iv. Files should be placed in the natives/subdirectory.

 f) <u>Resolution of Production Issues</u>: In the event that the Receiving Party identifies Documents and ESI that cannot be read because of imaging or formatting, or other technical problems, the Receiving Party may notify the Producing Party and request that the Documents and ESI be reproduced. If the Producing Party is unable to readily resolve the issues with the identified Documents or ESI, the Producing Party and the Receiving Party shall meet and confer to attempt to resolve problems consistent with the Federal Rules of Civil Procedure and the Court's Scheduling Order, to the extent the problem(s) are within the parties' control.

 g) <u>Native Format Documents</u>: Notwithstanding the foregoing provisions of this paragraph, the parties recognize that it may be appropriate for certain types of Documents to be produced in Native Format. Therefore, the Producing Party shall produce all spreadsheets, PowerPoints, and audio/video files in native format unless there is an agreement to the contrary. To the extent that there are specific documents that the Receiving Party believes need to be produced in Native Format in order to allow the Receiving Party to review them, the Parties agree to meet and confer to discuss whether such files can be produced natively and the relative burden of doing so. Any file produced in native format shall include Bates stamped native placeholder image ("Slip Sheet(s)") representing the native documents for purposes of document identification and confidentiality designations.

**10. PRODUCTION METHOD**

Production media shall use AES-256 or an equivalent, industry-accepted method of encryption to preserve the security of production deliverables and will be sent via a FTPS or SFTP link provided via email. On the occasion in which a particular production is of a size that would make sending it via FTPS or SFTP link impractical, the parties may agree to send encrypted physical media such as a Hard Drive. Passwords for encrypted media will be sent separately from the media itself.

    a.) <u>Identifying Productions</u>. Each production shall be assigned a volume name, production number, or other unique identifying label corresponding to the identity of the producing party and the Bates ranges of the documents in that production (e.g., "XXXX Production 1, XXXX-0000001 – XXXX-0000456"). Productions shall include text referencing the case name and number. Further, any replacement production shall cross-reference the original production, clearly identifying that it is a replacement and cross-referencing the Bates range that is being replaced.

**11. DOCUMENT UNITIZATION**

The Parties will make their best efforts to unitize the documents correctly. When scanning paper documents into Document Images, they shall be unitized in a manner to maintain the document(s) and any attachments, as they existed in their original state.

**12. ATTACHMENT FAMILIES**

For electronic documents, the relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained using the Begin Family and End Family (or similarly named) fields of the load file. Document Images generated from attachments to emails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent email in their Bates numbering, when possible.

**13.    DUPLICATES**

A Producing Party who has more than one identical copy of an electronic document (i.e., the documents are actual duplicates) need only produce a single copy of that document. A Producing Party need not produce the same electronically stored information in more than one form. Deduplication will be done on only exact duplicates and shall be based on the MD5 or SHA1 hash values of Native Version of documents. Where any such documents and ESI have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) to be deduplicated.

    a) De-duplication shall be performed only at the document family level so that attachments are not de-duplicated against identical stand-alone versions of such documents and vice versa.

    b) Attachments to e-mails or other documents shall not be disassociated from the parent e-mail or document even if they are exact duplicates of another document in the production.

    c) Paper documents shall not be eliminated as duplicates of ESI.

    d) Each Custodian of a deduplicated document shall be identified it the AllCustodians

metadata field.

14. **MOST INCLUSIVE EMAIL PRODUCTIONS:**

Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files. A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting. Threading is therefore permitted, though not required.

For the avoidance of doubt, a lesser included message can only be excluded if that message and all of its attachments are contained in the most inclusive message that is being produced. If the later in time message contains different text (such as where the later message adds in-line comments to the body of the earlier message) or does not include an attachment that was part of the earlier message, the earlier message must be produced.

To the extent that an e-mail thread contains privileged communications, such communications can be redacted. If an e-mail thread contains both responsive, privileged communications and responsive, non-privileged communications, the entire e-mail thread cannot be withheld as privileged.

12. **BATES NUMBERING**

Each Producing Party shall Bates number its production(s) as follows:

a) <u>Document Images</u>. Each page of a produced Document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document. The Bates Numbers shall be enumerated as defined above in Definitions. No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, and the Bates Number identified above.

b) <u>Native Format Documents</u>. In the event Native Format Documents are produced, in order to preserve the integrity of those Native Format Documents, no Bates Number, confidentiality legend or internal tracking number should be added to the content of the Native Document. Each Native Format Document shall be named in accordance with Sections 7.e-2 of this Protocol.

13. **DATABASES**

To the extent discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the Parties shall meet and confer to discuss the contents of

the database, including an understanding of which fields are relevant, and the preferred production format. If it is determined after meeting and conferring with the Requesting Party that any such discoverable data can be produced in an already existing and reasonably available report, then the producing Party may collect and produce the data in such a report.

**14.    DISCOVERY AND ADMISSIBILITY**

Nothing herein shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

**15.    METADATA**

The following Metadata fields or similar fields must be provided in the Metadata load file **to the extent such fields are available** for the data collected:

| FIELD NAME | DESCRIPTION |
|---|---|
| **BegBates** | First Bates Number |
| **EndBates** | Last Bates Number |
| **BegBatesAttach** | First Bates Number of the first document of a family |
| **EndBatesAttach** | Last Bates Number of the last document of a family |
| **Custodian** | Custodian of a file when collected |
| **AllCustodians** | All Custodians of a document when the Producing Party incorporates deduplication in their production workflow |
| **PgCount** | Number of pages of a document |
| **FileSize** | Size in bytes of the native file |
| **MD5Hash** | MD5 hash value calculated for a document |
| **TextPath** | Relative file path to the produced extracted text or OCR file of the document. A Text folder on the production deliverable should contain a separate text file for each document named with the corresponding BegBates. If a party OCRs documents for its own benefit, that OCR will be provided here. OCR text files shall be provided for documents with redactions. |
| **Confidentiality** | Populated for all documents with a confidentiality designation pursuant to any applicable Protective Order in addition to stamping of production images, i.e. Confidential or Highly Confidential. |
| **Redacted** | "Has Redactions" "Y" or "Yes" populated for all redacted documents |

| FIELD NAME | DESCRIPTION |
|---|---|
| **FileName** | Original file name of a document, including any extensions |
| **FileType** | Native file application (e.g., Adobe, Microsoft Excel) or native file MIME type. |
| **FilePath** | Original file/path of the location where the item was located at the time of collection. This should include location, file name, and file extension. |
| **FileExtension** | File Type Extension (e.g., MSG, XLS) |
| **NativePath** | Relative file path to the produced native file. A Natives folder on the production deliverable should contain a separate native file, for file types produced natively, for each document named with the corresponding BegBates. |
| **Title** | Extracted title of a non-e-mail document |
| **Author** | Extracted author of a non-e-mail document |
| **DateTimeCreated** | Date and time the file was created. |
| **DateTimeLastModified** | Date and time the file was last modified. |
| **LastModifiedBy** | Identification of person(s) who last modified a Document. |
| **From** | Name (when available) and e-mail address (when available) of the sender of an e-mail |
| **To** | Name (when available) and e-mail address(es) (when available) of the recipient(s) in the To line of an e-mail |
| **CC** | The name(s) (when available) and e-mail address(es) (when available) of the recipient(s) in the CC line of an e-mail |
| **BCC** | The name(s) (when available) and e-mail address(es) (when available) of the recipient(s) in the BCC line of an e-mail |
| **EmailSubject** | Subject of an e-mail |
| **MessageID** | Unique Message Id. |
| **InReplyTo** | Message ID of email that instant email is in reply to. |
| **DateTimeReceived** | Date and time an e-mail was received |
| **DateTimeSent** | Date and time an e-mail was sent |
| **AttachCount** | Number of files attached to an e-mail or parent document |
| **Attach Names** | Native file names of each individual attachment, separated by semicolons. |
| **ConversationIndex** | Value that indicates the relative position of a message within a conversation thread |
| **Track Changes** | **Document has track changes (Y/N).** |

| FIELD NAME | DESCRIPTION |
|---|---|
| Hidden Content | Identifies documents with hidden content (i.e. hidden rows, columns, sheets, or slides). |
| Speaker Notes | Document has speaker notes (Y/N). |
| Has Comments | Indicates there are comments in the document. |

17. **DISPUTE PROCESS**

For any dispute regarding the production of Documents and/or ESI pursuant to this ESI Protocol, including but not limited to disputes related to proposed search terms and custodians, the Parties shall meet and confer in good faith prior to seeking judicial relief and otherwise follow the Court's discovery dispute procedures.

18. **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED.**

I, Rachael A. Rezabek, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Shana E. Scarlett, counsel of record for Plaintiffs, has concurred in this filing.

Dated: November 5, 2024

Respectfully submitted,
HAGENS BERMAN SOBOL SHAPIRO LLP

By  /s/ Shana E. Scarlett
SHANA E. SCARLETT
Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

Robert B. Carey (*pro hac vice pending*)
Leonard W. Aragon (*pro hac vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
rob@hbsslaw.com
leonard@hbsslaw.com

Julie Liddell (*pro hac vice pending*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law

*Attorneys for Plaintiffs*

Dated: November 5, 2024

KIRKLAND & ELLIS LLP

By  /s/ Rachael A. Rezabek
RACHAEL A. REZABEK
Olivia Adendorff *(pro hac vice)*
Rachael A. Rezabek (298711)
4550 Travis Street
Dallas, Texas 75205
Telephone: 214.972.1770
olivia.adendorff@kirkland.com
rachael.rezabek@kirkland.com

Martin L. Roth, P.C. *(pro hac vice)*
Alyssa C. Kalisky *(pro hac vice)*
Amelia H. Bailey *(pro hac vice)*
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: 312.862.2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
amelia.bailey@kirkland.com

*Attorneys for Defendant*

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: _____

_____
Hon.
United States District Judge