1

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

2

3

4

*Counsel for Putative Intervenor*

5

6

7

8

# UNITED STATES DISTRICT COURT

9

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

### SAN FRANCISCO DIVISION

11

12

EMILY CHERKIN, on behalf of herself and as parent and guardian of her minor child, S.G., and on behalf of all others similarly situated, DAVID CONCEPCION, on behalf of himself and as parent and guardian of his minor children, L.M.C. and M.M.C., and on behalf of all others similarly situated,

13

14

15

16

Plaintiffs,

17

v.

18

POWERSCHOOL HOLDINGS, INC.,

19

Defendant.

20

Case No. 3:24-CV-02706-JD

**PUTATIVE INTERVENOR Q.J.'S NOTICE OF MOTION AND MOTION TO INTERVENE AND MOTION TO STAY OR, ALTERNATIVELY, TRANSFER ACTION PURSUANT TO FIRST-TO-FILE RULE**

Date:   June 26, 2025
Time:   10:00 a.m.
Courtroom:  11 – 19th Floor
Judge:  Hon. James Donato

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 26, 2025 at 10:00 a.m. or as soon thereafter as counsel may be heard, before the Honorable James Donato in Courtroom 11, on the 19th Floor of the Phillip Burton Federal Building and U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Putative Intervenor Q.J. will and hereby does move for an Order: (a) permitting him to intervene in this action pursuant to Fed. R. Civ. P. 24(b) based, in part, on violations of Local Civil Rule ("LCR") 3-13 and Paragraph 20 of the Standing Order for Civil Cases Before Judge James Donato ("Standing Order"); and (b) staying this action or, alternatively, transferring it to the Northern District of Illinois pursuant to the first-to-file rule.

Specifically, Q.J. seeks an Order: (a) permitting Q.J. to intervene pursuant to Fed. R. Civ. P. 24(b), based, in part, on violations of LCR 3-13 and Paragraph 20 of the Standing Order so that Q.J. can move to stay this action or, alternatively, have it transferred to the Northern District of Illinois; and (b) staying this action, pursuant to the first-to-file rule, until class certification has been resolved in the first-filed and substantially similar matter of *Q.J. v. PowerSchool Holdings LLC, et al.* (the "First-Filed Action"), No. 1:23-cv-05689 (N.D. Ill.), or, alternatively, transferring this action to the Northern District of Illinois so that it may be related to the First-Filed Action.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Scott R. Drury and the exhibits attached thereto and such other matters, both oral and documentary, as may properly come before the Court.

Dated:  May 12, 2025

**DRURY LEGAL, LLC**

By:  ___/s/ *Scott R. Drury*_____
         SCOTT R. DRURY

Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Counsel for Putative Intervenor Q.J.*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**...........................................................................................ii

**MEMORANDUM OF POINTS AND AUTHORITIES** ...........................................1

**INTRODUCTION** ......................................................................................................1

**FACTUAL BACKGROUND** .....................................................................................3

    *The First Filed Action* .........................................................................................3

    *Plaintiffs' Complaint* ...........................................................................................5

    *Plaintiffs' and PowerSchool's Failure to Properly Notify the Court of the
    Substantial Similarities and Overlap Between the First-Filed Action
    and Cherkin* .........................................................................................................6

    *Plaintiffs and PowerSchool Concede the Overlapping Nature of the Actions* ...6

    *The Reverse Auction Conducted by PowerSchool's Counsel*............................8

    *The Upcoming Cherkin Mediation* .....................................................................8

**ARGUMENT** .............................................................................................................9

I.    The Court Should Allow Q.J. to Intervene...........................................................9

    A.    Legal Standards ........................................................................................9

    B.    Independent Jurisdictional Grounds Are Not Required ...........................9

    C.    The Motion is Timely ...............................................................................10

    D.    Plaintiffs and PowerSchool Violated LCR 3-13 and
        the Standing Order....................................................................................10

    E.    The First-Filed Action Has Claims in Common with *Cherkin*.............12

II.    The First-to-File Rule Applies..............................................................................12

    A.    Legal Standards ........................................................................................12

    B.    The First-Filed Action Was Filed First .................................................13

    C.    The Parties Are Similar ............................................................................13

    D.    The First-Filed Action and *Cherkin* Involve Similar Issues..................15

    E.    No Exception to the First-to-File Rule Applies.......................................15

III.    The Court Should Stay *Cherkin* .........................................................................15

**CONCLUSION** ..........................................................................................................15

1

2

**TABLE OF AUTHORITIES**

**CASES**

*Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622 (9th Cir. 1991) ........................... 12, 13, 15

*Barzganian v. MercedesBenz USA, LLC*,
2017 WL 499517(C.D. Cal. Oct. 31, 2017) .................................................................. 13, 14

*Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) ...................................... 9

*Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO (N.D. Cal.) ........................... 2, 8

*Hodges v. GoodRx Holdings, Inc.*, No. 23-cv-24127-BLOOM/Torres (S.D. Fla.) ........... 2, 8

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
787 F.3d 1237 (9th Cir. 2015) ............................................................................ 12, 13, 14, 15

*Manier v. L'Oreal USA, Inc.*, 2017 WL 59066 (C.D. Cal. Jan. 4, 2017) ......................... 9, 12

*Novotny v. Panasonic Cons. Elec. Co.*,
2010 WL 1156113 (C.D. Cal. Oct. 1, 2010) .................................................................. 15

*Q.J. v. PowerSchool Holdings LLC* (N.D. Ill.) ........................................................... *passim*

*Subbaiah v. GEICO Ins. Co.*, 2019 WL 9904278 (C.D. Cal. Dec. 11, 2019) ............... 12

*United States v. Or*, 745 F.2d 550 (9th Cir. 1984) ..................................................... 9, 10

*Wash. State Bldg. and Const. Trades Council, AFL-CIO v. Spellman*,
684 F.2d 627 (9th Cir. 1982) .................................................................................. 9

*Weinstein v. Metlife, Inc.*, 2006 WL 3201045 (N.D. Cal. Nov. 6, 2006) ..................... 13, 14

*Zepeda v. Ulta Salon Cosmetics and Fragrance, Inc.*,
2018 WL 6981842 (C.D. Cal. June 1, 2018) .............................................................. 13, 14

**STATUTES**

*Federal*

20 U.S.C. § 1232g ..................................................................................................... 3

18 U.S.C. § 2511(a) .................................................................................................. 3

*State*

105 Ill. Comp. Stat. 10/1 .......................................................................................... 3

Cal. Penal Code § 630 .............................................................................................. 3

1

**RULES**

Fed. R. Civ. P. 24(b)..................................................................................................9

LCR 3-13.......................................................................................................1, 11

**OTHER AUTHORITIES**

Standing Order for Civil Cases Before Judge James Donato...................................1, 11

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PUTATIVE INTERVENOR'S MOTION TO INTERVENE AND MOTION TO STAY OR TRANSFER ACTION
CASE NO. 3:24-CV-02706-JD

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Court should permit Q.J. to intervene in this action (hereinafter "*Cherkin*") so that he may move to: (a) stay *Cherkin* until class certification has been resolved in the first-filed and substantially similar matter of *Q.J. v. PowerSchool Holdings LLC, et al.*, No. 1:23-cv-05689 (N.D. Ill.) (the "First-Filed Action"); or, alternatively, (b) transfer *Cherkin* to the Northern District of Illinois so that it may be related to the First-Filed Action. Plaintiffs Emily Cherkin, S.G., David Concepcion, L.M.C. and M.M.C. (collectively, "Plaintiffs") belatedly filed *Cherkin* more than eight months after the First-Filed Action.

In violation of Local Civil Rule ("LCR") 3-13 and Paragraph 20 of the Standing Order for Civil Cases Before James Donato ("Standing Order"), Plaintiffs and Defendant PowerSchool Holdings, Inc.[1] have failed to disclose to the Court the true nature of the overlap between *Cherkin* and the First-Filed Action. With respect to Plaintiffs, they have not provided the Court with any LCR 3-13 notice, even though they concede that *Cherkin* encompasses all of the claims asserted in the First-Filed Action. With respect to PowerSchool, it initially provided the Court with an inaccurate LCR 3-13 notice and then never updated the notice, even as circumstances changed to the point that PowerSchool now concedes the overlapping nature of the cases. Plaintiffs' and PowerSchool's noncompliance with LCR 3-13 and Paragraph 20 of the Standing Order has resulted in an extreme waste of judicial resources, as *Cherkin* has been allowed to move forward in parallel with the First-Filed Action.

This is not the first time that the counsel who represent PowerSchool have violated LCR 3-13. As discussed further below, in November 2023, Judge Martínez-Olguín issued an Order to Show Cause against PowerSchool's counsel in another case in connection with their failure to comply with LCR 3-13 and a related reverse auction that resulted from that violation.

---

[1] As is addressed further below, PowerSchool Holdings LLC and PowerSchool Holdings, Inc. represent the same interests and are related to one another. Further, counsel for each entity has treated them as one and the same in the context of the First-Filed Action and *Cherkin*. Accordingly, Q.J. collectively refers to both entities as "PowerSchool."

Q.J. brings this motion at this time based on two recent developments. First, on May 5, 2025, Plaintiffs' counsel conceded in writing that *Cherkin* "encompasses the claims [Q.J.] has against PowerSchool holdings [sic]" and that Plaintiff's counsel "can release those claims." In other words, Plaintiffs' counsel conceded the substantial similarity and overlap of the two actions, despite having never disclosed those facts to this Court. Second, in a filing in the First-Filed Action on May 6, 2025, counsel for PowerSchool represented to the court that Q.J.'s current claims are broader than his initial claims and overlap with *Cherkin* to a greater extent than Q.J.'s original claims. Q.J. amended his claims in January 2025. Yet, PowerSchool has never updated or amended its original LCR 3-13 notice that it filed on June 27, 2024. ECF No. 34.

Critically, in a separate case in this District, PowerSchool's counsel failed to abide by their LCR 3-13 obligations and then conducted a reverse auction with counsel in a later-filed case. *See Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO (N.D. Cal.) ("*GoodRx I*") ECF Nos. 151-52. That conduct resulted in Judge Martínez-Olguín issuing an Order to Show Cause as to why the party represented by PowerSchool's counsel in that case should not be sanctioned. *GoodRx I* ECF No. 152. The conduct also resulted in a judge in the Southern District of Florida issuing a separate Order to Show Cause in the later-filed case. *See Hodges v. GoodRx Holdings, Inc.*, No. 23-cv-24127-BLOOM/Torres (S.D. Fla.) ("*GoodRx II*") ECF No. 10.

Absent counsel in *GoodRx I* bringing the reverse auction to the respective courts' attention, the class members in that case would have been fleeced. Specifically, via the reverse auction, PowerSchool's counsel reached a paltry $13 million settlement in a case involving privacy claims similar to those here, which would have provided class members with 78 cents per person. *See GoodRx I* ECF No. 151 at 7.[2] Once the reverse auction was brought to light by counsel in the first-filed action, and Judge Martínez Olguín ordered their participation in further settlement discussions, the settlement value almost doubled ($25 million). *See GoodRX I* ECF No. 220 at 12.

Based on the facts summarized above, the Court should allow Q.J. to intervene in *Cherkin* so that he may move to: (a) stay *Cherkin* until class certification has been resolved in the First-

---

[2] Citations to page numbers of docketed entries are the CM/ECF-stamped page numbers.

1  Filed Action or, alternatively, (b) transfer *Cherkin* to the Northern District of Illinois so that it may

2  be related to the First-Filed Action.

3  <center>**FACTUAL BACKGROUND**</center>

4  ***The First-Filed Action***

5        The First-Filed Action is premised on egregious invasions of students' privacy by

6  PowerSchool and others in connection with students' use of PowerSchool's online products. *See*

7  First-Filed Action ("FFA") ECF No. 1 (Comp.) ¶¶ 3, 5-11; FFA ECF No. 119 (First Am. Comp.)

8  ¶¶ 3-9. Specifically, Q.J. alleges that through the installation, integration and embedding of third-

9  party tracking code into its online products, PowerSchool allowed the providers of that tracking

10  code to intercept students' confidential communications and statutorily-protected education and

11  student records to benefit PowerSchool and the third parties. FFA ECF No. 1 ¶¶ 3, 7-11, 239-40,

12  328-29; FFA ECF No. 119 ¶¶ 3-4, 7-9, 49, 126, 131, 145, 203, 315-16, 373. The student and

13  education records at issue were protected by the Federal Educational Rights and Privacy Act

14  ("FERPA"), 20 U.S.C. § 1232g, and the Illinois School Student Records Act ("ISSRA"), 105 Ill.

15  Comp. Stat. 10/1, *et seq. See* FFA ECF No. 1 ¶¶ 35, 77-89; FFA ECF No. 119 ¶¶ 53-65, 76, 98,

16  172, 210, 282.

17        Q.J. asserts constitutional, statutory and common-law privacy claims against: (a)

18  PowerSchool; (b) Hobsons, Inc., a company acquired by PowerSchool; (c) Heap Inc. ("Heap"), a

19  third-party tracking code vendor; (d) Board of Education of the City of Chicago (the "Board"); and

20  (e) various Doe Defendants who allegedly violated Q.J.'s and other students' civil rights. *See,*

21  *generally,* FFA ECF Nos. 1, 119. Included among the privacy violations Q.J. alleges against

22  PowerSchool are: (a) violations of the Electronic Communications Privacy Act ("ECPA"), 18

23  U.S.C. § 2511(a); (b) violations of students' Fourth and Fourteenth Amendment rights, including

24  *Monell* claims[3]; (c) violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code

25  § 630, *et seq.*; and (d) unjust enrichment. *See* FFA ECF No. 1 ¶¶ 138- 99, 325-32; FFA ECF No.

26  119 ¶¶ 187-275, 370-77.

27  _____

28  [3] Q.J.'s initial complaint did not allege ECPA or Fourteenth Amendment claims.

<center>3</center>

1    Q.J. filed the First-Filed Action on August 18, 2023. FFA ECF No. 1. Q.J.'s initial

2 complaint (the "Complaint") focused on a single PowerSchool product known as Naviance. *See id.*

3 ¶¶ 6-10. While the Complaint alleged that PowerSchool utilized multiple third-party tracking

4 technologies within Naviance, it most heavily focused on tracking technology offered by Heap. *See*

5 *id.* ¶¶ 103-17.

6    PowerSchool moved to dismiss the Complaint, primarily arguing that Q.J. lacked Article III

7 standing. FFA ECF No. 45 at 16-19. Based on Q.J.'s efforts in connection with jurisdictional

8 discovery, Q.J. obtained the extraordinary result of PowerSchool voluntarily withdrawing its

9 Article III defense on May 6, 2024. FFA ECF No. 66 at 3. PowerSchool did not subsequently raise

10 that failed defense in *Cherkin*. *See, generally*, ECF No. 37.

11    After conducting further jurisdictional discovery related to a Fed. R. Civ. P. 12(b)(2)

12 motion brought by Heap, Q.J. filed his first amended complaint ("FAC"). *See* FFA ECF Nos. 109,

13 113, 119. Among other things, the FAC: (a) alleges privacy violations based on students' use of

14 PowerSchool's online products, not just Naviance (*see* FFA ECF No. 119 ¶¶ 4, 7-8); (b) provides

15 more detailed allegations regarding various third-party tracking technologies utilized by

16 PowerSchool within its online products (*see id.* ¶¶ 8, 16, 113-45); (c) adds a claim for violations of

17 the ECPA (*id.* ¶¶ 187-212); and (d) clarifies that Q.J.'s constitutional claims were brought pursuant

18 to the Fourth and Fourteenth Amendments. *See, e.g., id.* ¶¶ 213-29.

19    In the FAC, Q.J. defines the following class and subclasses:

20    **Nationwide Class:** All natural persons in the United States who, while a student,
used an online product offered by Hobsons and/or PowerSchool in which
21    Hobsons and/or PowerSchool integrated and embedded software or other code
that surreptitiously intercepted, monitored, captured, recorded and/or divulged the
22    communications of the persons without their consent

23    **Naviance Subclass:** All natural persons in the United States who used the Naviance
platform while a student and whose communications were intercepted, monitored,
24    captured, recorded and/or divulged while accessing and navigating the platform

25    **Civil Rights Subclass:** All natural persons in the United States who, while a public-
school student, used an online product offered by Hobsons and/or PowerSchool in
26    which Hobsons and/or PowerSchool integrated and embedded software or other
code that surreptitiously intercepted, monitored, captured, recorded and/or divulged
27    the communications of the persons without their consent.

28

**Illinois Subclass:** All residents of Illinois who, while a student, used a product offered by Hobsons and/or PowerSchool in which Hobsons and/or PowerSchool integrated and embedded software or other code that surreptitiously intercepted, monitored, captured, recorded and/or divulged the communications of the persons without their consent.

**CPS Student Subclass:** All persons who, while a CPS Student, used a product offered by Hobsons and/or PowerSchool in which Hobsons and/or PowerSchool integrated and embedded software or other code that surreptitiously intercepted, monitored, captured, recorded and/or divulged the communications of the persons without their consent

*Id.* ¶¶ 177-78. Q.J.'s initial Complaint defined a similar class and subclasses, except they were limited to users of Naviance. *See* FFA ECF No. 1 ¶¶ 128-29.

***Plaintiffs' Complaint***

Plaintiffs filed their complaint on May 6, 2024, naming PowerSchool Holdings, Inc. as the sole defendant.[4] ECF No. 1. As described by the Court, Plaintiffs "allege[] a panoply of privacy-based claims," including CIPA and unjust enrichment claims. ECF No. 65 at 1; ECF No. 1 ¶¶ 464-83, 556-66. While Plaintiffs do not assert constitutional claims, their complaint is premised upon violations of constitutional rights, repeatedly referring to violations of "fundamental rights." *See* ECF No. 1 ¶¶ 1, 6, 8, 344. Similar to Q.J.'s allegations, Plaintiffs allege that PowerSchool embeds tracking technologies within students' devices that allow it and third parties to collect and track students' data. *See id.* ¶¶ 40, 106, 119-22, 129, 130-31, 233, 282-89. Moreover, Plaintiffs make detailed allegations regarding Naviance. *See id.* ¶¶ 82-92. In short, Plaintiffs built their complaint upon the same foundation laid by Q.J. months earlier.

In their complaint, Plaintiffs defined the following class and subclasses:

**Nationwide Student Class:** All persons in the United States who attended a K-12 school or school district that used PowerSchool products or services.

**Nationwide Parent Class:** All parents and legal guardians in the United States whose child attended a K-12 school or school district that used PowerSchool products or services.

**California Student Subclass:** All persons in California who attended a K-12 school or school district that used PowerSchool products or services.

---

[4] Before the First-Filed Action or *Cherkin* was filed, a dispute arose in connection with an agreement between Q.J.'s counsel and one of the *Cherkin* attorneys related to PowerSchool matters, which is ongoing. At the Court's direction, Q.J.'s counsel will provide further information.

**California Parent Subclass:** All parents and legal guardians in California whose child attended a K-12 school or school district that used PowerSchool products or services.

*Id.* ¶¶ 414-17.

***Plaintiffs' and PowerSchool's Failure to Properly Notify the Court of the Substantial Similarities and Overlap Between the First-Filed Action and Cherkin***

Notwithstanding the substantial similarities and overlap between the First-Filed Action (as initially filed and as amended) and *Cherkin*, Plaintiffs and PowerSchool have failed to disclose the similarities and overlap to the Court. Indeed, Plaintiffs have not made any disclosure to, or filed any notice with, the Court addressing the First-Filed Action. As discussed further below, Plaintiffs withheld this information, notwithstanding their position that their complaint wholly encompasses the claims – and, therefore, the allegations supporting those claims – in the First-Filed Action.

While PowerSchool filed a Notice of Pendency of Other Action or Proceeding in connection with Q.J.'s initial Complaint in June 2024 (ECF No. 34), PowerSchool failed to make clear the substantial similarities and overlap of the First-Filed Action and *Cherkin*, as described above. Instead, PowerSchool represented that the complaints in each action "make distinct factual allegations with little substantive overlap." *Id.* at 3. PowerSchool then concluded that "[g]iven the lack of overlap in factual allegations, coordination between the two actions is unnecessary." *Id.* PowerSchool reiterated this position in an August 8, 2024 Joint Case Management Statement. ECF No. 40 at 10. At no time has PowerSchool updated its position.

***Plaintiffs and PowerSchool Concede the Overlapping Nature of the Actions***

During the week of May 5, 2025, counsel for Plaintiffs and PowerSchool separately conceded the overlapping nature of the First-Filed Action and *Cherkin*. Specifically, in email correspondence with Q.J.'s counsel on May 5, 2025, Plaintiffs' counsel conceded that *Cherkin* involves all or a material part of the same subject matter in the First-Filed Action. *See* Exhibit A (email correspondence) at 2-3.[5] In response to an email by Q.J.'s counsel summarizing a meet and confer between Plaintiffs' counsel and Q.J.'s counsel, Plaintiffs' counsel stated: "My clients have the right to release any and all claims that could have been raised [in *Cherkin*] based on the factual

---

[5] Citations to Exhibits refer to the exhibits attached to the Declaration of Scott R. Drury.

1    allegations in the complaint, *which includes all claims asserted by Q.J.*" *Id.* at 2 (emphasis added);

2    Drury Decl. ¶ 4. Plaintiffs' counsel further stated: "In other words, *the case pending in the*

3    *Northern District of California encompasses the claims your client has against PowerSchool*

4    *holdings*. As such, we can release those claims." *Id.* at 3 (emphasis added).

5        Plaintiffs' email makes clear Plaintiffs' position that *Cherkin* encompasses the claims –

6    and, therefore, the allegations supporting those claims – in the First-Filed Action. Plaintiffs'

7    counsel later sought to walk back its position, highlighting its damning nature. Ex. A at 2.

8        Notably, at the time of Plaintiffs' counsel's concession, the FAC was the operative

9    complaint in the First-Filed Action. Given the assertion that *Cherkin* wholly encompasses the

10    FAC, it necessarily follows that *Cherkin* wholly encompassed the original, narrower Complaint in

11    the First-Filed Action. Yet, Plaintiffs' counsel did not file an LCR 3-13 notice at the time it filed

12    *Cherkin*, nor at any other time. *See* Dkt. Rather, Plaintiffs' counsel left the Court in the dark.

13        On May 6, 2025, the day after the email concession by Plaintiffs' counsel, PowerSchool's

14    counsel made a concession of its own. As part of a Joint Status Report, PowerSchool's counsel

15    first stated its position that Q.J.'s claims in his initial Complaint "were significantly different from

16    those in *Cherkin*." Exhibit B (Joint Status Report) at 4. PowerSchool's counsel then conceded this

17    is no longer the case, stating that the FAC contains broader allegations that have resulted in greater

18    overlap between the First-Filed Action and *Cherkin*.[6] *Id.* at 5. Yet, PowerSchool has never

19    amended or supplemented its previously-filed LCR 3-13 notice. *See* Dkt.

20        In the Joint Status Report, PowerSchool's counsel also claimed that "PowerSchool is

21    committed to efficient case management and has worked with Plaintiff [in the First-Filed Action]

22    in good faith on facilitating coordinated discovery where possible." *Id.* at 5. However, by not

23    properly disclosing to this Court the true nature of the overlap between the First-Filed Action and

24    *Cherkin*, PowerSchool precluded efficiency, in favor of wasted judicial and party resources.

25

26    _____

27    [6] As indicated in the Joint Status Report, counsel for Q.J. has notified the court in the First-Filed
      Action of the overlapping nature of that action and *Cherkin*. *See* Ex. B at 2-3; *see also* FFA ECF
      Nos. 123 at 3, 8-9, 139 at 2-4. Prior to the Joint Status Report, PowerSchool had disputed the

28    overlap. *See* FFA ECF No. 129 at 5-6, 10.

*The Reverse Auction Conducted by PowerSchool's Counsel*

In 2023, PowerSchool's counsel conducted a reverse auction that resulted in Orders to Show Cause being issued by Judge Martínez-Olguín in this District (against the party represented by the client of PowerSchool's counsel, here) and a court in the Southern District of Florida (against the plaintiffs in a later-filed action). *See GoodRx I* ECF No. 152; *GoodRx II* ECF No. 10. Specifically, with a first-filed consolidated class action pending in this District (*GoodRx I*), PowerSchool's counsel surreptitiously conducted a reverse auction with counsel for other plaintiffs who subsequently filed an action in the Southern District of Florida (*GoodRx II*). *See GoodRx I* ECF No. 151; *GoodRx II* ECF No. 9.

Once the plaintiffs' counsel in *GoodRx I* learned of the reverse auction and brought it to the courts' attention, both courts issued Orders to Show Cause. *See Good Rx I* ECF No. 152; *Good Rx II* ECF No. 10. At the direction of Judge Martínez-Olguín, PowerSchool's counsel was directed to mediate with the plaintiffs' counsel in the first-filed action (who previously had been appointed interim lead counsel). *See GoodRx I* ECF No. 220 at 13 (preliminary approval motion describing procedural history). That mediation resulted in a settlement worth almost twice the value of the settlement amount agreed to at the reverse auction ($25 million vs. $13 million). *See id.* at 12-13.

*The Upcoming Cherkin Mediation*

Plaintiffs and PowerSchool are scheduled to engage in a Court-ordered mediation on May 13, 2025. *See* Ex. B at 4. Q.J.'s counsel has asked to participate in the mediation. *See* Ex. A at 3; Ex. B at 4. Q.J.'s counsel has received conflicting information as to why he cannot attend. PowerSchool's counsel claim they are amenable to the participation of Q.J.'s counsel but have stated that Plaintiffs' counsel have "flatly refused to coordinate mediation efforts and *strongly argued that they viewed [the First-Filed Action] as very different*." Ex. A at 4 (emphasis added).

With respect to Plaintiffs' counsel, it appears they are saying whatever is convenient – *i.e.*: (a) that the First-Filed Action and *Cherkin* are "very different," when that helps preclude a global mediation; and (b) that *Cherkin* encompasses all of Q.J.'s claims when that puts them in a position to release claims they have not litigated and have claimed are "very different." *See* Ex. B at 3; *see*

1    *also id.* at 2 (Plaintiffs' counsel taking the position that PowerSchool's goal of resolving "all cases"

2    is "clearly doable even if [Q.J.'s counsel is] not at the mediation.").

3        In short: (a) Plaintiffs' and PowerSchool's counsel have concealed from the Court the

4    overlapping nature of the First-Filed Action and *Cherkin*, thereby avoiding *Cherkin* being stayed or

5    transferred, or otherwise coordinated with the First-Filed Action; (b) Plaintiffs' counsel claim that

6    Q.J.'s claims are, at once, very different from those in *Cherkin* and wholly encompassed by *Cherkin*;

7    and (c) in the recent past, PowerSchool's counsel conducted a reverse auction.

8                                    **ARGUMENT**

9    **I.    The Court Should Allow Q.J. to Intervene.**

10        **A.    Legal Standards.**

11        Pursuant to Fed. R. Civ. P. 24(b), a court may allow permissive intervention upon a timely

12    motion where the person seeking intervention "has a claim or defense that shares with the main

13    action a common question of law or fact." Fed. R. Civ. P. 24(b). "Rule 24 traditionally has received

14    a liberal construction in favor of applicants for intervention." *Wash. State Bldg. and Const. Trades*

15    *Council, AFL-CIO v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982). While permissive intervention

16    normally requires an independent ground for jurisdiction, that is not the case if the intervenor does

17    not seek to litigate on the merits. *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992).

18        In determining timeliness, the Ninth Circuit "has stated that it looks to three factors: (1) the

19    stage of the proceeding; (2) the prejudice to the other parties; and (3) the reason for and length of

20    the delay." *United States v. Or*, 745 F.2d 550, 552 (9th Cir. 1984); *see also Manier v. L'Oreal USA,*

21    *Inc.*, 2017 WL 59066, at *2 (C.D. Cal. Jan. 4, 2017) (allowing permissive intervention in connection

22    with first-to-file rule). "Mere lapse of time alone is not determinative." *Or*, 745 F.2d at 552.

23    Changed circumstances militate in favor of intervention. *See id*.

24        **B.    Independent Jurisdictional Grounds Are Not Required.**

25        Here, Q.J. does not seek to intervene in order to litigate a claim on the merits, but rather to

26    move to stay *Cherkin* or, alternatively, transfer *Cherkin* to the Northern District of Illinois. As such,

27    there need not be an independent ground for jurisdiction. *See Beckman Indus.*, 966 F.2d at 473.

28

**C.      This Motion Is Timely.**

On May 5 and 6, 2025, Plaintiffs and PowerSchool, respectively, conceded in writing that the First-Filed Action and *Cherkin* overlap. Indeed, Plaintiffs' counsel represented that *Cherkin* wholly encompasses the claims – and, therefore, the allegations supporting those claims – made by Q.J. Because the claims in the FAC are broader than those in Q.J.'s initial Complaint, it follows that *Cherkin* involved all or a material part of the subject matter of the First-Filed Action at the time *Cherkin* was filed. Yet, Plaintiffs' counsel has not previously disclosed that.

In less than one week after May 6, 2025, Q.J. timely prepared and filed this motion. Thus, this motion is timely, especially when considered in light of the changed circumstances created by Plaintiffs' and PowerSchool's May 5, and 6, 2025 concessions. *See Or*, 745 F.2d at 552. An analysis of the timeliness factors confirms this.

***First***, both *Cherkin* and the First-Filed Action are in their early stages. Neither Plaintiffs nor Q.J. have moved for class certification, and no summary judgment motions have been filed. *See* Drury Decl. ¶ 6. Further, fact discovery is ongoing in both cases. *See* Ex. B at 2-3; Drury Decl. ¶ 7. As discussed in detail in § I.D, below, to the extent Plaintiffs or PowerSchool argue that *Cherkin* is somehow at an advanced stage, that would only be the case due to their violations of LCR 3-13 and the Court's Standing Order. The Court should not permit Plaintiffs and PowerSchool to benefit from their wrongdoing.

***Second***, allowing Q.J. to intervene will not prejudice any party. Q.J. seeks to intervene for the sole purpose of: (a) staying *Cherkin* until class certification has been resolved in the First-Filed Action; or, alternatively, (b) having *Cherkin* transferred to the Northern District of Illinois. Under either scenario, Plaintiffs will have the ability to fully litigate any portion of their claims that is not encompassed in the First-Filed Action after class certification. Further, the relief sought by Q.J. benefits PowerSchool by allowing it to litigate in a single forum and avoid inconsistent rulings.

***Third***, there has been no delay, as discussed above.

**D.      Plaintiffs and PowerSchool Violated LCR 3-13 and the Standing Order.**

Any argument by Plaintiffs and/or PowerSchool that *Cherkin* is at an advanced stage that precludes intervention would merely be asking the Court to reward them for their violations of this

District's Local Civil Rules and Paragraph 20 of the Standing Order. LCR 3-13(a) sets forth a detailed and mandatory process parties must follow when they know or learn of a case pending in another state or federal court that is materially related to a case pending in this District:

> *Whenever a party knows or learns* that an action filed or removed to this district involves all or a material part of the same subject matter and all or substantially all of the same parties as another action which is pending in any other federal or state court, *the party must promptly file with the Court in the action pending before this Court and serve all opposing parties in the action pending before this Court with a Notice of Pendency of Other Action or Proceeding*. If two representative (e.g., class, collective, PAGA, etc.) actions involve overlapping claims (i.e., the definitions of covered individuals overlap and the claims asserted overlap), they fall within the coverage of this rule.

LCR 3-13(a) (emphasis added). When a case overlaps, the required notice must include "the nature of the overlap of subject matter and/or parties . . . ." LCR 3-13(b)(3)(B). Finally, where one party files a notice pursuant to LCR 3-13(a), within 14 days of such notice, "any party may file with the Court a statement supporting or opposing the notice." LCR 3-13(c).

Paragraph 20 of the Standing Order reminds parties of their obligations under LCR 3-13. Standing Order ¶ 12. The Standing Orde provides: "The parties are reminded that they must inform the Court of any potentially related actions pending in this District or any other federal or state court in accordance with Civil Local Rules 3-12 and 3-13." *Id.*

Under LCR 3-13 and the Standing Order, Plaintiffs and PowerSchool were required to disclose to this Court the overlapping nature of the First-Filed Action at the time they knew or learned about it. Based on Plaintiffs' counsel's May 5, 2025 concession and the plain language of LCR 3-13, at the time Plaintiffs filed *Cherkin*, Plaintiffs were required to comply with LCR 3-13 and disclose that the First-Filed Action involved "all or a material part of the same subject matter" as *Cherkin* and "all or substantially all of the same parties" as in *Cherkin*. *See* LCR 3-13(a). They did not do so. *See* Dkt. Nor did they do so in response to the LCR 3-13 notice filed by PowerSchool's counsel on June 27, 2024 that incorrectly claimed that *Cherkin* and the First-Filed Action "make distinct factual allegations with little substantive overlap." ECF No. 34 at 3; *see also* Dkt. Nor did they do so in the parties' August 8, 2024 Joint Case Management Statement, where PowerSchool, again, represented that there was a "lack of overlap" of the factual allegations in the First-Filed Action and *Cherkin*. ECF No. 40 at 8. Nor have they done so at any other time. *See* Dkt.

11

Similarly, even assuming that PowerSchool actually believed that the First-Filed Action and *Cherkin* have not overlapped from the time *Cherkin* was filed (which is not the case), based on their representations in the May 6, 2025 Joint Status Report in the First-Filed Action (*see* Ex. B at 5), as of the date Q.J. filed the FAC, PowerSchool was required to disclose to this Court the nature of the overlap between the two cases. PowerSchool did not, and has not, done so. *See* Dkt.

Based on what Plaintiffs and PowerSchool knew, and when they knew it, *Cherkin* never should have left the starting gates. Only because Plaintiffs and PowerSchool did not adhere to LCR 3-13 and the Standing Order did they obtain a different outcome.

**E.    The First-Filed Action Has Claims in Common with *Cherkin*.**

As discussed above, the FAC and the complaint in *Cherkin* both allege CIPA violations and unjust enrichment. Moreover, both the First-Filed Action and *Cherkin* are built on the same foundation – *i.e.*, PowerSchool's violation of students' constitutional, or fundamental, rights by unlawfully tracking students while they used or interacted with PowerSchool's products. Finally, given the damning May 5, 2025 concession of admission of Plaintiffs' counsel, Plaintiffs and PowerSchool cannot credibly contend that Q.J. does not have claims in common with *Cherkin*. *See Manier*, 2017 WL 59066, at *2 (finding commonality where allegations contain the same substance).

*    *    *

Based on above, the Court should allow Q.J. to permissively intervene in *Cherkin*. *See id.* at *2-3; *see also Subbaiah v. GEICO Ins. Co.*, 2019 WL 9904278, at *4 (C.D. Cal. Dec. 11, 2019) (allowing permissive intervention for purpose of filing motion to dismiss, transfer or stay).

**II.    The First-to-File Rule Applies.**

**A.    Legal Standards.**

The first-to-file rule promotes efficiency, and courts should not disregard it lightly. *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). In determining whether to apply the first-to-file rule, "a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).

The "first-to-file rule does not require exact identity of the parties," but rather only requires "substantial similarity of the parties." *Id.* Where a second-filed action does not include all of the same defendants as the first-filed action, that is not a basis to disregard the first-filed rule. *See id.* A contrary holding would allow the plaintiff in a second-filed action to skirt the first-filed rule merely by omitting one defendant from the second lawsuit. *Id.* Relatedly, the fact that the defendants in each lawsuit are not identical is not dispositive, "especially where . . . the parties represent the same interests." *Weinstein v. Metlife, Inc.*, 2006 WL 3201045, at *4 (N.D. Cal. Nov. 6, 2006); *see also Barzganian v. MercedesBenz USA, LLC*, 2017 WL 499517, at *3 (C.D. Cal. Oct. 31, 2017) (substantial similarity where defendants are subsidiaries or affiliates of each other).

In putative class actions, "a court considers the similarity between the classes, not the class representatives." *Barzganian*, 2017 WL 499517, at *2. In doing this, courts have looked to whether "the classes represent at least some of the same individuals." *Zepeda v. Ulta Salon Cosmetics and Fragrance, Inc.*, 2018 WL 6981842, at *4 (C.D. Cal. June 1, 2018). Where the first and later-filed actions have overlapping and non-overlapping classes, there is substantial similarity "if at least some of the putative class members in the [first-filed action] may also be class members in the [later-filed] action." *Id.* at *5.

As for similarity of issues, the issues in both cases "need not be identical, only substantially similar." *Kohn Law Group, Inc.*, 787 F.3d at 1240. To determine if two suits involve substantially similar issues, a court should look at whether the two suits substantially overlap. *Id.* at 1241.

Even where a first-filed case satisfies the three first-to-file factors, a court may decline to apply the rule if an exception to the rule applies. *See Alltrade, Inc.*, 946 F.2d at 628. Those exceptions typically include bad faith, anticipatory suit and forum shopping. *Id.*

### B.    The First-Filed Action Was Filed First.

Q.J. commenced the First-Filed Action on August 18, 2023. FFA ECF No. 1. Plaintiffs commenced *Cherkin* on May 6, 2024. ECF No. 1. Q.J. was filed first.

### C.    The Parties Are Similar.

The First-Filed Action and *Cherkin* involve substantially similar defendants, namely, PowerSchool Holdings, LLC and PowerSchool Holdings, Inc. Indeed, for purposes of the two

13

matters, counsel for PowerSchool Holdings LLC and PowerSchool Holdings, Inc. have treated those entities as one and the same. *See, e.g.*, ECF No. 34 at 2 (PowerSchool's counsel defining PowerSchool Holdings, Inc. as "PowerSchool" and then identifying the defendant in the First-Filed Action as "PowerSchool"). Moreover, as alleged in the FAC, PowerSchool Holdings LLC is a subsidiary of PowerSchool Holdings, Inc. FFA ECF No. 119 ¶ 13; *see also Barzganian*, 2017 WL 499517, at *3 (substantial similarity where defendants are subsidiaries or affiliates of each other). Finally, based on the allegations in First-Filed Action and *Cherkin*, PowerSchool Holdings LLC and PowerSchool Holdings, Inc. share the same interests, namely, to provide what they deem to be education technology software to students and to defend against allegations that the products invade students' privacy. *See, generally*, FFA ECF No. 119 and ECF No. 1; *see also Weinstein*, 2006 WL 3201045, at *4 (similarity where parties represent the same interests).

The First-Filed Action and *Cherkin* also involve overlapping class members. Each action defines a nationwide class and/or subclass consisting of students who used PowerSchool products. *Compare* ECF No. 1 ¶ 414 and FFA ECF Nos. 1 ¶¶ 128-29 and 119 ¶¶ 177-78. Even though the class definitions are not identical, there is substantial overlap of the defined class/subclass members.

While *Cherkin* defines subclasses of parents that do not overlap with the classes or subclasses in the First-Filed Action, that does not impact the analysis. As discussed above, where the first and later-filed actions have overlapping and non-overlapping classes, there is substantial similarity "if at least some of the putative class members in the [first-filed action] may also be class members in the [later-filed] action." *See Zepeda*, 2018 WL 6981842, at *5.

Moreover, as the Ninth Circuit held in *Kohn Law Grp., Inc.*, a later-filed action may not avoid the first-to-file rule by engaging in gamesmanship. 787 F.3d at 1240. The court reached that holding in the context of a party in a later-filed action omitting a defendant named in the first-filed action. *See id.* But the holding should apply with equal force to gamesmanship on the plaintiffs' side of the "v." If a party could avoid the first-to-file rule merely by adding or striking plaintiffs (or adding or deleting classes), it would reward gamesmanship and be inconsistent "with the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity." *See id.*

**D.    The First-Filed Action and *Cherkin* Involve Similar Issues.**

As discussed in § I.E, above – and throughout – the First-Filed Action and *Cherkin* involve similar issues and, in fact, allege common claims. Moreover, based on the May 5, 2025 concession of Plaintiffs' counsel, the similarity of the issues is indisputable. *See* Ex. A at 3.

**E.    No Exception to the First-to-File Rule Applies.**

Finally, no exception to the first-to-file rule applies. There is no evidence that Q.J. filed the First-Filed Action in bad faith, as an anticipatory suit or based on forum shopping.

**III.    The Court Should Stay *Cherkin*.**

Given that a motion to dismiss is pending in the First-Filed Action, and the Court has yet to rule on class certification, Q.J. respectfully submits that the Court should stay *Cherkin* until the court in the First-Filed Action rules on class certification. Once the court rules on class certification, it will be known what classes are included in the First-Filed Action and whether any need exists to transfer *Cherkin*, as opposed to dismissing it. *See Alltrade, Inc.*, 946 F.2d at 629 (discussing staying case pending resolution of jurisdictional issues); *see also Novotny v. Panasonic Cons. Elec. Co.*, 2010 WL 1156113, at *3-4 (C.D. Cal. Oct. 1, 2010) (staying later-filed case pending resolution of class issues in first-filed case). In the event the Court does not wish to stay *Cherkin*, it should transfer it to the Northern District of Illinois so that it can be related to the First-Filed Action, thereby maximizing "judicial economy, consistency, and comity." *Kohn Law Grp., Inc.*, 787 F.3d at 1240.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, the Court should grant Q.J.'s motion to intervene. Further, pursuant to first-to-file rule, the Court should stay *Cherkin* until class certification has been resolved in the First-Filed Action. In the alternative, the Court should transfer *Cherkin* to the Northern District of Illinois so that it may be related to the First-Filed Action.

Dated:  May 12, 2025                     **DRURY LEGAL, LLC**

                                         By:    /s/ *Scott R. Drury*
                                             SCOTT R. DRURY

                                         Scott R. Drury (State Bar No. 355002)
                                         6 Carriage Lane
                                         Highwood, Illinois 60040

<div align="center">15</div>

Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Counsel for Putative Intervenor Q.J.*

PUTATIVE INTERVENOR'S MOTION TO INTERVENE AND MOTION TO STAY OR TRANSFER ACTION
CASE NO. 3:24-CV-02706-JD