**Pages 1 - 23**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

EMILY CHERKIN, et al., )
)
Plaintiffs, )
)
VS. ) **NO. 3:24-CV-02706-JD**
)
POWERSCHOOL HOLDINGS, INC., )
)
Defendant. )
)

San Francisco, California
Thursday, December 11, 2025

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:
HAGENS, BERMAN, SOBOL, SHAPIRO, LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
**BY: LEONARD ARAGON, ATTORNEY AT LAW**

For Defendant:
KIRKLAND & ELLIS, LLP
4550 Travis Street
Dallas, TX 75205
**BY: OLIVIA A. ADENDORFF, ATTORNEY AT LAW**

REPORTED REMOTELY BY: Stephen W. Franklin, RMR, CRR, CPE
Official United States Reporter

**Thursday - December 11, 2025** **11:46 a.m.**

**P R O C E E D I N G S**

---o0o---

**THE COURTROOM DEPUTY:** Calling 24-2706, Cherkin, et al. versus PowerSchool Holdings, Inc.

**THE COURT:** Thank you.

**THE COURTROOM DEPUTY:** Counsel.

**MR. ARAGON:** Good afternoon.

**THE COURT:** Plaintiff first, yes.

**MR. ARAGON:** Good afternoon, Your Honor. Leonard Aragon on behalf of the putative class and the Cherkin family and the Concepcion family.

**THE COURT:** Okay.

**MS. ADENDORFF:** Good morning. Olivia Adendorff for defendant PowerSchool.

**THE COURT:** This is a lot of stuff you're asking for after discovery has already closed.

It's closed, right?

**MS. ADENDORFF:** Correct.

**THE COURT:** So 10 more depositions?

**MR. ARAGON:** Your Honor, we --

**THE COURT:** I'm not seeing it.

**MR. ARAGON:** Your Honor, we submitted requests for productions in September and October of last year. Nine months later --

**THE COURT:** 2024?

**MR. ARAGON:** 2024.

**THE COURT:** Yeah.

**MR. ARAGON:** Nine months later, on June 17th, approximately, a little bit after that perhaps, we received a substantial completion of that production.

**THE COURT:** Yes.

**MR. ARAGON:** Prior to that we were reviewing documents. On that day we received a quarter terabyte of information, approximately 300,000 documents as you've seen in there.

We immediately started reviewing the remainder of those documents and immediately started doing depositions. We started the first one two weeks later. On June 2nd -- excuse me. July 2nd we had a deposition. We then proceeded to conduct all the depositions that you allowed. We conducted all the third-party discovery that we thought was feasible. We defended all of our depositions in our own case. We fought third-party discovery on friends of our clients' submitted by the defendants. We did everything you could do in a four-month period. We did considerably more than they did in nine months just getting the documents to us. You couldn't do more discovery in that four-month period than we could.

And what we realized, though, was we were missing some things. And so on October 17th, four months later, after I got

a substantial completion of documents, after reviewing a half a terabyte of information, after conducting almost all the discovery in this case, we realized we were missing some things and we submitted our motion to extend the deadline on October 17th, well before --

**THE COURT:** Okay. Well, I mean, your colleagues here say that you got 95 percent of the documents by July of last -- of this year, and you got sort of the tail end, 5 percent or so, in October.

**MR. ARAGON:** That's correct, Your Honor. Ninety-five percent of the documents, July, August -- July, August, September, we filed the motion three months after that substantial completion of documents. We still have to review those documents.

**THE COURT:** You want to add more depos. That's a little much.

**MR. ARAGON:** Can I put a little color on it?

**THE COURT:** The expert reports. I mean, the expert discovery was due a week ago or two days ago.

**MS. ADENDORFF:** Yeah, Monday.

**THE COURT:** They're going to have to redo all their reports? I mean, that's just a waste of money.

**MR. ARAGON:** Can I put a little color on what depositions we need?

**THE COURT:** Yes.

**MR. ARAGON:** Let me give you an example.

We weren't able to depose a person who has knowledge about PowerBuddy. PowerBuddy is their AI program that makes predictions about students. We just recently received some very --

**THE COURT:** Why weren't you able to depose that person?

**MR. ARAGON:** Because we didn't have enough depositions in order to -- the 30(b)(6) person didn't have sufficient information. The person on products, Nicole Shinton, didn't have information on PowerBuddy. And so none of the witnesses were able to give significant testimony on PowerBuddy and how PowerBuddy --

**THE COURT:** Well, when did you know that?

**MR. ARAGON:** The 30(b)(6) was taken shortly before the close -- well, actually at the close of discovery, because we were holding that off in hopes of getting other depositions and waiting.

And so Nicole Shinton probably was early.

**THE COURT:** Are you saying the 30(b)(6) witness was not adequately prepared?

**MR. ARAGON:** No, no, he was not. Not on PowerBuddy, no.

**THE COURT:** Well, then one remedy might be you get to do that one again, but not 10 more depositions. You didn't ask

for that. You didn't say to me that you thought the 30(b)(6) witness that you did at the close of discovery --

**MR. ARAGON:** Right.

**THE COURT:** -- was not well prepared. I'll think about it even though you didn't ask, but, you know, 10 more? I mean, you'll be doing depositions now through March, and then what about all these expert reports are going to have to be redone?

**MR. ARAGON:** That deposition occurred after I filed my motion, and I didn't supplement. You are correct, Your Honor.

**THE COURT:** You don't need to supplement. You just send me another letter. It's just a letter. You know, it's three pages. You can knock that off in your sleep. But that's why I do it that way so there's not a big thing.

Well, I mean, okay. Defendant?

**MS. ADENDORFF:** We have a different version of events, which will probably not surprise you.

**THE COURT:** Ah, really? Never heard that before.

**MS. ADENDORFF:** So, first of all, they have taken nine depositions of senior managers of the company that cover every product that is at issue in the case, including PowerBuddy, where Chris Cirillo testified in September on PowerBuddy.

The 30(b)(6) was prepared on 10 broad topics that covered

the entire case. There was not a single objection at the deposition on December 1st that we had underprepared him. We met with him seven different times to prepare him, including over Thanksgiving weekend, because they served the request so late that we had to do the deposition on the last day of discovery.

**THE COURT:** Is there any objection at the hearing -- I mean, the deposition --

**MS. ADENDORFF:** No there was not.

**THE COURT:** -- that the witness was underprepared?

**MS. ADENDORFF:** No, Your Honor.

**THE COURT:** Go ahead.

**MS. ADENDORFF:** So they have had more than enough time, and the 30(b)(6) topics that were proposed were -- covered the whole case. They could have asked anything that they wanted, and there should be no more discovery from the company because of that. They had an opportunity to cover everything in that deposition.

And as --

**THE COURT:** Well, they didn't get their last bullets of documents until October.

**MS. ADENDORFF:** That was a very small portion of documents, and I think it was in request to specific follow-ups from them, if I remember correctly. But really the document production closed in July.

**THE COURT:** Well, now what about your expert reports? They're all done?

**MS. ADENDORFF:** Ours are ready to go, uh-huh.

**THE COURT:** They were already exchanged, weren't they?

**MS. ADENDORFF:** No. Your order, Your Honor, delayed the exchange of those expert reports, but we have them.

**THE COURT:** Oh, that's right. You asked me. It was supposed to be the 8th, and I said wait.

**MS. ADENDORFF:** It was supposed to be on Monday, that's correct.

**THE COURT:** You asked for more time, right?

**MR. ARAGON:** Yes, Your Honor.

We get along with PowerSchool, but I do have to take a little issue with that. Yes, they produced witnesses who could testify about very basic elements about the key issues in this case, but not the key issues in the case.

**THE COURT:** Let me ask you this. Did you say anything during the deposition?

**MS. ADENDORFF:** Absolutely. Every time -- yes.

**THE COURT:** Your colleague just said it didn't come up.

**MR. ARAGON:** In the 30(b)(6)? No, I didn't object. I just asked him the question. I haven't filed the motion on the 30(b)(6) yet, no.

**THE COURT:** All right. But you didn't say anything during the deposition along the lines of, this person is not able to answer my questions, and you didn't -- did you send a letter after the deposition, like the next day or so, saying, I have some real concerns about whether this person was up to speed?

**MR. ARAGON:** On the record I asked for additional information that he identified that was available, and that was provided by counsel. I haven't had an opportunity to provide them --

**THE COURT:** Did you send them a letter or anything, or call them or e-mail saying, hey, this witness was not ready to go? Did you do any of that?

**MR. ARAGON:** I didn't, Your Honor, because I can get this result not with the 30(b)(6) -- the 30(b)(6) person on PowerBuddy isn't going to be as good as the person we identified on these products about PowerBuddy, because what's happening here is they're giving me these apex depositions which people usually try to avoid, but I need the people who understand these products.

**THE COURT:** I understand that.

This case has been around for a long time, and you've had plenty of opportunity to ask for the non-apex people. Now you're saying, oh, I didn't get to do it. But I'm not hearing a good reason why, and I -- certainly nothing that I should

blame the defendants for.

**MR. ARAGON:** I appreciate that, Your Honor, but the reason is is I can't serve -- I can't serve a motion for additional discovery with you until I get a substantial completion of documents, right, because I need those documents and I need to review them. That's what I did.

Once I got a substantial completion in late June, I started reviewing those documents and figuring out what I'm missing. I then started serving the third-party discovery, which I couldn't do until I'd had a substantial completion of documents, and every single person I served said, go get that from PowerSchool. And that's the right answer, and if I would have filed a motion to compel they would say, no, we don't. So I'm negotiating with them now because I said, PowerSchool says they don't have it, and they said, okay, we'll get you these documents.

Your Honor, we were as diligent as possible. We jumped on everything and did everything we could as soon as we had even prior to --

**THE COURT:** Let me ask you this. If you got some more discovery and it changes things, are you going to pay them for their expert costs in revising their reports? Seems to me like you should. If you're going to get more evidence, they've already paid their experts I imagine a substantial amount of money, because that's what experts typically charge. You want

to do this, you're going to pay for the rework, because you caused it.

**MR. ARAGON:** I think it would be unfair to require us to pay for their experts when they're slow-playing the providing documents to us. I don't certain basic --

**THE COURT:** I don't see any evidence that they slow-played anything. You waited 'til the last minute to tell me there was a problem. That's the slow play. I didn't see anything else as a slow play.

If you were unhappy with their speed, you should have been sending me letters in July saying, I just got a lot of this dumped on me, I can't meet ... I mean, you waited 'til the sun was already, you know, more than halfway down. So if you want to -- I mean, you gotta -- you can't just get everything your way and make them redo their expert reports because you want more time and have them pay for all that. That's not fair.

**MR. ARAGON:** I would have to understand what the payments would be, but I do think --

**THE COURT:** They're going to be substantial. You can just, you know that, you know what you paid your experts.

**MR. ARAGON:** This is a substantial case.

**THE COURT:** Probably more, because for some reason defense experts always are more. I don't know why, but they always were.

**MR. ARAGON:** This is a substantial case.

Let me give you another example of a witness, or, I'm sorry, a deposition we would need.

**THE COURT:** So stick with my issue. Are you willing to pay for that?

**MR. ARAGON:** I don't know --

**THE COURT:** If you want the indulgence, you can't just get it and, you know, walk away and then leave the defendants holding the bag. That's just not fair.

**MR. ARAGON:** I can't say. I can't say that we would pay for that, that the class should be forced to pay, when we have worked as hard as you can work --

**THE COURT:** Not the class. I would take it out of your fees. I agree with you, the victims -- if you win and the victims prevail -- who knows if they will -- they're not going to pay for it, you're gonna pay for it. The lawyers are going to pay for it, not the class. Absolutely not. The people who were harmed are not going to underwrite your delays. You're going to pay for that. You, meaning the lawyers. I don't remember the name of your firm, but that firm is going to pay for it.

**MR. ARAGON:** It's --

**THE COURT:** That's where the money would be. It comes from your pocket only, okay, not from the class. So don't get all high horse about protecting the class. I'm here to do that. That is my sacred duty, and I take it very

seriously. So you would pay for that out of your attorney's fees should you get them.

Are you willing to do that?

**MR. ARAGON:** It's something we would be willing to consider, yes.

**THE COURT:** Well, you gotta tell me now, because you're here now. Discovery closed a week ago, so I want to get this thing done right now.

**MR. ARAGON:** Out of our fees if we prevail, I don't know if I have the authority to bind the firm, but if it's on a -- if we prevail, I think that that would be something that would be fair to come out of -- well, not fair, but something that we would be --

**THE COURT:** You're using a bunch of weasel words.

Defendants, give me a solution. What do you want to do? Something short of saying "no".

**MS. ADENDORFF:** Well, that's our belief here. I mean --

**THE COURT:** Let's say you're among friends. What do you want to do? What if they paid your expert fees and, you know, do depositions, paid your expert fees? If -- maybe you don't have to change. Maybe they're nonevents. This is if --

**MS. ADENDORFF:** I don't think it's clear. I mean, they have the burden of identifying what additional discovery they want, and I don't think they've even identified if there's

really people from the company or --

**THE COURT:** The non-apex person on PowerBuddy I think is the main request.

**MR. ARAGON:** Well, two --

**THE COURT:** You're not getting 10. You're not even getting five. You're going to get maybe two.

**MR. ARAGON:** Okay.

**THE COURT:** So tell me who you want.

**MR. ARAGON:** Okay. PowerSchool has said throughout this litigation that they have never monetized student data. The 30(b)(6) witness on December 1st told me for the first time that, oh, yeah, we do monetize data in certain instances. I would like to explore that. There's one company I know they do it with, a third party named EAB.

So either --

**THE COURT:** BAB?

**MR. ARAGON:** EAB, echo, alpha, Bravo.

**THE COURT:** Good. Thanks. EAB. Okay. One third-party detention of EAB.

**MR. ARAGON:** Well, the subject of EAB. It might be a PowerSchool person; it might be an EAB person.

**THE COURT:** We're not doing the mights. You pick it. It's your case, pal. You've been on this thing since day one. I'm just parachuting in to clean up a mess and do it in a way that doesn't take up any more of time than it already has.

**MR. ARAGON:** Understood.

**THE COURT:** You want EAB or someone in the company to talk about EAB? Pick one.

**MR. ARAGON:** EAB is fine.

**THE COURT:** Okay. EAB third-party. Okay. Four-hour deposition.

Who else?

**MR. ARAGON:** And then the last person would be someone on the ground who understands the prediction products that PowerSchool has. There's four of them. So someone who goes to the schools and says, here's how you use this product at PowerSchool. Because no one's been able to answer just basic questions about the products for me, and there's four: Unified insights, analytics --

**THE COURT:** How could you be asking for this so late in the case? I mean, this has got to have been an issue that was on deck for the entirety of the case. That's not going to happen.

Any other -- I'll give you one other. That's just so basic to this case that it's just inexcusable that you're asking for it after the close of discovery.

**MR. ARAGON:** Well, we were waiting for --

**THE COURT:** Literally inexcusable. I don't care what you were waiting for. You had the duty to make sure your case got prosecuted in the right way. That's who you are. You're

the prosecutor in this case. You didn't. You slept on that.

Now, is there anyone else? Small thing. You said something about PowerBuddy and non-apex.

**MR. ARAGON:** The 30(b)(6) deponent on the subjects he wasn't able to answer.

**THE COURT:** I don't know what those are. You didn't say anything.

**MR. ARAGON:** The application~-- the operation of the four predictive products.

**THE COURT:** It's way too late for that.

**MR. ARAGON:** Okay.

**THE COURT:** Okay. You can do one EAB four-hour deposition.

**MS. ADENDORFF:** May I just say one word about EAB, Your Honor?

**THE COURT:** Yes, please.

**MS. ADENDORFF:** We produced the EAB agreement in November of 2024. They deposed the head of our partnerships program in July of this year and didn't ask a single question about EAB. Their lack of diligence on EAB is --

**THE COURT:** Is EAB a partner?

**MS. ADENDORFF:** It is a partner, and they did not serve a subpoena on EAB until Halloween.

**MR. ARAGON:** No one told us that EAB paid for student data, paid PowerSchool for student data, and it was

December 1st.

**THE COURT:** You did subpoena EAB on Halloween?

**MR. ARAGON:** We did.

**THE COURT:** Okay. You did or you didn't.

All right. Now, if there's some reason the expert reports need to change because of this, I will tell you dangerously, because I don't know anything about EAB or anyone else, but it doesn't seem likely. But if for some reason it changes, the lawyers are going to pay for your time in a reasonable fashion, which I will take care of later in the case.

**MS. ADENDORFF:** Thank you, Your Honor.

**THE COURT:** Okay? And they will do that whether they win or lose. If they lose, they will be billed as a sanction. Okay? That's the way it's going to work. Either way, it comes out of your pay at the end of the case or it comes out of your pocket when you lose, but you're gonna pay. You are going to pay. You, the law firm, are going to pay.

Let me just -- Hagens Berman is going to pay, but they're not going to pay for it just because you want to gouge them with a $25,000 --

**MS. ADENDORFF:** Of course, Your Honor.

**THE COURT:** I mean, you're going to have to show me that there was a meaningful material --

**MS. ADENDORFF:** Change. Yes, Your Honor.

**THE COURT:** -- something that happened at EAB.

Which, based on my 30 years in the law seems like zero probability, but who knows. Stranger things have happened. Then you can come to me. But you know what, before you change the report, tell me. Let's do it that way. Okay?

**MS. ADENDORFF:** Okay.

**THE COURT:** Tell me you think you need to and tell me why, and then we'll work it out then. Okay?

**MS. ADENDORFF:** Yes, Your Honor.

**THE COURT:** I think that takes care of everything, doesn't it? Is that it?

**MS. ADENDORFF:** Well, yes. Do we have a schedule? Are you going to were a schedule?

**THE COURT:** You have a schedule. I entered it on Docket Number 78. That schedule's still in place.

**MS. ADENDORFF:** Okay. We don't have a schedule for --

**THE COURT:** Everything else is done.

**MS. ADENDORFF:** For the expert disclosures.

**THE COURT:** Oh, yeah. Well, when can you do this deposition?

**MR. ARAGON:** I can do it -- I have to talk to EAB. They're a third party, so it's hard for me to force them. And then the PowerBuddy deposition I would have to talk and negotiate a date with them.

**THE COURT:** I gave you only one deposition. You're

doing one EAB. I said "no" to the PowerBuddy. You got one four-hour deposition. That's it.

All right. How about you disclose it a week after the EAB, give expert time to see the --

**MR. ARAGON:** That's fair.

**THE COURT:** Okay. One week after.

None of these other dates are changing. Okay? So don't come and tell me, oh, now we can't file for class cert. because we just got the expert report. That's your problem.

**MS. ADENDORFF:** Then we have rebuttal reports, Your Honor. Those would just move accordingly after the initial --

**THE COURT:** I don't really do rebuttal -- oh, did I? Oh.

**MS. ADENDORFF:** Yes.

**MR. ARAGON:** You do do them very quickly afterwards.

**THE COURT:** It's two weeks usually.

Okay. That's fine. I mean, do whatever you want, but the last date to file class cert. is February 9th. That date is not changing. Whatever happens, it's not changing.

All right. Now, does that take care of everything?

**MS. ADENDORFF:** Yes, Your Honor, thank you.

**MR. ARAGON:** It does.

**THE COURT:** All right. Thanks for coming in.

Why are you here? What are you doing to get this thing settled, anything?

**MR. ARAGON:** We had breakfast this morning, Your Honor.

**THE COURT:** You had breakfast together. You didn't settle the case?

**MR. ARAGON:** We have not.

**MS. ADENDORFF:** We have not had substantial settlement --

**THE COURT:** Who picked up the check?

**MR. ARAGON:** The defendants did. We're not at the Ritz. I can't do that to the class.

**THE COURT:** You picked up the check?

**MS. ADENDORFF:** I did.

**THE COURT:** That was gracious.

**MR. ARAGON:** Yes.

**THE COURT:** Well, are you doing anything? You have a mediator?

**MR. ARAGON:** We went to a mediation and we had conversations early on in this case, but since, we haven't.

**THE COURT:** When was the last mediation?

**MS. ADENDORFF:** It was in May, Your Honor.

**MR. ARAGON:** Yeah.

**MS. ADENDORFF:** And our client feels very strongly that this case totally lacks merit and can't be certified as a class.

**THE COURT:** Counsel, every client says that. Okay?

That's the whole point of mediation. The ground proposition in every mediation is the other side is dumb as a post, and then you mediate. Okay? So when are you going to mediate?

**MS. ADENDORFF:** Like I said, at the moment we don't have any plans to do so, but we did talk this morning at breakfast.

**THE COURT:** You need to go back to mediation ASAP. Your client will be there in person, whoever that is. The CEO, whoever has the ability to sign a binding settlement agreement will be there.

Plaintiff, you need to have your named representative there, too, to do the same thing.

**MR. ARAGON:** The parents?

**THE COURT:** Whoever it is, yeah.

Now, who's the mediator?

**MS. ADENDORFF:** It's --

**THE COURT:** You can't remember it's been so long ago.

**MR. ARAGON:** It's been a long time.

**MS. ADENDORFF:** Yeah, it was.

**THE COURT:** Do you want a new one?

**MS. ADENDORFF:** No, I think we --

**MR. ARAGON:** It was just early in the case.

**MS. ADENDORFF:** Yeah.

**THE COURT:** All right. You file one week from today who that is, and I want a record of it. And then you get on

that person's books and have an in-person mediation no later than the end of January. All right? You know everything now. EAB is not going to change anything in terms of settlement.

And you tell your client I don't care what he or she thinks about the case, they're there to have a productive talk.

**MS. ADENDORFF:** Yes, Your Honor.

**THE COURT:** If they just sit there with their arm says crossed and say, I'm not saying anything, you're going to have a problem with me. Do you understand?

**MS. ADENDORFF:** Yes.

**THE COURT:** Plaintiffs, have you given a written demand to the defendants?

**MR. ARAGON:** We have.

**THE COURT:** Back in --

**MR. ARAGON:** Yes.

**THE COURT:** You give them a written demand two weeks before the mediation. Okay?

And then, defendant, you, one week before the mediation, you return a written counter. I'm going to put all this in the meeting minutes. Okay?

**MS. ADENDORFF:** Okay.

**THE COURT:** No matter what the mediator says, you may not vary from what I just ordered. The mediator cannot change that at all. All right? Now, if, for some reason, your mediator is booked and can't see you by the end of January, you

need to let me know. All right?

**MS. ADENDORFF:** Yes, Your Honor.

**THE COURT:** Okay. Okay. Thanks for coming in.

**MR. ARAGON:** Thank you.

**MS. ADENDORFF:** Thank you.

(Proceedings concluded at 12:06 p.m.)

**---o0o---**

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Monday, December 22, 2025



Stephen W. Franklin, RMR, CRR, CPE
Official Reporter, U.S. District Court