Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Taylor Rothman (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
taylor.rothman@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Ethan Joel Levinton (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
ethan.levinton@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY CHERKIN, et al | CASE NO. 3:24-cv-02706-JD |
| Plaintiffs, | |
| v. | **DEFENDANT POWERSCHOOL HOLDINGS, INC.'S NOTICE OF MOTION AND MOTION TO AMEND ITS ANSWER** |
| POWERSCHOOL HOLDINGS, INC., | Judge: Hon. James Donato |
| Defendant. | Hearing Date: February 12, 2026 |
| | Time: 11:00 a.m. |
| | Courtroom: 11, 19th Floor |

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on February 12, 2026, at 11:00am PT, or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 11, 19th Floor, before the Honorable James Donato, Defendant PowerSchool Holdings, Inc. ("PowerSchool") will and hereby does move the Court for an order granting leave to amend its Answer (Dkt. 66) pursuant to Fed. R. Civ. P 16(b)(4) and Fed. R. Civ. P. 15(a)(2). PowerSchool seeks to amend its Answer to include an affirmative defense after the deadline to amend pleadings has passed based on good cause—PowerSchool's diligence in pursuing the discovery that confirmed the viability of the defense—and the absence of any prejudice to Plaintiffs.

This Motion is based upon this Notice of Motion, the Motion presented below, the concurrently filed Proposed Order, the papers and records on file with the Court regarding this matter, and other such evidence or arguments as may be presented to the Court.

# INTRODUCTION

Both the "good cause" standard of Federal Rule of Civil Procedure 16(b), and the factors analyzed under Rule 15(a) (mainly, lack of prejudice), support PowerSchool's request to amend its Answer to add one additional affirmative defense.

From its first substantive filing in this case—a motion to dismiss—PowerSchool has described the pedagogical and administrative benefits its products provide to schools and school districts. *See* Dkt. 37 at 1. Throughout discovery, PowerSchool has reiterated these benefits, including its critical role in helping schools comply with state reporting requirements. Plaintiffs have attempted (unsuccessfully) to undermine these benefits and paint PowerSchool as a company that invades students' privacy for monetary gain.

While PowerSchool has consistently demonstrated why this narrative is false through its own documents and witnesses, it recently obtained testimony from one of the named Plaintiffs, as well as one of the Plaintiff's school districts (Seattle Public Schools or "SPS"), about the tangible and invaluable benefits PowerSchool offers. As the SPS representative succinctly stated just a few weeks ago: PowerSchool products are "critical for the operations of schools and the district." Ex. H at 29.

Given what has transpired throughout discovery, particularly in the most recent depositions, PowerSchool now seeks leave to amend its Answer to Plaintiffs' Complaint to include an affirmative defense to Count VI, which alleges invasion of privacy under California Constitution Article 1 Section I. The affirmative defense is that if any invasion of privacy occurred, even though PowerSchool denies such an invasion at all, it would be "'justified because it substantively furthers one or more countervailing interests.'" *Sheehan v. San Francisco 49ers, Ltd.,* 45 Cal.4th 992, 1004 (2009) (internal citation omitted). Here, those interests are the pedagogical and administrative benefits of PowerSchool's products, as schools use these products to benefit students, manage their records, and comply with state reporting requirements.

Because PowerSchool has diligently sought discovery on this topic, including in SPS's deposition this month, there is "good cause" to allow PowerSchool to amend its Answer. And because PowerSchool has raised the underlying basis for the defense—the myriad benefits of its products for schools and students—from this case's inception, Plaintiffs will suffer no prejudice from the amendment. As a result, the Court should grant PowerSchool's motion.

## BACKGROUND

Plaintiffs filed their Complaint on May 6, 2024, alleging that "[a]lthough PowerSchool markets [its] products as conferring administrative and pedagogical benefits to schools and school districts, they are undeniably commercial, for-profit products" that make money "at the expense of student and parent privacy." Dkt.1 at ¶ 59.

In response, PowerSchool filed a motion to dismiss, noting that Plaintiffs' scattershot Complaint fails to state any viable claims and that PowerSchool's products provide critical administrative and educational assistance to schools and school districts in compliance with state and federal law. *See* Dkt. 37 at 1–3. The Court granted the motion, in part, and denied, in part, on March 17, 2025, Dkt 65, which was over a month after the deadline for amending the pleadings. *See* Dkt. 55.

A few weeks later, on March 31, 2025, PowerSchool filed its Answer to Plaintiffs' Complaint. Dkt. 66. In its Answer, PowerSchool again made clear that it contracts with governments and private providers of education services for educational and administrative purposes. *See* Dkt. 66 at 129.

While waiting for the Court to rule on the motion to dismiss, and until just a few weeks ago, the parties engaged in extensive discovery efforts. To date, PowerSchool has produced over 100,000 documents, and the parties conducted a total of 16 depositions. *See* Adendorff Decl. ¶ 4.

In its discovery responses, PowerSchool reiterated the educational benefits of its products. *See* Ex. A at 19. During depositions, PowerSchool witnesses consistently testified that the company's products help schools comply with state reporting requirements, and that PowerSchool collects student

data only for educational and administrative purposes. *See, e.g.*, Ex. G at 29:20-30:14; Ex. E at 318; Ex. F at 292:14-18; Ex. B at 237-238.

During the last wave of depositions—of the Plaintiffs and SPS—PowerSchool elicited critical testimony concerning the benefits of its products. Plaintiff Concepcion acknowledged that he has no "problem with [PowerSchool] … storing [information] for the purposes of recordkeeping and maintenance of records for [his] children's attendance and [] grading." *See* Ex. C at 129:9-130:11. And just a few weeks ago, a corporate representative for SPS, the school district of Plaintiff S.G., testified that PowerSchool's products are critical to the school district's functioning and its ability to comply with state laws. Ex. H at 15-16, 23-30.

While fact discovery ended on December 2, 2025, expert discovery is still ongoing. The deadline for Plaintiffs' motion for class certification is February 9, 2026, and motions for summary judgment are due in June 2026. Dkt. 78. Trial is set for November 2026. *See id.*

PowerSchool now seeks leave to amend its pleading to add an affirmative defense to Plaintiffs' invasion of privacy claim. This is the first time that PowerSchool has sought leave to amend its Answer.

## **ARGUMENT**

The Court should allow PowerSchool to amend its Answer to include one additional affirmative defense because (1) PowerSchool exercised diligence in raising the defense and thus can show "good cause;" and (2) amendment will cause no prejudice to Plaintiffs, who were on notice about the basis for the defense from PowerSchool's earliest filings in this case and its subsequent discovery responses.

In general, courts "should liberally allow a party to amend its pleading." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). "To amend a pleading after the scheduling order deadline, [] the moving party must both demonstrate good cause to modify the

scheduling order under Rule 16(b) and show that amendment is warranted under Rule 15(a)." *See Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 654 (N.D. Cal. 2025).

The "good cause" standard of Rule 16(b) primarily concerns the diligence of the party seeking the amendment. *See Johnson v. Mammoth Recreations, Inc.*, 975 F. 2d 604, 609 (9th Cir. 1992); *see also Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023). A party's diligence centers on "when the relevant facts were learned and whether the moving party was diligent in seeking discovery of those facts." *Entangled Media, LLC*, 348 F.R.D. at 654 (emphasis omitted).

Under Rule 15, the court mainly considers prejudice to the plaintiff. The Court may also consider undue delay, bad faith, dilatory motive, and futility of the amendment. "Absent prejudice, or a strong showing of any of the remaining ... factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis omitted). Here, PowerSchool meets the requirements of both Rule 16 and Rule 15.

### I.   POWERSCHOOL ACTED DILIGENTLY, SO THERE IS "GOOD CAUSE" FOR AMENDMENT UNDER RULE 16.

PowerSchool has acted diligently throughout this case in developing the affirmative defense it now seeks to add to its Answer—that any alleged "'invasion of privacy is justified because it substantively furthers one or more countervailing interests.'" *Sheehan*, 45 Cal.4th at 477. When the latest depositions in this case confirmed via independent parties the viability of this defense, PowerSchool moved swiftly to seek this Court's permission to amend.

From the beginning of this case, PowerSchool has raised the countervailing interests at stake—namely, that its products and services provide educational and administrative benefits to schools and students. For example, in its Answer to Plaintiffs' operative Complaint, PowerSchool explained that governments and private providers of education services contract with PowerSchool for educational and administrative purposes. *See* Dkt. 66 at 129. In its motion to dismiss, PowerSchool noted the same:

"It assists its school and school district customers in collecting and managing their own student records." Dkt. 37 at 1-2.

While PowerSchool has repeatedly asserted these countervailing interests, it only recently elicited testimony about the topic from the Plaintiffs, as well as one of the Plaintiff's school districts. Indeed, just a few weeks ago, on December 5, 2025, the corporate representative for Seattle Public Schools explained that absent the use of PowerSchool's services, "there would be concerns about classroom and instructional operation and learning." Ex. H at 25.[1] Plaintiff Concepcion also recognized the benefits of PowerSchool's products and testified that he has no "problem with [PowerSchool] storing [information] for the purposes of recordkeeping and maintenance of records for [his] children's attendance and [] grading." *See* Ex. C at 129:9-130:11. Before these depositions, PowerSchool was relying only on its own knowledge about the educational and administrative interests in schools using PowerSchool's services.

Courts in the Ninth Circuit have considered this exact series of events, deciding that parties are entitled to confirm factual allegations before amending to include an affirmative defense. *See Advanced Cardiovascular Sys. v. Scimed Life Sys.*, 989 F. Supp. 1237, 1247 (N.D. Cal. 1997); *see also Entangled Media, LLC*, 348 F.R.D. at 654 ("[W]aiting to amend a complaint or Answer until a strong evidentiary basis for the amended claims has been developed is preferable to prematurely asserting those claims on the basis of a limited record.").

Because PowerSchool acted diligently in seeking discovery of relevant facts for its proposed affirmative defense, and is now seeking amendment to add that affirmative defense shortly after obtaining those facts, PowerSchool's actions meet the good cause standard under Rule 16.

---

[1] PowerSchool pursued a potential deposition of a representative of Seattle Public Schools as early as August 2024. However, delays in scheduling resulted in the deposition taking place just this month. *See* Adendorff Decl. ¶ 14.

## II. THE RULE 15 FACTORS SUPPORT POWERSCHOOL'S REQUEST.

While courts mainly focus on prejudice under Rule 15, which is absent here, the other factors—undue delay, bad faith, and futility—also support PowerSchool's request to amend its Answer.

First, Plaintiffs will experience no prejudice if PowerSchool adds one additional affirmative defense to its Answer. Courts in the Ninth Circuit have found prejudice where amendment of a pleading would "reopen discovery and therefore delay the proceedings." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). Prejudice may also arise when the amended pleading requires the other party to consider new legal theories in a short period of time. *See id.*

Neither situation is present here. Plaintiffs have been on notice of this particular defense as early as July 22, 2024, when PowerSchool filed its motion to dismiss. And again, on November 13, 2024, Plaintiffs received notice of the interests PowerSchool's products serve when Plaintiffs received PowerSchool's responses to Plaintiffs' interrogatories. *See* Adendorff Decl. ¶ 6. There, in response to an interrogatory about its consent defense, PowerSchool highlighted the pedagogical and administrative interests at issue: "Like businesses in other industries, schools require service providers like PowerSchool to provide online and software solutions where the school or district lacks the knowhow, scale, or resources to develop and maintain these products independently." Ex. A at 19. PowerSchool also referenced these interests in its Answer to Plaintiffs' Complaint. *See e.g.*, Dkt. 66 at 132 ("PowerSchool products and services [] increase educational effectiveness and give parents and students enhanced ability to participate in and communicate with school operations."). And PowerSchool witnesses testified that their products help schools comply with state reporting requirements, which are varied and complex. *See* Ex. G at 29:20-30:14.

Plaintiffs had ample opportunity to, and did in fact, probe these issues in discovery. Plaintiffs sought (unsuccessfully) testimony and documents that would undermine the educational and administrative purposes of PowerSchool's products. For example, Plaintiffs' counsel asked a

PowerSchool witness whether the company collected data beyond what the customers (i.e. schools) sent. *See* Ex. D at 91:20-92:4. The Answer was "no." *Id.* ("We don't collect any data other than what our customers send us."). Plaintiffs' counsel asked numerous PowerSchool witnesses whether the company went beyond the educational and administrative purposes of their products to sell student data. The answer was, once again, "no." *See* Ex. D at 310; Ex. E at 318; Ex. F at 292:14-18; Ex. B at 237.

Because Plaintiffs have had notice of the basis of PowerSchool's proposed affirmative defense for over a year and already sought discovery to attempt to undermine this defense, there is no new legal theory here or need for additional discovery. Thus, Plaintiffs will face no prejudice due to PowerSchool's proposed amended Answer. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (plaintiff suffered no prejudice by defendant's amendment to add affirmative defense where addition did not cause a delay in the proceedings or require additional discovery).

Second, PowerSchool did not unduly delay in seeking leave for a proposed amendment to its Answer. Delay on its own "'no matter how lengthy is an insufficient ground for denial of leave to amend [under Rule 15(a)].'" *See Entangled Media, LLC*, 348 F.R.D. at 655 (internal citation omitted)). And "the mere fact that an amendment is offered late in the case is … not enough to bar it." *Id.* (internal quotations and citations omitted).

Fact discovery has just closed in this case. And there are still many months before the deadline for summary judgment. Further, as noted above, just a few weeks ago, a representative for Seattle Public Schools testified that "[the] central repository [of student information] allows for critical functions at the school district for school learning." Ex. H at 16. She explained that "the different functions [] are critical for the operations of schools and the district." *Id.* at 29. Thus, PowerSchool only recently obtained testimony from a critical third party about the benefits its products provide.

There is therefore no delay, much less undue delay, in PowerSchool now seeking to add one affirmative defense to its Answer.

Third, PowerSchool is not seeking an amendment to its pleading in bad faith or for a dilatory motive. As explained above, PowerSchool diligently sought leave to amend following the final (and some of the most critical) depositions in this case.

Finally, PowerSchool's proposed amendment is not futile. A proposed amendment "is futile if it would be immediately 'subject to dismissal.,'" *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (internal citations omitted), or if "no set of facts can be proved under the amendment … that would constitute a valid claim or defense." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988). Further, an "affirmative defense [is] not subject to the *Twombly* and *Iqbal* heightened pleading standard." *Entangled Media, LLC*, 348 F.R.D. at 657. Rather, "only the 'fair notice' standard applies." *Id.* Here, PowerSchool's proposed affirmative defense alleges facts that are supported by the discovery in this case and will constitute a valid defense to an invasion of privacy claim under California Constitution Article 1 Section I. As detailed above, PowerSchool's data processing products and services are justified because they further schools' pedagogical and administrative interests and help schools comply with state reporting requirements. *See Sheehan*, 45 Cal.4th at 477.

## CONCLUSION

All of the Rule 15 factors, as well as the "good cause" standard under Rule 16, support PowerSchool's request to add one additional affirmative defense. Thus, PowerSchool respectfully asks the Court to grant it leave to amend its Answer.

| | | |
|---|---|---|
| 1 | DATED: December 23, 2025 | Respectfully submitted, |
| 2 | | KIRKLAND & ELLIS LLP |
| 3 | | |
| 4 | | */s/ Olivia Adendorff* <br> Olivia Adendorff, P.C. |

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Amelia Bailey (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Taylor Rothman (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
taylor.rothman@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Ethan Joel Levinton (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
ethan.levinton@kirkland.com
eugene.temchenko@kirkland.com

Cara Yi
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
cara.yi@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*