# EXHIBIT A

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, California 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky (*pro hac vice*)
Amelia H. Bailey (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Rachael A. Rezabek
Ethan Joel Levinton (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
oliva.adendorff@kirkland.com
rachael.rezabek@kirkland.com
ethan.levinton@kirkland.com

*Attorneys for Defendant*
*PowerSchool Holdings, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMILY CHERKIN, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>Defendant | CASE NO. 3:24-CV-02706-JD<br><br>**POWERSCHOOL HOLDINGS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' NON-UNIFORM INTERROGATORIES** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant PowerSchool Holdings, Inc. ("PowerSchool") hereby responds and objects to Plaintiffs' First Set of Non-Uniform

1

Interrogatories, as well as the Definitions and Instructions incorporated therein (collectively the "Interrogatories" and individually the "Interrogatory"), which were served on PowerSchool on September 13, 2024.

**GENERAL OBJECTIONS AND CONDITIONS**

The following General Objections and Conditions apply to each Interrogatory set forth below. Each Objection and Condition is hereby incorporated into the Response to each individually numbered Request as if fully set forth therein:

1. PowerSchool objects to the definitions of the following terms:

    (a) PowerSchool objects to the definitions of "And" and "or" insofar as they request PowerSchool to interpret words contrary to their plain meaning.

    (b) PowerSchool objects to the definitions of "Documents" and "All documents" to the extent the definitions purport to supersede the parties' agreed-upon forthcoming ESI Protocol or Stipulated Protective Order, including insofar as the definitions require production of exact duplicates. PowerSchool will interpret "Documents" and "All documents" consistent with the parties' forthcoming ESI Protocol and Stipulated Protective Order.

    (c) PowerSchool objects to the definition of "Category of data" to the extent it attempts to impose an obligation to produce documents derivative of other documents until "the smallest discrete data element" is identified for any data referenced by such documents. PowerSchool further objects to the definition as overly broad to the extent that it includes data that is not Personally Identifiable Information ("PII"). PowerSchool agrees to confer with Plaintiffs as to a reasonable definition of this term.

    (d) PowerSchool objects to the definition of "Communication(s)" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of discovery to the extent it purports to require PowerSchool to reference all forms of communications, regardless of burden and relevance. PowerSchool will interpret "Communication(s)" consistent with the parties' forthcoming ESI Protocol and Stipulated Protective Order and will only review such records as identified through a reasonable search.

(e) PowerSchool objects to the definitions of "Defendant" and "You" to the extent they refer to third parties, including any entity not controlled by PowerSchool and "person[s] … purporting to act on [PowerSchool's] behalf." PowerSchool further objects to the definitions of "You" and "Defendant" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of discovery to the extent that they purport to include entities other than PowerSchool. PowerSchool will interpret "Defendant" and "You" to include PowerSchool, its wholly owned subsidiaries, branches, divisions, officers, directors, employees, representatives, and persons acting on its behalf. PowerSchool further objects to the extent the definition seeks documents or information not within the direct possession or custody of PowerSchool and its employees, and objects to the extent documents are sought beyond that scope.

(f) PowerSchool objects to the definition of "Data" to the extent the definition covers types or categories of data not alleged to have been wrongfully collected, processed, or shared in the Plaintiffs' complaint, ECF No. 1 (the "Complaint"). PowerSchool further objects to the extent the definition concerns data not within PowerSchool's possession, custody, or control. PowerSchool further objects to the definition as overly broad to the extent that it includes data that is not PII. PowerSchool will interpret "Data" to mean, collectively, Customer Data, Collected Data, and Transaction Data, as those terms are defined in PowerSchool's Global Privacy Statement, available at https://www.powerschool.com/privacy/, and will respond as to the products and solutions offered to schools or school districts as alleged in the Complaint.

(g) PowerSchool objects to the definition of "Parent" or "parents" as overly broad to the extent it includes the parents who may not have legal custody over their child(ren) and parents or legal guardians of students who have not used the PowerSchool products or services purchased by schools or school districts at issue in the Complaint. PowerSchool will interpret "Parent" or "parents" to include only individuals who have legal custody over an individual attending grades K-12 in a public institution and who used PowerSchool products or services identified in the Complaint.

**INTERROGATORY NO. 6:**

To the extent you contend that consent is a defense to Plaintiffs' claims, state your contentions about how YOU obtain consent to collect DATA, to use DATA, to store DATA, and to disclose DATA to third parties; from whom such consent is obtained, and to which products or services such consent pertains.

**RESPONSE TO INTERROGATORY NO. 6:**

PowerSchool objects to Interrogatory No.6 on the grounds that it is a premature contention interrogatory and because discovery and its investigation in this action is ongoing. PowerSchool has not yet completed its evaluation of all of its potential defenses to Plaintiffs' claims. PowerSchool reserves the right to supplement its response after discovery is complete. PowerSchool additionally objects to this Request to the extent that it incorrectly contends that PowerSchool "collects" student data as opposed to processing such data on behalf of schools.

PowerSchool objects to this Interrogatory because it presumes that consent is required, which is a disputed and incorrect statement of law. PowerSchool further objects to this Interrogatory because it is a compound Interrogatory, seeking first detail on how PowerSchool obtains consent and then asking for specific detail about such consent. PowerSchool will respond generally, explaining its contentions, based on facts presently identified, concerning consent as it relates to products and solutions offered to schools or school districts.

As limited by the foregoing general and specific objections, PowerSchool responds as follows:

**(a)   Family Education Rights and Privacy Act.**

When offering products and services, PowerSchool is a "school official" under the Family and Education Rights and Privacy Act (FERPA) allowing schools or districts to share student data with PowerSchool without obtaining consent. *See* 34 C.F.R. § 99.31(a). Under FERPA, "[t]he parent or eligible student [(defined as 18 years or older)] [must] provide a signed and dated written consent before an educational agency or institution discloses personally identifiable information from the student's education records." 34 C.F.R. § 99.30. *However*, 34 C.F.R. § 99.31(a) authorizes certain types of sharing for which consent is not required, including sharing with "[a] contractor, consultant, volunteer, or other party to whom an agency or institution has outsourced institutional services or functions."

These service providers are considered "school officials" with whom schools can share information without consent if the service provider:

> (1) Performs an institutional service or function for which the agency or institution would otherwise use employees;
>
> (2) is under the direct control of the agency or institution with respect to the use and maintenance of education records; and
>
> (3) is subject to the requirements of § 99.33(a) governing the use and redisclosure of personally identifiable information from education records.

34 C.F.R. § 99.31(a). 34 C.F.R. 99.33(a) further allows for the "officers, employees, and agents of a party that receives information" under FERPA to use it "for the purposes for which the disclosure was made."

PowerSchool is a "school official" because it is a "contractor . . . to whom an agency or institution has outsourced institutional services or functions." 34 C.F.R. § 99.31(a). In providing its products and solutions, PowerSchool performs functions that would otherwise be performed by the schools or districts themselves. For example, Schoology assists teachers in distributing and collecting assignments, distributing grades, and other core educational functions. Naviance assists schools in providing guidance counseling on career and educational opportunities that are critical functions of schools. And Headed2 allows educators to access pre-built career prep lesson plans and at-a-glance reporting on student and class progress, as well as review and comment on student assignments. All of these functions are traditional educational functions.

PowerSchool is uniquely situated to provide secure, flexible solutions for schools and school districts' technological needs in the modern era and especially under the new norms created by COVID-19. Rather than developing these products themselves or relying on the old fashioned "paper way" of distributing assignments or posting flyers with information about colleges, etc., schools and districts contract with PowerSchool to use technology to complete the same tasks. Like businesses in other industries, schools require service providers like PowerSchool to provide online and software solutions where the school or district lacks the knowhow, scale, or resources to develop and maintain these products independently.

Further, PowerSchool remains firmly "under the direct control" of the schools "with respect to the use and maintenance of education records" when offering its enterprise services. As will be discussed below, the schools are always in direct control of student data under the contractual arrangement between PowerSchool and the schools. Moreover, PowerSchool only uses student data for the educational purpose for which the disclosure was made.

### (b) California Education Code and Other State Law

Governing laws expressly allow schools to share their student data with contractors like PowerSchool without having to collect consent from individual students or their parents. Consistent with the federal authorization, the California Education Code, for example, allows school districts to provide "access to pupil records" to a person authorized by federal regulation to have them "without written parental consent." Cal. Educ. Code § 49076(a). The Code also independently permits school districts to release student records to contractors providing "outsourced institutional services or functions" to the districts "without written parental consent." *Id.* § 49076(a)(2)(G)(i). The term "pupil records," as used in the relevant section of the California Education Code means both of the following:

> (i) Any information directly related to a pupil that is maintained by the local educational agency.
>
> (ii) Any information acquired directly from the pupil through the use of instructional software or applications assigned to the pupil by a teacher or other local educational agency employee.

*Id.* § 49073.1(a)(5)(A).

### (c) Contracts with the Schools.

The foregoing notwithstanding, PowerSchool does obtain consent from schools—on behalf of parents and students—for the processing of Personal Information from children.

PowerSchool implicitly gets the schools' consent on behalf of the parents through the direct sale of the products to the schools and school districts, and in addition, while not every contract contains such language, PowerSchool's practice is to explicitly get consent from schools via its specific contractual agreements with schools and districts.

These contracts, which may vary from school to school and are discussed below, specify that the schools either explicitly understand certain types of Personal Information will be processed by

## **VERIFICATION**

I declare under penalty of perjury that the Responses to Plaintiffs' Non-Uniform Interrogatories Nos. 1, 2, 4, 5, 6, 7, 8 are true and correct.

Dated: November 13, 2024

/s/ 

Name: Darron Flagg