1  Robyn E. Bladow
2  KIRKLAND & ELLIS LLP
   555 South Flower Street, Suite 3700
3  Los Angeles, CA 90071
   Telephone: (213) 680-8400
4  robyn.bladow@kirkland.com

5  Martin L. Roth, P.C. (*pro hac vice*)
6  Alyssa C. Kalisky, P.C. (*pro hac vice*)
   Zharna Shah (*pro hac vice*)
7  Taylor Rothman (*pro hac vice*)
   KIRKLAND & ELLIS LLP
8  333 West Wolf Point Plaza
   Chicago, IL 60654
9  Telephone: (312) 862-2000
10 martin.roth@kirkland.com
   alyssa.kalisky@kirkland.com
11 zharna.shah@kirkland.com
   taylor.rothman@kirkland.com
12
13 Olivia Adendorff, P.C. (*pro hac vice*)
   Ethan Joel Levinton (*pro hac vice*)
14 Eugene Temchenko (*pro hac vice*)
   KIRKLAND & ELLIS LLP
15 4550 Travis Street
   Dallas, TX 75205
16 Telephone: (214) 972-1770
   olivia.adendorff@kirkland.com
17 ethan.levinton@kirkland.com
   eugene.temchenko@kirkland.com
18

19 *Attorneys for Defendant PowerSchool Holdings, Inc.*

20                  **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
21                      **SAN FRANCISCO DIVISION**

22 | | |
|---|---|
| EMILY CHERKIN, et al ) | CASE NO. 3:24-cv-02706-JD |
| ) | |
| Plaintiffs, ) | **DEFENDANT POWERSCHOOL** |
| ) | **HOLDINGS, INC.'S REPLY TO** |
| v. ) | **PLAINTIFFS' OPPOSITION TO** |
| ) | **DEFENDANT'S MOTION TO AMEND** |
| ) | **ITS ANSWER** |
| POWERSCHOOL HOLDINGS, INC., ) | |
| ) | Judge: Hon. James Donato |
| Defendant. ) | Hearing Date: February 12, 2026 |
| ) | Time: 11:00 a.m. |
| | Courtroom: 11, 19th Floor |

DEFENDANT'S REPLY RE:                                    CASE NO. 3:24-CV-02706-JD
MOTION TO AMEND ANSWER

**INTRODUCTION**

Plaintiffs' entire case hinges on the false notion that PowerSchool's products invade schoolchildren's privacy to such a degree that it negates the products' pedagogical or administrative benefits. PowerSchool has vigorously defended against these claims for nearly two years, filing motions and seeking discovery to prove that no such privacy invasion occurs, and that the critical services the company provides allow schools to effectively manage their operations, meet students' educational needs, and comply with state and federal reporting laws. Yet Plaintiffs now feign surprise that PowerSchool seeks to add a single affirmative defense (to the twenty seven already pleaded) specifically related to the benefits of its products. Plaintiffs make three main arguments—prejudice, lack of diligence, and bad faith. Each one fails.

First, Plaintiffs assert allegations related to this precise defense in their Complaint, PowerSchool addressed it in their motion to dismiss, and contrary to Plaintiffs' arguments, the parties engaged in discovery on the topic. This is all unsurprising given that the countervailing interests and justifications for allegedly invading someone's privacy is inherent to the privacy analysis—regardless of the affirmative defense. Thus, Plaintiffs' assertion that they were unaware of this defense, or that it will greatly expand the scope of the case simply because it was not previously specified as an affirmative defense in PowerSchool's Answer, fails.

Second, PowerSchool moved to amend shortly after a critical third-party deposition of Seattle Public Schools (SPS). While Plaintiffs criticize PowerSchool for not raising their request to amend at a recent hearing, they omit that the SPS deposition did not conclude until December 18, a week *after* the hearing took place. Cases within this district support PowerSchool's waiting to seek amendment until the SPS deposition concluded and confirmed the viability of the additional affirmative defense.

Left with no real arguments on the merits, Plaintiffs accuse PowerSchool of deceptively citing distinguishable cases. Of course, disagreement about the similarity of other cases is just a description of the normal adversarial process. The cases speak for themselves. The Court should therefore reject Plaintiffs' disingenuous arguments and permit PowerSchool to amend its Answer.

# ARGUMENT

## I. PLAINTIFFS WILL FACE NO PREJUDICE IF POWERSCHOOL ADDS ONE AFFIRMATIVE DEFENSE.

Plaintiffs have had clear knowledge of the affirmative defense PowerSchool seeks to add concerning the educational and administrative benefits of its products from the beginning of this case. Because the existence and validity of these benefits has always been an issue, there was discovery on the topic. Thus, contrary to Plaintiffs' argument, there will be no prejudice if PowerSchool now adds this affirmative defense.

First, the unique nature of this specific affirmative defense cuts against any purported prejudice. Unlike some affirmative defenses, such as the statute of limitations or arbitration provisions, that are independent from the legal elements of Plaintiffs' claims, the "affirmative defense" of countervailing interests is inherent to the claims here. The countervailing-interests defense is a balancing test embedded in the privacy analysis itself, as courts in the Ninth Circuit view the "***comparison and balancing of diverse interests [as] central to the privacy jurisprudence of [] constitutional law***." *See Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 655 (Cal. 1994) (emphasis added). As the Supreme Court of California has further explained, the elements of an invasion of privacy claim require "***weighing and balancing the justification for the conduct in question against the intrusion on privacy resulting from the conduct***." *Sheehan v. San Francisco 49ers, Ltd.*, 201 P.3d 472, 477 (Cal. 2009) (emphasis added); *see also Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1074 (Cal. 2009) (distilling the privacy analysis into two main parts: "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, ***including any justification and other relevant interests***.") (emphasis added). In other words, regardless of whether PowerSchool pleads this affirmative defense, the Court will consider the justifications for PowerSchool's conduct and the interests its products serve. It is difficult to see, then, how Plaintiffs would be prejudiced by PowerSchool's request to amend its Answer.

Second, because the countervailing interests are part and parcel of the privacy analysis, Plaintiffs have always known about the potential defense. In their very first filing in this case, the Complaint, Plaintiffs raised the issue: "Although PowerSchool markets these products as conferring

administrative and pedagogical benefits to schools and school districts, they are undeniably commercial, for-profit products that have enabled PowerSchool to build a multibillion-dollar surveillance-technology empire at the expense of student and parent privacy." Dkt. 1 ¶ 59. And in the section of their Complaint addressing the claim relevant here—invasion of privacy under the California Constitution—Plaintiffs also referenced these benefits, claiming that PowerSchool's alleged tracking of Plaintiffs' activity "constitutes an egregious breach of social norms that is highly offensive, *particularly given that PowerSchool's products and services were represented as tools to assist with the education of children*." *Id.* ¶ 542 (emphasis added). Plaintiffs' Complaint even describes various PowerSchool products and their benefits, including that P-SIS allows schools to comply with "federal and state compliance reporting," and that PowerSchool Enrollment allows schools to "maintain[] enrollment data." *Id.* ¶ 61.

Thus, it is unsurprising that PowerSchool addressed these points in its motion to dismiss and Answer. *See* Dkt. 37 at 1–3; Dkt. 66 at 129. In the Answer, PowerSchool referenced the countervailing interests—educational and administrative benefits—numerous times:

- "PowerSchool admits that it is a for-profit corporation that markets and has earned revenue from products that confer administrative and pedagogical benefits to educational institutions."

- Eleventh Affirmative Defense (Unjust Enrichment): "Plaintiffs have benefitted from PowerSchool products and services which increase educational effectiveness and give parents and students enhanced ability to participate in and communicate with school operations."

- Thirteenth Affirmative Defense (No Intent): "PowerSchool provides data processing services that enable Educators and Representatives to effectively collect, review, use, share, manage, and analyze their own data."

Dkt. 66 at 15, 131–34. Plaintiffs are flat-out wrong to say that neither their Complaint nor "PowerSchool's twenty-seven other defenses alleged in its Answer implicate any purported countervailing interests." Dkt. 113 at 2.

Third, the parties thoroughly explored the facts related to this affirmative defense in discovery. Again, that is because the countervailing interests at stake are inherent to Plaintiffs' privacy claims. Just a small sampling of both the written discovery and deposition testimony undermines Plaintiffs'

cleverly worded argument that they "did not *directly* seek fact discovery as to any purported countervailing interests," Dkt. 113 at 3:

- PowerSchool served interrogatories, and each Plaintiff responded, about the specific PowerSchool products they use and the educational purpose of those products. *See* Ex. A; Ex. B; Ex. C; Ex. D; Ex. E.

- PowerSchool witnesses testified about the educational benefits of their products in response to direct and pointed questions probing those benefits. *See, e.g.*, Ex. F at 47:10–50:11 (describing how PowerSchool's SIS product supports schools' educational purposes).

- PowerSchool witnesses also testified about the interest schools have in using PowerSchool products for administrative purposes and to comply with state law. *See, e.g.*, Ex. G at 188:10–18 ("Q. How does the Arkansas Department of Education utilize Connected Intelligence? A. They have our eFinancePlus product. So, it is managing finances for districts in Arkansas."); Ex. H at 58:10–21.

- Plaintiffs asked PowerSchool for documents "identifying, discussing, or explaining the educational purposes" of the data it collects. Ex. I at No. 36. Plaintiffs also asked for documents "sufficient to show both how and by whom an 'educational purpose' is defined." *Id.* at No. 37.

- Plaintiff Cherkin testified about what she perceives to be effective alternatives to PowerSchool's current operations and offerings. *See* Ex. J at 173:13–175:17 ("Q. So did I hear you correctly that you do not have any objections to schools using a student information system? A. If it is used safely, effectively, and within the law, and given opportunities for parents to give informed consent about how their children's data is used, then at a bare minimum, no, I don't.").

- Judie Jaeger from SPS went to great lengths to describe the benefits PowerSchool products provide, including SPS's interest in continuing to use those products to comply with state reporting requirements. *See* Ex. K at 23:17–30:8 ("If we couldn't use PowerSchool to meet our state data reporting obligations, it would be very, very difficult to provide data to the state.").

- Ms. Jaeger also testified that if SPS was unable to use PowerSchool products for the school district's reporting obligations, the school district would probably lose funding and there would be concerns about school operations and classroom learning. *See id; id.* at 70:21–71:13.

Indeed, much discovery has already occurred on the countervailing interests of PowerSchool's products.

It is telling that Plaintiffs do not identify any other specific discovery they would need if PowerSchool added the countervailing-interests defense. Rather, they make generalized statements

DEFENDANT'S REPLY RE: MOTION TO AMEND ANSWER     4     CASE NO. 3:24-CV-02706-JD

1  that adding this defense would require Plaintiffs to "to re-depose certain witnesses or depose new
2  witnesses for the first time; negotiate expansions of the discovery limits to allow for new requests
3  probing the new defense; and then serve the requests." Dkt. 113 at 10. Which witnesses they would
4  need to depose, what additional questions they need answered, and what types of requests they would
5  serve is anyone's guess.

6        Finally, Plaintiffs' prejudice argument suffers from another flaw—it is inherently
7  contradictory. On the one hand, Plaintiffs claim that they sought discovery on this topic only indirectly
8  and therefore need more discovery. Dkt. 113 at 3. But Plaintiffs also argue that this affirmative defense
9  has never been mentioned in the entire case and thus *anything* related to countervailing interests was
10 "beyond the scope of discovery." Dkt. 113 at 2. Both statements cannot be true. As noted above, the
11 parties engaged in discovery on this topic precisely because it was relevant to Plaintiffs' claims and
12 PowerSchool's defenses. Plaintiffs' argument that the educational and administrative benefits of
13 PowerSchool's products were beyond the scope of Rule 26(b)(1)'s liberal standard, which permits
14 discovery "regarding *any* nonprivileged matter that is relevant to *any* party's claim or defense,"
15 beggars belief. *See* Dkt. 113 at 2.

16       Plaintiffs confirm as much in a buried footnote in their opposition. Dkt. 113 at 10 n.1. They
17 admit that: "Plaintiffs served their initial discovery requests and interrogatories on September 13,
18 2024, [six months] before PowerSchool filed its Answer on March 31, 2025. Plaintiffs did not view
19 the defenses raised in PowerSchool's Answer as requiring additional discovery requests." *Id*. In other
20 words, Plaintiffs make the remarkable claim that while PowerSchool's 27 affirmative defenses
21 required no additional discovery, a 28th affirmative defense—one Plaintiffs contemplate in their own
22 complaint—will "significantly expand the scope of fact discovery[.]" Dkt. 113 at 9. How exactly?
23 Once again, Plaintiffs fail to specify. All in all, Plaintiffs have failed to demonstrate that they will face
24 any actual prejudice if PowerSchool amends its Answer.

25 **II.  POWERSCHOOL ACTED DILIGENTLY BY MOVING TO AMEND ITS ANSWER
26      SOON AFTER CRITICAL DEPOSITION TESTIMONY.**

27       From the beginning of this case, PowerSchool has diligently sought to develop the basis for
28 the affirmative defense it now seeks to add. As detailed in its motion and reiterated above,

1  PowerSchool referenced the factual points central to the defense in its first substantive filing in this
2  case, its Answer to the Complaint, and throughout discovery. *See* Dkt. 111 at 5–6. But only recently
3  did PowerSchool obtain critical third-party testimony from Seattle Public Schools (SPS) to corroborate
4  the defense. *Id.* at 6. Shortly after this deposition, PowerSchool moved to amend.

5  Plaintiffs argue that PowerSchool (but not Plaintiffs) has known about the facts supporting this
6  defense since the complaint was filed, PowerSchool waited too long to take this deposition, and it
7  relies on cases that are distinguishable. *See* Dkt. 113 at 4–6. These contentions are all either irrelevant
8  or wrong.

9  First, courts in this district have held that a party acts diligently when it waits to take
10 depositions until document productions finish and to move to amend the answer until the viability of
11 any additional affirmative defenses is clear—even if the party knew the basis for the affirmative
12 defense much sooner. *See, e.g.*, *Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 656 (N.D.
13 Cal. 2025).

14 In fact, in *Entangled Media*, the court rejected the very arguments Plaintiffs make here. *Id.* The
15 plaintiff in that case argued that Dropbox was not diligent because it waited more than 18 months after
16 the case started to serve deposition notices on the relevant parties and knew about the factual basis for
17 its affirmative defense long before moving to amend its answer. *Id.* at 654–55. The court swiftly
18 dismissed these arguments, noting that Dropbox's discovery in the case "has been robust," and it was
19 reasonable for "Dropbox to conduct its depositions after the completion of most written discovery."
20 *Id.* The court went so far as to say that "[g]iven the ubiquity of this practice in civil litigation, the Court
21 is loath to adopt any interpretation of Rule 16(b)'s diligence requirement that would punish parties for
22 staging discovery in this manner." *Id.* at 655. Further, the court noted that although Dropbox knew the
23 factual basis for the defense early in the case, "[w]aiting to file the motion until after obtaining
24 corroborating deposition testimony" met Rule 16(b)'s good-cause requirement. *Id.*

25 Similarly here, PowerSchool has engaged in robust discovery, which Plaintiffs admitted to this
26 Court when it sought an extension of the discovery schedule: "[D]ocument production in this case has
27 been voluminous…[I]t took Defendant a significant time to review and produce such documents."
28 Dkt. 92 at 2. And although PowerSchool knew about the basis of the affirmative defense early on—

1  because of Plaintiffs' allegations in the Complaint—it waited to move to amend until it had
2  corroborating deposition testimony from a third party. As the court in *Entangled Media* held, this is a
3  reasonable and permissible series of events.

4  Plaintiffs make a half-hearted attempt to distinguish this case and then grossly exaggerate the
5  consequences, claiming that *Entangled Media* is so distinguishable that PowerSchool citing it is an
6  attempt to deceive the Court. Dkt. 113 at 11. Plaintiffs point out that *Entangled Media* is a patent case
7  where the plaintiff needed "extensive fact discovery" on the proposed affirmative defense whereas
8  PowerSchool "knew everything it needed to know" by March 2025 when it filed its Answer. *Id.* at 6.
9  The fact that *Entangled Media* is a patent case is irrelevant. And PowerSchool filed its Answer before
10 a single deposition took place in this case. In those depositions, Plaintiff Concepción admitted that
11 PowerSchool's products offer educational and administrative benefits, Plaintiff Cherkin discussed
12 what she believed to be reasonable alternatives to PowerSchool's current practices, and SPS testified
13 in great detail about these benefits and whether the school district could function without PowerSchool
14 products. *See* Dkt. 111 at 6. Plaintiffs therefore provide no basis for dismissing *Entangled Media*,
15 much less accusing PowerSchool of misleading the Court by citing the case.

16 Finally, Plaintiffs' argument that the December 5 date of the SPS deposition somehow
17 demonstrates a lack of diligence is baseless. Plaintiffs took one of their own critical depositions—
18 PowerSchool's 30(b)(6) witness—just four days prior. Plaintiffs also leave out that the SPS deposition
19 took place in two parts. The first part occurred on December 5, and the second on December 18. *See*
20 Adendorff Decl. ¶ 15.  PowerSchool filed this motion just five days (including a weekend) after the
21 SPS deposition concluded. Further, as PowerSchool noted in its motion, it sought the deposition of
22 SPS many months prior. The "scheduling issues" that Plaintiffs make a fuss about, *see* Dkt. 113 at 5,
23 were just the normal logistical challenges present for nearly every third-party deposition, such as
24 finding the right person at SPS to discuss potential dates and then negotiating a date that worked for a
25 busy public-school employee. *See* Adendorff Decl. at ¶ 16.

26 Plaintiffs' attempt to paint PowerSchool as lacking diligence in seeking SPS's deposition is
27 particularly perplexing given Plaintiffs' earlier requests to this Court for a discovery extension. In
28 those requests, Plaintiffs claimed that third parties delayed Plaintiffs' ability to obtain discovery even

DEFENDANT'S REPLY RE:               7                CASE NO. 3:24-CV-02706-JD
MOTION TO AMEND ANSWER

though Plaintiffs chose to wait months before serving any subpoenas on third parties. Dkt. 98 at 1. Even worse, Plaintiffs told this Court that they needed extra time to depose SPS when they did not seek an SPS deposition until after PowerSchool noticed its own deposition. *Id.* Plaintiffs cannot have it both ways, representing to the Court that they were diligent in seeking SPS's discovery only after PowerSchool did so yet simultaneously accusing PowerSchool of a lack of diligence and undue delay. PowerSchool acted diligently throughout discovery in this case, and the Court should reject Plaintiffs' insincere arguments to the contrary.

### III.   POWERSCHOOL ACTED IN GOOD FAITH.

As explained above, the basis for the affirmative defense at issue has been percolating in this case from the beginning. Plaintiffs raised it in their Complaint, and much discovery about the topic has taken place, including in the latest deposition of SPS just a few weeks ago. At the conclusion of that deposition, PowerSchool swiftly moved to add one additional affirmative defense. Faced with these facts, Plaintiffs resort to hurling accusations of bad faith and even deceit.

But these arguments fall flat. First, Plaintiffs' disagreement with the similarity of the cases PowerSchool cites and whether Plaintiffs were on notice about this defense are not evidence of PowerSchool's bad faith. If that were true, the entire adversarial process could be characterized as an exercise in bad faith. Disagreement is not deceit.

Second, PowerSchool was not engaged in "gamesmanship" by opposing Plaintiffs' motions for an extension of the discovery schedule. For the many reasons detailed in PowerSchool's oppositions, these requests were not justified. *See* Dkts. 93, 98. Some of those reasons included: (1) Plaintiffs' request to *double* the deposition limit; (2) Plaintiffs' failure to notice a timely 30(b)(6) deposition; and (3) as mentioned above, Plaintiffs' delay in seeking discovery from numerous third parties, including SPS. *See id.*

Plaintiffs also fault PowerSchool for not raising "its intention to seek leave to amend its answer at the recent December 11 hearing, despite having deposed Seattle Public Schools six days before." Dkt. 113 at 12. Plaintiffs leave out one crucial detail—the SPS deposition took place over the course of two days, and the second day occurred on December 18. *See* Adendorff Decl. ¶ 15.

Finally, Plaintiffs concede that this alleged gamesmanship is irrelevant to their opposition to PowerSchool's motion. They claim that even if PowerSchool agreed to their extension request, and this Court allowed fact discovery to stay open "for another several months," Plaintiffs still would have opposed PowerSchool's request to amend. Dkt. 113 at 11–12. The Court should thus disregard Plaintiffs' exaggerated and empty claims of bad faith.

## CONCLUSION

PowerSchool acted diligently and in good faith in seeking to add one affirmative defense to its Answer mere days after a critical third-party deposition. The parties have already engaged in ample discovery about the defense because Plaintiffs raised it in their Complaint. Moreover, there are six months left until the deadline for motions for summary judgment. Plaintiffs therefore face no prejudice from PowerSchool's request to make explicit in the Answer an issue that has been relevant and litigated all along. For all these reasons, the Court should grant PowerSchool's motion to amend its Answer to add a countervailing-interests affirmative defense.

|   |   |
|---|---|
| DATED: January 13, 2026 | Respectfully submitted, |
|   | KIRKLAND & ELLIS LLP |
|   | /s/ Olivia Adendorff |
|   | Olivia Adendorff, P.C. |

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Amelia Bailey (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Taylor Rothman (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
taylor.rothman@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Ethan Joel Levinton (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
ethan.levinton@kirkland.com
eugene.temchenko@kirkland.com

Cara Yi
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
cara.yi@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*