Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Taylor Rothman (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
taylor.rothman@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Ethan Joel Levinton (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
ethan.levinton@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY CHERKIN, et al<br><br>Plaintiffs,<br><br>v.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>Defendant. | CASE NO. 3:24-cv-02706-JD<br><br>**DEFENDANT POWERSCHOOL HOLDINGS, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS**<br><br>Judge: Hon. James Donato<br>Hearing Date: April 9, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11, 19th Floor |

DEFENDANT'S MOTION FOR SANCTIONS        CASE NO. 3:24-cv-02706-JD

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE THAT on April 9, 2026, at 11:00am PT, or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 11, 19th Floor, before the Honorable James Donato, Defendant PowerSchool Holdings, Inc. ("PowerSchool") will and hereby does move the Court for an order granting sanctions under Federal Rule of Civil Procedure 11(b) against Plaintiffs and Plaintiffs' counsel based on the false statements in the Complaint that Plaintiffs L.M.C. and M.M.C use PowerSchool products. In their depositions, these Plaintiffs unequivocally testified that they do not, in fact, use any PowerSchool products. Thus, Plaintiffs' counsel either chose to forego a pre-suit investigation to determine whether over half of the Student-Plaintiffs use the products at issue or did conduct such an investigation and made knowingly false representations to the Court. Either way, these actions merit Rule 11 sanctions.

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................................... 2

ARGUMENT............................................................................................................................ 7

    I.      Plaintiffs' counsel—either recklessly or intentionally—asserted false statements in the Complaint in violation of Rule 11(b)(3). ..................................... 8

    II.     Plaintiffs' misconduct—and their complete failure to meaningfully remedy that misconduct—warrants dismissal, monetary sanctions, and attorneys' fees.......................................................................................................... 11

CONCLUSION ...................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ali v. Mid–Atlantic Settlement Servs., Inc.*,
233 F.R.D. 32 (D.D.C. 2006)............................................................................................7

*Amaro v. Bee Sweet Citrus, Inc.*,
2022 WL 3908309 (E.D. Cal. Aug. 30, 2022)..................................................................7

*Babadjanian v. Deutsche Bank Nat'l Tr. Co.*,
2011 WL 13214300 (C.D. Cal. Mar. 29, 2011).......................................................4, 7, 11, 12

*Carroll Shelby Wheel Co., Inc. v. Carroll Shelby Tr.*,
2017 WL 3485760 (C.D. Cal. Feb. 21, 2017)...........................................................7, 13, 14

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) ........................................................................................7

*Galvan v. Walt Disney Parks and Resorts*,
2019 WL 8017806 (C.D. Cal. Dec. 20, 2019) ................................................10, 11, 12

*Gaskell v. Weir*,
10 F.3d 626 (9th Cir. 1993) ......................................................................................8, 14

*Hudson v. Moore Bus. Forms, Inc.*,
836 F.2d 1156 (9th Cir. 1987) ........................................................................................7

*Lake v. Gates*,
130 F.4th 1064 (9th Cir. 2025) .......................................................................................7

*Mabson v. Ass'n of Apartment Owners of Maui Kamaole*,
2007 WL 2873489 (D. Hi. Sept. 25, 2007)...................................................................10

*Manipoun v. Dibella*,
2020 WL 4596763 (S.D. Cal. Aug. 11, 2020) ................................................................7

*Patterson v. Apple Computer, Inc.*,
2005 WL 2277005 (N.D. Cal. Sept. 19, 2005) ........................................................10, 14

*Richter v. Oracle Am., Inc.*,
2023 WL 8586690 (N.D. Cal. Dec. 8, 2023)...................................................................3

*Truesdell v. S. Cal. Permanente Med. Grp.*,
209 F.R.D. 169 (C.D. Cal. 2002)...................................................................................13

*Truesdell v. S. Cal. Permanente Med. Grp.*,
293 F.3d 1146 (9th Cir. 2002) ........................................................................................7

*Zuniga v. United Can Co.*,
812 F.2d 443 (9th Cir. 1987) .................................................................................................12

**Rules**

Fed. R. Civ. P. 11 ................................................................................................. *passim*

Plaintiffs' Complaint falsely leveled very serious accusations about schoolchildren's privacy and PowerSchool's core business model, claiming that when schoolchildren use PowerSchool products, the company misuses and sells the children's data. There are countless falsehoods underlying these allegations, but this motion focuses on a fundamental one: Two of the three students who are named Plaintiffs in this case have **never even used** the PowerSchool products they allege harmed them. Plaintiffs and their counsel either knew or should have discovered this through a basic and cursory investigation before filing this lawsuit—i.e., **by asking Plaintiffs themselves.** Instead, they admit they accused PowerSchool of collecting their data just because those Plaintiffs' parent thought Plaintiffs might have used PowerSchool products. ECF 126 at 2. Unlike Plaintiffs, PowerSchool could not have confirmed the truth of these allegations without depositions, as many schools host their own data even while licensing PowerSchool products, and schools (not PowerSchool) decide whether to provide accounts to students for any product they license. Plaintiffs' failure to investigate warrants sanctions.

Specifically, Plaintiffs L.M.C. and M.M.C. are two of the three students that are named Plaintiffs—and the *only* California plaintiffs—seeking to represent "millions of U.S. K-12 students" for various causes of action under California law. ECF 116-3 at 12-14. The Complaint asserts— without qualification—that L.M.C. and M.M.C. use PowerSchool products, including Schoology, on their personal or school-issued devices, and that PowerSchool's alleged violation of their privacy caused them harm. *Id.* ¶¶ 373-76, 396-407. The harms contemplated in the Complaint include very specific examples that require Plaintiffs' direct use of PowerSchool products, such as (1) Plaintiffs' supposed exposure to "exploitative marketing practices" while using PowerSchool products, (2) "dangerous design techniques," and (3) the ability, while students are using Schoology, to access websites like YouTube where students "might be interested in learning about sex" or "how to obtain firearms." *Id.* ¶¶ 209, 210, 220, 398-99.

As will be set forth more fully at summary judgment, discovery has confirmed that Plaintiffs' far-fetched legal theory is unsupported for many reasons, including that PowerSchool does *not* sell schoolchildren's data. Discovery has also revealed that the factual premise underlying the California Plaintiffs' allegations is false. Under oath, L.M.C. and M.M.C., and their parent Plaintiff Concepción, all admitted that L.M.C. and M.M.C. **do not use** the PowerSchool product (Schoology) they claim to

have used in the Complaint, their verified interrogatory responses, and responses to requests for admission. Nor could these Plaintiffs identify any other PowerSchool products they do use.

Under Rule 11(b)(3), Plaintiffs' counsel had a duty to investigate Plaintiffs' claims before filing suit, and whether these Plaintiffs use PowerSchool's products was the most basic question to answer. Plaintiffs' counsel's failure to meet its investigatory obligations is inexcusable. Moreover, Plaintiffs took no action to remedy these errors until PowerSchool sent them a copy of this Motion. Even then, they first resisted making any changes only to later ask PowerSchool to hold off on seeking sanctions until February 27, 2026, so Plaintiffs could discuss other remedies they could offer for the harm PowerSchool suffered in defending against the untrue allegations. Instead of further conferring, Plaintiffs filed a motion to amend that previews their response to this Motion. *See* ECF 126. Plaintiffs' proposed amendment only withdraws false allegations and claims they otherwise abandoned, *see* ECF 116 (no motion to certify claims for wiretapping or hacking); they still try to pursue all their other claims, even though all such claims were based on their false allegations that they used PowerSchool products. The appropriate sanction here is dismissal of their claims with prejudice, monetary sanctions against these Plaintiffs and their counsel, and an award of PowerSchool's attorneys' fees and associated costs for being forced to litigate these baseless claims.[1]

## **BACKGROUND**

PowerSchool is an education technology company that provides administrative and pedagogical assistance to its customers—schools and school districts—by facilitating the collection and management of student records. ECF 1, Compl. ¶¶ 33, 36, 40. Schools decide which PowerSchool products to use and which products are available to students and parents. *Id*. ¶¶ 44, 45.

In May 2024, Plaintiffs (one Seattle-based parent and her child, and one California-based parent and his two children) sued PowerSchool, lodging consequential accusations against the company for allegedly collecting their personal and sensitive information as they utilize PowerSchool

---

[1] PowerSchool complied with Rule 11's safe-harbor provision and served this motion on Plaintiffs' counsel over 21 days before filing the motion with the Court. *See* Fed. R. Civ. Pro. 11(c)(1)(2); Adendorff Decl. ¶ 4. Although PowerSchool has made various stylistic changes to the Motion since originally serving it on Plaintiffs – including at Plaintiffs' request – none of those changes altered the bases of the motion or the relief sought. Thus, PowerSchool did not need to wait an additional 21 days before filing this Motion. *See Richter v. Oracle Am., Inc.*, 2023 WL 8586690, at *6 (N.D. Cal. Dec. 8, 2023) (collecting authorities).

products and then selling that information to third parties. *Id.* ¶¶ 379-87. The Complaint accuses PowerSchool of violating "federal and state civil and criminal laws," *id.* ¶ 539, by "keeping parents in the dark," *id.* ¶ 5, and creating an environment of "pervasive surveillance and commercial exploitation." *Id.* ¶ 7. Plaintiffs claim that "PowerSchool's data practices harmed Plaintiffs in a number of material if often opaque ways," including by "subjecting them to exploitative marketing practices," which allegedly occurred during and after students' use of PowerSchool products, "exposing them to deceptive design techniques" when they used PowerSchool products, and "invading their privacy." *Id.* ¶¶ 397-407. Plaintiffs reiterated these supposed harms in their respective Responses and Objections to Defendant's First Set of Interrogatories. *See* Ex. A, Pl. Concepción's R&Os to Interrog. No. 2; Ex. B, Pl. L.M.C.'s R&Os to Interrog. No. 2; Ex. C, Pl. M.M.C.'s R&Os to Interrog. No. 2.

Plaintiffs claim that they use PowerSchool products. Relevant here, the Complaint alleges that Concepción's children, L.M.C. and M.M.C., use PowerSchool products as "part of [their] public schooling." ECF 1 at ¶¶ 373-74. The Complaint also details that L.M.C. accesses PowerSchool products from her personal and school-issued devices, *id.* ¶ 373, and that M.M.C. accesses the products he uses from his school-issued device. *Id.* ¶ 374.

The Complaint also asserts numerous generalized statements about all of the Plaintiffs. In fact, the Complaint states in bold letters: "**Plaintiffs use PowerSchool products, which collect and use Plaintiffs' data.**" ECF 1 at 60. But tellingly, as support for these broad statements, the Complaint mentions only Plaintiff Cherkin or her daughter, S.G. For example, the Complaint states that all Plaintiffs "use PowerSchool platforms, including Schoology…, which collect Plaintiffs' data." *Id.* ¶ 376. But when documenting the specific harms Schoology allegedly causes, the Complaint references only S.G.'s use of the product. *See id.* at ¶¶ 201-11. Another section of the Complaint describes certain information that Plaintiff S.G. input "into her PowerSchool-owned product dashboards," then asserts that "[o]n information and belief, PowerSchool has collected substantively similar information" about the remaining Plaintiffs. *Id.* ¶¶ 380-81.

To probe these claims, PowerSchool inquired through written discovery about the specific products each Plaintiff uses. In response to PowerSchool's interrogatories, Concepción stated that L.M.C. and M.M.C. use Schoology. *See* Ex. A. L.M.C. and M.M.C. also stated, in their own

interrogatory responses, that they both use the PowerSchool product Schoology "to get information from the school and to turn in assignments." Ex. B; Ex. C. Their responses mention no other product. Concepción personally verified these responses for himself and his children. Adendorff Decl. ¶ 8, Ex. D. But these verified interrogatory responses—like the statements in the Complaint about these Plaintiffs' use of PowerSchool products—are false. L.M.C. and M.M.C.'s school district has **never** licensed Schoology (neither as a test subscription or otherwise). Ex. E. Thus, Plaintiffs Concepción, L.M.C., and M.M.C.'s document production did not reference Schoology.

The truth—*i.e.*, that L.M.C. and M.M.C do not use PowerSchool products, including Schoology—was first confirmed during Concepción's (the parent's) deposition. When shown various PowerSchool log-in pages and home pages, Concepción testified that he did not recognize any webpage associated with PowerSchool. *See* Ex. F, Concepción 94:3-95:23 ("I don't recall that website, that [PowerSchool] sign-in page"), 180:1-14 (testifying that he does not believe he has ever visited the PowerSchool web page before). By contrast, when shown sample dashboards of PowerSchool *and* numerous other EdTech providers' products, Concepción identified Google Classroom and Clever— neither of which are PowerSchool products—as the apps his children use. *See id* at 99:1-23.

Based on this deposition testimony, PowerSchool then served requests for admission on L.M.C. and M.M.C., asking them to admit, in separate requests, that they "have not used Schoology," and as a result of not using any other PowerSchool product "cannot identify any marketing" they received from PowerSchool and have never felt "watched by any PowerSchool product." Ex. G. To PowerSchool's surprise, given the clear and mounting evidence showing L.M.C. and M.M.C. did ***not*** use Schoology or any other PowerSchool products, L.M.C. and M.M.C. ***denied all of these requests***. *See* Ex. J. ("Request No. 5: Admit that You have not used Schoology. Response: DENIED."); *see also* ECF 127 (motion seeking discovery sanctions under Fed. R. Civ. P. 26, 37)

PowerSchool then attempted to depose L.M.C. and M.M.C to untangle the conflicting narrative. But Plaintiffs' counsel resisted efforts to schedule the depositions, ultimately filing a motion for a protective order, which this Court denied. ECF 96. When the depositions finally occurred in late November 2025, both L.M.C. and M.M.C. provided testimony confirming that their Complaint, verified interrogatory responses, and denials of the requests for admission were false: They never used

Schoology or any other PowerSchool products. *See* Ex. H, L.M.C. 18:10-17 ("Q. And what do you know about Schoology? A. I don't really know that much about Schoology. Q. Do you recall ever going on an app or website that had Schoology written on it? A. No, I don't remember."); Ex. I, M.M.C. 22:2-9 ("Q. [H]ave you ever heard the word Schoology or an app called Schoology? A. I've heard of it, but I don't really know about it. Q. Okay. Do you think you've ever used Schoology? A. I don't think so, no."), 34:17-35:25 (testifying that his only memory of an adult logging onto a PowerSchool page was his teacher two years prior and his parent the week before the deposition). Instead, they testified to using PowerSchool's competitors' products. *See* Ex. H, L.M.C. Tr. 9:20-10:4, 11:24-13:14; Ex. I, M.M.C. Tr. 10:4-11:11. Following this testimony, Plaintiffs have not supplemented or otherwise corrected their responses to the interrogatories or requests for admission. Rather, Plaintiffs continue to plow ahead and make additional misleading statements about these Plaintiffs' use of PowerSchool products.

In their motion for class certification filed less than two weeks ago—and after PowerSchool served this Rule 11 motion—the Concepción Plaintiffs claim that they are appropriate class representatives for proposed classes including millions of students, including students who use Schoology. ECF 116-3 at 14-16. Plaintiffs implicitly concede in the motion that L.M.C. and M.M.C. do not use Schoology by listing the products their school district licenses—a list that does not include Schoology. *Id.* at 7. Also absent from their motion is any argument of harm or injury based on the Plaintiffs' direct use of PowerSchool products. *Id.* Plaintiffs no longer state that PowerSchool builds dossiers of students, deceptively designs products, conducts targeted advertising, tracks students using cookies, exposes children to dangerous content, intercepts communications, or eavesdrops on communications. In other words, Plaintiffs no longer allege any of the reasons the Court allowed their claims to proceed to discovery. *See* ECF 65 at 3-6; 8, 9-10. Plaintiffs now appear to base their harm arguments off the mere fact that school districts use PowerSchool administrative (non-student facing) products to collect and process the schools' data, including data that schools use for predictive analytics. *Id.* at 16. L.M.C. and M.M.C.'s school district licenses only one of the nine products listed in Plaintiffs' class definitions (SIS), and these Plaintiffs could have never used this product, as it is used exclusively by school administrators for records management. Under this new theory, Plaintiffs

are no longer pursuing claims under CIPA or CDAFA. They are only pursuing class certification based on invasion of privacy and unjust enrichment. ECF 116-3 at 1.

According to Plaintiffs, L.M.C and M.M.C. are adequate class representatives because their "school district uses" PowerSchool products that are either (1) administrative and not student-facing or (2) a product (Naviance) that L.M.C. and M.M.C. have both testified that they do not use. *See id.* at 7, 17; Ex. I, M.M.C. 34:10-12; Ex. H, L.M.C. Tr. 49:16-22. Indeed, the document Plaintiffs cite to support the statement that L.M.C. and M.M.C.'s school district uses Naviance notes that just one school in the district—a high school—directly licenses this product from PowerSchool. *See* ECF 116-3 at 7 n.45 (citing Aragon Decl. Ex. 29, PWRSCHL_00343564). This is obviously not the school that L.M.C. and M.M.C. attend or could attend, as these Plaintiffs are pre-teens and not in high school. To make matters worse, the only other two exhibits Plaintiffs cite to support their argument that their school district allegedly uses Naviance does not even mention L.M.C. and M.M.C's school district. *See* ECF 116-4 (Aragon Decl.) at Exs. 27, 30. Other documents produced to Plaintiffs clearly show that it is this singular high school, and not the entire school district, that licenses and uses this product. *See id*. at Ex. 29. Even in their newly filed motion to amend, Plaintiffs speculate (without any basis) that their district may have "considered, used, or tested Schoology."  ECF 126 at 2 n.3. Thus, Plaintiffs' counsel is still making false statements about what products L.M.C. and M.M.C. use.

Further, attached to their class-certification motion is a declaration from Concepción, explaining why he is an adequate class representative. ECF 116-3 at Ex. D. In that sworn declaration, Concepción states that he "reviewed the Complaint filed on [his] behalf to ensure the accuracy of the facts as they related to [him] and [his] minor children." *Id.* at ¶ 12. He also stated that he reviewed and helped prepare the discovery responses. *Id.* at ¶ 13. But, as noted above, the Complaint and discovery responses contained false statements.

On January 23, 2026, PowerSchool emailed Plaintiffs a copy of this Motion, asking them to accept service by email. When Plaintiffs did not respond, PowerSchool completed service per Fed. R. Civ. P. 5 by January 29, 2026. The parties conferred concerning this Motion on February 13 and 19, 2026, when Plaintiffs suggested that they might amend, claiming that such an amendment would moot PowerSchool's motion. Although this is the position they have now taken, *see* ECF 126, Plaintiffs did

not correct the false allegations within 21 days of service, which expired on February 19, 2026. Instead, Plaintiffs repeatedly asked PowerSchool to continue to confer, requesting, on February 25, 2026, for PowerSchool to hold off from filing the Motion "to allow [them] to see if there are additional remedies [they] can make." Ex. M. Plaintiffs offered no such remedies and instead filed a motion to amend with a section arguing that they now qualified for Rule 11's safe harbor. *See* ECF 126.

**ARGUMENT**

What PowerSchool had to spend nearly two years and millions of dollars to uncover—that two of three named Student-Plaintiffs in this case do not actually use PowerSchool products—Plaintiffs and their counsel should have known all along. A simple inquiry into the products the Concepción children use for their education would have made clear that they did not use the PowerSchool products referenced or specifically named in their Complaint and discovery responses. To make matters worse, since the truth came out during the depositions of these Plaintiffs, Plaintiffs' counsel has done nothing to meaningfully remedy the situation. Such irresponsible litigation tactics merit Rule 11 sanctions.

Federal Rule of Civil Procedure 11(b)(3) provides that, by signing and filing a document with the court, a party's attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the factual contentions have evidentiary support." That means that "[t]he attorney has a duty prior to filing a complaint . . . to conduct a reasonable factual investigation[.]" *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Counsel must "do more than simply rest upon a client's evasive and incomplete statements of fact. A reasonable inquiry would provide counsel with either supporting evidence or a reason to decline to repeat a client's assertion." *Ali v. Mid-Atl. Settlement Servs*, 233 F.R.D. 32, 39 (D.D.C. 2006); *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153-54 (9th Cir. 2002).

To impose Rule 11 sanctions, "the Court must first determine whether any provision of Rule 11(b) has been violated." *Manipoun v. Dibella*, 2020 WL 4596763, at *2 (S.D. Cal. Aug. 11, 2020). For a Rule 11(b)(3) violation based on a frivolous filing, a court "must determine that a pleading is '*both* baseless *and* made without a reasonable and competent inquiry.'" *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025) (emphasis in original). Once a court determines there has been a Rule 11 violation, it has broad discretion in fashioning an appropriate sanction. *See Hudson v. Moore Bus.*

*Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987). For violations based on frivolous filings, sanctions are appropriate even when only a portion of a pleading is baseless. *See Amaro v. Bee Sweet Citrus, Inc.*, 2022 WL 3908309, at *2 (E.D. Cal. Aug. 30, 2022). Further, "[s]anctions can be awarded for frivolous filings even if they are not filed in subjective bad faith." *Babadjanian v. Deutsche Bank Nat'l Tr. Co.*, 2011 WL 13214300, at *16 (C.D. Cal. Mar. 29, 2011).

A "court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The sanctions can include dismissing baseless claims with prejudice, monetary penalties, and awarding attorneys' fees and costs incurred for litigating frivolous claims. *Carroll Shelby Wheel Co., Inc. v. Carroll Shelby Tr.*, 2017 WL 3485760, at *10 (C.D. Cal. Feb. 21, 2017). An award for attorneys' fees is especially appropriate when the original complaint is the basis for sanctions. *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993).

Here, Plaintiffs' counsel violated Rule 11 by including numerous false factual contentions in the Complaint. Plaintiffs could have easily determined which PowerSchool products they use, and Plaintiffs' counsel could have easily verified this information. Their collective failure to do so has forced PowerSchool to litigate baseless and frivolous claims for nearly two years—even after Concepción, L.M.C, and M.M.C admitted the truth under oath months ago in their depositions. PowerSchool therefore requests that the Court dismiss Concepción's, L.M.C's, and M.M.C's claims with prejudice, impose monetary sanctions on these Plaintiffs and their counsel, and award PowerSchool its attorneys' fees and associated costs for defending against these claims.

## I.   Plaintiffs' counsel—either recklessly or intentionally—asserted false statements in the Complaint in violation of Rule 11(b)(3).

Rule 11(b)(3) required Plaintiffs' counsel to certify, after a reasonable inquiry, that the factual contentions in the Complaint have evidentiary support. But the Complaint in this case contains false statements about L.M.C. and M.M.C.'s use of PowerSchool products. Thus, Plaintiffs' counsel violated Rule 11(b)(3) by failing to conduct a pre-suit inquiry about these statements, or by doing so then disregarding the truth.

Plaintiffs' counsel endorsed at least three different false statements in the Complaint: (1) L.M.C. accessed PowerSchool products from "both her school-issued and personally owned

devices," *Id.* ¶ 15; (2) M.M.C. accessed these products "from his school-issued device," *Id.* ¶ 16, and (3) all of the Plaintiffs use Schoology. *Id.* ¶ 376. Plaintiffs' counsel also endorsed the numerous allegations relating to the harms these Plaintiffs allegedly experienced, or could experience, based on their use of PowerSchool products. Those harms range from accessing inappropriate resources about sex to exploitative marketing. *E.g.*, *id.* ¶ 209, 398. But Plaintiffs, because they do not use PowerSchool products, ***could not have experienced any of these particular harms***.

Plaintiffs and their counsel doubled down on this false narrative throughout written discovery. In fact, the verified interrogatory responses did not just echo the Complaint—they went even further with additional false statements. For example, in response to an interrogatory about which PowerSchool products these Plaintiffs use, L.M.C. responded that she "uses Schoology to get information from the school and to turn in assignments. L.M.C. has used Schoology since 2021." Ex. B, Pl. L.M.C.'s Resp. & Obj. to Def.'s Interrog. No. 1. In response to the same question, M.M.C. stated: "M.M.C. uses Schoology to get information from the school and to turn in assignments. M.M.C. has used Schoology since 2020." Ex. C, Pl. M.M.C.'s Resp. & Obj. to Def.'s Interrog. No. 1.

The first red flag about the veracity of these statements arose when PowerSchool's internal investigation and subsequent document productions revealed that L.M.C and M.M.C's school district has never licensed Schoology. Adendorff Decl. ¶ 9. The second came when Plaintiffs Concepción, L.M.C., and M.M.C.'s document productions contained not a single reference to Schoology. *Id.* ¶ 10.

PowerSchool then deposed Concepción and asked about his and his children's use of various PowerSchool products. Concepción could not recognize Schoology's dashboard, though he recognized the dashboards of other companies' products. Ex. F, Concepción 99:5-101:22, 119:8-120:19, 167:1-168:5. Once again attempting to get the truth, PowerSchool then served L.M.C. and M.M.C. with a request to admit that they did not use Schoology. Ex. G. Once again, Plaintiffs' counsel made false statements, denying the request. Ex. J.

Only after fighting for months to depose L.M.C. and M.M.C.—over Plaintiffs' counsels' objections and motion for a protective order—did PowerSchool obtain testimony that confirmed that neither L.M.C. nor M.M.C. use PowerSchool products, including Schoology. *See, e.g.*, Ex. H, L.M.C. 18:10-17; Ex. I, M.M.C. 22:7-9. In other words, when required to provide testimony under oath—and

without the benefit of counsel's carefully crafted language in a complaint or discovery response— L.M.C. and M.M.C. disclaimed any knowledge of ever using any PowerSchool product and implicitly conceded that the statements to the contrary in the Complaint and their discovery responses were false.

Both the Complaint itself and the series of events that unfolded during discovery demonstrate that Plaintiffs' counsel filed baseless and frivolous factual contentions about these Plaintiffs. A reasonable inquiry here should have included verifying the threshold allegation that the named Plaintiffs, who are attempting to represent millions of others, use the products that are the basis of the entire Complaint. Tellingly, Plaintiffs' counsel did some of this pre-suit inquiry for Plaintiff S.G., including screenshots of her Schoology account, as well as her other PowerSchool log-in pages, in the Complaint. *See, e.g.*, Compl. ¶¶ 201, 203-05, 209-11. Nothing of the sort is included for L.M.C. and M.M.C., and it is now clear why. Further, PowerSchool uncovered the truth by asking questions of the Plaintiffs themselves at deposition—questions Plaintiffs' counsel had a duty under Rule 11(b)(3) to ask and verify before filing a complaint. It is not as if the truth was hiding in documents Plaintiffs' counsel did not have or needed discovery to obtain.

Numerous courts have held that a plaintiff's counsel violates Rule 11 when, as here, discovery reveals that factual assertions in the complaint were false but could have been verified before the lawsuit began. For instance, in *Patterson v. Apple Computer, Inc.*, 2005 WL 2277005 (N.D. Cal. Sept. 19, 2005), the court granted the defendants' motion for Rule 11 sanctions because the plaintiff asserted claims in the complaint that lacked any factual basis. The plaintiff brought several employment-related claims against a particular defendant and continued to assert those claims throughout the litigation even though her own deposition testimony, and the testimony of several others, demonstrated that that defendant was not involved in any of her employment decisions. *Id.* at *36. *See also Galvan v. Walt Disney Parks and Resorts*, 2019 WL 8017806 (C.D. Cal. Dec. 20, 2019); *Mabson v. Ass'n of Apartment Owners of Maui Kamaole*, 2007 WL 2873489, at *4 (D. Hi. Sept. 25, 2007).

Plaintiffs' counsel have no meaningful way to distinguish or otherwise excuse the false statements they certified in the Complaint. Like the plaintiff in *Patterson*, whose deposition testimony about one of the defendants undermined the factual basis for her claims against that defendant, Concepción's, L.M.C.'s, and M.M.C's deposition testimony confirmed that the Complaint contained

baseless factual assertions. But the assertions here are even worse because they are false statements about these Plaintiffs' own behavior and actions. This Court should therefore find that Plaintiffs' counsel violated Rule 11(b)(3) by filing a complaint with blatantly false statements about these Plaintiffs' use of PowerSchool products.

## II.    Plaintiffs' misconduct—and their complete failure to meaningfully remedy that misconduct—warrants dismissal, monetary sanctions, and attorneys' fees.

Given the seriousness of the allegations here—that PowerSchool has willfully disregarded schoolchildren's privacy for profit in violation of civil and criminal laws—and that Plaintiffs' counsel should have known whether the named Plaintiffs even used the PowerSchool products at issue in the Complaint before filing suit, the Court should dismiss Concepción's, L.M.C.'s, and M.M.C's claims with prejudice. The Court should also impose monetary sanctions on these Plaintiffs and their counsel and award attorneys' fees and costs for PowerSchool's efforts to defend against these baseless claims.

First, the Court should dismiss Concepción's, L.M.C's, and M.M.C's claims with prejudice because several courts within the Ninth Circuit have imposed a similar sanction when, as here, discovery reveals that factual allegations in the complaint were false yet plaintiffs' counsel continued to pursue the claims anyway. For example, in *Babadjanian v. Deutsche Bank National Trust Company*, the district court imposed Rule 11 sanctions, struck the plaintiffs' claim, and awarded fees because the complaint falsely claimed that the plaintiffs did not know the identity of their loan servicer. 2011 WL 13214300, at *16-17 (C.D. Cal. Mar. 29, 2011). Discovery revealed that the plaintiffs had communicated with their loan servicer during the relevant time period and even leading up to the lawsuit. *Id.* Because the allegations at issue concerned factual matters that the plaintiffs' counsel could have, and should have, investigated before filing suit, the court found that Rule 11 sanctions were appropriate. *Id.* The court rejected the attorney's arguments that he believed the allegations were factually accurate at the time he filed the complaint, and that it was important the defendants be held accountable for their alleged fraudulent scheme. *Id.* The court pointed out that even if the attorney "believed that the allegations were factually correct," subjective good faith does not "preclude the imposition of Rule 11 sanctions in an appropriate case." *Id.* The court decided to strike the plaintiffs' claim "[b]ecause the [false] allegations in question concern factual matters" that "are key to plaintiffs'

… claim." *Id.* at *17. Similarly, in *Galvan v. Walt Disney Parks and Resorts*, the district court imposed Rule 11 sanctions when the plaintiffs asserted in their complaint that they had cognitive impairments but then disavowed any such impairments in their depositions. 2019 WL 8017806, at *2 (C.D. Cal. Dec. 20, 2019). The court held that even if the plaintiffs' counsel did "not deliberately intend to mislead the Court," there was "no evidence of reasonable inquiry on his part into Plaintiffs' purported cognitive disabilities before filing the complaint in this action." *Id.* The court noted that because it had just ruled in favor of the defendant's motion for summary judgment, it did not need to sanction the plaintiffs by dismissing their claims. *Id.*

Here, like in *Babadjanian* and *Galvan*, Plaintiffs made false statements in the Complaint about a threshold issue undergirding the entire case—whether the Plaintiffs use the products that allegedly harmed them and millions of others. But unlike these other cases, Plaintiffs' counsel here went even further, reiterating and expanding on the false statements in the discovery responses.

It does not matter if Plaintiffs' counsel initially subjectively believed that Concepción, L.M.C., and M.M.C used PowerSchool products. *See* ECF 126. Rule 11 requires courts to assess the appropriateness of sanctions for baseless claims "even though the paper was not filed in subjective bad faith." *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir. 1987). Plus, whatever they believed, this was a threshold point that Plaintiffs' counsel could have easily verified. Moreover, even if Plaintiffs' counsel believed the truth of the allegations concerning Concepción, L.M.C., and M.M.C at the time they filed the Complaint, they learned those allegations were false during discovery.

Nor does it matter that Plaintiffs' new theory for L.M.C. and M.M.C. in the class-certification motion is not based on their use of Schoology but instead on their schools' use of administrative products that students cannot access or products these Plaintiffs never used. *See* ECF 116-3 at 7. The parties have been litigating this case for the past two years, including a motion to dismiss and voluminous discovery, based on the Complaint. As explained above, that Complaint falsely asserts that L.M.C. and M.M.C. use Schoology and other PowerSchool products from their devices, and that these students were harmed by this direct use. In fact, the Court denied PowerSchool's motion to dismiss, in part, because it held that Plaintiffs sufficiently pled an invasion of privacy claim based on the fact that "students are themselves producing the relevant information by using a pedagogical tool

for their public education." ECF 65 at 5. This is the case PowerSchool has defended against for years even though these Plaintiffs never directly used PowerSchool products and thus could have never "themselves produc[ed]" information "by using a pedagogical tool." *Id.*

Plaintiffs cannot now wave away the time and expense PowerSchool spent to litigate the false statements in the Complaint by (over a week after the Rule 11 safe harbor deadline has passed) withdrawing a handful of allegations while maintaining their claims. *See* ECF 126. The damage has already been done and *all* of their claims are premised on the false allegations that they used or access PowerSchool products. *E.g.*, ECF 1 ¶¶ 449, 452, 460, 472-74, 492, 524-26, 540, 542, 553, 558.

Finally, Plaintiffs' counsel continues to assert misleading statements about these Plaintiffs' product use. Their class-certification motion lists only three PowerSchool products that L.M.C. and M.M.C.'s school "uses:" Naviance, Unified Insights, and SIS. ECF 116-3 at 7. One of these products—Naviance—is a product that a high school within their district, not the school district or their school, uses. *See Id.* at 7 n.45. Another—Unified Insights—is a product their school district only licensed for one year on a trial period that ended years ago, and there is no data on L.M.C. or M.M.C. for that product. *See* Adendorff Decl. ¶¶ 18-20. Thus, for two of the three listed products, there is no connection to L.M.C. or M.M.C.

All in all, the Court should dismiss these Plaintiffs' claims with prejudice because (1) the false statements go to the heart of Plaintiffs' claims in the Complaint; (2) Plaintiffs' counsel should have verified these statements before filing the Complaint, and either chose not to, or did so and then lied to the Court; and (3) Plaintiffs' counsel has continued to litigate these claims even after discovery revealed the truth. *See Carroll Shelby Wheel Co., Inc. v. Carroll Shelby Tr.*, 2017 WL 3485760, at *9 (C.D. Cal. Feb. 21, 2017) (striking claims under Rule 11 because they "did not 'have evidentiary support,'" which "would have been apparent" from a reasonable inquiry by Plaintiff and its counsel).

Second, the Court should impose a monetary sanction on Concepción and his counsel. Rule 11 explicitly provides for sanctions against an attorney "or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1); *see also Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 174–75 (C.D. Cal. 2002) ("Where such a violation is found, Rule 11 authorizes sanctions against persons—attorneys, law firms, or parties—responsible.").

While Plaintiffs' counsel violated the rule requiring a pre-suit inquiry, Concepción is also to blame. The Court need look no further than his and his children's interrogatory responses, which Concepción verified, for confirmation. In those responses, Concepción stated that his children use Schoology on their personal and school-issued devices, even though his testimony and his children's testimony made clear that they did not. Just recently, in a declaration attached to Plaintiffs' motion for class certification, Concepción stated that he had "reviewed the Complaint filed on [his] behalf to ensure the accuracy of the facts as they relate to [him] and [his] minor children." ECF 116-3, Ex. D at ¶ 12. He also stated that he reviewed and helped prepare the discovery responses. *Id.* at ¶ 13. But the Complaint and discovery responses contained false statements about L.M.C. and M.M.C.'s use of PowerSchool products—namely, Schoology. So Concepción—like his counsel—has made multiple misrepresentations to the Court. Plaintiffs and Plaintiffs' counsel together started this case based on false statements and have continued to reiterate those false statements throughout discovery and even up until their latest filing in this case.

A court in this district imposed a monetary sanction on a plaintiff and her counsel for comparable conduct. In *Patterson*, discussed in detail above, the court awarded "defendants $5,000 in sanctions against plaintiff and her counsel" for filing a complaint with factually baseless allegations and continuing to litigate the case based on those false allegations, including by submitting false interrogatory responses. *Patterson*, 2005 WL at *37. Given the unsubstantiated allegations in the Complaint here, and Plaintiffs' false discovery responses reiterating those allegations, PowerSchool requests that the Court impose a similar monetary sanction on Plaintiffs and their counsel.

Finally, the Court should also award attorneys' fees for PowerSchool's counsel's efforts in defending against the allegations specific to these Plaintiffs. If the Court grants PowerSchools' request to award attorneys' fees, PowerSchool will file additional briefing addressing the amount and reasonableness of the fees requested. If "the original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions." *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993). This is especially true when the truth "could have been determined with a straightforward investigation prior to the filing of the Complaint." *Carroll Shelby Wheel Co., Inc. v. Carroll Shelby Tr.*, 2017 WL 3485760, at *10 (C.D.

Cal. Feb. 21, 2017). In this case, Plaintiffs' counsel asserted unsupported claims—that L.M.C. and M.M.C use PowerSchool products, including Schoology—in the original (and only) Complaint. *See* Compl. ¶¶ 373-74, 376. Plaintiffs' counsel had a duty to verify these claims under Rule 11, and apparently did so for Plaintiff S.G., including screenshots in the Complaint that showed her Schoology log-in and dashboard. *Id.* ¶ 204. Plaintiffs' counsel neglected this duty for L.M.C. and M.M.C. yet baldly asserted that they too use PowerSchool products, including Schoology. *Id.* ¶ 376.

PowerSchool has spent significant resources litigating the Concepcións' specific claims. Because this is a proposed class action, PowerSchool had to litigate not just the merits of Plaintiffs' claims, but also whether these Plaintiffs are adequate class representatives. Accordingly, PowerSchool served Concepción, L.M.C., and M.M.C with nearly 200 written discovery requests. Adendorff Decl. ¶ 16. PowerSchool deposed Concepción in August 2025 and then fought with Plaintiffs' counsel for months to take the depositions of L.M.C. and M.M.C. Plaintiffs' counsel moved for a protective order to prevent those depositions from happening, which PowerSchool had to respond to, and the Court ultimately denied. ECF 96. PowerSchool then took the depositions of L.M.C. and M.M.C. in November 2025—many months after initially asking for those depositions. Adendorff Decl. ¶¶ 13-14.

To make matters worse, PowerSchool had to expend extra effort and resources in an attempt to clear up the inaccurate record Plaintiffs and their counsel created by reiterating then expanding on the false statements in discovery responses. As noted above, Concepción's and his children's deposition testimony confirms that they did not use Schoology, PowerSchool's document production showed that L.M.C. and M.M.C's school never licensed Schoology, and these Plaintiffs' own documents showed they did not use PowerSchool products. Even still, Plaintiffs, with their counsels' signature, refused to admit that they did not use Schoology in response to a request for admission. The false statements have caused unnecessary and expensive discovery not just because they were false, but because Plaintiffs and their counsel continued to perpetuate the falsehoods and obscure the truth.

## CONCLUSION

For these reasons, PowerSchool respectfully asks the Court to dismiss Concepción's, L.M.C.'s, and M.M.C.'s claims with prejudice, impose monetary sanctions, and award PowerSchool the reasonable attorneys' fees and other expenses it incurred defending against these allegations.

DATED: February 27, 2026

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Olivia Adendorff*

Olivia Adendorff, P.C.

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Amelia Bailey (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Taylor Rothman (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
taylor.rothman@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Ethan Joel Levinton (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
ethan.levinton@kirkland.com
eugene.temchenko@kirkland.com

Cara Yi
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
cara.yi@kirkland.com

*Attorneys for Defendant PowerSchool
Holdings, Inc.*