Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMILY CHERKIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>Defendant. | Case No.: 3:24-cv-02706-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION FOR CLASS CERTIFICATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: The Honorable James Donato<br><br><u>Hearing</u><br>Date: April 23, 3036<br>Time: 11:00 a.m.<br>Courtroom: 11, 19th Floor |

**TO THE COURT, DEFENDANT, AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 23, 2026, at 11:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 11, 19th Floor of the Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs move the Court for an Order under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) that grants the following relief:

Certifies a **Nationwide Injunctive Relief Class** under Rule 23(b)(2) for all causes of action seeking injunctive relief in Plaintiffs' Complaint ("Complaint") defined as:

> All persons in the United States who, from October 29, 2020, to the present, attended a K-12 school or school district that used any of the following PowerSchool products:[1]
>
> 1) PowerSchool Student Information Solutions ("**PowerSchool SIS**")
> 2) Schoology Learning
> 3) Performance Matters
> 4) Naviance
> 5) MTSS
> 6) Behavior Support
> 7) Attendance Intervention
> 8) Data, Analytics and Insights f/k/a Unified Insights
> 9) Connected Intelligence

Certifies two nationwide classes for damages under Rule 23(b)(3), **the Student Data Warehouse Class and the Student Profiling and Prediction Class,** for all causes of action in the Complaint seeking monetary relief defined as:

> **<u>Student Data Warehouse Class</u>**
>
> All persons in the United States who, from October 29, 2020, to the present, attended a K-12 school or school district that used any of the following PowerSchool Products (collectively "**Student Data Warehouse Products**"), and PowerSchool hosts the collected data for at least one product:
>
> 1) PowerSchool SIS
> 2) Connected Intelligence

[1] Excluded from all classes defined herein are Defendant, its employees, co-conspirators, officers, directors, board members, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judge and court staff to whom this case is assigned.

<u>**Student Profiling and Prediction Class**</u>

All persons in the United States who, from October 29, 2020, to the present, attended a K-12 school or school district that used any of the following PowerSchool Products (collectively "**Student Profiling and Prediction Products**"), and PowerSchool hosts the collected data for at least one product:

1) Data, Analytics and Insights f/k/a Unified Insights
2) Performance Matters
3) Behavior Support
4) Attendance Intervention

In the alternative, if the Court finds that a nationwide Class is not certifiable, Plaintiffs ask the Court to certify: two state-only classes for California and Washington, which mirror the proposed nationwide Class, for Rule 23(b)(2) injunctive relief:

1) **California Injunctive Relief Class.** and
2) **Washington Injunctive Relief Class**;

and four Rule 23(b)(3) state-only classes for damages that mirror the nationwide 23(b)(3) Classes:

1) **California Data Warehouse Class**,
2) **California Student Profiling and Prediction Class**,
3) **Washington Data Warehouse Class**, and
4) **Washington Student Profiling and Prediction Class**.

The alternative state-only classes are defined as follows:

<u>**California Injunctive Relief Class**</u>

All persons in California who, from October 29, 2020, to the present who attended a K-12 school or school district that used any of the following PowerSchool products:

1) PowerSchool SIS
2) Schoology Learning
3) Performance Matters
4) Naviance
5) MTSS
6) Behavior Support
7) Attendance Intervention

8) Data, Analytics and Insights f/k/a Unified Insights

9) Connected Intelligence

**California Student Data Warehouse Class**

All persons in California who, from October 29, 2020, to the present, attended a K-12 school or school district that used any of the following PowerSchool Products (collectively "**California Student Data Warehouse Products**"), and PowerSchool hosts the collected data for at least one product:

1) PowerSchool SIS

2) Connected Intelligence

**California Student Profiling and Prediction Class**

All persons in California who, from October 29, 2020, to the present, attended a K-12 school or school district that used any of the following PowerSchool Products (collectively "**California Student Profiling and Prediction Products**"), and PowerSchool hosts the collected data for at least one product:

1) Data, Analytics and Insights f/k/a Unified Insights

2) Performance Matters

3) Behavior Support

4) Attendance Intervention

**Washington Injunctive Relief Class**

All persons in Washington who, from October 29, 2020, to the present, attended a K-12 school or school district that used any of the following PowerSchool products:

1) PowerSchool SIS

2) Schoology Learning

3) Performance Matters

4) Naviance

5) MTSS

6) Behavior Support

7) Attendance Intervention

8) Data, Analytics and Insights f/k/a Unified Insights

9) Connected Intelligence

**Washington Student Data Warehouse Class**

All persons in Washington who, from October 29, 2020, to the present, attended a K-12 school or school district that used any of the following

PowerSchool Products (collectively "**Washington Student Data Warehouse Products**"), and PowerSchool hosts the collected data for at least one product:

1) PowerSchool SIS
2) Connected Intelligence

**Washington Student Profiling and Prediction Class**

All persons in the Washington who, from October 29, 2020, to the present, attended a K-12 school or school district that used any of the following PowerSchool Products (collectively "**Washington Student Profiling and Prediction Products**"), and PowerSchool hosts the collected data for at least one product:

1) Data, Analytics and Insights f/k/a Unified Insights
2) Performance Matters
3) Behavior Support
4) Attendance Intervention

The Nationwide Injunctive Relief Class and alternative state-only injunctive relief classes seek injunctive relief under the California Constitution's guarantee of privacy and common law protections against invasion of privacy. *See* Judicial Council of Cal., Civil Jury Instr. No. 1800 (recognizing overlap between common law and constitutional rights to privacy and recognizing that state constitutional privacy provision is self-executing and serves as the basis for injunctive relief); *see also* Complaint ("Compl.") Causes of Action Counts I, VI. If the Court determines that application of California law is not appropriate for the Washington-only classes, Plaintiff S.G., by and through her mother, Emily Cherkin, seeks injunctive relief under Washington's constitutional rights to privacy. *See* Wash. Const. Art. I, § 7.

The Nationwide classes and alternative state-only classes seeking damages under Rule 23(b)(3) seek monetary relief, and all other available relief, under the California Constitution's guarantee of privacy and common law protections against invasion of privacy and unjust enrichment. *See* Judicial Council of Cal., Civil Jury Instr. No. 1800 (confirming availability of damages for privacy claims) and No. 375 (setting forth right to restitution on quasi contract/unjust enrichment claim); *see also* Compl. Causes of Action Counts I, VI, VII. If the Court determines that application of California law is not appropriate for the Washington-only classes, Plaintiff S.G., by and through her mother, Emily Cherkin, seeks damages, and all other available relief, under the Washington Privacy Act, common law right to privacy, and unjust enrichment. *See Reid v. Pierce Cnty.*, 961 P.2d 333, 342–43 (Wash. 1998) (recognizing right to damages for invasion of

privacy); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 254 P.3d 835, 844 (Wash. Ct. App. 2011) (quoting *Young v. Young*, 164 Wash.2d 477, 484-85, 191 P.3d 1258 (2008)) (describing relief available for unjust enrichment claim under Washington law).

**Nationwide Class Representative and Counsel**: Plaintiffs further request that the Court appoint (1) Plaintiffs S.G., by and through her mother Emily Cherkin, and M.M.C. and L.M.C., by and through their father, David Concepcion, as the Class Representatives for the nationwide damages class; and (2) Plaintiffs S.G., by and through her mother Emily Cherkin, and M.M.C. and L.M.C., by and through their father, David Concepcion, as the Class Representatives for the nationwide injunctive relief class; and (3) Hagens Berman Sobol Shapiro LLP and EdTech Law Center PLLC as Class Counsel for each class.

**State-Only Class Representative and Counsel**: In the alternative, if the court determines that a nationwide class in not appropriate, Plaintiffs further request that the Court appoint (1) Plaintiffs M.M.C., and L.M.C., by and through their father, David Concepcion, as the Class Representatives for each California-only class, (2) Plaintiff S.G., by and through her mother Emily Cherkin, as the Class Representative for the Washington-only classes; and (3) Hagens Berman Sobol Shapiro LLP and EdTech Law Center PLLC as Class Counsel for each state-only class.

The grounds for this motion are that this case meets all the requirements for class treatment under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

This motion is supported by the following **Memorandum of Points and Authorities**, and the accompanying Declarations in Support of Class Certification by the following persons:

- Leonard W. Aragon and accompanying exhibits;
- W. Andrew Liddell;
- Emily Cherkin;
- David Concepcion;

as well as the following expert reports:

- Christopher Schulte;
- Catherine O'Neil, Ph.D.;
- K. Suzanne Barber, Ph.D.

In the Memorandum of Points and Authorities that follows this Motion, those declarations and

reports shall be referred to by the last name of the declarant, followed by the abbreviation "Decl." or "Rpt." (for example: "Aragon Decl." or "Schulte Rpt.").

This Motion is also based on the pleadings and papers on file in this action and all matters of which this Court may take judicial notice.

A proposed form of order is submitted herewith.

Dated: February 9, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ Leonard W. Aragon

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

Attorneys for Plaintiffs

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF COMMON FACTS ..... 1

A. Data Warehouse Class. ..... 1

B. Student Profiling and Prediction Products Class ..... 4

C. Plaintiffs ..... 7

III. PROPOSED CLASSES TO BE CERTIFIED ..... 9

IV. CLASS REPRESENTATIVE(S) AND CLASS COUNSEL ..... 11

V. STANDARD OF REVIEW AT CLASS CERTIFICATION ..... 12

VI. ARGUMENT ..... 12

A. California Law Applies to All Claims ..... 12

B. The Proposed Classes Meet Rule 23(a)'s Requirements ..... 14

1. Rule 23(a)(1): Numerosity ..... 14

2. Rule 23(a)(2): common questions of law and fact exist. ..... 15

3. Rule 23(a)(3): Plaintiffs' claims are Typical. ..... 15

4. Rule 23(a)(4) Plaintiffs and Lead Counsel are Adequate ..... 17

C. The Proposed Classes Meet Rule 23(b)(3)'s Requirements. ..... 17

1. Intrusion Upon Seclusion and Invasion of Privacy under California Constitution (All Classes) ..... 18

a. Did PowerSchool obtain consent for before taking, using, and disclosing students' personal information? ..... 18

b. Do students have a reasonable expectation of privacy in their own personal information? ..... 19

c. Is PowerSchool's collection and use of data highly offensive to a reasonable person? ..... 20

2. Unjust Enrichment/California Quasi-Contract (Student Profiling and Prediction Classes only) ..... 21

D. The Classes are Ascertainable ..... 21

E. Damages are capable of Classwide measurement. ..... 22

F. Class Actions are superior to multiple individual actions. ..... 23

G. Class Certification Under Rule 23(b)(2) for Injunctive Relief is Proper ..... 24

V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alcantar v. Hobart Servs.*,
800 F.3d 1047 (9th Cir. 2015) .... 15

*Am. Acad. Of Pediatrics v. Lungren*,
940 P.2d 797 (1997) .... 18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .... 12

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .... 12

*Barefield v. Chevron, U.S.A., Inc.*,
No. C 86-2427 TEH, 1988 WL 188433 (N.D. Cal. Dec. 6, 1988) .... 23

*Brickman v. Fitbit, Inc.*,
No. 15-cv-02077-JD, 2017 WL 5569827 (N.D. Cal. Nov. 20, 2017) .... 21

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .... 22

*Brown v. Google, LLC*,
No. 20-CV-3664-YGR, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .... 25

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .... 19

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .... 22

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) .... 24

*Crypto Asset Fund, LLC v. OPSkins Grp. Inc.*,
478 F. Supp. 3d 919 (C.D. Cal. 2020) .... 14

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .... 17

*In re Facebook Biometric Info. Priv. Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) (Donato, J.) .... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .... 20, 23

*Forcellati v. Hyland's, Inc.*,
CV 12-1983-GHK ... 13

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal 2025) (Donato, J.) ... 19

*Goldman v. KPMG, LLP*,
92 Cal. Rptr. 3d 534 (Cal. Ct. App. 2009) ... 14

*In re Google Location History Litigation*,
428 F.Supp.3d 185 (N.D. Cal 2019) ... 18

*Heeger v. Facebook, Inc.*,
509 F.Supp.3d 1182 (N.D. Cal 2020) (Donato, J.) ... 18

*In re Heritage Bond Litig.*,
2004 WL 1638201 (C.D. Cal. Jul. 12, 2004) ... 16

*Jackson v. First Nat'l Bank of Omaha*,
No. CV 20-1295 DSF (JCX), 2022 WL 423440 (C.D. Cal. Jan. 18, 2022) ... 23

*James v. Uber Techs. Inc.*,
338 F.R.D. 123 (N.D. Cal. 2021) ... 16, 17

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ... 16, 22

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) ... 15

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) ... 18

*New Jersey v. T.L.O.*,
469 U.S. 325 (1985) ... 4, 19

*Norcon Builders, LLC v. GMP Homes VG, LLC*,
254 P.3d 835 (Wash. Ct. App. 2011) ... 11

*Reid v. Pierce Cnty.*,
961 P.2d 333 (Wash. 1998) ... 11

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ... 19, 20

*Shanahan v. IXL Learning, Inc.*,
No. 24-CV-02724-RFL, 2024 WL 4658276 (N.D. Cal. Nov. 1, 2024) ... 20

*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005) ... 17

*Varnado v. Midland Funding LLC*,
43 F.Supp.3d 985 (N.D. Cal 2014) ........ 18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 15

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ........ 25

*Ward v. United Airlines, Inc.*,
2021 WL 534364 (N.D. Cal. Feb. 12, 2021) ........ 25

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ........ 24

**Statutes**

15 U.S.C. § 6501 ........ 19, 20

20 U.S.C. § 1232 ........ 19, 20

COPPA ........ 20, 25

Federal Education Rights and Privacy Act ........ 4, 20

Washington Privacy Act ........ 11

**Other Authorities**

16 CFR Part 312 ........ 20

34 CFR Part 99 ........ 20, 21

64 F.R. 59888 ........ 20

California Constitution ........ 18

Federal Rules of Civil Procedure 23 ........ *passim*

Wash. Const. Art. I, § 7 ........ 10

## STATEMENT OF THE ISSUES PRESENTED

Whether the Court should certify the proposed classes under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

## I. INTRODUCTION

This case is about parents' rights to control how their children's personal information is used by private companies. PowerSchool exploits its access to K-12 classrooms to bypass parental consent in taking and using the private information of millions of students for its own profit. While masquerading as a tool to support education, PowerSchool creates, collects, processes, stores, and shares an unlimited trove of sensitive data, from health records to intimate family information, without obtaining informed, voluntary consent from parents. It then uses this personal information to fuel untested proprietary products that purport to generate predictions and insights about a student's behavior, performance, and life outcomes without effective consent. By transforming compulsory education into a conduit for unchecked corporate surveillance and profiling of children, PowerSchool prioritizes its billion-dollar bottom line over the fundamental privacy rights of families. This pervasive, nonconsensual exploitation inflicts irreparable harm on students, turning schools from safe places to learn into centers for corporate data mining.

## II. STATEMENT OF COMMON FACTS

PowerSchool, headquartered in California, is used by schools and school districts across the country,[2] including 90 of the 100 largest school districts by student enrollment in the U.S.[3] PowerSchool represents that its products are used by more than 60 million students globally, with a concentrated presence in U.S. school districts.[4] In 2024, the then-public company went private in a $5.6 billion dollar deal led by Bain Capital.[5] Plaintiffs' claims against this multi-billion dollar company are based on two fact-patterns, each proven by common evidence.

### A. Data Warehouse Class.

PowerSchool's Data Warehouse Products,[6] used by virtually all its customers (schools and school districts), collect, process, and store massive amounts of student data, including highly personal, sensitive data such as: [redacted]

---

[2] ECF No. 66, Answer ¶¶ 10, 33-36.

[3] *Id.* ¶ 36.

[4] *See* PowerSchool, *Bain Capital Partnership* (Oct. 1, 2024), https://www.powerschool.com/bain-capital/ (last visited Feb. 4, 2026).

[5] Aragon Decl. Ex. 1, PWRSCHL_00006701 at 724.

[6] PowerSchool SIS and Connected Intelligence (collectively "Data Warehouse Products.").

[redacted] PowerSchool then shares or makes this data available to third parties without receiving informed consent from parents.[8] PowerSchool admits that the student data its products collect is extraordinarily valuable, calling it "priceless."[9] Nonetheless, PowerSchool actively solicits the sharing of student data[10] and profits from sharing student data with third parties.[11] To date, PowerSchool admits that it has shared student data with over 213 third-parties.[12]

PowerSchool does not itself obtain informed, voluntary consent from parents to allow its products to collect, process, and share "priceless" student data with third parties, and it does not ensure that consent

---

[7] Aragon Decl. Ex. 2, Data Processing Impact Report ("DPIA") – PowerSchool SIS, PWRSCHL_00644395 at 398–99 ("performs large-scale processing operations aimed at processing considerable amounts of data and could affect many individuals"); Ex. 3, PWRSCHL_00644386 at 390, DPIA – Connected Intelligence [redacted] Ex. 4, Christopher Cirillo Tr. 244:16–245:7 (confirming that Connected Intelligence gives customers access to data in products that customer has purchased); *see also* Ex. 5, DPIA – Naviance, PWRSCHL_00644472 at 74–77 (utilizes student data to assess "college, career, and life readiness"); Ex. 6, DPIA – Schoology Learning, PWRSCHL_00644375 (learning management system used to disseminate and collect lessons and materials from students). Ex. 7, DIPA – MTSS, PWRSCHL_00646371 at 73 (allowing the creation of "personalized student plans and intervention teams" using student data).

[8] *See, e.g.*, Aragon Decl. Ex. 8, PowerSchool's Responses and Objections to Interrogatories at 18-25.

[9] Aragon Decl. Ex. 9, Darron Flagg 30(b)(6) Tr. 419:2–420:8 *Student Data Privacy: Everything You Need to Know* (June 20, 2023), https://www.powerschool.com/blog/student-data-privacy-everything-you-need-to-know (last visited Feb. 9, 2026) (stating that, according to the U.S. Dept. of Education, "the value of a student record on the black market is $250 to $350.").

[10] Aragon Decl. Ex. 10, PWRSCHL_00003280 at 48 (data architecture schema showing data sharing as a primary element); Ex. 2 at § 4(d) (describing key functionality and use of PowerSchool SIS is sharing data with "partners or other third parties."); Ex. 11, PWRSCHL_00004347 at 67-70 (data flow summary presentation during private equity acquisition showing sharing of student data with partners); PowerSchool, *PowerSchool Partner Program*, https://www.powerschool.com/company/partners/ (accessed Feb. 6, 2026) (describing "partner" program, identifying certain partners and relationships, and soliciting others to "become a partner.").

[11] *See, e.g.*, Aragon Decl. Ex. 12, PowerSchool Holdings, Inc. Form 10-K for the Fiscal Year Ended Dec. 31, 2023, PWRSCHL_00005197 at 64-65 (identifying revenues from licenses, royalty fees, and reseller arrangements); *see also* Ex. A, Christopher L. Schulte Report ("Schulte Rpt.") at 41-62 [redacted]

[12] *See, e.g.*, Aragon Decl. Ex. 8, PowerSchool's Responses and Objections to Interrogatories at 10-16 and Ex. 13, PowerSchool's Suppl. Responses and Objections to Non-Uniform Interrogatories 1, 4, 5 at pp. 15-26 (listing third parties with whom PowerSchool shares student data).

was obtained on its behalf.[13] Nor does it disclose to parents or students that it receives money when transmitting student data.[14] Notably, PowerSchool's fact witnesses denied that PowerSchool profited from sharing data, but PowerSchool's corporate representative admitted that it receives money from transmitting student data.[15] Indeed, one of the primary purposes of its Data Warehouse Products is to enable PowerSchool to share student data with third parties.[16] PowerSchool, moreover, profits by sharing such data with third parties and by promoting its products' ability to collect and share data.[17]

Further, when sharing data, PowerSchool can de-identify (anonymize) student data, but when doing so PowerSchool does not use industry-approved guidance to anonymize data shared with others.[18] Instead, it relies on Darron Flagg, a lawyer with no meaningful experience in data anonymization, and one of his product engineers to arbitrarily determine which data fields are removed.[19] PowerSchool has never tested its de-identification methodology or hired an expert or consultant to ensure that its de-identified data cannot be re-identified.[20] PowerSchool has never even considered the risk that its de-identified data can be re-identified, let alone performed testing to determine if the data is properly protected.[21] PowerSchool also admits that it places no guardrails on how widely this information can be shared or how it can be used, and that schools can do "whatever they wish with it."[22]

When asked how it obtains consent from parents and students to collect and use student data, PowerSchool stated that its consent defense is based on federal law, state law, contracts with schools, and

[13] *See* Aragon Decl. Ex. 14, Nicole Shinton Tr. 15:21-18:8 (Group Vice-President Product Management); Ex. 4, Cirillo Tr. 240:12-241:12 (Group Vice-President Product management); Ex. 15, Paul Brook (Chief Customer Officer) Tr. 26:20-27:8; Ex. 9, Flagg 30(b)(6) Tr. 350:5–15 [redacted] 365:7–18 (same).

[14] *Id.*

[15] Aragon Decl. Ex. 9, Flagg 30(b)(6) Tr. 350:5–15; 365:7–15; *compare* Ex. 16, Swingle Deposition, 328:3-8; Ex. 17, McCowan Tr. 237:6-10; Ex. 18, Ahmad Tr. 310:10-17.

[16] *Supra* at n. 13-14.

[17] *Id.*

[18] Aragon Decl. Ex. 9, Flagg 30(b)(6) Tr. 382:6-383:7.

[19] *Id.*; *see also* Aragon Decl., Ex. 9, Flagg 30(b)(6) Tr. 381:22–383:7.

[20] Aragon Decl. Ex. 9, Flagg 30(b)(6) Tr. 383:11–14.

[21] *Id.* 399:11–16.

[22] *See, e.g.*, Aragon Decl. Ex. 9, Flagg 30(b)(6) Tr. 172:16–179:2, 235:16–236:22.

individual school practices, but it never produced evidence that parents or student give effective consent to PowerSchool for its data practices from parents or students.[23] Instead, PowerSchool asserts that it has no duty to obtain consent from parents or students and that consent, if any, may be obtained exclusively from schools, who collect and own the data.[24] But no law wholly confers ownership of all student information to schools or grants schools carte blanche authority to consent to the sweeping collection and use of student information by a third party. *See New Jersey v. T.L.O.*, 469 U.S. 325, 337–42 (1985) (explaining that children do not forgo their right to privacy simply by attending school and that invasions of that right must be carefully balanced against the state's interest); Cong. Rec. at 13990–92 (daily ed. May 13, 1975) (remarks of Sen. Buckley in support of the Federal Education Rights and Privacy Act ("FERPA")).

Further, PowerSchool's corporate representative testified that its data-retention policy lasts "as long as [a school's] subscription is in place," and it thereafter deletes the information.[25] PowerSchool's unilateral ability to delete student information after a school's subscription expires (or is terminated for nonpayment) undercuts its argument that schools, rather than PowerSchool, control student data.

In sum, the Data Warehouse Class can show with common evidence that will generate common answers that PowerSchool (1) uses the Data Warehouse Products to collect, process, and store student data; (2) shares that data with third parties, (3) offers that data to third parties, (4) does not receive effective consent for its collection, use, or disclosure of student data, and (5) violated California law in doing so.

**B. Student Profiling and Prediction Products Class**

PowerSchool's Student Profiling and Prediction Products[26] produce "insights" and predictions

---

[23] Aragon Decl. Ex. 8, PowerSchool's Responses and Objections to Interrogatories at 18-25.

[24] *Id.* (PowerSchool does make a convoluted argument that the Concepcion family consented to PowerSchool's practices by signing the school handbook, but there is nothing in the handbook that can be reasonably construed to give consent to PowerSchool's practices complained of here. *See* analysis *infra* at pp. 7-8, § F.1.A; *see also* Ex. 14, Shinton Tr. 12:3-13; 15:21-18:8 (Group Vice-President Product Management) (explaining that PowerSchool does not obtain and has no duty to obtain "informed voluntary consent" to collect student data); Ex. 4, Cirillo Tr. 240:12-241:12 (Group Vice-President Product management) (explaining he is not aware of any documents at PowerSchool that discuss the need to obtain consent from parents and student for a customer (school or school district) to collect and use student data).

[25] Aragon Decl. Ex. 9, Flagg 30(b)(6) Tr. 71:2–17.

[26] Data, Analytics and Insights f/k/a Unified Insights; Performance Matters; Behavior Support; and Attendance Intervention (collectively "Student Profiling and Prediction Products").

about students[27] without parent or student consent.[28] Worse, these products are not tested for validity, accuracy, or reliability.[29] PowerSchool could, but chooses not to, confirm the fairness and accuracy of its prediction products.[30] PowerSchool's corporate representative confirmed this fact: "So when you say, how is PowerSchool confirming the accuracy [of its prediction products], it's not something we would do[.]"[31] "Q: So PowerSchool has done nothing to validate the accuracy of the factors it considers important that it identifies in the risk analysis? A: Correct."[32] "We could [validate our risk models], but then that would be different for every school, right. And then there would be no value to PowerSchool to do that."[33] Its excuse for never testing its Student Profiling and Prediction Products for bias, accuracy, or reliability is that schools can modify the algorithm, but this ignores that the products sold and used by all schools and school districts suffer from the same deficiency: the underlying algorithm, whether used as shipped or altered by the customer, was never tested.[34] In other words, PowerSchool's product that schools use to make life-altering predictions and insights about students has never been properly tested or otherwise proven to work.

But even if the algorithms were tested and worked properly, parents do not provide effective consent for PowerSchool to use these products to produce predictions or insights about their children.[35] This is actionable because predictive algorithms regarding, for example, graduation rates, create a feedback loop that could result in student neglect by categorizing students into risk tiers, encouraging schools to divert critical resources away from "high-risk" students to prioritize those deemed more "viable" for graduation.[36] This algorithm-based triage system carries high stakes and has financial consequences, as a high school diploma increases estimated lifetime earnings by 57 percent for women and 36 percent for

---

[27] Aragon Decl. Ex. 19, DPIA Analytics and Insights, PWRSCHL_00644311-320; Ex. 20, DPIA Behavior Matters, PWRSCHL_00644501 at 504-06; Ex. 21, DPIA Performance Matters, PWRSCHL_00644447-456.

[28] *See, e.g.*, Aragon Decl. Ex. 14, Shinton Tr. 22:13-23:12 (Group Vice-President Product Management); Ex. 4, Cirillo Tr. 240:12-241:12 (Group Vice-President Product management).

[29] Aragon Decl. Ex. 9, Flagg 30(b)(6) Tr. 222:3-230:3.

[30] *See* Aragon Decl. Ex. 9, Flagg 30(b)(6) Tr. 222:3–230:3.

[31] *Id.* 224:7–10.

[32] *Id.* 224:14–19.

[33] *Id.* 226:19–227:7.

[34] *Supra* at n. 30.

[35] *Supra* at n. 29.

[36] Ex. B, Catherine O'Neil Expert Report ("O'Neil Rpt.") at 27.

men.[37] By including biased disciplinary records and test scores, these algorithms automate implicit racial bias and often unfairly label students as "high risk" regardless of their true ability.[38] Finally, the lack of oversight to catch data-entry errors or missing inputs could trigger inaccurate student risk labels, leading to the devastating and potentially life-altering withdrawal of support from the students who need it most.[39]

Compounding these harms, PowerSchool's unvetted prediction products exist largely as an upsell opportunity. [redacted][40] Indeed, PowerSchool profits handsomely from selling, cross-selling, and upselling its unvetted prediction products to schools. Seattle Public Schools—the school attended by Plaintiff S.G.—for example, paid approximately $200,000 for Unified Insights and $185,000 for Performance Matters on an annual contract of about $1.1 million, or about 35 percent of PowerSchool's revenue for that contract.[41] Plaintiffs' damages expert conservatively estimates that PowerSchool has unjustly enriched itself by approximately $341 million by selling the untested Student Profiling and Prediction products to customers.[42]

In sum, Plaintiffs will show with common evidence that will generate common answers that PowerSchool (1) uses the Student Profiling and Prediction Products to collect and process student data to produce predictions and insights about students; (2) never tested its Student Profiling and Prediction Products for accuracy, bias, or reliability, (3) does not obtain effective consent for its use of student data in this manner, (4) profited from its conduct, and (5) violated California law.

---

[37] *Id.* at 26.

[38] *Id.* at 27-28.

[39] *Id.* at 27.

[40] Aragon Decl. Ex. 9, Flagg 30(b)(6) Tr. 329:19–331:20; Ex. 22, PWRSCHL_00002785 at tab 8: X-Sell/Upsell by Product; Ex. 23, PWRSCHL_00425124 at 17 (identifying opportunities and past cross-selling successes).

[41] *Approval of License and Subscription Fees for PowerSchool Platform*, Seattle Public Schools (Aug. 31, 2022) at 10-11, https://seattleschools.sharepoint.com/sites/SPSBoardOffice-O365/Shared%20Documents/Forms/AllItems.aspx?id=%2Fsites%2FSPSBoardOffice%2DO365%2FShared%20Documents%2FSchool%20Board%2FBoard%20Meetings%2F2022%2D23%2FFull%20Board%2F2022%2D08%2D31%20RBM%2FC07%5F20220831%5FPowerSchool%20License%2Epdf&parent=%2Fsites%2FSPSBoardOffice%2DO365%2FShared%20Documents%2FSchool%20Board%2FBoard%20Meetings%2F2022%2D23%2FFull%20Board%2F2022%2D08%2D31%20RBM&p=true&ga=1 (last visited February 8, 2026).

[42] Schulte Rpt. at 28-39.

### C. Plaintiffs

Plaintiffs L.M.C., age 12, and M.M.C., age 10, attend school in the West Contra Costa Unified School District.[43] The school district uses Student Data Warehouse Products, specifically PowerSchool SIS[44] and Naviance,[45] to collect, process, and store their data. Notably, PowerSchool SIS is the workhorse for PowerSchool, containing massive amounts of data about students and their families.[46] The district also uses Unified Insights, a Student Profiling and Prediction Product that was once known as Hoonuit and is now known as Analytics and Insights.[47] Unified Insights is the bedrock for PowerSchool's Student Profiling and Prediction Products. It is a "comprehensive K-12 student data analytics platform that brings together an organization's disparate data from multiple sources to create a dashboard and analytics related to the aggregated data."[48] This includes "student analytics" that identify "at risk students and support personalized learning plans."[49] Again, this product is untested for reliability, bias, or accuracy.[50]

Plaintiff David Concepcion, L.M.C.'s and M.M.C.'s father, testified that PowerSchool is misusing his children's information without his or his children's authorization.[51] He explained that PowerSchool misuses student data when it, without permission, "[takes] information and [does] not [hold] it … solely for the use of West Contra Costa Unified School District ..."[52] His children also testified that their personal data is

---

[43] *See* Ex. D, Concepcion Decl. at ¶ 8.

[44] Aragon Decl. Ex. 24, PWRSCHL_00300715; Ex. 25, PWRSCHL_00007269; Ex. 26, PWRSCHL_00231378; Ex. 27, PWRSCHL_00117279; Ex. 28, PWRSCHL_00702684 (contracts for SIS at West Contra Costa Unified School District from July 1, 2020, to June 2025).

[45] Aragon Decl. Ex. 29, PWRSCHL_00343564; Ex. 30, PWRSCHL_00374163; Ex. 27, PWRSCHL_00117279 (contracts for Naviance from July 1, 2021 to June 30, 2025).

[46] *See, e.g.*, Aragon Decl. Ex. 31, PWRSCHL_00141839 at 15 (stating that 94.4% of school districts (6,548 of 6,939) use PowerSchool SIS); Ex. 12, PWRSCHL_00005197 at 11 (confirming that PowerSchool SIS is "used by nearly every school constituent on a day-to-day basis"); Ex. 2 (PowerSchool SIS DPIA); Ex. 32, PWRSCHL_00007183 [redacted]

[47] *Id.*

[48] Aragon Decl. Ex. 19 at 4.

[49] *Id.* at 5.

[50] *See supra* at n. 30.

[51] *See generally* Aragon Decl. Ex. 33, Concepcion Tr. 126:13-134:22.

[52] Aragon Decl. Ex. 33, Concepcion Tr. 129:9-18.

private and invaluable.[53] M.M.C. explained that privacy means "keeping it secret" and "not . . . sharing it with other people."[54]

Similarly, Plaintiff S.G. is 14 years old and attends school in the Seattle Public School District ("SPS").[55] The school district uses the following Data Warehouse Products: PowerSchool SIS, Schoology, Naviance, and MTSS.[56] The district also uses Analytics and Insights and Performance Matters, each a Student Profiling and Prediction Product.[57] Notably, SPS hosts much of its own data on-premise, meaning that the district has its own servers or hardware that it elects to maintain to house its own data.[58] SPS, however, hosts its data for Unified Insights and Naviance on PowerSchool's cloud servers.[59]

Plaintiff Emily Cherkin, S.G.'s mother, testified that PowerSchool is violating her daughter's privacy rights because it "collects and sells and profits from data about children without informed consent."[60] She believes that PowerSchool should "[s]top collecting children's data without parental consent and compensate for any harm they've caused."[61] Ms. Cherkin further testified regarding school information systems, noting they must be deployed "effectively, safely, and legally."[62] Safety is the "bare minimum protecting privacy of student information [s]o . . . it stays within the school itself."[63] Cherkin's privacy concerns extended beyond the threat of "bad actors," pointing specifically to the commercial practices of

---

[53] Aragon Decl. Ex. 34, M.M.C. Tr. 38:24-39:5 ("My privacy is too important . . .."); Aragon Decl. Ex. 35, L.M.C. Tr. 40:8-10 ("I mean, I wouldn't sell it because it's like my personal stuff.").

[54] Aragon Decl. Ex. 34, M.M.C. Tr. 37:9-13.

[55] Aragon Decl. Ex. 36, S.G. Tr. 9:19-20; 10:23-25; 11:1-25; 12:1-23.

[56] Aragon Decl. Ex. 37 PWRSCHL_00170053; Ex. 38, PWRSCHL_00072231; Ex. 26, PWRSCHL_00231378; Ex. 39, PWRSCHL_00282149; Ex. 40, PWRSCHL_00001060; Ex. 28, PWRSCHL_00702684; Ex. 32, PWRSCHL_00007183; Ex. 41, PWRSCHL_00077702; Ex. 30, PWRSCHL_00374163; *see also* Seattle Public Schools, *PowerSchool Products*, https://www.seattleschools.org/departments/dots/software-information/powerschool-product/ (last accessed Feb. 5, 2026) (describing PowerSchool products used by SPS).

[57] *Id.*

[58] Aragon Decl. Ex. 14, Shinton Tr. 45:10-21.

[59] Aragon Decl. Ex. 42, Judith Jaeger Tr. 50:24-51:9; Ex. 43, PWRSCHL_00627056 (confirming that PowerSchool hosts SPS data).

[60] Aragon Decl. Ex. 44, Emily Cherkin Tr. 281:17-19.

[61] *Id.* 284:13-15.

[62] *Id.* 175:22-23.

[63] *Id.* 175:23-25.

PowerSchool.[64] She cautioned that PowerSchool is allowed to "take the data, sell it, and profit from it,"[65] turning sensitive student records into a commodity. Ultimately, Ms. Cherkin clarified that her concerns focus on student privacy and PowerSchool's misuse of private data: "my problem, again, is about consent, collection, and sale of data."[66]

S.G. testified she did not give PowerSchool "permission to collect and use her data to make money" expressing concerns that her personal information is being sold to third parties or used to develop predictive AI products.[67] She maintains her privacy is respected if the information she shared with her teachers and school remains strictly within her teachers and school.[68]

## III. PROPOSED CLASSES TO BE CERTIFIED

To address PowerSchool's conduct, Plaintiffs seek certification of the following classes (collectively, "the Classes"):

> **Nationwide Injunctive Relief Class (Rule 23(b)(2))**
>
> All persons in the United States who, from October 29, 2020, to the present, attended a K-12 school or school district that used any of the following PowerSchool products: PowerSchool SIS, Schoology Learning, Performance Matters, Naviance, MTSS, Behavior Support, Attendance Intervention, Data, Analytics and Insights (f/k/a Unified Insights), or Connected Intelligence.
>
> **Nationwide Damage Classes (Rule 23(b)(3))**
>
> **Student Data Warehouse Class**: All persons in the United States who, from October 29, 2020, to the present, attended a K-12 school or school district that used the following PowerSchool products—PowerSchool SIS or Connected Intelligence—and PowerSchool hosts[69] the collected data for at least one product.

---

[64] *Id.* 175:6-11.

[65] *Id.* 175:911.

[66] *Id.* 175:20-21.

[67] Aragon Decl. Ex. 36, S.G. Tr. 155:24-156:1; 154:4-155:7.

[68] *Id.* 80:11-22.

[69] Hosts means that collected data is stored by PowerSchool, either on the "cloud" or at a data warehouse operated by PowerSchool. *See, e.g.*, Aragon Decl. Ex. 10, PWRSCHL_00003280 at 164 (describing transition to cloud from legacy hosting at physical locations); Aragon Decl. Ex. 17, McCowan Tr. 56:5-22 (explaining that student data is stored in Amazon Web Services ("AWS") or Microsoft Azure), 58:1-10; Ex. 16, Swingle Tr. 269:10-270:1 [redacted] This contrasts with schools and school districts that host their own data; *see also* Ex. 43, PWRSCHL_00627056 (identifying

> **Student Profiling and Prediction Class:** All persons in the United States who, from October 29, 2020, to the present, attended a K-12 school or school district that used Data, Analytics and Insights (f/k/a Unified Insights), Performance Matters, Behavior Support, or Attendance Intervention (collectively the "Student Profiling and Prediction Products"), and PowerSchool hosts the collected student data for at least one product.
>
> **Alternative State-Only Classes** (California & Washington): In the alternative, should the Court find a nationwide class is not certifiable, Plaintiffs request the certification of state-specific Injunctive, Student Data Warehouse, and Profiling and Prediction classes for California and Washington residents mirroring the definitions above.

The Nationwide Injunctive Relief Class asserts claims under  the California Constitution's guarantee of privacy and common law protections against invasion of privacy. *See* Judicial Council of Cal., Civil Jury Instr. No. 1800 (recognizing overlap between common law and constitutional rights to privacy and recognizing that state constitutional privacy provision is self-executing and serves as the basis for injunctive relief); *see also* Complaint ("Compl.") Causes of Action Counts I, VI. If the Court determines that nationwide injunctive relief is not proper, Plaintiffs seek injunctive relief for each state-only class (California and Washington) under the same California law. If the Court determines that California law is not appropriate for the alternative Washington-only class, Plaintiff S.G., by and through her mother, Emily Cherkin, seeks injunctive relief for the Washington-only class under Washington's constitutional rights to privacy. *See* Wash. Const. Art. I, § 7; Compl. ¶¶ 418, 428.

The Nationwide 23(b)(3) classes or, in the alternative, state-only 23(b)(3) classes for Washington and California, seek monetary relief, and all other available relief, under the California Constitution's guarantee of privacy and common law protections against invasion of privacy, and unjust enrichment. *See* Judicial Council of Cal., Civil Jury Instr. No. 1800 (confirming availability of damages for privacy claims) and No. 375 (setting forth right to restitution on quasi contract/unjust enrichment claim); *see also* Compl. Causes of Action Counts I, VI, VII. If the Court determines that application of California law is not appropriate for the Washington-only class, Plaintiff S.G., by and through her mother, Emily Cherkin, seeks a Washington-only 23(b)(3) class for damages, and all other available relief, under the Washington Privacy Act, common

---

schools and school districts with student data hosted by PowerSchool. Note that Seattle Public Schools, the district Plaintiff S.G. attends, is listed as Seattle School District No. 1, the legal name for the district).

law right to privacy, and unjust enrichment. *See Reid v. Pierce Cnty.*, 961 P.2d 333, 342–43 (Wash. 1998) (recognizing right to damages for invasion of privacy); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 254 P.3d 835, 844 (Wash. Ct. App. 2011) (quoting *Young v. Young,* 164 Wash.2d 477, 484-85, 191 P.3d 1258 (2008)) (describing relief available for unjust enrichment claim under Washington law).

## IV. CLASS REPRESENTATIVE(S) AND CLASS COUNSEL

Plaintiffs respectfully request that the Court appoint Class Representatives and Class Counsel for each Class as follows: Each proposed Class Representative, with the assistance of their respective parent, has diligently represented the class by, among other things, (1) answering interrogatories and requests for admissions from Defendant, (2) responding to all requests for production, (3) sitting for in-person depositions, (4) reviewing and approving the class action complaint, (5) responding to all inquiries from their attorneys, and (6) generally promoting the claims of unnamed Class members at all times.[70]

**Nationwide Class Representatives:** Plaintiffs S.G., M.M.C. and L.M.C. are minors. As such, Plaintiffs request that the Court appoint (1) Plaintiffs S.G., by and through her mother Emily Cherkin, and (2) M.M.C. and L.M.C., by and through their father, David Concepcion as the Class Representatives for the nationwide Rule 23(b)(2) and 23(b)(3) classes.

**State-Only Class Representatives:** In the alternative, if the court determines that a nationwide class is not appropriate, Plaintiffs request that the Court appoint (1) Plaintiffs M.M.C., and L.M.C., by and through their father, David Concepcion, as the Class Representatives for each California-only class, and (2) Plaintiff S.G., by and through her mother Emily Cherkin, as the Class Representative for each Washington-only class.

**Class Counsel:** With respect to any Class certified by the Court, Plaintiffs respectfully request that the Court appoint Hagens Berman Sobol Shapiro LLP and EdTech Law Center PLLC as Class Counsel for the certified Class under Rule 23(g). Plaintiffs' counsel in this case have (1) identified and researched the claims giving rise to this case, (2) defeated a motion to dismiss and proceeded on the original complaint, (3) defeated a motion to intervene, (4) conducted substantial fact discovery, including all depositions permitted by the Court and the identification, collection, and review of over 110,000 documents from

[70] *See* Aragon Decl. ¶ 50; Ex. D, Concepcion Decl. at ¶¶ 11-19; Ex. E, Cherkin Decl. at ¶¶ 10-18.

defendants, voluminous ESI productions from plaintiffs, and boxes of hard-copy documents (5) defended depositions of all putative Class Representatives, including the in-person deposition of three minors, (6) resolved multiple discovery disputes with Defendant, (7) retained and supervised experts to address issues related to privacy and damages, (8) and diligently represented the Class's interests.[71] The primary attorneys handling this case from both firms—Robert Carey, Leonard Aragon, and Whitney Siehl from Hagens Berman, and Julie Liddell and Andrew Liddell from EdTech Law Center—have substantial experience handling class actions and complex litigation, are well versed in the underlying law, and are prepared to devote whatever additional resources are necessary to see this matter through to fruition.[72]

## V. STANDARD OF REVIEW AT CLASS CERTIFICATION

To certify a class, Plaintiffs must meet all requirements under Fed. R. Civ. P. 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, as well as the requirements of either Fed. R. Civ. P. 23(b)(1), (2), or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* The class-certification analysis is not "an alternative form of summary judgment or an occasion to hold a mini-trial on the merits." *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 542 (N.D. Cal. 2018) (Donato, J.).

## VI. ARGUMENT

### A. California Law Applies to All Claims

PowerSchool, a California corporation, requires all claims against the company to be brought in California under California law unless certain exceptions, not applicable here, apply.[73] And, "[g]iven that [PowerSchool is] headquartered in California . . . application of California law poses no constitutional concerns in this case." *Forcellati v. Hyland's, Inc.*, CV 12-1983-GHK MRWX, 2014 WL 1410264, at *2 (C.D.

---

[71] Aragon Decl. ¶ 55; Liddell Decl. ¶ 6.

[72] Aragon Decl. ¶¶ 55-61, Ex. 45 (Firm resume); Liddell Decl. ¶¶ 6-12, Ex. 1 (Firm resume).

[73] *See* Aragon Decl. Ex. 46, PowerSchool's Current Terms of Use ("TOU") at "General Information; Governing Law" (accessible at https://www.powerschool.com/terms/); Answer ¶ 10.

Cal. Apr. 9, 2014) (cleaned up). Thus, there is no basis to depart from PowerSchool's choice of law.

This case involves students using PowerSchool's products at their respective schools and school districts, conduct that PowerSchool expressly contemplated in its TOU:

> This public website . . . or any PowerSchool Product. . . hereinafter collectively referred to as "**Site**" is brought to you ("**User**") by PowerSchool Group LLC ("**PowerSchool**") . . . References to "**you**", "**your**" or "**User**" in this General Terms of Use document are referring to the end user (student, parents, staff, or other user type that is accessing the PowerSchool product or a visitor to the public website)[.]

*Id.* at 1 (emphasis in original).[74] The TOUs are not limited to using the "public website," but explicitly apply to the use of "any PowerSchool Product," and use the conjunction "or" when including PowerSchool's products in the TOU. *Id.* A "User," moreover, includes all end users of PowerSchool's products, such as "students" and their "parents."[75] Here, the students' claims arise from the improper "use" of PowerSchool's products, making the California choice of law provision in the TOU plainly applicable.

To the extent PowerSchool argues that its contracts with its customers (schools and school districts) govern the students' claims, it is incorrect. The TOU state that California law governs unless the agreement between PowerSchool and its customers conflict, in which case the customer contract governs.[76] Here, Plaintiffs are not aware of any terms in the customer contracts that would alter the choice of law provision in the TOU. The Main Service Agreement used by PowerSchool as a template for its contracts with customers limit the choice of law provision to disputes regarding the agreement.[77] This class action is not a dispute over the agreements between PowerSchool and its school district customers but rather one over the *use* of PowerSchool's products by students and parents—conduct expressly governed by the TOU.[78]

Students, moreover, are not parties to the agreements between PowerSchool and its customers.[79]

---

[74] *Id.* at Introductory Paragraphs ("References to "**Customer**" in this Terms of Use document are referring to the respective School or School District who have licensed any PowerSchool Product…and the User is connected to in capacity as a student, parent….") (emphasis in original).

[75] *Id.*

[76] *Id.*

[77] *See, e.g.*, Ex. 47, "2024 Main Service Agreement (Global Standard)" at § 14.1 (accessible at https://www.powerschool.com/legal/agreements/).

[78] Aragon Decl. Ex. 46.

[79] *See* Aragon Decl. Ex. 47 at 1.

Nor are students third-party beneficiaries, as PowerSchool expressly disavows any third-party beneficiaries to those agreements.[80] Accordingly, there is no basis to argue that students asserting claims unrelated to an agreement between PowerSchool and its school district customers, to which students are neither a party or beneficiary, can be subject to those agreements' choice of law clause.

Further, to the extent PowerSchool argues that the choice of law provision in its TOU does not cover the nationwide classes because there is no enforceable contract with class members, it should be estopped from doing so. *See Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 542 (Cal. Ct. App. 2009) (recognizing that "[e]quitable estoppel generally "precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity."") (cleaned up). Given that PowerSchool itself claims that California law applies when students sue the company based on the use of its product, it cannot now deny that California law applies here. *Id.* Further, it would be inherently unfair to allow PowerSchool to use the choice of law provision as a sword when out-of-state students bring claims against PowerSchool and seek to apply non-California law while simultaneously allowing PowerSchool to disavow the application of California law in this case. *See Crypto Asset Fund, LLC v. OPSkins Grp. Inc.*, 478 F. Supp. 3d 919, 928 (C.D. Cal. 2020) (refusing, in arbitration context, to allow a party to use contract terms as a sword while trying to shield itself from arbitration clause.). In short, California law applies to the nationwide class.

### B. The Proposed Classes Meet Rule 23(a)'s Requirements.

#### 1. Rule 23(a)(1): Numerosity.

Rule 23(a)(1) is satisfied when the "class is so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This case readily meets the numerosity prerequisite, as each Proposed Class consists of millions of U.S. K-12 students, as reflected on PowerSchool's website and records.[81]

[80] *Id.* at § 14.15 ("There are no third-party beneficiaries under this Agreement.").

[81] *See Bain Capital Completes Acquisition*, https://www.powerschool.com/bain-capital/("PowerSchool supports over 60 million students and over 18,000 customers in more than 90 countries, including more than 90 of the top 100 districts by student enrollment in the United States."); *see also* Aragon Decl. at ¶ 51 (describing student counts by states and documents used to identify class members).

### 2. Rule 23(a)(2): common questions of law and fact exist.

The commonality requirement is satisfied if "there are questions of law or fact common to the class." *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 960 (N.D. Cal. 2022) (quoting Fed. R. Civ. P. 23(a)(2)). Commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011)."A common contention need not be one that 'will be answered, on the merits, in favor of the class[,]' [i]t only 'must be of such nature that it is capable of class-wide resolution.'" *Alcantar v. Hobart Servs.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quoting *Amgen*, 568 U.S. at 459, and *Wal-Mart Stores*, 564 U.S. at 350). Importantly, not all questions must be common. Rather, "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores*, 564 U.S. at 359 (cleaned up).

Plaintiffs easily satisfy the commonality hurdle. Common issues for the Student Data Warehouse Class includes whether PowerSchool (1) uses the Data Warehouse Products to collect, process, and store student data; (2) offers that data to third parties, (3) shares that data to third parties, (4) does not receive effective consent for its actions, and (5) violates California law in doing so.[82]

Common issues for the Student Profiling and Prediction Class include (1) whether PowerSchool, using the Student Profiling and Prediction Products, uses student data to produce prediction and insights about students; (2) whether the Student Profiling and Prediction Products were tested for accuracy, bias, or reliability, (3) whether PowerSchool obtains informed consent for the use of student data to make predictions and insights about students, (4) whether PowerSchool profited from its conduct, and (5) whether PowerSchool violated California law.[83]

The same common questions apply to the injunctive relief class, and whether the class is entitled to injunctive relief under California law. Commonality is easily met here.

### 3. Rule 23(a)(3): Plaintiffs' claims are Typical.

Rule 23(a)(3) typicality requires a showing that "the claims or defenses of the representative parties [are] typical of the claims or defenses of the class.'" *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 132 (N.D. Cal.

[82] *See* common proof for the Data Warehouse Class *supra* at 1-4.

[83] *See* common proof for the Student Profiling and Prediction Class *supra* at 4-6

2021) (quoting Fed. R. Civ. P. 23(a)(3)). Typicality requires that the representatives' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* at 132 (cleaned up). As a result, "the typicality requirement is not demanding." *In re Heritage Bond Litig.*, 2004 WL 1638201, at *4 (C.D. Cal. Jul. 12, 2004).

Here, Plaintiffs' claims are typical of the claims of the absent Class members they seek to represent. Plaintiffs and Class members attended schools utilizing PowerSchool products and suffered injuries arising from two distinct privacy violations: (1) their data was collected, processed, stored, and offered to third parties without consent for the Student Data Warehouse Class, and (2) that data was leveraged without effective parental consent to generate predictive analytics for the Student Profiling and Prediction Class. Like all Class members, Plaintiffs suffered the "same or similar injury," their private data was used by PowerSchool without their consent. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (holding "[m]easures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").

PowerSchool will likely argue that the Class Representatives are atypical because their respective schools may not collect the exact same data elements. This ignores that PowerSchool prepares Data Privacy Impact Assessments ("DPIAs") that set forth the data elements that each of its Products automatically collect.[84] While schools may configure PowerSchool's products to collect additional categories of student information,[85] that variability does not defeat typicality because there is a baseline set of data elements inherent in the product. Plaintiffs' claims remain actionable—and typical of the class—based on the minimum, baseline data elements collected and maintained through the products, regardless of any further information a particular school elects to capture.[86]

---

[84] *See, e.g.*, Aragon Decl. Exs. 2, 3, 5-7; *see also* Ex. C, Dr. Suzanne Barber Report at 12-24 (describing the minimum data elements collected by PowerSchool's products) ("Barber Rpt."); Ex. 48, PowerSchool Holdings, Inc.'s Supplemental Responses and Objections to Plaintiffs' Non-Uniform Interrogatories 2, 3, 7, 8 at pp. 6-7 (responding to Interrogatory No. 3 asking what data is collected by each product).

[85] *See* n. 7, *supra*.

[86] *See* Barber Rpt. at 1-2 (summarizing harms caused by PowerSchool's practice of controlling and processing student data); O'Neil Rpt. (explaining risks to students based on the use of PowerSchool's Student Profiling and Prediction Products).

Further, the quantum of data considered by the Student Profiling and Prediction Products is irrelevant to prove the claims. The relevant question is whether PowerSchool is permitted to feed student data into an untested prediction product without consent. It does not matter that some students may have had more data fed into the products than others. This is because when considering typicality, "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (cleaned up). It only matters that student data is used to feed the products without consent because, again, typicality does not require that "all class members suffer the same injury as the named class representative." *Id.*

**4. Rule 23(a)(4) Plaintiffs and Lead Counsel are Adequate.**

The Rule 23(a)(4) adequacy determination requires that the Class Representatives and their counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Class Representatives and their counsel satisfy adequacy if they have "no conflicts of interest with other class members" and if they "will prosecute the action vigorously on behalf of the class." *James*, 338 F.R.D. at 132–33. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Here, the Plaintiffs and undersigned counsel's declarations demonstrate that the requirements for Rule 23(a)(4) adequacy are fully satisfied.[87] Specifically, there are no divergent interests between the Class Representatives and the proposed Classes, and the proposed Class Representatives and their counsel are committed to the vigorous prosecution of this litigation.[88] Further, Class Counsel possess the necessary knowledge, experience, and resources to prosecute this matter fairly and effectively.[89]

**C. The Proposed Classes Meet Rule 23(b)(3)'s Requirements.**

Common questions of law and fact predominate. Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R.

[87] *See* Aragon Decl. ¶¶ 49-50; 52-61; Liddell Decl. ¶¶ 2-12; Ex. E, Cherkin Decl. ¶¶ 2-22; Ex. D, Concepcion Decl. ¶¶2-23.

[88] *See* Aragon Decl. ¶¶ 49-50; 52-55; Liddell Decl. ¶¶2 -6; Ex. E, Cherkin Decl. ¶¶ 9-21; Ex. D, Concepcion Decl. ¶¶ 10-22.

[89] *See* Aragon Decl. ¶¶ 55-61; Liddell Decl. ¶¶ 6-12; Fed. R. Civ. P. 23(g)(4).

Civ. Proc. 23(b)(3). The predominance inquiry "is whether the method of proof would apply in common to all class members," and "not whether the method of proof would or could prevail." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1026 (9th Cir. 2024) (cleaned up). Here, Plaintiffs assert the following claims, each of which can be proven by common evidence that predominates over individual questions.

### 1. Intrusion Upon Seclusion and Invasion of Privacy under California Constitution (All Classes)

Under California law, an intrusion upon seclusion claim requires two elements: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *In re Google Location History Litigation*, 428 F.Supp.3d 185, 196 (N.D. Cal 2019) (cleaned up). "The intrusion must be intentional," and "the plaintiff must have had an objectively reasonable expectation of seclusion or solitude in the place, conversation, or data source." *Varnado v. Midland Funding LLC*, 43 F.Supp.3d 985, 992 (N.D. Cal 2014) (cleaned up).

The California Constitution creates a similar privacy right that protects individuals' privacy from intrusion by private parties. *Am. Acad. Of Pediatrics v. Lungren*, 940 P.2d 797, 810 (1997). Courts in the Ninth Circuit consider invasion of privacy claims under the California Constitution and common law intrusion upon seclusion claims together because they involve similar elements, examining "the nature of any intrusion upon reasonable expectations of privacy" and "the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182, 1193 (N.D. Cal 2020) (Donato, J.) (cleaned up). Here, each essential question can be answered with common evidence generating common answers.

#### a. Did PowerSchool obtain consent for before taking, using, and disclosing students' personal information?

PowerSchool claims that "consent" is based on federal law, state law, contracts with schools, and individual school practices. PowerSchool also contends that schools control student data and can dispose of it as they wish.[90] This is incorrect. *See T.L.O.*, 469 U.S. at 337–42; *see also* 20 U.S.C. § 1232g; 15 U.S.C. § 6501 *et seq*. But even if PowerSchool is correct, this and any other legal question can be answered classwide, thereby satisfying predominance.

[90] *See, e.g.*, Ex. 13 at 15–26 (responding to interrogatory No. 5).

Further, "[c]onsent does not turn on individual class members' subjective understandings of privacy disclosures . . . and is not a bar to predominance" for certification of a class action. *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 582 (N.D. Cal 2025) (Donato, J.) (cleaned up). This element is evaluated under an objective standard. *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2024 WL 38302, at *4 (N.D. Cal. Jan. 3, 2024). As such, any disclosures ostensibly giving consent for PowerSchool's practices—and Plaintiffs are unaware of any—present a common question that is readily resolved for the entire class.

To the extent that PowerSchool intends to argue that schools' individual practices create an individual issue as to consent, that argument lacks support.[91] PowerSchool does not purport to directly inform parents of its practices or ensure that schools do so, so any purported actual consent that schools may obtain on its behalf is not informed. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("For consent to be actual, the disclosures must 'explicitly notify' users of the conduct at issue.") (quotation omitted). PowerSchool, moreover, does not keep (or at least did not produce) records showing that schools obtained actual, informed consent from parents, such as logs and disclosures demonstrating informed consent. Because PowerSchool never presented evidence to support this argument, there are no individual issues to resolve at trial.

Any argument that parents impliedly consent to its PowerSchool's data practices by failing to withdraw their children from school does not create individual issues either. Children in every state have a right to go to school and their parents have a legal obligation to send them there—voluntary assent to PowerSchool's practices cannot be inferred from parents sending their children to public schools that use PowerSchool. *See Shanahan v. IXL Learning, Inc.*, No. 24-CV-02724-RFL, 2024 WL 4658276, at *6 (N.D. Cal. Nov. 1, 2024). Any argument to the contrary can be resolved as a matter of law for the entire class.

**b. Do students have a reasonable expectation of privacy in their own personal information?**

This, too, presents a common question because the standard is objective. *See Rodriguez*, 2024 WL 38302, at *5 (holding whether plaintiffs had an "objective, reasonable expectation of privacy . . . is a question capable of resolution class-wide"). In addition to the robust privacy protections that all Americans enjoy as to their personal information, students—especially young students—are entitled to even greater

[91] *See, e.g.*, Ex. 8 at 18–25 (responding to interrogatory No. 6).

protections: FERPA demonstrates that all students have a reasonable expectation of privacy in their education records.[92] And COPPA demonstrates that children under 13 have a reasonable expectation of privacy in their personal information online.[93] Only a student's parent can relinquish these protections on behalf of their children, and only with fully informed and voluntary consent.[94] Moreover, the relevant data elements at issue are uniform, as described previously. At best, Defendants can show that schools take more data than the default settings in the relevant products. This does not change whether there is a reasonable expectation of privacy under an objective standard for the baseline data elements.

**c. Is PowerSchool's collection and use of data highly offensive to a reasonable person?**

This, too, is an objective standard. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). Plaintiffs identified uniform data taken by the relevant PowerSchool products, including [redacted] Again, PowerSchool's products can be configured to include additional data fields, but all PowerSchool products are shipped with a default set of data fields.[96] Further, there is no evidence that its customers collect *less* data than the data the products automatically collect. Indeed, the only evidence regarding modifications by customers shows that customers collect substantially more data than is collected using the default settings.[97] Plaintiffs' data privacy expert also opines that even the minimum data fields contain highly sensitive data and by PowerSchool controlling and processing such data without permission students are exposed to "diverse, longstanding, and significant

---

[92] 20 U.S.C. § 1232g; *see also* 34 CFR Part 99 (FERPA Regulations).

[93] 15 U.S.C. § 6501 *et seq.*; *see also* 16 CFR Part 312 (COPPA Rule); 64 F.R. 59888 (FTC's Statement of Basis and Purpose for the COPPA Rule).

[94] *See, e.g.*, 16 CFR Section 312.4(a) ("It shall be the obligation of the operator to provide notice and obtain verifiable parental consent prior to collecting, using, or disclosing personal information from children."); 34 CFR Section 99.7(a)(2)(iii) ("The notice [from an educational agency or institution] must inform parents or eligible students that they have the right to . . . consent to disclosure of personally identifiable information contained in the student's education records, except to the extent that the Act and §99.31 authorize disclosure without consent[.]").

[95] *See, e.g.*, *supra* at n. 7(these data fields are from PowerSchool SIS).

[96] *Id.*

[97] *See, e.g.*, Ex. 32, PWRSCHL_00007183 [redacted]

harm."[98] PowerSchool itself admits that the student data is extraordinarily valuable. As such, there are no relevant individual inquiries on this issue to defeat predominance.

### 2. Unjust Enrichment/California Quasi-Contract (Student Profiling and Prediction Classes only)

Plaintiffs argue that PowerSchool gained a multi-billion-dollar valuation and directly profited from monetizing children's data without their consent or compensation, and that it would be unjust to allow PowerSchool to retain these benefits.[99] Courts have found that predominance is met for unjust enrichment when the equitable circumstances between the defendant and each Class member were the same, such that the claims were resolvable by generalized, common proof on a classwide basis. *See Brickman v. Fitbit, Inc.*, No. 15-cv-02077-JD, 2017 WL 5569827, at *7 (N.D. Cal. Nov. 20, 2017) (holding unjust enrichment claim meets predominance where the defendant's "conduct is the same as to all members of the putative class" because "it is difficult to conceive of any significant equitable differences between class members"). Here, Plaintiffs claim that PowerSchool should not have sold and profited from the Student Profiling and Predication Products because (1) they were never tested for reliability, bias, or accuracy and (2) plaintiffs and Class members never gave effective consent to make insights or predictions about them using data fed into PowerSchool's untested products. These issues are resolved by common evidence; predominance is met for this claim.

### D. The Classes are Ascertainable

Although ascertainably is not a requirement for class certification in the Ninth Circuit, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017), there is ample evidence to identify Class members. PowerSchool produced numerous documents identifying its customers and the products they subscribe to.[100] Further, PowerSchool produced sales related spreadsheets identifying customer names, start/end dates, revenues, and student count.[101] The documents can be used to ascertain Class members, but are too voluminous to attach here.

---

[98] Barber Rpt. at 3-4.

[99] Compl. ¶¶ 556-66.

[100] *See* Aragon Decl. at ¶51.

[101] *Id.*

### E. Damages are capable of Classwide measurement.

Plaintiffs will prove monetary damages through common, classwide proof. Damages "are capable of measurement on a classwide basis" when the damages calculation is attributable to a plaintiff's theory of harm. *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013). Plaintiffs "need to be able to allege that their damages arise from a course of conduct that impacted the class" but "need not show that each members' damages from that conduct are identical." *Just Film*, 847 F.3d at 1120. "Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability." *Id.* at 1121. Class certification is appropriate even when "showing damages *could* be calculated on a classwide basis, even where such calculations have not yet been performed." *Id.*

Here, damages are easily calculated on a classwide basis. For the Data Warehouse Class, Plaintiffs' damages expert, Christopher L. Schulte, explains that he can calculate actual damages by utilizing PowerSchool's contemporaneous business records for different periods of time, classes, or subclasses.[102] Mr. Shulte has also developed objective methodologies to apportion any aggregate recovery among Class members which do not require individualized inquiries.[103] Notably, Mr. Shulte calculates a minimum, conservative[104] fair market value of student data based on arm's length negotiations for student data shared with third parties.[105] This is an actual damages calculation based on the minimum amount a party should pay when receiving student data in an arm's length transaction.[106] [redacted] This number can be attributed to the entire class as a benchmark for the data misappropriated by PowerSchool without consent.[108]

---

[102] Schulte Rpt. ¶¶ 28-62 (describing unjust enrichment and actual damages calculations and classwide evidence used to create those calculations) and ¶ 135.

[103] Schulte Rpt. ¶ 134; *see also supra* at n. 108 (describing ascertainably of class).

[104] Schulte Rpt. ¶ 10, pp. 4-6.

[105] *Id.*; *see also id.* ¶¶ 41-62.

[106] Schulte Rpt. ¶ 93.

[107] *Id.*; *see also* Schulte Rpt. at. 41–62 (discussing the monetization of student data by PowerSchool).

[108] *Id.*

The proposed Class Representatives and the classes are also entitled punitive damages. *Jackson v. First Nat'l Bank of Omaha*, No. CV 20-1295 DSF (JCX), 2022 WL 423440, at *9 (C.D. Cal. Jan. 18, 2022) ("California courts and district courts in the Ninth Circuit have recognized punitive damages may be appropriate for common law invasion of privacy claims."). In determining punitive damages, the focus is on common evidence such as "defendant's conduct toward the class as a whole." *Barefield v. Chevron, U.S.A., Inc.*, No. C 86-2427 TEH, 1988 WL 188433, at *3 (N.D. Cal. Dec. 6, 1988). Accordingly, damages for the Data Warehouse Classes are capable of measurement on a classwide basis.

With respect to the Student Profiling and Prediction Class, Plaintiffs allege that PowerSchool used student data—without student or parental consent—in untested products that generate life-altering predictions and insights, thereby unjustly enriching itself through the sale of the Student Profiling and Prediction Products. "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Facebook Tracking*, 956 F.3d at 599. And in California, a "stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *Id.* at 600. Here, Mr. Shulte determined that PowerSchool's unjust enrichment from PowerSchool's Student Profiling and Prediction Products is approximately $341 million over the period January 2019 through December 2025.[109] As such, damages for the Student Profiling and Predication Class can be measured on a classwide basis.

**F. Class Actions are superior to multiple individual actions.**

Rule 23(b)(3) requires "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The factors to consider when determining superiority are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*; *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

A class action is superior here because individual litigation costs would dwarf any potential recovery

[109] Schulte Rpt. at 4.

for a single Class member. The reality is that the alternative to this action is no action. Moreover, every relevant factor weighs in favor of certification. There are no other pending cases asserting substantively similar claims, PowerSchool is based in California and does not contest that venue in this district is proper, and there are no apparent difficulties in managing this class action. Although the classes are large, they are homogonous and the application of California law or, in the alternative, state-only subclasses make them manageable. And any unforeseen manageability concerns are mitigated by the court's broad discretion to use procedural tools to manage class litigation and the objective metrics used to define the Classes.

**G. Class Certification Under Rule 23(b)(2) for Injunctive Relief is Proper.**

Plaintiffs also seek class certification under Rule 23(b)(2) for equitable relief. "Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014). Certification under Rule 23(b)(2) is appropriate where the defendant "has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2).

Here, putative Class Representatives seek injunctive relief to stop PowerSchool's ongoing exploitation of their data without their consent by, at a minimum, (1) providing students and parents with clear and complete information regarding its data practices as necessary to support informed consent, and refraining from collecting data until it has obtained such consent; (2) requiring the development and implementation of a framework for data deletion and remediation to remedy the past nonconsensual generation of insights and predictions about students; (3) giving notice to each entity with which PowerSchool shared Class member data that the entity received data that was generated, collected, or shared without effective consent, and that the entity may face legal liability if it uses or shares that data for any reason; (4) giving a comprehensive notice of PowerSchool's past data practices, including identification of each entity with which PowerSchool shared Class member data; each entity's use or intended use of such Class member data; and a disclosure of the categories of predictions and inferences that PowerSchool made from such Class member data, including illustrative examples; (5) requiring that a minimal amount of data is generated and collected, consistent with COPPA requirements; (6) requiring that data is used solely for the educational purpose for which it is generated, strictly defined; and that data is secured and shared with people and entities only on a need-to-know basis, as required by law, or with express consent; (7) requiring

PowerSchool to automatically delete or turn over to class members their data once it is no longer needed by the person or entity that caused it to be generated; and (8) requiring an annual, independent third-party audit to ensure PowerSchool's compliance with this injunctive relief.

There is no dispute that PowerSchool "has acted or refused to act on grounds that apply generally to the class" by (1) allowing the collection, use, sale, and solicitation of student data using the Data Warehouse Products, and (2) by selling and using its Student Profiling and Prediction Products despite not having consent to use student data to generate insights and predictions about students using untested products. "Rule 23(b)(2) does not require [courts] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Ward v. United Airlines, Inc.*, 2021 WL 534364, at *7 (N.D. Cal. Feb. 12, 2021) (cleaned up). That standard is easily met here. "Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Further, injunctive relief here would bring "important changes to reflect transparency in the system." *Brown v. Google, LLC*, No. 20-CV-3664-YGR, 2022 WL 17961497, at *20 (N.D. Cal. Dec. 12, 2022) (certifying classes under Rule 23(b)(2) for claims including invasion of privacy, intrusion upon seclusion, and the CDAFA, where the plaintiffs sought similar injunctive relief related to collection, storage, and use of private data).

For these reasons, Rule 23(b)(2) certification is appropriate because the requested relief applies uniformly to the Injunctive Relief Class and the challenged conduct is common to the entire Class, making a single injunction a proper and efficient remedy.

## V. CONCLUSION

Plaintiffs respectfully request the Court certify the classes under Rule 23(b)(2) and Rule 23(b)(3), appoint Plaintiffs as Class Representatives, and proposed counsel as Class Counsel.

Dated: February 9, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ Leonard W. Aragon
Leonard W. Aragon (*pro hac vice*)

E. Tory Beardsley (*pro hac vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

Attorneys for Plaintiffs