Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMILY CHERKIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>Defendant. | Case No.: 3:24-cv-02706-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT POWERSCHOOL HOLDINGS, INC.'S MOTION FOR SANCTIONS**<br><br>Judge: The Honorable James Donato<br><br><u>Hearing</u><br>Date: April 9, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11, 19th Floor |

# TABLE OF CONTENTS


I. FACTUAL BACKGROUND .......... 2

A. The Amended Complaint removed all statements regarding M.M.C.'s and L.M.C.'s use of Schoology. .......... 2

B. M.M.C. and L.M.C.'s data is in PowerSchool's product .......... 2

C. Mr. Concepción has a good-faith belief that his children used Schoology .......... 3

D. There is no objective evidence that definitively refutes Mr. Concepción's recollection .......... 4

E. Notwithstanding the ambiguity in the evidence, Plaintiffs agreed to withdraw the allegations relating to Schoology and related claims. .......... 6

F. M.M.C. and L.M.C. are appropriate class representatives. .......... 7

II. STANDARD .......... 8

III. ARGUMENT .......... 8

A. The motion is moot because Plaintiffs removed all challenged allegations from the Complaint. .......... 8

B. Plaintiffs had a good-faith basis for their allegations. .......... 10

C. The untimeliness of PowerSchool's motion undermines its request for sanctions. .......... 13

D. Sanctions would be improper. .......... 14

IV. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Babadjanian v. Deutsche Bank Nat'l Trust Co.*, No. CV 10-02580, 2011 WL 13214300 (C.D. Cal. Mar. 29, 2011) ........ 14

*Barber v. Miller*, 146 F.3d 707 (9th Cir.1998) ........ 9

*Galvan v. Walt Disney Parks and Resorts*, No. CV 18-01721, 2019 WL 8017806 (C.D. Ca. Dec. 20, 2019) ........ 12

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir. 1986) ........ 8

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) ........ 13, 15

*Islamic Shura Council of S. Cal. v. F.B.I.*, 757 F.3d 870 (9th Cir. 2014) ........ 14

*Lake v. Gates*, 130 F.4th 1064 (9th Cir. 2025) ........ 10

*Mabson v. Ass'n of Apartment Owners of Maui Kamaloe*, No. CV 06-00235, 2007 WL 2873489 (D. Haw. Sept. 25, 2007) ........ 12

*Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336 (9th Cir. 1988) ........ 8

*Ringgold-Lockhart v. Cty. of L.A.*, 761 F.3d 1057 (9th Cir. 2014) ........ 8

*Sneller v. City of Bainbridge Island*, 606 F.3d 636 (9th Cir. 2010) ........ 8, 9

*Strom v. U.S.*, 641 F.3d 1051 (9th Cir. 2011) ........ 11

*United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102 (9th Cir. 2001) ........ 12

*Westerkamp v. Mueller*, No. CV-21-02088, 2023 WL 3792739 (D. Ariz. June 2, 2023) ........ 9

**Statutes**

California Comprehensive Data Access and Fraud Act ........ 8

California Invasion of Privacy Act ........................................................................ 8

**Other Authorities**

Federal Rule of Civil Procedure 11 ........................................................................ *passim*

Federal Rule of Civil Procedure 23 ........................................................................ 7

Plaintiffs ask the Court to deny Defendant PowerSchool's Rule 11 motion for three independent reasons.

**First**, the motion is moot. After the parties met and conferred regarding the Rule 11 motion, Plaintiffs amended the complaint ("Complaint")—with PowerSchool's consent and permission from the Court—to remove allegations and related claims that M.M.C. and L.M.C. used Schoology. Plaintiffs also asked PowerSchool what other allegations should be removed from the Complaint to resolve the Rule 11 dispute, and PowerSchool offered nothing. The operative complaint ("Amended Complaint"), filed on March 9, 2026, does not contain the statements that form the basis of PowerSchool's motion. Because an amended pleading supersedes the original pleading, the motion rests on allegations that no longer exist and must be denied.

**Second**, Plaintiffs removed the allegations in good faith to avoid unnecessary motion practice, but even if Plaintiffs had not voluntarily withdrawn the allegations and mooted the motion, the challenged allegations had a good-faith basis when they were made. Mr. Concepción testified that he recalled his children being asked by teachers to use Schoology to submit work, and his allegations in the Complaint and responses to discovery are consistent with his recollection. And PowerSchool has not produced evidence conclusively disproving his recollection. At most, the parties dispute which PowerSchool product was used by the school district to collect, store, and process the family's data. That type of factual dispute does not support Rule 11 sanctions. Further, had PowerSchool informed Mr. Concepción which of its products his children would be using, disclosed its data practices to him, and properly sought his consent—as was its legal obligation—Mr. Concepción's recollection (and records) would be clearer.

**Third**, the motion is untimely. PowerSchool has always known whether the relevant school district licensed or used its products. Yet it waited nearly twenty months after the Complaint was filed—and after fact discovery closed—to pursue sanctions. Rule 11 is not intended to be used in such a dilatory, unduly prejudicial manner.

For these reasons, PowerSchool's motion is baseless and must be denied. Once Plaintiffs agreed to withdraw the allegations, PowerSchool's motion became frivolous. Plaintiffs respectfully request that the Court deny the untimely motion and award Plaintiffs fees and costs associated with responding to the motion. *See* Fed. R. Civ. P. 11(c)(2).

# I. FACTUAL BACKGROUND

## A. The Amended Complaint removed all statements regarding M.M.C.'s and L.M.C.'s use of Schoology.

PowerSchool's motion is premised on a Complaint that has since been amended—with PowerSchool's consent—to address the issues in the Rule 11 Motion. *See* Dkt. Nos. 126 (Motion for Leave to Amend); 129 (Notice of Consent to Amendment); 130 (Order Granting Leave to Amend). PowerSchool argues that M.M.C. and L.M.C. did not use Schoology—a learning management software—at their school, but those allegations and claims are not in the Amended Complaint. Dkt. No. 131 (Amended Complaint). PowerSchool nonetheless basis its motion on the original Complaint (*see, e.g.*, Dkt. No. 128 at 3-4), even though it is now a nullity and PowerSchool consented to its filing.

## B. M.M.C. and L.M.C.'s data is in PowerSchool's product.

PowerSchool, moreover, suggests that M.M.C. and L.M.C. do not use any PowerSchool products, but that is extraordinarily misleading. *See, e.g.,* Mot. at 1. It is undisputed that M.M.C.'s and L.M.C.'s data is in the PowerSchool student information system "SIS," a system that collects, stores, and processes sensitive information about students and their families.[1] *See* Dkt. No. 117 at 7-8 (explaining that the Concepción family's sensitive data is in the PowerSchool SIS product used by the District); *see also* Concepción Decl. ¶¶ 6-7, 9-11 (explaining how PowerSchool collects the Concepción family's data and that Mr. Concepción received a letter from the district explaining that his family's data may have been compromised in the PowerSchool data breach); Aragon Ex. A (Concepción Dep. 68:5-19; 69:19-70:9; 74:9-75:15; 82:15-83:14[2];

---

[1] *See, e.g.,* https://www.powerschool.com/solutions/student-information/powerschool-sis/ (last visited March 9, 2026).

[2] It appears that defense counsel and Mr. Concepción, at times, were confused as to whether they were discussing the PowerSchool Parent Portal or the "ParentSquare" app. The former is a PowerSchool product and the latter is not. ParentSquare is used to communicate with parents and students (*see* parentsquare.com/about/), while PowerSchool SIS, accessed via the "Parent Portal," is used to collect, store, and process student data. The two products, however, are "associated" with each other. *See, e.g.,* 81:17-82:2 and Ex. 6) (text message explaining how to access student "assessments" in the PowerSchool Parent Portal).

84:19-87:1) (generally describing interactions with PowerSchool products and data collected by PowerSchool).[3]

Defendant apparently takes issue with the fact that the children do not directly input information into the PowerSchool SIS, but this is unremarkable because their claims have been brought, as they must, by and through their father, who regularly interacts with the PowerSchool SIS to input and receive data about his children. *See id.*; Dkt. Nos. 117, 131; *see also* https://wccusd.powerschool.com/public/ (last accessed March 12, 2026) (PowerSchool SIS website for West Contra Costa Unified School District ["WCCUSD"] that allows parents and students to log in and instructs parents to complete various forms for their children, including forms requiring health information). Further, there is a student login for PowerSchool SIS, *id.*, so it is highly likely that the children did interact directly with PowerSchool SIS, and that the children, due to their age, simply could not recall the name of the product at deposition. In any event, the Concepción children's data is unquestionably held by PowerSchool in the PowerSchool SIS, even if that information was added to the product by Mr. Concepción or school administrators and not the children directly. *Id.* The children's school district also pays to license and use PowerSchool SIS. Dkt. No. 128-6. Because there is no doubt that the children's data is in PowerSchool's system—even if the children did not manually input the data into the product themselves, which is not a prerequisite to any claim asserted by Plaintiffs—PowerSchool's claim that the family did not "use" a PowerSchool product is simply not true.

**C. Mr. Concepción has a good-faith belief that his children used Schoology.**

Mr. Concepción, L.M.C. and M.M.C.'s father, alleged in the Complaint that the family used Schoology and confirmed that belief in response to discovery. *See* Dkt. No. 1 at 376; Aragon Decl. Ex. A; Dkt. Nos. 128-2; 128-3; 128-4. This, as has been explained to PowerSchool on multiple occasions, is because Mr. Concepción recalls that teachers asked him to make sure his children use Schoology to submit school assignments and confirmed this recollection at deposition. Aragon Decl. Ex. A (Concepción Dep. 97:20-98:2).

[3] PowerSchool states that Plaintiffs could not identify any PowerSchool products they do use. *See, e.g.,* Mot. at 2 ("Nor could these plaintiffs identify any other PowerSchool products they do use."). This is obviously false as to Mr. Concepción, as indicated by this citation, and it is unremarkable that young children do not know the corporate ownership or exact name of products they use in elementary school.

PowerSchool asked Mr. Concepción why he believed his children used Schoology and he replied: "That's the one that teachers have asked us to make sure that they put their information through the Schoology or the Schoology Program." *Id.* PowerSchool never substantively followed up on this testimony to further ascertain why he believed his children used Schoology when the school does not subscribe to the product. *See generally* Aragon Ex. A (Concepción Dep. 98:13-102:1). Instead, PowerSchool showed Mr. Concepción various screenshots of other learning management tools. *Id.* Mr. Concepción testified that he was familiar with certain other products his children are currently using but never recanted his testimony that he believed his children used Schoology or that a teacher had instructed them to use the product in the past. *Id.*

PowerSchool criticizes the family's responses to interrogatories and requests for admission, but these responses are consistent with Mr. Concepción's recollection. PowerSchool is correct that the Concepción children—who would have been as young as five when they used the product and are now only 10 and 12—did not recall using Schoology, but their written discovery responses are based on Mr. Concepción's recollection of them using the product, not their own. *See, e.g.,* Dkt. No. 128-3 at 1 ("Plaintiff L.M.C., by and through her father David Concepción, hereby serves her Responses and Objections to Defendant PowerSchool Holdings, Inc.'s First set of Interrogatories"); Dkt. No. 128-4 at 1 (Plaintiff M.M.C., by and through his father David Concepción, hereby serves his Responses and Objections to Defendant PowerSchool Holdings, Inc.'s First set of Interrogatories"). Mr. Concepción believed that a statement that his children did not use Schoology would be false based on his recollection and responded accordingly. Concepción Decl. ¶ 3; Aragon Decl. ¶ 15. This is not a subterfuge; it is a good-faith response to discovery and an attempt to truthfully testify as to his recollection. Further, had PowerSchool fulfilled its duty under both state and federal law and sought Mr. Concepción's informed consent before taking and using his children's personal information—through any product—Mr. Concepción's understanding of which products his children were using would have been clear. Indeed, PowerSchool's failure to do is the basis of this lawsuit.

**D. There is no objective evidence that definitively refutes Mr. Concepción's recollection.**

PowerSchool claims that the Concepción family and their attorneys should have known that the children never used Schoology. But the only objective evidence it cites to support this "fact" is a partial

school board agenda discussing, in cursory fashion, the district adopting PowerSchool SIS; school board minutes from 2020 summarizing a presentation on investments to "solidify data report" that only mentions PowerSchool in passing ("Dr. Wold provided clarification for tying PowerSchool and Munis employee systems to enable dynamic reports"); and a PowerPoint presentation on "Building the Foundation for Data Reporting" from October 7, 2020. Dkt. No. 128-6 at 2-3, 9, and 12-15. None of these documents even mention Schoology, let alone state or even imply that the district never used, considered, or otherwise tested Schoology or any other learning management system. The only tangentially relevant statement is page four of the PowerPoint that lists Teaching and Learning software used at the district and Schoology is not included. At most, this means that the district did not contract to use Schoology in 2020, which is meaningless to the question of whether they ever considered, tested, or used Schoology.[4] Further, the flowchart says Clever, a learning management system, is used for "Teaching and Learning and "79 systems & apps" which could certainly include Schoology.

Notably, PowerSchool never explicitly states that the school or district never used Schoology.[5] It only states that the district has never "*licensed* Schoology (neither as a test subscription or otherwise)" (emphasis added). Mot. at 4 (emphasis added). But the evidence it cites, *supra*, clearly does not support that statement. The materials cited by PowerSchool, at most, show that Schoology was not licensed for use in 2020, but in no way establish that the district never used the product on a trial basis or otherwise tested the product when choosing what learning management system to adopt. Persuading a district to use Schoology is consistent with PowerSchool's cross-selling strategy whereby PowerSchool tries to sell additional PowerSchool products to schools who already subscribe to a different product. *See* Dkt. No. 119 at n. 40.

[4] Districts change technology products regularly. For example, the flowchart lists "Blackboard" as the "Mass Notification" platform, but as described above (n. 2) the district now uses ParentSquare for communications, and that product is not listed.

[5] PowerSchool makes contradictory statements regarding Schoology's use at WCCUSD: "Unlike Plaintiffs, PowerSchool could not have confirmed the truth of these allegations without depositions, as many schools host their own data even while licensing PowerSchool products, and schools (not PowerSchool) decide whether to provide accounts to students for any product they license." Mot. at 1. M.M.C. and L.M.C. only attended elementary school in the WCCUSD (Dkt. No. 1 at ¶¶ 373-374), and this sentence suggests that the district may have created Schoology accounts for them, but elsewhere PowerSchool suggests the district never used the product. *Compare id.* with Mot. at 4 ("L.M.C.'s and M.M.C.'s school district has never licensed Schoology (neither as a test subscription or otherwise). (emphasis in original) (citing Ex. E).

(explaining importance and effectiveness of cross-selling strategy). Here, the District already subscribed to PowerSchool SIS, so it is plausible that PowerSchool tried to sell the district Schoology and that the district tested the product.

Further, the documents PowerSchool cites purporting to show that the district never used Schoology relate to the adoption of a student information system—a tool to collect, store, and process student and family data, such as PowerSchool SIS. But Schoology is a learning management system—an entirely different tool, one that schools use in connection with daily teaching and learning.[6] PowerSchool cites no public information or other objective materials showing what learning management systems, such as Schoology, the school considered. Even though the district is its customer and PowerSchool admits it was in communication with the school about the case, PowerSchool failed to obtain a statement from a school representative about which products the district used. PowerSchool has not even provided a corporate declaration stating that the school or district never used the product, choosing to instead rely on irrelevant documents regarding the student information system. In short, PowerSchool has provided no objective evidence—whether publicly available or produced during discovery—definitively refuting Mr. Concepción's recollection. If anything, discovery showed that it is highly likely that PowerSchool tried to persuade the district to adopt Schoology, thus rendering Mr. Concepción's recollection is correct. These factual disputes are matters for cross examination, not Rule 11 sanctions.[7]

### E. Notwithstanding the ambiguity in the evidence, Plaintiffs agreed to withdraw the allegations relating to Schoology and related claims.

Plaintiffs filed the Complaint on May 6, 2024, and, according to PowerSchool, there was objective evidence definitively establishing that the Concepción children did not use Schoology. Putting aside that there is no such evidence, PowerSchool (by its own admission) claims there was sufficient information that any reasonable person would have known that the Concepción family did not use Schoology when they received the Complaint and certainly after deposing the family. PowerSchool, however, did not serve its

---

[6] https://www.powerschool.com/solutions/personalized-learning/schoology-learning/(last visited March 12, 2026).

[7] PowerSchool claims prejudice because it had to litigate a case involving Schoology even though the children may not have used the product but ignores that Plaintiff S.G. used Schoology and would have been subject to the same substantive discovery even if M.M.C. and L.M.C. were not in the case.

Rule 11 motion until January 27, 2026, twenty months *after* receiving the allegedly false statements and well after fact discovery closed.

After receiving the original Rule 11 motion, the parties met and conferred on multiple occasions and exchanged multiple emails to resolve the issues raised in the Rule 11 motion. Aragon Decl. Ex. B. During the meet-and-confer process, and prior to the expiration of the 21-day safe harbor provision, Plaintiffs offered to withdraw the allegations regarding M.M.C. and L.M.C. using Schoology. Aragon Decl. at ¶ 4. PowerSchool, however, stated that it still intended to file its motion despite Plaintiffs' agreement to withdraw the allegedly false statements. *Id.* at ¶ 5.

Plaintiffs asked PowerSchool to reconsider its position and whether there were additional allegations they could consider withdrawing to prevent PowerSchool from filing the motion. *Id.* at 6. PowerSchool offered nothing; instead, asserting that it was filing the motion notwithstanding the fact that Plaintiffs were willing to withdraw the allegedly false statements. *Id.* at 7. PowerSchool served an amended Rule 11 motion on February 24, 2026. Aragon Decl. ¶ 3 and Ex. B (redlined Motion for Sanctions). Plaintiffs filed their Motion for Leave to Amend three days later on February 27, 2026, withdrawing the allegations and claims related to Schoology. *See* Dkt. No. 126. PowerSchool consented to the amendment the same day (Dkt. No. 129), and the Court granted the Motion for Leave to Amend on March 5, 2026. Dkt. No. 130. Plaintiffs filed the operative First Amended Class Action Complaint on March 9, 2026. Dkt. No. 131.

**F. M.M.C. and L.M.C. are appropriate class representatives.**

Although it is irrelevant to the Rule 11 motion, PowerSchool claims that M.M.C. and L.M.C. are inadequate class representatives because they do not use Schoology. But this represents a fundamental misunderstanding of the claims and class actions generally. There are three classes. The only class that seeks to include students who use Schoology is the injunctive relief class (Dkt. No. 119), which only asks whether "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole…." Fed. R. Civ. P. 23(b)(2). Here, M.M.C.'s and L.M.C.'s claim that PowerSchool collects, uses, and processes data without effective consent, is still a classwide issue irrespective of whether that data is collected by Schoology, a product ostensibly not used by the Concepción children, or PowerSchool SIS, a product indisputably used by the Concepción children. In short, PowerSchool's unlawful data collection using its

various products is an issue that can be answered by resolving M.M.C.'s and L.M.C.'s claims even if their data was collected using PowerSchool SIS rather than Schoology—the difference is immaterial.[8] *See generally* Dkt. No. 119 at 24-25.

## II. STANDARD

Rule 11 authorizes sanctions when counsel presents to the court "a pleading, written motion, or other paper" for an improper purpose or without reasonable legal or factual basis. Fed. R. Civ. P. 11(b), (c). The Ninth Circuit has recognized that Rule 11 is the appropriate means to address "frivolous or abusive filings." *Ringgold-Lockhart v. Cty. of L.A.*, 761 F.3d 1057, 1065 (9th Cir. 2014). The court has broad discretion to determine what sanctions are proper for violations of Rule 11. *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). However, "Rule 11 is an extraordinary remedy" to be reserved for "rare and exceptional" cases. *Operating Eng'rs Pension Tr. v. A-C Co.,* 859 F.2d 1336, 1344-45 (9th Cir. 1988).

## III. ARGUMENT

### A. The motion is moot because Plaintiffs removed all challenged allegations from the Complaint.

Rule 11 has a safe-harbor provision that precludes an award of sanctions if a party withdraws the allegedly false statements after being served with a Rule 11 motion. *See, e.g.*, *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 639-40 (9th Cir. 2010) (citing rule 11(c)(2) of the Federal Rules of Civil Procedure and holding that safe-harbor conditions are met if challenged claims are withdrawn within the 21-day period). Plaintiffs' Amended Complaint deleted all substantive allegations that M.M.C. and L.M.C. used Schoology and withdrew claims under the California Invasion of Privacy Act and the California Comprehensive Data Access and Fraud Act. Dkt. No. 131. By withdrawing the challenged allegations and claims, Plaintiffs

---

[8] PowerSchool complains that its Naviance and Unified Insights are included in the class motion even though the children never used those products. Mot. at 6. The children, however, never claimed to use Naviance. The product is included in the injunctive relief class because it, like the other PowerSchool products included in the class, collects, retains, and processes student data without permission. It is irrelevant that the children do not use that specific product because PowerSchool's conduct as to the Class is uniform whether data is collected by Naviance or some other PowerSchool product. Dkt. No. 119 at 24-25 and n. 7. As for Unified Insights, the claim is not based on retention of data derived from the product, the claim alleges that untested predictive analytics product should not be used at all. *Id.* at 4-6. And there is no competent evidence that it was not used by M.M.C.'s or L.M.C.'s school, just inadmissible attorney hearsay that the district did not retain data from the product related to M.M.C. or L.M.C. Dkt. No. 128-1 at ¶ 20. Indeed, PowerSchool admits the district used the product for a year. Mot. at 13 (citing *id.* at ¶¶ 18-19).

satisfied Rule 11's safe-harbor provision and mooted the motion. *Sneller,* 606 F.3d at 639-40*; see also Westerkamp v. Mueller*, No. CV-21-02088, 2023 WL 3792739, at *3 (D. Ariz. June 2, 2023) (holding that an amended complaint supersedes the original, and the original—now a nullity—cannot support a Rule 11 motion) (citing *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent.")).

PowerSchool claims that the allegations and claims were not withdrawn within 21 days of service of the original motion, but that motion was never filed, and PowerSchool sent Plaintiffs a substantively amended motion on February 24, 2026. *See* Aragon Decl. ¶ 8 and Ex. B. Plaintiffs filed their motion to amend the complaint three days after receiving the amended motion, well within the 21-day safe-harbor provision of Rule 11. *Sneller*, 606 F.3d at 639 (holding that "Rule 11(c)…provides a 21-day safe harbor period. Under this provision, Rule 11 sanctions may not be imposed if the challenged claim is withdrawn within 21 days after service of the sanctions motion.") (citing Fed. R. Civ. P. 11(c)(2)); *Barber v. Miller,* 146 F.3d 707, 710 (9th Cir.1998)).

PowerSchool argues that the amended Rule 11 motion did not contain substantive changes (Mot. at fn. 1), but that is demonstrably false. PowerSchool made over 274 edits and added approximately two pages to the motion. Aragon Decl. ¶ 9. Further, the original motion claimed that Mr. Concepción, M.M.C., and L.M.C. did not use any PowerSchool products, a statement that PowerSchool knows is false. *See* Aragon Ex. B at p. 2, ll. 5-8 (removing statement that Mr. Concepción does not use any PowerSchool "products" and replacing with statement that he and his family does not use Schoology). More importantly, once Plaintiffs received the substantively revised motion—a product of several meet and confers between counsel—Plaintiffs agreed to withdraw the challenged allegations and claims and moved to withdraw those claims within three days, thereby meeting the safe-harbor provision. *See* Fed. R. Civ. P. 11 advisory committee's notes to 1993 amends ("Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed.").[9]

[9] PowerSchool's reliance on *Richter v. Oracle Am., Inc.*, is misplaced. No. 22-cv-04795, 2023 WL 8586690, at *6 (N.D. Cal. Dec. 8, 2023). The *Richter* Court said that a party meets the safe-harbor provision even if the motion it files differs from the motion that was served. *Id.* Here, Plaintiffs are not arguing that the motion was procedurally defective. Plaintiffs argue that it was substantively different, which the motion in *Richter* was not (*id.*), and that they should be afforded an opportunity to correct the issues raised in the revised

Further, Plaintiffs offered to amend the Complaint well before receiving the revised motion and during the safe-harbor period. Aragon Decl. ¶ 10. The original, never-filed motion was served on January 27, 2026. Mot. at 6. The parties met and conferred and exchanged several emails regarding the motion. *Id.* at ¶ 11. After completing the meet and confer process, Plaintiffs offered to withdraw the allegations relating to Schoology to resolve the Rule 11 motion on February 17, 2026, 21 days after receiving the motion. *Id.* at ¶ 12. PowerSchool, however, stated that it still intended to file the motion because they did not believe "any amendment could remedy the problem." *Id.* at ¶ 13. Despite this position, PowerSchool agreed to further discuss the motion and to provide a redline of the motion before filing. *Id.* at ¶ 14.

The revised Rule 11 motion, including a red-lined version, was sent to Plaintiffs' counsel on February 24, 2026. Aragon Decl. ¶ 3. After receiving the amended Rule 11 motion, Plaintiffs asked if there were any other amendments they could make to resolve the purported Rule 11 issue. *Id.* at ¶ 6. PowerSchool offered nothing. *Id.* at ¶ 7. Plaintiffs moved to amend the Complaint—after determining that a stipulation to amend after the amendment deadline was procedurally improper—three days after receiving the amended Rule 11 motion. *Id.* at ¶ 16. Under these facts, there is no question that Plaintiffs met the safe-harbor provision of Rule 11.

**B. Plaintiffs had a good-faith basis for their allegations.**

A Rule violation based on an allegedly frivolous filing requires the court to determine that a pleading is "*both* baseless *and* made without a reasonable and competent inquiry." *Lake v. Gates,* 130 F.4th 1064, 1068 (9th Cir. 2025) (emphasis in original). PowerSchool's motion fails both prongs.

First, Mr. Concepción testified why he believed his children used Schoology: "That's the one that the teachers have asked us to make sure that they put their information through the Schoology." Aragon Decl. Ex. A (Concepción Dep. 97:20-98:2). PowerSchool took a six-hour deposition of Mr. Concepción that established he used PowerSchool extensively and did not recognize the current version of Schoology, but never explored why he still believed his children used Schoology. If PowerSchool's attorneys asked, he would have further explained:

---

motion to avoid sanctions. Otherwise, parties would be forced to file unnecessary motions even as they try to resolve the issues raised by the motion, a position contrary to the purpose of Rule 11. *See* Fed. R. Civ. P. 11(c)(2). *Richter* is inapposite.

- He recalls that his children used a product called Schoology and that it was a PowerSchool product. Concepción Decl. ¶ 4.
- He specifically recalls his children's teachers asking him to make sure his children used Schoology to submit work. Concepción Decl. ¶ 5.
- He believes that PowerSchool stores information it collects using Schoology or similar learning management tools. Concepción Decl. ¶ 6.
- He believed it would be improper for him to deny that his children used Schoology because of his recollection. Concepción Decl. ¶ 3.
- He has not seen any document or other materials that would definitively refute his recollection, although he understands that his recollection may be incorrect. Concepción Decl. ¶¶ 8-11.

Based on the foregoing, Mr. Concepción had a good-faith basis for asserting that his children used Schoology. Even if he was mistaken, his recollection is not baseless. PowerSchool—with absolute knowledge of who uses its product and how they are used—provided no evidence that M.M.C.'s or L.M.C.'s school or school district never tested or otherwise utilized Schoology. Indeed, PowerSchool is mealy-mouthed about the subject, stating that the district never "licensed" Schoology but avoiding a statement (let alone a declaration from a corporate representative or its customer, the school district) that the school district never tested the product or otherwise used the product on a trial basis.

The only evidence PowerSchool could find to submit as "proof" that the school and district did not use Schoology was a PowerPoint presentation from 2020, minutes from a Board meeting, and a corresponding letter stating that the district is adopting PowerSchool SIS. None of these documents mention Schoology, let alone establish that the product was never used or tested by the school or district. If PowerSchool cannot muster proof to refute Mr. Concepción's recollection that Schoology was used by M.M.C. or L.M.C., Mr. Concepcion's recollection is sufficient to support his belief. *Strom v. U.S.*, 641 F.3d 1051, 1059 (9th Cir. 2011) (holding that "Rule 11 sets a low bar: It deters 'baseless filings' by requiring a 'reasonable inquiry' that there is some plausible basis for the theories alleged.").

Second, Mr. Concepción and his counsel investigated his children's use of Schoology and was aware that the school district did not contract to use Schoology. Aragon Decl. ¶ 15.[10] And although the School

[10] If the Court requires additional information about counsel's investigation, Plaintiffs' counsel respectfully request leave to submit an in-camera declaration describing what was known and explained to Mr. Concepción regarding the use of Schoology by the district.

does not contract to use Schoology, it was and is unclear whether they ever used the product and evidence produced in discovery confirmed that PowerSchool implements a cross-selling strategy across its product lines, meaning that it was highly likely, if not a certainty, that PowerSchool attempted to sell Schoology to the district. As such, it was reasonable to rely on Mr. Concepción's recollection. *United Nat'l Ins. Co. v. R & D Latex Corp.,* 242 F.3d 1102, 1117-18 (9th Cir. 2001) (reversing Rule 11 sanctions because "[c]ounsel ... had *some* plausible basis, albeit quite a weak one" for the argument advanced). And when PowerSchool raised the issue after discovery confirmed that the school and district never contracted to use Schoology, and there was no indication the district used the product, Mr. Concepción and his attorneys withdrew the allegations.

Under PowerSchool's own authorities, the possible inaccuracy of Mr. Concepción's recollection is not a basis for Rule 11 sanctions. *See* Mot. at 10 (citing *Patterson v. Apple Comput., Inc.*, 2005 WL 2277005, at **33–36 (N.D. Cal. Sept. 19, 2005) (granting motion because plaintiff always knew, and further discovery confirmed, that certain defendants were not involved in the complained-of conduct, yet plaintiffs continued to pursue those claims even after receiving Rule 11 notices and multiple requests to withdraw the allegations); *Galvan v. Walt Disney Parks and Resorts*, No. CV 18-01721, 2019 WL 8017806, at **2–3 (C.D. Ca. Dec. 20, 2019) (granting sanctions motion because plagiarized complaint alleged that plaintiffs had developmental disorders and impairments even though plaintiffs knew at all times this was false, and counsel never asked whether the allegations were true); *Mabson v. Ass'n of Apartment Owners of Maui Kamaloe*, No. CV 06-00235, 2007 WL 2873489, at **3–4 (D. Haw. Sept. 25, 2007) (granting sanctions because allegations that plaintiff was handicapped were false and attorney did nothing to verify allegations and continued to pursue litigation even after he knew allegations were false). These cases involve obvious fabrications and refusals to recant undeniably false allegations and claims based on those allegations, not a good-faith belief (and possible mistake) about which product was used to give rise to the complaint.

Here, there is still no competent evidence to definitively refute Mr. Concepción's recollection and, unlike the plaintiffs in the cases cited by PowerSchool (*id.*), the Concepción family and their counsel agreed to withdraw the allegations after receiving the Rule 11 motion. Further, PowerSchool **does** collect, store, and process M.M.C.'s and L.M.C.'s data without effective consent, the primary allegations supporting the claims in the complaint. Dkt. Nos. 1 and 131; *see also* Dkts. No. 119 at 16-17. The fact that PowerSchool

collects, uses, and processes data using its PowerSchool SIS product rather than its Schoology product is of no consequence. *Id.*

Because Mr. Concepción had a good-faith basis for bringing his claim, there was no investigation that could have been performed to objectively refute his recollection before filing the Complaint, PowerSchool cannot definitively confirm that his recollection is incorrect, and he withdrew the allegations in good faith, there is no basis for a Rule 11 sanction under PowerSchool's own authorities.

**C. The untimeliness of PowerSchool's motion undermines its request for sanctions.**

PowerSchool always knew whether M.M.C. and L.M.C. used Schoology. They either licensed the product to the school or not, whether as a trial or test period or under a license for extended use. There is nothing in the record stating that schools or districts can surreptitiously use Schoology without PowerSchool's knowledge. PowerSchool states that certain schools or districts "host" their own data (Mot. at 1), but this does not mean that PowerSchool does not know whether the school or district uses its products. A district that hosts their own data simply means that the data is on premise and not on PowerSchool's servers. Dkt. 119 at n. 69. What products schools and school districts use is obviously known by PowerSchool. *See generally id.* at n. 46. Indeed, selling their products and services to schools and school districts is PowerSchool's primary source of revenue. *Id.* at n. 11.

Despite always knowing whether the Concepción children used Schoology, PowerSchool's Rule 11 motion is untimely because PowerSchool waited almost twenty months to serve it. *See Holgate v. Baldwin*, 425 F.3d 671, 679 (9th Cir. 2005); (recognizing that Rule 11 motion based on complaint filed more than a year earlier was "hard to view" as timely) (citing Fed. R. Civ. P. 11 advisory comm. notes to 1993 amends., which state that "[o]rdinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely."). It is inconsistent—and disingenuous—for PowerSchool to claim that Mr. Concepción and his attorneys knew or should have known that Mr. Concepción's recollection was incorrect but then wait 20 months to assert that it was. The Rule 11 motion—filed twenty months after PowerSchool claims it was known that the Concepción children did not use Schoology and

more than five months after completing Mr. Concepción's deposition and more than three months after completing the minor children's depositions—is untimely and must be denied.[11] *Id.*

**D. Sanctions would be improper.**

PowerSchool asks the Court to dismiss the Concepción family's claims and award fees, but the case law it cites does not support its request. Again, in each case cited by PowerSchool (Mot. at 11–12) the plaintiffs refused to withdraw allegations they objectively knew were false. *See, e.g., Babadjanian v. Deutsche Bank Nat'l Trust Co.,* No. CV 10-02580, 2011 WL 13214300, at *16–18 (C.D. Cal. Mar. 29, 2011) (sanctioning plaintiffs because they knew they had communicated with their loan servicer, contrary to allegations in the complaint). Here, Mr. Concepción's recollection is, at worst, incorrect. And unlike the *Babadajanian* plaintiffs, Mr. Concepción and his attorneys were unable to **objectively** verify that his recollection was false. *Id.* (noting that Rule 11 is based on an objective standard). Mr. Concepción was aware that the school did not contract with PowerSchool to use Schoology, but this does not mean that his recollection was necessarily false for the reasons stated above. PowerSchool's case law is inapposite.

More importantly, dismissal or monetary sanctions are improper when, as here, the issues were withdrawn within 21 days after receiving the amended Rule 11 motion. Fed. R. Civ. P. 11(c)(2). The safe-harbor provision—which the Concepción family and their attorneys met—precludes a sanction. *Islamic Shura Council of S. Cal. v. F.B.I.*, 757 F.3d 870, 872–73 (9th Cir. 2014) (holding that sanctions are improper if the challenged conduct is withdrawn within the 21-day safe harbor provision of Rule 11).

Even if the Concepción family had to move to withdraw the allegations and claims within 21 days of receiving a Rule 11 motion that was never filed and substantively amended, sanctions are still inappropriate because Plaintiffs withdrew the allegations and claims in a timely manner. *Id.* (recognizing that "[f]ee sanctions compensate a party for the costs of enforcing the rule when the party taking the challenged position has refused to withdraw or correct it." (citing Fed. R. Civ. P. 11(c)(2)). Plaintiffs offered to withdraw the allegations within the safe-harbor period after receiving the original Rule 11 motion and moved to withdraw the allegations and claims three days after receiving the revised motion. Plaintiffs and

[11] Further, the timing of service of the Rule 11 motion, following the denial of PowerSchool's motion to amend its affirmative defenses and amidst intensive class certification briefing and expert discovery, suggests a strategic decision to impose undue burden on Plaintiffs rather than a good-faith basis for sanctions.

their attorneys never refused to withdraw or correct the complaints of allegations. On the contrary, counsel tried to do everything they could to avoid the Rule 11 filing, including an offer to consider withdrawing additional allegations identified by PowerSchool that PowerSchool refused to provide.

For these reasons, Rule 11, PowerSchool's own authorities, and common sense preclude an award of sanctions in this case. *See Holgate,* 425 F.3d at 679 (recognizing that "[o]ne purpose of the safe harbor requirement is to provide parties with proper notice of the allegations against them and an adequate opportunity to cure the alleged deficiencies).

## IV. CONCLUSION

PowerSchool's motion is baseless and must be denied because the allegedly false allegations and related claims were withdrawn and are no longer at issue—the exact purpose of Rule 11.

And even if Plaintiffs had refused to withdraw the allegations (they agreed in a good faith attempt to resolve the dispute and avoid this motion), there is still no basis for Rule 11 sanctions. Mr. Concepción's allegations in the original Complaint and responses to discovery are based on his recollection—a recollection that PowerSchool cannot definitively dispute despite having absolute knowledge of who tests and licenses its products, and one that would have been clear but for PowerSchool's failure to seek his consent before taking and using his children's personal information.

But even if Mr. Concepción's recollection that his children used Schoology is incorrect, it is not a basis for sanctions because the objective evidence does not unambiguously refute his recollection. In fact, there is evidence that his recollection is correct and the product was likely tested or otherwise considered by the school or district due to PowerSchool's marketing efforts.

Finally, PowerSchool's own case law does not support its motion, as each case involves egregious misconduct where a person knew, unambiguously, that the allegations in the complaint were false but continued to litigate the case. Here, Mr. Concepción had a good faith belief that his allegations were true and nonetheless agreed to withdraw the allegations to resolve the Rule 11 claim. Under PowerSchool's own authorities, there is simply no basis for sanctions.

Indeed, this motion is frivolous and never should have been filed. Plaintiffs respectfully request that the Court deny the motion and award Plaintiffs fees and costs associated with responding to this baseless motion. *See* Fed. R. Civ. P. 11(c)(2).

Dated: March 13, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ Leonard W. Aragon

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602)840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

Attorneys for Plaintiffs