Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY CHERKIN, et al., | Case No.: 3:24-cv-02706-JD |
| Plaintiffs, | **DECLARATION OF LEONARD W. ARAGON IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT POWERSCHOOL HOLDINGS, INC.'S MOTION FOR SANCTIONS** |
| v. | |
| POWERSCHOOL HOLDINGS, INC., | |
| Defendant. | Judge: The Honorable James Donato |
| | <u>Hearing</u><br>Date: April 9, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11, 19th Floor |

I, Leonard W. Aragon, declare as follows:

1.      I am a partner at the law firm Hagens Berman Sobol Shapiro LLP, and I represent Plaintiffs in the above-captioned litigation. I submit this declaration in support of Plaintiffs' Opposition to Defendant's Motion for Sanctions. I have personal knowledge of the matters stated herein and, if called upon, could and would competently testify thereto.

2.      Attached hereto as **Exhibit A** are true and correct excerpts, along with Exhibit 6, from the August 19, 2025 deposition of David Concepción.

3.      Attached hereto as **Exhibit B** is a true and correct copy of PowerSchool's red-lined Motion for Sanctions received by undersigned counsel on or about February 24, 2026.

4.      During the meet-and-confer process, and prior to the expiration of the 21-day safe harbor provision, Plaintiffs offered to withdraw the allegations regarding M.M.C. and L.M.C. using Schoology.

5.      PowerSchool, however, stated that it still intended to file its motion despite Plaintiffs' agreement to withdraw the allegedly false statements.

6.      Plaintiffs asked PowerSchool to reconsider its position and whether there were additional allegations they could consider withdrawing to prevent PowerSchool from filing the motion.

7.      PowerSchool offered nothing; instead, asserting that it was filing the motion notwithstanding the fact that Plaintiffs were willing to withdraw the allegedly false statements giving rise to the motion.

8.      PowerSchool claims that the allegations and claims were not withdrawn within 21 days of service of the original motion, but that motion was never filed, and PowerSchool sent Plaintiffs a substantively amended motion on February 24, 2026.

9.      PowerSchool argues that the amended Rule 11 motion did not contain substantive changes, but that is demonstrably false. PowerSchool made approximately 274 edits and added approximately two pages to the motion.

10.     Plaintiffs offered to amend the Complaint well before receiving the revised motion.

11.     The parties met and conferred regarding the motion and exchanged several emails regarding the motion.

ARAGON DECLARATION                                                                3:24-cv-02706-JD

12.     After completing the meet and confer process, Plaintiffs offered to withdraw the allegations relating to Schoology to resolve the Rule 11 motion on February 17, 2026, 21 days after receiving the motion.

13.     PowerSchool, however, stated that it still intended to file the motion because they did not believe "any amendment could remedy the problem."

14.     Despite this position, PowerSchool agreed to further discuss the motion and to provide a redline of the motion before filing

15.     We investigated the family's use of Schoology and were aware that the school district did not contract to use Schoology and other evidence to suggest that Schoology was not used by the District, but were unaware of evidence to definitively dispute his recollection. The allegations regarding the use of Schoology were based on Mr. Concepción's recollection.

16.     After researching the issue, I determined that a stipulation to amend the Complaint after the amendment deadline was procedurally improper and that a motion to amend was the proper methodology to amend the complaint. The motion seeking leave to amend the complaint was filed three days after receiving the amended Rule 11 motion in hopes of resolving the issue.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


EXECUTED: March 13, 2026            /s/ Leonard W. Aragon
                                    Leonard W. Aragon

# EXHIBIT A

1

```
1              UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4

5    EMILY CHERKIN, et al.,

6                   Plaintiffs,

7    vs.                            No. 3:24-CV-02706-JD

8    POWERSCHOOL HOLDINGS, INC.,

9                   Defendants.
                                  /
10

11

12

13    VIDEOTAPED DEPOSITION OF DAVID CONCEPCION

14

15

16          Stenographically Reported by

17        ANGELA SINCLAIR, CSR No. 13902

18            RDR, RMR, RPR, CRR, CCRR

19

20

21               August 19, 2025

22

23

24

25
```

1        A.  I don't believe so.

2        Q.  And M.M.C., are there any other devices that

3    M.M.C. uses that may store his data?

4        A.  I don't believe so.

5        Q.  Have you installed any PowerSchool apps on

6    any of these devices?

7        A.  Yes.

8        Q.  Okay.  What's the PowerSchool app that you

9    installed?

10        A.  Parent Portal, I think.  Yeah, Parent

11    Portal.

12        Q.  Is Parent Portal an app on your phone, or is

13    it a website that you visit?

14        A.  An app on my phone.

15        Q.  Other than the Parent Portal, are there any

16    other apps that you installed on any of these devices

17    that you associate with PowerSchool?

18        A.  I have not installed any apps on any of

19    these other devices.

20        Q.  Has L.M.C. installed any apps that you

21    associated with PowerSchool on any of these devices?

22        A.  I don't believe so.

23        Q.  Has M.M.C. installed any apps on any of

24    these devices that you associate with PowerSchool?

25        A.  I don't believe so.

CHERKIN v                                                    David Concepcion
POWERSCHOOL HOLDINGS, INC.                                   August 19, 2025

69

1      Q.  Has your husband installed any apps

2  associated with any of these devices on -- that you

3  associate with PowerSchool?

4      A.  I don't believe so.

5      Q.  So the only app that you associate with

6  PowerSchool that's installed on these devices is the

7  Parent Portal; do I have that right?

8      A.  On my phone I believe so.

9      Q.  And is that on your phone only?

10      A.  Yes, sir.

11      Q.  Is there any difference between the --

12  sorry.

13      A.  Your question was again that I have

14  installed or that we have installed; right?

15      Q.  Correct.

16      A.  'Cause I don't know if the school has

17  installed it on the school-assigned Chromebooks,

18  which I believe they have.

19      Q.  Okay.  Is there any apps that you know are

20  on the school-assigned Chromebooks that you associate

21  with PowerSchool?

22      A.  There are.  I don't know what they are off

23  the top of my head, no.

24      Q.  The Parent Portal app that you installed and

25  that you've used, is there any difference between the

1    app version and the website version?

2            MS. SIEHL:  I'm going to object to the form.

3    Vague.

4            But you can answer.

5            THE WITNESS:  I usually use the app but I

6    have used the website, but I don't -- I don't recall

7    the differences.  I've never really -- I've never

8    made a conscious like effort to figure out if there's

9    any differences.

10   BY MR. TEMCHENKO:

11       Q.  What laptops do you use to access

12   PowerSchool products?

13       A.  I don't.  I use my phone.

14       Q.  So you don't use any laptop to access

15   PowerSchool product to your knowledge?

16       A.  Yes, correct.

17       Q.  Have you ever gone -- and just to be clear,

18   I apologize if this is repetitive, but have you ever

19   gone on the web version of the Parent Portal on

20   L.M.C's Chromebook, M.M.C.'s Chromebooks, iPads,

21   anything of the like?

22       A.  I have not.

23       Q.  Have you used L.M.C.'s school-assigned

24   Chromebook before?  You personally.  Have you used

25   her Chromebook that's assigned by the school?

74

1        Q.   And I believe that you already answered the

2    question as being no, but you have never used their

3    school-issued devices for your personal work,

4    leisure, and the like?

5        A.   Correct.

6        Q.   You don't store any of your personal

7    information on their school-issued devices; is --

8        A.   Correct.

9        Q.   Okay.  So I want to focus just on you for

10   now, and we can talk about L.M.C. and M.M.C. in just

11   a sec.

12            Tell me every way that you think you've

13   interacted with a PowerSchool product.

14       A.   To look up school grades for the children,

15   absentee/tardy reports or I guess attendance reports

16   is what they would call it to submit -- I forget what

17   the name of the form is called.  You have to submit a

18   personal information form at the beginning of every

19   school year for each student.

20            We use the app to communicate with the

21   teachers, the principal, the administrative staff at

22   the front.  If there's -- you know, if one of the

23   kids falls or gets hurt or has an episode, they call

24   me or -- through the app or they text me through the

25   app.

75

```
1              We have spoken to the resource folks at the

2    school about the kids' educational plans and special

3    resource needs.

4         Q.  Again, I'm going to try to take these in

5    backwards order.

6              So you mentioned speaking to the resource

7    folks at the school about the kids' educational plans

8    and special resource needs.

9              Is that a communication that you're having

10   in the -- in -- sorry.  Let me strike that and take

11   it a step back.

12             Is all of the things that you're describing,

13   what do you -- what app or what do you use to do all

14   of that?

15        A.  The Parent Portal.

16        Q.  Okay.  So, now, when you mentioned that you

17   spoke with resource folks at the school about kids'

18   educational plans and special resource needs, did you

19   speak with them via the Parent Portal or -- explain

20   that for me a little bit.

21        A.  By -- it's an email chat that we have via

22   the Parent Portal.  When I write to them I'll reply

23   to them through the Parent Portal, and then I get an

24   email to my email plus I get a notification on the

25   app saying you have an email from Ms. Smith who's a
```

81

1          The sender, the entity that's sending it, is

2     there any -- in the domain, the address, the

3     recipient, when you're sending those messages, when

4     you're receiving them, does it mention ParentSquare

5     or something of the like or does it mention

6     PowerSchool at the top in the sender line?

7          A.  I'm making an assumption it's in the body of

8     the email, but I don't recall exactly where it says

9     it.

10         Q.  I'm going to show you a few more of these

11    and maybe that'll help focus --

12         A.  Yeah.

13         Q.  -- us here.

14              Let's go ahead and show you -- let's go

15    to -- sorry.  Yeah, let's go to Tab 13 and we're

16    going to mark this as Exhibit 8.

17              And while we're pulling that one up, why do

18    you believe that ParentSquare is associated with

19    PowerSchool?

20         A.  If you look at Exhibit Number 6 at the

21    bottom of the text message from October 3rd, it says

22    Parent Portal in PowerSchool.  And any email -- any

23    text message that I get that has PowerSchool in it

24    is -- it redirects me back to my ParentSquare app.

25         Q.  Do you believe that ParentSquare is owned by

1    PowerSchool?

2        A.   I wouldn't know.

3             MS. SIEHL:   Object to the form.

4    BY MR. TEMCHENKO:

5        Q.   Have you spoken to your school about what

6    ParentSquare -- who owns it, what it does, whether

7    it's a separate company or not?

8        A.   I have not spoken to my school about who

9    owns.

10       Q.   Have you spoken to your school about what

11   kind of data ParentSquare may have on you?

12       A.   I have not spoken to them, but I know what

13   kind -- I think I know what kind of data they've

14   already collected from me and that they give me.

15       Q.   Okay.  So what kind of data do you think

16   ParentSquare has on you?

17            MS. SIEHL:   Object to the form.

18            THE WITNESS:  The same information I

19   provided previously which is my personal information,

20   emergency contact information, health insurance

21   information, IEP, 504 plan information for my kids,

22   their names, social security, DOBs, their grades,

23   their attendance records, possibly also the

24   schoolwork that they've submitted to their teachers

25   through the program.

1    BY MR. TEMCHENKO:

2        Q.  And so I realize that these names are

3    similar, so I just want to clarify.

4            Is this the information that ParentSquare

5    might have on you or that PowerSchool might have on

6    you?

7        A.  Going back, I believe PowerSchool and

8    ParentSquare are part of the same company.  So I

9    don't know who's holding the data 'cause I was never

10   told who's holding the data.

11       Q.  Okay.  And so the reason why you believe

12   that ParentSquare has it is because you believe they

13   might be part of the same company?

14       A.  Correct.

15       Q.  Have you done anything to investigate that?

16       A.  I'm relying on the information that I've

17   been discussing with my attorneys.

18       Q.  When you mentioned -- and sorry, I know I

19   was going to give you one more document but one more

20   question on this.

21           When you mentioned going into an app to

22   communicate, is that a ParentSquare app or is that

23   the Parent Portal app?  Are they different, are they

24   the same?

25       A.  ParentSquare app.

84

1      Q.   Okay.  So there's a ParentSquare app that

2  you use to communicate/send emails to the school and

3  back and they respond to you?

4      A.   Correct.

5      Q.   Okay.  And one more clarification on that.

6           Do you have two apps installed on your

7  phone, one called ParentSquare and one titled Parent

8  Portal, or is there just one app titled ParentSquare?

9      A.   I may have two, but I -- the one that I use

10  is ParentSquare.

11      Q.   Okay.  Let me go ahead and now show you what

12  we're marking as Exhibit 8.

13           (Defendant's Exhibit 8 was marked.)

14           THE WITNESS:  Thank you.

15           MR. TEMCHENKO:  Sorry, I always try to give

16  you one and then I gotta give you both.

17           MR. ARAGON:  Thank you.

18  BY MR. TEMCHENKO:

19      Q.  So this is another document that your

20  counsel produced to us with a Bates CONCEPCION ending

21  in 001.

22           Do you recognize this as an email that you

23  received?  I realize there's no recipient information

24  on here, but is this an email that you received on

25  May 6th, 2024, from West Contra Costa Unified?  And

85

1  the address is no-reply@rackspace, r-a-c-k space,

2  .powerschool.com?

3      A.  Yes.

4      Q.  Did you receive this email or did your

5  husband receive this email?

6      A.  I received it.

7      Q.  In the address line here, do you see that it

8  references rackspace.powerschool.com?

9      A.  Yes.

10     Q.  Do you know what Rackspace is?

11     A.  I do not.

12     Q.  Have you done any -- have you spoken to your

13  school about what Rackspace might be?

14     A.  No.

15     Q.  Do you believe that Rackspace and

16  PowerSchool are probably part of the same company

17  too?

18         MS. SIEHL:  Object to the form.  Calls for

19  speculation.

20         You can answer.

21         THE WITNESS:  I've never considered it and I

22  can't make an assumption about that.

23  BY MR. TEMCHENKO:

24     Q.  Do you believe that you're getting this

25  email from PowerSchool?

86

1    A.  It's coming from PowerSchool, so I'm making

2  an assumption that I'm getting an email from the

3  district while they're using PowerSchool's server,

4  systems, networks, something along those lines.

5    Q.  But this piece in the middle here that's

6  rackspace.powerschool.com, you do not know what role

7  Rackspace plays, what it is, what it even means?

8    A.  No, sir.

9    Q.  Would you suppose PowerSchool would be in

10  the best position to know whether it's the one

11  sending this email or whether Rackspace is

12  responsible for sending this email?

13         MS. SIEHL:  Object to the form.

14         You can answer.

15         THE WITNESS:  I would assume West Contra

16  Costa Unified School District should know who's

17  sending it out because it's coming from -- it has my

18  children's personal information and it's being sent

19  from three different entities now.

20  BY MR. TEMCHENKO:

21    Q.  Okay.  So West Contra Costa would be the

22  best -- in the best position to know who is really

23  sending this email?

24    A.  I requested the information from West Contra

25  Costa.  So I'm -- I don't know who's in the best

1   position to be responsible for it.

2        Q.  You mentioned -- you just said that you

3   requested information from West Contra Costa.  What

4   do you mean by that?

5        A.  I requested an attendance report for this --

6   actually, I didn't request this.  I think they just

7   sent this to me.  They send these periodically to us.

8            But sometimes I do -- whenever I have

9   requested an attendance report I request it directly

10  from the front desk person at the school and then it

11  comes from a similar type of email.

12       Q.  So these kinds of emails that give an

13  attendance breakdown, they're not prompted, they're

14  not something that you requested your school to send

15  to you?

16       A.  This one in particular is not requested by

17  me.  It was sent to me by the district.

18       Q.  Down here at the bottom it says, "You can

19  manage" -- and sorry, just to help you navigate,

20  third paragraph from the bottom beginning "For

21  current information."

22           Do you see that?

23       A.  Yes.

24       Q.  It says, "You can manage" -- second line on

25  the right side, "You can manage your email

 1        A.  In school there's a computer lab, but they

 2   have -- they have to take their own device to the

 3   lab.

 4        Q.  Okay.  So it's like one of those things

 5   where you like plug into a -- probably a monitor or

 6   something of that sort, or what kind of computer lab

 7   is it?

 8        A.  They just travel within the school with

 9   their Chromebook or laptop.

10        Q.  Have your children ever used their iPads for

11   anything PowerSchool-related?

12        A.  No.

13        Q.  Have your children used their personal

14   laptops for anything PowerSchool-related?

15        A.  No.

16        Q.  So fair to say that everything

17   PowerSchool-related would be done on the

18   school-issued device?

19        A.  Yes.

20        Q.  Can you tell me what PowerSchool products

21   you think L.M.C. and M.M.C. may be using?

22        A.  I believe they use Schoology or Schoology

23   (pronunciation).

24        Q.  What do you base this belief on?

25        A.  That's the one that the teachers have asked

98

1    us to make sure that they put their information

2    through the Schoology or the Schoology program.

3         Q.  Other than Schoology, can you name any

4    PowerSchool product that L.M.C. or M.M.C. may have

5    used?

6         A.  I don't know what other products they own or

7    produce.  I know that they make a couple, but I don't

8    know which ones they are.

9         Q.  Well, can you think of any that L.M.C. or

10   M.M.C. may have used that you believe might be

11   associated with PowerSchool?

12        A.  Not off the top of my head.

13        Q.  Can you describe for me generally how do

14   they use Schoology, how do they log in, what does it

15   look like?

16        A.  So they log in through their school login

17   and username which is the one that they access to use

18   their school laptops.

19        Q.  Do they log in, is it like a Google sign-in

20   page, is it a different sign-in page?  What does it

21   look like?  Do you recall?

22        A.  I know they use Google for a lot, so it

23   might be a Google sign-in page.  I'm not sure.

24        Q.  Have you seen them use this product?

25        A.  Yes.

99

1          Q.  Let me go ahead and show you what we're

2     going to mark as Exhibit 13.

3               (Defendant's Exhibit 13 was marked.)

4     BY MR. TEMCHENKO:

5          Q.  And this is Tab 19.  So this is a set of

6     screenshots that we just pulled online of various

7     dashboards, and I'd like you to take a look at the

8     four of them on the first page, second page, third

9     page, and fourth page.

10              Do any of these resemble the dashboard that

11    your kids use?

12         A.  Yes.  I don't know the name or the -- one,

13    two, three, four.  Page 4.

14         Q.  Okay.  So the last page is the one that they

15    use?

16         A.  Right.

17         Q.  Do any of these other ones look remotely

18    familiar?

19         A.  Page 1 does or -- page 1 does look familiar,

20    but page 4 is the one that I believe that they

21    use the -- that looks most like what they've been

22    using for the past five or six years or I guess

23    throughout their whole life at this school.

24         Q.  Can you please describe for me how L.M.C.

25    and M.M.C. use this classroom product?

100

1      A.   They access it to sometimes communicate with

2    their teacher.  They use it to find out what their

3    assignments are for the day or the week or throughout

4    the year.

5           Sometimes we -- they receive, what is it? --

6    a transportation form for a school trip and then we

7    have to fill it out and sign it.  They submit

8    homework assignments through it as well.  So either

9    they'll do the homework on one of these apps that are

10   on this program or they'll take a picture of it after

11   they write it with their laptop and submit it through

12   the app.

13          And I'm not sure if there's any other ways,

14   but. . .

15     Q.   Do your kids use any other kind of

16   electronic or digital software app or otherwise to

17   submit information or receive information from the

18   school?

19     A.   They have a school-assigned email address.

20   I'm not sure if that's what you're asking, but. . .

21     Q.   Other than the school-assigned email address

22   and this classroom app that they use, is there any

23   other app that you believe they use to submit

24   information to the school or receive information from

25   the school?

101

```
 1        A.  Not to my knowledge.

 2        Q.  The information that your kids submit to the

 3   school, can you describe generally what kind of -- is

 4   there anything private there, is there anything

 5   personal to them, any of their private information

 6   that they submit?

 7            MS. SIEHL:  Object to the form.

 8            You can answer.

 9            THE WITNESS:  Yes.  L.M.C. in particular has

10   written poems that are very personal to her and has

11   submitted that to the teacher for processing and for

12   grading.  They've written stories about their family

13   composition, they've written stories about personal

14   trips that we've done or interactions with family

15   members.  That is personal information.

16   BY MR. TEMCHENKO:

17        Q.  And all of that information to the best of

18   your knowledge is submitted through this classroom

19   app that is pictured as page 4 of Exhibit 13; is that

20   correct?

21        A.  Sometimes.  Not always, but yes, they have

22   used the app for that.

23        Q.  What else have they used to submit essays,

24   poems, and homework on these personal topics?

25        A.  They'll just write it and submit it manually
```

102

1    to the princ -- to the teacher.

2        Q.  Have you discussed with your teacher whether

3    they can opt out from using a classroom product and

4    do it fully analog?

5        A.  I want to say we did with L.M.C. in fourth

6    grade maybe, like two years ago.

7        Q.  So tell me about that.  Who did you speak

8    to?

9        A.  To the teacher.

10       Q.  This was when L.M.C. was in fourth grade?

11       A.  Yes.

12       Q.  What was the response from the teacher?

13       A.  That everyone has to submit it through the

14   portal or through the website, and that's just the

15   easiest way for them to grade everyone at the same

16   time through the app or the portal.

17       Q.  Did you discuss opting out with the

18   principal or anybody else in the school

19   administration?

20       A.  No.

21       Q.  Why not?

22       A.  We didn't want to make more waves or make

23   any more challenges for our kids.

24       Q.  Among the homework that L.M.C. and M.M.C.

25   submits, is there some that you would consider not

CHERKIN v                                                      David Concepcion
POWERSCHOOL HOLDINGS, INC.                              August 19, 2025

225

1                    REPORTER'S CERTIFICATE

2

3          I, ANGELA SINCLAIR, a Stenographic Certified
     Shorthand Reporter, holding a valid and current
4    license issued by the State of California, duly
     authorized to administer oaths, do hereby certify:

5
           That DAVID CONCEPCION, in the foregoing
6    deposition named, was present and by me sworn as a
     witness in the above-entitled action at the time and
7    place therein specified.

8          That said deposition was taken before me at
     said time and place, and was taken down in shorthand
9    by me and was thereafter transcribed into
     typewriting, and that the foregoing transcript
10   constitutes a full, true and correct report of said
     deposition and of the proceedings that took place.

11
           The dismantling, unsealing, or unbinding of
12   the original transcript will render the Reporter's
     Certificate null and void.

13
           Should the signature of the witness not be
14   affixed to the deposition, the witness shall not have
     availed himself/herself of the opportunity to sign or
15   the signature has been waived.

16         I further certify that I am neither counsel
     for nor related to any party in the foregoing
17   deposition and caption named nor in any way
     interested in the outcome thereof.

18
           That before completion of the proceedings,
19   review of the transcript was NOT requested pursuant
     to Federal Rule 30(e).

20
           IN WITNESS WHEREOF, I have hereunder
21   subscribed my hand this 3rd day of September 2025.

22

23          _____
            ANGELA SINCLAIR, CSR No. 13902
            RDR, RMR, RPR, CRR, CCRR
24          State of California

25



2:04    📞 3:33    ••••••••••• 🟠 🔋

‹ 27    66458 ›

Text Message • SMS
Thu, Oct 3 at 9:19 PM

[WCCUSD] 2024 CAASPP and ELPAC Student Score Reports (Grades 3-8, 11-12) Now Available https://psqr.io/X4MVu7ydat

Thu, Oct 3 at 11:20 PM

[WCCUSD] Parents and Guardians, the 2024 CAASPP and ELPAC Student Score Reports are now available to you! Visit the Assessment Current News & Updates page, https://www.wccusd.net/assessments, to get information on how you can access the reports in the Parent Portal in PowerSchool.

The sender is not in your contact list.

**Report Junk**

\+    Text Message • SMS

CONFIDENTIAL    CONCEPCION_000349



DEFENDANT'S
EXHIBIT
6
Concepcion 8/19/25

# EXHIBIT B

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Taylor Rothman (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
taylor.rothman@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Ethan Joel Levinton (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
ethan.levinton@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY CHERKIN, et al | CASE NO. 3:24-cv-02706-JD |
| Plaintiffs, | **DEFENDANT POWERSCHOOL HOLDINGS, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS** |
| v. | |
| POWERSCHOOL HOLDINGS, INC., | Judge: Hon. James Donato |
| Defendant. | Hearing Date: ~~February~~ April 2, 2026 |
| | Time: 10:00 a.m. |
| | Courtroom: 11, 19th Floor |

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on ~~February  ~~April 2, 2026, at 10:00am PT, or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 11, 19th Floor, before the Honorable James Donato, Defendant PowerSchool Holdings, Inc. ("PowerSchool") will and hereby does move the Court for an order granting sanctions under Federal Rule of Civil Procedure 11(b) against Plaintiffs and Plaintiffs' counsel based on the false statements in the Complaint that Plaintiffs L.M.C. and M.M.C use PowerSchool products. In their depositions, these Plaintiffs unequivocally testified that they do not, in fact, use any PowerSchool products. Thus, Plaintiffs' counsel either chose to forego a pre-suit investigation to determine whether ~~nearly~~over half of the ~~named Plaintiffs~~Student-Plaintiffs use the products at issue or did conduct such an investigation and ~~lied~~made knowingly false representations to the Court. Either way, these actions merit Rule 11 sanctions.

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................... 2

ARGUMENT ......................................................................................................... 5

      **I.**      **Plaintiffs' counsel—either recklessly or intentionally—asserted false statements in the Complaint in violation of Rule 11(b)(3).** .................... ~~6~~7

      **II.**     **Plaintiffs' ~~counsel's~~ misconduct—and their complete failure to remedy that misconduct—warrants dismissal, monetary sanctions, and attorneys' fees.**   ~~9~~10

CONCLUSION ....................................................................................................... 1~~3~~5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Mid–Atlantic Settlement Servs., Inc.*,
233 F.R.D. 32 (D.D.C. 2006) .................................................................................................5

*Amaro v. Bee Sweet Citrus, Inc.*,
2022 WL 3908309 (E.D. Cal. Aug. 30, 2022) .......................................................................6

*Babadjanian v. Deutsche Bank Nat'l Tr. Co.*,
2011 WL 13214300 (C.D. Cal. Mar. 29, 2011) ......................................................4, 6, 10, 11

*Carroll Shelby Wheel Co., Inc. v. Carroll Shelby Tr.*,
2017 WL 3485760 (C.D. Cal. Feb. 21, 2017) .............................................................6, 11, 12

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) ..............................................................................................5

*Galvan v. Walt Disney Parks and Resorts*,
2019 WL 8017806 (C.D. Cal. Dec. 20, 2019) .........................................................9, 10, 11

*Gaskell v. Weir*,
10 F.3d 626 (9th Cir. 1993) ...........................................................................................6, 12

*Hudson v. Moore Bus. Forms, Inc.*,
836 F.2d 1156 (9th Cir. 1987) ..............................................................................................6

*Lake v. Gates*,
130 F.4th 1064 (9th Cir. 2025) .............................................................................................6

*Mabson v. Ass'n of Apartment Owners of Maui Kamaole*,
2007 WL 2873489 (D. Hi. Sept. 25, 2007) ............................................................................9

*Manipoun v. Dibella*,
2020 WL 4596763 (S.D. Cal. Aug. 11, 2020) .......................................................................5

*Patterson v. Apple Comput., Inc.*,
2005 WL 2277005 (N.D. Cal., Sept. 19, 2005) ...............................................................8, 9, 12

*Truesdell v. S. Cal. Permanente Med. Grp.*,
293 F.3d 1146 (9th Cir. 2002) ..............................................................................................5

*Truesdell v. S. Cal. Permanente Med. Grp.*,
209 F.R.D. 169 (C.D. Cal. 2002) ........................................................................................11

*Zuniga v. United Can Co.*,
   812 F.2d 443 (9th Cir. 1987) .................................................................................................... 11

**Rules**

Fed. R. Civ. P. 11 ................................................................................................................ *passim*

**INTRODUCTION**

Plaintiffs' ~~class action Complaint is riddled with falsehoods that~~ Complaint falsely levels very serious accusations about schoolchildren's privacy and PowerSchool's core business model, claiming that when schoolchildren use PowerSchool products, the company misuses and sells the children's data. There are countless falsehoods underlying these allegations, but this motion focuses on a fundamental one:  Two of the three students who are named Plaintiffs in this case have ***never even used*** the PowerSchool products they allege harmed them. Plaintiffs and their counsel either knew or should have discovered this through a basic and cursory investigation before filing this lawsuit. Discovery has since confirmed the falsity of these allegations, and Plaintiffs and their counsel have done nothing to correct them. ~~Whether this conduct was extremely reckless or intentional, the central point remains: In direct contrast to the allegations in the Complaint, half of the named Plaintiffs have never used the PowerSchool products they claim to have used.~~ This conduct warrants sanctions.

~~The~~ ~~Complaint falsely levels very serious accusations about schoolchildren's privacy and PowerSchool's core business model, claiming that when schoolchildren and their parents use PowerSchool products, the company misuses and sells the children's data.~~ Specifically, Plaintiffs ~~Concepción and his children,~~ L.M.C. and M.M.C.~~,~~ are ~~three~~two of the ~~five~~three students that are named Plaintiffs~~—and the *only* California plaintiffs—~~seeking to represent "millions of ~~class members~~U.S. K-12 students" for ~~eight different~~various causes of action under ~~various federal and state, and civil and criminal,~~California laws. ECF ~~1, Compl. ¶ 423.~~

116-3 at 12-14. The Complaint asserts—without qualification—that ~~Plaintiffs Concepción,~~ L.M.C.~~,~~ and M.M.C. use PowerSchool products, including Schoology, on their personal or school-issued devices, and that PowerSchool's alleged violation of their privacy caused them harm. *Id.* ¶¶ 373-76, 396-407. The harms contemplated in the Complaint include very specific examples that require Plaintiffs' direct use of PowerSchool products, such as (1) Plaintiffs' supposed exposure to "exploitative marketing practices~~,~~;" while using PowerSchool products, (2) "dangerous design techniques," and (3) the ability, while students are using Schoology, to access ~~to~~websites like YouTube where students "might be interested in

learning about sex" or "how to obtain firearms." *Id.* ¶¶ 209, 210, 220, 398 99  99.

As will be set forth more fully at summary judgment, discovery has confirmed that Plaintiffs' far-fetched legal theory is unsupported for many reasons, including that PowerSchool does *not* sell schoolchildren's data. Discovery has also revealed that the factual premise underlying these particular the California Plaintiffs' allegations is false. Under oath, Plaintiffs Concepción, L.M.C., and M.M.C., and their parent Plaintiff Concepción, all admitted that L.M.C. and M.M.C. ***do not use*** the PowerSchool products (Schoology) they claim to have used in the Complaint, their verified interrogatory responses, and responses to requests for admission. Nor could these Plaintiffs identify any other PowerSchool products they do use.

Under Rule 11(b)(3), Plaintiffs' counsel had a duty to investigate Plaintiffs' claims before filing suit, and whether these Plaintiffs use Defendant's products was the most basic question to answer. Plaintiffs' counsel's failure to meet its investigatory obligations is inexcusable. Even worse, since after these Plaintiffs' depositions revealed the truth, Plaintiffs' counsel have done did nothing to remedy the problem. Thus, PowerSchool respectfully requests that the Court issue an order imposing appropriate sanctions—dismissal with prejudice of Plaintiffs Concepción's, L.M.C's, and M.M.C's claims, monetary sanctions against these Plaintiffs and their counsel, and an award of PowerSchool's attorneys' fees and associated costs for being forced to litigate these baseless claims.[1]

## BACKGROUND

PowerSchool is an education technology company that provides administrative and pedagogical assistance to its customers—schools and school districts—by facilitating the collection and management of student records. ECF 1, Compl. ¶¶ 33, 36, 40. Schools decide which PowerSchool products to use and which products are available to students and parents. *Id.* ¶¶ 44, 45.

---

[1]    PowerSchool has complied with Rule 11's safe-harbor provision and served this motion on Plaintiffs' counsel 21 days before filing the motion with the Court. *See* Fed. R. Civ. Pro. 11(c)(1)(2); Adendorff Decl. ¶ 4.

Further, it is unclear if Concepción has any individual claims, as Plaintiffs' motion for class certification does not mention parents or attempt to certify any parent classes. ECF 116-3. Nonetheless, Plaintiffs have never amended their Complaint, so Concepción is still a named Plaintiff purporting to assert claims on his own behalf. Because his claims are derivative of his children's claims, PowerSchool seeks dismissal of all the Concepción Plaintiffs' claims.

In May 2024, Plaintiffs (~~two different~~one Seattle-based parent~~s~~ and ~~three of their respective~~her child, and one California-based parent and his two children) sued PowerSchool, lodging consequential accusations against the company for allegedly collecting their personal and sensitive information as they utilize PowerSchool products and then selling that information to third parties. ~~Compl~~*Id.* ¶¶ 379-87. The Complaint accuses PowerSchool of violating "federal and state civil and criminal laws," *id.* ¶ 539, by "keeping parents in the dark," *id.* ¶ 5, and creating an environment of "pervasive surveillance and commercial exploitation." *Id.* ¶ 7. Plaintiffs claim that "PowerSchool's data practices harmed Plaintiffs in a number of material if often opaque ways," including by "subjecting them to exploitative marketing practices," which allegedly occurred during and after students~~'~~' use~~d~~ of PowerSchool products ~~and PowerSchool provided student data to third parties~~, "exposing them to deceptive design techniques" when they used PowerSchool products, and "invading their privacy." *Id.* ¶¶ 397-407. Plaintiffs reiterated these supposed harms in their respective Responses and Objections to Defendant's First Set of Interrogatories. *See* Ex. A, Pl. Concepción's Resp. & Obj. to Def.'s Interrog. No. 2; Ex. B, Pl. L.M.C.'s Resp. & Obj. to Def.'s Interrog. No. 2; Ex. C, Pl. M.M.C.'s Resp. & Obj. to Def.'s Interrog. No. 2.

Plaintiffs claim ~~as they must to recover for their alleged harms based on using PowerSchool products,~~ that they ~~do, in fact,~~ use ~~these~~PowerSchool products. Relevant here, the Complaint alleges that Concepción's children, ~~Plaintiffs~~ L.M.C. and M.M.C., use PowerSchool products as "part of [their] public schooling." ~~*Id.*~~ ECF 1 at ¶¶ 373-74. The Complaint ~~further~~also details that L.M.C. accesses PowerSchool products from her personal and school-issued devices, *id.* ¶ 373, and that M.M.C. accesses the products he uses from his school-issued device. *Id.* ¶ 374.

The Complaint also asserts numerous generalized statements about all of the Plaintiffs~~,~~. In fact, the Complaint states in bold letters: **"Plaintiffs use PowerSchool products, which collect and use Plaintiffs' data."** ECF 1 at 60. ~~b~~But tellingly, as support for these broad statements, the Complaint mentions only Plaintiff Cherkin or her daughter, S.G. For example, the Complaint states that all Plaintiffs "use PowerSchool platforms, including Schoology…, which collect Plaintiffs' data." *Id.* ¶ 376. But when documenting the specific harms Schoology allegedly causes, the

Complaint references only S.G.'s use of the product. *See id.* at ¶¶ 201~~-~~-11. Another section of the Complaint describes certain information that Plaintiff S.G. input "into her PowerSchool-owned product dashboards," then asserts that "[o]n information and belief, PowerSchool has collected substantively similar information" about the remaining Plaintiffs. *Id.* ¶¶ 380-81.

To probe these sweeping statements, PowerSchool inquired through written discovery about the specific products each Plaintiff uses. In response to PowerSchool's interrogatories, ~~Plaintiff~~ Concepción stated that L.M.C. and M.M.C. use Schoology. *See* Ex. A. L.M.C. and M.M.C. also stated, in their own interrogatory responses, that they both use the PowerSchool product Schoology "to get information from the school and to turn in assignments." Ex. B; Ex. C. ~~Plaintiff~~<u>Their responses mention no other product.</u> Concepción personally verified these responses for himself and his children. Adendorff Decl. ¶ 8<u>, Ex. D</u>.

But these verified interrogatory responses—like the statements in the Complaint about these Plaintiffs' use of PowerSchool products—are false. ~~Documents produced during discovery show that the school~~ L.M.C. and M.M.C.~~ attend~~<u>'s school district</u> has never licensed Schoology. ~~See~~ Ex. E. ~~Further,~~ Plaintiffs Concepción, L.M.C., and M.M.C.'s document production did not reference Schoology ~~even once. Adendorff Decl. ¶ 10. Instead, the~~<u>; their</u> documents ~~revealed~~<u>confirmed</u> that these Plaintiffs use PowerSchool's competitors' products—Google Classroom and Clever. ~~*Id.* at ¶~~<u>Adendorff Decl. ¶¶</u> 10-11~~,~~<u>, Ex. F</u>.

The truth—<u>*i.e.,*</u> that L.M.C. and M.M.C do not use PowerSchool products, including Schoology~~,~~—was <u>first</u> confirmed during ~~Plaintiff~~ Concepción's <u>(the parent's)</u> deposition. ~~Under oath, he~~<u>When shown various PowerSchool log-in pages and home pages, Concepción</u> testified that he did not recognize any webpage associated with PowerSchool. *See* Ex. G, Concepción Tr. at 94:3-95:23 ("I don't recall that website, that [PowerSchool] sign-in page"), 180:1-14 (testifying that he does not believe he has ever visited the PowerSchool web page before). ~~And~~<u>By contrast,</u> when shown sample dashboards <u>of PowerSchool *and* numerous other EdTech providers' products</u>, Concepción ~~could only~~ identif~~y~~<u>ied</u> Google Classroom and Clever—neither of which are PowerSchool products—as the apps his children use. *See id* at 99:1-23.

Based on this deposition testimony, PowerSchool then served requests for admission on L.M.C. and M.M.C., asking them to admit, in separate requests, that they "have not used Schoology," and as a result of not using any other PowerSchool product "cannot identify any marketing" they received from PowerSchool and have never felt "watched by any PowerSchool product." Ex. H. To PowerSchool's surprise, given the clear and mounting evidence showing L.M.C. and M.M.C. did **not** use Schoology or any other PowerSchool products, L.M.C. and M.M.C. **denied all of these requests**. *See* Ex. M. K[2]. ("Request No. 5: Admit that You have not used Schoology. Response: DENIED.")

PowerSchool then attempted to depose Plaintiffs L.M.C. and M.M.C to untangle the conflicting narrative. But Plaintiffs' counsel obstructedresisted efforts to schedule the depositions, ultimately filing a motion for a protective order, which this Court denied. ECF No. 96. When the depositions finally occurred in late November 2025, both L.M.C. and M.M.C. admittedprovided testimony confirming that their Complaint, verified interrogatory responses, and denials of the requests for admission were false: They never used Schoology or any other PowerSchool products. *See* Ex. KI, L.M.C. Tr. at 18:10-17 ("Q. And what do you know about Schoology? A. I don't really know that much about Schoology. Q. Do you recall ever going on an app or website that had Schoology written on it? A. No, I don't remember."); Ex. LJ, M.M.C. Tr. at 22:2-9 ("Q. [H]ave you ever heard the word Schoology or an app called Schoology? A. I've heard of it, but I don't really know about it. Q. Okay. Do you think you've ever used Schoology? A. I don't think so, no."), 34:17-35:25 (testifying that his only memory of an adult logging onto a PowerSchool page was his teacher two years prior and his dadparent the week before the deposition).

Following this testimony, Plaintiffs have not supplemented or otherwise corrected their responses to the interrogatories or requests for admission., Nnor have they moved to amend their Complaint. Rather, Plaintiffs continue to plow ahead and make additional misleading statements about these Plaintiffs' use of PowerSchool products.

---

[2] These false discovery statements are the subject of the concurrently filed letter brief to the Court, as PowerSchool is also seeking sanctions under Federal Rules of Civil Procedure 26 and 37 for Plaintiffs' discovery misconduct.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In their motion for class certification filed less than two weeks ago—and after PowerSchool served this Rule 11 motion—the Concepción Plaintiffs claim that they are appropriate class representatives for proposed classes including millions of students, including students who use Schoology. ECF 116-3 at 14-16. Plaintiffs implicitly concede in the motion that L.M.C. and M.M.C. do not use Schoology by listing the products their school district licenses—a list that does not include Schoology. *Id.* at 7. Also absent from their motion is any argument of harm or injury based on the Plaintiffs' direct use of PowerSchool products. *Id.* Plaintiffs no longer state that PowerSchool builds dossiers of students, deceptively designs products, conducts targeted advertising, tracks students using cookies, exposes children to dangerous content, intercepts communications, or eavesdrops on communications.  In other words, Plaintiffs no longer allege any of the reasons the Court allowed their claims to proceed to discovery. *See* ECF 65 at 3-6; 8, 9-10. Plaintiffs now appear to base their harm arguments off the mere fact that school districts use PowerSchool administrative (non-student facing) products to collect and process the schools' data, including data that schools use for predictive analytics. *Id.* at 16. L.M.C. and M.M.C.'s school district licenses only one of the nine products listed in Plaintiffs' class definitions (SIS), and these Plaintiffs could have never used this product, as it is used exclusively by school administrators for records management. Under this new theory, Plaintiffs are no longer pursuing claims under CIPA or CDAFA. They are only pursuing class certification based on invasion of privacy and unjust enrichment. ECF 116-3 at 1.

According to Plaintiffs, L.M.C and M.M.C. are adequate class representatives because their "school district uses" PowerSchool products that are either (1) administrative and not student-facing or (2) a product (Naviance) that L.M.C. and M.M.C. have both testified that they do not use. *See id.* at 7, 17; Ex. J, M.M.C. Tr. At 34:10-12; Ex. I, L.M.C. Tr. 49:16-22. Indeed, the document Plaintiffs cite to support the statement that L.M.C. and M.M.C.'s school district uses Naviance notes that just one school in the district—a high school—directly licenses this product from PowerSchool. *See* ECF 116-3 at 7 n.45 (citing Aragon Decl. Ex. 29, PWRSCHL_00343564). This is obviously not the school that L.M.C. and M.M.C. attend or could attend, as these Plaintiffs are 10 and 12 years old. To make matters worse, the only other two exhibits Plaintiffs cite to support their argument that their

school district allegedly uses Naviance does not even actually mention L.M.C. and M.M.C's school district. *See* ECF 116-4 (Aragon Decl.) at Exs. 27, 30. Other documents produced to Plaintiffs clearly show that it is this singular high school, and not the entire school district, that licenses and uses this product. *See id.* at Ex. 29. Thus, Plaintiffs' counsel is still making false and misleading statements about what products L.M.C. and M.M.C. use.

Further, attached to their class-certification motion is a declaration from Concepción, explaining why he is an adequate class representative. ECF 116-3 at Ex. D. In that sworn declaration, Concepción states that he "reviewed the Complaint filed on [his] behalf to ensure the accuracy of the facts as they related to [him] and [his] minor children." *Id.* at ¶ 12. He also stated that he reviewed and helped prepare the discovery responses. *Id.* at ¶ 13. But, as noted above, the Complaint and discovery responses contained false statements.

Weeks after PowerSchool served this motion on Plaintiffs, Plaintiffs' counsel stated that they would file an amended complaint that removed all of the false statements raised in this motion. Adendorff Decl. ¶ 20. But Plaintiffs' counsel have not provided a date by which they would do so. *Id.*

## ARGUMENT

What PowerSchool had to spend nearly two years and millions of dollars to uncover—that ~~half~~two out of three of the named ~~Plaintiffs~~Student-Plaintiffs in this case do not actually use PowerSchool products—Plaintiffs and their counsel ~~knew (or~~ should have known~~)~~ all along. A simple inquiry into the products the Concepción children use for their education would have made clear that they did not use the PowerSchool products referenced or specifically named in their Complaint and discovery responses. To make matters worse, since the truth came out during the depositions of these Plaintiffs~~' deposition testimony has revealed the truth~~, Plaintiffs' counsel has done nothing to remedy the situation. ~~Rather, in their crusade against all EdTech companies, they continue to blast PowerSchool as "putting profits before the legal rights of students and parents." *See About Us – EdTech Law Center;* PowerSchool Data Privacy Litigation – EdTech Law Center.~~ Such irresponsible litigation tactics merit Rule 11 sanctions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Rule 11(b)(3) of the Federal Rules of Civil Procedure provides that, by signing and filing a document with the court, a party's attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . ." that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). That means that "[t]he attorney has a duty prior to filing a complaint . . . to conduct a reasonable factual investigation[.]" *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Counsel must "do more than simply rest upon a client's evasive and incomplete statements of fact. A reasonable inquiry would provide counsel with either supporting evidence or a reason to decline to repeat a client's assertion." *Ali v. Mid–Atlantic Settlement Servs., Inc.*, 233 F.R.D. 32, 39 (D.D.C. 2006); *accord Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153-54 (9th Cir. 2002).

To impose Rule 11 sanctions, "the Court must first determine whether any provision of Rule 11(b) has been violated." *Manipoun v. Dibella*, 2020 WL 4596763, at *2 (S.D. Cal. Aug. 11, 2020). For a Rule 11(b)(3) violation based on a frivolous filing, a court "must determine that a pleading is '*both* baseless *and* made without a reasonable and competent inquiry.'" *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025) (emphasis in original).

Once a court determines there has been a Rule 11 violation, it has broad discretion in fashioning an appropriate sanction. *See Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987). For violations based on frivolous filings, sanctions are appropriate even when only a portion of a pleading is baseless. *See Amaro v. Bee Sweet Citrus, Inc.*, 2022 WL 3908309, at *2 (E.D. Cal. Aug. 30, 2022). Further, "[s]anctions can be awarded for frivolous filings even if they are not filed in subjective bad faith." *Babadjanian v. Deutsche Bank Nat'l Tr. Co.*, 2011 WL 13214300, at *16 (C.D. Cal. Mar. 29, 2011).

A "court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The sanctions can include dismissing baseless claims with prejudice, monetary penalties, and awarding attorneys' fees and costs incurred for litigating frivolous claims. *Carroll Shelby Wheel Co., Inc. v. Carroll Shelby Tr.*, 2017 WL 3485760, at *10 (C.D. Cal. Feb. 21, 2017). An award for attorneys' fees is especially

appropriate when the original complaint is the basis for sanctions. *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993).

Here, Plaintiffs' counsel violated Rule 11 by including numerous false factual contentions in the Complaint. Plaintiffs could have easily determined which PowerSchool products they use, and Plaintiffs' counsel could have easily verified this information. Their collective failure to do so has forced PowerSchool to litigate baseless and frivolous claims for nearly two years—even after Concepción, L.M.C, and M.M.C admitted the truth under oath months ago in their depositions. PowerSchool therefore requests that the Court dismiss Concepción's, L.M.C's, and M.M.C's claims with prejudice, impose monetary sanctions on these Plaintiffs and their counsel, and award PowerSchool its attorneys' fees and associated costs for defending against these claims.

## I. PLAINTIFFS' COUNSEL—EITHER RECKLESSLY OR INTENTIONALLY—ASSERTED FALSE STATEMENTS IN THE COMPLAINT IN VIOLATION OF RULE 11(b)(3).

Rule 11(b)(3) required Plaintiffs' counsel to certify, after a reasonable inquiry, that the factual contentions in the Complaint have evidentiary support. But the Complaint in this case contains false statements about ~~Plaintiffs~~ L.M.C. and M.M.C.'s use of PowerSchool products. Thus, Plaintiffs' counsel violated Rule 11(b)(3) by failing to conduct a pre-suit inquiry about these statements, or by doing so then disregarding the truth.

Plaintiffs' counsel endorsed at least three different false statements in the Complaint: (1) L.M.C. accessed PowerSchool products from "both her school-issued and personally owned devices," *Id.* ¶ 15; (2) M.M.C. accessed these products "from his school-issued device," *Id.* ¶ 16, and (3) all of the Plaintiffs use Schoology. *Id.* ¶ 376. Plaintiffs' counsel also endorsed the numerous allegations relating to the harms these Plaintiffs allegedly experienced, or could experience, based on their use of PowerSchool products. Those harms range from accessing inappropriate resources about sex to exploitative marketing. *E.g.*, *id.* ¶ 209, 398. But Plaintiffs, because they do not use PowerSchool products, ***could not have experienced any of these particular harms***.

Plaintiffs and their counsel doubled down on this false narrative throughout written discovery. ~~But~~In fact, the verified interrogatory responses did not just echo the Complaint—they

went even further with additional false statements. For example, in response to an interrogatory about which PowerSchool products these Plaintiffs use, L.M.C. responded that she "uses Schoology to get information from the school and to turn in assignments. L.M.C. has used Schoology since 2021." Ex. B, Pl. L.M.C.'s Resp. & Obj. to Def.'s Interrog. No. 1. In response to the same question, M.M.C. stated: "M.M.C. uses Schoology to get information from the school and to turn in assignments. M.M.C. has used Schoology since 2020." Ex. C, Pl. M.M.C.'s Resp. & Obj. to Def.'s Interrog. No. 1.

The first red flag about the veracity of these statements arose when PowerSchool's internal investigation and subsequent document productions revealed that L.M.C and M.M.C's school district has never licensed Schoology. Adendorff Decl. ¶ 9, Ex. E. The second came when Plaintiffs Concepción, L.M.C., and M.M.C.'s document productions contained not a single reference to Schoology. *Id.* ¶ 10. The documents they produced showed instead that these Plaintiffs use products from PowerSchool's competitors. *Id.* ¶ 11.

PowerSchool then deposed Plaintiff Concepción and asked about his and his children's use of various PowerSchool products. Concepción could not recognize Schoology's dashboard, though he recognized the dashboards of other companies' products. Ex. G, Concepción Tr. at 99:5-101:22, 119:8-120:19, 167:1-168:5.

Once again attempting to get the truth, PowerSchool then served L.M.C. and M.M.C. with a request to admit that they did not use Schoology. Ex. H. Once again, Plaintiffs' counsel made false statements, denying the request. Ex. MK.

Only after fighting for months to depose L.M.C. and M.M.C.—over Plaintiffs' counsels' objections and motion for a protective order—did PowerSchool obtain testimony that confirmed what Concepción said:that Nneither L.M.C. nor M.M.C. use PowerSchool products, including Schoology. *See, e.g.,* Ex. KI, L.M.C. Tr. at 18:10-17 ("Q. And what do you know about Schoology? A. I don't really know that much about Schoology. Q. Do you recall ever going on an app or website that had Schoology written on it? A. No, I don't remember."); Ex. LJ, M.M.C. Tr. at 22:7-9 (Q. Okay. Do you think you've ever used Schoology? A. I don't think so, no."). In other words, when

required to provide testimony under oath—and without the benefit of counsel's carefully crafted language in a complaint or discovery response—L.M.C. and M.M.C. ~~wholly~~ disclaimed any knowledge of ever using any PowerSchool product and implicitly conceded that the statements to the contrary in the Complaint and their discovery responses were false.

Both the Complaint itself and the series of events that unfolded during discovery demonstrate that Plaintiffs' counsel filed baseless and frivolous factual contentions about these Plaintiffs. A reasonable inquiry here should have included verifying the threshold allegation that the named Plaintiffs, who are attempting to represent millions of others, use the products that are the basis of the entire Complaint. Tellingly, Plaintiffs' counsel did some of this pre-suit inquiry for Plaintiff S.G., including screenshots of her Schoology account, as well as her other PowerSchool log-in pages, in the Complaint. *See, e.g.*, Compl. ¶¶ 201, 203-05, 209-11. Nothing of the sort is included for ~~Plaintiffs~~ L.M.C. and M.M.C., and it is now ~~PowerSchool knows~~ clear why.

Further, PowerSchool uncovered the truth by asking questions of the Plaintiffs themselves at deposition—questions Plaintiffs' counsel had a duty under Rule 11(b)(3) to ask and verify before filing a complaint. It is not as if the truth was hiding in documents Plaintiffs' counsel did not have or needed discovery to obtain.

Numerous courts have held that a plaintiff's counsel violates Rule 11 when, as here, discovery reveals that factual assertions in the complaint were false but could have been verified before the lawsuit began. For instance, in *Patterson v. Apple Computer, Inc.*, 2005 WL 2277005 (N.D. Cal.~~,~~ Sept. 19, 2005), the court granted the defendants' motion for Rule 11 sanctions because the plaintiff asserted claims in the complaint that lacked any factual basis. The plaintiff brought several employment-related claims against a particular defendant ~~named Walker~~ and continued to assert those claims throughout the litigation even though her own deposition testimony, and the testimony of several ~~defendants~~others, demonstrated that ~~Walker~~that defendant was not involved in any of her employment decisions. *Id.* at \*36. *See also Galvan v. Walt Disney Parks and Resorts*, 2019 WL 8017806 (C.D. Cal. Dec. 20, 2019) ~~(granting defendant's motion for Rule 11 sanctions for failure to investigate where the complaint asserted that plaintiffs were cognitively impaired but~~

plaintiffs later admitted in depositions that they were not, in fact, cognitively impaired); *Mabson v. Ass'n of Apartment Owners of Maui Kamaole*, 2007 WL 2873489, at *4 (D. Hi. Sept. 25, 2007) (granting defendants' motion for Rule 11 sanctions for failure to investigate where complaint asserted that plaintiff was disabled but plaintiff admitted in deposition testimony that he was not, in fact, disabled).

Plaintiffs' counsel have no meaningful way to distinguish or otherwise excuse the false statements they certified in the Complaint. Like the plaintiff in *Patterson*, whose deposition testimony about one of the defendants undermined the factual basis for her claims against that defendant, ~~Plaintiffs~~ Concepción's, L.M.C.'s, and M.M.C's deposition testimony confirmed that the Complaint contained baseless factual assertions. But the assertions here are even worse because they are false statements about these Plaintiffs' own behavior and actions. This Court should therefore find that Plaintiffs' counsel violated Rule 11(b)(3) by filing a complaint with blatantly false statements about these Plaintiffs' use of PowerSchool products.

## II.    PLAINTIFFS' MISCONDUCT—AND THEIR COMPLETE FAILURE TO REMEDY THAT MISCONDUCT—WARRANTS DISMISSAL, MONETARY SANCTIONS, AND ATTORNEYS' FEES.

Given the seriousness of the allegations here—that PowerSchool has willfully disregarded schoolchildren's privacy for profit in violation of civil and criminal laws—and that Plaintiffs' counsel should have known whether the named Plaintiffs even used the PowerSchool products at issue in the Complaint before filing suit, the Court should dismiss ~~Plaintiffs~~ Concepción's, L.M.C.'s, and M.M.C's claims with prejudice. The Court should also impose monetary sanctions on these Plaintiffs and their counsel and award attorneys' fees and costs for PowerSchool's ~~counsel's~~ efforts to defend against these baseless claims.

First, the ~~c~~Court should dismiss ~~Plaintiffs~~ Concepción's, L.M.C's, and M.M.C's claims with prejudice because several courts within the Ninth Circuit have imposed a similar sanction when, as here, discovery reveals that factual allegations in the complaint were false yet plaintiffs' counsel continued to pursue the claims anyway.

For example, in *Babadjanian v. Deutsche Bank National Trust Company*, the district court

imposed Rule 11 sanctions, struck the plaintiffs' claim, and awarded fees because the complaint falsely claimed that the plaintiffs did not know the identity of their loan servicer. 2011 WL 13214300, at *16-17 (C.D. Cal. Mar. 29, 2011). Discovery revealed that the plaintiffs had communicated with their loan servicer during the relevant time period and even leading up to the lawsuit. *Id.* Because the allegations at issue concerned factual matters that the plaintiffs' counsel could have, and should have, investigated before filing suit, the court found that Rule 11 sanctions were appropriate. *Id.* The court rejected the attorney's arguments that he believed the allegations were factually accurate at the time he filed the complaint, and that it was important the defendants be held accountable for their alleged fraudulent scheme. *Id.* The court pointed out that even if the attorney "believed that the allegations were factually correct," subjective good faith does not "preclude the imposition of Rule 11 sanctions in an appropriate case." *Id.* The court decided to strike the plaintiffs' claim under the Fair Debt Collection Practices Act "[b]ecause the [false] allegations in question concern factual matters" that "are key to plaintiffs' FDCPA claim." *Id.* at *17.

Similarly, in *Galvan v. Walt Disney Parks and Resorts*, the district court imposed Rule 11 sanctions when the plaintiffs asserted in their complaint that they had cognitive impairments but then disavowed any such impairments in their depositions. 2019 WL 8017806, at *2 (C.D. Cal. Dec. 20, 2019). The court held that even if the plaintiffs' counsel did "not deliberately intend to mislead the Court," there was "no evidence of reasonable inquiry on his part into Plaintiffs' purported cognitive disabilities before filing the complaint in this action." *Id.* The court noted that because it had just ruled in favor of the defendant's motion for summary judgment, it did not need to sanction the plaintiffs by dismissing their claims. *Id.*

~~This case merits similar sanctions.~~ Here, like in *Babadjanian* and *Galvan*, Plaintiffs' counsel made false statements in the Complaint about a threshold issue undergirding the entire case—whether the Plaintiffs use the products that allegedly harmed them and millions of others. But unlike these other cases, Plaintiffs' counsel here went even further, reiterating and expanding on the false statements in the discovery responses.

It does not matter if Plaintiffs' counsel initially <u>subjectively</u> believed that ~~Plaintiffs~~

Concepción, L.M.C., and M.M.C used PowerSchool products. Rule 11 requires courts to assess the appropriateness of sanctions for baseless claims "even though the paper was not filed in subjective bad faith." *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir. 1987). Plus, whatever they believed, this was a threshold point that Plaintiffs' counsel could have easily verified.

Moreover, even if Plaintiffs' counsel believed the truth of the allegations concerning ~~Plaintiffs~~ Concepción, L.M.C., and M.M.C at the time they filed the Complaint, they learned those allegations were false during discovery. ~~Yet Plaintiffs' counsel continues to litigate this case based on the false allegations in the Complaint.~~

Nor does it matter that Plaintiffs' new theory for L.M.C. and M.M.C. in the class-certification motion is not based on their use of Schoology but instead on their schools' use of administrative products that students cannot access or products these Plaintiffs never used. *See* ECF 116-3 at 7. The parties have been litigating this case for the past two years, including a motion to dismiss and voluminous discovery, based on the Complaint. As explained above, that Complaint falsely asserts that L.M.C. and M.M.C. use Schoology and other PowerSchool products from their devices, and that these students were harmed by this direct use. In fact, the Court denied PowerSchool's motion to dismiss, in part, because it held that Plaintiffs sufficiently pled an invasion of privacy claim based on the fact that "students are themselves producing the relevant information by using a pedagogical tool for their public education." ECF 65 at 5. This is the case PowerSchool has defended against for years even though these Plaintiffs never directly used PowerSchool products and thus could have never "themselves produc[ed]" information "by using a pedagogical tool." *Id.*

Plaintiffs cannot now wave away the time and expense PowerSchool spent to litigate the false statements in the Complaint by pivoting theories. Relatedly, Plaintiffs' belated promise to amend the complaint—weeks after receiving this motion—and remove the statements at issue do not remedy the problem. The damage has already been done.

Finally, Plaintiffs' counsel continues to assert misleading statements about these Plaintiffs' product use. Their class-certification motion lists only three PowerSchool products that L.M.C. and

M.M.C.'s school "uses:" Naviance, Unified Insights, and SIS. ECF 116-3 at 7. One of these products—Naviance—is a product that a high school within their district, not the school district or their school, uses. *See Id.* at 7 n.45. Another—Unified Insights—is a product their school district only licensed for one year on a trial period that ended years ago, and there is no data on L.M.C. or M.M.C. for that product. *See* Adendorff Decl. ¶¶ 21-22, Ex. L. Thus, for two of the three listed products, there is no connection to L.M.C. or M.M.C.

All in all, the Court should dismiss these Plaintiffs' claims with prejudice because (1) the false statements go to the heart of Plaintiffs' claims in the Complaint; (2) Plaintiffs' counsel should have verified these statements before filing the Complaint, and either chose not to, or did so and then lied to the Court; and (3) Plaintiffs' counsel has continued to litigate these claims even after discovery revealed the truth. *See Carroll Shelby Wheel Co., Inc. v. Carroll Shelby Tr.*, 2017 WL 3485760, at *9 (C.D. Cal. Feb. 21, 2017) (striking claims under Rule 11 because they "did not 'have evidentiary support,'" which "would have been apparent" from a reasonable inquiry by Plaintiff and its counsel).

Second, the Court should impose a monetary sanction on ~~Plaintiff~~ Concepción and his counsel. Rule 11 explicitly provides for sanctions against an attorney "or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1); *see also Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 174–75 (C.D. Cal. 2002) ("Where such a violation is found, Rule 11 authorizes sanctions against persons—attorneys, law firms, or parties—responsible.").

While Plaintiffs' counsel violated the rule requiring a pre-suit inquiry, ~~Plaintiff~~ Concepción is also to blame. The Court need look no further than his and his children's interrogatory responses, which Concepción verified, for confirmation. In those responses, Concepción stated that his children use Schoology on their personal and school-issued devices, even though ~~he~~his testimony and his children~~'s~~ ~~later testified~~testimony made clear that they did not~~ use Schoology. Thus,~~. Just recently, in a declaration attached to Plaintiffs' motion for class certification, Concepción stated that he had "reviewed the Complaint filed on [his] behalf to ensure the accuracy of the facts as they relate to [him] and [his] minor children." ECF 116-3, Ex. D at ¶ 12. He also stated that he reviewed and

helped prepare the discovery responses. *Id.* at ¶ 13. But the Complaint and discovery responses contained false statements about L.M.C. and M.M.C.'s use of PowerSchool products—namely, Schoology. So Concepción—like his counsel—has made multiple misrepresentations to the Court. Plaintiffs and Plaintiffs' counsel together started this case based on false statements and have continued to reiterate those false statements throughout discovery and even up until their latest filing in this case.

A court in this district imposed a monetary sanction on a plaintiff and her counsel for comparable conduct. In *Patterson*, discussed in detail above, the court awarded "defendants $5,000 in sanctions against plaintiff and her counsel" for filing a complaint with factually baseless allegations and continuing to litigate the case based on those false allegations, including by submitting false interrogatory responses. *Patterson v. Apple Comput., Inc.*, No. C 04-0405PJH, 2005 WL 2277005, at *37 (N.D. Cal. Sept. 19, 2005), *aff'd,* 256 F. App'x 165 (9th Cir. 2007). Given the unsubstantiated allegations in the Complaint here, and Plaintiffs' false discovery responses reiterating those allegations, PowerSchool requests that the Court impose a similar monetary sanction on Plaintiffs and their counsel.

Finally, the Court should also award attorneys' fees for PowerSchool's counsel's efforts in defending against the allegations specific to these Plaintiffs. If the Court agreesgrants PowerSchools' request to award attorneys' fees, PowerSchool will file additional briefing addressing the amount and reasonableness of the fees requested.

If "the original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions." *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993). This is especially true when the truth "could have been determined with a straightforward investigation prior to the filing of the Complaint." *Carroll Shelby Wheel Co., Inc. v. Carroll Shelby Tr.*, 2017 WL 3485760, at *10 (C.D. Cal. Feb. 21, 2017).

In this case, Plaintiffs' counsel asserted unsupported claims—that L.M.C. and M.M.C use PowerSchool products, including Schoology—in the original (and only) Complaint. *See* Compl. ¶¶ 373-74, 376. Plaintiffs' counsel had a duty to verify these claims under Rule 11, and apparently did

so for Plaintiff S.G., including screenshots in the Complaint that showed her Schoology log-in and dashboard. *Id.* ¶ 204. Plaintiffs' counsel neglected this duty for L.M.C. and M.M.C. yet baldly asserted that they too use PowerSchool products, including Schoology. *Id.* ¶ 376.

PowerSchool has spent significant resources litigating the Concepcións' specific claims. Because this is a proposed class action, PowerSchool had to litigate not just the merits of Plaintiffs' claims, but also whether these Plaintiffs are adequate class representatives. Accordingly, PowerSchool served ~~Plaintiffs~~ Concepción, L.M.C., and M.M.C with nearly 200 written discovery requests. Adendorff Decl. ~~at~~ ¶ 19. PowerSchool deposed Concepción in August 2025 and then fought with Plaintiffs' counsel for months to take the depositions of L.M.C. and M.M.C. Plaintiffs' counsel moved for a protective order to prevent those depositions from happening, which PowerSchool had to respond to, and the Court ultimately denied. ECF ~~No.~~ 96. PowerSchool then took the depositions of L.M.C. and M.M.C. in November 2025—many months after initially asking for those depositions. Adendorff Decl. ~~at~~ ¶¶ 16-17.

To make matters worse, PowerSchool had to expend extra effort and resources in an attempt to clear up the inaccurate record Plaintiffs and their counsel created by reiterating then expanding on the false statements in discovery responses. As noted above, ~~Plaintiff~~ Concepción's ~~admitted in~~and his <u>children's</u> deposition <u>testimony confirms</u> that ~~his kids~~<u>they</u> did not use Schoology, PowerSchool's document production showed that L.M.C. and M.M.C's school never licensed Schoology, and these Plaintiffs' own documents showed they did not use PowerSchool products. Even still, Plaintiffs, with their counsels' signature, refused to admit that they did not use Schoology <u>in response to a request for admission</u>. Simply put, ~~these~~<u>the false</u> statements have caused unnecessary and expensive discovery not just because they were false, but because Plaintiffs and their counsel continued to perpetuate the falsehoods and obscure the truth.

~~It has now been over five months since Plaintiff Concepción's deposition, and over two months since the deposition of his children. But Plaintiffs' counsel has failed to acknowledge, much less remedy, the blatant falsehoods in the Complaint and interrogatory and RFA responses. Instead, Plaintiffs' counsel has continued to litigate this case—forcing PowerSchool to do the~~

~~same as if nothing material has changed. With all of these factors present, the Court should award PowerSchool its attorneys' fees for litigating Plaintiffs' Concepción, L.M.C., and M.M.C's baseless claims.~~

## CONCLUSION

For these reasons, PowerSchool respectfully asks the Court to dismiss ~~Plaintiff~~ Concepción's, L.M.C.'s, and M.M.C.'s claims with prejudice, impose monetary sanctions on these Plaintiffs and their counsel, and award PowerSchool the reasonable attorneys' fees and other expenses it incurred defending against all allegations related to Concepción, L.M.C., and M.M.C.

DATED: February ☐, 2026                    Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Olivia Adendorff*

Olivia Adendorff, P.C.

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Amelia Bailey (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Taylor Rothman (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
taylor.rothman@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Ethan Joel Levinton (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
ethan.levinton@kirkland.com
eugene.temchenko@kirkland.com

Cara Yi
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
cara.yi@kirkland.com

*Attorneys for Defendant PowerSchool
Holdings, Inc.*

| Summary report: Litera Compare for Word 11.11.0.158 Document comparison done on 2/24/2026 9:05:57 PM | |
|---|---|
| **Style name:** Color (Kirkland Default) | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://dms.kirkland.com/legal/131870227/19 - 2025-01-23 FINAL R11 Motion for Sanctions (as served).docx | |
| **Modified DMS:** iw://dms.kirkland.com/legal/131870227/30 - 2025-02-24 R11 Motion for Sanctions.docx | |
| **Changes:** | |
| Add | 128 |
| Delete | 140 |
| Move From | 3 |
| Move To | 3 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 274 |