Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Amelia H. Bailey (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Cristina Martinez Squiers (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
cristina.squiers@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | | |
|---|---|---|
| EMILY CHERKIN, et al | ) | CASE NO. 3:24-cv-02706-JD |
| | ) | |
| Plaintiffs, | ) | **DEFENDANT POWERSCHOOL** |
| | ) | **HOLDINGS, INC.'S REPLY IN** |
| v. | ) | **SUPPORT OF RULE 11 MOTION** |
| | ) | **FOR SANCTIONS** |
| POWERSCHOOL HOLDINGS, INC., | ) | |
| | ) | Judge: Hon. James Donato |
| Defendant. | ) | Hearing Date: April 9, 2026 |
| | ) | Time: 11:00 a.m. |
| | ) | Courtroom: 11, 19th Floor |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

     I.     Plaintiffs did not timely withdraw all baseless claims and allegations....................2

          A.     The Amended Complaint still falsely calls L.M.C. and M.M.C. direct "users." .................................................................................................2

          B.     Plaintiffs did not withdraw all baseless claims within the Rule 11 safe harbor. ........................................................................................................5

     II.     Plaintiffs failed to prove that they exercised reasonable diligence. .........................6

     III.     PowerSchool timely moved for sanctions..............................................................9

CONCLUSION .....................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ali v. Mid-Atl. Settlement Servs.*,
   233 F.R.D. 32 (D.D.C. 2006)............................................................................................................2

*Babadjanian v. Deutsche Bank Nat'l Tr. Co.*,
   2011 WL 13214300 (C.D. Cal. Mar. 29, 2011)...................................................................6, 9

*Bloomfield Condo. Assocs., LLC v. Drasco*,
   2010 WL 2652465 (D.N.J. June 25, 2010) ..............................................................................5

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002) .............................................................................................1, 7

*Edgerly v. City & Cty. of San Francisco*,
   2005 WL 235710 (N.D. Cal. Feb. 1, 2005), *aff'd*, 599 F.3d 946 (9th Cir. 2010).......................5

*Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*,
   2019 WL 8017806 (C.D. Cal. Dec. 20, 2019) ....................................................................7, 9

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005) ...............................................................................................5, 9

*Lake v. Gates*,
   130 F.4th 1064 (9th Cir. 2025) ...............................................................................................2

*Patterson v. Apple Computer, Inc.*,
   2005 WL 2277005 (N.D. Cal. Sept. 19, 2025) ...................................................................7, 9

*Persian Gulf, Inc. v. Alon USA Energy, Inc.*,
   2023 WL 8889557 (9th Cir. Dec. 26, 2023) ..........................................................................1

*Richter v. Oracle Am., Inc.*,
   2023 WL 8586690 (N.D. Cal. Dec. 8, 2023)......................................................................5, 6

*Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*,
   88 F.3d 368 (6th Cir. 1996) ...................................................................................................9

*Smith v. Simmons*,
   2009 WL 1765002 (E.D. Cal. June 19, 2009) .......................................................................4

*Sneller v. City of Bainbridge Island*,
   606 F.3d 636 (9th Cir. 2010) .................................................................................................5

*Willis v. City of Oakland*,
   231 F.R.D. 597 (N.D. Cal. 2005)...........................................................................................6

*In re Yagman*,
   796 F.2d 1165 (9th Cir. 1986) .................................................................................................9

**Statutes**

Cal. Bus. & Prof. Code § 22584 ..............................................................................................8

Cal. Educ. Code §§ 49073.1, 48645-48650 ...............................................................................8

**Rules**

Fed. R. Civ. P. 11 ................................................................................................... *passim*

**INTRODUCTION**

Plaintiffs' Opposition attempts to distract from the issue at hand:  Plaintiffs and their counsel misrepresented L.M.C. and M.M.C. as "users" of PowerSchool products, falsely accusing PowerSchool of invading their personal devices, surveilling them during their in-app usage, showing them targeted advertising, eavesdropping on their communications, and stealing information they submitted via a PowerSchool app.  Making these demonstrably false allegations with insufficient investigation created considerable expense for PowerSchool and the Court and warrants sanctions.

*Plaintiffs conducted insufficient investigation pre-suit.*  Plaintiffs now concede that these serious accusations were based entirely on parent David Concepción's unverified and uncorroborated recollection even though, throughout this case, "Concepción … was aware that the school did not contract with PowerSchool to use Schoology" (the *sole* PowerSchool product he believed his children used).  Opp. 14.  Indeed, Concepción admitted that, *before filing suit*, he "searched for documents" evidencing that his children "us[ed] Schoology … *but did not locate any*."  Opp., Concepción Decl. ¶ 9 (emphasis added).  Worse, Plaintiffs' counsel was also "aware," *pre-suit*, "that the school district did not contract to use Schoology."  *Id.*, Aragon Decl. ¶ 15.  On top of all that, apparently neither Concepción nor his counsel ever simply asked L.M.C. or M.M.C. what school applications they used—when that basic question would have determined they never used the product, as they testified at deposition.  Further, no one checked the children's personal devices to see what applications were installed, used, and when (if ever).  Nor did Plaintiffs or their counsel ask the children's school.  Instead, Plaintiffs filed accusations based solely on Concepción's baseless and controverted recollection, speculating that it was possible that the children somehow or somewhere accessed this particular PowerSchool product.  Even worse, Plaintiffs now blame *PowerSchool* for not conducting an investigation, despite the fact that PowerSchool had no direct access to the Concepción children or their devices (as Plaintiffs did) and did investigate by conducting discovery to prove a negative—that the children never used Schoology.  These arguments turn Plaintiffs' burden of proof on its head.

Rule 11 requires *Plaintiffs and their counsel* to conduct a reasonable inquiry into information accessible to plaintiffs and review the physical evidence.  *Persian Gulf, Inc. v. Alon USA Energy, Inc.*, 2023 WL 8889557, at *1 (9th Cir. Dec. 26, 2023); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th

Cir. 2002). Further, Rule 11 prohibits Plaintiffs and their counsel from making allegations based merely on uncorroborated beliefs and speculation. *See Lake v. Gates*, 130 F.4th 1064, 1069 (9th Cir. 2025); *Ali v. Mid-Atl. Settlement Servs.*, 233 F.R.D. 32, 39 (D.D.C. 2006). Plaintiffs and their counsel eschewed these responsibilities, and their attempts to justify themselves or avoid sanctions all fail.

***Plaintiffs have not cured their false statements.*** Plaintiffs wrongly claim that they cured the Rule 11 issue by removing references to L.M.C. and M.M.C.'s use of Schoology from the operative complaint. Opp. 1, 2, 8-10. The Amended Complaint is still false, however, because it describes L.M.C. and M.M.C. as "users" of PowerSchool products, claims that PowerSchool takes and monetizes their data during their "use" of PowerSchool products, accuses PowerSchool of surveilling L.M.C. and M.M.C. while they "use" PowerSchool products, and brings claims based on PowerSchool's supposed "invasion" into L.M.C. and M.M.C.'s private devices. *See* Am. Compl. ¶¶ 15, 16, 371, 372, 378-79, 390, 445, 448-49, 490, 492, 494, 508. These allegations are false because L.M.C. and M.M.C. never used PowerSchool products. As a result, Plaintiffs cannot rely on Rule 11's safe harbor because they did not withdraw all baseless claims within 21 days.

***Good faith is not enough to satisfy Rule 11.*** Plaintiffs wrongly focus on proving that Concepción had a good faith belief that his children used Schoology. *See* Opp. 10-13. Good faith is irrelevant here. Plaintiffs need to prove that they duly investigated L.M.C. and M.M.C.'s use of PowerSchool products and had objectively reasonable factual support for their allegations. Plaintiffs admit they did not have this and rely only on Concepción's baseless recollection and speculation.

***PowerSchool's Motion is timely.*** Courts routinely issue Rule 11 sanctions even at summary judgment where, as here, discovery reveals that plaintiffs lacked objectively reasonable bases for their allegations. Indeed, Rule 11 imposes no time limits for seeking sanctions. Plaintiffs' attack on the timing of PowerSchool's filing is inappropriate since the falsehood here concerns the ***Plaintiff children's*** own conduct and understandings—facts PowerSchool could only verify in discovery.

## ARGUMENT

### I. Plaintiffs did not timely withdraw all baseless claims and allegations.

#### A. The Amended Complaint still falsely calls L.M.C. and M.M.C. direct "users."

Plaintiffs' Opposition operates on the wrong premise that Plaintiffs withdrew all false

allegations and claims concerning L.M.C. and M.M.C.  *See* Opp. 1, 2, 8-10.  But Plaintiffs deleted only a handful of specific allegations PowerSchool identified in its Opening Brief while maintaining the same false narrative and claims based on that narrative.[1]  As the Amended Complaint still falsely accuses PowerSchool of harming L.M.C. and M.M.C. during their use of PowerSchool products, Plaintiffs' reliance on Rule 11's safe harbor is misplaced.

PowerSchool highlighted Plaintiffs' most egregious falsehoods in its Motion.  While Plaintiffs have now (finally) agreed to excise those allegations, the Amended Complaint still asserts that:

- "L.M.C. [and] … M.M.C. … use[] PowerSchool products and services" "[a]s part of [their] public schooling."  Am. Compl. ¶¶ 15-16, 371-72;

- PowerSchool "buil[t] valuable dossiers on Plaintiffs" just like PowerSchool did for S.G. during her ***use*** of PowerSchool Schoology, *id.* ¶¶ 378-79;

- Plaintiffs were exposed to "tracking technologies" by accessing "PowerSchool's website" and that PowerSchool used that technology "to track and surveil them," *id.* ¶ 390; and

- "PowerSchool harms children by subjecting them to marketing." *Id.* p. 47.

All these allegations are false for L.M.C. and M.M.C. because they never used any PowerSchool products.  Ex. H, L.M.C. 18:10-17, 49:16-22; Ex. I, M.M.C. 22:2-9, 34:10-35:25.

Plaintiffs also miss the larger point that L.M.C.'s and M.M.C.'s remaining ***claims*** depend in part on them being users of PowerSchool products.  L.M.C. and M.M.C. accuse PowerSchool of invading their privacy under California common law (Count I) because they had "a reasonable expectation of privacy when … ***using*** products in … school," "PowerSchool's collection of [their] information ***while logged into*** PowerSchool products was … unreasonable," and "PowerSchool's intrusion[]" was "highly offensive" because PowerSchool allegedly "use[d] … subterfuge to intrude into [their] electronic devices for the purpose of collecting their data."  Am. Compl. ¶¶ 445, 448 (emphases added); *id.* ¶ 449 (alleging that it was highly offensive for PowerSchool to collect Plaintiffs' data "through students' use of education tools in a compulsory setting").  The Amended Complaint is now inconsistent because it simultaneously charges PowerSchool with spying on L.M.C. and M.M.C. while they are logged in while also disavowing prior statements that L.M.C. and M.M.C. ever accessed

---

[1] Plaintiffs try to shift the burden to PowerSchool to identify every change needed to make the Complaint not misleading, but this rings hollow.  Rule 11 obligates ***Plaintiffs and their counsel*** to either support all allegations with proper evidence or remove every allegation lacking adequate factual support.

PowerSchool products "from school issued and personally owned devices." How could L.M.C. and M.M.C. be "logged into" PowerSchool products without ever accessing those products?

Similarly, for Count IV, L.M.C. and M.M.C. allege a violation of their state constitutional privacy rights because PowerSchool supposedly "invaded … the right to privacy in data contained on *personal computing devices*," and engaged in "surreptitious and unauthorized *tracking* of [their] activity." *Id.* ¶¶ 490(a), (e), 492, 494. And, for Count VI, L.M.C. and M.M.C. claimed that PowerSchool was unjustly enriched because PowerSchool "acquired … troves of personal data … in connection with [their] *use of* PowerSchool sits [sic] and products." *Id.* ¶ 508. More generally, Plaintiffs still accuse PowerSchool of installing trackers on *students' devices*, *id.* ¶¶ 276-87, selling data on *users' in-app* behavior, *id.* ¶ 301, and enabling students to view dangerous content in *their PowerSchool apps* such as concerning suicide or purchasing of firearms, *id.* ¶¶ 198-213. None of these allegations could apply to L.M.C. and M.M.C., as they never used PowerSchool products.

Plaintiffs have now confirmed that they have no basis for these allegations. Plaintiffs admit that L.M.C. and M.M.C. never used Schoology—the sole student-facing product they initially claimed they used. *See* Opp. 2. They admit that "the children do not directly input information into … PowerSchool SIS" (a database product used by, at most, teachers and parents).[2] *Id.* at 3. Plaintiffs admit that L.M.C. and M.M.C. never used Naviance—one other product Plaintiffs (erroneously) claimed the whole district licensed. *Id.* at 8 n.8. Nevertheless, the Amended Complaint maintains its general false narrative as to L.M.C. and M.M.C.

For these reasons, PowerSchool informed Plaintiffs—as they acknowledge—that their amendment would not moot PowerSchool's Rule 11 motion. *See* Opp. 7; Fed. R. Civ. P. 11(c)(2) (allowing a plaintiff to avoid sanctions by "withdraw[ing] or appropriately correct[ing]" "the challenged paper, claim" or "contention"). A proper "cure" requires Plaintiffs to withdraw an entire "position," not "re-engineer their complaint" in hopes of finding some minimal change that withstands scrutiny. *Smith v. Simmons*, 2009 WL 1765002 at *5 (E.D. Cal. June 19, 2009). Plaintiffs' attempt to

---

[2] Plaintiffs note that "there is a student login for PowerSchool SIS" and that "it is highly likely that the children did interact directly with … SIS." Opp. 3. M.M.C. disproved this speculation at his deposition, testifying that he never logged in. Ex. I, M.M.C. 35:5-7. As for L.M.C., she identified *third-party* applications she used in school but had not heard of PowerSchool until her parent brought it up for this litigation. *See* Ex. H, L.M.C. 11:24-13:14, 17:15-19.

somehow shift blame to PowerSchool for not listing every false allegation also misses the mark. *See* Opp. 1. PowerSchool's motion charged Plaintiffs with failing their "duty to investigate **Plaintiffs' claims**," not mere allegations. Mot. 2. As Plaintiffs' own cited authority recognizes, it was incumbent on Plaintiffs to "withdr[aw] all of the challenged claims." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 639 (9th Cir. 2010). Plaintiffs ignored and continue to ignore that their false allegations formed the basis for all their claims, including the three counts still pleaded in their Amended Complaint (to the extent the claims were based on students' use). L.M.C. and M.M.C. should have never brought claims concerning students' use of PowerSchool products.

**B.      Plaintiffs did not withdraw all baseless claims within the Rule 11 safe harbor.**

Even if Plaintiffs had withdrawn all false allegations and claims, they cannot avoid sanctions because Plaintiffs moved for an amendment outside the 21-day safe harbor afforded by Rule 11. Rule 11's safe harbor is a plaintiff's sole opportunity to "avoid Rule 11 sanctions." *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005). Amendments made outside the safe harbor do not shield a plaintiff from sanctions. *See Bloomfield Condo. Assocs., LLC v. Drasco*, 2010 WL 2652465, at *2 (D.N.J. June 25, 2010).

Here, it is undisputed that PowerSchool served Plaintiffs with a copy of the Rule 11 motion by January 29, 2026, such that the safe harbor expired on February 19, 2026—before Plaintiffs moved to amend. *See* Dkt. 126. Indeed, Plaintiffs **concede** that PowerSchool fully complied with Rule 11's requirements. *See* Opp. 9 n.9 ("Plaintiffs are not arguing that the motion was procedurally defective."). Thus, even if Plaintiffs had withdrawn all false claims and allegations—which they did not do—PowerSchool would still be entitled to seek sanctions for the original false allegations.

Nor were Plaintiffs entitled to more time to cure the violations just because PowerSchool made changes to its Motion between the date of service (January 29, 2026) and the date it was filed. *See* Opp. 9. Ninth Circuit caselaw is clear that "a served Rule 11 motion [need not] be identical to the filed motion," so long as it "rests on substantially the same grounds as a filed motion." *Richter v. Oracle Am., Inc.*, 2023 WL 8586690, at *6 (N.D. Cal. Dec. 8, 2023). For the safe harbor to restart, the motion must raise "new arguments" that prejudice Plaintiffs. *Edgerly v. City & Cty. of San Francisco*, 2005 WL 235710, at *3 (N.D. Cal. Feb. 1, 2005), *aff'd*, 599 F.3d 946, 963 (9th Cir. 2010).

Plaintiffs identify no new argument or prejudice. Instead, they complain that PowerSchool **removed** an argument concerning Concepción's own use of PowerSchool products, *see* Opp. 9, and then cite the individual number of redlined edits without discussing what those edits are. All those edits are either stylistic or provide additional background on procedural developments between the date PowerSchool served the Motion and when it was filed—namely, Plaintiffs' filing of their motion for class certification. *See* Opp., Aragon Decl., Ex. B. Such edits ensured that PowerSchool's motion was up to date; they did not add any new argument or bases for sanctions. Rather, as in *Richter*, PowerSchool's as-served motion and the as-filed motion "stated the same arguments and sought sanctions on the same basis"—*i.e.*, that Plaintiffs falsely alleged that L.M.C. and M.M.C. were users of PowerSchool products. *Compare* Mot., *with* Opp., Ex. B. Plaintiffs' 21-day clock did not restart.

Plaintiffs have had nearly two years to identify and cure these violations. Concepción and his counsel could have spoken to L.M.C. and M.M.C. before filing their original Complaint or at any time during discovery. They could have begun working on a comprehensive amendment when L.M.C. and M.M.C. disavowed using PowerSchool products during their depositions in October 2025. PowerSchool even alerted Plaintiffs to these same issues in October 2025—four months before PowerSchool moved for sanctions. *See* Ex. M at 6. Plaintiffs refused to take any action on PowerSchool's concerns until just a week before the 21-day safe harbor expired. Plaintiffs should not be granted any more time.

## II.    Plaintiffs failed to prove that they exercised reasonable diligence.

Plaintiffs' second argument against sanctions fails because they try to show a "good-faith basis for their allegations," rather than proving that they undertook a competent inquiry before accusing PowerSchool of harming L.M.C. and M.M.C. during their "use" of PowerSchool products. *See* Opp. 10-13. Rule 11 does not concern itself with good faith or "subjective bad faith." *Babadjanian v. Deutsche Bank Nat'l Tr. Co.*, 2011 WL 13214300, at *16 (C.D. Cal. Mar. 29, 2011). As Plaintiffs acknowledge, they needed to prove that their allegations were based on "a reasonable and competent inquiry." Opp. 10. Notably, Plaintiffs' counsel apparently never spoke with the actual relevant Plaintiffs—L.M.C. or M.M.C.—about the allegations, as they would have refuted the allegations (as they later did at deposition). But even if they had, relying on a client interview alone is insufficient.

*Willis v. City of Oakland*, 231 F.R.D. 597, 598-99 (N.D. Cal. 2005) (counsel failed to discharge Rule 11 obligations by relying principally on his interview of plaintiff). At a minimum, Rule 11 requires speaking with potentially corroborating witnesses and examining the physical evidence. *See id.* (truth discovered when counsel spoke with witnesses identified in defendant's motion); *see Christian*, 286 F.3d at 1129 (affirming sanctions where counsel did not examine the allegedly infringing product).

Here, Plaintiffs' Opposition confirms that Plaintiffs and their counsel failed to discharge their Rule 11 obligations. Plaintiffs claimed that L.M.C. and M.M.C. were users of PowerSchool products because Concepción "recall[ed] that [his] children used a product called Schoology," but he "searched for documents" evidencing such use and "***did not locate any***." Opp., Concepción Decl. ¶¶ 3-9 (emphasis added). Plaintiffs' counsel admits that he knew that "the school district did not contract to use Schoology" and that "other evidence … suggest[ed] that Schoology was not used by the [d]istrict." *Id.*, Aragon Decl. ¶ 15. By Plaintiffs' own admissions, before they filed suit, they knew that Concepción's recollection lacked evidentiary support and was contrary to the public record. Did they ask L.M.C. and M.M.C. if they used PowerSchool products? Apparently not. Did they examine L.M.C. and M.M.C.'s devices to see if it had Schoology installed? Apparently not. Plaintiffs instead asserted that L.M.C. and M.M.C. were PowerSchool users of Schoology because they were "unaware of evidence to definitively dispute [Concepción's] recollection." *Id.*

Such conduct is indistinguishable from other cases in this Circuit awarding sanctions. In *Galvan v. Walt Disney*, for example, the Central District sanctioned plaintiffs and their counsel for falsely alleging that their clients had cognitive impairments without "contact[ing] [p]laintiffs to confirm that they did," deeming the issues too "complex." 2019 WL 8017806, at *2-3 (C.D. Cal. Dec. 20, 2019). In *Patterson v. Apple*, the Northern District sanctioned plaintiff and her counsel for accusing Apple's CTO of unlawful retaliation solely because plaintiff was told that the CTO had a role vis-à-vis her employment but without any "evidence that [he] … subjected her to any adverse actions." 2005 WL 2277005, at *18, *33-36 (N.D. Cal. Sept. 19, 2025).[3] Here, too, Plaintiffs never

_____

[3] Plaintiffs claim these cases are inapposite because the plaintiffs in *Galvan* and *Patterson* "always knew" that their allegations were false, as opposed to what Plaintiffs characterize as merely "the possible inaccuracy of Mr. Concepción's recollection." Opp. 12. Not only is that a total deflection of

confirmed their allegations with L.M.C. or M.M.C. and they had no corroborating evidence.

None of Plaintiffs' remaining arguments demonstrate the requisite diligence.

*First*, Plaintiffs claim that Concepción's belief that his children used Schoology was made in good faith since "PowerSchool … provided no evidence that M.M.C.'s or L.M.C.'s school … never tested or otherwise utilized Schoology." Opp. 10-11. This argument fails. For one, Plaintiffs cannot shift the burden to PowerSchool to disprove their allegations. Plaintiffs needed to have evidentiary support for their allegations. *See* Fed. R. Civ. P. 11(b)(3). Moreover, PowerSchool's Motion has nothing to do with what products **the school** used. The Motion concerns solely whether **L.M.C. and M.M.C.** used PowerSchool products (specifically, Schoology, as pled), which they both unequivocally admitted they did not:

| Ex. H, L.M.C. 18:10-17 | Ex. I, M.M.C. 22:2-9 |
|---|---|
| Q     Okay.  And what do you know about Schoology?<br>A     I don't really know that much about Schoology.<br>Q     Okay.  Do you recall ever going on an app or website that had Schoology written on it?<br>A     No, I don't remember. | Q     Okay.  Do you -- have you ever heard the word "Schoology" or an app called Schoology?<br>A     I've heard of it, but I don't really know about it.<br>Q     Okay.  Do you think you've ever used Schoology?<br>A     I don't think so, no. |

These are basic questions Plaintiffs' counsel could have and should have asked.

*Second*, Plaintiffs' attempt to shift the focus away from the issues at hand by asserting that PowerSchool hosts some data concerning L.M.C. and M.M.C. for their district fails. Opp. 2-3. Plaintiffs are effectively abandoning claims based on their original accusation (that the Court accepted at the motion to dismiss stage) that PowerSchool unlawfully collected student data "via … applications and software **used by public-school students on- or off-campus**" and then misused that data. Dkt. 65 at 3. Having abandoned that theory, Plaintiffs now sue PowerSchool merely for hosting data for L.M.C.'s and M.M.C.'s school, *see* Opp. 2-3, 8 n.8, despite the fact California law expressly authorizes such data hosting, *see* Cal. Educ. Code §§ 49073.1(a)-(b), 48645-48650; Cal. Bus. & Prof.

counsel's responsibility under Rule 11 to conduct a reasonable investigation, as discussed in those cases, but the cases are applicable here even under plaintiffs' interpretation, as there is no suggestion plaintiffs' counsel investigated L.M.C. or M.M.C.'s recollection or that L.M.C. or M.M.C. **at any time** thought they used a PowerSchool product.

POWERSCHOOL'S REPLY IN SUPPORT OF
MOTION FOR RULE 11 SANCTIONS          8          CASE NO. 3:24-CV-02706-JD

Code § 22584(a)(3), (b), (e).  But all of this is beside the point; the Rule 11 Motion does not challenge Plaintiffs for pursuing a new legal theory.  Rather, PowerSchool's Motion concerns the false allegations that L.M.C. and M.M.C. used PowerSchool products.  These false allegations persist to this day, just stripped of specific references to Schoology.  *See* Am. Compl. ¶¶ 15, 16, 371, 372, 378-79, 390, 445, 448-49, 490, 492, 494, 508.  And, as noted above, Plaintiffs' Amended Complaint—filed after the close of voluminous and costly discovery—does nothing to remedy the injury suffered by PowerSchool from defending against and disproving these false accusations.

### III.    PowerSchool timely moved for sanctions.

As a last resort, Plaintiffs incorrectly fault PowerSchool for moving for sanctions after the close of discovery and suggest that PowerSchool could have discovered the truth the day they filed their Complaint.  *See* Opp. 13-14.

*First*, there is no legal support for the notion that a party waives the right to seek Rule 11 sanctions by not raising them immediately when a plaintiff files the complaint.  Courts routinely award sanctions for false allegations in the complaint even when sought together with a motion for summary judgment.  *Patterson*, 2005 WL 2277005, at *33-36 (awarding sanctions after close of discovery and together with a motion for summary judgment); *Galvan*, 2019 WL 8017806, at *1 (awarding sanctions sought based on facts learned at depositions); *Babadjanian*, 2011 WL 13214300, at *17-18 (same).  Indeed, discovery is often required to reveal the complete baselessness of plaintiffs' allegations.  *See In re Yagman,* 796 F.2d 1165, 1183-84 (9th Cir. 1986) ("In some situations, liability under proper sanctioning authority [(including Rule 11)] will not be immediately apparent or may not be precisely and accurately discernible until … after the evidentiary portion of the trial.").  Here, PowerSchool sought sanctions after discovery revealed that L.M.C. and M.M.C. themselves admit they have never used PowerSchool products, and Plaintiffs' counsel was unable to offer a reasonable explanation for the falsity during the parties' conferences.[4]

---

[4] Plaintiffs' reliance on *Holgate v. Baldwin* is misplaced.  In that case, the defendant failed to comply with the Rule 11 safe harbor and did not serve the motion on the signing attorney until five months after he had withdrawn, thus depriving counsel of any "power to correct the offending paper."  425 F.3d 671, 679 (9th Cir. 2005).  Further, *Holgate* concerned sanctions for a legal deficiency apparent at filing, not a factual deficiency uncovered through discovery—a critical distinction.  *See Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 372 (6th Cir. 1996) ("Whether a case is well grounded **in fact** will often not be evident until a plaintiff has been given a chance to conduct

Moreover, Plaintiffs' attempt to blame PowerSchool falls flat given that Plaintiffs misled PowerSchool during discovery into believing that L.M.C. and M.M.C. were users of PowerSchool products. Mot. 3-6 (detailing PowerSchool's efforts to uncover the truth); Dkt. 127. PowerSchool could not have known the truth without discovery because it needed to probe why these Plaintiffs asserted that they used Schoology. Even though PowerSchool could confirm that their school district never licensed the product, it did not know other information uniquely held by Plaintiffs, such as whether they previously attended school in a different district that did license the product.

## CONCLUSION

The Court should not allow Plaintiffs to downplay the significance of their misconduct. This is not merely a good faith error by a plaintiff premised on a weak evidentiary record. *See* Opp. 14-15. Rather, these falsehoods are the result of Plaintiffs attempting to invent a narrative disconnected from L.M.C. and M.M.C.'s actual experiences. Even though Plaintiffs sue for the children's alleged injuries, Plaintiffs described L.M.C. and M.M.C.'s experiences relying solely on Concepción's recollection, *see* Opp., Aragon Decl. ¶ 15, answered discovery for L.M.C. and M.M.C. based on Concepción's erroneous recollection, Exs. B-D, J, and even now submitted a declaration only from Concepción (not L.M.C. and M.M.C.), *see* Opp., Concepción Decl. Plaintiffs' apparent failure to involve L.M.C. and M.M.C. in this litigation has caused Plaintiffs to misrepresent these children as PowerSchool users throughout this litigation. It has also caused PowerSchool to incur significant discovery expenses. *See* Dkt. 127 (letter motion seeking leave to seek fees for false and uncorrected discovery responses). This warrants sanctions, including an award of attorneys' fees, full or partial dismissal of claims, and/or striking their request to serve as class representatives.

---

discovery") (emphasis added). *Holgate* does not disagree with long-standing precedent that sanctions can be awarded after discovery proves a plaintiff's allegations were frivolous.

DATED: March 20, 2026

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Olivia Adendorff*

Olivia Adendorff, P.C.

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Amelia Bailey (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Cristina Martinez Squiers (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
cristina.squiers@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*