Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Amelia H. Bailey (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Cristina Martinez Squiers (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
cristina.squiers@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for Defendant*
*PowerSchool Holdings, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMILY CHERKIN, on behalf of herself and as parent and guardian of her minor child, S.G., and on behalf of all others similarly situated, DAVID CONCEPCIÓN, on behalf of himself and as parent and guardian of his minor children, L.M.C. and M.M.C., and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> POWERSCHOOL HOLDINGS, INC., <br><br> Defendant. | CASE NO. 3:24-CV-02706-JD <br><br> **DEFENDANT POWERSCHOOL HOLDINGS, INC.'S ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT** |

ANSWER TO AMENDED COMPLAINT

CASE NO. 3:24-CV-02706-JD

Defendant PowerSchool Holdings, Inc. ("PowerSchool") answers the First Amended Class Action Complaint ("Amended Complaint") filed by Plaintiffs Emily Cherkin, on behalf of herself and as parent and guardian of her minor child, S.G., and David Concepción, on behalf of himself and as parent and guardian of his minor children, L.M.C. and M.M.C., and sets forth its affirmative defenses as follows. PowerSchool denies each and every allegation in the Amended Complaint except as expressly admitted below.

## I.    INTRODUCTION[1]

1.     Given today's digital landscape and how vulnerable we are to surveillance and exploitation, corporations must act within the bounds of law when they collect, store, and use our personal information. This complaint addresses the unlawful practices of PowerSchool, a technology company deeply entrenched in schools and school districts across the United States, which systematically violates the fundamental rights of children and their families by collecting and monetizing their personal information without effective consent.

**ANSWER:**    Paragraph 1 contains Plaintiffs' characterization of their claims, legal conclusions, and argument to which no response is required.  To the extent a response is deemed required, PowerSchool admits that it provides data management services to schools and school districts in the United States. PowerSchool denies any remaining allegations in Paragraph 1.

2.     The legal protections of personal information are well established, both through statutory laws and common-law principles. Our laws mandate informed consent, transparency, and confidentiality in handling personal data, especially when the data subjects are minors. And not consent from just anyone, but informed and voluntary consent from the child's parent or guardian.

**ANSWER:**    Paragraph 2 contains Plaintiffs' characterization of statutory and common law, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 2.

3.     PowerSchool, without effective consent, collects, stores, analyzes, and shares students' sensitive data, which it acquires through its educational technology products that it sells to schools and school districts. The information PowerSchool takes from students is virtually unlimited. It includes everything from educational records and behavioral history to health data and information about a child's family circumstances. PowerSchool collects this highly sensitive information under the guise of educational support, but in fact collects it for its own commercial gain.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 3.

---

[1]    The headings and titles in the Amended Complaint are not factual allegations to which a response is required.  To the extent a response is deemed required, PowerSchool denies any allegations in Plaintiffs' headings or titles.  All footnotes are omitted and any response to a footnote is included in the Answer to the relevant Paragraph of the Amended Complaint.  To the extent any further response is deemed required, PowerSchool denies any allegation in a footnote.

ANSWER TO AMENDED COMPLAINT                1                CASE NO. 3:24-cv-02706-JD

4.     In addition to the nonconsensual collection of users' personal information, PowerSchool violates the rights of its users by using that information to build its own products and by selling it to third parties. PowerSchool uses this information to build dossiers on children that PowerSchool and its customers use to manipulate and make decisions about them in areas such as college and career planning. PowerSchool also feeds that information into its proprietary artificial intelligence systems.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 4.

5.     PowerSchool's business model depends on keeping parents in the dark. At no time does PowerSchool seek parental consent, and it conceals its sweeping data practices behind opaque terms of service such that no one can understand the full nature and scope of the data it collects or how it uses that data.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 5.

6.     Putting profits over people, PowerSchool ignores families' fundamental rights, including their right to privacy and right to be free from nonconsensual exploitation, thus inflicting irreparable harm on students and their families.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 6.

7.     The wrongdoing in this case outstrips that of other cases involving tech companies that exceed the consent they obtain from adult users in non-compulsory settings. By contrast, PowerSchool has built a billion-dollar corporation by collecting and exploiting the information of children in compulsory education environments. PowerSchool's pervasive surveillance and commercial exploitation without consent transforms schools from safe havens of learning into conduits for unchecked corporate data mining.

**ANSWER:**    Paragraph 7 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 7.

8.     By sending their children to school as the law requires, parents do not forfeit their right to decide what personal information may be extracted from their children and themselves and how that information may be used. PowerSchool must be held to account for violating these fundamental rights.

**ANSWER:**    Paragraph 8 contains Plaintiffs' characterization of statutory and common law, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 8.

## II.    JURISDICTION AND VENUE

9.     This Court has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Under 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interests and costs, and at least one member of the proposed Class is a citizen of a different state than Defendant PowerSchool.

**ANSWER:**    PowerSchool admits that Plaintiffs purport to bring an action under the Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d)) but denies that Plaintiffs can state a claim and/or are

entitled to any of the relief requested.  Whether the Court has subject matter jurisdiction over this action is a legal conclusion to which no response is required.  PowerSchool denies any remaining allegations in Paragraph 9.

10.     This Court has personal jurisdiction over Defendant because its principal place of business is in California.

**ANSWER:**   PowerSchool admits that it is headquartered in California.

11.     Defendants are also subject to personal jurisdiction in California because PowerSchool purposely availed itself of the laws of California, and engaged and is engaging in conduct that emanates from California and causes injury to persons throughout the United States, including persons located in California.

**ANSWER:**   PowerSchool denies that it engaged in the conduct causing the injury asserted herein.  PowerSchool denies any remaining allegations in Paragraph 11.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because PowerSchool is subject to personal jurisdiction here, and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**ANSWER:**   Whether venue properly lies in this District for purposes of this matter is a legal conclusion to which no response is required.  PowerSchool denies that it has committed any act or omission giving rise to the claims asserted herein.  PowerSchool denies any remaining allegations in Paragraph 12.

### III.     THE PARTIES

13.     Plaintiff S.G. is a minor under the age of 18. At all relevant times, she has been domiciled in the state of Washington. Plaintiff S.G. attends school in the Seattle Public School District. She uses PowerSchool products and services as part of her public schooling, which she has accessed and used from both her school-issued and personally owned devices. Plaintiff S.G. was never informed about PowerSchool's data practices nor was she ever asked for her consent to those practices. As of the date of this filing, Plaintiff S.G. still does not know the full extent of the information that PowerSchool has collected about her, whether such information is accurate, where or how long it is stored, how it is used, or who has access to it. At no time has Plaintiff S.G. knowingly and voluntarily consented to PowerSchool's data practices.

**ANSWER:**   PowerSchool admits that discovery showed that S.G. is a minor domiciled in the State of Washington.  PowerSchool otherwise denies the allegations of Paragraph 13.

14.     Plaintiff Emily Cherkin is the mother and legal guardian of Plaintiff S.G. At all relevant times, she has been domiciled in the state of Washington. Plaintiff Cherkin was never informed that Plaintiff S.G. was using PowerSchool products and services as part of her education, was never informed about PowerSchool's data practices, and was never asked to consent to those practices on her own or S.G.'s behalf. Despite her best efforts through the date of this filing, Plaintiff Cherkin still does not know the full extent of the information that PowerSchool has collected about herself or Plaintiff S.G., whether such information is accurate, where or how long it is stored, how it is used, or who has access to it. At no

time has Plaintiff Cherkin knowingly and voluntarily consented to PowerSchool's data practices on behalf of herself or Plaintiff S.G.

**ANSWER:**    PowerSchool admits that discovery showed that Emily Cherkin is the mother and legal guardian of S.G.  PowerSchool otherwise denies the allegations of Paragraph 14.

15.    Plaintiff L.M.C. is a minor under the age of 18. At all relevant times, she has been domiciled in the state of California. Plaintiff L.M.C. attends school in the West Contra Costa County Unified School District. As part of her public schooling, she uses PowerSchool products and services. Plaintiff L.M.C. was never informed about PowerSchool's data practices nor was she ever asked for her consent to those practices. As of the date of this filing, Plaintiff L.M.C. still does not know the full extent of the information that PowerSchool has collected about her, whether such information is accurate, where or how long it is stored, how it is used, or who has access to it. At no time has Plaintiff L.M.C. knowingly and voluntarily consented to PowerSchool's data practices.

**ANSWER:**    PowerSchool admits that discovery showed that L.M.C. is a minor domiciled in the State of California.  PowerSchool otherwise denies the allegations of Paragraph 15.

16.    Plaintiff M.M.C. is a minor under the age of 18. At all relevant times, he has been domiciled in the state of California. Plaintiff M.M.C. attends school in the West Contra Costa County Unified School District. As part of his public schooling, he uses PowerSchool products and services. Plaintiff M.M.C. was never informed about PowerSchool's data practices nor was he ever asked for his consent to those practices. As of the date of this filing, Plaintiff M.M.C. still does not know the full extent of the information that PowerSchool has collected about him, whether such information is accurate, where or how long it is stored, how it is used, or who has access to it. At no time has Plaintiff M.M.C. knowingly and voluntarily consented to PowerSchool's data practices.

**ANSWER:**    PowerSchool admits that discovery showed that M.M.C. is a minor domiciled in the State of California.  PowerSchool otherwise denies the allegations of Paragraph 16.

17.    Plaintiff David Concepción is the parent and legal guardian of Plaintiffs L.M.C. and M.M.C. At all relevant times, he has been domiciled in the state of California. Plaintiff Concepción was never informed about PowerSchool's data practices, and was never asked to consent to those practices on behalf of himself or L.M.C. and M.M.C. Plaintiff Concepción still does not know the full extent of the information that PowerSchool has collected about himself or Plaintiffs L.M.C. and M.M.C., whether such information is accurate, where or how long it is stored, how it is used, or who has access to it. At no time has Plaintiff Concepción knowingly and voluntarily consented to PowerSchool's data practices on behalf of himself or Plaintiffs L.M.C. and M.M.C.

**ANSWER:**    PowerSchool admits that discovery showed that David Concepcion is the parent and legal guardian of LM.C and M.M.C.  PowerSchool otherwise denies the allegations of Paragraph 17.

18.    Defendant PowerSchool is Delaware corporation. Its headquarters are located at 150 Parkshore Drive, Folsom, California 95630.

**ANSWER:**    PowerSchool admits that it is incorporated in Delaware and that its headquarters are located at 150 Parkshore Drive, Folsom, California 95630.

## IV.    FACTUAL ALLEGATIONS

**A.    The Internet, Data Monetization, and EdTech**

**1)    The business model of the modern internet.**

19.    For two decades, vast numbers of consumer-facing technology companies built their businesses around what Harvard Business School professor emerita Shoshana Zuboff has described as "surveillance capitalism."

**ANSWER:**    Paragraph 19 contains Plaintiffs' selective quotation of third-party statements and argument to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

20.    Under surveillance capitalism, a technology provider is incentivized to:

- collect as much data as possible about a user though the user's interaction with the technology provider's platform;

- use the data the provider collects about the user to make predictions about that user's future behavior, which the provider uses to build its own products and services and sells to third parties seeking to profit from that user;

- surreptitiously influence the user's behavior using what it knows about the user—both to keep the user on the platform longer (increasing the amount of information available to collect) and to coerce the user to act as the technology provider has predicted (increasing the value of the provider's insights); and

- enable third parties to make significant decisions about the user that can affect their life and future.

**ANSWER:**    Paragraph 20 contains Plaintiffs' characterization of unidentified third-party statements and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

21.    Under surveillance capitalism, an individual who uses a digital-technology product must permit the company who owns the product to collect their data, including their personal information. The company aggregates and processes this data to produce a valuable commodity—highly detailed dossiers about the individual—which it uses to generate predictions about that individual's behavior. These dossiers can be used to identify and target individuals, make predictions about them, manipulate their behavior, and influence decision-making about them. The company uses these data-derived dossiers for its own commercial purposes and sells them to third parties for commercial purposes, fueling vast corporate profits.

**ANSWER:**    Paragraph 21 contains Plaintiffs' characterization of unidentified third-party statements and argument, to which no response is required.  To the extent a response is deemed required,

ANSWER TO AMENDED COMPLAINT            5            CASE NO. 3:24-CV-02706-JD

PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

22.     The law requires companies to obtain individuals' consent to having these intimate dossiers built about them and sold to third parties. As part of this consent mandate, companies must make comprehensive, detailed disclosures of their data practices.

**ANSWER:**    Paragraph 22 contains Plaintiffs' characterization of their claims and/or legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 22.

23.     The success of the surveillance-capitalist business model depends on keeping the public in the dark because of its extractive and exploitative nature. Indeed, companies employ a variety of underhanded tactics to keep users simultaneously engaged and uninformed, such as opaque terms of service, click- and browse-wrap "agreements," hidden data-collection technologies, and manipulative design techniques.

**ANSWER:**    Paragraph 23 contains Plaintiffs' characterization of their claims, third-party practices, and argument to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

24.     The practices of surveillance capitalism have become commonplace—not just in technology domains like search, ecommerce, and social media, but also in more traditional domains such as healthcare, employment, lending, and insurance.

**ANSWER:**    Paragraph 24 contains Plaintiffs' characterization of their claims, third-party practices, and argument to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

25.     Courts have found undisclosed corporate data practices in these domains to be unlawful.

**ANSWER:**    Paragraph 25 contains Plaintiffs' characterization of unspecified court findings relating to third-party practices to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

26.     If the surveillance business model is unfair when used against adults in ostensibly voluntary consumer transactions, use of the model against school-age children in the compulsory setting of K-12 education is unconscionable.

**ANSWER:**  Paragraph 26 contains Plaintiffs' characterization of their claims, third-party practices, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

**2)    Education is "the world's most data-mineable industry by far."**

27.    The surveillance-capitalist business model also underpins digital-technology platforms used in elementary, middle, and high schools across the U.S.

**ANSWER:**  Paragraph 27 contains Plaintiffs' characterization of their claims, third-party practices, and argument to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

28.    Simply by attending school as is their legal right and obligation, children are subjected to the same intrusive and exploitative data practices as adults in non-compulsory settings: reams of their personal information are harvested to build intimately detailed profiles about them, which are then used by the collecting company, schools, and a host of other third parties to identify, target, manipulate, and influence decision-making about them.

**ANSWER:**  Paragraph 28 contains Plaintiffs' characterization of their claims, third-party practices, and argument to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

29.    By collecting and monetizing children's information, education technology, or "EdTech," has become a $250 billion global industry that is projected to nearly triple by 2027.

**ANSWER:**  Paragraph 29 contains Plaintiffs' characterization of their claims, third-party practices, and argument to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

30.    Investors have taken note. Investments in EdTech have surged from $500 million in 2010 to $16.1 billion in 2021.

**ANSWER:**  Paragraph 30 contains Plaintiffs' characterization of their claims, third-party practices, and argument to which no response is required.  To the extent a response is deemed required,

PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

31.    Rather than describing a defining aspect of any digital-technology service or product, "EdTech" describes the market that these companies target, namely, schools and school districts.

**ANSWER:**    Paragraph 31 contains Plaintiffs' characterization of their claims, third-party practices, and argument to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

32.    Education has been described by one executive as "the world's most data-mineable industry by far." And as one leading investor in EdTech explained, these investments are not philanthropic: the purpose of these private EdTech ventures "isn't a social mission . . .. They're there to create return."

**ANSWER:**    Paragraph 32 contains Plaintiffs' quotation of third-party statements and argument to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

**B.    PowerSchool Collects and Monetizes the Data of Millions of School-Age Children and their Parents.**

**1)    PowerSchool has amassed vast troves of student data through school contracts, corporate acquisitions, and other data-sharing agreements.**

33.    PowerSchool is an EdTech platform specializing in data collection, storage, and analytics. It went public in 2021 and shortly thereafter was valued at nearly $7 billion.

**ANSWER:**    PowerSchool admits that it offers EdTech products and solutions and that its initial public offering was in 2021.  PowerSchool denies any remaining allegations in Paragraph 33.

**a.    PowerSchool collects student data through from schools.**

34.    PowerSchool's primary customers are schools and school districts.

**ANSWER:**    PowerSchool admits that its customers are schools and school districts.

35.    By persuading those customers to implement its products in schools, PowerSchool gains virtually unfettered access to the data of the children who attend those schools and their parents.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 35.

36.    Millions of school-age children use PowerSchool products. PowerSchool claims to reach 35 million school-age children—or 75 percent of the students—in North America. Its products have been deployed in more than 90 of the largest 100 districts by student enrollment in the U.S.

**ANSWER:** To the extent the allegations in Paragraph 36 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool admits that, as of year-end-2023, it served 90 of the 100 largest districts by student enrollment in the United States. PowerSchool denies any remaining allegations of Paragraph 36.

37. The data PowerSchool collects far exceeds traditional education records of school-age children, including thousands of person-specific data fields.

**ANSWER:** PowerSchool denies the allegations in Paragraph 37.

38. PowerSchool does not fully disclose what data—or even categories of data—it collects from school-age children or their parents.

**ANSWER:** PowerSchool denies the allegations in Paragraph 38.

39. PowerSchool refuses to provide children and parents access to their data or the information it generates using that data.

**ANSWER:** PowerSchool denies the allegations in Paragraph 39.

40. At minimum, PowerSchool's public disclosures mention various information that PowerSchool "may" collect from and about its users:

**School records**

- Enrollment data

- Course schedule data

- Student identifiers

- Academic program membership

- Extracurricular program membership

- Transcript data

- Student-submitted materials within a course

- Student grades

- Student assessments

**Contact information**

- Student address

- Student email address

- Phone numbers

**Demographic information**

- Student name

- Student date of birth

- Parent or guardian name

**Disciplinary and behavioral information**

- Student conduct data

- Student behavior data

- Student social-emotional learning indicators and inputs

- Student evaluation and management data

**Medical information**

- Physical and mental disabilities

- Immunization records

- Treatment providers

- Allergies

**User communications**

- Email delivery

- Communication with "stakeholders" such as parents

**User-device information**

- Usage data

- Browser data

- Device-specific data, including:

- Data security

- Cloud hosting

- Information technology

- Customer support

- Usage and analytics

- Application performance monitoring

- User identity

ANSWER TO AMENDED COMPLAINT             10             CASE NO. 3:24-cv-02706-JD

- User authentication

- Feature integration with third-party products/companies

**Higher-education information**

- College interests

- College application lists

- College scholarships

- College exploration

- College application management

- College course planning

- College connections

**Career-related information**

- Career exploration

- Career interests

- Career assessments

- Skills performance

- Goal setting

- Résumés

- Portfolios

**Other user-generated content**

**ANSWER:** To the extent the allegations in Paragraph 40 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 40.

41.    Much of this data includes highly sensitive, personal information that invade and infringe upon the innermost thoughts, insecurities, and actions of each student.

**ANSWER:** PowerSchool denies the allegations in Paragraph 41.

42.    Other data—although perhaps relatively benign as raw, individual data segments—when combined and processed, enables PowerSchool to build dynamic, robust, and intimate dossiers of users, including children and their parents.

ANSWER TO AMENDED COMPLAINT            11            CASE NO. 3:24-cv-02706-JD

**ANSWER:**    PowerSchool denies the allegations in Paragraph 42.

43.    PowerSchool then uses, markets, and sells those dossiers to third parties—including the licensing school district—to identify and target those users with precision and make predictions about them for the purposes of manipulating their behavior and influencing decision-making about their lives now and in the future.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 43.

44.    Certain PowerSchool platforms, such as the parent portal, Naviance, and SchoolMessenger, are also marketed for use by parents, allowing PowerSchool to collect and monetize parents' data as well.

**ANSWER:**    PowerSchool admits that certain of its products, including Naviance and SchoolMessenger, are advertised for use by parents.  PowerSchool denies any remaining allegations in Paragraph 44.

45.    Further, students may log on to PowerSchool's platforms using family-owned devices, enabling its tracking technologies to harvest data about those devices and users of those devices—such as students' other household members—as well. And because its platforms are accessible anywhere, PowerSchool can track children wherever they go, including in their own homes.

**ANSWER:**    PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph as to individuals' use of their family-owned devices, and on that basis denies them.  PowerSchool denies any remaining allegations in Paragraph 45.

46.    Just by attending school, as they must, children are subjected to PowerSchool's systemic collection, combination, and commodification of their personal information for the primary purpose of serving PowerSchool's bottom line.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 46.

b.    **PowerSchool obtains student data through corporate acquisitions.**

47.    PowerSchool has also obtained substantial amounts of student data through a series of strategic corporate acquisitions. Indeed, PowerSchool acquires smaller EdTech companies "to integrate with our products to gain access to critical data."

**ANSWER:**    To the extent the allegations in Paragraph 47 characterize or describe page 10 of PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool admits that it has acquired certain companies that provide data management, storage, and/or processing services for educational institutions.  PowerSchool denies any remaining allegations in Paragraph 47.

48.    Since 2015, PowerSchool has acquired nearly 20 companies, which it has "successfully integrated" into its organization—a process it markets as "driving growth" and "delivering positive [return on investment] for our customers and stakeholders."

ANSWER TO AMENDED COMPLAINT             12             CASE NO. 3:24-cv-02706-JD

**ANSWER:** To the extent the allegations in Paragraph 48 characterize or describe page 10 of PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool admits that it has acquired certain companies that provide data management, storage, and/or processing services for educational institutions. PowerSchool denies any remaining allegations in Paragraph 48.

49. Recent acquisitions include the 2019 purchase of Schoology; the 2020 purchase of Hoonuit, "an advanced data management and analytics solution for K–12"; and the 2021 purchase of Naviance and Intersect, "the leading college and career readiness solution for K–12."

**ANSWER:** To the extent the allegations in Paragraph 49 characterize or describe page 63 of PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool admits that it acquired Schoology in 2019, Hoonuit in 2020, and Naviance and Intersect in 2021. PowerSchool denies any remaining allegations in Paragraph 49.

50. PowerSchool has also acquired Kickboard, a student behavior management and reporting program; Kinvolved, an attendance-monitoring and absenteeism-management program; and SchoolMessenger, a communications and attendance-management program.

**ANSWER:** PowerSchool admits that it acquired Kickboard, Kinvolved, and SchoolMessenger. Kickboard is a provider of behavioral and social emotional learning assessments, analytics, and classrooms solutions software applications for the K-12 education market. Kinvolved is a leading provider of K-12 communications, attendance, and engagement solutions software. SchoolMessenger is a leading provider of K-12 communication solutions in North America. PowerSchool denies any remaining allegations in Paragraph 50.

51. PowerSchool's data trove now includes data from these platforms, such as 13 years of behavioral and disciplinary data from Kickboard, attendance and absentee data from Kinvolved, learning and attention data from Schoology, and inferences from Hoonuit's algorithms.

**ANSWER:** PowerSchool denies the allegations in Paragraph 51.

52. These acquisitions—and the data PowerSchool gains as a result—are essential to PowerSchool's data-monetization business model.

**ANSWER:** PowerSchool denies the allegations in Paragraph 52.

        **c.**      **PowerSchool obtains student data through third-party data-sharing agreements.**

53.     PowerSchool also partners with a variety of other third parties in the joint collection, analysis, and use of student data.

**ANSWER:**    PowerSchool admits that it partners with third parties to help it provide its services and products. PowerSchool denies any remaining allegations in Paragraph 53.

54.     For example, it uses Google Analytics to (1) measure traffic and usage trends for the service and (2) understand the demographics and behaviors of its users.

**ANSWER:**    PowerSchool admits that certain of its websites use Google Analytics. PowerSchool denies any remaining allegations in Paragraph 54.

55.     PowerSchool also works with third-party partners to employ technologies, including the application of statistical modeling tools, which enable PowerSchool to recognize and contact users across multiple devices.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 55.

**2)**      **PowerSchool uses children's data for commercial purposes.**

        **a.**      **PowerSchool uses children's data to develop digital products for, and market those products to, current, and potential customers.**

56.     Like most surveillance-technology companies, PowerSchool does not collect user data for the primary purpose of providing the raw data itself to third parties. Instead, it collects, combines, and analyzes data to build highly detailed and intimately personal dossiers of children, which it uses to generate predictions about a child's life. PowerSchool provides access to these data-derived predictive products to third parties.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 56.

57.     PowerSchool generates purported predictions concerning a wide range of a child's attributes and behaviors, such as future academic performance, skill mastery, learning comprehension, interests, risks, behavior, college and job readiness, and more. These predictions are variously described as "insights," "analytics," "diagnostics," "assessments," "offerings," "solutions," and other such intentionally esoteric, anodyne terms.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 57.

58.     PowerSchool's third-party customers use those products to identify, target, manipulate, make decisions about, and otherwise control and/or monetize children and their personal information. For PowerSchool customers that are schools, such purposes include, without limitation, automating learning evaluation methods (such as aptitude), comprehension testing, development of "personalized" curricula, student management and oversight, and other aspects of school administration and education, all under the guise of improving education.

ANSWER TO AMENDED COMPLAINT       14       CASE NO. 3:24-cv-02706-JD

**ANSWER:** Paragraph 58 contains Plaintiffs' characterization of third-party use of student data; PowerSchool lacks knowledge or information sufficient to form a belief as the truth of the allegations in this Paragraph about every way such third parties use data, and on that basis denies them.

59. Although PowerSchool markets these products as conferring administrative and pedagogical benefits to schools and school districts, they are undeniably commercial, for-profit products that have enabled PowerSchool to build a multibillion-dollar surveillance-technology empire at the expense of student and parent privacy.

**ANSWER:** This Paragraph contains Plaintiffs' characterization of their claims, to which no response is required. To the extent a response is deemed required, PowerSchool admits that it is a for-profit corporation that markets and has earned revenue from products that confer administrative and pedagogical benefits to educational institutions. PowerSchool denies any remaining allegations in Paragraph 59.

60. The products are designed to work synergistically to collect data on every aspect of an individual's persona and then manipulate that data to influence the student, and their parents. The data is then marketed and sold to current customers and third parties to increase profits for PowerSchool.

**ANSWER:** This Paragraph contains Plaintiffs' characterization of their claims, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 60.

61. PowerSchool's suite of products now includes dozens of data-derived products, including, but not limited to, the following:

- **PowerSchool Unified Insights ("PS Insights")**—"harness[es] the power of customers' data using predictive modelling and [Machine Learning]," and allows schools to access data about multiple important (and often personal or sensitive) aspects of students' lives, including information that can "help identify at-risk students," attendance data, student assessment data, data related to "monitor[ing] social and emotional wellbeing." PowerSchool describes PS Insights as allowing the management and monitoring of "all aspects of a school or district's student, teachers, operations and performance metrics," and describes how the platform pulls data not only from Schools' student information systems ("SISs"), but also from behavior management systems, social emotional learning ("SEL") systems, and assessment systems.

- **PowerSchool PowerBuddy**—PowerSchool's AI-powered assistant "designed to deliver adaptable, individualized experiences enabling educators, students, administrators, parents, and communities to unlock the untapped potential of personalized teaching and learning[.]"

- **PowerSchool SIS ("P-SIS")**—the "mission-critical data backbone that powers K-12 operations" and "serves as the hub and single source of truth for student data. "PSIS is "scalable" and "covers all district and school administration needs, including registration, attendance, scheduling, federal and state compliance reporting, data management, faculty management, emergency/medical and health management."

ANSWER TO AMENDED COMPLAINT                15                CASE NO. 3:24-CV-02706-JD

- **PowerSchool Enrollment**—"end-to-end online enrollment software that supports the core registration and admission processes . . . for schools and districts" and maintains enrollment data.

- **PowerSchool Ecollect Forms**—"can be used for wellness surveys, e-learning consent forms, device tracking, permission slips, field trips, transportation requests and parent-teacher conferences among several other uses." PowerSchool highlights the fact that Schools have used this function "to collect health-related information about their students."

- **PowerSchool Unified Communities ("PS Communities")**—a "broader ecosystem of users, partners, and higher education institutions" that provides "core solutions that facilitate students connecting their education learning path with their post-secondary life planning activities." PS Communities includes an array of platforms, including:

  - **Job Board**, which PowerSchool touts as "the nation's most popular online K-12 job board," allows PowerSchool "customers to promote job postings and diversify their candidate pool."

  - **ISV Partner Program ("Partner Program")**, described as an "exclusive collection" of over 120 partners ("PS Partners") PowerSchool "believe[s] are critical to our mission of improving the education experience."

  - **PowerSchool Community Portal**, which allows schools, teachers, parents, students, and *PowerSchool Partners* to "connect with peers and PowerSchool experts online" to "get the most out of their PowerSchool products.

- **PowerSchool Workforce Development Cloud**

  - Headed2 is a workforce development solution with career exploration tools and guidance. It is publicly accessible, customizable by state, and promotes in-demand careers and supporting programs.

  - Naviance, a "college, career, and life readiness solution" that handles data for "over 40% of high school students in the US," collecting information about assessments, career planning, counseling, and college applications.

  - Connected Intelligence P20W provides an end-to-end integrated data ecosystem with all the tools and data connected across agencies for visibility into cradle-to-career insights including the alignment of their emerging workforce with economic needs.

- **PowerSchool Unified Classroom ("PS Classroom")**—which the company describes as a "complete teaching and learning classroom solution" that "facilitat[es] seamless data flow between technology offerings." Included within the PS Classroom offering are:

  - Schoology Learning, a "learning management system" that integrates "course management, curriculum management, communication and collaboration tools, integrated assessments and actionable analytics" to create so-called "tailored instruction and personalized learning paths."

  - Performance Matters Assessment, "assessment software for teachers to author and administer benchmark assessments," which includes "standardized assessment methods, scoring methods and analytics."

ANSWER TO AMENDED COMPLAINT          16          CASE NO. 3:24-cv-02706-JD

- ▪ Special Programs, "integrated case management system for students with special needs" that "facilitates the development and management of special education documents, including pre-referral, eligibility, individualized education plan, service documentation, state reporting, and data collection for Medicaid billing."

- ▪ Behavior Support, a "behavior management solution" that "helps educators more effectively management social-emotional learning."

- ▪ Gradebook, an online grading and assessment tool that tracks student performance through assignments, quizzes, and tests, and allows the sharing of grades in real time."

**ANSWER:**    To the extent the allegations in Paragraph 61 characterize or describe pages 11-14 of PowerSchool's 2022 Annual Report (Form 10-K) and PowerSchool's website, https://www.powerschool.com/blog/workforce-development-cloud-k-12-and-beyond/,    PowerSchool notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith.  PowerSchool admits that its product offerings have included Unified Insights, PowerBuddy, SIS, Enrollment, Ecollect Forms, Unified Communities, Headed2, Naviance, Connected Intelligence P20W, Schoology, Performance Matters, Behavior Support, Special Programs, and GradeBook.  PowerSchool denies any remaining allegations in Paragraph 61.

62.    These products are made possible only through PowerSchool's sweeping collection, retention, use, and sharing of children's personal information.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 62.

**3)    PowerSchool shares the data it collects across its platforms to power its suite of data-derivative products and its AI-technologies.**

63.    To power its massive and growing suite of data-derivative products and provide its customers access to granular student analytics, PowerSchool compiles the data it collects through each of its platforms and uses it to build, improve, and market its suite of products.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 63.

64.    Student data collected through PowerSchool's platforms is not segregated, and the collection and use of that data is not limited to only the platforms and products licensed by schools.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 64.

65.    Rather, PowerSchool consolidates "siloed" and "disparate data from [schools'] student information system, learning management system, assessments, and SEL information" to provide "a more holistic view of the whole child." In other words, PowerSchool's unification of data from multiple sources enables more targeted student surveillance, predictions of student academic and behavioral outcomes, "and more."

**ANSWER:** To the extent the allegations in Paragraph 65 characterize or describe PowerSchool's website, https://go.powerschool.com/rs/861-RMI-846/images/Making-Sense-Student-Data.pdf?utm_medium=social/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 65.

66. PowerSchool collects data from "multiple disparate sources" and "transforms [it] into deeper, actionable insights[.]" It promises "Deep K-12 Insights Across Your Entire Organization" that enable, among other things, monitoring, risk assessment, intervention, influence, and third-party decision-making.

**ANSWER:** To the extent the allegations in Paragraph 66 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself, and no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 66.

67. By aggregating student and parent data and combining that data with information from PowerSchool's affiliates, PowerSchool more effectively targets children for surveillance, manipulation, and decision-making purposes.

**ANSWER:** PowerSchool denies the allegations in Paragraph 67.

68. This combination and sharing of data is core to PowerSchool's data-monetization business model.

**ANSWER:** PowerSchool denies the allegations in Paragraph 68.

69. PowerSchool also uses all the data it collects across its platforms to train its AI technologies.

**ANSWER:** PowerSchool denies the allegations in Paragraph 69.

70. PowerSchool has created an AI-powered chatbot, "PowerBuddy," which it markets for use by administrators, teachers, parents, and children. It also marketed PowerBuddy for use by "state officials" for the purpose of "[w]orkforce [p]lanning."

**ANSWER:** To the extent the allegations in Paragraph 70 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 70.

71. PowerSchool states that PowerBuddy can serve as guidance counselors for the purpose of post-K12 planning, such as by providing "[a]utomated educational research, relevant courses, and internships," [e]nhanced job projections and student's skill matching," and "[p]ersonalized guidance and career recommendations."

**ANSWER:** To the extent the allegations in Paragraph 71 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 71.

72. PowerSchool describes PowerBuddy as "[o]mnipresent."

**ANSWER:** To the extent the allegations in Paragraph 72 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 72.

73. PowerSchool promises to convert "siloed data" to a "data lake," meaning that it unifies disparate sets of data into one comprehensive, unified set.

**ANSWER:** To the extent the allegations in Paragraph 73 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 73.

74. PowerSchool admits that its development and use of AI requires as much data as possible.

**ANSWER:** To the extent the allegations in Paragraph 74 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 74.

75. PowerSchool admits that its AI "hallucinates" without "all the data" it can collect from users.

**ANSWER:** To the extent the allegations in Paragraph 75 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 75.

76. PowerSchool touts that its AI technologies are powered by 345 terabytes of data collected from more than 440 school districts.

**ANSWER:** To the extent the allegations in Paragraph 76 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 76.

77. PowerSchool touts 20 billion "monthly data change events."

**ANSWER:** To the extent the allegations in Paragraph 77 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 77.

78. PowerSchool has also implemented AI technology into many of its products and is actively working to implement AI across its entire suite of products.

**ANSWER:** PowerSchool admits that it is implementing or has implemented AI technology in certain of its product features. PowerSchool denies any remaining allegations in Paragraph 78.

79. PowerSchool touts that, through its AI-powered data practices, it is able to understand "100 percent of the child" and know everything about children and their "context."

**ANSWER:** To the extent the allegations in Paragraph 79 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 79.

80. PowerSchool claims to provide "contextually relevant information personalized to the individual persona" by collecting and combining sweeping sets of K-12 data, such as student information systems; assessments; behavior; learning management systems; special education; college, career, and life readiness; talent; finance; website data; district handbook data; and "other relevant data."

**ANSWER:** To the extent the allegations in Paragraph 80 characterize or describe PowerSchool's Q4 2023 Earnings Presentation, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 80.

81. PowerSchool's AI technologies prioritize scalability and "measurability" over privacy and efficacy.

**ANSWER:** PowerSchool denies the allegations in Paragraph 81.

**C.    PowerSchool sells data-derivative dossiers and predictions about children to colleges and employers.**

82.    PowerSchool uses the information collected from surveilling K–12 students to power data-derivative products for other third-party customers.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 82.

83.    For example, PowerSchool serves post-secondary education institutions and employers through its Naviance and Intersect products.

**ANSWER:**    PowerSchool admits that the Naviance and Intersect products are offered to educational institutions.  PowerSchool denies any remaining allegations in Paragraph 83.

84.    PowerSchool markets Naviance as a college- and career-readiness platform.

**ANSWER:**    PowerSchool admits that it markets Naviance including as "a college, career, and life readiness (CCLR) platform."  PowerSchool denies any remaining allegations in Paragraph 84.

85.    In many school districts, Naviance is "the mandatory cornerstone" of career-, college-, and life-readiness programs.

**ANSWER:**    Paragraph 85 contains Plaintiffs' quotation of a third-party article, Todd Feathers, *College Prep Software Naviance is Selling Advertising Access to Millions of Students*, The Markup (January 13, 2022), to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 85.

86.    Naviance compiles dossiers on students, which include information a student has directly entered into Naviance; information about a student entered into Naviance by that student's teachers, counselors, or administrators; information collected through that student's interactions with other PowerSchool products, and other data collected by PowerSchool from third-party sources.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 86.

87.    Access to these dossiers is provided to colleges, universities, trade schools, private employers, and the military for a fee.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 87.

88.    Intersect, the third-party-facing side of the platform owned by a company called EAB, is used by colleges, universities, private employers, trade schools, and the military to target—or avoid—potential applicants.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 88.

89.    A Naviance "toolkit" called "Work-Based Learning" offers schools "a highly effective way to help students build valuable career skills and introduce them to life beyond high school." Work-Based Learning purports to offer students "hands-on training and on-the-job experience" and is designed to help employers fill job vacancies, especially skilled positions.

ANSWER TO AMENDED COMPLAINT    21    CASE NO. 3:24-CV-02706-JD

**ANSWER:** To the extent Paragraph 89 characterizes or describes PowerSchool's website, https://www.powerschool.com/whitepaper/work-based-learning-made-easy/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 89.

90.    Naviance collects and aggregates a wide variety of student data—such as students' online communications, conduct, demographics, transcript, enrollment data, and a wide variety of personal and intimate details through self-discovery assessments—for a host of consequential purposes.

**ANSWER:** PowerSchool denies the allegations in Paragraph 90.

91.    Unfortunately, the benefits of this massive data grab have accrued almost exclusively to PowerSchool. As one researcher has observed, "at the level of the user, I think the benefits are quite limited," whereas "Naviance wound up with this mountain of data through its activities that then became a saleable, actionable asset."

**ANSWER:** This first sentence of this Paragraph contains Plaintiffs' characterization of their claims and argument, to which no response is required. The second sentence of Paragraph 91 contains Plaintiffs' quotation of a third-party statement, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 91.

92.    As previously described, PowerSchool also uses its AI product PowerBuddy to influence students' post-K12 opportunities, including postsecondary education and employment.

**ANSWER:** PowerSchool denies the allegations in Paragraph 92.

**1)    PowerSchool shares children's "cradle to career" data with state and local governments.**

93.    Among PowerSchool's ever-growing suite of data-extractive "solutions" is "Connected Intelligence P20W," which it markets as "the first commercially off-the-shelf P20W platform for K-12."

**ANSWER:** To the extent the allegations in Paragraph 93 characterize or describe Stumpf, *The Ultimate Guide to P20W Cradle-to-Career State Data Systems*, PowerSchool (2023) at 8, https://www.powerschool.com/connected-intelligence-p20w/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 93.

94.    In The Ultimate Guide to P20W Cradle-to-Career State Data Systems, PowerSchool explains that "P20W" refers to "pre-kindergarten through college and into the workforce" that "connect[s] statewide information throughout each of these student life stages" to facilitate governmental decision-making.

ANSWER TO AMENDED COMPLAINT            22            CASE NO. 3:24-CV-02706-JD

**ANSWER:** To the extent the allegations in Paragraph 94 characterize or describe Stumpf, *The Ultimate Guide to P20W Cradle-to-Career State Data Systems*, PowerSchool (2023), https://www.powerschool.com/connected-intelligence-p20w/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 94.

95. PowerSchool promises to provide governments "a holistic view of students' pathways from pre-K to K-12 and beyond, including non-educational assistance (e.g., foster care, health, social services, juvenile justice and corrections)[.]"

**ANSWER:** To the extent the allegations in Paragraph 95 characterize or describe Stumpf, *The Ultimate Guide to P20W Cradle-to-Career State Data Systems*, PowerSchool (2023), https://www.powerschool.com/connected-intelligence-p20w/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 95.

96. PowerSchool CEO Hardeep Gulati touts that PowerSchool's data system "provides a centralized data lake with real-time access and insights of education data across all systems—including PowerSchool or third-party systems—within or outside the district," providing customers "deep insights" that will enhance their operations. PowerSchool states that P20W data systems capture data "from the same students over multiple years." They "track and monitor student progress and performance from early childhood through K-12, and then into post-secondary education and the workforce."

**ANSWER:** To the extent the allegations in Paragraph 96 characterize or describe Stumpf, *The Ultimate Guide to P20W Cradle-to-Career State Data Systems*, PowerSchool (2023), https://www.powerschool.com/connected-intelligence-p20w/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 96.

97. PowerSchool explains that these data systems allow schools and government to "unify, integrate, and access all source system data in a state-specific data cloud." "From K-12 education, training, and higher education to labor, health and human services, and social services, Connected Intelligence P20W makes all data accessible in one secure location."

**ANSWER:** To the extent the allegations in Paragraph 97 characterize or describe Stumpf, *The Ultimate Guide to P20W Cradle-to-Career State Data Systems*, PowerSchool (2023), https://www.powerschool.com/connected-intelligence-p20w/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 97.

98.    PowerSchool touts that it provides access to previously "inaccessible data" "[w]ith unparalleled ease."

**ANSWER:**    To the extent the allegations in Paragraph 98 characterize or describe Stumpf, *The Ultimate Guide to P20W Cradle-to-Career State Data Systems*, PowerSchool (2023), https://www.powerschool.com/connected-intelligence-p20w/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 98.

99.    PowerSchool markets that it extracts and shares data continuously: "High-performance replication allows for near-real-time data syncs into the data lake" and technology that "prevent[s] data downtime[.]" Its "comprehensive data ingestion suite" is unlimited in volume and data type or age.

**ANSWER:**    To the extent the allegations in Paragraph 99 characterize or describe the article *How Your District Can Modernize Data Management with PowerSchool Connected Intelligence*, dated November 11, 2024, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 99.

100.    PowerSchool laments "data privacy concerns" as a challenge to "data interconnectivity" and cites "lengthy legal obstacles" as slowing data extraction and dissemination.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 100.

101.    PowerSchool explains that this "is just the beginning" of its expansion of its "Workforce Development Cloud."

**ANSWER:**    PowerSchool denies the allegations in Paragraph 101.

**D.    PowerSchool shares student data with more than 100 third-party "partners" for commercial purposes.**

**1)    How it works.**

102.    In addition to school districts, departments of education, colleges and universities, trade schools, the military, and prospective employers, PowerSchool shares student data with other third parties for commercial purposes through "partnerships and integrations."

**ANSWER:**    PowerSchool denies the allegations in Paragraph 102.

103.    PowerSchool markets, as features of its "robust" SIS platform, "Seamless Third-Party Integrations," a "Third-Party Partner Ecosystem," and "Integrated Analytics." According to PowerSchool, this robust data collection and sharing facilitates its creation of a "holistic" view of students and a strong "data culture" across schools.

**ANSWER:** Paragraph 103 appears to contain Plaintiffs' quotations of, among other unidentified sources, the webpage *Explore All PowerSchool SIS Has to Offer*. To the extent the allegations in Paragraph 103 characterize or describe the webpage *Explore All PowerSchool SIS Has to Offer*, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 103.

104.    PowerSchool has more than 100 company "Partners," including companies in areas such as health care; student behavior assessment and management; student risk assessment and management; and college-, career-, and life-readiness.

**ANSWER:** PowerSchool admits that its Partner Program has more than 100 members, including members identified at https://www.powerschool.com/company/partners/. PowerSchool denies any remaining allegations in Paragraph 104.

105.    PowerSchool serves companies "seeking to integrate with our products to gain access to critical data." Its value to third-party partners thus depends on maximizing access to student data.

**ANSWER:** To the extent the allegations in the first sentence of Paragraph 105 characterize or describe PowerSchool's 2023 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 105.

106.    PowerSchool shares data with many of these companies automatically and in real or near-real time. PowerSchool provides data integration through use of software development kits (SDKs), application programming interfaces (APIs), plug-ins, and user assessments, some of which "require[] absolutely no training" or certification.

**ANSWER:** To the extent the allegations in the second sentence of Paragraph 106 characterize or describe a webpage about one of PowerSchool's partners, Level Data (https://www.powerschool.com/company/partners/level-data/), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 106.

107.    PowerSchool touts partnership "Program Benefits," which includes a portal that gives partners access to marketing and sales tools:



**Marketing Tools**

The PowerSchool Partner Program provides a variety of marketing resources to assist partners in positioning their company strategically to maximize value for PowerSchool customers.

**Sales Tools**

Within the partner portal, you'll receive access to templates, training, and opportunities to network with the PowerSchool sales organization.

**ANSWER:** To the extent the allegations in Paragraph 107 characterize or describe a PowerSchool webpage, https://partners.powerschool.com/English/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 107.

**2) Examples of PowerSchool "Partners."**

108. **EAB**. One of PowerSchool's partner companies is EAB, a consulting firm specializing in education institutions.

**ANSWER:** PowerSchool admits that it partnered with EAB, including as publicly announced at https://www.powerschool.com/news/powerschool-and-intersect/. PowerSchool denies any remaining allegations in Paragraph 108.

109. According to its website, EAB "drive[s] transformative change through data-driven insights and best-in-class capabilities in five major areas: enrollment; student success; data & analytics; institutional strategy; and diversity, equity, and inclusion (DE&I)."

**ANSWER:** Paragraph 109 contains Plaintiffs' characterization of third-party statements on a third-party website, https://eab.com/about/, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

110. For "Marketing & Enrollment," EAB partners with PowerSchool's Intersect, which is used by third parties such as colleges, universities, trade schools, and the military to target potential applicants with personalized advertisements.

**ANSWER:** Paragraph 110 contains Plaintiffs' characterization of third-party statements on unidentified EAB webpages, including https://eab.com/solutions/focus-area/marketing-and-enrollment/, to which no response is required. To the extent a response is deemed required, PowerSchool lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

111.    EAB represents to its customers that "[w]ith a dedicated Partner Success Manager, you can leverage the latest insights from Naviance and EAB's deep library of research to adapt to changing student behaviors and stay ahead of the curve."

**ANSWER:**    Paragraph 111 contains Plaintiffs' characterization of third-party statements on unidentified EAB webpages, including https://eab.com/solutions/intersect/, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

112.    EAB guarantees "access to the more than 40% of high school students who use Naviance."

**ANSWER:**    Paragraph 112 contains Plaintiffs' characterization of an unidentified source, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

113.    EAB enables its customers to "influence prospective student decision making through Naviance," such as by "[d]elivering personalized content to your target students based on data[.]" It adds that "[s]tudents use Naviance alongside counselors and parents, making it a highly influential environment[.]"

**ANSWER:**    Paragraph 113 contains Plaintiffs' characterization of an unidentified source, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

114.    EAB also has an "exclusive reseller agreement" for Intersect, which incorporates and processes Student Data, then sells to third parties, such as higher-education institutions and prospective employers.

**ANSWER:**    Paragraph 114 contains Plaintiffs' characterization of an unidentified source, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

115.    **Capture**. Another PowerSchool partner is Capture, an AI-driven surveillance company providing school personnel and "interventionists" tools such as artificial intelligence monitoring, behavior progress logs, and "digital intervention plans."

**ANSWER:**     PowerSchool denies the allegations in Paragraph 115.

116.     **Finalsite**. Yet another PowerSchool partner is Finalsite, a company specializing in targeted marketing and communications services for educational institutions.

**ANSWER:**     PowerSchool denies the allegations in Paragraph 116.

117.     One of Finalsite's featured services is digital advertising, which it conducts through Google, social media, and YouTube.

**ANSWER:**     Paragraph 117 contains Plaintiffs' characterization of third-party practices, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

118.     Finalsite has a vast "partnership network" of various web-service providers that that "work[s] with you to extend the value of your Finalsite platform." PowerSchool is in that network. Finalsite describes its integration with PowerSchool as follows:

**ANSWER:**     Paragraph 118 contains Plaintiffs' quotations of an unidentified third-party source, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

119.     Data flows one-way from PowerSchool to Finalsite.

**ANSWER:**     PowerSchool denies the allegations in Paragraph 119.

120.     Finalsite uses PowerSchool data for contact lists, online directories, class pages, and rosters.

**ANSWER:**     Paragraph 120 contains Plaintiffs' characterization of an unidentified third-party source, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

121.     PowerSchool data syncs automatically in Finalsite. Automatic data transfers run hourly to refresh constituent information from PowerSchool in Finalsite, with a full data refresh each night.

**ANSWER:**     PowerSchool denies the allegations in Paragraph 121.

122.     PowerSchool regularly—hourly and automatically—transmits data to Finalsite, which it then makes available to its customers and uses to facilitate its marketing and communications services.

**ANSWER:**     PowerSchool denies the allegations in Paragraph 122.

123.    Due to the varying ways in which data can be stored in PowerSchool, a Finalsite Integration Deployment specialist works with customers to transfer data into Finalsite.

**ANSWER:**    PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

124.    K12 Bloom. Another PowerSchool partner is K12 Bloom, an "integrated disciplinary tool that lets you easily monitor overall student behavior" that provides "teachers and administrators with holistic, individualized student profiles[.]"

**ANSWER:**    Paragraph 124 contains Plaintiffs' quotations of an unidentified third-party source, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

125.    August Schools. Another PowerSchool partner is August Schools, which is "the first comprehensive electronic health record system for Schools."

**ANSWER:**    Paragraph 125 contains Plaintiffs' quotations of an unidentified third-party source, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

126.    August Schools promises to help Schools assess risk, build "[s]tudent profiles with the information that matters," and provide "[s]eamless integrations with your school's technology."

**ANSWER:**    Paragraph 126 contains Plaintiffs' quotations of third-party statements on a third-party website, https://www.augustschools.com/, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

127.    Harvest Technology Group. Another PowerSchool partner is Harvest Technology Group, which "provides a single location to securely store all documents and records in a school district and still access them within any PowerSchool application."

**ANSWER:**    To the extent the allegations in Paragraph 127 characterize or describe a PowerSchool webpage, https://www.powerschool.com/company/partners/harvest-technology/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 127.

128.    Harvest touts that all student data is stored in a "central repository so they 'move' as the student moves."

ANSWER TO AMENDED COMPLAINT              29              CASE NO. 3:24-CV-02706-JD

**ANSWER:** Paragraph 128 contains Plaintiffs' quotations of third-party statements on a third-party website, https://www.harvesttg.com/students-records/, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

129. It explains that student data and documents are automatically transferred from PowerSchool's platform to Harvest's platform, where individual student information is automatically "linked to the correct student" to create "the kernel of the digital cumulative student folder."

**ANSWER:** To the extent the allegations in Paragraph 129 characterize or describe a PowerSchool webpage, https://go.powerschool.com/rs/861-RMI-846/images/Content360-Brochure.pdf, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 129.

130. Career Key. Another PowerSchool partner is Career Key, which delivers "insights" to "educators, counselors, job placement and human resources professionals" that provide "personalized guidance" for students and clients that aid in "their decision journey."

**ANSWER:** Paragraph 130 contains Plaintiffs' quotations of an unidentified third-party source, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

131. It highlights that "[n]o credential is required to administer" its online assessment tools. It touts "long term access" to assessment data that persists "as long as [a customer] keep[s] a Career Key web app plugin installed[.]"

**ANSWER:** Paragraph 131 contains Plaintiffs' quotations of unidentified third-party sources, including https://www.careerkey.org/career-tests/career-interest-inventory#, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

132. The foregoing companies are just some of the companies in the vast PowerSchool partner network, and PowerSchool is "constantly looking for new partners."

**ANSWER:** To the extent the allegations in Paragraph 132 characterize or describe a PowerSchool webpage, https://www.powerschool.com/company/become-an-official-partner/#, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 132.

133.    All of them have data-sharing arrangements with PowerSchool that enable PowerSchool to monetize student and parent data by giving PowerSchool's partners the ability to identify and target children and their parents for a variety of commercial purposes in ways that compromise their privacy, property, autonomy, and other basic rights.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 133.

134.    On information and belief, PowerSchool retains the information it collects in perpetuity, or as long as it determines that data has value. Its far-reaching data practices thus ensure that students' and parents' data are used to monetize and manipulate them well into the future.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 134.

135.    PowerSchool claims that it de-identifies or anonymizes certain data, but never discloses how it does so. Upon information and belief, PowerSchool cannot and does not meaningfully de-identify or anonymize the data it collects.

**ANSWER:**    PowerSchool admits that it states that it "de-identifies or anonymizes certain data" and that it, in fact, does so.  PowerSchool denies any remaining allegations in Paragraph 135.

**E.    PowerSchool Fails to Obtain Effective Consent for its Vast Collection and Use of Children's and Parents' Data**

136.    PowerSchool fails to obtain informed, ongoing consent for its sweeping collection and use of children's and parents' data. Specifically, PowerSchool fails to:

1.  provide users sufficient information to support informed consent,

2.  obtain consent from a person with legal authority to do so,

3.  permit users to access data collected from them and information generated about them, and

4.  notify users of changes to material terms and obtain consent to those modifications.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 136.

**1)    PowerSchool fails to provide users sufficient information about its data practices to support informed consent.**

137.    As previously detailed, PowerSchool collects data directly from school-age children and their parents—including their sensitive personal and personally identifiable information—through their use of its products. PowerSchool retains, processes, and shares that data and its data-derivative products with a host of third parties for commercial purposes.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 137.

138.    Consent is effective only if (1) the person alleging harm consented to the particular conduct or to substantially the same conduct and (2) the alleged tortfeasor did not exceed the scope of that consent.

**ANSWER:** Paragraph 138 contains Plaintiffs' legal conclusions on whether consent is effective, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 138.

139.    To constitute effective consent, the disclosures must explicitly notify users of the specific conduct and practices at issue.

**ANSWER:** Paragraph 139 contains Plaintiffs' legal conclusions on whether consent is effective, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 139.

140.    PowerSchool does not support informed consent because it does not provide users the quality or quantity of information regarding its data practices necessary to support informed consent.

**ANSWER:** PowerSchool denies the allegations in Paragraph 140.

141.    PowerSchool fails to provide a clear, comprehensive, and exclusive list of (1) the data or categories of data it collects on users; (2) the ways in which it will use such data; (3) the entities that will have access to such data; and (4) the risks that its data practices pose to children.

**ANSWER:** PowerSchool denies the allegations in Paragraph 141.

142.    PowerSchool's Terms of Use and related statements are deficient because they (1) fail to disclose material terms pertaining to its practices; (2) fail to describe material terms using specific, definite, and clear language; and (3) include false statements about PowerSchool's data practices.

**ANSWER:** PowerSchool denies the allegations in Paragraph 142.

143.    Below are some illustrative ways in which PowerSchool intentionally denies users the ability to fully understand its data practices, as would be necessary to support informed consent.

**ANSWER:** PowerSchool denies the allegations in Paragraph 143.

      a.      **Information regarding PowerSchool's data practices are unreasonably voluminous and are scattered across multiple websites, webpages, and documents.**

144.    PowerSchool does not make information containing its privacy policies available in a single location.

**ANSWER:** To the extent the allegations in Paragraph 144 characterize or describe PowerSchool's privacy statements, including the Global Privacy Statement, PowerSchool notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 144.

145.    Rather, PowerSchool references numerous documents and other locations that arguably govern its privacy policies. Those are embedded across no fewer than eight documents, which include its Terms of Use, Privacy Statement, Cookies Notice, Cookie Preferences, Security page, agreements with

ANSWER TO AMENDED COMPLAINT       32       CASE NO. 3:24-CV-02706-JD

schools and/or school districts, agreements with other third parties, and documents referenced in or appended to those third-party agreements.

**ANSWER:** To the extent the allegations in Paragraph 145 characterize or describe PowerSchool's policies and documents, including the Terms of Use, Privacy Statement, Cookies Notice, Cookie Preferences, Security page, agreements with schools and/or school districts, agreements with other third parties, and documents referenced in or appended to those third-party agreements, PowerSchool notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 145.

146. Further, PowerSchool's "Privacy Center" page would be an intuitive place to attach or link to all information relating to PowerSchool's data practices. However, the "Privacy Center" page links only to PowerSchool's Privacy Statement.

**ANSWER:** To the extent the allegations in Paragraph 146 characterize or describe a PowerSchool webpage, https://www.powerschool.com/privacy/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies the remaining allegations in Paragraph 146.

147. Even if a parent was able to locate all these terms, they are not reasonably reviewable or understandable by an ordinary person. At least eight documents contain PowerSchool's Terms of Use and incorporated policies. Just one of these eight documents alone—the Privacy Statement—is more than 10,000 words.

**ANSWER:** To the extent the allegations in Paragraph 147 characterize or describe PowerSchool's privacy statements, including the Global Privacy Statement, PowerSchool notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 147.

**b. PowerSchool omits material terms governing its data practices.**

148. Instead of disclosing material terms necessary to support informed consent—such as what data they collect, how it is used, who has access to it, or how or how long it is retained—PowerSchool's Terms of Use and incorporated statements frequently refer to information that is not available for users to review.

**ANSWER:** To the extent the allegations in Paragraph 148 characterize or describe PowerSchool's privacy statements, including the Terms of Use, PowerSchool notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. Furthermore, the determination of what terms are necessary to support informed consent is a legal

conclusion, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 148.

149. PowerSchool's Privacy Statement alone contains more than a dozen references to the agreements among PowerSchool and schools, school districts, and third-party partners pertaining to critical information about its data practices, such as the following.

**ANSWER:** To the extent the allegations in Paragraph 149 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies the remaining allegations in Paragraph 149.

### i.    How PowerSchool uses the data it collects.

150. Instead of disclosing and describing how it uses the data it collects, PowerSchool cites its contracts with "customers," which it does not make publicly accessible (emphasis added):

**ANSWER:** To the extent the allegations in Paragraph 150 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 150.

151. "PowerSchool's processing is strictly controlled by the customer *through contractual obligations*, including data privacy agreements or privacy impact assessments."

**ANSWER:** To the extent the allegations in Paragraph 151 characterize or describe PowerSchool's Archived 2023 Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 151.

152. "[W]e will process such student data according to instructions and the *terms of our contract and data privacy agreements with our customers*."

**ANSWER:** To the extent the allegations in Paragraph 152 characterize or describe PowerSchool's Archived 2023 Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 152.

153. "It bears mentioning again that PowerSchool processes the Customer Data under strict *contractual obligations and privacy agreements signed with the customer*."

**ANSWER:** To the extent the allegations in Paragraph 153 characterize or describe PowerSchool's Archived 2023 Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 153.

154. "We do not use [personal information of children under 13] for any purpose other than to provide our services and for the specific uses set forth below, *in accordance with contractual agreements with our customers* and our Terms of Service."

**ANSWER:** To the extent the allegations in Paragraph 154 characterize or describe PowerSchool's Archived 2023 Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 154.

155. "We do not use Student Data for any purpose other than to provide the services, *in accordance with our contractual agreements with our Customers*, our Terms of Service, and this Privacy Policy."

**ANSWER:** To the extent the allegations in Paragraph 155 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 155.

### ii.    How PowerSchool shares data it collects.

156. Instead of disclosing and describing with whom it shares the data it collects, PowerSchool cites its contracts with schools and a host of undisclosed third parties, which it does not make publicly accessible (emphasis added):

**ANSWER:** To the extent the allegations in Paragraph 156 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies the remaining allegations in Paragraph 156.

157. "PowerSchool does not share personal information from children under 13 with third parties *unless consented to under our customer agreements* or necessary under the law."

**ANSWER:** To the extent the allegations in Paragraph 157 characterize or describe PowerSchool's Archived 2023 Privacy Statement, PowerSchool notes that such source speaks for itself

and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 157.

158.    "With your educational institution's permission, *and subject to an agreement between your educational institution and the Partner*, PowerSchool will share (i.e., provide access) to your data."

**ANSWER:** To the extent the allegations in Paragraph 158 characterize or describe PowerSchool's Archived 2023 Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 158.

159.    "We engage directly with *certain service providers* to help us provide PowerSchool Products. Our service providers are required to abide by our privacy and security requirements and are *contractually restricted* from using any Customer Data or Collected Data accessed or received through us for any purposes other than *as needed to perform such services*."

**ANSWER:** To the extent the allegations in Paragraph 159 characterize or describe PowerSchool's Archived 2023 Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 159.

160.    "In addition, we engage in product partnerships and integrations that offer certain features to users as requested by our customers. *Under data privacy agreements, these third parties* may require access to your personal information."

**ANSWER:** To the extent the allegations in Paragraph 160 characterize or describe PowerSchool's Archived 2023 Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 160.

161.    As previously explained, PowerSchool boasts more than 100 company "partners," and none of PowerSchool's agreements with those partners are available for review.

**ANSWER:** PowerSchool admits that its Partner Program has more than 100 members, including members identified at https://www.powerschool.com/company/partners/. PowerSchool denies any remaining allegations in Paragraph 104.

162.    PowerSchool's disclosures include no information about using the data it collects for the purposes of training its AI technologies and products.

**ANSWER:** To the extent the allegations in Paragraph 162 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any

ANSWER TO AMENDED COMPLAINT            36            CASE NO. 3:24-CV-02706-JD

characterizations or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 162.

### iii.    How long PowerSchool retains the data it collects.

163. Instead of disclosing and describing how long it retains the data it collects, PowerSchool cites other unavailable, inaccessible information: (emphasis added):

**ANSWER:** To the extent the allegations in Paragraph 163 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterizations or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 163.

164. "We keep information collected on behalf of our Customers for as long as necessary to fulfill the purpose *for which it was collected, pursuant to contractual terms or as otherwise required by applicable law*."

**ANSWER:** To the extent the allegations in Paragraph 164 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 164.

165. Parents thus entirely lack essential information necessary to understand the nature and scope of PowerSchool's data practices, without which they could not even theoretically provide informed consent.

**ANSWER:** PowerSchool denies the allegations in Paragraph 165.

### c.    PowerSchool fails to describe material terms using definite, specific, clear language.

166. In addition to wholly omitting material terms or citing unavailable sources of information, PowerSchool defines material terms governing its data practices using vague, undefined, open-ended, and contradictory language.

**ANSWER:** PowerSchool denies the allegations in Paragraph 166.

167. For example, the documents frequently mention "partners" and "affiliates" without disclosing any meaningful information as to their identity, under what circumstances PowerSchool shares user information with those partners and affiliates, to what information those partners and affiliates have access, and the purposes for which those partners and affiliates use that information.

**ANSWER:** To the extent the allegations in Paragraph 167 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any

ANSWER TO AMENDED COMPLAINT            37            CASE NO. 3:24-cv-02706-JD

characterizations or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 167.

168.    The documents also describe material terms using vague, undefined language, such as "data processing," using data "as necessary to provide the service," using data for "educational purposes," and retaining data "for as long as necessary and pursuant to contractual terms" without defining what it deems "necessary" beyond contractual terms (whatever those may be).

**ANSWER:**    To the extent the allegations in Paragraph 168 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterizations or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 168.

**ANSWER:**

169.    The documents also contain conflicting information regarding material terms, stating variously that:

- PowerSchool does not collect student data without parental consent;

- that it does not collect student data without the consent of schools acting on behalf of parents;

- that it does not collect certain student data without "the appropriate consent"; and

- that "the collection, maintenance, and use of personal information from children under 13 is controlled by the educational institution that contracts with PowerSchool for use of its Products."

**ANSWER:**    To the extent the allegations in Paragraph 169 characterize or describe an unidentified document, PowerSchool notes that such source speaks for itself and denies any characterizations or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 169.

170.    Because these key terms are not reasonably understood by an average person, they fail to support informed consent.

**ANSWER:**    Paragraph 170 contains Plaintiffs' argument and legal conclusions about sufficiency of consent, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 170.

171.    Instead of providing comprehensive, exclusive descriptions of its data practices as would be necessary to permit full understanding of those practices, PowerSchool provides singular, benign examples, or leaves terms wholly undefined (emphasis added):

ANSWER TO AMENDED COMPLAINT            38            CASE NO. 3:24-cv-02706-JD

- "PowerSchool customers are mainly K through 12 schools and districts, and higher education institutions.

- "With [schools'] consent, we may receive information from affiliates in our PowerSchool Group of companies and other third parties and combine that information with Customer Data. For example, we may receive limited personal information from third-party services that integrate with or complement the PowerSchool Products in order to provide you with the best possible user experience."

- "We share student information in accordance with our agreement with your (or your child's) school or school district. Generally, this includes the sharing of such information inside and outside PowerSchool in accordance with the contract and applicable law."

**ANSWER:**    To the extent the allegations in Paragraph 171 characterize or describe unidentified PowerSchool statements and disclosures, including https://www.powerschool.com/privacy/#, PowerSchool notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 171.

172.    Because PowerSchool fails to describe material terms in language that may be reasonably understood, it does not provide information regarding its data practices sufficient to support informed consent.

**ANSWER:**    Paragraph 172 contains Plaintiffs' legal conclusions on whether information is sufficient to support informed consent, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 172.

**d.    PowerSchool makes false statements about its data practices and commitment to user privacy.**

**i.    PowerSchool touts its commitment to student privacy.**

173.    PowerSchool's privacy policies repeatedly assure parents that PowerSchool makes best efforts to protect children's privacy.

**ANSWER:**    To the extent the allegations in Paragraph 173 characterize or describe PowerSchool's privacy statements, including the Global Privacy Statement, PowerSchool notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 173.

174.    For example, PowerSchool's "Privacy Center" page states that it is "committed to the highest standard of protection for personal data," "providing information on our privacy program," and "disclosing information on key privacy topics."

ANSWER TO AMENDED COMPLAINT              39              CASE NO. 3:24-cv-02706-JD

**ANSWER:** To the extent the allegations in Paragraph 174 characterize or describe PowerSchool's website, https://www.powerschool.com/privacy/, PowerSchool notes that such source speaks for itself and denies any characterizations or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 174.

175. PowerSchool's "Privacy Center" page further states that it "complies with applicable privacy laws that impact students and children."

**ANSWER:** To the extent the allegations in Paragraph 175 characterize or describe PowerSchool's website, https://www.powerschool.com/privacy/, PowerSchool notes that such source speaks for itself and denies any characterizations or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 175.

176. PowerSchool's "Privacy Center" page also boasts various third-party certifications:



**ANSWER:** To the extent the allegations in Paragraph 176 characterize or describe PowerSchool's website, https://www.powerschool.com/privacy/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 176.

177. Similarly, provisions throughout PowerSchool's Privacy Statement proclaim PowerSchool's commitment to privacy.

**ANSWER:** To the extent the allegations in Paragraph 177 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 177.

178.    The Privacy Statement represents that PowerSchool "do[es] not use student data for behavioral advertising purposes, for example, by inhibiting these third-party advertising networks from collecting information for behavioral advertising purposes when a student logs into the service through their student account."

**ANSWER:**    To the extent the allegations in Paragraph 178 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 178.

179.    PowerSchool's Privacy Statement elaborates upon PowerSchool's various privacy and security certifications and commitments. For example, PowerSchool states that it "does not rent, sell, or otherwise provide access to student personal information to third parties for marketing or advertising purposes."

**ANSWER:**    To the extent the allegations in Paragraph 179 characterize or describe a PowerSchool webpage, https://www.powerschool.com/privacy-legacy-120118/#:~:text=We%20may%20disclose%20aggregated%20or,for%20marketing%20or%20advertising%20purposes., PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 179.

180.    PowerSchool's Privacy Statement represents that "PowerSchool complies with privacy laws of the United States with respect to personal information and especially student educational records," and that it "do[es] not use Student Data for any purpose other than to provide the services, in accordance with our contractual agreements with our Customers, our Terms of Service, and this Privacy Policy."

**ANSWER:**    To the extent the allegations in Paragraph 180 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 180.

181.    PowerSchool further touts that it is a signatory to the 2020 Student Privacy Pledge:

ANSWER TO AMENDED COMPLAINT                41                CASE NO. 3:24-CV-02706-JD



**ANSWER:** To the extent the allegations in Paragraph 181 characterize or describe a PowerSchool webpage, https://www.powerschool.com/security/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 181.

182.    The Privacy Pledge contains a number of privacy commitments, including:

- "We will not collect, maintain, use or share Student PII beyond that needed for authorized educational/school purposes, or as authorized by the parent/student."

- "We will not sell student PII."

- "We will not use or disclose student information collected through an educational/school service (whether personal information or otherwise) for behavioral targeting of advertisements to students."

- "We will not build a personal profile of a student other than for supporting authorized educational/school purposes or as authorized by the parent/student."

- "We will not make material changes to . . . privacy policies without first providing prominent notice to the users and/or account holder(s) (i.e., the institution/agency, or the parent/student when the information is collected directly from the student with student/parent consent) and allowing them choices before data is used in any manner inconsistent with terms they were initially provided[.]"

- "We will disclose clearly in contracts or privacy policies, including in a manner easy for institutions and parents to find and understand, what types of Student PII we collect, if any, and the purposes for which the information we maintain is used or shared with third parties."

- "We will support access to and correction of Student PII by the student or their authorized parent[.]"

- "We will incorporate privacy and security when developing or improving our educational products, tools, and services and comply with applicable laws."

ANSWER TO AMENDED COMPLAINT          42          CASE NO. 3:24-CV-02706-JD

**ANSWER:**    Paragraph 182 contains Plaintiffs' quotations of third-party statements on a third-party website, https://studentprivacypledge.org/privacy-pledge-2-0/, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

183.    PowerSchool does not adhere to the commitments in the Privacy Pledge.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 183.

184.    PowerSchool has admitted in its public securities filings that compliance with these and other such standards "involves significant operational challenges" and laments that failure to join such initiatives would "adversely affect [its] business."

**ANSWER:**    PowerSchool denies the allegations in Paragraph 184.

ii.    **PowerSchool's security pages contain misrepresentations about data ownership and control.**

185.    Despite that PowerSchool offers parents no access to or control over their children's data, PowerSchool falsely states that schools own student data and that PowerSchool does not collect or use personal information beyond that needed for educational purposes without valid consent:



**ANSWER:**    To the extent the allegations in Paragraph 185 characterize or describe a PowerSchool webpage, https://www.powerschool.com/security/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 185.

186.    PowerSchool further falsely represents that parents and students do not provide information without their consent:

ANSWER TO AMENDED COMPLAINT          43          CASE NO. 3:24-CV-02706-JD



**ANSWER:** To the extent the allegations in Paragraph 186 characterize or describe a PowerSchool webpage, https://www.powerschool.com/security/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 186.

187. All of the foregoing statements are intended to communicate to the public—especially school-age children and their parents—that PowerSchool prioritizes privacy and data security and strives to safeguard the personal information and legal rights of those who use their sites and products.

**ANSWER:** To the extent the allegations in Paragraph 187 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 187.

188. Nothing in PowerSchool's Terms of Use or related privacy pages discloses the presence of these links in student accounts or otherwise explains that children's personal information and devices are so compromised by using PowerSchool's licensed products.

**ANSWER:** To the extent the allegations in Paragraph 188 characterize or describe PowerSchool's Terms of Use, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations of Paragraph 188.

**e.  PowerSchool fails to disclose risks that its data practices pose to children.**

189. In order to support informed consent, PowerSchool must disclose the potential benefits of its practices—as demonstrated by objective, verified, evidence-based research—against the potential harms those practices pose to children.

**ANSWER:** Paragraph 189 contains Plaintiffs' legal conclusion as to what disclosures are required to support informed consent, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 189.

190. PowerSchool fails to disclose the material risks of harm that its data practices pose to children.

**ANSWER:** PowerSchool denies the allegations in Paragraph 190.

### i. PowerSchool's data practices pose risks to children by compromising the security of their personal data.

191. By collecting vast amounts of data from both students and their families, PowerSchool puts that data at risk.

**ANSWER:** PowerSchool denies the allegations in Paragraph 191.

192. Rates of cybercrime are steadily rising, including mass data breaches. Research shows that school officials lack resources to adequately manage privacy and security incidents.

**ANSWER:** Paragraph 192 contains Plaintiffs' characterization of unidentified third-party statements and argument, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

193. Schools and school districts have been particularly and increasingly targeted by cybercriminals in recent years, which has resulted in leaks of highly personal and sensitive information about children, some of which perpetrators have made publicly available.

**ANSWER:** PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

194. Such exposure can have immediate and long-term consequences for children. As explained by one cybersecurity professional whose son's school was hacked, "It's your future. It's getting into college, getting a job. It's everything."

**ANSWER:** Paragraph 194 contains Plaintiffs' characterization of unidentified third-party statements and argument, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

195. PowerSchool's data practices unduly compromise the security of children's information. The resulting harms and risks of harms are exacerbated by the sheer volume of data collected and the number of entities that receive access to it. Once such data is unlawfully obtained, the harms are irreversible.

ANSWER TO AMENDED COMPLAINT          45          CASE NO. 3:24-CV-02706-JD

**ANSWER:** PowerSchool denies the allegations in Paragraph 195.

196. Families' data is further compromised by PowerSchool's practice of providing access and otherwise sharing that information with a multitude of third parties.

**ANSWER:** PowerSchool denies the allegations in Paragraph 196.

197. Parents have a right to understand the risks attendant to PowerSchool's and its third-party affiliates' collection and use of their children's personal information and assess those risks against any purported benefits of such collection and use.

**ANSWER:** PowerSchool denies the allegations in Paragraph 197.

> **ii. PowerSchool's data practices pose risks to children by exposing them to dangerous persuasive-design techniques for the purpose of promoting engagement.**

198. Because PowerSchool's revenue depends on collection of student data to fuel its ever-growing suite of data-derivative products, PowerSchool employs features in its products to encourage user engagement, which enables PowerSchool to collect more information.

**ANSWER:** PowerSchool denies the allegations in Paragraph 198.

199. Among these features are techniques variously described as persuasive design, manipulative design, coercive design, addictive design, and deceptive design techniques. Such techniques are engineered to steer individuals into engaging in behaviors that benefit corporate interests, such as unknowingly disclosing personal information, incurring unwanted charges, or compulsively using services.

**ANSWER:** Paragraph 199 contains Plaintiffs' characterization of unidentified third-party statements and argument, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

200. In addition to influencing decisionmakers, PowerSchool's platforms manipulate children's behavior using dangerous design techniques to promote maximum engagement for the purpose of obtaining more of their data.

**ANSWER:** PowerSchool denies the allegations in Paragraph 200.

201. Plaintiff's Schoology dashboard, for example, includes a "Resources" page that features an "Apps" icon, as shown below. When clicked, a dialogue box appears stating that, simply by installing apps, "you are consenting to share information and data with a third-party outside of Schoology":



**ANSWER:** To the extent the allegations in Paragraph 201 characterize or describe the Schoology interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 201.

202. The notice does not require or even request consent from a parent or school official, despite its availability on and through a student account. And the notice contains virtually no detail as to what information a child will share, to whom, or for what purpose.

**ANSWER:** To the extent the allegations in Paragraph 202 characterize or describe the Schoology interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 202.

203. If a child clicks the pre-highlighted "I Agree" button, as shown above, they receive another dialogue box with a list of available apps, such as YouTube and Vimeo:

ANSWER TO AMENDED COMPLAINT          47          CASE NO. 3:24-cv-02706-JD



**ANSWER:**   To the extent the allegations in Paragraph 203 characterize or describe the Schoology interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.   PowerSchool denies any remaining allegations in Paragraph 203.

204.    Checking the box next to an app's icon—for example, YouTube—and clicking the pre-highlighted "Install" button produces another dialogue box, which states that the app will "access your account information on your behalf":



**ANSWER:** To the extent the allegations in Paragraph 204 characterize or describe the Schoology interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 204.

205. If a child clicks on the unhighlighted "Deny and Cancel" button, shown above, they are presented with a frowny face[2]:

**ANSWER:** To the extent the allegations in Paragraph 205 characterize or describe the Schoology interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 205.

206. Selecting "Deny and Cancel," however, does not prevent a child from installing an app; it merely requires them to restart the brief installation process and click "Approve."

**ANSWER:** To the extent the allegations in Paragraph 206 characterize or describe the Schoology interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 206.

207. If a child instead (or later) clicks the pre-highlighted "Approve" button, the contents of the app are instantly downloaded to the child's dashboard, along with a brief notice to the child that they will view content "at your own risk" and a suggestion to review the app's privacy policy and terms of service (though no link is provided).

**ANSWER:** To the extent the allegations in Paragraph 207 characterize or describe the Schoology interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 207.

208. Because PowerSchool fails to provide safeguards that would reasonably limit a child's access to content available on these third-party platforms, the child then has virtually unlimited access to the app's content, including content to which no parent of a child under 13 would consent.

**ANSWER:** To the extent the allegations in Paragraph 208 characterize or describe the Schoology interface and functionality, PowerSchool notes that such source speaks for itself and denies

---

[2] This is an example of a dark pattern known as "confirmshaming," a design technique that uses shame to persuade a user to act in a desired way. *Id.*

any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 208.

209.    Suicidality among children is at an all-time high and is currently the second most-common form of death after gun-related deaths among certain cohorts of children under 18. PowerSchool gives children access to dangerous information about suicide as well:



**ANSWER:**    The first sentence of Paragraph 209 contains Plaintiffs' characterization of third-party statements and arguments, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of those allegations in this Paragraph, and on that basis denies them. PowerSchool denies the allegations in the second sentence of Paragraph 209, which insinuate that PowerSchool's products enable students to access information on suicide, and notes that Plaintiffs' screenshot shows YouTube being used to conduct the search. PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph about how every user of its products or services uses its products and services,

ANSWER TO AMENDED COMPLAINT                50                CASE NO. 3:24-CV-02706-JD

including whether such use is consistent with internal school policies governing the same, and on that basis, denies them.

210.    In addition to providing children access to potentially disturbing and dangerous content, these embedded third-party apps also link directly to their own websites, where children are further subjected to inappropriate content, persuasive design techniques, and invasive data practices.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 210 that insinuate that PowerSchool's products enable students to access "potentially disturbing and dangerous content" or subject students to "inappropriate content, persuasive design techniques, and invasive data practices." PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph about how every user of its products or services uses its products and services, including whether such use is consistent with internal school policies governing the same, and on that basis denies them.  PowerSchool further notes that Plaintiffs reference third-party apps and websites, about which PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of those allegations in this Paragraph, and on that basis denies them.

211.    Many of these sites also include public comments sections, which expose children to online harassment and otherwise inappropriate real-time communications with anonymous strangers.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 211 that insinuate that PowerSchool's products expose children to "harassment" and other "inappropriate" communications with strangers.  PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph about how every user of its products or services uses its products and services, including whether such use is consistent with internal school policies governing the same, and on that basis denies them.  PowerSchool further notes that Plaintiffs reference third-party websites, about which PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of those allegations in this Paragraph, and on that basis denies them.

212.    PowerSchool therefore not only makes third-party apps accessible through its student accounts, it also employs numerous manipulative design techniques that encourage children to install such apps without providing information adequate to obtain valid consent—or even notifying parents (or the school) of such access—all for the purpose of broadening the reach of its surveillance operations and encouraging "time on device" for prolonged data collection.

**ANSWER:**    To the extent the allegations in Paragraph 212 characterize or describe the interface and functionality of unidentified PowerSchool products, PowerSchool notes that such sources speak for

themselves and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 212.

213. Children are not able to understand these persuasive design techniques and their manipulative effects and are thus developmentally unable to make informed, self-interested decisions about whether to engage with the products and provide their personal data.

**ANSWER:** Paragraph 213 contains Plaintiffs' characterization of third-party statements and argument, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

### iii. PowerSchool's data practices pose risks to children by potentially limiting or distorting their access to information and opportunities.

214. Children who use PowerSchool products are at risk of not receiving equal access to quality information or opportunities, such as college recruitment.

**ANSWER:** PowerSchool denies the allegations in Paragraph 214.

215. For example, students as early as kindergarten must complete a required number of lessons or surveys through their Naviance account each year. These surveys probe deeply into highly personal matters such as a student's personality traits and attributes, hobbies, values, life goals, academic interests, extracurricular interests, career interests, major life events, family income, and a student's own feelings about themselves and their life prospects.

**ANSWER:** To the extent the allegations in Paragraph 215 characterize or describe the Naviance interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 215.

216. PowerSchool's algorithms then begin generating predictions about whether students are at low, moderate, or high risk of not graduating high school on time, not meeting certain standards on the SATs, or not completing two years of college, among other outcomes.

**ANSWER:** PowerSchool denies the allegations in Paragraph 216.

217. These predictions are generated by the ever-growing trove of personal information that PowerSchool collects through its suite of products. Such information includes things like student transcripts, letters of recommendation, standardized test scores, and various student-completed survey assessments, as well as student-prepared essays, personal statements, and résumés.

**ANSWER:** PowerSchool denies the allegations in Paragraph 216.

218. Free and reduced lunch status—a proxy for family socioeconomic wealth—and student gender are among the most important factors in determining that risk score. At one point, race was also included as a heavily weighted variable.

ANSWER TO AMENDED COMPLAINT            52            CASE NO. 3:24-CV-02706-JD

**ANSWER:** PowerSchool denies the allegations in Paragraph 218.

219. Naviance also collects information such as the IP addresses from which users access the sites, the browser types and versions used, and the operating systems of their computers.

**ANSWER:** PowerSchool denies the allegations in Paragraph 219.

220. PowerSchool's data-driven algorithms then begin nudging impressionable children into potential areas of interest by suggesting certain education and/or career paths they should consider based on the detailed and personal information the Naviance platform collected about them and targeting them with relevant advertisements, all without their parents' knowledge or consent.

**ANSWER:** PowerSchool denies the allegations in Paragraph 220.

221. PowerSchool packages the information it collects through Naviance and other platforms and sells it to third-party marketers through the Intersect platform, which enables marketers to target students and their parents with advertisements for college recruitment, admissions, financial aid, and other commercial purposes.

**ANSWER:** PowerSchool denies the allegations in Paragraph 221.

222. These third parties have also used this information in discriminatory and harmful ways.

**ANSWER:** Paragraph 222 contains Plaintiffs' characterization of third-party use of student data, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph about every way such parties use student data, and on that basis denies them.

223. For example, admissions officials at major public universities have used the Intersect platform to target college-recruitment advertisements to white students only and to steer students of color away from more challenging majors. Sensitive personal information about a student's gender identity, sexual orientation, learning needs, home life and/or mental health is disclosed to customers using the Intersect platform without a student's informed, affirmative consent, far exceeding what a student would expect to be provided in connection with a college application.

**ANSWER:** Paragraph 223 contains Plaintiffs' characterization of third-party use of student data, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph about every way such parties use student data, and on that basis denies them. Furthermore, Paragraph 223 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 223.

224. Indeed, the Intersect site advertised that its customers can "find students who fit specific demographic variables (race, ethnicity, geography, class year, attendance at an under-represented school) and present messages about your institution to students who possess those characteristics."

**ANSWER:** To the extent the allegations in Paragraph 224 characterize or describe the Intersect interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 224.

225. The use of immutable attributes to predict student outcomes encodes discrimination into predictive models, including PowerSchool's proprietary AI. And PowerSchool's refusal to enable children or their parents to access, review, or correct their information—which may not be accurate—means children may also be harmed by erroneous analysis.

**ANSWER:** PowerSchool denies the allegations in Paragraph 225.

### iv. PowerSchool's data practices pose risks to students because they may limit employment opportunities available to them.

226. Students who use Naviance are at risk of having the information that PowerSchool collects from and generates about them being used to negatively affect their employment prospects.

**ANSWER:** PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 226, and on that basis denies them.

227. PowerSchool's data practices also compromise a child's ability to control information that can be used to negatively affect their employment prospects.

**ANSWER:** PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 227, and on that basis denies them.

228. For example, PowerSchool's Naviance offers "Work-Based Learning" and makes student information available to employers. Naviance is set up to create a kindergarten-to-employment dossier of information to provide employers an invaluable recruitment tool.

**ANSWER:** To the extent the allegations in Paragraph 2298 characterize or describe the Naviance interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 228.

229. This application processes students' online communications, conduct, demographics, transcript, and enrollment data for management of post-secondary planning activities. Such activities include student self-discovery assessments, goal setting, résumé, portfolio development, and career exploration.

**ANSWER:** To the extent the allegations in Paragraph 229 characterize or describe the Naviance interface and functionality, PowerSchool notes that such source speaks for itself and denies any

characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 229.

230.  By collecting information from children for this purpose and denying them and their parents the opportunity to review such information, students are denied employment opportunities, or unnecessarily and improperly led into employment opportunities without their knowledge or consent.

**ANSWER:**  PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 230, and on that basis denies them.

231.  Similarly, PowerSchool partners with a company called Career Key, which delivers "insights" to "educators, counselors, job placement and human resources professionals" that provide "personalized guidance" for students and clients that aid in "their decision journey." It highlights that "[n]o credential is required to administer" its online assessment tools. It touts "long-term access" to assessment data that persists "as long as [a customer] keep[s] a Career Key web app plugin installed[.]"

**ANSWER:**  To the extent the allegations in Paragraph 231 characterize or describe unidentified third-party sources, including https://www.careerkey.org/career-tests/career-interest-inventory#, no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

232.  Thus, data gathered by PowerSchool may dictate, or at least profoundly influence, a child's future employment opportunities.

**ANSWER:**  PowerSchool denies the allegations in Paragraph 232.

233.  Because students and their parents are denied access to and control over this data, they are disempowered to review, correct, or otherwise modify that information.

**ANSWER:**  PowerSchool denies the allegations in Paragraph 233.

234.  A report with inaccurate information exposes children to a significant risk of economic and reputational harm, and even if the information is correct the right to dictate future employment opportunities belongs to students and their parents. This right is denied when PowerSchool surreptitiously collects student data and uses that data to manipulate students' futures without consent.

**ANSWER:**  PowerSchool denies the allegations in Paragraph 234.

235.  PowerSchool does not disclose any of the foregoing risks associated with PowerSchool's data practices to children or parents.

**ANSWER:**  PowerSchool denies the allegations in Paragraph 235.

236.  All these risks have been and will continue to be exacerbated by PowerSchool's rush to integrate AI into its suite of data-derived products, an initiative that is well underway.

**ANSWER:**  PowerSchool denies the allegations in Paragraph 236.

237.    PowerSchool's failure to disclose any of these material risks renders effective, informed consent to its data practices impossible.

**ANSWER:**    Paragraph 237 contains Plaintiffs' legal conclusions and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 237.

238.    By generating predictions on which myriad third parties rely in making consequential decisions affecting children, PowerSchool creates and sells the equivalent of credit reports on children in every domain over which it claims algorithmic expertise.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 238.

### f.    PowerSchool warns shareholders that privacy laws and public awareness of its data practices are bad for business.

239.    PowerSchool intentionally conceals the nature and scope of its far-reaching data practices from children and parents because such disclosures would jeopardize growth and profits.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 239.

240.    PowerSchool admits that laws protecting consumer privacy and property hurt its bottom line. Its 2022 Annual Report observes that existing law could expose it to "substantial liability" and "negatively impact growth."

**ANSWER:**    To the extent the allegations in Paragraph 240 characterize or describe PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 240.

241.    That report further warns that pending privacy legislation could decrease student registrations and revenue by, for example, requiring disclaimers before students may use PowerSchool services.

**ANSWER:**    To the extent the allegations in Paragraph 241 characterize or describe PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 241.

242.    PowerSchool admits that it "may be subject to legal liability for our online services." It lists as "risk factors," in relevant part:

- the impact of potential information technology or data security breaches or other cyber-attacks;

- the fact that its activities are and will continue to be subject to extensive government regulation;

ANSWER TO AMENDED COMPLAINT                56                CASE NO. 3:24-CV-02706-JD

- its ability to comply with HIPAA and other privacy laws and regulations;

- risk relating to non-compliance with anti-corruption, anti-bribery, and similar laws;

- risks related to future litigation;

- changes in privacy laws and regulations applicable to its business; and

- its ability to comply with legal requirements, contractual obligations and industry standards relating to security, data protection and privacy.

**ANSWER:** To the extent the allegations in Paragraph 242 characterize or describe PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 242.

243. In other words, PowerSchool is aware of the risks its data practices pose to user privacy and that such practices may not comply with applicable law.

**ANSWER:** To the extent the allegations in Paragraph 243 characterize or describe PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 243.

244. Further, as stated previously, PowerSchool is aware that the success of its practices depends on keeping users in the dark. For example, PowerSchool acknowledges that merely including a disclaimer before students can use products "could harm our business through a decrease in student registrations and revenue."

**ANSWER:** To the extent the allegations in Paragraph 244 characterize or describe PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 244.

245. PowerSchool advises that complying with applicable law could require it to "build further infrastructure to further support" and that it cannot guarantee that it or its acquired companies "have been or will be fully compliant in every jurisdiction[.]"

**ANSWER:** To the extent the allegations in Paragraph 245 characterize or describe PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 245.

246.    PowerSchool observes that existing law "could also hinder our operational flexibility, raise compliance costs and result in additional historical or future liabilities for us[.]"

**ANSWER:**    To the extent the allegations in Paragraph 246 characterize or describe PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 246.

247.    PowerSchool notes that current law governing data practices "could expose us to substantial liability, including significant expenses necessary to comply with such laws[.]"

**ANSWER:**    To the extent the allegations in Paragraph 247 characterize or describe PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 247.

248.    PowerSchool admits that compliance with applicable law could require that it "fundamentally change [its] business activities and practices[.]"

**ANSWER:**    To the extent the allegations in Paragraph 248 characterize or describe PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 248.

249.    These statements reveal that PowerSchool does not prioritize and make efforts to comply with privacy and other laws governing their data practices. They further support a reasonable inference that (1) such laws "hinder" and could "reduce demand for" PowerSchool's operations, (2) public concerns about privacy are bad for business, (3) PowerSchool's current practices are non-compliant, thereby exposing the company to liability and costs of compliance, and (4) compliance would require that PowerSchool fundamentally change its business.

**ANSWER:**    Paragraph 249 contains Plaintiffs' characterization of their claims and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies any allegations in Paragraph 249.

250.    PowerSchool acknowledges that even minor compelled changes to its practices—such as displaying a disclaimer before a student uses its products—could hurt its bottom line. This is because its business depends on keeping parents and children in the dark about what information PowerSchool is collecting from them, how that information is used, by whom, and for what purposes.

**ANSWER:**    The second sentence in Paragraph 250 contains Plaintiffs' characterization of their claims and argument, to which no response is required.  To the extent a response is deemed required,

ANSWER TO AMENDED COMPLAINT              58              CASE NO. 3:24-cv-02706-JD

PowerSchool denies the allegations in Paragraph 250. To the extent the allegations in the first sentence in Paragraph 250 characterize or describe PowerSchool's 2022 Annual Report (Form 10-K), PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 250.

251. The foregoing allegations also demonstrate that PowerSchool fails to provide sufficient information to users to supported informed consent to its data practices.

**ANSWER:** Paragraph 251 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 251.

**2)  PowerSchool does not obtain effective consent to the collection or use of children's or parents' data.**

252. Effective consent requires that consent be given by a person legally authorized and able to provide consent.

**ANSWER:** Paragraph 252 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 252.

253. For consent to be effective, the disclosures must explicitly notify users of the specific conduct and practices at issue.

**ANSWER:** Paragraph 253 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 253.

254. Because minors are not legally competent to provide valid, binding consent, the collection of data from children requires parental consent.

**ANSWER:** Paragraph 254 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 254.

255. PowerSchool at no time obtains effective consent from children or their parents for its collection or use of their data as described herein.

**ANSWER:** Paragraph 255 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 255.

256.    Indeed, PowerSchool purports to unilaterally relieve itself of any such duty to obtain parental consent through its Privacy Statement, in which it states that its "customers are responsible for obtaining consent for PowerSchool to process Customer Data."

**ANSWER:**    Paragraph 256 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 256.  Furthermore, to the extent the allegations in Paragraph 256 characterize or describe PowerSchool's Archived 2023 Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 256.

257.    PowerSchool could easily obtain consent directly from parents. In fact, PowerSchool already routinely communicates directly with parents. Instead of waiting until after children and parents have already been conscripted into its data-harvesting apparatus, PowerSchool could work with schools to initiate communication with parents *before* it begins collecting and using parents' and their children's data.

**ANSWER:**    Paragraph 257 contains Plaintiffs' characterization of their claims and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 257.

258.    Instead, PowerSchool purports to shift the burden to schools to obtain the necessary consent for PowerSchool's collection and use of student data, the nature and scope of which even schools are not fully informed.

**ANSWER:**    Paragraph 258 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 258.

        a.    **Schools do not own or control the data collected directly from children by PowerSchool, nor have they acted as intermediaries for obtaining parental consent.**

259.    PowerSchool claims that schools own and control student data.

**ANSWER:**    PowerSchool admits that its contracts with schools dictate that schools own and control student data.  PowerSchool denies any remaining allegations in Paragraph 259.

260.    PowerSchool alternatively states that schools may authorize PowerSchool to collect and use children's data.

**ANSWER:**    To the extent the allegations in Paragraph 260 characterize or describe PowerSchool's privacy statements, including the Global Privacy Statement, PowerSchool notes that such

source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 260.

261.    Schools do not own data collected directly from children.

**ANSWER:**    Paragraph 261 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  Furthermore, Paragraph 261 contains Plaintiffs' characterization of third-party practices and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 261.

262.    Schools do not control data collected directly from children by PowerSchool.

**ANSWER:**    Paragraph 262 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 262.

263.    School administrators are not legal guardians of children.

**ANSWER:**    Paragraph 263 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  Furthermore, Paragraph 263 contains Plaintiffs' characterization of third-party practices and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 263.

264.    Children are not the property of schools.

**ANSWER:**    Paragraph 264 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  Furthermore, Paragraph 266 contains Plaintiffs' characterization of third-party practices and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 264.

265.    Children's personal information belongs to children.

**ANSWER:**    Paragraph 265 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  Furthermore, Paragraph 265 contains Plaintiffs' characterization of third-party practices and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 265.

266.    Schools cannot legally consent to the direct collection or use of personal information about and belonging to children by a third-party, particularly when the collection is conducted by a privately

owned, for-profit technology company for commercial purposes, and even if such collection and use may confer a benefit to schools that is administrative, pedagogical, or otherwise.

**ANSWER:** Paragraph 266 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 266.

267. Schools do not control the collection, storage, or use of student data by PowerSchool or its many third-party affiliates because they do not have access to, or even knowledge of, the complete and ever-growing cache of data collected by PowerSchool and its third-party affiliates or how PowerSchool and its affiliates use that data.

**ANSWER:** Paragraph 267 contains Plaintiffs' characterization of their claims and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 267.

268. PowerSchool exclusively controls its data collection scheme, specifically the various methods of collecting, processing, using, and disclosing student data.

**ANSWER:** PowerSchool denies the allegations in Paragraph 268.

269. Valuing the privacy of *its own* personal information, PowerSchool refuses to disclose or describe these processes or permit review of them—by its customers or affected users—by claiming that it is proprietary information protected by intellectual property law.

**ANSWER:** PowerSchool admits that certain of its proprietary information is protected by intellectual property law. PowerSchool denies any remaining allegations in Paragraph 269.

270. Further, schools do not obtain effective parental consent to PowerSchool's collection and use of student data as a parent's agent or intermediary, not least because schools lack the information necessary to support informed consent, as previously detailed herein.

**ANSWER:** Paragraph 270 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 270.

271. PowerSchool thus collects and uses children's personal information without effective consent.

**ANSWER:** Paragraph 271 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 271.

**b.    It is mechanistically *impossible* for parents to provide effective consent to PowerSchool's data practices.**

272.    In addition to PowerSchool's failure to provide sufficient information to support consent, it is mechanistically impossible for a parent to consent to PowerSchool's data practices.

**ANSWER:**    Paragraph 272 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 272.

273.    PowerSchool's Terms of Use and data-practice disclosures—at least the portions that are publicly available—are located on its websites.

**ANSWER:**    To the extent the allegations in Paragraph 273 characterize or describe PowerSchool's websites, https://www.powerschool.com/terms/ and https://www.powerschool.com/privacy/, PowerSchool notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 273.

274.    PowerSchool's Privacy Statement explains that, when a person accesses a PowerSchool website, it begins collecting personal information immediately.

**ANSWER:**    To the extent the allegations in Paragraph 274 characterize or describe PowerSchool's privacy statements, including the Global Privacy Statement, PowerSchool notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 274.

275.    PowerSchool's Privacy Statement further explains what information it collects automatically, including:

- a person's approximate geographical location;
- the date and time a person uses the product or service;
- information about the devices a person uses to access its websites;
- unique device identifiers;
- a person's IP address;
- information about a person's operating system;
- a person's browser type and configuration;
- the pages a person's browser visits;

ANSWER TO AMENDED COMPLAINT                63                CASE NO. 3:24-CV-02706-JD

- how a person's browser accesses and uses PowerSchool websites; and

- cookie data.

**ANSWER:** To the extent the allegations in Paragraph 275 characterize or describe PowerSchool's privacy statements, including the Archived 2023 Privacy Statement, PowerSchool notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 275.

276. The data PowerSchool collects about users when they interact with its websites enables PowerSchool and its third-party partners and affiliates to identify and target its users with precision for commercial purposes, including parents and their children.

**ANSWER:** PowerSchool denies the allegations in Paragraph 276.

277. PowerSchool's Privacy Statement states that it obtains user consent before it begins collecting personal information, warning that a person should not access its website without first reading the Terms of Use.

**ANSWER:** To the extent the allegations in Paragraph 277 characterize or describe PowerSchool's Global Privacy Statement, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 277.

278. However, even if PowerSchool did provide the information necessary for a person to understand its byzantine data practices, which it does not, PowerSchool does not disclose that these practices occur across its websites and services—including its Terms of Use and related webpages.

**ANSWER:** Paragraph 278 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 278.

279. As soon as a person interacts with any of these pages, PowerSchool and numerous third parties begin collecting that person's data, rendering it impossible for them to review and agree to those terms before they are subjected to the data practices of PowerSchool and myriad third parties.

**ANSWER:** Paragraph 279 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 279.

280. Further, PowerSchool and third parties embed tracking technologies on the person's device that allow the person to be followed across the internet and even across other devices, including technologies that are designed to evade ad-tracking tools. This enables a visitor to be tracked long after they have navigated away from the website—until those technologies are manually removed, if ever.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 280.

281.    Consequently, it is impossible for parents (or anyone with legal authority) to consent to any of PowerSchool's data practices because those practices begin before a person can review PowerSchool's Terms of Use or related disclosures.

**ANSWER:**    Paragraph 281 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 281.

### c.    PowerSchool steers children to its data-mining website.

282.    PowerSchool also intends that children access its websites.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 282.

283.    PowerSchool's primary website features a "Login" link for student accounts.

**ANSWER:**    To the extent the allegations in Paragraph 283 characterize or describe the PowerSchool website interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 283.

284.    School-licensed student accounts also feature persistent links to PowerSchool's websites:

English | Schoology Help | PowerSchool Community | PRIVACY POLICY | Terms of Use | Schoology © 2024

**ANSWER:**    To the extent the allegations in Paragraph 284 characterize or describe the Schoology interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 284.

285.    When clicked, those links automatically open PowerSchool websites in a child's browser without warning or request for parental consent. PowerSchool's and third parties' tracking technologies get to work immediately, thereby substantially and irreversibly compromising the child's data and device.

**ANSWER:**    To the extent the allegations in Paragraph 285 characterize or describe the Schoology interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  PowerSchool denies any remaining allegations in Paragraph 285.

286. These data practices enable PowerSchool and third parties to track children across the internet for the purpose of collecting data about them.

**ANSWER:** PowerSchool denies the allegations in Paragraph 286.

287. Using the data it collects through these tracking technologies, PowerSchool builds user profiles that reveal a child's interests, preferences, and habits over a significant amount of time—all without affording parents and children a meaningful opportunity to control or prevent the unauthorized exploration and exploitation of their private lives.

**ANSWER:** Paragraph 287 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 287.

**3)** **PowerSchool does not provide students or their parents access to, control over, or information about the data PowerSchool collects from them or the information associated with or generated from that data.**

288. In addition to providing wholly deficient information about its data practices, PowerSchool fails to provide parents access to, control over, or information about the data it collects from them, or their children and the information associated with or generated using that data, as would be necessary to support effective ongoing consent.

**ANSWER:** Paragraph 288 contains Plaintiffs' characterization of their claims, legal conclusions, and argument to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 288.

289. PowerSchool instead instructs parents to direct their inquiries to schools, which do not possess all the information about PowerSchool's data practices or possess or retain control over the data collected, stored, processed, and used by PowerSchool.

**ANSWER:** PowerSchool denies the allegations in Paragraph 289.

290. Students and parents thus have no way of accessing or reviewing their data that has been collected by PowerSchool.

**ANSWER:** PowerSchool denies the allegations in Paragraph 290.

291. Students and parents have no way of controlling—correcting, deleting, or otherwise modifying—their data obtained by PowerSchool, or the predictions PowerSchool's data-fueled algorithms purport to make about them and disclose to a host of third parties.

**ANSWER:** Paragraph 291 contains Plaintiffs' characterization of their claims, legal conclusions, and argument to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 291.

292. Students and parents do not and cannot know the full scope of the data PowerSchool obtains about them, whether that data is accurate, how that data is stored, how long that data is retained, who has access to that data, or how that data or data-derivative information and products are used.

ANSWER TO AMENDED COMPLAINT        66        CASE NO. 3:24-cv-02706-JD

**ANSWER:** Paragraph 292 contains Plaintiffs' characterization of their claims, legal conclusions, and argument to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 292.

293. Without any such access, control, or information, effective, ongoing consent to PowerSchool's data practices is not possible.

**ANSWER:** Paragraph 293 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 293.

**4)** **PowerSchool's Terms of Service are constantly changing without notice to, or consent from, parents.**

294. The many documents that contain information about PowerSchool's Terms of Use and data practices are constantly changing.

**ANSWER:** To the extent the allegations in Paragraph 294 characterize or describe unspecified PowerSchool documents, PowerSchool notes that such documents, if they exist, speak for themselves, and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 294.

295. PowerSchool's Terms of Use advise users that the disclosures governing various PowerSchool products "may be subject to different terms and policies" without specifying what those products or policies are or where a person might access such information.

**ANSWER:** To the extent the allegations in Paragraph 295 characterize or describe the PowerSchool Terms of Use, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 295.

296. Instead, PowerSchool simply advises users to "periodically" visit its website to see if PowerSchool has changed the terms governing its data practices.

**ANSWER:** To the extent the allegations in Paragraph 296 characterize or describe the PowerSchool Terms of Use, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 296.

297. No matter how many times its disclosures change, PowerSchool never fully discloses how they harvest, retain, and use children's and parents' data for commercial purposes.

**ANSWER:** Paragraph 297 contains Plaintiffs' characterization of their claims, legal conclusions, and argument to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 297.

**F.     PowerSchool's conduct harms children and their parents.**

**1)     PowerSchool's failure to obtain parents' informed consent to its collection and use of their data harms families.**

298.    Whatever the potential benefits and risks that PowerSchool's data practices pose to all education stakeholders—especially to students and parents—parents are entitled to be fully informed of those variables and decide, based on that information, whether to subject their families to those risks.

**ANSWER:** Paragraph 298 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 298.

299.    Denying children and parents complete information about their data practices, including the risks those practices pose to them, and the ability to refuse to subject themselves to those practices is a harm in and of itself. The right to consent is the right to self-determination, which may not be denied, especially not for administrative convenience or corporate profit-seeking.

**ANSWER:** Paragraph 299 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 299.

**2)     PowerSchool's nonconsensual data practices harm children.**

300.    PowerSchool's far-reaching and surreptitious data practices are not benign. Rather, they harm children and their parents in myriad ways that are immediate, significant, and long-lasting.

**ANSWER:** Paragraph 300 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 300.

**a.     PowerSchool harms children by subjecting them to marketing.**

301.    Advertising to children and teenagers is a multibillion-dollar industry. PowerSchool's data practices enable children and their digital behaviors to be tracked for the purpose of creating and delivering targeted marketing campaigns by PowerSchool and unidentified third parties.

**ANSWER:** Paragraph 301 contains Plaintiffs' characterization of third-party practices and argument, to which no response is required. Furthermore, Paragraph 301 contains Plaintiffs'

ANSWER TO AMENDED COMPLAINT          68          CASE NO. 3:24-cv-02706-JD

characterization of their claims and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 301.

302. A 2020 policy statement from the American Academy of Pediatrics ("AAP") describes the harms that the "datafication" of children and resulting digital advertising pose to children.

**ANSWER:** Paragraph 302 contains Plaintiffs' characterization of a third-party document, *Digital Advertising to Children*, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

303. It explains that children's unique developmental needs, such as immature critical thinking skills and impulse inhibition, leave them more vulnerable to the negative physical, mental, and financial health effects of digital marketing.

**ANSWER:** Paragraph 303 contains Plaintiffs' characterization of a third-party document, *Digital Advertising to Children*, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

304. It further explains that children do not comprehend the full complexity of how digital data are collected, analyzed, and used for commercial purposes.

**ANSWER:** Paragraph 304 contains Plaintiffs' characterization of a third-party document, *Digital Advertising to Children*, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

305. The practice is so harmful to children that the AAP has called on the Federal Trade Commission to pass regulations banning surveillance advertising. It explains that "targeted advertising can be used to exploit young people's vulnerabilities" and calls on companies to eliminate the practice.

**ANSWER:** Paragraph 305 contains Plaintiffs' characterization of third-party statements, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

306. Similarly, a 2023 report issued by the American Federation of Teachers, in partnership with American Psychological Association ("APA") and others, similarly warns of the dangers of "personalized, data-driven marketing to minors."

**ANSWER:**    Paragraph 306 contains Plaintiffs' characterization of a third-party document, *Likes vs. Learning: The Real Cost of Social Media for Schools*, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

307.    The APA has also explained that youth are "biologically predisposed toward peer influence" and "sensitive to personalized content." Consequently, "youth become especially invested in behaviors that will help them get personalized feedback, praise, or attention from peers."

**ANSWER:**    Paragraph 307 contains Plaintiffs' characterization of third-party statements on a third-party website, https://www.apa.org/topics/social-media-internet/youth-social-media-2024, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

308.    Despite these concerns, PowerSchool and its numerous third-party affiliates collect data from children that is used to facilitate behavioral marketing to them.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 308.

### b.    PowerSchool harms children by continuously surveilling them.

309.    Research has shown that persistent surveillance decreases opportunities for children to exercise autonomy and independence. Persistent surveillance hinders children's development of self-regulation and decision-making crucial to aspects of responsibility and self-identity.

**ANSWER:**    To the extent the allegations in Paragraph 309 characterize or describe unidentified third-party statements and arguments, no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

310.    Continuous surveillance can also increase passivity and self-censorship in children rather than genuine expression, compromising their rights to freedom of thought, conscience, communication, creativity, and speech. It emphasizes compliance with current social order instead of the cultivation of identity and dignity. And the oppressive potential of PowerSchool's surveillance practices is proportional to the invisibility and pervasiveness of those practices.

**ANSWER:**    To the extent the allegations in Paragraph 310 characterize or describe unidentified third-party statements and arguments, no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.  Furthermore, Paragraph 310 contains

ANSWER TO AMENDED COMPLAINT            70            CASE NO. 3:24-CV-02706-JD

Plaintiffs' characterization of their claims and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 310.

311. Further, persistent surveillance at school normalizes surveillance in other areas of life, and trains children not to value their own and others' privacy and autonomy. It also normalizes the exploitation of children, their personal information, and their educational development for third-party commercial gain without knowledge, consent, or compensation.

**ANSWER:** Paragraph 311 contains Plaintiffs' characterization of third-party statements and arguments, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of those allegations in this Paragraph, and on that basis denies them.

312. PowerSchool constantly surveils children.

**ANSWER:** PowerSchool denies the allegations in Paragraph 312.

313. For example, PowerSchool claims to collect and analyze "real-time behavior data" in order to "identify real-time behavior patterns" to help control children.

**ANSWER:** To the extent Paragraph 313 characterizes or describes PowerSchool's website, https://www.powerschool.com/blog/transforming-behavior-management-enterprise-elementary/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 313.

314. PowerSchool admits that its AI technology requires a tremendous amount of data to function, including everything from a child's grades, to strengths and weakness, to their bus routes.

**ANSWER:** To the extent Paragraph 314 characterizes or describes PowerSchool's website, https://www.powerschool.com/blog/transforming-education-with-responsible-ai-introducing-an-ai-assistant-for-every-student-teacher-parent-and-administrator/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 314.

315. PowerSchool admits that, without sufficient data, its artificial-intelligence technology "hallucinates," and provides inaccurate information, so access to "all the data" is key to powering this product.

**ANSWER:** To the extent the allegations in Paragraph 315 characterize or describe an unidentified PowerSchool document, PowerSchool notes that such source speaks for itself, and no

response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 315.

316.    PowerSchool admits that these technologies only work with "scale."

**ANSWER:**    To the extent the allegations in Paragraph 316 characterize or describe an unidentified PowerSchool document, PowerSchool notes that such source speaks for itself, and no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 316.

317.    PowerSchool claims to be able to assess "100 percent of a child," to which it markets access to its many customers.

**ANSWER:**    To the extent the allegations in Paragraph 317 characterize or describe an unidentified PowerSchool document, PowerSchool notes that such source speaks for itself, and no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 317.

318.    PowerSchool does not believe that any aspect of a child's life should not be data mined and analyzed.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 318.

319.    The datafication of a child and their learning process, for commercial purposes, brings about a social disempowerment that negatively affects the child's education in the moment of learning and also, therefore, the future of a free and sustainable society. In other words, PowerSchool's data practices erode the bedrock principles on which this country was founded. They are profoundly un-American.

**ANSWER:**    Paragraph 319 contains Plaintiffs' characterization of third-party practices and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.  Furthermore, Paragraph 319 contains Plaintiffs' characterization of their claims and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 319.

**3)    PowerSchool's nonconsensual data practices harm parents by abridging their right to parent as they choose.**

320.    PowerSchool's data practices also infringe upon parents' rights to parent as they see fit, a right protected by the U.S. and California Constitutions.

**ANSWER:**    Paragraph 320 contains Plaintiffs' legal conclusions and argument to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 320.

321.    Children are not the mere creatures of the state; those who nurture them and direct their destinies have the right, coupled with the high duty, to recognize and prepare children for additional obligations.

**ANSWER:**    Paragraph 321 contains Plaintiffs' characterization of their claims, legal conclusions, and argument to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 321.

322.    The Fourteenth Amendment protects parents' rights and fundamental liberty interest to parent their children.

**ANSWER:**    Paragraph 322 contains Plaintiffs' legal conclusions and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 322.

323.    The Due Process Clause protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

**ANSWER:**    Paragraph 323 contains Plaintiffs' legal conclusions and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 323.

324.    California's Constitution, Article 1, § 1 recognizes that "[a]ll people" are by nature free and independent and have inalienable rights, including liberty, privacy, and happiness rights.

**ANSWER:**    Paragraph 324 contains Plaintiffs' legal conclusions and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 324.

325.    By denying parents control over their children's personal information—especially in a manner that compromises children's health, education, and access to opportunities—PowerSchool violates such rights.

**ANSWER:**    Paragraph 325 contains Plaintiffs' legal conclusions and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 325.

326.    PowerSchool's data practices and products further circumvent parental control by collecting, analyzing, and using children's data without parental notice or consent in ways that affect the information and opportunities available to them and decision-making about them.

**ANSWER:**    Paragraph 326 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 326.

327.    In conjunction with the right to make decisions about the care, custody, and control of their children, the U.S. and California Constitutions guarantee the right of parents and guardians to direct the upbringing and education of children under their control. Just as parents may not be forced to send their children to public school, they may not be forced to subject their children to harmful corporate surveillance and exploitation when they do.

**ANSWER:**    Paragraph 327 contains Plaintiffs' legal conclusions and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 327.

**4)    PowerSchool's nonconsensual data practices harm families.**

**a.    PowerSchool harms families by invading their privacy.**

328.    When a person's privacy is invaded, the invasion is the harm. A right to privacy encompasses the individual's control of information concerning his or her person. Loss of such control also harms a person's ability to manage and minimize risk.

**ANSWER:**    Paragraph 328 contains Plaintiffs' legal conclusions and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 328.

329.    PowerSchool's data practices deny parents and children control over their personal information.

**ANSWER:**    Paragraph 329 contains Plaintiffs' legal conclusions and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 329.

330.    Further, PowerSchool provides users no access to or control over their personal information.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 330.

331.    Privacy extends to vital rights such as freedom of thought, freedom from surveillance and coercion, protection of one's reputation, and protection against unreasonable searches and takings.

**ANSWER:** Paragraph 331 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 331.

332. As former FTC Commissioner Noah Joshua Phillips observed, "[t]he United States has a proud tradition of considering and protecting privacy, dating back to the drafting of the Constitution itself."

**ANSWER:** Paragraph 332 contains Plaintiffs' characterization of a third-party statement in a third-party document, *Taking Care: The American Approach to Protecting Children's Privacy*, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

333. As described herein, the information PowerSchool collects is being used in ways that infringe upon the time-honored privacy rights of children and their parents.

**ANSWER:** Paragraph 333 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 333.

> **b.    PowerSchool's harms families by denying them access to their data and subjecting them to practices that are opaque, unreviewable, and unappealable.**

334. PowerSchool's denies children and their parents the ability to access and review the data it takes from them and understand how their data is used and who has access to it.

**ANSWER:** PowerSchool denies the allegations in Paragraph 334.

335. Further, the algorithmic models on which PowerSchool's products are built are entirely opaque.

**ANSWER:** PowerSchool denies the allegations in Paragraph 335.

336. Families are thus unable to review (1) the data collected and aggregated, (2) the algorithmic models used to generate predictions, (3) the assumptions on which those models are based, or (4) otherwise understand how their data is processed, interpreted, and used.

**ANSWER:** PowerSchool denies the allegations in Paragraph 336.

337. As previously discussed, schools and other third parties may rely on the data collected by PowerSchool and the data-derived products generated by PowerSchool to make decisions that affect children's lives now and in the future.

**ANSWER:** Paragraph 337 contains Plaintiffs' characterization of third-party practices and argument, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as the truth of the allegations in this Paragraph about every way such parties use data, and on that basis denies them.

338. PowerSchool's practices harm families by denying them the ability to (1) assert their rights by providing—or declining to provide—informed consent before their information is irreversibly compromised, (2) respond effectively to issues involving their personal information, or (3) make meaningful decisions regarding the collection, storage, retention, disclosure, and use of their information. They are also unable to understand and object to the predictions generated by unknown data and to third-party use of such predictions.

**ANSWER:** Paragraph 338 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 338.

339. Consequently, families may never even know if their information was used in a manner adverse to them and, if so, how and to what extent such information was used.

**ANSWER:** Paragraph 339 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 339.

340. By denying families the ability to review and understand this information—thereby denying them the ability to identify, assess, and seek redress of attendant harms—these practices are deceptive, unfair, and unconscionable, especially given that PowerSchool conscripts children into this opaque corporate apparatus without parental notice or consent in the first instance.

**ANSWER:** Paragraph 340 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 340.

341. These harms will only be exacerbated by PowerSchool's rush to develop and integrate student-data-powered AI into its entire suite of products.

**ANSWER:** Paragraph 341 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 341.

      **c.**     **PowerSchool harms families by forcing them to choose between a child's right to an education and other fundamental rights.**

342. PowerSchool forces families into the untenable position of having to choose between their right to an education and other fundamental rights, such as their rights to privacy and property.

ANSWER TO AMENDED COMPLAINT      76      CASE NO. 3:24-CV-02706-JD

**ANSWER:** Paragraph 342 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 342.

343. Recent research shows that nearly 80 percent of adults reported being very or somewhat concerned about how companies use data collected about adults, and the number of those concerned about their online privacy is growing quickly.

**ANSWER:** Paragraph 343 contains Plaintiffs' characterizations of unidentified third-party statements and arguments, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of those allegations in this Paragraph, and on that basis denies them.

344. Protective behaviors are on the rise, with 87 percent of US adults using at least one privacy- or security-protecting tool online.

**ANSWER:** Paragraph 344 contains Plaintiffs' characterizations of unidentified third-party statements and arguments, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of those allegations in this Paragraph, and on that basis denies them.

345. An even greater percentage of parents value protecting their children's personal data, including their identity (90%), location (88%), health data (87%), age (85%), school records (85%), and browsing history (84%).

**ANSWER:** Paragraph 345 contains Plaintiffs' characterizations of unidentified third-party statements and arguments, to which no response is required. To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of those allegations in this Paragraph, and on that basis denies them.

346. By placing schools between itself and families, PowerSchool has driven a wedge between school officials and parents, leaving parents reluctant to press their schools for information regarding PowerSchool's data practices or request that their children be alternatively accommodated.

**ANSWER:** Paragraph 346 contains Plaintiffs' characterization of their claims and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 346.

347. Parents fear becoming adversarial with their children's schools and the possible repercussions they or their children might suffer if they are perceived as difficult or meddlesome, including stigmatization and retaliation.

**ANSWER:**    Paragraph 347 contains Plaintiffs' characterization of their claims and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

348.    Children and their parents are thus particularly vulnerable and disempowered to protect themselves against PowerSchool's conduct.

**ANSWER:**    Paragraph 348 contains Plaintiffs' characterization of their claims and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

349.    PowerSchool should not be permitted to use schools as a shield against parent inquiry and concern and should be made to account for their data practices directly to those directly affected by them.

**ANSWER:**    Paragraph 349 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 349.

350.    PowerSchool forces parents to choose between equal access to education on the one hand, and other basic rights belonging to themselves and their children, such as their rights to privacy and property on the other.

**ANSWER:**    Paragraph 350 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 350.

> **d.    PowerSchool harms families by failing to compensate them for their property and labor.**

351.    Personal data is now viewed as a form of currency. There has long been a growing consensus that consumers' sensitive and valuable personal information would become the new frontier of financial exploitation.

**ANSWER:**    Paragraph 351 contains Plaintiffs' characterization of third-party statements and arguments, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of those allegations in this Paragraph, and on that basis denies them.

352.    Courts have granted individuals and the public rights to compensation for companies' misuse of personal information.

**ANSWER:**    Paragraph 352 contains Plaintiffs' characterization of unspecified court findings relating to third-party practices and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

353.    Furthermore, most U.S. consumers value their data and their privacy. Accordingly, an overwhelming majority engage in efforts to protect their data: 86 percent of U.S. consumers report caring about data privacy and wanting more control; 79 percent are willing to spend time and money to protect their data; and nearly half have terminated relationships with both online and traditional companies over data-privacy concerns, especially younger consumers.

**ANSWER:**    Paragraph 353 contains Plaintiffs' characterizations of unidentified third-party statements and arguments, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of those allegations in this Paragraph, and on that basis denies them.

354.    Nearly 90 percent of U.S. online adults use at least one privacy- or security-protecting tool online.

**ANSWER:**    Paragraph 354 contains Plaintiffs' characterizations of unidentified third-party statements and arguments, to which no response is required.  To the extent a response is deemed required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of those allegations in this Paragraph, and on that basis denies them.

355.    The information PowerSchool collects has significant economic value.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 355.

356.    PowerSchool's data-derived predictions have significant economic value.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 356.

357.    PowerSchool profits from users by acquiring their sensitive and valuable personal information, which includes far more than mere demographic information perhaps necessary for obtaining consent such as name, birth date, and contact information.

**ANSWER:**    Paragraph 357 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 357.

358.    These practices circumvent users' efforts to prevent others from accessing their data.

**ANSWER:** Paragraph 358 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 358.

359. PowerSchool's actions have thus caused Plaintiffs and putative class members economic injury.

**ANSWER:** Paragraph 359 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 359.

360. By collecting, using, and disclosing Plaintiffs' information, PowerSchool diminished the value of that information and Plaintiffs' current and future property interest in it.

**ANSWER:** Paragraph 360 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 360.

361. In exchange for PowerSchool's collection and use of Plaintiffs' information, all Plaintiffs received was the ability to exercise their child's fundamental right to an education to which they were already entitled. That is not a fair exchange.

**ANSWER:** Paragraph 361 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 361.

362. By taking Plaintiffs' data without their knowledge or consent and without compensating them, PowerSchool caused Plaintiffs to participate in a transaction for less than they otherwise would have had they been given a choice, including the choice not to participate at all.

**ANSWER:** Paragraph 362 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 362.

363. PowerSchool's actions caused damage to and loss of Plaintiffs' right to control the collection, dissemination, and use of their personal information.

**ANSWER:** Paragraph 363 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 363.

**5)    PowerSchool's nonconsensual data practices are unfair and unlawful.**

364.    PowerSchool has generated massive profit through collection and analysis of Plaintiffs' personal information—without Plaintiffs' knowledge or consent, and without compensating them for the value of that information.

**ANSWER:**    Paragraph 364 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 364.

365.    PowerSchool's total revenue in 2023 was approximately $700 million. PowerSchool is currently valued at approximately $4 billion.

**ANSWER:**    PowerSchool admits that PowerSchool's total revenue in 2023 was approximately $700 million.  PowerSchool denies any remaining allegations in Paragraph 365.

366.    This one-sided arrangement—whereby PowerSchool earns hundreds of millions of dollars each year from the personal information of children and their parents gathered through the compelled use of PowerSchool products, and all children and parents receive in return is an education to which they are already legally entitled and would receive even in the absence of PowerSchool products—is particularly unjust given the core philanthropic purpose and compulsory nature of a public education.

**ANSWER:**    Paragraph 366 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 366.

367.    Through its false representations and surreptitious data practices, PowerSchool is unjustly enriching itself at the cost of children's and their parents' privacy, security, and autonomy, when children and their parents would otherwise have the ability to choose how they would monetize their own data—or decide not to.

**ANSWER:**    Paragraph 367 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 367.

368.    School-aged children and their parents should not be made to bear these risks and harms for the benefit of a for-profit, publicly traded corporation.

**ANSWER:**    Paragraph 368 contains Plaintiffs' characterization of third-party statements and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 368.

## V.    PLAINTIFF-SPECIFIC ALLEGATIONS

### A.    Plaintiffs Emily Cherkin and S.G.

369.    Plaintiff S.G., a minor, attends school in the Seattle Public School District. She uses PowerSchool products and services as part of her public schooling, which she has accessed and used from both her school-issued and personally owned devices. Plaintiff S.G. was never informed about PowerSchool's data practices nor was she ever asked for her consent to those practices. As of the date of this filing, Plaintiff S.G. still does not know the full extent of the information that PowerSchool has collected about her, whether such information is accurate, where or how long it is stored, how it is used, or who has access to it. At no time has Plaintiff S.G. knowingly and voluntarily consented to PowerSchool's data practices.

**ANSWER:**    PowerSchool admits that discovery showed that S.G. is a minor and attends school in the Seattle Public School District.  PowerSchool otherwise denies the allegations of Paragraph 369.

370.    Plaintiff Emily Cherkin is the mother and legal guardian of Plaintiff S.G. Plaintiff Cherkin was never informed that Plaintiff S.G. was using PowerSchool products and services as part of her education, was never informed about PowerSchool's data practices, and was never asked to consent to those practices on her own or S.G.'s behalf. Despite her best efforts through the date of this filing, Plaintiff Cherkin still is does not know the full extent of the information that PowerSchool has collected about herself or Plaintiff S.G., whether such information is accurate, where or how long it is stored, how it is used, or who has access to it. At no time has Plaintiff Cherkin knowingly and voluntarily consented to PowerSchool's data practices on behalf of herself or Plaintiff S.G.

**ANSWER:**    PowerSchool admits that discovery showed that Emily Cherkin is the mother and legal guardian of S.G.  PowerSchool otherwise denies the allegations of Paragraph 370.

### B.    Plaintiffs David Concepción, L.M.C. and M.M.C.

371.    Plaintiff L.M.C., a minor, attends school in the West Contra Costa County Unified School District. As part of her public schooling, she uses PowerSchool products and services. Plaintiff L.M.C. was never informed about PowerSchool's data practices nor was she ever asked for her consent to those practices. As of the date of this filing, Plaintiff L.M.C. still does not know the full extent of the information that PowerSchool has collected about her, whether such information is accurate, where or how long it is stored, how it is used, or who has access to it. At no time has Plaintiff L.M.C. knowingly and voluntarily consented to PowerSchool's data practices.

**ANSWER:**    PowerSchool admits that discovery showed that L.M.C. is a minor and attends school in the West Contra Costa Unified School District.  PowerSchool otherwise denies the allegations of Paragraph 371.

372.    Plaintiff M.M.C., a minor, attends school in the West Contra Costa County Unified School District. As part of his public schooling, he uses PowerSchool products and services. Plaintiff M.M.C. was never informed about PowerSchool's data practices nor was he ever asked for his consent to those practices. As of the date of this filing, Plaintiff M.M.C. still does not know the full extent of the information that PowerSchool has collected about him, whether such information is accurate, where or how long it is stored, how it is used, or who has access to it. At no time has Plaintiff M.M.C. knowingly and voluntarily consented to PowerSchool's data practices.

**ANSWER:**    PowerSchool admits that discovery showed that M.M.C. is a minor and attends school in the West Contra Costa Unified School District.  PowerSchool otherwise denies the allegations of Paragraph 372.

373.    Plaintiff David Concepción is the parent and legal guardian of Plaintiffs L.M.C. and M.M.C. Plaintiff Concepción was never informed about PowerSchool's data practices, and was never asked to consent to those practices on behalf of himself or L.M.C. and M.M.C. Plaintiff Concepción still does not know the full extent of the information that PowerSchool has collected about himself or Plaintiffs L.M.C. and M.M.C., whether such information is accurate, where or how long it is stored, how it is used, or who has access to it. At no time has Plaintiff Concepción knowingly and voluntarily consented to PowerSchool's data practices on behalf of himself or Plaintiffs L.M.C. and M.M.C.

**ANSWER:**    PowerSchool admits that discovery showed that David Concepcion is the parent and legal guardian of L.M.C. and M.M.C.  PowerSchool otherwise denies the allegations of Paragraph 370.

**C.    Plaintiffs use PowerSchool products, which collect and use Plaintiffs' data.**

374.    Plaintiffs use PowerSchool platforms, including P-SIS and Performance Matters, which collect Plaintiffs' data.

**ANSWER:**    PowerSchool denied the allegations of paragraph 374.

375.    Plaintiffs' school and school district's SIS stores educational records and other student and family data on behalf of Schools.

**ANSWER:**    Paragraph 375 contains Plaintiffs' characterization of third-party practices, to which no response is required.  To the extent a response is required, PowerSchool lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph about every way such parties store data, and on that basis denies them.

376.    Those platforms are owned, controlled, and operated by PowerSchool.

**ANSWER:**    PowerSchool admits that its product offerings include Schoology, P-SIS, and Performance Matters.  PowerSchool denies any remaining allegations in Paragraph 376.

377.    S.G.'s P-SIS dashboard, for example, includes and reveals highly personal, detailed, sensitive information, such as progress reports that detail her academic performance and "Social Emotional Skills and Learning Practices," which measures how well a student does the following:

- identifies their emotions, strengths, areas for growth, and resources;

- shows a desire to contribute to the well-being of school and community;

- motivates themself, perseveres, and sees themself as capable;

- makes safe and constructive choices about behavior and interactions;

ANSWER TO AMENDED COMPLAINT           83           CASE NO. 3:24-CV-02706-JD

- takes the perspective of and empathizes with others from diverse backgrounds and cultures; and

- regulates emotions, thoughts, and behaviors.

**ANSWER:**    To the extent the allegations in Paragraph 377 characterize or describe the P-SIS interface and functionality, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith.  Furthermore, Paragraph 377 contains Plaintiffs' characterization of Plaintiff S.G.'s practices, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 377.

378.    Plaintiff S.G., for example, was required to input a host of personal information into her PowerSchool-owned product dashboards, such as essays on political and controversial topics, confidential and sensitive letters about school staff, and voice recordings of a personal nature.

**ANSWER:**    PowerSchool denies the allegations of paragraph 378 because they are inconsistent with S.G.'s deposition testimony, which speaks for itself.

379.    On information and belief, PowerSchool has collected substantively similar information about Plaintiffs, as well as additional data belonging to Plaintiffs, which it has used to build valuable dossiers on Plaintiffs.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 379.

380.    On information and belief, PowerSchool has shared and continues to share Plaintiffs' data across its suite of products and added to its "data lake."

**ANSWER:**    PowerSchool denies the allegations in Paragraph 380.

381.    On information and belief, PowerSchool processes and uses information generated, uploaded, or stored in PowerSchool's SIS for commercial purposes, including data and information about and belonging to Plaintiffs.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 381.

382.    On information and belief, PowerSchool uses this information for the commercial purposes of developing, improving, and marketing its services and products and other commercial purposes.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 382.

383.    PowerSchool uses Plaintiffs' data to develop its "insight" tools, which it sells to Plaintiffs' school and school district.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 383.

384.    PowerSchool consolidates Plaintiffs' "siloed" data and "disparate data from [Schools'] student information system, learning management system, assessments, and SEL information," providing "a more holistic view of the whole child[.]" In other words, PowerSchool's unification of data from multiple sources enables more targeted student surveillance, predictions of student academic and behavioral outcomes, "and more."

ANSWER TO AMENDED COMPLAINT          84          CASE NO. 3:24-CV-02706-JD

**ANSWER:** To the extent the allegations in Paragraph 384 characterize or describe PowerSchool's website, https://go.powerschool.com/rs/861-RMI-846/images/Making-Sense-Student-Data.pdf?utm_medium=social/, PowerSchool notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. PowerSchool denies any remaining allegations in Paragraph 384.

386. On information and belief, PowerSchool has provided third parties data belonging to Plaintiffs for commercial purposes, including identification, targeting, advertising, influence, and decision-making purposes.

**ANSWER:** PowerSchool denies the allegations in Paragraph 385.

**D.     Plaintiffs did not consent to PowerSchool's collection and use of their data.**

386. Plaintiffs did not provide effective, informed, voluntary, and ongoing consent to PowerSchool's collection and use of their data for any purpose, let alone commercial purposes.

**ANSWER:** Paragraph 386 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 386.

387. Plaintiffs were never provided details regarding PowerSchool's data practices, such as what of their personal data it is collecting, how it is used, who else can access and has accessed it, or the risks of harm those data practices pose to Plaintiffs.

**ANSWER:** PowerSchool denies the allegations in Paragraph 387.

388. Plaintiffs were unable to obtain information sufficient to understand PowerSchool's collection or use of their data.

**ANSWER:** Paragraph 388 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 388.

389. As reasonable consumers, Plaintiffs were unable to locate and understand PowerSchool's Terms of Use and incorporated disclosures.

**ANSWER:** Paragraph 389 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 389.

390. Plaintiffs were unaware that PowerSchool's website contained dozens of hidden tracking technologies—including the pages containing its Terms of Use and related disclosures—that immediately and permanently permitted a host of third parties to track and surveil them.

**ANSWER:** Paragraph 390 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 390.

391. Plaintiffs did not consent to PowerSchool's data practices, and any consent purportedly obtained (Plaintiffs contend there is none) was not commensurate with the nature and scope of PowerSchool's surveillance and profiteering.

**ANSWER:** Paragraph 391 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 391.

**E.     PowerSchool denies users access to, review of, and control over their data.**

392. Plaintiff Cherkin requested access to the data PowerSchool has collected from them from PowerSchool. PowerSchool failed to respond to her request.

**ANSWER:** PowerSchool denies the allegations in Paragraph 392.

393. Upon information and belief, PowerSchool denies all students and parents meaningful access to, review of, and control over their data.

**ANSWER:** Paragraph 393 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 393.

**F.     Plaintiffs were harmed by PowerSchool's conduct.**

394. Plaintiffs were harmed by PowerSchool's failure to obtain their informed consent to their data practices.

**ANSWER:** PowerSchool denies the allegations in Paragraph 394.

395. PowerSchool's data practices harmed Plaintiffs in a number of material if often opaque ways. Because PowerSchool refuses to disclose information critical to a meaningful understanding of its data practices, discovery is necessary to fully understand and identify the nature and details of these harms.

**ANSWER:** PowerSchool denies the allegations in Paragraph 395.

396. PowerSchool harmed Plaintiffs by invading their privacy.

**ANSWER:** PowerSchool denies the allegations in Paragraph 396.

397. PowerSchool harmed Plaintiffs by continuously surveilling them.

**ANSWER:** PowerSchool denies the allegations in Paragraph 397.

398. PowerSchool's data practices have compromised Plaintiffs' relationships with various school administrators, faculty, and staff.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 398.

399.    PowerSchool harmed Plaintiffs by diminishing the value of their data.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 399.

400.    PowerSchool harmed Plaintiffs by denying them access to their own data.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 400.

401.    PowerSchool harmed Plaintiffs by denying them control over their own data.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 401.

402.    PowerSchool harmed Plaintiffs by subjecting them to unfair, deceptive practices that have prevented them from understanding the full extent of how they may have been harmed by those practices.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 402.

403.    PowerSchool harmed Plaintiffs by failing to compensate them for their property or labor, which it has used to fuel its highly lucrative operations.

**ANSWER:**    PowerSchool denies the allegations in Paragraph 403.

## VI.    CALIFORNIA LAW APPLIES TO NATIONWIDE CLAIMS

404.    California law applies to Plaintiffs' nationwide claims, regardless of where the Class member resides, because Plaintiffs' injuries emanate from PowerSchool's actions in California. Upon information and belief, each actionable decision related to the creation, implementation, maintenance, monetization, and concealment of the data-harvesting scheme in the United States was made from PowerSchool's California headquarters by its respective executives and employees located in California.

**ANSWER:**    Paragraph 404 contains Plaintiffs' legal conclusions and argument concerning the choice of law, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 404.

405.    Defendant PowerSchool is headquartered in Folsom, California, and is responsible for creating, implementing, maintaining, and monetizing the data-harvesting scheme in the United States.

**ANSWER:**    PowerSchool admits that it is headquartered in Folsom, California.  PowerSchool denies any remaining allegations in Paragraph 405.

406.    Upon information and belief, the PowerSchool C-Suite members and employees responsible for creating, implementing, maintaining, and monetizing the data-harvesting scheme are located in and around Folsom, California. For example, Hardeep Gulati, serves as the Chief Executive officer of PowerSchool's and is located in Folsom, California. Darron Flagg, Chief Compliance Officer, and Chief Privacy Officer is located in Folsom, California. Rich Gay, Chief Information Security Officer and Vice President of Development is also located in Folsom, California. Grayson Williams, PowerSchool's Chief Information Officer, is located in Folsom, California. Rajen Datta, the Chief of Staff to PowerSchool's CEO, is located in Folsom, California.

**ANSWER:**    PowerSchool admits that Messrs. Flagg and Datta are the Chief Compliance and Chief Privacy Officer and Chief Information Security Officer and Vice President of Development, Chief Information Officer, respectively, and that they have acted in these roles including while in Folsom, California.  PowerSchool further admits that Mr. Gulati was the Chief Executive Officer and that he had acted in this capacity while in Folsom, California.  PowerSchool further admits that Mr. Gay was the Chief Information Security Officer and Group Vice President of Development, and that he had acted in this capacity including while in Folsom, California.  PowerSchool further admits that Rajen Datta was the Chief of Staff to the CEO and that he had acted in this capacity while in Folsom, California.  PowerSchool denies any remaining allegations in Paragraph 406.

407.    The application of California laws to the Classes is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Classes, California has the greatest interest in applying its laws here, and California's interests would be more impaired than the interests of any other state, assuming there is a true conflict of laws.

**ANSWER:**    Paragraph 407 contains Plaintiffs' legal conclusions and argument concerning the choice of law, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 407.

408.    Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class members under the Due Process Clause, see U.S. CONST. amend. XIV, § 1, and the Full Faith and Credit Clause, see U.S. CONST. art. IV, § 1, of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, to the claims asserted by the Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair. Defendant's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

**ANSWER:**    Paragraph 408 contains Plaintiffs' legal conclusions and argument concerning the choice of law, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 408.

## VII.    CLASS ALLEGATIONS

409.    Plaintiffs bring this action under Rules 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

**ANSWER:**    Paragraph 409 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs purport to bring this action as a class action pursuant to the Federal Rules of Civil

Procedure 23(b)(2) and 23(b)(3) on behalf of putative classes, but denies that Plaintiffs' claims satisfy the requirements for class treatment or that Plaintiffs are entitled to any relief. PowerSchool denies any remaining allegations in Paragraph 409.

410.    Plaintiffs seek to represent a nationwide class of students ("Nationwide Student Class") defined as:

> All persons in the United States who attended a K-12 school or school district that used PowerSchool products or services.

**ANSWER:**    Paragraph 410 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs purport to bring this action on behalf of a putative class alleged in Paragraph 410, but denies that Plaintiffs' claims satisfy the requirements for class treatment or that Plaintiffs are entitled to any relief. PowerSchool denies any remaining allegations in Paragraph 410.

411.    Plaintiffs seek to represent a nationwide class of parents ("Nationwide Parent Class") defined as:

> All parents and legal guardians in the United States whose child attended a K-12 school or school district that used PowerSchool products or services.

**ANSWER:**    Paragraph 411 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs purport to bring this action on behalf of a putative class alleged in Paragraph 411, but denies that Plaintiffs' claims satisfy the requirements for class treatment or that Plaintiffs are entitled to any relief. PowerSchool denies any remaining allegations in Paragraph 411.

412.    Plaintiff David Concepción seeks to represent a state-only subclass of students ("California Student Subclass") under the laws of the State of California defined as:

> All persons in California who attended a K-12 school or school district that used PowerSchool products or services.

**ANSWER:**    Paragraph 412 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiff David Concepción purports to bring this action on behalf of a putative class alleged in Paragraph 412, but denies that Plaintiffs' claims satisfy the requirements for class treatment or that Plaintiffs are entitled to any relief. PowerSchool denies any remaining allegations in Paragraph 412.

413.    Plaintiff David Concepción also seeks to represent a state-only subclass of parents ("California Parent Subclass") under the laws of the State of California defined as:

> All parents and legal guardians in California whose child attended a K-12 school or school district that used PowerSchool products or services.

**ANSWER:**    Paragraph 413 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiff David Concepción purports to bring this action on behalf of a putative class alleged in Paragraph 413, but denies that Plaintiffs' claims satisfy the requirements for class treatment or that Plaintiffs are entitled to any relief.  PowerSchool denies any remaining allegations in Paragraph 413.

414.    In addition, and in the alternative to the Nationwide Classes, Plaintiffs reserve the right to seek leave to amend the complaint to represent state subclasses under the laws of 50 states.

**ANSWER:**    Paragraph 414 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool denies that Plaintiffs may reserve any rights to amend their Complaint other than as permitted by the Federal Rules of Civil Procedure.

415.    The Nationwide Student and Parent Classes and the California Student and Parent Subclasses are collectively referred to herein as the Classes.

**ANSWER:**    Paragraph 415 contains no factual assertions to which a response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 415.

416.    Excluded from the Classes are Defendant, its subsidiaries, parents, predecessors, successors and assigns, including any entity in which any of them have a controlling interest and its officers, directors, employees, affiliates, or legal representatives; persons who properly and timely request exclusion from the Class; Plaintiffs' counsel, Class counsel, and Defendant's counsel; the Judge(s) assigned to this case; and the legal representatives, successors, and assigns of any such excluded person.

**ANSWER:**    Paragraph 416 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs purport to bring this action on behalf of a putative class alleged in Paragraph 416, but denies that Plaintiffs' claims satisfy the requirements for class treatment or that Plaintiffs are entitled to any relief.  PowerSchool denies any remaining allegations in Paragraph 416.

417.    Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

**ANSWER:** Paragraph 417 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies that Plaintiffs may reserve any rights to amend their Complaint other than as permitted by the Federal Rules of Civil Procedure.

418.    Ascertainability: Class membership is defined based on objective criteria, and individual members will be readily identifiable using PowerSchool's records.

**ANSWER:** Paragraph 418 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies that this action can be properly maintained as a class action whether on behalf of the purported classes or otherwise. PowerSchool denies any remaining allegations in Paragraph 418.

419.    Numerosity: The Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of PowerSchool and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, there are millions of class members in each proposed class.

**ANSWER:** Paragraph 419 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies that this action can be properly maintained as a class action whether on behalf of the purported classes or otherwise. PowerSchool denies any remaining allegations in Paragraph 419.

420.    Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

- Whether PowerSchool engaged in the conduct alleged herein;

- Whether Plaintiffs' claims emanate from PowerSchool's conduct in California;

- Whether PowerSchool designed and implemented the data-harvesting scheme;

- Whether PowerSchool failed to disclose the data-harvesting scheme to parents and students;

- Whether PowerSchool was under a legal duty to disclose the data-harvesting scheme;

- Whether PowerSchool ever gave sufficient information to obtain effective consent for the data-harvesting scheme;

- Whether PowerSchool's conduct violates the California Unfair Competition Law, and the other statutes and common law asserted herein;

- Whether Plaintiffs and Class Members were damaged and, if so, the appropriate measure of damages; and

- Whether Class members are entitled to declarative, injunctive, or other equitable relief.

**ANSWER:** Paragraph 420 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies that this action can be properly maintained as a class action whether on behalf of the purported classes or otherwise. PowerSchool denies any remaining allegations in Paragraph 420.

421. Typicality: Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs are subject to the same data-harvesting scheme as all other members of the Classes. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

**ANSWER:** Paragraph 421 contains Plaintiffs' legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies that this action can be properly maintained as a class action whether on behalf of the purported classes or otherwise. PowerSchool denies any remaining allegations in Paragraph 421.

422. Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

**ANSWER:** Paragraph 422 contains Plaintiffs' legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies that this action can be properly maintained as a class action whether on behalf of the purported classes or otherwise. PowerSchool denies any remaining allegations in Paragraph 422.

423. Superiority: A class action brought by consumers is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and Members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by PowerSchool's conduct. It would be virtually impossible for members of the Classes individually to effectively redress the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, PowerSchool's own records and those of its customers.

**ANSWER:** Paragraph 423 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool

denies that this action can be properly maintained as a class action whether on behalf of the purported classes or otherwise. PowerSchool denies any remaining allegations in Paragraph 423.

424. Injunctive Relief: Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

**ANSWER:** Paragraph 424 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies that this action can be properly maintained as a class action whether on behalf of the purported classes or otherwise. PowerSchool denies any remaining allegations in Paragraph 424.

## A.    Tolling of Statutes of Limitations

425. Any applicable statute(s) of limitations have been tolled by PowerSchool's and its affiliates knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true nature of PowerSchool's data-harvesting scheme because PowerSchool purposely concealed it. Plaintiffs' claims were thus tolled under the discovery rule.

**ANSWER:** Paragraph 425 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 425.

### 1)    Discovery Rule

426. The causes of action alleged herein did not accrue until Plaintiffs and Class members discovered or should have discovered PowerSchool's data-harvesting scheme.

**ANSWER:** Paragraph 426 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 426.

427. As alleged above, Plaintiffs and Class members had no way of knowing about the data-harvesting scheme. PowerSchool concealed the scheme while simultaneously claiming that it protects student and parent data and privacy. To this day, PowerSchool fails to disclose the full extent of, and risks associated with, its data-harvesting scheme.

**ANSWER:** Paragraph 427 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 427.

428. Within any applicable statutes of limitation, Plaintiffs and Class members could not have discovered, through the exercise of reasonable diligence, that PowerSchool was concealing the conduct complained of herein and misrepresenting the nature of its business.

ANSWER TO AMENDED COMPLAINT          93          CASE NO. 3:24-CV-02706-JD

**ANSWER:** Paragraph 428 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 428.

429. Plaintiffs and Class members did not know facts that would have caused a reasonable person to suspect that there was a data-harvesting scheme that would result in a private corporation collecting, manipulating, and monetizing every aspect of their children's lives and their own interactions with their children's schools and school districts. PowerSchool also withheld any and all information that would give a reasonable person knowledge of the data-harvesting scheme and disclaimed that it unlawfully monetized Plaintiffs and Class members data.

**ANSWER:** Paragraph 429 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 429.

430. For ordinary consumers, the existence of the data-harvesting scheme is still unknown. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

**ANSWER:** Paragraph 430 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 430.

**2)     Fraudulent Concealment**

431. As an entity entrusted with sensitive, personal student and parent data, PowerSchool was under a continuous duty to disclose to Plaintiffs and Class members the existence of the data-harvesting scheme.

**ANSWER:** Paragraph 431 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 431.

432. PowerSchool was and is under a continuing duty to disclose to Plaintiffs and the Class members what data it tracked, how that data is stored, how long it is retained, with whom it is shared, how it is manipulated, and how it is monetized.

**ANSWER:** Paragraph 432 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 432.

433. Instead of publicly disclosing this information, PowerSchool kept students and parents in the dark about its data-harvesting scheme and purposely misled parents and children, as well as schools and school districts, about how their data and other sensitive information was being collected and used by PowerSchool and others.

**ANSWER:** Paragraph 433 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 433.

434. Class members were not at fault for failing to discover the existence of PowerSchool's data-harvesting scheme.

**ANSWER:** Paragraph 434 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 434.

435. This ignorance of the existence of PowerSchool's data-harvesting scheme is common across each Plaintiff and Class member.

**ANSWER:** Paragraph 435 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 435.

436. Due to PowerSchool's active concealment throughout the time period relevant to this action, all applicable statutes of limitation have been tolled.

**ANSWER:** Paragraph 436 contains Plaintiffs' legal conclusions and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 436.

### 3) Estoppel

437. PowerSchool was and is under a continuous duty to disclose to Plaintiffs and Class members its data-harvesting scheme. PowerSchool failed to disclose the existence of its data-harvesting scheme and actively concealed how it was using Plaintiff and Class members' data and other sensitive information. Plaintiffs and Class members reasonably relied upon PowerSchool's knowing and affirmative representations and/or active concealment of these facts. Based on the foregoing, PowerSchool is estopped from relying on any statutes of limitation in defense of this action.

**ANSWER:** Paragraph 437 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 437.

### VIII.   CLAIMS FOR RELIEF

### COUNT I – INVASION OF PRIVACY: INTRUSION UPON SECLUSION

**(on behalf of the Nationwide Parent Class and Nationwide Student Class)**

438. Plaintiffs incorporate all preceding paragraphs as though set forth herein.

**ANSWER:** PowerSchool incorporates and re-alleges its answer to each allegation set forth in the preceding paragraphs of the Amended Complaint.

439. California common law protects consumers from invasions of their privacy and intrusion upon seclusion.

**ANSWER:** Paragraph 439 contains Plaintiffs' characterization of their claims, and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 439.

440. An action for invasion of privacy by intrusion upon seclusion arises when an intentional intrusion, physically or otherwise, upon the solitude, seclusion, private affairs or concerns occurs and is in a substantial manner that would be highly offensive to an ordinarily reasonable person.

**ANSWER:** Paragraph 440 contains Plaintiffs' characterization of their claims, and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 440.

441. PowerSchool intentionally intruded into Plaintiffs' and Class members' private affairs in a highly offensive manner through its systematic and pervasive collection, accessing, downloading, transferring, selling, storing and use of Plaintiffs' and Class members' private information and data.

**ANSWER:** Paragraph 441 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 441.

442. PowerSchool's scheme to collect, manipulate, and monetize student and parent data was devised, implemented, and maintained in California, where PowerSchool is located.

**ANSWER:** Paragraph 442 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 442.

443. Plaintiffs and Class members maintained a reasonable expectation of privacy interest in their personal information absent consent to tracking and collection practices. Plaintiffs and Class members never consented—and in the case of PowerSchool school-licensed products, never even had the opportunity to consent—to PowerSchool's data practices. The reasonableness of this expectation is reflected in longstanding custom and practice; security measures intended to prevent unauthorized access to personal information, especially concerning young children; state, federal, and international laws protecting a right to financial privacy; and the privacy policies and other assurances of protection by applications that use PowerSchool discussed herein, among other indicia.

**ANSWER:** Paragraph 443 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 443.

444. Plaintiffs and Class members could not reasonably expect that PowerSchool would collect, store, manipulate, and monetize such voluminous, far-reaching, and sensitive categories of personal information, prevent Plaintiffs and Class members from reviewing or controlling that information, and use that information in ways that were harmful to Plaintiffs and Class members.

**ANSWER:** Paragraph 444 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 444.

445. Individuals also maintain a reasonable expectation of privacy when they are using products in a compulsory environment such as public schools. PowerSchool's collection of Plaintiffs/Class's information while logged into PowerSchool products was also unreasonable.

**ANSWER:** Paragraph 445 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 445.

446. PowerSchool's collection and use of children's data and personal information without the knowledge or consent of those children or their parents is highly offensive to an ordinarily reasonable person.

**ANSWER:** Paragraph 446 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 446.

447. PowerSchool's collection and use of parent data and personal information without the knowledge or consent of parents is highly offensive to an ordinarily reasonable person.

**ANSWER:** Paragraph 447 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 447.

448. PowerSchool's intrusions upon Plaintiffs' and Class members' private affairs and concerns are highly offensive to an ordinarily reasonable person, especially considering (a) the highly sensitive and personal nature of Plaintiffs' and Class members' personal information and data; (b) the extensive scope of data obtained by PowerSchool, including years of historical data; (c) PowerSchool's intent to profit from Plaintiffs' and Class members' data by selling it outright (e.g., back to schools, its "customer," and other third parties) and using it to develop and market its products and services; (d) PowerSchool's use of subterfuge to intrude into Plaintiffs' and Class members' electronic devices for the purpose of collecting their data; (e) the surreptitious and unseen nature of PowerSchool's data collection with respect to consumers, and (f) PowerSchool's failure to obtain valid consent.

ANSWER TO AMENDED COMPLAINT                97                CASE NO. 3:24-CV-02706-JD

**ANSWER:** Paragraph 448 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 448.

449. PowerSchool's conduct would be highly offensive to a reasonable person, particularly given PowerSchool's extensive and false public statements regarding its commitment to user privacy and given that PowerSchool designs products to be used by children, including young children. The manner of the invasion—collection through students' use of education tools in a compulsory setting—was also highly offensive.

**ANSWER:** Paragraph 449 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 449.

450. PowerSchool's intrusion caused Plaintiffs and Class members the following damages:

    a.    Nominal damages;

    b.    The diminution in value of Plaintiffs' and Class members' private information;

    c.    The loss of privacy due to PowerSchool rendering no longer private the sensitive and confidential information that Plaintiffs and Class members intended to remain private; and

    d.    PowerSchool took something of value from Plaintiffs and Class members—their personal information and data—and derived benefits therefrom without Plaintiffs' and Class members' knowledge or consent and without PowerSchool sharing the fair benefit of such value with Plaintiffs.

**ANSWER:** Paragraph 450 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 450.

451. PowerSchool's intrusion into Plaintiffs' and Class members' seclusion was with oppression, fraud, or malice.

**ANSWER:** Paragraph 451 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 451.

452. As a result of PowerSchool's intrusion into their seclusion, Plaintiffs and Class members seek actual damages, compensatory damages, restitution, disgorgement, general damages, nominal damages, unjust enrichment, punitive damages, and any other relief the Court deems just.

ANSWER TO AMENDED COMPLAINT      98      CASE NO. 3:24-CV-02706-JD

**ANSWER:**   Paragraph 452 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek damages, including actual damages, compensatory damages, restitution, disgorgement, general damages, nominal damages, unjust enrichment, and punitive damages, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in the Amended Complaint.  PowerSchool denies any remaining allegations in Paragraph 452.

## COUNT II – VIOLATION OF CAL. CIV. CODE §§ 1709 & 1710

### Deceit

### (on behalf of the California Parent Subclass and California Student Subclass)

453.    Plaintiffs incorporate all preceding paragraphs as though set forth herein.

**ANSWER:**   The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

454.    California Civil Code § 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

**ANSWER:**   The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

455.    California Civil Code § 1710 defines "deceit" as (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or (4) a promise, made without any intention of performing it. Cal. Civ. Code § 1710(3).

**ANSWER:**   The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

456.    PowerSchool deceived Plaintiffs and Class members by making express and implied statements in its Terms of Use and privacy pages that it would not collect an individual's data before the individual had an opportunity to review its Terms of Use and privacy pages. PowerSchool did not disclose that accessing those website pages immediately and indefinitely subjects an individual to PowerSchool's surreptitious and far-reaching data practices. PowerSchool is aware that users accessing its website— including the Terms of Use and privacy pages—have their personal information immediately collected.

**ANSWER:**    The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

457.    PowerSchool intends for individuals to visit its website, including children under the age of 13. PowerSchool's products contain links to PowerSchool's website that, when clicked, immediately redirect a child to the website, without warning or request for valid consent. Its privacy statement, however, falsely claims that PowerSchool does "not use student data for targeted advertising purposes, for example, by inhibiting these third-party networks from collecting information for targeted advertising purposes when a student logs into the service through their service account."

**ANSWER:**    The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

458.    PowerSchool's statements throughout its website and as cited herein mislead the public as to its commitment to user privacy while intentionally engaging in conduct that directly undermines users' privacy for its own commercial gain.

**ANSWER:**    The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

459.    Plaintiffs and Class members seek recovery of their resulting damages, including economic damages, restitution, and disgorgement, as well as punitive damages.

**ANSWER:**    The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

## COUNT III – VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONAL CODE § 17200, ET SEQ.

### The Unfair Competition Law ("UCL")

### (on behalf of the Nationwide Parent Class and Nationwide Student Class)

460.    Plaintiffs incorporate all preceding paragraphs as though set forth herein.

**ANSWER:**    The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

461.    The UCL prohibits any (1) unlawful, unfair, or fraudulent business act or practice and (2) unfair, deceptive, untrue, or misleading advertising. Cal. Bus. & Prof. Code § 17200 et seq. ("UCL").

**ANSWER:**    The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

462.    PowerSchool is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

**ANSWER:**    The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

463.    PowerSchool violated the UCL by engaging in unlawful, unfair, and fraudulent business acts and practices.

ANSWER TO AMENDED COMPLAINT              100              CASE NO. 3:24-CV-02706-JD

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

464. PowerSchool violated the UCL by engaging in and by deceptive, untrue, or misleading advertising.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

465. In violation of California Business and Professional Code § 17200, et seq., PowerSchool's conduct cited herein is ongoing and includes, but is not limited to, statements made by PowerSchool in its information privacy and confidentiality practices.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

466. By engaging in the acts and practices described herein, PowerSchool violated Plaintiffs' and Class members' privacy by exploiting their personal data in ways that Plaintiffs and Class members could not have anticipated. Plaintiffs' and Class members' interests were also violated through Defendants' deceptive acts.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

467. As a result, Plaintiffs and Class members have suffered injury-in-fact and have lost money and/or property as described herein. Such loss includes, but is not limited to, the insertion of tracking technologies on their electronic devices, the invasion of personal privacy, and lost value of their personally identifiable information and other data.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

468. In reasonable reliance on PowerSchool's misrepresentations and omissions, Plaintiffs and Class members interacted with various websites while logged out of PowerSchool accounts believing that this information was secure and confidential. In reality, without Plaintiffs' and Class members' knowledge or consent, PowerSchool caused certain cookies to be placed on Plaintiffs' and Class members' computers, which actively intercepted and collected personally identifiable information to be utilized for PowerSchool's commercial benefit.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

**A.    PowerSchool's conduct is "unlawful."**

469. PowerSchool's business acts and practices are unlawful in that they violate:

- Student Online Personal Information Protection Act ("SOPIPA"), Cal. Bus. & Prof. Code §§ 22584, et seq.,

ANSWER TO AMENDED COMPLAINT          101          CASE NO. 3:24-cv-02706-JD

- California Invasion of Privacy Act, Cal. Penal Code §630, et seq.

- California Comprehensive Data Access and Fraud Act, Cal. Penal Code § 502.,

- California Statutory Larceny, Cal Penal Code § 502,

- Deceit, Cal. Civ. Code §§ 1709 & 1710, and

- Common law Invasion of Privacy, Intrusion Upon Seclusion.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

470. PowerSchool's conduct violated the spirit and letter of these laws, which protect property, economic and privacy interests and prohibit misleading and deceptive practices including the unauthorized disclosure and collection of private communications and personal information.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

**B.    PowerSchool's conduct is "unfair."**

471. California has a strong public policy of protecting consumers' privacy interests. PowerSchool's conduct is unfair because it violated this public policy by, among other things, surreptitiously collecting Plaintiffs' and Class members' personal information, accessing, and copying Plaintiffs' and Class members' private data, disclosing and transferring that data to third-party affiliates, and storing and using that data for its own commercial purposes, all without Plaintiffs' and Class members' consent.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

472. PowerSchool's also violated the interests protected by SOPIPA, CIPA, CDAFA, California's statutory protections against larceny and deceit, and common law protections against invasion of privacy. To establish liability under the unfair prong, Plaintiffs need not establish that these statutes were actually violated, although the claims pleaded herein do so.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

473. PowerSchool's business acts and practices are unfair because they cause harm and injury in fact to Plaintiffs and Class members, and for which PowerSchool has no justification other than to increase, beyond what PowerSchool would have otherwise realized, the value of its information assets through the acquisition of users' personal information through its development and sale of data-derivative products, and through its granting access to personal information by its third-party affiliates for commercial purposes.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

474. PowerSchool collected, used, and disclosed Plaintiffs' and Class members' personal information without their knowledge and consent. Plaintiffs and Class members could not have anticipated this degree of intrusion into their privacy. PowerSchool's conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiffs and Class members.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

475. PowerSchool's conduct lacks reasonable and legitimate justification in that PowerSchool has benefited from such conduct and practice while Plaintiffs and Class members have been misled as to the nature and integrity of PowerSchool's services and have, in fact, suffered material disadvantage regarding their interests in the privacy and confidentiality of their personal information.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

476. PowerSchool's conduct offends public policy in California as embodied in the Consumers Legal Remedies Act, the state constitutional right of privacy, and California statutes recognizing the need for consumers to obtain material information that enables them to safeguard their own privacy interests, including Cal. Civ. Code § 1798.80.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

## C.   PowerSchool's conduct is "fraudulent."

477. PowerSchool's acts and practices are fraudulent within the meaning of the UCL, because they mislead Plaintiffs and Class members concerning the collection and use of their date and personally identifiable information.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

478. Plaintiffs and Class members have suffered injury in fact, including the loss of money and/or property, as a result of PowerSchool's unfair, unlawful, and/or fraudulent practices. Plaintiffs' and Class members' private and personally identifiable data has tangible value as demonstrated by its use by PowerSchool in their profitable suite of data-derivative products. Plaintiffs and Class members have suffered harm in the form of diminution of the value of their private and personally identifiable data and content and loss of their property right to control the dissemination and use of their personal information and communications.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

479. PowerSchool further misappropriated Plaintiffs' and Class members' property by collecting, storing, and using education records and other data from PowerSchool's "data insight" products, including but not limited to the Naviance/Intersect "behavioral risk" tool, which it used and sold to third parties for commercial purposes and gain.

ANSWER TO AMENDED COMPLAINT          103          CASE NO. 3:24-cv-02706-JD

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

480. Plaintiffs' and Class members' private and personally identifiable data was exploited without informed consent. Accordingly, Plaintiffs and Class members are entitled to part of PowerSchool's profits that were generated from their private and personally identifiable data without informed consent.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

481. Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from PowerSchool's unfair and unlawful business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**ANSWER:** The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

## COUNT IV – INVASION OF PRIVACY: CALIFORNIA CONSTITUTION

### (on behalf of the California Parent Class and California Student Class)

482. Plaintiffs incorporate all preceding paragraphs as though set forth herein.

**ANSWER:** PowerSchool incorporates and re-alleges its answer to each allegation set forth in the preceding paragraphs of the Amended Complaint.

483. California's constitution creates a right of action against private entities such as PowerSchool that are headquartered in and do business in the state of California.

**ANSWER:** Paragraph 483 contains Plaintiffs' characterization of the California Constitution and their claims, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek relief under the California Constitution, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in the Amended Complaint. PowerSchool denies any remaining allegations in Paragraph 483.

484. Plaintiffs' and Class members' expectation of privacy is deeply enshrined in California's Constitution. Article I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possession, and protecting property and pursuing and obtaining safety, happiness, and privacy." The phrase "and privacy" was added by the "Privacy Initiative" adopted by California voters in 1972.

**ANSWER:** Paragraph 484 contains Plaintiffs' characterization of the California Constitution and their claims, to which no response is required. To the extent a response is deemed required,

PowerSchool admits that Plaintiffs seek relief under the California Constitution, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in the Amended Complaint. PowerSchool denies any remaining allegations in Paragraph 484.

485.    The phrase "and privacy" was added in 1972 after voters approved a proposed legislative constitutional amendment designated as Proposition 11. Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating:

> The right of privacy is the right to be left alone. . . . It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us. Fundamental to our privacy is the ability to control circulation of personal information. This is essential to social relationships and personal freedom.

**ANSWER:**    Paragraph 485 contains Plaintiffs' characterization of the California Constitution, their claims, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek relief under the California Constitution, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in the Amended Complaint. PowerSchool denies any remaining allegations in Paragraph 485.

486.    The principal purpose of this constitutional right was to protect against unnecessary information gathering, use, and dissemination by public and private entities such as PowerSchool.

**ANSWER:**    Paragraph 486 contains Plaintiffs' characterization of the California Constitution, their claims, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek relief under the California Constitution, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in the Amended Complaint. PowerSchool denies any remaining allegations in Paragraph 486.

487.    A California constitutional privacy claim requires an invasion of (1) a legally protected privacy interest; (2) where the plaintiff had a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

**ANSWER:**    Paragraph 487 contains Plaintiffs' characterization of the California Constitution, their claims, and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek relief under the California Constitution, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in the Amended Complaint. PowerSchool denies any remaining allegations in Paragraph 487.

488.    As described herein, PowerSchool has intruded upon the following legally protected privacy interests:

(a)    the California Wiretap Act, CIPA, and CDAFA;

(b)    a Fourth Amendment right to privacy contained on personal computing devices, including all of their activity on their devices, as explained by the United States Supreme Court in the unanimous decision of Riley v. California; and

(c)    the California Constitution, which guarantees a right to privacy.

**ANSWER:**    Paragraph 488 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 488.

489.    Plaintiffs and Class members had a reasonable expectation of privacy under the circumstances in that Plaintiffs and Class members could not reasonably expect that PowerSchool would commit acts in violation of federal and state civil and criminal laws.

**ANSWER:**    Paragraph 489 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 489.

490.    PowerSchool's actions constituted a serious invasion of privacy in that they:

(a)    invaded a zone of privacy protected by the Fourth Amendment, namely the right to privacy in data contained on personal computing devices, including web search, browsing histories, and other activities to which PowerSchool had no consensual basis for accessing;

(b)    violated laws, including CIPA and CDAFA;

(c)    invaded the privacy rights of Plaintiffs, their children, and Class members without their consent;

(d)    constituted an unauthorized taking of valuable information from Plaintiffs, their children, and Class members through deceit; and

(e)    further violated Plaintiffs', their children's, and Class members' reasonable expectation of privacy via PowerSchool's review, analysis, and subsequent uses of Plaintiffs', their children's, and Class members' activity that was considered sensitive and confidential.

**ANSWER:**    Paragraph 490 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 490.

ANSWER TO AMENDED COMPLAINT            106            CASE NO. 3:24-cv-02706-JD

491.    Committing these acts against Plaintiffs and Class members alike constitutes an egregious breach of social norms that is highly offensive.

**ANSWER:**    Paragraph 491 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 491.

492.    PowerSchool's surreptitious and unauthorized tracking of Plaintiffs' and Class members' activity constitutes an egregious breach of social norms that is highly offensive, particularly given that PowerSchool's products and services were represented as tools to assist with the education of children.

**ANSWER:**    Paragraph 492 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 492.

493.    Taking this information through deceit is highly offensive behavior, and PowerSchool lacked any legal authority to track and surveil Plaintiffs and Class members without their consent.

**ANSWER:**    Paragraph 493 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 493.

494.    Plaintiffs and Class members have been damaged by PowerSchool's invasion of their privacy and are entitled to just compensation and equitable relief.

**ANSWER:**    Paragraph 494 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek damages, including actual damages, statutory damages, punitive damages, preliminary and other equitable or declaratory relief, and attorneys' fees and costs, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in the Amended Complaint. PowerSchool denies any remaining allegations in Paragraph 494.

## COUNT V – STATUTORY LARCENY

### (Cal. Penal Code § 496(af))

### (on behalf of the California Parent Class and California Student Class)

495.    Plaintiffs incorporate all preceding paragraphs as though set forth herein.

**ANSWER:**    The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

496.     California Penal Code § 496(a) prohibits the obtaining of property "in any manner constituting theft."

**ANSWER:**     The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

497.     Section 484 defines theft, and provides:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

**ANSWER:**     The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

498.     Section 484 thus defines "theft" to include obtaining property by false pretense.

**ANSWER:**     The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

499.     PowerSchool intentionally designed a suite of products that would operate in a manner unbeknownst to Plaintiffs who were deceived into providing personal information to PowerSchool.

**ANSWER:**     The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

500.     PowerSchool acted in a manner constituting theft and/or false pretense.

**ANSWER:**     The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

501.     PowerSchool stole, took, and/or fraudulently appropriated Plaintiffs' and Class members' personal information without their consent.

**ANSWER:**     The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

502.     PowerSchool concealed, aided in the concealing, sold, and/or utilized Plaintiffs' and Class members' personal information that it obtained for its for its own commercial purposes and financial benefit.

ANSWER TO AMENDED COMPLAINT          108          CASE NO. 3:24-cv-02706-JD

**ANSWER:**   The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

503.   PowerSchool knew that Plaintiffs' and Class members' personal information was stolen and/or obtained because PowerSchool designed the data collection scheme that tracked Plaintiffs' and Class members' personal information and operated it in a manner that was concealed and/or withheld from Plaintiffs and Class members.

**ANSWER:**   The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

504.   Plaintiffs and Class members did not consent to PowerSchool taking their information.

**ANSWER:**   The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

505.   The reasonable and fair market value of the unlawfully obtained personal data can be determined in the marketplace.

**ANSWER:**   The allegations in this Paragraph relate to a claim that the Court dismissed in its Opinion dated March 17, 2025 (Dkt. 65), and, therefore, no response is required.

### COUNT VI – UNJUST ENRICHMENT

**(on behalf of the California Parent Subclass and California Student Subclass)**

506.   Plaintiffs incorporate all preceding paragraphs as though set forth herein.

**ANSWER:**   PowerSchool incorporates and re-alleges its answer to each allegation set forth in the preceding paragraphs of the Amended Complaint.

507.   PowerSchool has unjustly received benefits at the expense of Plaintiffs and Class members.

**ANSWER:**   Paragraph 507 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 507.

508.   PowerSchool acquired and compromised the security of troves of personal data that rightfully belong to Plaintiffs and Class members without valid consent through intentionally deceptive practices conducted in connection with consumers' use of PowerSchool sits and products.

**ANSWER:**   Paragraph 508 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 508.

509.    PowerSchool has derived profits and other tangible benefits from this collection of data, without which PowerSchool could not have grown its business, acquired numerous other tangible and intangible assets, developed other apps, IPO'd at a $3.5 billion valuation, and, as of the date of this filing, stand at a $5 billion valuation. PowerSchool has also directly and substantially profited from its use, storage, aggregation, and sale of Plaintiffs' and Class members' data. Indeed, Plaintiffs' and Class members' data is the fuel that powers PowerSchool's ever-growing "data insights" products and services, the core business of PowerSchool. Without Plaintiffs' and Class members' personal information unlawfully taken by PowerSchool, PowerSchool would cease to operate in its current form.

**ANSWER:**    Paragraph 509 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 509.

510.    These benefits were the expected result of PowerSchool acting in their pecuniary interests at the expense of their users.

**ANSWER:**    Paragraph 510 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 510.

511.    In exchange for these benefits to PowerSchool, Plaintiffs and Class members received nothing. In fact, in order to benefit its bottom line, PowerSchool deprived Plaintiffs and Class members of their property, security, privacy, and autonomy.

**ANSWER:**    Paragraph 511 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 511.

512.    PowerSchool harmed Plaintiffs and Class members by, among other harms, subjecting them to commercial manipulation and continuous surveillance; abridging parents right to parent as they choose; invading their privacy; denying their due process rights by subjecting them to opaque, unreviewable data practices; forcing them to choose between their right to an education and other fundamental rights; and failing to compensate them for their property and labor.

**ANSWER:**    Paragraph 512 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 512.

513.    Plaintiffs and Class members did not consent to PowerSchool's taking their information and using it for PowerSchool's commercial gain.

**ANSWER:**    Paragraph 513 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 513.

514. There is no justification for PowerSchool's enrichment. It would be inequitable, unconscionable, and unjust for PowerSchool to be permitted to retain these benefits because the benefits were procured because of and by means of their wrongful conduct.

**ANSWER:** Paragraph 514 contains Plaintiffs' characterization of their claims, legal conclusions, and argument, to which no response is required. To the extent a response is deemed required, PowerSchool denies the allegations in Paragraph 514.

515. Plaintiffs and Class members seek an order compelling PowerSchool to disgorge the profits and other benefits it has unjustly obtained.

**ANSWER:** Paragraph 515 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek disgorgement of profits, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in the Amended Complaint. PowerSchool denies any remaining allegations in Paragraph 515.

516. Plaintiff and Class members are entitled to restitution of the benefits PowerSchool unjustly retained and/or any amounts necessary to return Plaintiff and Class members to the position they occupied prior to dealing with PowerSchool.

**ANSWER:** Paragraph 516 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek restitution, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in the Amended Complaint. PowerSchool denies any remaining allegations in Paragraph 516.

## IX.    PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of Class members, request that the Court enter judgment in their favor and against Defendants, as follows:

1. Certify the proposed Nationwide Classes and State Law Classes;

**ANSWER:** This Paragraph contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek to maintain this action as a class action, but denies that Plaintiffs have or can satisfy the requirements of Federal Rule of Civil Procedure 23 or are entitled to any relief requested in this Paragraph or elsewhere in their Amended Complaint. PowerSchool denies any remaining allegations in this Paragraph.

2.        Appoint Plaintiffs and their counsel to represent the Classes;

**ANSWER:**    This Paragraph contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek to maintain this action as a class action, but denies that Plaintiffs have or can satisfy the requirements of Federal Rule of Civil Procedure 23 or are entitled to any relief requested in this Paragraph or elsewhere in their Amended Complaint.  PowerSchool denies any remaining allegations in this Paragraph.

3.        Enter Judgment against Defendants on Plaintiffs' and Class members' asserted causes of action;

**ANSWER:**    This Paragraph contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek the relief requested in this Paragraph, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in their Amended Complaint.  PowerSchool denies any remaining allegations in this Paragraph.

4.        Award Plaintiffs and Class members appropriate relief, including actual and statutory damages, restitution, disgorgement, and punitive damages;

**ANSWER:**    This Paragraph contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek actual damages, disgorgement, and punitive damages, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in their Amended Complaint.  PowerSchool denies any remaining allegations in this Paragraph.

5.        Award equitable, injunctive, and declaratory relief as may be appropriate;

**ANSWER:**    This Paragraph contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.  To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek equitable, injunctive, and declaratory relief, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in their Amended Complaint.  PowerSchool denies any remaining allegations in this Paragraph.

6.        Award all costs, including experts' fees and attorneys' fees, as well as the costs of prosecuting this action;

**ANSWER:** This Paragraph contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek all costs, including experts' fees, attorneys' fees, and costs of prosecuting this action, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in their Amended Complaint. PowerSchool denies any remaining allegations in this Paragraph.

7. Award pre-judgment and post-judgment interest as prescribed by law; and

**ANSWER:** This Paragraph contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek pre-judgment and post-judgment interest, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in their Amended Complaint. PowerSchool denies any remaining allegations in this Paragraph.

8. Grant additional legal and equitable relief as this Court may find just and proper;

**ANSWER:** This Paragraph contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek additional legal and equitable relief, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in their Amended Complaint. PowerSchool denies any remaining allegations in this Paragraph.

9. Awarding such other and further relief as this Court may deem just and proper.

**ANSWER:** This Paragraph contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs seek other and further relief, but denies that Plaintiffs are entitled to any relief requested in this Paragraph or elsewhere in their Amended Complaint. PowerSchool denies any remaining allegations in this Paragraph.

## X.    DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all issues so triable.

**ANSWER:** This Paragraph contains no factual assertions to which a response is required. To the extent a response is deemed required, PowerSchool admits that Plaintiffs purport to demand a jury

ANSWER TO AMENDED COMPLAINT          113          CASE NO. 3:24-cv-02706-JD

trial, but denies that Plaintiffs have stated any claims that are triable. PowerSchool denies any remaining allegations in this Paragraph.

## GENERAL DENIAL

PowerSchool further denies each and every allegation contained in Plaintiffs' Amended Complaint except as expressly admitted and qualified above. Where an allegation in the Amended Complaint is directed at another party that is not affiliated with PowerSchool, then, except as otherwise expressly stated, PowerSchool denies the allegations set forth in the Amended Complaint on the basis that it is without information sufficient to form a belief concerning the truth of such allegations.

## AFFIRMATIVE DEFENSES

PowerSchool states the following affirmative defenses to Plaintiffs' Amended Complaint. PowerSchool has not completed its preparation for trial. The defenses asserted herein are based on PowerSchool's knowledge, information, and belief at this time. By asserting the defenses herein, PowerSchool has not knowingly and intentionally waived any applicable defenses and hereby expressly reserves the right to assert any additional defenses, cross-claims, and/or third-party claims as may be appropriate at a later time. By setting forth these affirmative defenses, PowerSchool does not assume any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of Plaintiffs' claims. Nothing herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to Plaintiffs' allegations.

PowerSchool asserts the following separate and distinct affirmative defenses:

### First Affirmative Defense

(Consent and Authorization by Schools)

Plaintiffs' claims are barred, in whole or in part, because PowerSchool is acting with due consent and authorization from schools, school districts, state and tribal agencies and governments and private providers of educations services (collectively "Educators and Representatives"). Parents and other stakeholders elect, appoint, or retain Educators and Representatives to manage and provide educational services, legislate on issues affecting education and student privacy, and to represent parents' and other stakeholders' interests. PowerSchool has executed agreements with Educators and Representatives that confer upon PowerSchool the requisite authority to undertake the conduct at issue in this case. Educators

and Representatives had the right to consent on behalf of parents, students and stakeholders and did, in fact, consent on behalf of these parties to the conduct at issue in this case. Each of Plaintiffs' claims fails due to consent.

## Second Affirmative Defense

(No Interest in the Data)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' allegations relate to data that belongs to Educators and Representatives and is within the control of Educators and Representatives. Plaintiffs thus do not own or control, or have any privacy interest, property interest, or other ownership interest in the data at issue in this case.

## Third Affirmative Defense

(Consent and Authorization by Parents and Students)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs and other class members have consented to the conduct at issue in this case. Plaintiffs have given consent explicitly via agreements, including through school handbooks, technology use agreements, and similar agreements, or impliedly by continued use of PowerSchool products and/or continued attendance at schools utilizing online student data management solutions.

## Fourth Affirmative Defense

(Barred by Contract)

Plaintiffs' claims are barred, in whole or in part, by contracts and/or agreements between PowerSchool and Educators and Representatives, and between Educators and Representatives and parents, students, and other stakeholders. Specifically, PowerSchool has executed agreements with Educators and Representatives, and Educators and Representatives have executed agreements with parents, students, and other stakeholders that govern conduct at issue in this case, including through school handbooks, technology use agreements, and similar agreements. Plaintiffs' claims are barred, in whole or in part, by these agreements.

ANSWER TO AMENDED COMPLAINT             115             CASE NO. 3:24-CV-02706-JD

### Fifth Affirmative Defense

(Government Contractor Defense)

Plaintiffs' claims are barred, in whole or in part, because PowerSchool is a government contractor for certain services at issue here.  Specifically, certain of Plaintiffs' claims are based on services that state and governmental entities, such as Educators and Representatives, engaged PowerSchool to provide.  The relevant government entities defined the parameters and requirements for how PowerSchool's tasks were to be performed, and PowerSchool carried out its work in accordance with those directives.

### Sixth Affirmative Defense

(Waiver / Release / Estoppel)

Plaintiffs' claims are barred, in whole or in part, because of the doctrines of waiver, release, or estoppel.  Upon information and belief, Plaintiffs have been aware of PowerSchool products and how these products operate for a substantial amount of time prior to filing suit.  Having continued to utilize the benefits of PowerSchool products and services, Plaintiffs have relinquished their right to bring suit and/or should be estopped from doing so.

### Seventh Affirmative Defense

(Unclean Hands / Inequitable Conduct)

Plaintiffs' claims are barred, in whole or in part, because of the doctrines of unclean hands and inequitable conduct.  Upon information and belief, Plaintiffs have been aware of PowerSchool products and how these products operate for a substantial amount of time prior to filing suit.  Plaintiffs have received substantial benefit from PowerSchool's products and have taken positions inconsistent with those espoused in this litigation in prior forums.

### Eighth Affirmative Defense

(Failure to Mitigate)

Plaintiffs' claims for damages are barred, in whole or in part, to the extent they failed to exercise reasonable care to mitigate any damages they may have suffered.  Upon information and belief, Plaintiffs have been aware of PowerSchool products and how those products operate for a substantial amount of time prior to filing suit.  Despite knowingly benefitting from PowerSchool's products, some or all Plaintiffs did not opt out (or did not ensure that they were fully opted out) from the use of PowerSchool's

products.  Plaintiffs' failure to exercise reasonable care to mitigate damages was the complete or partial cause of any damages Plaintiffs may have suffered.

## Ninth Affirmative Defense

### (Statute of Limitations / Laches)

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations and laches. Specifically, Counts I, IV and VII are subject to a two-year statute of limitations; Count III is subject to a one-year statute of limitations; and Count V is subject to a three-year statute of limitations.  *See, e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021); Cal. Pen. Code § 502(e)(5); *Wu v. Sunrider Corp.*, No. 17-4825 DSF (SSX), 2018 WL 6266577, at *5 (C.D. Cal. May 22, 2018), *aff'd,* 793 Fed. Appx. 507 (9th Cir. 2019) (unpublished).  Upon information and belief, Plaintiffs have been aware of PowerSchool products and how those products operate for a substantial amount of time prior to filing suit and outside of the applicable statute of limitations.  Accordingly, their claims are time-barred and any demand for equitable relief is barred by laches.  *See, e.g.*, *Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975, 997 (9th Cir. 2006).

## Tenth Affirmative Defense

### (Mistake)

Plaintiffs' claims are barred, in whole or in part, on the grounds that PowerSchool reasonably relied on facts that may later prove to be false and/or made a bona fide error despite using reasonable procedures to avoid any such error.  For instance, PowerSchool's agreements with Educators and Representatives state that Educators and Representatives obtained all required consent or that consent is not required for the services ordered.  Plaintiffs cannot recover if PowerSchool acted in reasonable reliance on such representations.

## Eleventh Affirmative Defense

### (Unjust Enrichment)

Plaintiffs' claims are barred, in whole or in part, on the grounds that Plaintiffs would be unjustly enriched if allowed to recover the relief claimed to be due.  PowerSchool has not taken anything of value from Plaintiffs and has not caused Plaintiffs any harm.  In fact, PowerSchool engaged in the conduct at issue in this case pursuant to valid agreements with Educators and Representatives for which it is entitled

to contractually-negotiated compensation. Plaintiffs have benefitted from PowerSchool products and services which increase educational effectiveness and give parents and students enhanced ability to participate in and communicate with school operations. It would be unjust to allow Plaintiffs to recover from PowerSchool after receiving the benefit of PowerSchool's services.

**Twelfth Affirmative Defense**

(Eighth Amendment)

Plaintiffs' claims are barred, in whole or in part, to the extent they seek excessive damages in violation of the Eighth Amendment of the U.S. Constitution, Article I § 17 of the California Constitution, and Article I § 14 of the Washington Constitution. Plaintiffs have failed to disclose their asserted damages in their initial disclosures and in response to PowerSchool's interrogatories, so it is not yet known whether Plaintiffs are seeking damages that would violate the Eighth Amendment of the U.S. Constitution, Article I § 17 of the California Constitution, and/or Article I § 14 of the Washington Constitution. To the extent the damages they seek are excessive in violation of applicable constitutional provisions, they are barred.

**Thirteenth Affirmative Defense**

(No Intent)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs cannot show that PowerSchool had the requisite intent under Cal. Penal Code § 631(a). PowerSchool does not intercept or wiretap, and did not intend to intercept or wiretap, any report, data, or communication. PowerSchool provides data processing services that enable Educators and Representatives to effectively collect, review, use, share, manage, and analyze their own data.

**Fourteenth Affirmative Defense**

(Lack of Causation)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to allege that PowerSchool's actions were a legal cause of Plaintiffs' alleged injuries. PowerSchool processes data on behalf of Educators and Representatives. To the extent any injury results from the data processing, it is the result of the decisions made by Educators and Representatives.

**Fifteenth Affirmative Defense**

(No Privacy Interest)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs do not maintain a legally protected privacy interest over any data Plaintiffs allege to have been impermissibly collected. Among other things, certain of the data at issue in the Amended Complaint is not private or confidential, Plaintiffs disclaimed a reasonable expectation of privacy in the data, certain of the data at issue in the Amended Complaint does not belong to Plaintiffs, and/or Plaintiffs did not maintain their data in a confidential manner, including by using public or monitored devices to access their data.

**Sixteenth Affirmative Defense**

(Party to Communications)

Plaintiffs' claims are barred, in whole or in part, because PowerSchool was a party to any and all communications PowerSchool allegedly received, and therefore no actionable interception occurred. For instance, PowerSchool would receive a communication that is directed to it or is sent via a PowerSchool platform, and PowerSchool is thus a party to such communication.

**Seventeenth Affirmative Defense**

(Definition of Content)

Plaintiffs' claims are barred, in whole or in part, because any information allegedly gathered does not constitute "content" under CIPA. *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *10 (C.D. Cal. Dec. 24, 2024) ("[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." (internal quotation omitted)). For instance, the Amended Complaint asserts collection of certain technical data that reveals no content of the communication but merely evidences that certain content is being transferred via a PowerSchool platform.

**Eighteenth Affirmative Defense**

(No Third Party Use)

Plaintiffs' claims are barred, in whole or in part, because no third party alleged to have received data actually used—or was capable of using—the data as would be required for liability under CIPA. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (no liability where the third party acted

ANSWER TO AMENDED COMPLAINT            119            CASE NO. 3:24-CV-02706-JD

as a "tape recorder", allowing defendant to "record and analyze its own data in aid of [its own] business."); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025 (S.D. Cal. 2024) (asking whether the third party "has the capability to use the [] data for its own purposes or benefit.").

**Nineteenth Affirmative Defense**

(Extraterritorial Application of California Law)

Plaintiffs' claims are barred, in whole or in part, insofar as they apply California statutory law extraterritorially.  As explained in PowerSchool's Motion to Dismiss, *see* Dkt. 37 at 13–15, Plaintiffs cannot overcome the presumption against extraterritoriality.  *See Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 & n.9 (Cal. 2011).

**Twentieth Affirmative Defense**

(Intervening Actor / Wrong Party)

Plaintiffs' claims are barred, in whole or in part, because the alleged harm was the proximate result of actions by others, not PowerSchool.  PowerSchool is a data processing and data tool provider to Educators and Representatives, who use the tools, direct PowerSchool's conduct, and are responsible for ensuring the tools are used consistent with applicable law.

**Twenty-First Affirmative Defense**

(First Amendment)

Plaintiffs' claims are barred, in whole or in part, by the First Amendment to the United States Constitution and analogous amendments of other states.  Specifically, Plaintiffs' claims are based on statutes and/or state-created rights that may abridge the freedoms of speech and association.

**Twenty-Second Affirmative Defense**

(Section 230)

Plaintiffs' claims are barred, in whole or in part, by the Communications Decency Act, 47 U.S.C. § 230(c)(1), because PowerSchool is a provider of an interactive computer service.  PowerSchool is not responsible for the content, or any associated harms, of online materials from third party sources accessed via PowerSchool products.

**Twenty-Third Affirmative Defense**

(Lack of Standing)

Plaintiffs' claims are barred, in whole or in part, because they lack standing under Article III of the United States Constitution to assert or recover for their claims. In order to demonstrate standing, Plaintiffs must demonstrate an injury in fact, caused by the defendant, which can be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs have not and cannot demonstrate that any alleged data collection has caused a legally cognizable injury. Plaintiffs have also not demonstrated that PowerSchool caused any harm allegedly suffered by Plaintiffs given that PowerSchool was merely acting at the direction of the educational institutions which utilize PowerSchool products and services.

## Twenty-Fourth Affirmative Defense

### (Barred by Statute)

Plaintiffs' claims are barred, in whole or in part, by 20 U.S.C. § 1232 *et seq.*, Cal. Educ. Code § 49060 *et seq.*, and analogous law of other states. Specifically, PowerSchool is acting as a school official pursuant to a valid grant of authority by Educators and Representatives and federal and state law.

## Twenty-Fifth Affirmative Defense

### (Arbitration Provisions)

Plaintiffs' claims may be barred, in whole or in part, by contracts which require their claims to be brought in arbitration. Plaintiffs' claims arise or relate to contracts by and between PowerSchool and Educators and Representatives, and between Educators and Representatives and students and parents. Discovery is ongoing in this matter and may reveal the existence of relevant and enforceable arbitration provisions. To the extent such provisions exist, they will bar Plaintiffs' claims.

## Twenty-Sixth Affirmative Defense

### (No Injury)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not sustained any legally cognizable injury, harm, and/or damages as a result of any actions allegedly taken or omissions allegedly made by PowerSchool and are thus barred from asserting any claim against PowerSchool.

## Twenty-Seventh Affirmative Defense

### (Failure to State a Claim)

Plaintiffs' claims are barred, in whole or in part, because the Amended Complaint fails to state a claim upon which relief may be granted. Specifically, Counts I and IV fail including because discovery will show that Plaintiffs lack a reasonable expectation of privacy and/or any intrusion into a reasonable expectation of privacy was not highly offensive. Count III fails including because discovery will show that PowerSchool had requisite authorization, PowerSchool did not learn or attempt to learn the content of any communication, any data at issue was not in transit, and/or PowerSchool did not intercept any message, report, or communication. Count V fails including because discovery will show that PowerSchool did not: knowingly access and without permission alter, damage, delete, destroy or otherwise use any data to devise or execute a scheme or artifice to defraud, deceive, or extort or wrongfully control or obtain money, property or data; knowingly and without permission access or cause to be accessed any computer, computer system, or computer network; and/or knowingly introduce any computer contaminant into any computer, computer system, or computer network. Count VII fails including because PowerSchool did not receive any benefit from Plaintiffs at Plaintiffs' expense, did not unjustly retain any benefit, and Plaintiffs suffered no harm.

## RESERVATION OF RIGHTS

To the extent that any of the defenses above are found to be defenses but not affirmative defenses, PowerSchool identifies them as such.

## JURY DEMAND

Pursuant to the Federal Rule of Civil Procedure 38, PowerSchool demands a trial by jury of all claims and defenses upon which it is entitled to a jury trial.

## PRAYER FOR RELIEF

PowerSchool requests that Plaintiffs' Amended Complaint be dismissed with prejudice, that the Court find that Plaintiffs are not entitled to any judgment or relief, that the Court enter judgment in favor of PowerSchool, and that the Court award PowerSchool its attorneys' fees, costs, and expenses, pre-judgment interest, and such other and further relief as the Court deems just and proper.

DATED:  March 23, 2026

Respectfully submitted,
KIRKLAND & ELLIS LLP


/s/ *Olivia Adendorff*
Olivia Adendorff, P.C.

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Zharna Shah (*pro hac vice*)
Amelia H. Bailey (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
zharna.shah@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Cristina Martinez Squiers (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
cristina.squiers@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*

ANSWER TO AMENDED COMPLAINT            123            CASE NO. 3:24-CV-02706-JD