Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY CHERKIN, et al., | Case No.: 3:24-cv-02706-JD |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT POWERSCHOOL HOLDINGS, INC.'S MOTION TO EXCLUDE THE OPINIONS OF CATHERINE O'NEIL** |
| v. | |
| POWERSCHOOL HOLDINGS, INC., | |
| Defendant. | Judge: The Honorable James Donato |
| | Hearing |
| | Date: April 23, 2026 |
| | Time: 11:00 a.m. |
| | Courtroom: 11, 19th Floor |

**TABLE OF CONTENTS**

I.      INTRODUCTION...................................................................................................................1

II.     STANDARD OF REVIEW.....................................................................................................1

III.    BACKGROUND.....................................................................................................................2

IV.     ARGUMENT ..........................................................................................................................5

    A.    PowerSchool does not dispute Dr. O'Neil's qualifications. ............................................5

    B.    Dr. O'Neil's testimony is not simply that PowerSchool products use student data. ......................6

    C.    Dr. O'Neil bases her testimony on sufficient facts and data. .......................................7

    D.    Dr. O'Neil's testimony is the product of reliable principles and methods, reliably applied.........................................9

V.      CONCLUSION .....................................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,*
 738 F.3d 960 (9th Cir. 2013)................................................................................................. 10

*Alsadi v. Intel Corp.,*
 No. CV-16-03738-PHX-DGC, 2019 WL 4849482 (D. Ariz. Sept. 30, 2019) ................................................9

*Astiana v. Hain Celestial Group, Inc.,*
 783 F.3d 753 (9th Cir. 2015)................................................................................................3

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.,*
 613 F. Supp. 3d 1308 (S.D. Cal. 2020) ................................................................................7

*Bardin v. Nissan Motor Co., Ltd.,*
 No. 1:21-CV-00144-GNS-HBB, 2023 WL 6392743 (W.D. Ky. Sept. 29, 2023) ....................................... 12

*Biotechnology Value Fund, L.P. v. Celera Corp.,*
 No. C 13-03248 WHA, 2015 WL 138168 (N.D. Cal. Jan. 9, 2015)..........................................................7

*Camenisch v. Umpqua Bank,*
 763 F. Supp. 3d 871 (N.D. Cal. 2025)................................................................................ 7, 8

*City of Pomona v. SQM N. Am. Corp.,*
 750 F.3d 1036 (9th Cir. 2014) ................................................................................9

*In re Coll. Athlete NIL Litig.,*
 No. 20-CV-03919 CW, 2023 WL 8372788 (N.D. Cal. Nov. 3, 2023).......................................... 11

*CZ Servs., Inc. v. Express Scripts Holding Co.,*
 No. 3:18-CV-04217-JD, 2020 WL 4518978 (N.D. Cal. Aug. 5, 2020).......................................................7

*ESG Capital Partners, LP v. Stratos,*
 828 F.3d 1023 (9th Cir. 2016) ................................................................................3

*In re Facebook, Inc. Internet Tracking Litig.,*
 956 F.3d 589 (9th Cir. 2020)................................................................................ 3, 4

*Gen. Ele. Co. v. Joiner,*
 522 U.S. 136 (1997) (Motion )........................................................................................ 10

*In re Google Location History Litigation,*
 428 F. Supp. 3d 185 (N.D. Cal 2019)........................................................................3

*Hernandez v. Hillsides, Inc.,*
 47 Cal. 4th 272, 97 Cal.Rptr.3d 274, 211 P.3d 1063 (2009) ........................................................3

OPPOSITION TO MOTION TO EXCLUDE THE OPINIONS OF CATHERINE O'NEIL                 3:24-cv-02706-JD

*Hyer v. City & Cnty. of Honolulu*,
  118 F.4th 1044 (9th Cir. 2024) ..................................................................................................8

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
  605 F. Supp. 3d 1295 (N.D. Cal. 2022) .................................................................................. 10

*Jordan v. Filippone*,
  No. 20-20023-CIV, 2021 WL 1564430 (S.D. Fla. Apr. 21, 2021)..........................................8

*MediaTek inc. v. Freescale Semiconductor, Inc.*,
  No. 11-CV-5341 YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014) ..................................... 11

*Mighty Enters., Inc. v. She Hong Indus. Co.*,
  745 F. App'x 706 (9th Cir. 2018) ........................................................................................... 10

*Montgomery v. Mitsubishi Motors Corp.*,
  448 F. Supp. 2d 619 (E.D. Pa. 2006) ..................................................................................... 12

*Osborn v. Boeing Airplane Co.*,
  309 F.2d 99 (9th Cir. 1962) ......................................................................................................4

*OWLink Tech., Inc. v. Cypress Tech. Co.*,
  No. 821CV00717SPGKESX, 2023 WL 4291486 (C.D. Cal. Feb. 16, 2023) ......................... 11

*Parsons & Whittemore, Enters. Corp. v. Cello Energy, LLC*,
  No. CV 07-0743-CG-B, 2009 WL 10704774 (S.D. Ala. June 10, 2009)..................................9

*Perez v. Rash Curtis & Assocs.*,
  No. 16-CV-03396-YGR, 2019 WL 1491694 (N.D. Cal. Apr. 4, 2019) ................................. 11

*Porter v. Martinez*,
  68 F.4th 429 (9th Cir. 2023) .....................................................................................................2

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010).....................................................................................................1

*Reflex Media, Inc. v. SuccessfulMatch.com*,
  758 F. Supp. 3d 1046 (N.D. Cal. 2024) (Donato, J.)........................................................ 1, 2

*Siqueiros v. General Motors LLC*,
  No. 16-CV-07244-EMC, 2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ........................................6

*State Farm Gen. Ins. Co. v. Maytag Corp.*,
  No. C 04-02990 JW, 2005 WL 8177756 (N.D. Cal. Nov. 30, 2005) ..................................... 12

*Townsend v. Monster Beverage Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018) ...................................................................................8

*U.S. v. Cal.*,
  932 F.2d 1346 (9th Cir. 1991), *aff'd*, 507 U.S. 746 (1993)............................................... 4, 5

*Wendell v. GlaxoSmithKline LLC,*
    858 F.3d 1227 (9th Cir. 2017) ................................................................................................ 2, 5

*White v. Ford Motor Co.,*
    312 F.3d 998 (9th Cir. 2002)........................................................................................................7

**Other Authorities**

Fed. R. Evid. 701 ........................................................................................................................7

Fed. R. Evid. 702 ........................................................................................................... *passim*

OPPOSITION TO MOTION TO EXCLUDE THE OPINIONS OF CATHERINE O'NEIL    3:24-cv-02706-JD

## I.      INTRODUCTION

Defendant PowerSchool Holdings, Inc. moves to exclude the expert opinions of Plaintiffs' expert witness, Catherine O'Neil, Ph.D. *See generally* Dkt. 132 ("Motion"). In so moving, PowerSchool cites a handful of cases reflecting general principles of Rule 702 that are so broad as to be unhelpful in analyzing the arguments before the Court. PowerSchool's failure stands out because its arguments confirm that it merely raises issues for cross-examination, not challenges to admissibility. Ultimately, Dr. O'Neil's testimony carries each of Rule 702's expectations for expert testimony. First, she is qualified, a requirement PowerSchool does not contest. Her opinions—as presented by Dr. O'Neil, not as edited by PowerSchool— will help the jury understand PowerSchool's claims about its algorithms. Second, Dr. O'Neil bases her testimony on sufficient facts or data. Fed. R. Evid 702(b). PowerSchool's arguments that she fundamentally misunderstood certain evidence (a point Plaintiffs do not concede) are irrelevant at this stage as the issue goes to the weight, not admissibility. Finally, PowerSchool's miscellaneous attacks on the reliability of Dr. O'Neil's testimony (*i.e.*, its attacks on the accuracy of Dr. O'Neil's statements; her assumptions; and that she, like PowerSchool, did not test PowerSchool's algorithms because PowerSchool withheld the data), merely raise issues for cross examination, not admissibility under Rule 702. Because PowerSchool's attacks—at best—go to the weight to be placed on Dr. O'Neil's testimony, the motion to exclude should be denied in its entirety.

## II.      STANDARD OF REVIEW

PowerSchool omits key aspects of the standard of review applicable here. Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The "district judge is a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010) (internal quotation and citation omitted). "The touchstones for admissibility under Rule 702 are the relevance and reliability of the expert witness's opinions." *Reflex Media, Inc. v. SuccessfulMatch.com*, 758 F. Supp. 3d 1046,

1

1049 (N.D. Cal. 2024) (Donato, J.) (citation and quotation omitted). "The test of reliability is flexible, and the Court looks at whether the reasoning and methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (citation and quotation omitted). Importantly, "[t]he inquiry envisioned by Rule 702 is . . . a flexible one." *Porter v. Martinez*, 68 F.4th 429, 444 (9th Cir. 2023) (ellipsis in original, citations and quotations omitted). Ultimately, "Rule 702 should be applied with a liberal thrust favoring admission." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citations and quotations omitted). Against these standards, PowerSchool's motion to exclude must be denied.

### III.    BACKGROUND

PowerSchool misunderstands Plaintiffs' claims and the evidence needed to support them. This is not a data-breach case. Rather, this is a case about exceeding the scope of consent to generate, collect, use, share, and sell information about schoolchildren. Plaintiffs do not offer Dr. O'Neil's testimony to aid the jury in determining actual harm to Plaintiffs; they offer it to aid the jury in determining the *risk* of harm to Plaintiffs, which, as explained further below, relates to the issues of whether PowerSchool's conduct was highly offensive for the purposes of proving Plaintiffs' privacy claims, and whether PowerSchool's conduct was unfair or unjust for the purposes of proving Plaintiffs' quasi-contract claim.

Key facts are not in dispute. PowerSchool admits to collecting large volumes of information on schoolchildren. *See* Plaintiffs' Notice of Motion, Motion for Class Certification, and Memorandum of Points and Authorities in Support. Dkt. 119 ("Class Cert. Mot.") at 1–6. And it admits to sharing that information widely, with more than 213 third parties, and monetizing it. *See id.* at 2. All this is done without informed consent. Thus, Plaintiffs seek certification of claims for common law intrusion upon seclusion and invasion of privacy under the California Constitution, Class Cert. Mot. at 18–21, and a claim for unjust enrichment and disgorgement under a quasi-contract theory, *id.* at 21. These claims require, respectively, evidence that PowerSchool's privacy invasions are highly offensive and evidence that PowerSchool's actions are unjust.

**Privacy.** "To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion occurred in a manner highly offensive

to a reasonable person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286, 97 Cal.Rptr.3d 274, 211 P.3d 1063 (2009)) (cleaned up).

"A claim for invasion of privacy under the California Constitution involves similar elements. Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *Id.* (citing *Hernandez*, 47 Cal. 4th at 287). "Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Id.*

In determining liability under these claims, the jury must therefore assess, *inter alia*, whether the intrusion is highly offensive to a reasonable person. *In re Google Location History Litigation*, 428 F. Supp. 3d 185, 196 (N.D. Cal 2019) (cleaned up).

"Plaintiffs must show more than an intrusion upon reasonable privacy expectations. Actionable invasions of privacy also must be 'highly offensive' to a reasonable person, and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms.'" *Hernandez*, 211 P.3d at 1078 (citations omitted); *see* CACI No. 1800 (Right of Privacy) at 1123. Whether an alleged invasion is "highly offensive," "serious," or an "egregious breach of social norms" requires "holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *See In re Facebook*, 956 F.3d at 606. "While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id.*; *Hernandez*, 211 P.3d at 1073 (weighing the degree of offensiveness "essentially involves a 'policy' determination as to whether the alleged intrusion is 'highly offensive' under the particular circumstances").

**Quasi-contract/unjust enrichment.** For this claim, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016). The "unjust" element is satisfied when "defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing 55 Cal. Jur. 3d Restitution § 2). Quasi-contract liability is dictated by the

3

needs of justice and fairness, and rests upon equitable considerations. *See U.S. v. Cal.*, 932 F.2d 1346, 1350 (9th Cir. 1991), *aff'd*, 507 U.S. 746 (1993); *Osborn v. Boeing Airplane Co.*, 309 F.2d 99, 102 (9th Cir. 1962).

**Dr. O'Neil's report.** Plaintiffs retained Dr. O'Neil, a mathematician and data scientist "to look into and form an opinion on PowerSchool's claims of having built and offering to sell to school systems algorithms that will predict, among other things, a student's chances of graduating." O'Neil Report at 1 (filed as Def.'s Ex. B). While jurors may have heard of the term "algorithm," it has a particular connotation in this case, which Dr. O'Neil explains. *Id.* at 2. After discussing what an algorithm is, Dr. O'Neil details PowerSchool's offerings, and particularly the products at issue in this case, opining that each product would not function without the student data set forth in PowerSchool's documents and would have reduced functionality without that additional student data. *Id.* at 2–25.

Having established this background, Dr. O'Neil proceeds to counter the suggestion "that PowerSchool only provides a platform with which school systems can build their own predictions for graduation rates or likelihoods for individual students." *Id.* at 25. Applying her expertise, she notes that the evidence she reviewed supports the conclusion that "they [PowerSchool] do in fact provide algorithms." *Id.* at 25–26. She then provides a background on graduation predictions (*id.* at 26), explaining how PowerSchool's algorithms could be accurate yet harmful (*id.* at 27) and present a risk of being inaccurate and racially biased (*id.* at 27–28). All the while, Dr. O'Neil opines that PowerSchool does not test its algorithms for fairness (*id.* at 28) and identifies other risks that data sharing poses for students (*id.* at 28–29), including how public schools have purged low-performing students for more than a decade and its implication on graduation predictions (*id.* at 29). Finally, she explains that the PowerSchool algorithm could be and should be tested for bias and accuracy. *Id.* at 29–30.

In sum, Dr. O'Neil's opinions will help the jury understand how PowerSchool's prediction algorithms work and the risks they pose to students. As to Plaintiffs' privacy claims, Dr. O'Neil's testimony will allow the jury to determine whether it is highly offensive for PowerSchool to disclose or otherwise use the results of these prediction algorithms, when the algorithms nonconsensually process coercively collected student data, are not vetted for bias or accuracy, and may be used to significantly shape students' life outcomes. *See In re Facebook,* 956 F.3d at 606. As to Plaintiffs' quasi-contract claim, Dr. O'Neil's testimony

will allow the jury to determine whether it is unjust for PowerSchool to retain its profits from selling these unvetted products to schools. *Cal.*, 932 F.2d at 1350.

## IV.    ARGUMENT

Dr. O'Neil's opinions meet all admissibility requirements. As Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Nevertheless, PowerSchool makes two main arguments based on factual disputes, namely (1) that Dr. O'Neil's opinion "that PowerSchool offers untested, ready-made algorithms that risk being inaccurate or biased is unreliable" and (2) "that PowerSchool products need student data to function requires no expertise." Motion at 7. Because neither argument overcomes Rule 702's liberal policy favoring admission of Dr. O'Neil's testimony, the Court should deny PowerSchool's motion to exclude. *See Wendell*, 858 F.3d at 1232.

**A.    PowerSchool does not dispute Dr. O'Neil's qualifications.**

PowerSchool does not contest Dr. O'Neil's qualifications. *See generally* Motion at 7–15. It presumably did so for good reason, as Dr. O'Neil is qualified: she is a mathematician and data scientist, who received her Ph.D. in mathematics from Harvard University in 1999. O'Neil Report at 1. After teaching mathematics at MIT and Columbia College, she worked in finance as a quantitative analyst and risk researcher. *Id.* Thereafter, she became a data scientist, starting an algorithmic auditing company called ORCAA in 2016. *Id.* Since 2016, ORCAA has audited dozens of AI and other automated systems in high-stakes areas including credit, insurance, hiring, housing, and social media. *Id.* This work includes auditing algorithms for bias and accuracy. *Id.* at 29. Dr. O'Neil's background clearly qualifies her to opine on PowerSchool's claims about its algorithms. PowerSchool cannot argue otherwise on reply.

5

**B.      Dr. O'Neil's testimony is not simply that PowerSchool products use student data.**

Next, Dr. O'Neil's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," here understanding PowerSchool's claims about its algorithms, including issues of inaccuracy and bias. Fed. R. Evid. 702(a); O'Neil Report at 1. Still, using a truncated snippet of Dr. O'Neil's opinion divorced from critical context—that PowerSchool products require student data—PowerSchool argues this partial opinion requires no expertise and therefore should be excluded. Motion at 13 ("[I]t is unclear why any expertise, much less O'Neil's 'algorithmic auditing' experience, is needed for the statement that PowerSchool products require and use student data."); *id.* at 14 ("O'Neil's opinions about whether and to what extent PowerSchool products contain student data . . . are not expert opinions").

The Court should reject this strawman argument. While PowerSchool paints this subcomponent of her opinion as a simple one requiring no expertise, in reality, her full opinions are more complicated and reflect the application of her specialized knowledge and expertise to the facts of this case. Using PowerSchool's SIS product as an example, Dr. O'Neil's full opinion is not just that SIS 'requires student data' but also that "PowerSchool SIS would not function without the student data set forth in the DPIA, and would have reduced functionality without the additional student data set forth on the product documentation page." O'Neil Report at 7. The same applies for other products at issue. *See id.* at 9 (Schoology Learning); *id.* at 11 (Performance Matters); *id.* at 12 (Naviance); *id.* at 15 (MTSS); *id.* at 18 (Behavior Support); *id.* at 19 (Attendance Intervention). Thus, that "PowerSchool products require student data" lays the foundation for Dr. O'Neil's other opinions and her conclusions that the data is necessary for the products to function and that the products would have reduced functionality without that data.

One of PowerSchool's own cases dooms its argument here. Specifically, PowerSchool relies on *Siqueiros v. General Motors LLC,* No. 16-CV-07244-EMC, 2022 WL 74182, at *10 (N.D. Cal. Jan. 7, 2022). Motion at 14. But key language omitted from PowerSchool's case parenthetical via ellipses confirms that *Siqueiros* undermines PowerSchool's position because Dr. O'Neil did what Dr. Dahm did not—she applied her expertise. *See id.* ("Thus, the Court finds that the portions of Dr. Dahm's report which essentially summarize evidence already in the record *without the application of his expertise through reliable methodologies invade the province of the jury and are* not appropriate under Rule 702.") (emphasis added). Dr. O'Neil is

6

"entitled . . . to explain the facts on which she bases her opinions," *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 882 (N.D. Cal. 2025), which is all that PowerSchool attacks here. PowerSchool's manufactured arguments otherwise should be rejected.

Because Dr. O'Neil's actual opinion on data use involves the application of her expertise to PowerSchool's products, not simply opinions on issues that a jury is otherwise expected to know or determine independently, PowerSchool's cases differ from the facts here. *See White v. Ford Motor Co.,* 312 F.3d 998, 1008–09 (9th Cir. 2002) (certain testimony would be lay testimony as it was offered outside area of expertise); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020) (expert's testimony intruded on the province of the jury where the expert "impermissibly interprets the contractual provisions at issue in this case, she forms conclusions as to their effects on competition and states of mind of industry participants") (history omitted); *CZ Servs., Inc. v. Express Scripts Holding Co.*, No. 3:18-CV-04217-JD, 2020 WL 4518978, at *2 (N.D. Cal. Aug. 5, 2020) (certain opinions were "little more than reports of what Dr. Wooten personally saw in visits to various CZ Pharmacies locations, or in documents she reviewed about CZ Pharmacies' operations"); *Biotechnology Value Fund, L.P. v. Celera Corp.*, No. C 13-03248 WHA, 2015 WL 138168, at *1 (N.D. Cal. Jan. 9, 2015) (involving challenge "made to findings and opinions that purport to tell the jury what actually occurred in our case").

Finally, assuming *arguendo* that "PowerSchool products contain student data" is a fact which did not implicate expert opinion *and* that Dr. O'Neil did not subsequently apply her expertise to that fact, the Court would still have discretion to admit this testimony as lay witness testimony under Rule 701, as one of PowerSchool's cases recognize. *White,* 312 F.3d at 1008 ("For the part of Dr. Laird's opinion not requiring special training or experience, arguably the district court had discretion to admit the opinion under Federal Rule of Evidence 701.") (subsequent history omitted).

Because Dr. O'Neil's specialized knowledge will help the jury understand PowerSchool's algorithms and evaluate their attendant risks, Dr. O'Neil's testimony satisfies Rule 702(b).

**C.      Dr. O'Neil bases her testimony on sufficient facts and data.**

Dr. O'Neil also bases her testimony on sufficient facts or data. Fed. R. Evid 702(b). Dr. O'Neil used the types of evidence that experts in her field are expected to rely on, including publicly available information specific to PowerSchool and its products, PowerSchool's non-public confidential records,

PowerSchool's discovery responses, and deposition testimony. *See generally* O'Neil Report. Specifically, in its response to Plaintiffs' Interrogatory No. 6, which asked for the categories of data collected by each product, PowerSchool cited the DPIAs as identifying "the categories and uses of data" relating to each of its products. *See, e.g.*, Dkt. 119, Ex. 13 at p. 6–7 ("PowerSchool will produce, pursuant to Fed. R. Civ. P. 33(d), the Data Privacy Impact Assessments ('DPIAs') for each product identified in Interrogatory No. 1, which identify the categories and uses of data relating to each such product."). Dr. O'Neil's relied on this statement to form her understanding of PowerSchool's products and the data they collect and use.

Nevertheless, PowerSchool argues that Dr. O'Neil's "opinion is . . . flawed because it is based on a *fundamental misunderstanding* of PowerSchool's DPIAs," adding that her "purported opinion about how various PowerSchool products need student data is unnecessary and *inaccurate*." Motion at 13, 14 (emphases added). While Plaintiffs disagree substantively with PowerSchool's argument, that disagreement does not matter because whether Dr. O'Neil correctly or accurately understands the evidence is not a basis for exclusion.

Rule 702's sufficient facts or data element "requires foundation, not corroboration." *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1056 (9th Cir. 2024) (citation and quotation omitted). "In other words, the key inquiry under Rule 702 is whether an expert had sufficient factual grounds on which to draw conclusions, not whether the expert's hypothesis is correct or corroborated by other evidence on the record." *Id.* (citation and quotation omitted). Thus, "[w]eakness in the factual basis of an expert witness' opinion generally bear on the weight of the evidence rather than the admissibility." *Camenisch*, 763 F. Supp. 3d at 884 (citation and quotation omitted); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1039 (C.D. Cal. 2018) (collecting cases and noting "[t]he relative strength or weakness of the factual underpinnings of [expert] opinion, go to the weight of [the expert's] testimony, not its admissibility.").

Not surprisingly, courts reject the notion that an expert's factual misunderstanding, even a fundamental one, means exclusion. *See, e.g.*, *Jordan v. Filippone*, No. 20-20023-CIV, 2021 WL 1564430, at *4 n.4 (S.D. Fla. Apr. 21, 2021) ("Defendants accuse Mr. Quintero of having a fundamental misunderstanding of the basic facts in this case and that his opinions do not go hand in hand with the inferences he makes. . . . Defendants' actual complaint is that Plaintiff's allegations are false, but Defendants have failed to explain why that should result in the exclusion of an expert. If the standard was that easy, any defendant

would label a plaintiff's allegations as false and seek to exclude expert opinions and testimony. That is, of course, not the rule and for good reason."); *Alsadi v. Intel Corp.,* No. CV-16-03738-PHX-DGC, 2019 WL 4849482, at \*12 (D. Ariz. Sept. 30, 2019) ("Intel contends that certain opinions offered by [the expert] in section two of his report are inadmissible because they are factually incorrect and otherwise based on [the expert's] misunderstanding of the facts. . . . The parties can address their factual disagreements at trial, and Intel can object to any expert testimony it believes is inadmissible under Rule 702."); *Parsons & Whittemore, Enters. Corp. v. Cello Energy, LLC*, No. CV 07-0743-CG-B, 2009 WL 10704774, at \*4 (S.D. Ala. June 10, 2009) ("P&W argues that [the expert's] conclusions are unreliable because he misinterprets some of the facts—the contents of the NEWCO proposal—on which he bases his opinion. The court finds that P&W is criticizing [the expert's] conclusions, which is not grounds for excluding his expert opinions. P&W's concern is more properly the subject of cross-examination and contrary expert opinion and testimony than it is a successful premise for a *Daubert* motion.").

PowerSchool's reliance on its own expert report to present its case for what is purportedly accurate highlights the disputed factual nature of the issues it raises here. *See* Motion at 14 (citing Def.'s Ex. C., White Rebuttal Report); *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("A factual dispute is best settled by a battle of the experts before the fact finder, not by judicial fiat.").

**D.     Dr. O'Neil's testimony is the product of reliable principles and methods, reliably applied.**

Finally, Dr. O'Neil's testimony is the product of reliable principles and methods (Rule 702(c)), which she reliably applied to facts of the case (Rule 702(d)). Citing little case law, PowerSchool contends that Dr. O'Neil's "main opinion concerning the supposed risks of algorithms is unreliable because it is based on sheer speculation and untethered to the facts of this case." *See* Motion at 7–12.

First, PowerSchool argues that "there is nothing in the record to support O'Neil's claim that PowerSchool provides 'ready-made algorithms,' which it claims is a "false statement." Motion at 7. This argument fails for many reasons. As a threshold reason, PowerSchool again divorces Dr. O'Neil's opinion from its necessary context, which provides support for her conclusions along with the evidence she relied on in reaching her conclusion:

> In some statements, it might seem that PowerSchool does not provide ready-made algorithms, but only provides a platform with which school systems can build their own predictions for graduation rates or likelihoods for individual

9

> students. ***However, there is also evidence that they do in fact provide algorithms.*** There are two sources of evidence for this. First, their own webpage, and second, a training process they describe that uses an anonymized dataset called Cumberland….My conclusion is that PowerSchool offers their customers ready-made algorithms that predict the chances an individual student will graduate based on an opaque scoring system that depends on data that the school is to provide related to attendance, behavior, grades, standardized tests, and school credits.

O'Neil Report at 25 (emphasis added). For another, the assertion that Dr. O'Neil's assumption is unsupported bears on the weight to be afforded to this testimony. *See JH Kelly, LLC v. AECOM Tech. Servs., Inc.,* 605 F. Supp. 3d 1295, 1309 (N.D. Cal. 2022) (finding "that AECOM's assertion that [the expert] made an unsupported assumption and therefore reached faulty conclusions bears on the weight of his testimony, not its admissibility"). And by challenging Dr. O'Neil's conclusion as a "false statement," PowerSchool asks the Court to opine on whether Dr. O'Neil's opinions are right or wrong, which is not the Court's role. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,* 738 F.3d 960, 969–70 (9th Cir. 2013) ("The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury."). PowerSchool offers nothing that should cause this Court to depart from this body of law, and its only citation, *Gen. Ele. Co. v. Joiner*, 522 U.S. 136 (1997) (Motion at 9), merely restates a general standard.

Second, citing no cases, PowerSchool lodges two similar attacks on Dr. O'Neil's assumptions. PowerSchool declares that her opinion should be excluded because Dr. O'Neil purportedly "conceded that her statement that the 'ready-made algorithms' are 'based on an opaque scoring system' is an assumption from her general belief about all algorithms." Motion at 10. Relatedly, PowerSchool asserts that "O'Neil's statement that the algorithms used in PowerSchool's products carry risks of inaccuracy and bias is also just an assumption based on her general views" similarly requires exclusion. *Id.* However, without conceding the accuracy of PowerSchool's characterizations, these challenges simply "amount to impeachment." *Alaska Rent-A-Car,* 738 F.3d at 968–69 (noting defendant challenge to the expert's assumptions and comparisons while "colorable," did not "go to admissibility.").

"An expert can use assumptions, inferences, and comparisons." *Mighty Enters., Inc. v. She Hong Indus. Co.*, 745 F. App'x 706, 709 (9th Cir. 2018). "Such assumptions are admissible; their reliability is impeachable." *Id.* As a result, courts in this Circuit and District routinely recognize that similar challenges to

an expert's assumptions are matters of weight. *See, e.g.*, *In re Coll. Athlete NIL Litig.*, No. 20-CV-03919 CW, 2023 WL 8372788, at *5 (N.D. Cal. Nov. 3, 2023) (defendant's challenges to "assumptions do not go to admissibility"); *OWLink Tech., Inc. v. Cypress Tech. Co.*, No. 821CV00717SPGKESX, 2023 WL 4291486, at *2 (C.D. Cal. Feb. 16, 2023) (denying motions to exclude, noting "Plaintiff's arguments regarding [the expert's] report which, at bottom, are objections to [the expert's] assumptions, are more appropriately addressed through cross-examination."); *Perez v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2019 WL 1491694, at *5 (N.D. Cal. Apr. 4, 2019) (denying motion to exclude where movant argued expert's "methodology relied on a false assumption [which] goes to the weight, not the admissibility, of her opinion. The same is true of defendant's argument that the third-party sources [the expert] used provided inaccurate data."); *MediaTek inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 971765, at *2 (N.D. Cal. Mar. 5, 2014) ("Lawton appropriately disclosed, in advance, the factual basis and assumptions for her opinions. If at trial those are found to be inaccurate or ill-founded, then the jury may afford the opinion less weight, if any. However, it is not grounds for striking that portion of the anticipated testimony.").

Lastly, and again citing no cases, PowerSchool attacks Dr. O'Neil's statement "that PowerSchool could easily and cheaply test any algorithms, but it chooses not to," criticizing her opinion here because "she did not test any of PowerSchool's algorithms and provides no reason that she assumes such testing could be done at all, much less in a 'relatively easy and inexpensive' way." Motion at 11. That Dr. O'Neil did not test PowerSchool's algorithms merely aligns with PowerSchool's own failure to test its algorithms for fairness. *See* O'Neil Report at 28. Moreover, Dr. O'Neil explains why she did not audit PowerSchool's algorithm for bias and accuracy: "PowerSchool has not provided the data necessary for me to do this testing on its algorithm . . . ." *Id.* at 29. PowerSchool cannot use its failure to produce its own data as a shield during discovery, only use that failure as a sword to attack Dr. O'Neil's opinions under Rule 702.

In any event, PowerSchool presents nothing that would require the first-hand knowledge gained by actual testing for Dr. O'Neil's opinions to be admissible. In *Daubert v. Merrell Dow Pharms., Inc.*, the Supreme Court counseled that "[u]nlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." 509 U.S. 579, 592 (1993) (internal citations omitted). The proper place to contest an expert's purported failure to test is trial, particularly where, as here, Dr. O'Neil brings her years of algorithm auditing experience to bear in rendering

11

her opinions. *See, e.g.*, *Bardin v. Nissan Motor Co., Ltd.*, No. 1:21-CV-00144-GNS-HBB, 2023 WL 6392743, at *5 (W.D. Ky. Sept. 29, 2023) ("Considering these experts relied on numerous materials in forming their opinions, the factors they failed to test or consider go to the weight of their testimony. [Plaintiff] may question [the experts] on cross-examination regarding data they did not collect, but the alleged shortcomings do not negate the information that they *did* rely on.") (internal citations omitted, emphasis in original); *State Farm Gen. Ins. Co. v. Maytag Corp.,* No. C 04-02990 JW, 2005 WL 8177756, at *2 (N.D. Cal. Nov. 30, 2005) (rejecting argument "that [two experts'] reports should be excluded because they failed to test whether an electric current even existed in the wires when the machine was plugged in and not running"); *Montgomery v. Mitsubishi Motors Corp.*, 448 F. Supp. 2d 619, 629 n.7 (E.D. Pa. 2006) ("While the lack of actual testing may be a primary focus for [defendant's] counsel at trial, the Court sees the opinions set forth in [the expert's] report as the product of an experienced professional's review of certain documents and data related to the incident in dispute and that professional's subsequent opinion based upon that review."). Dr. O'Neil's challenged opinions are reliable and should not be excluded.

## V.    CONCLUSION

The Court should deny PowerSchool's motion to exclude the opinions of Catherine O'Neil, Ph.D. in its entirety. Plaintiffs further request the Court grant them all such other relief that the Court deems necessary and appropriate.

Dated: March 23, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  /s/ Leonard W. Aragon
Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602)840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

Attorneys for Plaintiffs

OPPOSITION TO MOTION TO EXCLUDE THE OPINIONS OF CATHERINE O'NEIL                    3:24-cv-02706-JD