Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705Tr.
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonarda@hbsslaw.com
toryb@hbsslaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY CHERKIN, et al., | Case No.: 3:24-cv-02706-JD |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT POWERSCHOOL HOLDINGS, INC.'S MOTION TO EXCLUDE THE OPINIONS OF CHRISTOPHER SCHULTE** |
| v. | |
| POWERSCHOOL HOLDINGS, INC., | |
| Defendant. | Judge: The Honorable James Donato |
| | Hearing |
| | Date: April 23, 2026 |
| | Time: 11:00 a.m. |
| | Courtroom: 11, 19th Floor |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................................... 1

II.     BACKGROUND ....................................................................................................................... 1

III.    STANDARD OF REVIEW ...................................................................................................... 2

IV.     ARGUMENT ............................................................................................................................ 3

    A.   Mr. Schulte's testimony is reliable and based on sufficient facts and data, including several probative agreements executed by PowerSchool. .......................................................................................... 3

    B.   Mr. Schulte's report will help the jury understand the evidence and determine the amount of actual damages .............................................................................................................................................. 7

    C.   Mr. Schulte's report is relevant and fits Plaintiffs' theory of the case. ...................................... 10

        1.   Mr. Schulte's actual damages opinions fit with Plaintiffs' intrusion upon seclusion claim. ... 10

        2.   Mr. Schulte's profit opinions fit within Plaintiffs' unjust enrichment case theory. ................. 12

    D.   Mr. Schulte did not abandon any analyses, arguments, or theories. ........................................... 14

    E.   PowerSchool identified no purported rebuttal opinions warranting a ruling now. .............................. 14

V.      CONCLUSION ....................................................................................................................... 15

OPPOSITION TO MOTION TO EXCLUDE THE OPINIONS OF CHRISTOPHER SCHULTE          3:24-cv-02706-JD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*,
  738 F.3d 960 (9th Cir. 2013)................................................................................................5

*Apodaca v. Costco Wholesale Corp.*,
  No. CV 12-5664 DSF (EX), 2013 WL 12171943 (C.D. Cal. Sept. 10, 2013) ................................................5

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
  No. C 13-03248 WHA, 2015 WL 138168 (N.D. Cal. Jan. 9, 2015)............................................................ 7, 8

*Camenisch v. Umpqua Bank*,
  763 F. Supp. 3d 871 (N.D. Cal. 2025) ...................................................................................... 15

*Castillo v. U.S.*,
  No. 2:22-CV-04390-KS, 2024 WL 5265644 (C.D. Cal. Apr. 24, 2024) ...................................................... 15

*Celebrity Cruises Inc. v. Essef Corp.*,
  434 F. Supp. 2d 169 (S.D.N.Y. 2006)......................................................................................5

*Cherkin v. PowerSchool Holdings, Inc.*,
  No. 24-CV-02706-JD, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025)........................................................ 12

*Clear Channel Outdoor, Inc. v. Bently Hldgs. Cal. LP.*,
  2011 WL 6099394 (N.D. Cal. Dec. 7, 2011) .............................................................................. 13

*In re Coll. Athlete NIL Litig.*,
  No. 20-CV-03919 CW, 2023 WL 8372788 (N.D. Cal. Nov. 3, 2023)..........................................................5

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014)..........................................................................................9

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007)..............................................................................................7

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
  No. 3:18-CV-04217-JD, 2020 WL 4518978 (N.D. Cal. Aug. 5, 2020)......................................................4

*Data Quill Ltd. v. High Tech Computer Corp.*,
  887 F. Supp. 2d 999 (S.D. Cal. 2011) ...........................................................................2, 3, 12

*Dietemann v. Time, Inc.*,
  449 F.2d 245 (9th Cir. 1971)............................................................................................ 11

*Doe v. Lee*,
  79 Cal. App. 5th 612 (Ct. App. 2022) ................................................................................... 11

*EchoSpan, Inc. v. Medallia, Inc.,*
No. 22-CV-01732 NC, 2023 WL 9502960 (N.D. Cal. Oct. 10, 2023) ........................................................ 12

*Est. of Taschek v. Fid. Life Ass'n,*
740 F. Supp. 3d 1072 (D. Nev. 2024) ...................................................................................... 14, 15

*In re Facebook, Inc. Internet Tracking Litig.,*
956 F.3d 589 (9th Cir. 2020) .................................................................................................... 13

*Fairfield v. Am. Photocopy Equip. Co.,*
138 Cal. App. 2d 82 (Ct. App. 1955) ................................................................................. 10, 11

*Fidelitad, Inc. v. Insitu, Inc.,*
No. 13-CV-3128-TOR, 2016 WL 7508843 (E.D. Wash. July 8, 2016) ..................................... 13

*Goodness Films, LLC v. TV One, LLC,*
2014 WL 12780291 (C.D. Cal. May 19, 2014) ............................................................................4

*Gray v. Cytokine Pharms., Inc.,*
2002 WL 853549 (Del. Ch. Apr. 25, 2002) ................................................................................4

*Klein v. Meta Platforms, Inc.,*
766 F. Supp. 3d 956 (N.D. Cal. 2025) .......................................................................................4

*Krueger v. Wyeth, Inc.,*
396 F. Supp. 3d 931 (S.D. Cal. 2019) ...................................................................................... 14

*Logantree, LP v. Fossil Grp., Inc.,*
No. 1:21-CV-00385-JDW, 2024 WL 5333342 (D. Del. May 7, 2024) .......................................6

*Lytle v. Nutramax Lab'ys, Inc.,*
114 F.4th 1011 (9th Cir. 2024) ...................................................................................................9

*Messick v. Novartis Pharm. Corp.,*
747 F.3d 1193 (9th Cir. 2014) .................................................................................................. 10

*Metabyte, Inc. v. Canal+Technologies, S.A.,*
No. C-02-05509 RMW, 2005 WL 6032845 (N.D. Cal. June 17, 2005) .....................................5

*Michery v. Ford Motor Co.,*
2017 WL 10362135 (C.D. Cal. Oct. 23, 2017) ....................................................................... 5, 6

*Miller v. Nat'l Broad. Co.,*
187 Cal. App. 3d 1463 (Ct. App. 1986) .................................................................................... 11

*Mission Viejo Florist, Inc. v. Orchard Supply Co.,*
No. SACV 16-01841, 2019 WL 13045054 (C.D. Cal. Feb. 28, 2019) ........................................6

*Pennington v. Tetra Tech, Inc.,*
No. 18-CV-05330-JD, 2024 WL 5213095 (N.D. Cal. Dec. 23, 2024) ........................................6

iii

*Porter v. Martinez,*
   68 F.4th 429 (9th Cir. 2023) ............................................................................................................2

*Primiano v. Cook,*
   598 F.3d 558 (9th Cir. 2010) ..........................................................................................................2

*Reflex Media, Inc. v. SuccessfulMatch.com,*
   758 F. Supp. 3d 1046 (N.D. Cal. 2024) ........................................................................................2

*Rodriguez v. Google LLC,*
   No. 20-CV-04688-RS, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ........................................ 4, 11

*Shulman v. Grp. W Prods., Inc.,*
   18 Cal. 4th 200 (1998) .................................................................................................................. 11

*Siqueiros v. General Motors LLC,*
   No. 16-CV-07244-EMC, 2022 WL 74182 (N.D. Cal. Jan. 7, 2022) .......................................5

*U.S., ex rel., Jordan v. Northrop Grumman Corp.,*
   No. CV 95-2985 ABC (EX), 2003 WL 27366224 (C.D. Cal. Jan. 6, 2003) ..........................8

*United States for Use & Benefit of Bergelectric Corp. v. Sauer, Inc.,*
   No. 5:18-CV-00612-EJD, 2020 WL 470273 (N.D. Cal. Jan. 29, 2020) ................................5

*Uzyel v. Kadisha,*
   188 Cal. App. 4th 866 (Cal. Ct. App. 2010) ............................................................................. 13

*Waymo LLC v. Uber Techs., Inc.,*
   No. C 17-00939 WHA, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ................................ 7, 8

*Wendell v. GlaxoSmithKline LLC,*
   858 F.3d 1227 (9th Cir. 2017) ........................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 26(a)(2) ........................................................................................................................2

Fed. R. Evid.702............................................................................................................................ *passim*

Restatement (Third) of Restitution and Unjust Enrichment § 51 (2011) ................................... 12

Fed. R. Evid. 705 ..................................................................................................................................7

## I.    INTRODUCTION

Defendant PowerSchool Holdings, Inc. moves to exclude the expert opinions of Plaintiffs' damages expert, Mr. Christopher Schulte. PowerSchool's arguments ignore relevant standards, focus on matters of weight not admissibility, misrepresent Mr. Schulte's work, and misconstrue California legal requirements. Mr. Schulte's testimony on damages meets all requirements of Fed. R. Evid. 702. PowerSchool does not challenge Mr. Schulte's qualifications under Rule 702, and Mr. Schulte's specialized knowledge, skill, experience, training, and education plainly qualify him to provide expert testimony on damages in this matter. The trier of fact is entitled to weigh for itself evidence provided by a qualified expert, and Mr. Schulte's testimony will assist the trier of fact in its determination of whether it is possible to identify and measure monetary relief tied to Plaintiffs' claims and, ultimately, the corresponding damages to Plaintiffs and the Class. Fed. R. Evid. 702(a). Mr. Schulte bases his testimony on the types of facts and data regularly used by valuation specialists and damages experts, including PowerSchool's contemporaneous internal business documents, publicly available financial information, and testimony of PowerSchool personnel and corporate designees. Fed. R. Evid. 702(b). Contrary to PowerSchool's arguments and misrepresentations, Mr. Schulte follows generally accepted methods for determining damages in this matter, reliably applies standard valuation principles, and ties his analyses and conclusions to the facts of this case. PowerSchool's motion to exclude Mr. Schulte should be denied in its entirety.

## II.    BACKGROUND

Christopher Schulte is a Managing Director in the Intellectual Property Practice of Ankura Consulting Group, LLC, a global business advisory and expert services firm. Expert Report of Christopher L. Schulte dated January 20, 2026 ("Schulte Rep.") ¶ 1 (filed as Exhibit A to Defendant's Motion). Since 2003, he has worked as a consultant focused on financial, economic, and strategic issues pertaining to intellectual property and other intangible assets, and he is regularly engaged to testify as a damages expert. *Id.* ¶¶ 2, 4. Plaintiffs retained Mr. Schulte "to provide expert analysis and testimony regarding the monetary relief that may be appropriate if liability is found against PowerSchool Holdings, Inc. ('PowerSchool') for the alleged wrongful conduct described in Plaintiffs' Complaint," including "the feasibility of identifying and quantifying certain measures of monetary relief tied to Plaintiffs' claims…." *Id.* ¶ 7. As he details in Section 7 of his report, Mr. Schulte opines "that the most appropriate and reliable bases for quantifying

1

PowerSchool's unjust enrichment from the alleged wrongful conduct are PowerSchool's contemporaneous financial documents," analyzing "PowerSchool's unjust enrichment attributable to the alleged wrongful conduct under the assumption that, in the absence of that conduct, PowerSchool would not have generated the revenues and attendant profits that it historically realized in connection with its *Data, Analytics & Insights, Performance Matters, Behavior Support,* and *Attendance Intervention* products." *Id.* at pp. 3–4. And as he details in Section 8 of his report, Mr. Schulte opines "that the analysis of actual damages in this matter is reasonably based on the value of the student data that PowerSchool allegedly aggregated and used without consent from – or compensation to – Plaintiffs and the Class Members." *Id.* at p. 5. He further opines that "the best indicators of that value are derived from the ███████████████████████████████████ ████████████████████████████████████████████████." *Id.* at pp. 5–6. As confirmed in his expert report, Mr. Schulte's analysis and testimony meet the requirements of Fed. R. Civ. P. 26(a)(2) and Fed. R. Evid. 702.

### III.    STANDARD OF REVIEW

PowerSchool omits key aspects of the standard of review applicable here. Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The "district judge is a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010) (internal quotation and citation omitted). "The touchstones for admissibility under Rule 702 are the relevance and reliability of the expert witness's opinions.'" *Reflex Media, Inc. v. SuccessfulMatch.com*, 758 F. Supp. 3d 1046, 1049 (N.D. Cal. 2024) (Donato, J.) (citation and quotation omitted). "The test of reliability is flexible, and the Court looks at whether the reasoning and methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (citation and quotation omitted). Importantly, "[t]he inquiry envisioned by Rule 702 is . . . a flexible one." *Porter v. Martinez*, 68 F.4th 429, 444 (9th Cir. 2023) (ellipsis in original, citations and quotations omitted). Ultimately,

"Rule 702 should be applied with a liberal thrust favoring admission." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citations and quotations omitted). Against these standards, Defendant's motion to exclude must be denied.

**IV.    ARGUMENT**

**A.    Mr. Schulte's testimony is reliable and based on sufficient facts and data, including several probative agreements executed by PowerSchool.**

PowerSchool launches its motion by arguing that Mr. Schulte's testimony should be excluded because it is not based on a reliable method, declaring that two methodological defects exist which mandate exclusion. Motion at 8–9. But his methods are reliable and not defective.

For its first so-called methodological defect, PowerSchool declares that Mr. Schulte's testimony should be excluded because he "relies on a single 'comparable' transaction" in supporting his damages estimate. Motion at 9. PowerSchool errs on both the facts and the law. As to the facts, and contrary to PowerSchool's representation to the Court, Mr. Schulte analyzed and relied on several PowerSchool agreements governing the monetization of student data to reliably arrive at his actual damages opinion. *See* Schulte Rep. §§ 8.1.1 (███████████████), 8.1.2 (███████████████), 8.1.3 (████████ ███████). In addition to these agreements, Mr. Schulte also analyzed and relied on testimony from PowerSchool's Chief Compliance officer (*id.* ¶ 129) and many of PowerSchool's contemporaneous documents that provide insights into ███████████████████████████████ ████████████████████████████ (*id.* ¶ 130). Mr. Schulte analyzed the escalating payment structures specified in the various PowerSchool agreements and detailed the reasoning underlying his conclusion that the most conservative of the available indicators—███████████ ██████████████████████████████—should be applied here. Moreover, Mr. Schulte "searched for other transactions," explaining that "[i]t's a fairly unique fact set here dealing with the exchange of data for minors" and that "[i]t's fair to say that I think that this is the best available evidence." Schulte Tr. 179:18-180:2 (filed at Exhibit B to Defendant's Motion unless otherwise noted). That PowerSchool created a market for this data (*id.* at 180:18–21) further supports Mr. Schulte's reliance on the underlying PowerSchool contracts quickly distinguishes this case from those PowerSchool relies upon. *Cf. Data Quill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1021–1022 (S.D. Cal. 2011) (excluding

3

expert for relying on patent licenses technologically but not economically comparable to those in suit); *Goodness Films, LLC v. TV One, LLC*, 2014 WL 12780291, *2–3 (C.D. Cal. May 19, 2014) (admitting opinions of screen credit valuation expert and new media fee expert on fact of damages, expert relied upon irrelevant comparisons); and *Gray v. Cytokine Pharms., Inc.*, 2002 WL 853549, *7-9 (Del. Ch. Apr. 25, 2002) (excluding petitioner's valuation expert for, among other things, using expert used comparable in different industries and much larger than the company at issue).

As to the law, this case parallels *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2024 WL 38302, at *12 (N.D. Cal. Jan. 3, 2024), which rejected a similar request for exclusion. In *Rodriguez*, users of third-party apps to which Google provided services brought a data privacy suit against Google, asserting three claims: invasion of privacy, intrusion upon seclusion, and violation of the Comprehensive Computer Data Access and Fraud Act. *Id.* at *1. Google sought to exclude the plaintiffs' damages expert, who, like Mr. Schulte here, "submitted a report to calculate class-wide unjust enrichment and actual damages." *Id.* at *1. The court in *Rodriguez* determined that, like Defendant here, Google "incorrectly characterize[d] the actual damages calculation as being randomly picked from a single survey." *Id.* at *12.

> In fact, [the expert] provided analysis and compared market studies to explain why he settled on the Screenwise panel and the $3 figure. He provided insight as to why the payments made by Google to the Screenwise participants offers a strong basis for an actual damages model. [The expert] explored other programs that pay users for their data, and ultimately generated a model based on an *actual, baseline* payment made by Google to track actual consumer data.

*Id.* at *12. As *Rodriguez* makes clear, actual damages models using a defendant's own data are admissible.

PowerSchool's two cases differ. Mr. Schulte's actual damages testimony does not involve relying "on just one transaction for a valuation determination of hundreds of millions of dollars" selected from a single online article and a potentially biased witness for the party offering the witness. *CZ Servs., Inc. v. Express Scripts Holding Co.*, No. 3:18-CV-04217-JD, 2020 WL 4518978, at *7 (N.D. Cal. Aug. 5, 2020). Instead, Mr. Schulte's basis is far stronger, relying upon PowerSchool's own executed agreements and records as indicators of the value of data similar to that at issue in this matter and within the unique market that PowerSchool itself created (Schulte Rep. ¶ 93; Schulte Tr. 180:18–21). This distinguishes the record here from *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956 (N.D. Cal. 2025) (Donato, J.), which involved "internal trial balloons that never ripened into serious proposals or an actual practice." *Id.* at 964. Mr. Schulte thus

relied on appropriate record materials. *See Siqueiros v. General Motors LLC*, No. 16-CV-07244-EMC, 2022 WL 74182, at *10 (N.D. Cal. Jan. 7, 2022) (finding damages expert's cost of repair figure to be "well-grounded" where "the figure itself is supported in the record by GM's own cost analysis"); *Apodaca v. Costco Wholesale Corp.*, No. CV 12-5664 DSF (EX), 2013 WL 12171943, at *5 (C.D. Cal. Sept. 10, 2013) (finding damages expert testimony "reliable and rigorous" where the expert reviewed the defendant's policies and databases to generate a damages estimate). Nor does *Metabyte, Inc. v. Canal+Technologies, S.A.*, No. C-02-05509 RMW, 2005 WL 6032845, at *1 (N.D. Cal. June 17, 2005), justify exclusion, as that case does not stand for what PowerSchool suggests it does. *Metabyte* involved an inapposite valuation methodology, one that compared an emerging company, the plaintiff, with one or more guideline companies to arrive at a relative valuation. *Id.* at *1. While the *Metabyte* court excluded the expert, it did so because he used an unreliable "direct ratio" method and chose a non-comparable guideline company, and not solely because that expert used one single guideline company in arriving at his valuation decision, as PowerSchool suggests. *Id.* at *3-6.

As to the second purported defect, PowerSchool disagrees that the comparators Mr. Schulte used are "in fact comparable." Motion at 9; *see also id.* at 4 ("poor comparator"). However, "[t]he selection of comparators will seldom approach the 'Utopian ideal' of identifying the perfect clone." *Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 189 (S.D.N.Y. 2006). Thus, challenges to an expert's comparators "go to the weight of the testimony and its credibility, not its admissibility." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969–70 (9th Cir. 2013); *see also In re Coll. Athlete NIL Litig.*, No. 20-CV-03919 CW, 2023 WL 8372788, at *5 (N.D. Cal. Nov. 3, 2023) ("Defendants' challenges to [expert's] comparators . . . do not go to admissibility and instead go to [ ] weight[.]"); *United States for Use & Benefit of Bergelectric Corp. v. Sauer, Inc.*, No. 5:18-CV-00612-EJD, 2020 WL 470273, at *2 (N.D. Cal. Jan. 29, 2020) ("[E]xperts' decisions about what data to use in their analysis bear on the weight, not the admissibility, of expert testimony.") (citation and quotation omitted); *Michery v. Ford Motor Co.*, 2017 WL 10362135, at *3 (C.D. Cal. Oct. 23, 2017) ("Whether [the expert] relied on facts Defendant[s] disagree[ ] with," specifically data on comparators, "does not affect the admissibility of his testimony.").

*Orshan v. Apple Inc.* is instructive. No. 5:14-CV-05659-EJD, 2024 WL 4353034, at *1 (N.D. Cal. Sept. 30, 2024). There, the plaintiff's expert relied on the use of comparators (there, other devices made by the defendant) in reaching a damages opinion. *Id.* at *4-5. The defendant tried to exclude that testimony,

OPPOSITION TO MOTION TO EXCLUDE THE OPINIONS OF CHRISTOPHER SCHULTE        3:24-cv-02706-JD

offering a litany of attacks on the expert's choice of comparators like does PowerSchool here. *Id.* Applying settled law that "observations about the choice of comparators are not fatal to [the expert's] models," the court ruled that "arguments about comparator devices go to weight, not admissibility, and they are better directed to the jury as factfinder, not to the Court as gatekeeper." *Id.* at *5 (citing *Southland Sod Farms. v. Stover Seed Co.*, 180 F.3d 1134, 1143 n.8 (9th Cir. 1997)). So too here. This outcome applies even where a defendant thinks the comparator is wrong. *Pennington v. Tetra Tech, Inc.*, No. 18-CV-05330-JD, 2024 WL 5213095, at *2 (N.D. Cal. Dec. 23, 2024) (Donato, J.) ("[D]efendants' main contention is that [the expert's] choice of index was wrong because it measures different types of homes than those present at the shipyard and also measures non-representative neighborhoods. That is not a basis for exclusion. The details of what [the expert] did or didn't take into account in running his analysis . . . may be grist for a good cross-examination at trial, but they do not play a material role in deciding whether [the expert's] work should be admitted under Rule 702.") (citations and quotations omitted). Defendant's only case in support of this argument, *Mission Viejo Florist, Inc. v. Orchard Supply Co.*, No. SACV 16-01841, 2019 WL 13045054, at *4 (C.D. Cal. Feb. 28, 2019), involved lost revenue calculations not at issue here and does not justify disregarding Ninth Circuit precedent.

PowerSchool also asserts that its agreements analyzed by Mr. Schulte were purportedly "unimplemented" and that this means they cannot be relied upon here. Motion at 10. That PowerSchool ███████████████████████████████████████████████████████ (Schulte Rep. ¶ 127), speaks volumes of their applicability here and does not undermine the fact that PowerSchool negotiated, executed, and implemented certain of the arrangements specified in the agreements analyzed and relied upon by Mr. Schulte. Regardless, even an expert's construction and application of a hypothetical transaction would not serve to automatically bar an expert's damages testimony. *See Logantree, LP v. Fossil Grp., Inc.*, No. 1:21-CV-00385-JDW, 2024 WL 5333342, at *2 (D. Del. May 7, 2024) (rejecting motion to exclude expert testimony as going to the weight of testimony where the expert's "methodology includes inherently imprecise methods, such as . . . using distinguishable comparator cases," where the expert conducted a hypothetical negotiation, and even where the "but-for nature of a hypothetical negotiation ma[de] it somewhat speculative"). PowerSchool's reliability arguments must be rejected.

**B.     Mr. Schulte's report will help the jury understand the evidence and determine the amount of actual damages.**

Experienced valuation and damages experts like Mr. Schulte routinely "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), including, for example, whether there is an appropriate or reliable basis for quantifying class-wide damages. Schulte Rep. § 4. Defendant focuses its argument in this section exclusively on Mr. Schulte's actual damages opinion—not his separate unjust enrichment opinion—arguing that Mr. Schulte's actual damages opinion fails *Daubert* "because the entire analysis reduces to reciting the terms of one uncompleted transaction he found in the documentary record and labeling the number 'actual damages.'" Motion at 10.

In reality, the terms that Mr. Schulte cites to arrive at his actual damages conclusion reflect the collection of data necessary to show the logic behind his testimony: "██████████████████ ████████████████████████████ ████████████████████████████" Schulte Report ¶ 128. *See also id.* ¶ 132 (explaining that PowerSchool's agreements are the "best indicators of the value of that data to Plaintiffs and Class Members" and that "this implied minimum revenue to PowerSchool represents a conservative and reasonable measure" of actual damages per Plaintiff and Class Member). Further, and contrary to PowerSchool's claim that Mr. Schulte merely recited terms, Mr. Schulte undertook a detailed analysis of ████████████████████████ ██ (Schulte Rep. ¶¶ 95–130). He independently identified and calculated the ████████████ ████████████████████████ ████████████████████. *Id.* at ¶¶ 96–98, 106–109, 116–120. Though Mr. Schulte may "state an opinion – and give the reasons for it – without first testifying to the underlying facts or data," Rule 705, his report shows his opinion is "based on sufficient facts or data." Fed. R. Evid. 702(b). By providing the factual basis underlying his damage opinions, he avoided an impermissible presentation of "unsubstantiated speculation and subjective beliefs." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

Neither *Biotechnology Value Fund, L.P. v. Celera Corp.*, No. C 13-03248 WHA, 2015 WL 138168, at *1 (N.D. Cal. Jan. 9, 2015), nor *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 5148390, at *5

7

(N.D. Cal. Nov. 6, 2017), compel a different outcome. In *Biotechnology Value Fund*, the movant challenged certain "findings and opinions that purport to tell the jury what actually occurred in [the] case." 2015 WL 138168 at *1. Mr. Schulte did no such thing, he exercised caution to flag his assumptions and to avoid intruding into the jury's realm. *See, e.g.*, Schulte Rep. at p. 4 (noting how certain questions are for the trier of fact); ¶ 8 (explaining assumptions of liability as a precursor of his opinion and that he offers no opinions on liability issues); ¶¶ 10, 135 (describing how his model can be adjusted based on findings by a jury). *Waymo* is even further afield. 2017 WL 5148390, at *5. *Waymo* involved testimony relating to unjust enrichment and reasonable royalty from a witness who brought "no specialized knowledge to the table." *Id.* The witness in *Waymo* was "an inactive CPA and inactive lawyer . . . [who] simply adopted the opinions of others and performed grade-school arithmetic counsel can do on an easel." *Id.* In stark contrast, PowerSchool does not contest Mr. Schulte's qualifications, as Mr. Schulte has consulted on financial, economic, and strategic issues pertaining to intellectual property and other intangible assets, including investigations in class action matters relating to corporate data breaches and data privacy violations. Schulte Rep. ¶ 2. Far from merely parroting others' opinions, Mr. Schulte considered and opined on the feasibility of identifying and quantifying measures of monetary relief specifically tied to Plaintiffs' claims. *Id.* ¶ 7. To arrive at his actual damages opinions, Mr. Schulte relied on assumptions of liability, reviewed evidence, and applied his years of valuation experience, as competent damages experts are expected to do, thus avoiding the missteps made by the purported experts in *Biotechnology Value Fund* and *Waymo*. Ultimately, Mr. Schulte applied his valuation expertise to opine that ██████████████████████████ provide conservative and reasonable measures of the financial consideration for PowerSchool's alleged wrongful aggregation and use of the data of Plaintiffs and the Class Members without their consent. Schulte Rep. ¶¶ 131–132. Notably, the ████████████████████████████████████████████████, and Mr. Schulte testified that he and his team spent hundreds of hours analyzing the issues here. *Id.*; Schulte Tr. 17:15–18:4. *See U.S., ex rel., Jordan v. Northrop Grumman Corp.*, No. CV 95-2985 ABC (EX), 2003 WL 27366224, at *6 (C.D. Cal. Jan. 6, 2003) ("[The expert]'s reliance on assumptions provided by counsel or other experts is not a bar to her testimony. [The expert] has performed damages calculations as an accountant, based on the review of evidence provided by the Government's other experts and assumptions

provided by the Government's counsel. She has applied to her calculations her knowledge and experience as an auditor.").

PowerSchool next argues that "the result of [Mr.] Schulte's calculation is neither a maximum nor average valuation, but rather a minimum 'estimate' with no guidance as to how to calculate a final damages figure." Motion at 10. In fact, Mr. Schulte details his opinion that actual damages can be conservatively calculated by multiplying an actual damages amount of no less than ▉▉ times the number of identified Class Members. Mr. Schulte explained the reasonableness of calculating damages class wide as ▉▉ per Class Member per year of PowerSchool product use. Schulte Rep. ¶ 133. *See id.* (" . . . I understand that data sufficient to determine the number of years during which a Class Member used PowerSchool products is not available as of the date of this report."). Mr. Schulte's actual damages number identifies a common method for quantifying individual damages: ▉▉ per Class Member, consistent with Plaintiffs' burden. *See* 4 Newberg and Rubenstein on Class Actions § 12:4 (6th ed.) ("The class proponents' task . . . is to demonstrate a *method* for quantifying *individual* damages that applies across the board and hence is *common* to the class: a common classwide method for calculating individual damages.") (emphasis in original). Mr. Schulte explained that the quantification of damages "would [multiply] the number of individuals in the class by the damages measure that I've identified in my report." Declaration of Leonard W. Aragon ("Aragon Decl."), Ex. 1 at 158:8–14. All the while, Defendant omits Mr. Schulte's clarification that his "ultimate conclusion that it's -- that it would be reasonable to quantify actual damages with the ▉▉▉, I look at that as a conservative minimum." Schulte Tr. 236:4–6. Because he opines about the conservative minimum, he does not have an opinion on maximum damages or average damages (and PowerSchool identifies no legal requirement that he have such opinions). *Id.* at 236:7–13. Once the size of the class is determined, the trier of fact can readily apply Mr. Schulte's minimum damages number to calculate total actual damages.

PowerSchool's reliance on *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014), under which PowerSchool contends "the expert just described methodologies for calculating damages without actually undertaking the calculation," provides no basis for exclusion. Motion at 10–11. Where, as here, the methodology is reliable, an expert need not actually apply the model to show damages at class certification, which the Ninth Circuit recently confirmed. *See Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1019 (9th Cir. 2024) ("[T]here is no general requirement that an expert actually apply to the proposed class an otherwise

9

reliable damages model in order to demonstrate that damages are susceptible to common proof at the class certification stage. Rather, we hold that class action plaintiffs may rely on a reliable though not-yet-executed damages model to demonstrate that damages are susceptible to common proof so long as the district court finds that the model is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial."). Mr. Schulte's calculations will undoubtedly help the trier of fact.

**C.    Mr. Schulte's report is relevant and fits Plaintiffs' theory of the case.**

Although "[t]he relevancy bar is low," expert testimony must have "a valid connection to the pertinent inquiry." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196–97 (9th Cir. 2014). Mr. Schulte's testimony easily connects to the inquiry at issue here, the calculation of damages for alleged privacy violations. Still, PowerSchool falsely argues that Mr. Schulte's opinions are untethered to Plaintiffs' liability theories. Motion at 11. Importantly, PowerSchool makes no arguments regarding Mr. Schulte's testimony as tethered to Plaintiffs' privacy claim under the California Constitution. *See generally* Motion at 11–14. Mr. Schulte's opinions present no issue of fit as his damages model follows Plaintiffs' liability theories. Unlike in *Comcast Corp. v. Behrend*, Plaintiffs' proposed damages model is tied to live theories of liability, not multiple theories no longer at issue. *See* 569 U.S. 27, 36-37 (2013).

**1.    Mr. Schulte's actual damages opinions fit with Plaintiffs' intrusion upon seclusion claim.**

After misconstruing the legal background, PowerSchool declares that Mr. Schulte bases his actual damages calculation not on the "non-economic harm to the putative class or any out-of-pocket losses" but on "a (very flawed) valuation of student data." Motion at 12. PowerSchool ignores the flexibility inherent in California law to provide a remedy to those aggrieved by a defendant's privacy violation, which includes actual damages like those addressed by Mr. Schulte. *See* Cal. Jury Instr.--Civ. 7.26 (discussing intrusion of privacy damages as including "1. Any harm to the plaintiff's interest in privacy resulting from the invasion, namely [injury to one's feelings or peace of mind]; [and] 2. Any mental or emotional distress caused by the invasion, if it is of a kind that normally results from such an invasion[;] [and] 3. Special damages caused by the invasion," which includes "the amount of *actual damage* which is a natural consequence of the invasion of privacy") (emphasis added, first bracketed language filled in per instruction use note). Since at least *Fairfield v. Am. Photocopy Equip. Co.*, 138 Cal. App. 2d 82, 88–89 (Ct. App. 1955), California has long recognized that privacy damages are flexible, not limited to emotional distress, and include general and special damages. *Id*

("The fact that damages resulting from an invasion of the right of privacy cannot be measured by a pecuniary standard is not a bar to recovery. While special damages may be recovered if sustained, general damages may be recovered without a showing of specific loss."). Defendant's case, *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1484 (Ct. App. 1986), followed *Fairfield* and its recognition that privacy damages would include, but are not limited to, mental suffering type damages. *See id.* ("The Court of Appeal [in *Fairfield*] declared that because the interest involved privacy, the damages flowing from its invasion logically would include an award for mental suffering and anguish."). Thus, both past and future economic damages are available in intrusion privacy cases. *See Doe v. Lee*, 79 Cal. App. 5th 612, 617, 623-24 (Ct. App. 2022) (affirming the judgment of the trial court that "awarded the respondents a total of $24,758 in past and future economic damages and $800,000 in noneconomic damages" but remanding to vacate the $230,400 punitive damages award); *see also Dietemann v. Time, Inc.*, 449 F.2d 245, 250 (9th Cir. 1971) (suggesting that use of information obtained through a privacy violation enhances damages: "No interest protected by the First Amendment is adversely affected by permitting damages for intrusion to be enhanced by the fact of later publication of the information that the publisher improperly acquired."); *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 240 n.18 (1998) (subsequent history omitted) (*Dietemann* "allow[s] publication damages in intrusion case").

Again, *Rodriguez*, 2024 WL 38302, at *1, is helpful. Consistent with Cal. Jury Instr.--Civ. 7.26, in calculating damages, the expert considered the actual damages to class members based on the market for their data, including "(a) Google's payments for user data, (b) Users' willingness to pay to prevent data collection; and (c) Research organizations' willingness to pay for data collection." *Id.* at *11. The expert settled on an actual damages valuation of a one-time $3 payment to the number of class member devices based upon the research organization data (totaling approximately $486 million). *Id.* at *1. The court granted class certification and denied the motion to exclude the opinion of plaintiffs' damage expert. *Id.* at *13. This result applies here too. PowerSchool's argument that Mr. Schulte's actual damages analysis does not "fit" with Plaintiffs' invasion of privacy claim must be rejected. Motion at 11.

OPPOSITION TO MOTION TO EXCLUDE THE OPINIONS OF CHRISTOPHER SCHULTE     3:24-cv-02706-JD

**2.  Mr. Schulte's profit opinions fit within Plaintiffs' unjust enrichment case theory.**

Likewise, Defendant argues that Mr. Schulte's unjust enrichment calculation "fails the fit test because Schulte did not try to measure PowerSchool's revenues from the allegedly wrongful conduct" at issue here. Motion at 13. Yet again, PowerSchool's argument fails on the law and the facts.

Starting with the law, in the unjust enrichment context, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense.'" *Cherkin v. PowerSchool Holdings, Inc.*, No. 24-CV-02706-JD, 2025 WL 844378, at *7 (N.D. Cal. Mar. 17, 2025) (quoting *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016)). PowerSchool's argument is clearly an issue for cross examination, not exclusion, as it disputes issues of apportionment. *See EchoSpan, Inc. v. Medallia, Inc.*, No. 22-CV-01732 NC, 2023 WL 9502960, at *2 (N.D. Cal. Oct. 10, 2023) (rejecting argument that expert's unjust enrichment opinions were "unreliable because he failed to apportion among the trade secrets that EchoSpan identified are at issue or between such trade secrets and the non-infringing portions of Medallia's tool," holding arguments could be "be pursued through vigorous cross-examination, competing evidence, and argument, but that none amounts to a reason to exclude" the expert).

On the facts, PowerSchool's argument misconstrues Mr. Schulte's work, which correctly measures PowerSchool's profits from the wrongful conduct. Here, Mr. Schulte detailed the alleged wrongful conduct (Schulte Rep. ¶ 61) and, applying the record and other information, "analyzed PowerSchool's unjust enrichment attributable to the alleged wrongful conduct under the assumption that, in the absence of that conduct, PowerSchool would not have generated the revenues and attendant profits that it historically realized in connection with its *Data, Analytics & Insights*, *Performance Matters*, *Behavior Support*, and *Attendance Intervention* products." *Id.* ¶ 66. He analyzed PowerSchool's relevant product revenues (*id.* ¶¶ 67–76), identified, analyzed, and deducted corresponding expenses (*id.* ¶¶ 77–86). And because his "calculations of PowerSchool product-specific expenses [were] based on PowerSchool's global business, [he] made further adjustments to tailor the unjust enrichment calculation to the proposed class definitions." *Id.* ¶ 87. And, along the way, he limited PowerSchool's unjust enrichment to the *Data, Analytics & Insights*, *Performance Matters*, *Behavior Support*, and *Attendance Intervention* products to the United States, in alignment with the class definition. *Id.* ¶¶ 90–91. To the extent PowerSchool believes further offsets are necessary, that is its burden to carry. Restatement (Third) of Restitution and Unjust Enrichment § 51 (2011) ("A claimant who seeks

12

disgorgement of profit has the burden of producing evidence permitting at least a reasonable approximation of the amount of the wrongful gain. Residual risk of uncertainty in calculating net profit is assigned to the defendant."). Confirming that PowerSchool's contentions go to weight not admissibility, PowerSchool's own expert adopted and validated Mr. Schulte's methodology in her February 6, 2026 rebuttal report, but proposed additional measures of expense and purported apportionments for product functions. Aragon Decl. Ex. 2 (Bartlett Report, Feb. 6, 2026, Ex. 5). Following Mr. Schulte's methodology but supplanting various inputs with her opinion of other expenses and deductions, Ms. Bartlett calculates alternative unjust enrichment values of ███████████████. *Id.*

PowerSchool's cited authorities provide no grounds for exclusion. First, PowerSchool cites *Uzyel v. Kadisha*, 188 Cal. App. 4th 866 (Cal. Ct. App. 2010), which concerned post-trial motion practice on a statutory and procedural issue not applicable here, not admissibility of expert opinion. *Id.* at 878-79. PowerSchool, moreover, misstates the case's tracing argument. *See id.* at 891 ("The Uzyels contend the trial court erroneously required tracing in order to support an award of the disgorgement of profits made by Kadisha through his breach of trust under section 16440, subdivision (a)(2). The Uzyels contend this was legal error. We conclude that tracing is not required to support an award of the disgorgement of profits under the statute and that the trial court did not conclude to the contrary, so the Uzyels have shown no legal error.").

Next, PowerSchool cites *Clear Channel Outdoor, Inc. v. Bently Hldgs. Cal. LP.*, 2011 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011), as holding that a defendant must obtain a benefit from plaintiff for unjust enrichment. Motion at 14. Here, there is no credible dispute that PowerSchool did receive a benefit: student data.

Third, *Fidelitad, Inc. v. Insitu, Inc.*, No. 13-CV-3128-TOR, 2016 WL 7508843, at *1 (E.D. Wash. July 8, 2016), which found that the "value of services" was the proper damages measure for the plaintiff's unjust enrichment claim, considered the boundaries of Washington law. *Id.* at *5. *See also id.* at *4 ("The Court observes, as to quasi contract and unjust enrichment claims, there is no jury instruction providing for disgorgement of profits, indicating this must be a rare remedy for Washington courts."). But "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir.

13

2020). Finally, PowerSchool relies on *Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 954-55 (S.D. Cal. 2019), but only its analysis of an out-of-pocket refund model as it related to "monies taken directly from persons who were victims of the alleged unfair practice." *Id.* at 955. PowerSchool ignores the second damages scenario also approved in *Kruger*, *i.e.*, the one which aligns with Mr. Schulte's analysis. *See id.* at 940 (discussing "the *Wyeth Profit* (i.e., *Restitutionary Disgorgement*) scenario, based on profit and loss statements produced by Defendants," which "offer[ed] the 'total net profits earned as a result of sales of Premarin, Premphase and Prempro to California consumers during the class period'") (emphasis in original). *See also id* at 956 (concluding that the "*out-of-pocket* refund model and *Wyeth Profit* model, provide a reasonable basis and constitute a suitable method under Plaintiff's theory of liability by which to calculate restitutionary disgorgement.") (emphases in original). PowerSchool's argument that Mr. Schulte's unjust enrichment analysis does not "fit" with Plaintiffs' unjust enrichment claim fails.

**D.    Mr. Schulte did not abandon any analyses, arguments, or theories.**

In an argument unsupported by caselaw, PowerSchool asks that the Court preclude Mr. Schulte "from offering any opinion that he can identify potential class members, calculate actual damages classwide, or apportion damages among class members," falsely claiming that Mr. Schulte abandoned such opinions. Motion at 14. PowerSchool's argument stands in direct conflict with statements identified in Mr. Schulte's report (Schulte Rep. § 9) and his deposition (Schulte Tr. 142:22–144:5) as an assumption requested by counsel and reasonably based on Schulte's professional experience. Moreover, Mr. Schulte explained that the measurement applies cleanly to "the number of individuals in the class by the damages measure that I've identified in my report." Aragon Decl., Ex. 1 at 158:8–19. PowerSchool's abandonment argument should be rejected.

**E.    PowerSchool identified no purported rebuttal opinions warranting a ruling now.**

Finally, the Court should deny PowerSchool's request for an advisory opinion as to purportedly undisclosed rebuttal opinions. Motion at 15 (declaring generically that "Schulte suggested (though did not further explain) that he had rebuttal opinions not contained in his report"). Having opinions about another expert's work (Schulte Tr. 15:25–16:2), provides no ground for this Court to issue a blanket ruling without treading on the scope of permissible testimony. PowerSchool's request is like that presented in *Est. of*

14

*Taschek v. Fid. Life Ass'n*, 740 F. Supp. 3d 1072 (D. Nev. 2024), in which the court denied a defendant's attempt to preclude all of an allegedly untimely expert rebuttal testimony:

> But excluding anything that merely relates to his rebuttal report would be overly broad relief and likely sweep up most (if not all) of the opinions in [the expert's] timely initial report. And while [the expert's] short rebuttal report may have raised some new points, he also provides opinions in it that overlap with those provided in his initial report. So at the appropriate time [defendant] must file a motion in limine specifying what topics or opinions it believes should be off limits at trial.

*Id.* at 1082 n.56 (internal citation omitted). Without identifying the specific opinion, the Court cannot evaluate whether they were in fact disclosed. *See, e.g.*, *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 883 (N.D. Cal. 2025) ("To the extent Ghiglieri offers any other opinions at trial that were not properly disclosed, Umpqua may object to her testimony on that basis at trial. As noted at the pretrial conference, should a party object to an expert witness's testimony on the ground that it was not properly disclosed, the Court expects counsel for the party offering that expert witness to immediately identify, by page and paragraph number of the expert report, where the opinion at issue was disclosed."). PowerSchool's citation identified particular testimony via a motion in limine. *See Castillo v. U.S.*, No. 2:22-CV-04390-KS, 2024 WL 5265644, at *1 (C.D. Cal. Apr. 24, 2024) (granting motion in limine and excluding "any rebuttal of Dr. Samakar's opinions regarding the standard of care and causation").

And, PowerSchool reasonably cannot seek to bar Mr. Schulte's disagreements with Bartlett's work specific to the opinions advanced in her February 6 rebuttal report, particularly where the schedule in this matter did not provide opportunity for surrebuttal reports. This final argument should be denied.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court deny PowerSchool's motion to exclude the expert opinions of Christopher Schulte in its entirety. Plaintiffs further request that the Court grant them all such other relief that the Court deems necessary and appropriate.

Dated: March 23, 2026                    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  /s/ Leonard W. Aragon
Leonard W. Aragon (*pro hac vice*)

15

E. Tory Beardsley (*pro hac vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602)840-5900
leonarda@hbsslaw.com
toryb@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

Attorneys for Plaintiffs

OPPOSITION TO MOTION TO EXCLUDE THE OPINIONS OF CHRISTOPHER SCHULTE          3:24-cv-02706-JD