Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
904 Rio Grande St. Suite 100
Austin, Texas 78701
Telephone: 512-200-8028
julie.liddell@edtech.law
andrew.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

*Counsel for Plaintiffs and the Putative Class Members*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMILY CHERKIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>Defendant. | Case No.: 3:24-cv-02706-JD<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON POWERSCHOOL'S CONSENT DEFENSES**<br><br>Judge: The Honorable James Donato<br><br>Hearing<br>Date: May 21, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11, 19th Floor |

**TO THE COURT, DEFENDANT, AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 21, 2026, at 11:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 11, 19th Floor of the Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs move the Court for an Order under Federal Rules of Civil Procedure 56 that:

(1) as a matter of law, FERPA does not provide a private defense to the alleged conduct;

(2) there is no evidence that schools are parents' agents for the purpose of obtaining parents' express or implied consent to the alleged conduct;

(3) PowerSchool's contracts with its school customers are not evidence that schools did, in fact, obtain express parent consent to the alleged conduct; and

(4) there is no evidence that parents impliedly consented to the alleged conduct.

Dated: April 14, 2026

Respectfully submitted,

EDTECH LAW CENTER PLLC

By /s/ W. Andrew Liddell

Julie Liddell (*pro hac vice*)
W. Andrew Liddell (*pro hac vice*)
904 Rio Grande St. Suite 100
Austin, Texas 78701
Telephone: (512) 200-8028
julie.liddell@edtech.law
andrew.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602)840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

*Attorneys for Plaintiffs and the Putative Class Members*

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARDS ........ 3

IV. ARGUMENT ........ 4

A. As a matter of law, FERPA does not create any private defenses, including a consent defense. ........ 4

1. FERPA was enacted to protect student privacy by requiring parental consent to disclosure of student information. ........ 4

2. The text of FERPA establishes that FERPA does not create a private defense. ........ 5

3. FERPA's legislative history precludes invocation of FERPA as a private defense. ........ 7

4. Construing FERPA as creating a private defense would frustrate its purpose. ........ 8

5. FERPA does not preempt more protective state law. ........ 9

B. No evidence shows that schools consent on behalf of parents as their agents. ........ 10

1. Creation of an agency relationship requires a manifestation of assent by the principal. ........ 10

2. No evidence shows that parents authorized schools to act as their agent. ........ 11

C. Evidence that schools contractually agree to obtain parental consent does not establish that effective consent was obtained. ........ 12

D. No evidence supports a finding of implied parental consent to PowerSchool's conduct ........ 13

1. Consent requires a manifestation of assent for conduct to occur. ........ 13

2. No evidence shows that parents manifested assent to PowerSchool's conduct through silence or inaction. ........ 14

V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Addisu v. Fred Meyer, Inc.*,
198 F.3d 1130 (9th Cir. 2000) ....................3

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................3

*Calhoun v. Google, LLC,*
113 F.4th at 1147 (9th Cir. 2024) ....................13, 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................3

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
No. 3:18-cv-04217-JD, 2020 WL 4368212 (N.D. Cal. July 30, 2020) ....................3

*Sam K. ex rel. Diane C. v. Haw. Dep't of Educ.*,
788 F.3d 1033 (9th Cir. 2015) ....................14, 16

*E.E.O.C. v. Waffle House, Inc.*,
534 U.S. 279 (2002)....................13

*Frazier v. Fairhaven Sch. Comm.*,
276 F.3d 52 (1st Cir. 2002) ....................5

*Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*,
980 F. Supp. 2d 1160 (E.D. Cal. 2013) ....................5

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002)....................5, 6, 9

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
598 U.S. 39 (2023)....................6

*Law v. Gen. Motors Corp.*,
114 F.3d 908 (9th Cir. 1997)....................10

*Lee v. Weisman,*
505 U.S. 577, 642–43 (1992) ....................14

*Medina v. Planned Parenthood S. Atl.*,
606 U.S. 357 (2025)....................9

*Mirabelli v. Olson*,
691 F. Supp. 3d 1197 (S.D. Cal. 2023)....................8

*Mirabelli v. Olson*,
No. 3:23-CV-768, 2025 WL 3713588 (S.D. Cal. Dec. 22, 2025)....................14

*Newdow v. Rio Linda Union Sch. Dist.*,
597 F.3d 1007 (9th Cir. 2010) .................................................. 14

*Norcia v. Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) .................................................. 14, 16

*Pressley v. Cap. Credit & Collection Serv., Inc.*,
760 F.2d 922 (9th Cir. 1985) .................................................. 9

*Ragusa v. Malverne Union Free Sch. Dist.*,
549 F. Supp. 2d 288 (E.D.N.Y. 2008) .................................................. 6

*Reeve v. Meleyco*,
46 Cal. App. 5th 1092 (2020) .................................................. 14

*Rim of the World Unified Sch. Dist. v. Superior Ct.*,
104 Cal.App.4th 1393 (2002) .................................................. 9

*Rogers v. Roseville SH, LLC*,
75 Cal. App. 5th 1065 (2022) .................................................. 10, 11, 12

*Rookard v. Mexicoach*,
680 F.2d 1257 (9th Cir. 1982) .................................................. 11

*Sierra Pac. Indus. v. Carter*,
104 Cal. App. 3d 579 (1980) .................................................. 11

*Slater v. Fed. Deposit Ins. Corp.*,
No. 23-CV-03703-JD, 2025 WL 2917318 (N.D. Cal. Oct. 14, 2025) .................................................. 16

*Smith v. Cal. Dep't of Highway Patrol*,
75 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014) .................................................. 3

*Troxel v. Granville*,
530 U.S. 57 (2000) .................................................. 8

*Valentine v. Plum Healthcare Grp., LLC*,
37 Cal. App. 5th 1076 (2019) .................................................. 11, 12

*White v. Davis*,
533 P.2d 222 (1975) .................................................. 10

*Winding Creek Solar LLC v. Peevey*,
293 F. Supp. 3d 980 (N.D. Cal. 2017) .................................................. 3

*Winding Creek Solar LLC v. Peterman,*
932 F.3d 861 (9th Cir. 2019) .................................................. 3

**Rules**

34 C.F.R. § 99.30(a)–(d) .................................................. 5

34 C.F.R. § 99.33(a) .................................................. 5

34 CFR § 99.67 ....... 6

34 CFR § 99.7 ....... 15

Fed. R. Civ. P. 56(a) ....... 3

**Statutes**

20 U.S.C.A. § 1221 ....... 6

20 U.S.C.A. § 1232g ....... *passim*

Cal. Civ. Code § 1457 ....... 13

Cal. Civ. Code § 1708 ....... 13

Cal. Civ. Code § 2300 ....... 12

Cal. Edu. Code, § 49060 ....... 15

Cal. Edu. Code, § 49073 ....... 15

COPPA ....... 12

FERPA ....... *passim*

**Other Authorities**

120 Cong. Rec. 13951–56 (May 9, 1974) ....... 7

120 Cong. Rec. 14232–35 (May 13, 1974) ....... 7

120 Cong. Rec. 14579–605 (May 14, 1974) ....... 7

120 Cong. Rec. 39861–66 (December 13, 1974) ....... 5, 7

121 Cong. Rec. 13990–92 (May 13, 1975) ....... 7, 8

Restatement (Second) of Agency § 15 (1958), cmt. a ....... 12

Restatement (Second) of Agency § 394 (1958) ....... 11

Restatement (Second) of Torts § 892 (1979) ....... 13, 14

Restatement (Third) Of Agency § 1.01 (2006) ....... 10

Restatement (Third) Of Agency § 1.02 ....... 10, 11

Restatement (Third) of Agency § 2.03 (2006) ....... 12

Restatement (Third) Of Agency § 3.01 ....... 11

S. Rep. No. 93-1026 (July 22, 1974) ....... 7

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| **A** | PowerSchool Holdings, Inc.'s Responses and Objections to Plaintiffs' Non-Uniform Interrogatories |
| **B** | FERPA Legislative History, 120 Cong. Rec. 39861–66 (December 13, 1974) |
| **C** | Remarks of Sen. Buckley before the National Congress of Parents and Teachers (PTA), 121 Cong. Rec. 13990–92 (May 13, 1975) |
| **D** | 2024–2025 West Contra Costa Unified School District Parent Student Handbook, (retrieved April 2, 2026) |

# I. INTRODUCTION

PowerSchool raises 27 affirmative defenses to Plaintiffs' claims sounding in privacy and quasi-contract. *See* Order re: Dismissal [Dkt. 65] at 13; Plaintiffs' First Amended Class Action Complaint [Dkt. 131]. To further narrow issues for trial, Plaintiffs seek summary judgment as to the entirety of PowerSchool's First Affirmative Defense and part of its Third Affirmative Defense.

PowerSchool's First Affirmative Defense asserts a consent defense on the basis of "Consent and Authorization by Schools." PowerSchool has advanced three theories in support of this defense: (1) that schools provide consent instead of parents, as authorized by the Family Educational Rights and Privacy Act ("FERPA"), (2) that schools consent as parents' agents on parents' behalf, or (3) that schools contractually agree that they have obtained or will obtain parental consent to PowerSchool's data practices. Its Third Affirmative Defense asserts a consent defense on the basis of "Consent and Authorization by Parents and Students." In support, PowerSchool argues, in relevant part, (4) that parents impliedly consent to its data practices by using PowerSchool products or by failing to withdraw their children from schools that use PowerSchool products.

None of these theories support a consent defense. As a matter of law, FERPA does not create any private rights, including a private consent defense to claims of invasion of privacy and unjust enrichment. As to the facts, there is no evidence that parents have authorized their schools to consent on their behalf as their agent, or that would support a finding of implied consent. The contracts PowerSchool may have with schools are not evidence that parents provided their actual, express consent to PowerSchool's terms.

Because these theories lack legal and evidentiary support, Plaintiffs seek dismissal of PowerSchool's First Affirmative Defense in its entirety and the portion of its Third Affirmative Defense that is based on implied parental consent. Plaintiffs do not challenge, by this motion, PowerSchool's remaining theory of consent supporting its Third Affirmative Defense, namely, that schools do obtain actual, express parental consent to PowerSchool's conduct. Granting this motion in its entirety would thus leave that portion of PowerSchool's Third Affirmative Defense intact, permitting PowerSchool to produce evidence in support of that defense on that theory of consent.

## II. BACKGROUND

By its First Affirmative Defense, entitled "Consent and Authorization by Schools," PowerSchool contends that it relies on schools to obtain or provide consent to its data practices. *See* PowerSchool's Answer to Amended Complaint ("Answer") [Dkt. 146] at 114. It states:

> Plaintiffs' claims are barred, in whole or in part, because PowerSchool is acting with due consent and authorization from schools, school districts, state and tribal agencies and governments and private providers of educations services (collectively "Educators and Representatives"). Parents and other stakeholders elect, appoint, or retain Educators and Representatives to manage and provide educational services, legislate on issues affecting education and student privacy, and to represent parents' and other stakeholders' interests. PowerSchool has executed agreements with Educators and Representatives that confer upon PowerSchool the requisite authority to undertake the conduct at issue in this case. Educators and Representatives had the right to consent on behalf of parents, students and stakeholders and did, in fact, consent on behalf of these parties to the conduct at issue in this case. Each of Plaintiffs' claims fails due to consent.

*Id.*

By its Third Affirmative Defense, entitled "Consent and Authorization by Parents and Students," PowerSchool contends that schools obtain actual consent from parents to its data practices. *See* Answer [Dkt. 146] at 115. Its Third Affirmative Defense states:

> Plaintiffs' claims are barred, in whole or in part, because Plaintiffs and other class members have consented to the conduct at issue in this case. Plaintiffs have given consent explicitly via agreements, including through school handbooks, technology use agreements, and similar agreements, *or impliedly by continued use of PowerSchool products and/or continued attendance at schools utilizing online student data management solutions.*

*Id.* at 115 (emphasis added).

In its responses to Plaintiffs' discovery requests to provide information explaining its methods of obtaining consent, PowerSchool advanced four theories that are the subject of this motion:

> (1) that FERPA authorizes PowerSchool to obtain consent from schools alone instead of obtaining consent from parents, Exhibit A at 18–20;
>
> (2) that PowerSchool obtains consent from schools on behalf of parents as parents' agents, *id.* at 22;
>
> (3) that PowerSchool's contracts with schools require that schools obtain consent from parents, *id.* at 22–23; and

(4) that PowerSchool obtains consent from parents impliedly by parents failing to opt out of using PowerSchool's products, *id.* at 23–25.

*See* Exhibit A, PowerSchool Holdings, Inc.'s Responses and Objections to Plaintiffs' Non-Uniform Interrogatories ("PowerSchool's Interrogatory Responses"). PowerSchool argues that any of these methods constitute effective consent to take, use, and share student information in the manner alleged by Plaintiffs. *See id.*

## III. LEGAL STANDARDS

Parties "may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Court may dispose of less than the entire case and even just portions of a claim or defense." *CZ Servs., Inc. v. Express Scripts Holding Co.*, No. 3:18-cv-04217-JD, 2020 WL 4368212, at *2 (N.D. Cal. July 30, 2020) (citing *Smith v. Cal. Dep't of Highway Patrol*, 75 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014)).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it could affect the outcome of the suit under the governing law. *Id.* To determine whether a genuine dispute as to any material fact exists, the Court views the evidence in the light most favorable to the nonmoving party, and "all justifiable inferences are to be drawn" in that party's favor. *Id.* at 255. The moving party may initially establish the absence of a genuine issue of material fact by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It is then the nonmoving party's burden to "go beyond the pleadings" and identify specific facts that show a genuine issue for trial. *Id.* at 323–24. "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). "It is not the Court's responsibility to root through the record to establish the absence of factual disputes, or to look for evidence on the nonmoving parties' behalf." *CZ Servs.*, 2020 WL 4368212, at *3 (internal citations omitted); *see also Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 989 (N.D. Cal. 2017), *aff'd sub nom.*, *Winding Creek Solar LLC v. Peterman*, 932 F.3d 861 (9th Cir. 2019).

## IV. ARGUMENT

Each of PowerSchool's theories of consent supporting its First Affirmative Defense, "Consent and Authorization by Schools," fails. As a matter of law, FERPA does not create a private consent defense to PowerSchool's alleged conduct. As a matter of fact, no evidence shows that schools act as parents' agents in consenting to PowerSchool's alleged conduct, and evidence that PowerSchool procures contractual agreements from schools to obtain parental consent does not establish that PowerSchool obtained effective consent to its conduct as alleged by Plaintiffs.

PowerSchool's theory in support of its Third Affirmative Defense that parents impliedly consented to PowerSchool's alleged conduct by failing to "opt out" of using its products or by failing to withdraw their children from school similarly lacks evidentiary and legal support.

Because PowerSchool cannot carry its burden as to its First Affirmative Defense or part of its Third Affirmative Defense, the Court should grant summary judgment as to those defenses in favor of Plaintiffs.

### A. As a matter of law, FERPA does not create any private defenses, including a consent defense.

PowerSchool's first theory of consent is that, as long as a company has a contract with a school[1] stating that the company takes, uses, and shares student information as a "school official" under FERPA, the mere existence of that contractual designation proves that PowerSchool has obtained the requisite consent. *See* Exhibit A, Response to Interrogatory No. 6 at 18–23 (citing 20 U.S.C. § 1232g). But before PowerSchool may invoke FERPA as a defense to Plaintiffs' claims, it must first demonstrate that FERPA may be interpreted as creating a defense for private entities to claims brought by private litigants. Basic canons of statutory construction establish that it may not.

#### 1. FERPA was enacted to protect student privacy by requiring parental consent to disclosure of student information.

As this Court has observed, FERPA is a statute enacted by Congress in 1974 to codify students' expectation of privacy in their personal information in the education setting. Order re Dismissal [Dkt. 65]

[1] "School" as used herein refers broadly to "an educational agency or institution" as used in FERPA. *See* 20 U.S.C.A. § 1232g(a)(3) ("For the purposes of this section the term 'educational agency or institution' means any public or private agency or institution which is the recipient of funds under any applicable program.").

at 4. FERPA protects student privacy by requiring a school to obtain written parental consent before disclosing student information:

> Congress enacted FERPA "to assure parents of students . . . access to their educational records and to protect such individuals' rights to privacy *by limiting the transferability of their records without their consent*." Under its terms, educational institutions, with a few exceptions not material here, must obtain written parental consent prior to releasing students' records or information derived therefrom.

*Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67–68 (1st Cir. 2002) (quoting 120 Cong. Rec. 39862 (1974) (joint statement of sponsoring senators explaining major amendments to FERPA)) (emphasis added); Order re Dismissal [Dkt. 65] at 4. Parental consent must be written, signed, and dated by the parent and "specify[] records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents." 20 U.S.C. § 1232g(b)(2)(A); 34 C.F.R. § 99.30(a)–(d).

Confoundingly, however, PowerSchool contends that FERPA creates a defense for private companies that *fail* to obtain parental consent before creating, collecting, using, and sharing student information and permits them to rely on school consent alone. *See* Exhibit A, Response to Interrogatory No. 6 at 18–23. In support, it cites the school-official exception to FERPA's broad parental-consent requirements. *See* 20 U.S.C. § 1232g(b)(1)(A), 34 C.F.R. § 99.33(a) (describing the "school official" exception). Under that exception, a school may disclose personally identifiable education records to a third party under strictly limited circumstances. *See* 20 U.S.C. § 1232g(b)(1)(A), 34 C.F.R. § 99.33(a). But PowerSchool's invocation of this exception as a private defense contravenes the very purpose of FERPA.

**2. The text of FERPA establishes that FERPA does not create a private defense.**

The Supreme Court has held that FERPA does not create private rights that may be privately enforced. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286–90 (2002). The Court explained that "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit[.]" *Id.* at 286. Accordingly, the Court observed that "FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions." *Id.* at 290; *see also Fresno*

*Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1182 (E.D. Cal. 2013) (FERPA may not be enforced through private litigation). Its analysis is firmly rooted in the text of FERPA.

***First***, and most obviously, FERPA expressly regulates only schools, not private companies. 20 U.S.C. § 1232g, *passim*. It was enacted to "deter schools from adopting policies of releasing student records." *Ragusa v. Malverne Union Free Sch. Dist.,* 549 F. Supp. 2d 288, 291 (E.D.N.Y. 2008). Thus, "FERPA's nondisclosure provisions [ ] speak only in terms of institutional policy and practice, not individual instances of disclosure." *Gonzaga*, 536 U.S. at 288 (citing §§ 1232g(b)(1)-(2)).

***Second***, FERPA creates an exclusive administrative enforcement scheme through the Department of Education. 20 U.S.C. § 1232g(f) ("The Secretary [of Education, *see id.* § 1221(c)(4)] shall take appropriate actions to enforce this section and to deal with violations of this section . . . ."); *id.* § 1232g(g) ("The Secretary shall establish or designate an office and review board within the Department [of Education, *see id.* § 1221(c)(3)] for the purpose of investigating, processing, reviewing, and adjudicating violations of this section and complaints which may be filed concerning alleged violations of this section.").

***Third***, FERPA provides only one enforcement mechanism: the withholding of federal funding from schools with nonconforming disclosure policies. *See, e.g.*, 20 U.S.C. § 1232g(a)(1)(A) ("No funds shall be made available . . . to any educational agency or institution which has a policy of denying . . . the parents of students who are or have been in attendance at a school . . . the right to inspect and review the education records of their children."); § 1232g(b)(1) ("No funds shall be made available . . . to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein . . . ) of students without the written consent of their parents[.]"); 34 CFR § 99.67 (explaining that the Secretary enforces decision by withholding funds).

Just as the Supreme Court determined that the absence of language permitting private enforcement evinced congressional intent to not permit private enforcement, the absence of language creating a private defense evinces congressional intent to *not* create a private defense. *See Gonzaga*, 536 U.S. at 290; *see also Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 59 (2023) ("[E]ven the most formidable policy arguments cannot overcome a clear textual directive.") (cleaned up).

**3. FERPA's legislative history precludes invocation of FERPA as a private defense.**

In addition to lacking support in FERPA's text, PowerSchool's attempt to invoke FERPA as a private consent defense is further refuted by FERPA's legislative history.

FERPA[2] was enacted to curb surveillance of students by the government, as well as by private organizations. As its sponsor Senator Buckley explained, "[t]he immediate reason for the legislation was, of course, the growing evidence of the abuse of student records across the nation." Exhibit B, 121 Cong. Rec. 13990. After "irate parents and students" sent thousands of letters detailing the abuses to the Russell Sage Foundation, the Foundation undertook a survey of recordkeeping practices of representative U.S. school districts. It "convened a conference of prominent educators, lawyers, and social scientists to consider the ethical and legal aspects of school record-keeping, and to develop guidelines for the collection, maintenance, and dissemination of these records." *Id.* The resulting report identified a number of abuses by schools and private entities of student information, especially concerning the exclusion of parents from decisions concerning disclosure of their children's information. *Id.* The report's recommendations formed the basis of FERPA. *Id.*

In introducing FERPA, Senator Buckley noted that there was "clear evidence of frequent, even systematic violations of the privacy of students and parents by the schools through the unauthorized collection" and release of student information "to various individuals and organizations." *Id.* Among the "serious abuses" he identified was "the insertion of potentially prejudicial anecdotal comments and factual

---

[2] The entire 1974 Act itself, known as the Buckley/Pell Amendment after sponsors Senator James L. Buckley and Senator Claiborne Pell, was offered as an amendment on the Senate floor to the bill extending the Elementary and Secondary Education Act of 1965. It was not the subject of hearings or committee reports. The legislative history is limited to the Senate floor debates, which primarily concern a provision of the amendment that was not enacted, *see* 120 Cong. Rec. 13951–56 (May 9, 1974); 120 Cong. Rec. 14232–35 (May 13, 1974); 120 Cong. Rec. 14579–605 (May 14, 1974); and the conference report, which briefly describes provisions added to the Senate amendment either from the House bill or directly by the conferees, *see* S. Rep. No. 93-1026, at 186–187 (July 22, 1974) (Conf. Rep.).

Responding to inquiries from the educational community, Senator Buckley and Senator Pell issued a joint statement explaining their amendment in order to provide an adequate record upon which "to develop the necessary regulations." *See* Exhibit B, 120 Cong. Rec. 39861–66 (December 13, 1974). Six months later, in response to inquiries from the public and congressional offices, Senator Buckley received unanimous consent to place in the Congressional Record the text of his March 12, 1975, remarks before the National Congress of Parents and Teachers (PTA) discussing his reasons and beliefs for introducing the Act. *See* Exhibit C, 121 Cong. Rec. 13990–92 (May 13, 1975).

inaccuracies into children's school records," including material concerning a student's likelihood of future academic success, predictions of student delinquency, and observations as to whether a student was a "bad citizen." *Id.* at 13990–91. Without the right to inspect or correct these records, Senator Buckley observed that "devastatingly negative effects on the academic future and job prospects of an innocent, unaware student" can result. *Id.* at 13990. He also made prescient observations about the severe privacy threats posed by the growing use of "computer data banks on students":

> In addition, *the growth of the use of computer data banks on students* and individuals in general *has threatened to tear away most of the few remaining veils guarding personal privacy*, and to place enormous, dangerous power in the hands of the government, as well as private organizations.

*Id.* at 13991 (emphasis added).

Accordingly, FERPA was enacted to safeguard children's privacy in their own education records, including to prevent the abuse and improper disclosure of the records and their contents, and to safeguard parents' rights over those records. Indeed, "[t]he constitutional right of parents to direct their child's education is [] protected through Congressional policy, as exemplified by [FERPA]." *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1211 (S.D. Cal. 2023); Exhibit B, 120 Cong. Rec. 13991 ("I introduced the Family Educational Rights and Privacy Act not only to correct certain abuses in the schools but also to reassert and re-establish the basic rights, responsibilities and involvement of parents in their children's upbringing and education."); *see Troxel v. Granville*, 530 U.S. 57, 65 (2000) (extensively discussing the right to which Senator Buckley referred, namely, parents' Fourteenth Amendment liberty interest "to direct the upbringing and education of children under their control"). And FERPA's primary mechanism for safeguarding student privacy is a broad prohibition against schools disclosing student information to third parties without prior, written parental consent. 20 U.S.C. § 1232g(b)(1).

**4. Construing FERPA as creating a private defense would frustrate its purpose.**

Interpreting FERPA as creating a defense for private companies while simultaneously creating no private right of action for individual students would wholly subvert the stated congressional intent of FERPA in at least three important ways.

***First***, that interpretation would undermine Congress's establishment of an exclusive administrative enforcement scheme through the Department of Education rather than the courts. Such an asymmetrical

interpretation would defeat the statutory objective of centralizing enforcement under the Secretary of Education and would impermissibly authorize courts to make adjudicative determinations under FERPA.

***Second***, FERPA creates only duties for educational institutions receiving federal funds. *See* 20 U.S.C. § 1232g(a). It does not create rights or defenses for private companies. *See Gonzaga*, 536 U.S. at 290. Allowing a private company to invoke FERPA defensively would improperly extend the statute's scope beyond what Congress intended to regulate through its spending power. Indeed, the Supreme Court has explained that spending-power legislation of this type creates contractual rights between the federal government and the state rather than individually enforceable rights. *See Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 376 (2025) (observing that "spending-power legislation is in the nature of a contract") (cleaned up).

***Third***, and perhaps most important, construing FERPA as creating a private defense would produce the absurd result of creating rights for private companies but not for students and their parents—those whom the statute was enacted to protect—leaving them *less* protected than if FERPA had never become law. Indeed, the legislative history shows that FERPA was enacted to end the exact type of broad, nonconsensual disclosure practices Plaintiffs allege here. To divine a private defense from FERPA would insulate companies from liability against claims brought under other laws without providing a mechanism for holding them accountable. A statutory construction so fundamentally at odds with the statute's remedial framework and express purpose is impermissible. *Pressley v. Cap. Credit & Collection Serv., Inc.*, 760 F.2d 922, 924 (9th Cir. 1985) ("In interpreting statutes the court's objective is to ascertain the congressional intent and give effect to the legislative will.") (cleaned up).

**5. FERPA does not preempt more protective state law.**

Finally, because FERPA is a spending-clause statute that conditions schools' federal funding on compliance, it cannot be construed as creating a comprehensive regulatory scheme governing student privacy, let alone one that would preempt state-law claims against private entities not subject to FERPA. *Cf. Rim of the World Unified Sch. Dist. v. Superior Ct.*, 104 Cal.App.4th 1393, 1399 (2002) (holding FERPA sets minimum protections against disclosure that preempt less protective state law governing disclosure of student records). The "school official" designation under FERPA merely means that a *school* may share records with a contractor without first obtaining parental consent without violating FERPA's funding conditions; it does not insulate

the contractor from liability or absolve it of its duties under other laws. *See Law v. Gen. Motors Corp.*, 114 F.3d 908, 910 (9th Cir. 1997) ("[W]e entertain a strong presumption that federal statutes do not preempt state laws; particularly those laws directed at subjects—like health and safety—traditionally governed by the states.") (cleaned up); *White v. Davis*, 533 P.2d 222, 233 (1975) (explaining that the right of privacy was added to the California Constitution in opposition to "increased surveillance and data collection activity in contemporary society.").

In sum, no authority suggests that FERPA is the only, or even the primary, source of protection for student privacy. And no authority would permit PowerSchool's liability under state law to rise or fall with a school's compliance with its federal-funding obligations under FERPA or, worse, immunize PowerSchool from liability irrespective of schools' compliance. As this Court observed, FERPA simply demonstrates that students do have a statutorily recognized expectation of privacy in the information that Plaintiffs allege PowerSchool takes, uses, and shares. Order re Dismissal [Dkt. 65] at 4.

Because FERPA may not, as a matter of law, be interpreted as creating a private consent defense, Plaintiffs are entitled to summary judgment on PowerSchool's First Affirmative Defense.

**B. No evidence shows that schools consent on behalf of parents as their agents.**

In support of its First Affirmative Defense, PowerSchool alternatively contends that it "obtain[s] consent from schools as agents of parents for the processing of Personal Information from students" as stated in its contracts with schools. *See* Exhibit A, Response to Interrogatory No. 6 at 22. No evidence supports this contention.

**1. Creation of an agency relationship requires a manifestation of assent by the principal.**

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control[.]" Restatement (Third) Of Agency § 1.01 (2006). "[C]onduct by the principal is essential to create the agency." *Rogers v. Roseville SH, LLC*, 75 Cal. App. 5th 1065, 1074 (2022); Restatement (Third) Of Agency § 1.01 (2006) (agency requires words or conduct by the principal manifesting assent to an agency relationship). The existence or scope of an agency relationship is not controlled by parties' use of descriptive labels in a contract or industry usage of the term. Restatement (Third) Of Agency § 1.02 ("Whether a relationship is characterized as agency in an agreement between parties or in the context of industry or popular usage is not controlling.").

Even if an agency relationship exists, an agent's authority is limited to the principal's manifestation of assent to the agent "that the agent take action on the principal's behalf." *Id.* § 3.01. An agent's belief that he is authorized to act on a principal's behalf "is not enough. It must be shown that the belief was engendered by conduct of the principal." *Valentine v. Plum Healthcare Grp., LLC*, 37 Cal. App. 5th 1076, 1087 (2019). "To hold otherwise would give any agent, not the authority, but the naked power to bind his principal to any contract within the general scope of his duties, however fantastic or detrimental to the principal's interest such contract may be." *Id.*

The party asserting that an agency relationship exists has the burden of proving its existence. *Rogers*, 75 Cal. App. 5th at 1074–75; Restatement (Third) Of Agency § 1.02, cmt. d. Any such agreement would require complete transparency as to the details of the arrangement, including proof of parents' receipt of, and an opportunity to review, all terms governing PowerSchool's data practices, as well as a clear manifestation of parents' assent—none of which are present in this case. *Carter*, 104 Cal. App. 3d at 581 (agency requires "disclosure of all information in the agent's possession relevant to the subject matter of the agency"); *Rookard v. Mexicoach*, 680 F.2d 1257, 1262 (9th Cir. 1982) ("The rule in California charges an agent with the duty of fullest disclosure of all material facts concerning the transaction in question which might affect the principal's decision.") (cleaned up).

**2. No evidence shows that parents authorized schools to act as their agent.**

Even assuming that a school could theoretically serve as parents' agent for the purpose of consenting to PowerSchool's data practices,[3] there is no evidence that any parent authorized their schools to do so. The only evidence PowerSchool cites in support of its contention is evidence that *schools* represent that they are authorized to consent on behalf of parents as their agents. It states that "PowerSchool's practice of obtaining

[3] It is questionable whether schools could ever properly serve as parents' agents in this context given their opposing interests—namely, schools' desire to allow PowerSchool to access, use, and share student information, as opposed to parents' desire to protect their children's privacy. In fact, the school is more akin to an agent for *PowerSchool* when it contractually represents that it will obtain parental consent as necessary to permit use of PowerSchool's products, and it is well established that an agent may not serve principals with conflicting interests. Restatement (Second) of Agency § 394 (1958) (an agent may not "act or [ ] agree to act during the period of his agency for persons whose interests conflict with those of the principal in matters in which the agent is employed"); *Sierra Pac. Indus. v. Carter*, 104 Cal. App. 3d 579, 581 (1980) ("An agent may not . . . act as agent for another whose interests conflict with those of the principal.").

consent from schools as agents of parents for the processing of Personal Information from students is recorded in its contracts. . . . PowerSchool's practice is also to include language requiring schools to attest that they are gaining any potentially necessary consent on behalf of students." *See* Exhibit A, Response to Interrogatory No. 6 at 22. In support, it quotes form contract language stating that "Customer acknowledges that it will act as agent for the parents of students under the age of 13 for purposes of COPPA." *Id.* But neither express nor implied contractual representations by schools establish that schools are authorized to consent on parents' behalf as their agent. *See Rogers*, 75 Cal. App. 5th at 1074; *Valentine*, 37 Cal. App. 5th at 1087; Restatement (Second) of Agency § 15 (1958), cmt. a ("One becomes an agent only if another in some way indicates to him consent that he may act on the other's account.").

Evidence that schools have falsely represented that they are authorized to consent on behalf of parents as their agents might support claims by PowerSchool against its own school customers. But absent evidence of words or conduct by *parents* that reasonably led PowerSchool to believe schools were so authorized, PowerSchool's reliance on schools' representations alone does not support a defense to parents' claims. *See* Restatement (Third) of Agency § 2.03 (2006) ("Apparent authority" requires that a "third party reasonably believe[ ] the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."); Cal. Civ. Code § 2300 ("An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him.").

Without evidence of conduct by parents showing that they agreed to enter into an agency relationship with their respective schools, PowerSchool cannot meet its burden. Plaintiffs are thus entitled to summary judgment on PowerSchool's First Affirmative Defense.

### C. Evidence that schools contractually agree to obtain parental consent does not establish that effective consent was obtained.

As an alternative theory in support of its First Affirmative Defense, PowerSchool contends that consent is shown by evidence that its contracts with schools impliedly or expressly require that schools have obtained or will obtain necessary consent to PowerSchool's data practices. Exhibit A, Response to Interrogatory No. 6 at 22–23 ("Customer represents and warrants that it has obtained all necessary consents and government authorizations required under Applicable Law to permit the Processing of Customer Data.").

But PowerSchool offers no argument as to how the mere existence of these contractual obligations, without evidence that schools actually fulfilled them, establishes consent.

To the extent PowerSchool suggests that it may transfer or absolve itself of duties it owes students and their parents under the law without their agreement, that argument lacks legal support. *See* Cal. Civ. Code § 1457 ("The burden of an obligation may be transferred with the consent of the party entitled to its benefit, but not otherwise[.]"); Cal. Civ. Code § 1708 (describing obligation imposed by law "to abstain from injuring the person or property of another, or infringing upon any of his or her rights."); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

Because neither law nor evidence supports PowerSchool's First Affirmative Defense, Plaintiffs are entitled to summary judgment as to that defense.

**D. No evidence supports a finding of implied parental consent to PowerSchool's conduct.**

By its Third Affirmative Defense, PowerSchool contends that parents impliedly consented to PowerSchool's conduct by failing to opt out of using its Products or by failing to withdraw their children from school: "Plaintiffs have given consent . . . impliedly by continued use of PowerSchool products and/or continued attendance at schools utilizing online student data management solutions." Answer [Dkt. 146] at 115.

**1. Consent requires a manifestation of assent for conduct to occur.**

Consent is willingness in fact for conduct to occur. Restatement (Second) of Torts § 892 (1979). Among the many elements required to demonstrate effective consent, consent must be supported by a manifestation of assent. No evidence shows that parents manifested assent to PowerSchool's conduct.[4] *Id.*

Manifestation of assent may be express or implied through words, action, or inaction. *Id.* In determining consent, courts consider "whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Calhoun v. Google, LLC*, 113 F.4th at 1147 (9th Cir. 2024). "Normally this willingness is manifested directly to the other by words or acts that are intended to indicate that it exists." Restatement

[4] Plaintiffs do not concede that any evidence supports the other essential elements of consent, but by this motion they challenge only the manifestation-of-assent element as unsupported by evidence of parental silence or inaction.

(Second) of Torts § 892, cmt. b (1979). Consent may "be manifested by silence or inaction," but only "if the circumstances or other evidence indicate that the silence or inaction is intended to give consent." *Id.*; *see also Sam K. ex rel. Diane C. v. Haw. Dep't of Educ.*, 788 F.3d 1033, 1040 (9th Cir. 2015) ("Consent may be indicated by silence or inaction where such silence or inaction manifests a willingness for the conduct in question to happen."). "Consent is active, while not objecting is merely passive. The old adage, 'Silence gives consent,' is not true in law; for there it only applies where there is some duty or obligation to speak." *Reeve v. Meleyco*, 46 Cal. App. 5th 1092, 1099 (2020) (cleaned up). Therefore, the general rule is that "silence or inaction does not constitute acceptance of an offer." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (cleaned up).

**2. No evidence shows that parents manifested assent to PowerSchool's conduct through silence or inaction.**

Even assuming, for the purpose of this motion, that a parent's inaction in the inherently coercive setting of compulsory education could ever be interpreted as manifesting his or her assent to an education-technology company's data practices,[5] no evidence supports that finding here.

PowerSchool contends that parental consent may be inferred from parents' failure to withdraw their children from schools that use PowerSchool products. *See* Answer [Dkt. 146] at 115. Given that every state has compulsory education laws, PowerSchool's theory would require finding that, by failing to withdraw their children from their school and make alternative arrangement for their education—whether by arranging for a transfer to a different public school that does not use PowerSchool's products, paying for a private school that does not use PowerSchool's products, or homeschooling their children—parents consent to PowerSchool's data practices. *See Mirabelli v. Olson*, No. 3:23-CV-768, 2025 WL 3713588, at *19 (S.D. Cal. Dec. 22, 2025) ("Many plaintiff parents have no other choice than to enroll their children in public schools because the scholastic alternatives are costly. State truancy laws preclude opting out completely."). No law

[5] Restatement (Second) of Torts § 892B(3) (1979) ("Consent is not effective if it is given under duress."); *Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1097 n.85 (9th Cir. 2010) ("[A] public classroom where attendance is mandatory is an inherently coercive environment.") (citing *Lee v. Weisman*, 505 U.S. 577, 642–43 (1992) (Scalia, J., dissenting))

PowerSchool further contends that parents impliedly consented to its conduct by permitting their children to use PowerSchool products. *See* Answer [Dkt. 146] at 115. In support, PowerSchool produced the annual handbook maintained by Plaintiff Concepción family's school district ("Handbook").[6] *See* Exhibit A, Response to Interrogatory No. 6 at 23–24. Citing the Handbook, PowerSchool contends that "[p]arents are also given an option to opt out" of certain provisions of the Handbook, and that failure to opt out manifests their assent for PowerSchool to take, use, and share their children's information. *See* Exhibit A, Response to Interrogatory No. 6 at 24. But that evidence does not support PowerSchool's argument. A parent's failure to "opt out" as provided in the Handbook does not manifest his willingness for PowerSchool to take, use, and share his children's information as described in its terms, policies, and contract with the district.

Rather than providing parents any ability to opt out of PowerSchool's data practices, the Handbook states that a parent who has "concerns about your student's use of online electronic systems that store PII [is encouraged] to speak with your school's principal or teachers to find out why we use the system and to inspect your student's stored work and information." *See* Exhibit D, Handbook at § 8.10A, "Student Data Privacy"; *cf.* Exhibit A, Response to Interrogatory No. 6 at 23 (quoting same). This provision does not state that a parent may decline consent to any company's data practices and suggests that they may not.

PowerSchool points to another provision in the Handbook that provides families the ability to opt out of the release of directory information as required under FERPA and corresponding state law. *See* Exhibit D, Handbook at § 7.31 Release of Student Information. That provision states that parents may provide written notice to the district that they do not consent to the release of certain identifying information as defined under FERPA and analogous California law. *Id.* (citing Cal. Edu. Code, §§ 49060, 49073; 20 U.S.C. § 1232g, 34 C.F.R. § 99.7). But this mandatory FERPA opt-out provision contains no mention of PowerSchool or the release of information to or by PowerSchool. Absent any such information, parents'

---

[6] Rather than producing a copy of the Handbook purportedly received and acknowledge by the Concepcións, PowerSchool provided a hyperlink to a Google document that bears the title "2024–2025 West Contra Costa Unified School District Parent Student Handbook," reproduced here at Exhibit D. *See* Exhibit A, Response to Interrogatory No. 6 at *d.* n.3. Notwithstanding that the linked document is unauthenticated, live, and "[u]pdated automatically every 5 minutes," Plaintiffs do not challenge its admissibility for the purpose of this motion.

inaction under FERPA does not demonstrate their consent to PowerSchool's data practices as described in its terms, policies, and contract with the district.

In sum, no evidence supports a finding that parents impliedly consent to PowerSchool's conduct as alleged by Plaintiffs. *See Norcia*, 845 F.3d at 1284; *Sam K.*, 788 F.3d at 1040. The circumstances, considered as a whole, do not "demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Calhoun*, 113 F.4th at 1147. Because PowerSchool cannot carry its burden of proving that parents impliedly consented to its conduct, Plaintiffs are entitled to summary judgment on that part of its Third Affirmative Defense.

## V. CONCLUSION

Plaintiffs respectfully request that the Court grant summary judgment as to PowerSchool's First Affirmative Defense in its entirety and its Third Affirmative Defense in part, and issue an order that:

(1) as a matter of law, FERPA does not provide a private defense to the alleged conduct;

(2) there is no evidence that schools are parents' agents for the purpose of obtaining parents' express or implied consent to the alleged conduct;

(3) PowerSchool's contracts with its school customers are not evidence that schools did, in fact, obtain express parent consent to the alleged conduct; and

(4) there is no evidence that parents impliedly consented to the alleged conduct.

This ruling would eliminate PowerSchool's First Affirmative Defense and limit its Third Affirmative Defense proving that parents consented to PowerSchool's conduct "explicitly via agreements, including through school handbooks, technology use agreements, and similar agreements."

To the extent that the Court concludes that summary judgment is not appropriate with respect to one or more of PowerSchool's consent theories, Plaintiffs respectfully request that the Court dispose of those portions of its defense for which there is no genuine issue of material fact. *See Slater v. Fed. Deposit Ins. Corp.*, No. 23-CV-03703-JD, 2025 WL 2917318, at *1 (N.D. Cal. Oct. 14, 2025) ("The Court may dispose of less than the entire case and even just portions of a claim or defense.") (citations omitted).

Dated: April 14, 2026

Respectfully submitted,

EDTECH LAW CENTER PLLC

By /s/ W. Andrew Liddell
W. Andrew Liddell (*pro hac vice*)
Julie Liddell (*pro hac vice*)
904 Rio Grande St. Suite 100
Austin, Texas 78701
Telephone: (512) 200-8028
andrew.liddell@edtech.law
julie.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602)840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

*Attorneys for Plaintiffs and the Putative Class Members*