Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
904 Rio Grande Street, Suite 100
Austin, Texas 78701
Telephone: (737) 351-5855
julie.liddell@edtech.law
andrew.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

EMILY CHERKIN, et al.,

Plaintiffs,

v.

POWERSCHOOL HOLDINGS, INC.,

Defendant.

Case No.: 3:24-cv-02706-JD

**DECLARATION W. ANDREW LIDDELL IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON POWERSCHOOL'S CONSENT DEFENSES**

Judge: The Honorable James Donato

Hearing
Date: May 21, 2026
Time: 11:00 a.m.
Courtroom: 11, 19th Floor

I, W. Andrew Liddell, declare as follows:

1. I am a principal at The EdTech Law Center PLLC, and I represent Plaintiffs in the above-captioned litigation. I am duly licensed to practice in the State of Texas, and I have been admitted *pro hac vice* in this Court. I submit this declaration in support of Plaintiffs' Motion for Plaintiffs' Motion for Summary Judgment on PowerSchool's Consent Defenses. I have personal knowledge of the facts stated within this Declaration. If called upon, I could and would testify competently to the facts contained in this Declaration.

2. Attached as **Exhibit A** is a true and correct copy of PowerSchool Holdings, Inc.'s Responses and Objections to Plaintiffs' Non-Uniform Interrogatories.

3. Attached as **Exhibit B** is a true and correct copy of FERPA Legislative History, 120 Cong. Rec. 39861–66 (December 13, 1974).

4. Attached as **Exhibit C** is a true and correct copy of the Remarks of Sen. Buckley before the National Congress of Parents and Teachers (PTA), 121 Cong. Rec. 13990–92 (May 13, 1975).

5. Attached as **Exhibit D** is a true and correct copy of the 2024–2025 West Contra Costa Unified School District Parent Student Handbook, (retrieved April 2, 2026).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED: April 14, 2026

W. Andrew Liddell
W. Andrew Liddell

# EXHIBIT A

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, California 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky (*pro hac vice*)
Amelia H. Bailey (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Rachael A. Rezabek
Ethan Joel Levinton (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
oliva.adendorff@kirkland.com
rachael.rezabek@kirkland.com
ethan.levinton@kirkland.com

*Attorneys for Defendant*
*PowerSchool Holdings, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMILY CHERKIN, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>Defendant | CASE NO. 3:24-CV-02706-JD<br><br>**POWERSCHOOL HOLDINGS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' NON-UNIFORM INTERROGATORIES** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant PowerSchool Holdings, Inc. ("PowerSchool") hereby responds and objects to Plaintiffs' First Set of Non-Uniform

Interrogatories, as well as the Definitions and Instructions incorporated therein (collectively the "Interrogatories" and individually the "Interrogatory"), which were served on PowerSchool on September 13, 2024.

**GENERAL OBJECTIONS AND CONDITIONS**

The following General Objections and Conditions apply to each Interrogatory set forth below. Each Objection and Condition is hereby incorporated into the Response to each individually numbered Request as if fully set forth therein:

1. PowerSchool objects to the definitions of the following terms:

(a) PowerSchool objects to the definitions of "And" and "or" insofar as they request PowerSchool to interpret words contrary to their plain meaning.

(b) PowerSchool objects to the definitions of "Documents" and "All documents" to the extent the definitions purport to supersede the parties' agreed-upon forthcoming ESI Protocol or Stipulated Protective Order, including insofar as the definitions require production of exact duplicates. PowerSchool will interpret "Documents" and "All documents" consistent with the parties' forthcoming ESI Protocol and Stipulated Protective Order.

(c) PowerSchool objects to the definition of "Category of data" to the extent it attempts to impose an obligation to produce documents derivative of other documents until "the smallest discrete data element" is identified for any data referenced by such documents. PowerSchool further objects to the definition as overly broad to the extent that it includes data that is not Personally Identifiable Information ("PII"). PowerSchool agrees to confer with Plaintiffs as to a reasonable definition of this term.

(d) PowerSchool objects to the definition of "Communication(s)" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of discovery to the extent it purports to require PowerSchool to reference all forms of communications, regardless of burden and relevance. PowerSchool will interpret "Communication(s)" consistent with the parties' forthcoming ESI Protocol and Stipulated Protective Order and will only review such records as identified through a reasonable search.

(e) PowerSchool objects to the definitions of "Defendant" and "You" to the extent they refer to third parties, including any entity not controlled by PowerSchool and "person[s] … purporting to act on [PowerSchool's] behalf." PowerSchool further objects to the definitions of "You" and "Defendant" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of discovery to the extent that they purport to include entities other than PowerSchool. PowerSchool will interpret "Defendant" and "You" to include PowerSchool, its wholly owned subsidiaries, branches, divisions, officers, directors, employees, representatives, and persons acting on its behalf. PowerSchool further objects to the extent the definition seeks documents or information not within the direct possession or custody of PowerSchool and its employees, and objects to the extent documents are sought beyond that scope.

(f) PowerSchool objects to the definition of "Data" to the extent the definition covers types or categories of data not alleged to have been wrongfully collected, processed, or shared in the Plaintiffs' complaint, ECF No. 1 (the "Complaint"). PowerSchool further objects to the extent the definition concerns data not within PowerSchool's possession, custody, or control. PowerSchool further objects to the definition as overly broad to the extent that it includes data that is not PII. PowerSchool will interpret "Data" to mean, collectively, Customer Data, Collected Data, and Transaction Data, as those terms are defined in PowerSchool's Global Privacy Statement, available at https://www.powerschool.com/privacy/, and will respond as to the products and solutions offered to schools or school districts as alleged in the Complaint.

(g) PowerSchool objects to the definition of "Parent" or "parents" as overly broad to the extent it includes the parents who may not have legal custody over their child(ren) and parents or legal guardians of students who have not used the PowerSchool products or services purchased by schools or school districts at issue in the Complaint. PowerSchool will interpret "Parent" or "parents" to include only individuals who have legal custody over an individual attending grades K-12 in a public institution and who used PowerSchool products or services identified in the Complaint.

(h) PowerSchool objects to the definition of "Student" or "students" as overly broad in that it includes students who have not used the PowerSchool products or services at issue in the Complaint. PowerSchool will interpret "Student" or "students" to include only an individual attending grades K-12 in a public institution and who used PowerSchool products or services purchased by schools or school districts as alleged in the Complaint.

(i) PowerSchool objects to the definition of "Third-party" as vague and ambiguous insofar as it includes persons or entities with whom PowerSchool has no contractual relationship, as the definition as written encompasses prospective partners. PowerSchool will interpret the term "Third-party partners" to include only the entities identified in the Complaint: EAB, Capture, Finalsite, K12 Bloom, August Schools, Harvest Technology Group, and Career Key.

2. PowerSchool objects to the Interrogatories to the extent they require PowerSchool to respond with information within the "custody, control or possession of [PowerSchool's] investigators, accountants, consultants, employees, attorneys or other agents" because such requests would require PowerSchool to (i) divulge information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection ("privileged information") and (ii) muster all its evidence and conduct third-party discovery at the outset of this litigation. PowerSchool will not divulge any privileged information, and it will respond only with information presently available to it based on the limited investigation and discovery conducted to date.

3. PowerSchool objects to the Interrogatories to the extent they seek to impose on PowerSchool any duty or obligation that is inconsistent with or in excess of those that are imposed by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, or any other applicable rule, court order, or case law. PowerSchool will respond to the Interrogatories in the manner required by the Federal Rules of Civil Procedure and any other applicable rule or case law. PowerSchool objects to Plaintiffs' attempt to impose an obligation to identify documents with any greater specificity than is necessary for Plaintiffs to locate said documents.

4. PowerSchool objects to Instruction No. 4 because it attempts to impose an obligation to identify documents with any greater specificity than is necessary for Plaintiffs to locate said person.

Where PowerSchool identifies a document or person in response to an Interrogatory, it will provide only the reasonable information necessary and sufficient to locate such document or person.

5. PowerSchool objects to Instruction No. 5 because it attempts to impose an obligation to identify people with knowledge to support an objection based on privilege. PowerSchool will not engage in discovery on discovery at this juncture.

**SPECIFIC RESPONSES AND OBJECTIONS**

Consistent with the foregoing General Objections and Conditions, and further subject to any specific objections made in connection with each of the below-numbered Interrogatories, PowerSchool responds to the Interrogatories as follows:

**INTERROGATORY NO. 1:**

Identify each of YOUR "Products & Solutions," as those terms are used or have been used on YOUR website www.powerschool.com, that collects DATA, uses DATA, or discloses DATA to SCHOOLS or any THIRD PARTY.

**RESPONSE TO INTERROGATORY NO. 1:**

PowerSchool objects to this Request to the extent that it incorrectly contends that PowerSchool "collects" student data as opposed to processing such data on behalf of schools and/or school districts. PowerSchool will respond by identifying its "Products & Solutions," as those terms are used or have been used on PowerSchool's website www.powerschool.com.

PowerSchool further objects to this Request to the extent it seeks information relating to issues beyond the scope of this litigation and that is, thus, irrelevant. In particular, PowerSchool objects to the term "Data" as vague and ambiguous and overbroad, including insofar as it encompasses "Data" unrelated to Students or Parents who use PowerSchool products. PowerSchool will interpret "Data" to mean, collectively, Customer Data, Collected Data, and Transaction Data, as those terms are defined in PowerSchool's Global Privacy Statement, available at https://www.powerschool.com/privacy/, and to the extent such Data is applicable to Students and Parents.

As limited by the foregoing General Objections and Conditions, PowerSchool identifies the following "Products & Solutions," other than those that do not relate to Student or Parent Data:

- PowerSchool SIS
- Document Management
- Ecollect Forms
- Enrollment
- Enrollment Express
- Special Programs
- Schoology
- Performance Metrics
- Curriculum & Instruction
- ContentNav
- MTSS
- Attendance Intervention
- Behavior Support
- Naviance
- Headed2
- Connected Intelligence P20W
- Perform
- Student Analytics
- Risk Analysis
- Student Readiness Analytics
- Predictive Enrollment Analytics
- MyPowerHub
- SchoolMessenger Communicate
- SafeArrival
- PermissionClick
- PowerBuddy.

**INTERROGATORY NO. 2:**

For each product or solution identified in response to Interrogatory Request No.1 identify each CONTRACT you contend governs the relationship between YOU and a user of that product or solution, the effective date of each CONTRACT, and the termination date, if any, of each CONTRACT.

**RESPONSE TO INTERROGATORY NO. 2:**

PowerSchool incorporates by reference its Responses and Objections to Interrogatory No. 1. PowerSchool further objects to this Interrogatory because it is requesting discrete pieces of information on each of 26 products and solutions, and thus constitutes 26 separate interrogatories. *See Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, No. 4:19-cv-02237-HSG (KAW), 2020 WL 8996760, at *1-2 (N.D. Cal. July 9, 2020) (interrogatories requiring party to state, from four insurance policies, a quote of certain contract language and page number of certain provision, counted as eight separate interrogatories); *Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 474-75 (N.D. Cal. 2004) (holding that a single interrogatory asking information about 26 allegedly infringing products constituted as 26 interrogatories). Thus, Interrogatory No. 2 requires PowerSchool to respond to a number of interrogatories that is far above the default limit of 25 interrogatories, which has not been extended by agreement or court order. *See* ECF No. 51; Fed. R. Civ. P. 33. Nevertheless, PowerSchool will meet and confer with Plaintiffs about this Interrogatory and is preparing a workable definition of "CATEGORY OF DATA" which is consistent with the scope of this litigation, pursuant to the parties' October 31, 2024 meet and confer.

**INTERROGATORY NO. 3:**

For each product or solution identified in response to Interrogatory Request No. 1 identify each CATEGORY OF DATA collected by each product or service, and for each such CATEGORY OF DATA identify:

a) your educational interest in that CATEGORY OF DATA,

b) each THIRD PARTY to whom that CATEGORY OF DATA is disclosed, shared, sold, or otherwise used by, and

c) why you collect that CATEGORY OF DATA.

**RESPONSE TO INTERROGATORY NO. 3:**

PowerSchool incorporates by reference its Responses and Objections to Interrogatory No. 1. PowerSchool objects to this Interrogatory because between the body of the Interrogatory and its three enumerated subparts, it seeks 4 discrete pieces of information on each of 26 products and solutions unrelated to the primary question and thus constitute 104 separate interrogatories. *See Am. Bankers*, 2020 WL 8996760, at *1-2 (interrogatories requiring party to state, from four insurance policies, a quote of certain contract language and page number of certain provision, counted as eight separate interrogatories); *Collaboration Properties*, 224 F.R.D. at 474-75 (holding that a single interrogatory asking information about 26 allegedly infringing products constituted as 26 interrogatories). Even if Plaintiffs had not served any other Interrogatories in this case, responding to Interrogatories Nos. 1-3 would require PowerSchool to respond to interrogatories far above the permitted limit. *See* ECF No. 51; Fed. R. Civ. P. 33(a)(1). This is overly burdensome and wholly disproportionate to the needs of the case.

The foregoing objections are compounded by Plaintiffs' overly broad and unreasonable definitions, including as to "CATEGORY OF DATA," which purports to require PowerSchool to identify not only the type of data ingested into PowerSchool products (e.g., "demographic information") but also the particular types of information that schools have actually inputted into such fields (e.g., "name, date of birth, gender, home address…"). *See* Pls.' Interrog. at 2 ¶ 9. By way of illustration, Plaintiffs allege that PowerSchool's "products have been deployed in more than 90 of the largest 100 districts … in the U.S." ECF No. 1, Compl. ¶ 36. Responding to the Interrogatory as to these 90 district alone could require PowerSchool to access and review how each data field in 26 products was utilized by over 90 schools and then, for each such piece of data, review contracts, agreements, directives, or otherwise to assess, *inter alia*, compliance with federal and state law of the relevant jurisdiction (including FERPA) as required by subpart (a); identify every vendor, substitute teacher, or independent contractor the school chose to disclose the information to as required by subpart (b); and detail PowerSchool's precise reason enabling such data to be ingested as required by subpart (c).

PowerSchool additionally objects to this Request to the extent that it incorrectly contends that PowerSchool "collects" student data as opposed to processing such data on behalf of schools.

Accordingly, Interrogatory No. 3 is unduly broad and unreasonable, and Plaintiffs cannot avoid the limitations on the number of interrogatories by asking PowerSchool to list products in one interrogatory and then cross reference PowerSchool's responses to ask for a summation of all its documents and communications about each such product in every circumstance. Nevertheless, PowerSchool will meet and confer with Plaintiffs about this Interrogatory.

**INTERROGATORY NO. 4:**

Identify each tracking technology (including but not limited to cookies, pixels, and browser fingerprints) that YOU use or have ever used in order to allow YOU or a THIRD PARTY to identify or partially identify a user of YOUR website, products, or solutions (including identifying a user's browser or device), which websites, products, and solutions include YOUR tracking technology or tracking technologies belonging to a THIRD PARTY, and for each tracking technology so identified, provide:

a) the products and solutions into which the tracking technology was implemented, and

b) for each product or solution so identified, provide:

1. the provider of the tracking technology,
2. the date the tracking technology was first implemented into that product or solution,
3. the reason or reasons for implementing the tracking technology into that product or solution,
4. the categories of information collected by each tracking technology implemented into that product or solution,
5. whether the implementation of the tracking technology has been discontinued, and
6. if so, the date the tracking technology was discontinued and
7. the reason or reasons for discontinuing the tracking technology.

**RESPONSE TO INTERROGATORY NO. 4:**

PowerSchool objects to Interrogatory No. 4 because the term "tracking technology" is undefined. PowerSchool will interpret the term to refer to "cookies, pixels, and browser fingerprints." PowerSchool further objects to Interrogatory No. 4 to the extent Plaintiffs conditioned the definition on information outside of PowerSchool's possession, custody, or control, such as by requiring PowerSchool to determine whether Third Parties used any cookie, pixels, or browser fingerprints to identify users.

PowerSchool will respond by identifying all cookies, pixels, and browser fingerprints that PowerSchool implemented or allowed to be implemented.

PowerSchool further objects to the term "website" insofar as it refers to www.powerschool.com as unduly burdensome, disproportionate to the needs of the case, and seeking information relating to issues beyond the scope of this litigation and that is, thus, irrelevant. The website, www.powerschool.com, is hosted for customer marketing purposes and is not intended for use by students or parents. PowerSchool will interpret the term "website" as referring to its products and solutions websites intended for use by students or parents.

PowerSchool further objects to subparts (b)(2)-(7) because these subparts seek detail on discrete subjects with respect to each of the cookies, pixels, or browser fingerprints that are not factually subsumed within and necessarily related to the primary question, and thus count as separate interrogatories per discrete subpart. *See Am. Bankers*, 2020 WL 8996760, at *1-2 (interrogatories requiring party to state, from four insurance policies, a quote of certain contract language and page number of certain provision, counted as eight separate interrogatories); *Collaboration Properties*, 224 F.R.D. at 474-75 (holding that a single interrogatory asking information about 26 allegedly infringing products constituted as 26 interrogatories).

As limited by the foregoing, PowerSchool responds that it is not aware of any tracking technology implemented in PowerSchool's products and solutions, including products and solution websites intended for use by students or parents, that PowerSchool implemented in order to allow it or a Third Party to identify or partially identify a user of PowerSchool's products and solutions, including products and solution websites intended for use by students or parents.

**INTERROGATORY NO. 5:**

Identify each THIRD PARTY with whom YOU share, disclose, or otherwise allow to use DATA, and for each third party so identified, identify:

a) all CONTRACTS governing your relationship with that THIRD PARTY,

b) the categories of DATA that YOU share with that THIRD PARTY, and

c) the purposes for which you share each CATEGORY OF DATA with that THIRD PARTY.

**RESPONSE TO INTERROGATORY NO. 5:**

PowerSchool objects to this Interrogatory as seeking information outside of PowerSchool's possession, custody, or control. Certain contracts between PowerSchool and its customers entitle the customer determine when and how to make any data available to any other third party, and such contracts speak for themselves. PowerSchool will answer the Interrogatory based on its knowledge only.

PowerSchool additionally objects to this Interrogatory to the extent that it incorrectly contends that PowerSchool "collects" student data as opposed to processing such data on behalf of schools. PowerSchool further objects to the phrase "share, disclose, or otherwise allow to use DATA," because it implies that PowerSchool can unilaterally transfer student data to Third Parties. PowerSchool's uptake, storage, disclosure, and use of Data is governed by the individual contracts with and direction of each of its educational customers.

As limited by the foregoing general and specific objections, PowerSchool identifies EAB, Capture, Finalsite, the following members of PowerSchool's Partner Program, which include partners whose applications can be integrated with PowerSchool applications, and its data vendors and data subprocessors:

1. 911 Inform
2. Abnormal Security
3. Access411
4. Ann Education
5. AttendanceK12
6. August Schools
7. AWS
8. BatOnRoute
9. BenchPrep
10. Blocksi
11. Bloomz

12. Book Systems
13. Britannica
14. BusBoss
15. Canva
16. Career Key
17. Carnegie Learning
18. CENTEGIX
19. CenterPoint Education Solutions
20. Class Solver
21. ClassHook
22. ClickView
23. Code.org
24. Common App
25. CypherWorks
26. DiscoveryEd
27. e~Funds for Schools
28. EBSCOed, powered by Stacks
29. Edgenuity
30. Edlio
31. Edsby
32. Education Advanced
33. Educational Impact
34. Educational Vistas
35. EduHealth
36. EduTrak
37. Experian
38. EZSchoolPay
39. Faria Education Group

40. FIS Global
41. Goodheart-Wilcox
42. Great Minds
43. Harvest Technology Group
44. Heartland MySchoolBucks
45. Horizon Education
46. Hubbe Inc.
47. Human eSources
48. i3 Education
49. identiMetrics
50. Impero Software
51. interviewstream
52. InTouch Receipting
53. ISTE
54. JASON Learning
55. K12 BLOOM
56. Kami
57. KEV Group
58. KIDaccount
59. KnowBe4
60. Level Data
61. Lincoln Learning
62. Linq
63. LunchTime
64. Magic Wrighter
65. Magnus Health
66. Marcia Brenner Associates
67. MasteryPrep

68. McGraw-Hill Education
69. Meals Plus
70. Meet the Teacher
71. Microsoft Education
72. MobileServe
73. Monsido Powered by Acquia
74. NoRedInk
75. Ocean Youth Academy
76. Orah
77. Park Bench evScheduler
78. Park Bench Visual PST
79. Partnership to End Addiction
80. PCS Revenue Control
81. Pear Deck
82. PickUp Patrol
83. Pickup Pro
84. PrimeroEdge K-12 Child Nutrition Software
85. QuestSim
86. Raptor Technologies
87. Rave Mobile Safety
88. Reach Student Life Management
89. RevTrak
90. Roadtrip Nation (RTN)
91. RYCOR
92. Savvas
93. ScholarChip
94. School Dismissal Manager
95. SchoolCheckIn

96. SchoolDay.AI
97. SchoolPass
98. SchoolSoft
99. SchoolSoft Conference Manager
100. SchoolSoft Permission Form Manager
101. Scribbles
102. Seity Health
103. Shmoop
104. Sight On Scene
105. Skooli
106. Slooh
107. SNAP Health Center
108. Spark Hire
109. STEMscopes
110. Stepwell
111. Stronge and Associates Educational Consulting, LLC
112. Student Provisioning Services
113. Studyo
114. Stukent
115. SwipeK12
116. TES Software
117. The Danielson Group
118. Thrive Compass
119. TimeClock Plus
120. Tools4ever
121. TurnItIn
122. Vanco
123. Visitu

124. Vizor

125. Welfie

126. Writable

127. x2VOL Powered by intelliVOL

128. Amazon

129. Twilio

130. Fivetran

131. Oracle

132. Snowflake

133. Qlik

134. Microsoft Azure

135. SmaRTY

136. Mailgun

137. AuthO

138. Common Application

139. Parchment

140. Scribbles

141. Render

142. Make.com

143. Mandrill

144. HireRight

145. Accurate

146. Cognos

147. Gainsight

148. PostMark

149. Vanco

150. PostMark

151. Bandwidth

PowerSchool objects to subparts (a), (b), and (c) of this Interrogatory because each seek different information on each of the 151 third parties unrelated to the primary question and thus constitute as many as 453 separate interrogatories. *See Am. Bankers*, 2020 WL 8996760, at *1-2 (interrogatories requiring party to state, from four insurance policies, a quote of certain contract language and page number of certain provision, counted as eight separate interrogatories); *Collaboration Properties*, 224 F.R.D. at 474-75 (holding that a single interrogatory asking information about 26 allegedly infringing products constituted as 26 interrogatories). When coupled with other Interrogatories responded to herein, Interrogatory No. 5 requires PowerSchool to respond to a number of interrogatories that is far above the default limit or even the limit that Plaintiffs seek to impose in this case. *See* ECF No. 40, Joint Case Management Statement 5. This is overly burdensome and wholly disproportionate to the needs of the case.

The foregoing objection is compounded by Plaintiffs' overly broad and unreasonable definitions, including as to "CATEGORY OF DATA," which purports to require PowerSchool to identify not only the type of data ingested into PowerSchool product (e.g., "demographic information") but also the particular types of information actually the schools inputted into such field (e.g., "name, date of birth, gender, home address…"). *See* Pls.' Interrog. at 2 ¶ 9. By way of illustration, Plaintiffs allege that PowerSchool's "products have been deployed in more than 90 of the largest 100 districts … in the U.S." ECF No. 1, Compl. ¶ 36. Responding to the Interrogatory as to these 90 districts alone would require PowerSchool to determine which schools asked PowerSchool to integrate which of the foregoing 151 partners, what line of information each such school enabled each such partner to access, and what purpose such data access services.

Accordingly, Interrogatory No. 5(a)-(c) is unduly broad and unreasonable, and Plaintiffs cannot avoid the limitations on the number of interrogatories by asking PowerSchool to list its partners in one subpart of an interrogatory and then cross reference PowerSchool's responses to ask for a summation of all its documents and communications about each such partner in every circumstance. Nevertheless, PowerSchool will meet and confer with Plaintiffs about this Interrogatory.

**INTERROGATORY NO. 6:**

To the extent you contend that consent is a defense to Plaintiffs' claims, state your contentions about how YOU obtain consent to collect DATA, to use DATA, to store DATA, and to disclose DATA to third parties; from whom such consent is obtained, and to which products or services such consent pertains.

**RESPONSE TO INTERROGATORY NO. 6:**

PowerSchool objects to Interrogatory No.6 on the grounds that it is a premature contention interrogatory and because discovery and its investigation in this action is ongoing. PowerSchool has not yet completed its evaluation of all of its potential defenses to Plaintiffs' claims. PowerSchool reserves the right to supplement its response after discovery is complete. PowerSchool additionally objects to this Request to the extent that it incorrectly contends that PowerSchool "collects" student data as opposed to processing such data on behalf of schools.

PowerSchool objects to this Interrogatory because it presumes that consent is required, which is a disputed and incorrect statement of law. PowerSchool further objects to this Interrogatory because it is a compound Interrogatory, seeking first detail on how PowerSchool obtains consent and then asking for specific detail about such consent. PowerSchool will respond generally, explaining its contentions, based on facts presently identified, concerning consent as it relates to products and solutions offered to schools or school districts.

As limited by the foregoing general and specific objections, PowerSchool responds as follows:

**(a) Family Education Rights and Privacy Act.**

When offering products and services, PowerSchool is a "school official" under the Family and Education Rights and Privacy Act (FERPA) allowing schools or districts to share student data with PowerSchool without obtaining consent. *See* 34 C.F.R. § 99.31(a). Under FERPA, "[t]he parent or eligible student [(defined as 18 years or older)] [must] provide a signed and dated written consent before an educational agency or institution discloses personally identifiable information from the student's education records." 34 C.F.R. § 99.30. *However*, 34 C.F.R. § 99.31(a) authorizes certain types of sharing for which consent is not required, including sharing with "[a] contractor, consultant, volunteer, or other party to whom an agency or institution has outsourced institutional services or functions."

These service providers are considered "school officials" with whom schools can share information without consent if the service provider:

> (1) Performs an institutional service or function for which the agency or institution would otherwise use employees;
>
> (2) is under the direct control of the agency or institution with respect to the use and maintenance of education records; and
>
> (3) is subject to the requirements of § 99.33(a) governing the use and redisclosure of personally identifiable information from education records.

34 C.F.R. § 99.31(a). 34 C.F.R. 99.33(a) further allows for the "officers, employees, and agents of a party that receives information" under FERPA to use it "for the purposes for which the disclosure was made."

PowerSchool is a "school official" because it is a "contractor . . . to whom an agency or institution has outsourced institutional services or functions." 34 C.F.R. § 99.31(a). In providing its products and solutions, PowerSchool performs functions that would otherwise be performed by the schools or districts themselves. For example, Schoology assists teachers in distributing and collecting assignments, distributing grades, and other core educational functions. Naviance assists schools in providing guidance counseling on career and educational opportunities that are critical functions of schools. And Headed2 allows educators to access pre-built career prep lesson plans and at-a-glance reporting on student and class progress, as well as review and comment on student assignments. All of these functions are traditional educational functions.

PowerSchool is uniquely situated to provide secure, flexible solutions for schools and school districts' technological needs in the modern era and especially under the new norms created by COVID-19. Rather than developing these products themselves or relying on the old fashioned "paper way" of distributing assignments or posting flyers with information about colleges, etc., schools and districts contract with PowerSchool to use technology to complete the same tasks. Like businesses in other industries, schools require service providers like PowerSchool to provide online and software solutions where the school or district lacks the knowhow, scale, or resources to develop and maintain these products independently.

Further, PowerSchool remains firmly "under the direct control" of the schools "with respect to the use and maintenance of education records" when offering its enterprise services. As will be discussed below, the schools are always in direct control of student data under the contractual arrangement between PowerSchool and the schools. Moreover, PowerSchool only uses student data for the educational purpose for which the disclosure was made.

**(b) California Education Code and Other State Law**

Governing laws expressly allow schools to share their student data with contractors like PowerSchool without having to collect consent from individual students or their parents. Consistent with the federal authorization, the California Education Code, for example, allows school districts to provide "access to pupil records" to a person authorized by federal regulation to have them "without written parental consent." Cal. Educ. Code § 49076(a). The Code also independently permits school districts to release student records to contractors providing "outsourced institutional services or functions" to the districts "without written parental consent." *Id.* § 49076(a)(2)(G)(i). The term "pupil records," as used in the relevant section of the California Education Code means both of the following:

> (i) Any information directly related to a pupil that is maintained by the local educational agency.
>
> (ii) Any information acquired directly from the pupil through the use of instructional software or applications assigned to the pupil by a teacher or other local educational agency employee.

*Id.* § 49073.1(a)(5)(A).

**(c) Contracts with the Schools.**

The foregoing notwithstanding, PowerSchool does obtain consent from schools—on behalf of parents and students—for the processing of Personal Information from children.

PowerSchool implicitly gets the schools' consent on behalf of the parents through the direct sale of the products to the schools and school districts, and in addition, while not every contract contains such language, PowerSchool's practice is to explicitly get consent from schools via its specific contractual agreements with schools and districts.

These contracts, which may vary from school to school and are discussed below, specify that the schools either explicitly understand certain types of Personal Information will be processed by

PowerSchool or they direct PowerSchool to process additional data. And the schools direct how such Personal Information is used. PowerSchool's practice is to include in its agreements provisions that explicitly provide the ability for schools to direct that information be deleted and that contractually prohibit further use of a child's personal information beyond the scope of the services purchased by the school or district. PowerSchool then uses data processed exclusively to service the school in providing the educational service for which the data is processed.

For example, much of the data that schools share with PowerSchool's products and solutions is data from school administrative records previously maintained by the school about the student and then transferred to PowerSchool products. This data is not "collected" from individual students by PowerSchool at all.

PowerSchool's contractual agreements[1] with schools and school districts reinforce that it nevertheless receives consent from schools to process Personal Information from students where required by applicable law.

*First*, schools or districts always remain firmly in control of their student data. Schools are aware of or choose what data is transferred or uploaded to PowerSchool systems or collected from students. Moreover, upon clients' request, PowerSchool's data protection addendums (DPAs) contain data schedules allowing customers to select which specific data fields the school will choose to populate.[2]

Further, it is PowerSchool's practice to include language concerning the school's ability to direct PowerSchool to delete student data as well as a provision ensuring data is deleted at the conclusion of the relationship with the school or school district.

> Upon written request from Customer and in accordance with the applicable terms in the following provisions of the Section 13 (Return and Disposition of Customer Data), PowerSchool will dispose or delete all Customer Data within a commercially reasonable time period when it is no longer needed for the purpose for which it was obtained. . . .

---

[1] This Response describes PowerSchool's general contractual practices. Individual contractual agreements vary.

[2] *See* PowerSchool Privacy Policy available at https://www.powerschool.com/privacy/ ("Because PowerSchool does not own or control Customer Data, any request for access, review, correction, or deletion of Customer Data must come directly from our Customers.").

> Nothing in this DPA or the MSA authorizes PowerSchool to maintain Customer Data beyond the time period reasonably needed to complete the disposition. . . .
>
> Throughout the Term of the MSA, Customer may request partial disposal of Customer Data that is no longer needed. . . .
>
> Partial disposal of Customer Data will be subject to Customer's request to transfer such data to a separate account.

*Second*, PowerSchool's practice is to include contractual language addressing its role as a school official under FERPA, such as:

> If PowerSchool will have access to Education Records, Processor acknowledges that, for the purposes of this DPA and the MSA, pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g and its implementing regulations, 34 C.F.R. Part 99 ("FERPA"), it will be designated as a "school official" with "legitimate educational interests" in the Customer Education Records, Student Data, and Personal Data disclosed pursuant to the MSA, and PowerSchool agrees to abide by the FERPA limitations and requirements imposed on school officials. Processor will use the Education Records only for the purpose of fulfilling its duties under the MSA for Customer's and its Users' benefit, and shall not share Customer Data with or disclose it to any third party except as provided for in the MSA or this DPA, as required by Applicable Law, or if authorized in writing by the Customer.

*Third*, PowerSchool's practice of obtaining consent from schools as agents of parents for the processing of Personal Information from students is recorded in its contracts. Moreover, it is PowerSchool's practice for its contracts to require schools and school districts to accept the obligation to obtain any parent consent. For example, it is PowerSchool's practice to include explicit language in its agreements with schools acknowledging that PowerSchool has provided the school with notice of the data it will process, and that it will only use the data to benefit the school. PowerSchool's practice is also to include language requiring schools to attest that they are gaining any potentially necessary consent on behalf of students. For example, PowerSchool includes language such as:

> Customer represents and warrants that it has obtained all necessary consents and government authorizations required under Applicable Law to permit the Processing of Customer Data. . . .
>
> Where required by Applicable Law, Customer acknowledges it has obtained all valid consents from the parents or pupils related to the Customer Data sufficient to grant PowerSchool the permission to conduct Processing on such Customer Data on behalf of the Customer.
>
> Where applicable, Customer acknowledges that it will act as agent for the parents of students under the age of 13 for purposes of COPPA. Customer

> represents to PowerSchool that through the duration of this Agreement, the Customer is duly authorized to provide the data to PowerSchool for processing based on having obtained parental consent where necessary.

And even though not every contract contains this specific language, across all PowerSchool contracts, the substance of the agreement itself between PowerSchool and the school or district represents implied consent to PowerSchool's processing of student data on the customers' behalf in that the schools are selecting and purchasing the services PowerSchool provides *so that* PowerSchool, acting as a service provider, can process or maintain data on the schools' behalf.

**(d) Individual School Practices.**

Although discovery is still ongoing, PowerSchool further responds that there is evidence of schools and school districts obtaining express consent from parents and students. For example, the West Contra Costa Unified School District maintains an annual handbook that must be acknowledged by every parent (the "Handbook") and establishes that Plaintiffs David Concepción, L.M.C., and M.M.C., each granted their express consent.[3]

*First*, the Handbook contains a "Student Technology Acceptable Use & Internet Safety Policy," which must be signed by both students and parents. *See* Handbook § 8.10A. As part of the policy, students and parents acknowledge and agree:

- ***"The law permits school districts such as ours to consent to the collection of personal information on behalf of all of its students, thereby eliminating the need for individual parental consent given directly to the website operator."***
- That ***"anything [students] do online is public and can be monitored."***
- "Information stored on the district's network and school-based or district issued devices are not private. Electronic information, messages and files stored on the computer network may be treated like school lockers. Administrators may review any and all information to maintain system integrity and ensure that students are acting responsibly."
- "Electronic messages and files sent on the district's wireless network may be treated like any other school property. Administrators, staff, or network personnel may review files and messages to maintain system integrity and, if necessary, to ensure that users are acting responsibly."
- "If you are a parent or guardian of a student in the district, and you have concerns about your student's use of online electronic systems that store PII, we encourage you to speak with your school's principal or teachers to find out why we use the system and to inspect your student's stored work and information."

[3] https://docs.google.com/document/u/0/d/1EpZGAE4fKHRL80lAbvph16p29ymVHlIZRu68NzQCggI/pub?pli=1

- "Students shall not share confidential information or personally identifiable information with an open AI system of themselves, another student, staff member, or other person. Personally identifiable information includes, but is not limited to, a person's name, address, email address, telephone number, Social Security number, or other similar personally identifiable information."

- To "not give out any private information - such as full name, date of birth, address, phone number, or audio recordings or photos of ourselves or others - without family permission."

Handbook § 8.10A (emphases added).

Both students and parents agree that all of these "rules and guidelines" apply "while at [West Contra Costa Unified School District] as well as when off campus." Parents are also given an option to opt out.

*Second*, the following disclosure:

> School officers or employees having a legitimate educational interest may access student records without first obtaining parental consent. "School officers and employees" are persons employed by the District as an administrator, supervisor, instructor, or support staff member (including health or medical staff and District-employed law enforcement personnel) a Board member, a person or *company with whom the District has contracted to perform a special service* (auditor, medical consultant, special education service provider or therapist) or a parent or student serving as an official in performing his or her tasks. A "legitimate educational interest" is one held by a school officer or employee whose duties and responsibilities create a reasonable need for access.

Handbook § 7.24(e) (emphasis added).

*Third*, the following disclosure:

> One exception [(to a parent's right to consent to disclosures of personally identifiable information contained in the student's education records)], which permits disclosure without consent, is disclosure to school officials with legitimate educational interests. A school official is a person employed by the School as an administrator, supervisor, instructor, or support staff member (including health or medical staff and law enforcement unit personnel); a person serving on the School Board; a person *or company with whom the School has contracted to perform a special task* (such as an attorney, auditor, medical consultant, or therapist); or a parent or student serving on an official committee, such as a disciplinary or grievance committee, or assisting another school official in performing his or her tasks.

Handbook § 7.28(3) (emphasis added).

*Fourth*, the Handbook discloses the use of PowerSchool product, instructing parents to "review[] daily classwork, check[] homework, and review[] progress on Powerschool," including for "your child's most recent report cards"; teachers to "maintain[]" "[a]ssignments and marks . . . in the PowerSchool system or a gradebook"; and administrators to "[m]onitor teacher records including Powerschool, grades, progress reports, seating charts, and lesson plans." Handbook §§ 2.2, 2.9.

*Fifth*, the Handbook contains a "Parent-Student Acknowledgement Form" offering parents the opportunity to opt out from release of "directory information." This information subject to disclosure includes:

> Name, address, telephone, date of birth, email address, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, diplomas and awards received, and most recent previous educational institution attended.

Handbook § 7.31.

Individuals like Plaintiffs David Concepción, L.M.C., and M.M.C., who continued to use PowerSchool products and solutions despite these and other agreement and disclosure, either expressly consented or consent by virtue of electing not to seek to opt-out from the use of PowerSchool products and solutions.

**INTERROGATORY NO. 7:**

Identify each entity YOU have acquired, whether by purchase, merger, or any other means, and for each entity so identified, identify the date of the acquisition, state the reason for the acquisition, describe the assets that were acquired, and describe how YOU integrated or otherwise made available any acquired product or service.

**RESPONSE TO INTERROGATORY NO. 7:**

PowerSchool objects to this Interrogatory because it is a compound interrogatory consisting of three separate requests: (1) for an identification of certain acquisitions; (2) for detail about the business justifications and considerations that led to each such acquisitions; and (3) for an explanation as to certain of PowerSchool's post-acquisition activities. *E.g.*, *Am. Bankers*, 2020 WL 8996760, at *1-2;

*Collaboration Properties*, 224 F.R.D. at 474-75. PowerSchool will count this Interrogatory as three separate Interrogatories.

PowerSchool further objects to this Interrogatory insofar as it requests, as to each acquisition, PowerSchool detail its "reason for the acquisition" and manner of acquisition (including the precise asset acquired). Such information is irrelevant to this case, is a trade secret, is commercially sensitive, and is disproportionate and thus outside the scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1). PowerSchool will not respond as to these portions of the Interrogatory but agrees to confer with Plaintiffs about the relevance of the request.

As limited by the foregoing, PowerSchool responds as follows: Hoonuit (October 2020); Naviance (March 2021); Kickboard (December 2021); Kinvolved (February 2022); Headed2 (June 2022); Chalk.com (May 2022); Neverskip (August 2023); SchoolMessenger (October 2023); Allovue (January 2024). As to each acquisition that resulted in PowerSchool obtaining a new product, PowerSchool made such product available by: (a) promoting the new product to existing customers; (b) assuming contracts with customers of any pre-acquisition entity; or (c) renegotiating contracts with customers of any pre-acquisition entity when appropriate.

**INTERROGATORY NO. 8:**

Identify all ways in which YOU monetize DATA collected from STUDENTS and PARENTS who use YOUR products or services.

**RESPONSE TO INTERROGATORY NO. 8:**

PowerSchool objects to the term "Data" as vague and ambiguous and overbroad, including insofar as it encompasses "Data" unrelated to Students or Parents who use PowerSchool products. PowerSchool will interpret "Data" to mean, collectively, Customer Data, Collected Data, and Transaction Data, as those terms are defined in PowerSchool's Global Privacy Statement, available at https://www.powerschool.com/privacy/, and to the extent such Data is applicable to Students and Parents

PowerSchool further objects to the term "monetize" as vague, ambiguous, and undefined, and because it presumes the validity of Plaintiffs' allegations, which are in dispute. PowerSchool will interpret the term "monetize" to mean "to sell" and not to include, for example, instances when a

PowerSchool customer "directs [PowerSchool] to intentionally disclose personal information to another." *E.g.*, Cal. Civ. Code § 1798.140, subd. (t)(2)(A). PowerSchool additionally objects to this Request to the extent that it incorrectly contends that PowerSchool "collects" student data as opposed to processing such data on behalf of schools. As limited by the foregoing general and specific objections, PowerSchool responds that it does not sell data for money.

Dated: November 13, 2024

/s/ *Ethan Joel Levinton*
Ethan Joel Levinton

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, California 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky (*pro hac vice*)
Amelia H. Bailey (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Rachael A. Rezabek
Ethan Joel Levinton (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
oliva.adendorff@kirkland.com
rachael.rezabek@kirkland.com
ethan.levinton@kirkland.com

*Attorneys for Defendant*
*PowerSchool Holdings, Inc.*

**VERIFICATION**

I declare under penalty of perjury that the Responses to Plaintiffs' Non-Uniform Interrogatories Nos. 1, 2, 4, 5, 6, 7, 8 are true and correct.

Dated: November 13, 2024

/s/ DocuSigned by: Darron Flagg
A3AC3679AD71444...

Name: Darron Flagg

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2024, I served the foregoing document to the following counsel of record via e-mail:

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Robert B. Carey
Leonard W. Aragon
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
rob@hbsslaw.com
leonard@hbsslaw.com

Julie Liddell
EDTECH LAW CENTER PLLC
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law

*/s/ Ethan Joel Levinton*
Ethan Joel Levinton

# EXHIBIT B

the Committee on House Administration be approved by the House of Representatives; to the Committee on House Administration.

By Mr. PRICE of Illinois:

H. Res. 1498. Resolution disapproving the deferral of certain budget authority (D 75-111) relating to atomic energy which is proposed by the President in his message of November 26, 1974, transmitted under section 1013 of the Impoundment Control Act of 1974; to the Committee on Appropriations.

H. Res. 1499. Resolution disapproving the deferral of certain budget authority (D 75-112) relating to atomic energy which is proposed by the President in his message of November 26, 1974, transmitted under section 1013 of the Impoundment Control Act of 1974; to th Committee on Appropriations.

H. Res. 1500. Resolution disapproving the deferral of certain budget authority (D 75-113) relating to atomic energy which is proposed by the President in his message of November 26, 1974, transmitted under section 1013 of the Impoundment Control Act of 1974; to the Committee on Appropriations.

H. Res. 1501. Resolution disapproving the deferral of certain budget authority (D 75-114) relating to atomic energy which is proposed by the President in his message of November 26, 1974, transmitted under section 1013 of the Impoundment Control Act of 1974; to the Committee on Appropriations.

H. Res. 1502. Resolution disapproving the deferral of certain budget authority (D 75-116) relating to atomic energy which is proposed by the President in his message of November 26, 1974, transmitted under section 1013 of the Impoundment Control Act of 1974; to the Committee on Appropriations.

H. Res. 1503. Resolution disapproving the deferral of certain budget authority (D 75-117) relating to atomic energy which is proposed by the President in his message of November 26, 1974, transmitted under section 1013 of the Impoundment Control Act of 1974; to the Committee on Appropriations.

H. Res. 1504. Resolution disapproving the deferral of certain budget authority (D 75-119) relating to atomic energy which is proposed by the President in his message of November 26, 1974, transmitted under section 1013 of the Impoundment Control Act of 1974; to the Committee on Appropriations.

H. Res. 1505. Resolution disapproving the deferral of certain budget authority (D 75-121) relating to atomic energy which is proposed by the President in his message of November 26, 1974, transmitted under section 1013 of the Impoundment Control Act of 1974; to the Committee on Appropriations.

By Mr. COHEN:

H. Res. 1506. Resolution providing for the consideration of the bill (S. 1988) to extend U.S. jurisdiction over certain ocean areas to protect fish, and domestic fishing industry; to the Committee on Rules.

By Mr. LEGGETT:

H. Res. 1507. Resolution disapproving the deferral of budget authority relating to the Sacramento River Division of the Central Valley Project (Bureau of Reclamation) which is proposed by the President in his special message of October 31, 1974, transmitted under section 1013 of the Impoundment Control Act of 1974; to the Committee on Appropriations.

By Mr. WHALEN (for himself, Mr. BROWN of Michigan, Mr. DON H. CLAUSEN, Mr. FORD, Mr. JARMAN, Mr. JONES of Oklahoma, Mr. MADIGAN, Mr. MARTIN of North Carolina, Mr. MCSPADDEN, Mr. PRICE of Illinois, Mr. RUPPE, Mr. STEED, Mr. WHITEHURST, and Mr. CHARLES H. WILSON of California):

H. Res. 1508. Resolution expressing the sense of the House of Representatives with regard to the desirability of a postseason football game between the University of Oklahoma and the University of Michigan, the net proceeds of which would be donated to the American Cancer Society for cancer research; to the Committee on Education and Labor.

## PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII,

Mrs. MINK introduced a bill (H.R. 17634) to authorize Col. Charles Dolan, U.S. Air Force Reserve, to receive credit for certain activities of benefit to the United States in determining his entitlement to and amount of retired pay for nonregular service in the Armed Forces, which was referred to the Committee on the Judiciary.

# SENATE—*Friday, December 13, 1974*

The Senate met at 9 a.m. and was called to order by the Acting President pro tempore (Mr. METCALF).

### PRAYER

The Chaplain, the Reverend Edward L. R. Elson, D.D., offered the following prayer:

O Thou who rulest from on high, rule over us who serve in this place.

We thank Thee for the prophets' hope, the angels' song, and for the birth in Bethlehem. Help us amid the busy pace of daily duty to keep our hearts from becoming busy inns with no room for Thy coming. While we work may we work in the spirit of Him who was with the Father from the beginning, and comes again to share our common humanity. Possessed of His spirit, may we go to our tasks to honor Thy name and serve the Nation.

We pray in the Great Redeemer's name. Amen.

## THE JOURNAL

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that the reading of the Journal of the proceedings of Thursday, December 12, 1974, be dispensed with.

The ACTING PRESIDENT pro tempore. Without objection, it is so ordered.

## ORDER FOR SUBMISSION OF CLOTURE MOTION ON CONFERENCE REPORT ON THE TRADE REFORM ACT OF 1974, H.R. 10710

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that it may be in order at any time to submit a cloture motion on the conference report on the Trade Reform Act of 1974, after such conference report is ready for submission.

The ACTING PRESIDENT pro tempore. Without objection, it is so ordered.

## QUORUM CALL

Mr. ROBERT C. BYRD. Mr. President, I suggest the absence of a quorum.

The ACTING PRESIDENT pro tempore. The clerk will call the roll.

The assistant legislative clerk proceeded to call the roll.

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that the order for the quorum call be rescinded.

The ACTING PRESIDENT pro tempore. Without objection, it is so ordered.

## SHEILA J. PHELPS

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that the Senate proceed to the consideration of Calendar No. 1251, which has been cleared on both sides of the aisle.

The ACTING PRESIDENT pro tempore. The bill will be stated by title.

The assistant legislative clerk read as follows:

A bill (S. 3668) for the relief of Sheila J. Phelps.

The ACTING PRESIDENT pro tempore. Is there objection to the present consideration of the bill?

There being no objection, the Senate proceeded to consider the bill which had been reported from the Committee on the Judiciary with an amendment on page 1, in line 5, strike out "$4,599.18" and insert "$2,749.98," so as to make the bill read:

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of the Treasury is authorized and directed to pay, out of any money in the Treasury not otherwise appropriated, to Sheila J. Phelps, the sum of $2,749.98 in full settlement of all her claims against the United States for reimbursement for the loss of household goods and personal effects which were destroyed by fire on October 4, 1973, while stored in a warehouse at the expense of the United States. The payment of such sum shall be in addition to any amount paid to the said Sheila J. Phelps for such losses under the Military Personnel and Civilian Employees' Claims Act of 1964.

SEC. 2. No part of the amount appropriated in this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agency or attorney on account of services rendered in connection with this claim, any contract to the contrary notwithstanding. Violation of the provisions of this section is a misdemeanor punishable by a fine not exceeding $1,000.

The amendment was agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed.

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that extracts from the committee report, if such there be, be printed in the RECORD, in explanation of the bill.

The ACTING PRESIDENT pro tempore. Without objection, it is so ordered.

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent to have printed in the RECORD an excerpt from the report (Rept. No. 93-1321), explaining the purposes of the measure.



AUTHENTICATED U.S. GOVERNMENT INFORMATION GPO

lieu thereof "If any material or document in the education record of a student includes".

(ii) Such second sentence is amended by striking out "any student shall be entitled to receive, or be informed of, that part of such record or data as pertains to their child" and inserting in lieu thereof "one of such students shall have the right to inspect and review only such part of such material or document as relates to such student or to be informed of the specific information contained in such part of such material".

(C) The third sentence of such section is amended by striking out "their child's school records" and inserting in lieu thereof "the education records of their children".

(D) Section 438(b)(1) of such Act is amended by striking out "personally identifiable records or files (or personal information contained therein)" and inserting in lieu thereof "education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a))".

(E) Paragraph (2) of such section is amended by striking out "furnishing, in any form, any personally identifiable information contained in personal school records, to any persons other than those listed in subsection (b)(1)" and inserting in lieu thereof "releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection.".

(F) Section 438(a) of such Act is amended by adding at the end thereof the following new paragraphs:

"(4)(A) For the purposes of this section, the term 'education records' means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which—

"(i) contain information directly related to a student; and

"(ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.

"(B) The term 'education records' does not include—

"(i) records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute;

"(ii) if the personnel of a law enforcement unit do not have access to education records under subsection (b)(1), the records and documents of such law enforcement unit which (I) are kept apart from records described in subparagraph (A), (II) are maintained solely for law enforcement purposes, and (III) are not made available to persons other than law enforcement officials of the same jurisdiction;

"(iii) in the case of persons who are employed by an educational agency or institution but who are not in attendance at such agency or institution, records made and maintained in the normal course of business which relate exclusively to such person in that person's capacity as an employee and are not available for use for any other purpose; or

"(iv) records on a student who is 18 years of age or older, or is attending an institution of postsecondary education, which are created or maintained by a physician, psychiatrist, psychologist, or other recognized professional or para-professional acting in his professional or para-professional capacity, or assisting in that capacity, and which are created, maintained, or used only in connection with the provision of treatment to the student, and are not available to any one other than persons providing such treatment; provided, however, that such records can be personally reviewed by a physician or other appropriate professional of the student's choice.

"(C) Nothing in this section shall be construed to alter the confidentiality of communications otherwise protected by law as confidential.

"(5)(A) For the purposes of this section the term 'directory information' relating to a student includes the following: the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student.

"(B) Any educational agency or institution making public directory information shall give public notice of the categories of information which it has designated as such information with respect to each student attending the institution or agency and shall allow a reasonable period of time after such notice has been given for a parent to inform the institution or agency that any or all of the information designated should not be released without the parent's prior consent.".

(3) Section 438(a)(1) of such Act is amended by inserting "(A)" after section "Sec. 438. **(a)(1)" and adding at the end** thereof the following new subparagraph:

"(B) The first sentence of subparagraph (A) shall not operate to make available to students in institutions of postsecondary education the following materials:

"(i) financial records of the parents of the student or any information contained therein;

"(ii) confidential letters and statements of recommendation, which were placed in 1975, if such letters or statements are not the education records prior to January 1, used for purposes other than those for which they were specifically intended;

"(iii) if the student has signed a waiver of the student's right of access under this subsection in accordance with subparagraph (C), confidential recommendations—

"(I) respecting admission to any educational agency or institution,

"(II) respecting an application for employment, and

"(III) respecting the receipt of an honor or honorary recognition; and

"(C) A student or a person applying for admission may waive his right of access to confidential statements described in clause (iii) of subparagraph (B), except that such waiver shall apply to recommendations only if (i) the student is, upon request, notified of the names of all persons making confidential recommendations and (ii) in the case of recommendations described in clause (iii) of such subparagraph, such recommendations are used solely for the purpose for which they were specifically intended.".

(4)(A) Paragraph (2) of section 438(a) is amended by striking out that part thereof which precedes "to insure" and inserting in lieu thereof the following: "No funds shall be made available under any applicable program to any educational agency or institution unless the parents of students who are or have been in attendance at a school of such agency or at such institution are provided an opportunity for a hearing by such agency or institution, in accordance with regulations of the Secretary, to challenge the content of such student's education records, in order"

(B) Such paragraph (2) is amended by inserting before the period at the end thereof the following: "and to insert into such records a written explanation of the parents respecting the content of such records".

(5) Section 438(a) of such Act is amended by adding at the end thereof the following new paragraph:

"(6) For the purposes of this section, the term 'student' includes any person with respect to whom an educational agency or institution maintains education records or personally identifiable information, but does not include a person who has not been in attendance at such agency or institution.".

(6) Section 438(b)(1) of such Act is amended by striking out "and" at the end of clause (C), by striking out the period at the end of clause (D) and inserting in lieu thereof a semicolon, and by adding at the end thereof the following new clauses:

"(E) State and local officials or authorities to whom such information is specifically required to be reported or disclosed pursuant to State statute;

"(F) organizations of educational agencies or institutions for the purpose of developing, validating, and administering predictive tests, if such information will not permit the identification of any person by the organization receiving such information;

"(G) accrediting organizations in order to carry out their accrediting functions;

"(H) parents of a dependent student of such parents, as defined in section 152 of the Internal Revenue Code of 1954; and

"(I) subject to regulations of the Secretary, in connection with an emergency, appropriate persons if the knowledge of such information is necessary to protect the health or safety of the student or other persons.".

(7) Section 438(g) of such Act is amended by adding at the end thereof the following new sentence: "Except for the conduct of hearings, none of the functions of the Secretary under this section shall be carried out in any of the regional offices of such Department.".

(8)(A) Paragraph (1) of section 438(b) of such Act is amended by inserting "or practice" after "which has a policy".

(B) Clause (A) of section 438(b)(1) of such Act is amended by striking out "who" and inserting in lieu thereof ", who have been determined by such agency or institution to".

(C) Clause (B) of such section 438(b)(1) is amended by inserting "seeks or" after "student".

(D) Section 438(b)(3) of such Act is amended by striking out "after the data" down through "collected" and inserting in lieu thereof "by such officials or agencies".

(9) Paragraph (4)(A) of section 438(b) of such Act is amended to read as follows:

"(4)(A) Each educational agency or institution shall maintain a record, kept with the education records of each student, which will indicate all individuals (other than those specified in paragraph (1)(A) of this subsection), agencies, or organizations which have requested or obtained access to a student's education records maintained by such educational agency or institution, and which will indicate specifically the legitimate interest that each such person, agency, or organization has in obtaining this information. Such record of access shall be available only to parents, to the school official and his assistants who are responsible for the custody of such records, and to persons or organizations authorized in, and under the conditions of, clauses (A) and (C) of paragraph (1) as a means of auditing the operation of the system.".

(10)(A) Clause (C) of section 438(b)(1) of such Act is amended by striking out "section 409 of this Act" and inserting in lieu thereof "section 408(c)".

(B) Section 438(g) of such Act is amended by striking out ", according to the procedures contained in section 434 and 437 of this Act".

(b) The amendments made by subsection (a) shall be effective, and retroactive to, November 19, 1974.

Mr. BUCKLEY. Mr. President, since the enactment in October of the Family Educational Rights and Privacy Act of

1974, the educational community has pointed to certain ambiguities that have been contained in the language and provisions—that because there was none of the normal legislative history, it means that HEW does not have an adequate record on the basis of which to develop the necessary regulations.

After consultation with the Senator from Rhode Island, we concluded that the most appropriate way to handle the situation would be to offer at this time the amendment I have just submitted to the desk on our joint behalf, which incorporates the necessary clarifications.

I also send to the desk at this time a statement that Senator PELL and I have agreed to, which provides a narrative and explanation of the meaning and intent of the various provisions of the amendment. I ask unanimous consent that the statement be printed in the RECORD.

There being no objection, the statement was ordered to be printed in the RECORD, as follows:

JOINT STATEMENT IN EXPLANATION OF BUCKLEY/PELL AMENDMENT

The Family Educational Rights and Privacy Act of 1974, section 513 of the Education Amendments of 1974, was signed into law by President Ford on August 21, 1974. Its provisions became effective ninety days after enactment, on November 19.

The purpose of the Act is two-fold—to assure parents of students, and students themselves if they are over the age of 18 or attending an institution or postsecondary education, access to their education records and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent. The Secretary of Health, Education, and Welfare is charged with enforcement of the provisions of the Act, and failure to comply with its provisions can lead to withdrawal of Office of Education assistance to the educational agency or institution.

Since the passage of the Act, commonly referred to as the Buckley Amendment, after its principal sponsor, a number of ambiguities in its provisions have come to light. Since the language was offered as an amendment on the Senate floor, rather than having been the subject of Committee consideration, traditional legislative history materials such as hearings and Committee reports have not been available to serve as a guide to educational institutions, to students, and to the Department of Health, Education, and Welfare in carrying out their various responsibilities under the Act. The amendments being proposed are designed to remedy certain omissions in the provisions of existing law and to clarify other portions of the Act which have been the subject of extensive questioning and concern. It is the hope of the sponsors of these amendments that they provide a suitable response to the issues surrounding existing law which have been raised by parents, students, and institutions.

Existing law lists specifically, at several points in the Act, the institutions and agencies to which the provisions apply. However, these lists are not always identical, creating questions of the applicability of the Act to certain institutions under certain circumstances. The amendment, to standardize the Act's applicability, defines the term "educational agency or institution" as any public or private agency or institution which is the recipient of funds under any applicable program. This definition serves to clarify a number of issues. First, it makes uniform the Act's applicability under all its subsections, so that no question remains of a school's inclusion under one part of the Buckley Amendment but not under another. Second, by defining the term generically rather than specifically, the amendment eliminates the possibility that any agency or institution not meeting the specific definition might fall outside the Act's coverage. Finally, by explicitly limiting the definition to those institutions participating in applicable programs, the amendment makes it clear that the Family Educational Rights and Privacy Act applies only to Office of Education programs and those programs delegated to the Commissioner of Education for administration. The entire Buckley Amendment is an amendment to Part C of the General Education Provisions Act, which by its own terms applies only to the Office of Education. However, there has been some question as to whether the Amendment's provisions should be applied to other HEW education-related programs such as Headstart or the educational research programs of the National Institute of Education. As rewritten, the limited nature of the Act's coverage should be clear.

Under the Family Educational Rights and Privacy Act, a parent is given the right to challenge the contents of his child's records to insure that they are not inaccurate, misleading, or otherwise in violation of the student's privacy or other rights. This provision, section 438(a)(2) of the General Education Provisions Act, has raised a number of questions which these amendments seek to answer—1) who has the right to challenge, 2) what records are covered, and 3) what sort of proceeding should be undertaken.

First, these amendments clarify that the parent need not have a child still in attendance at the educational agency or institution at the time a hearing is sought in order to have the right to seek a hearing on the accuracy or appropriateness of material in his child's file. The Buckley Amendment does give parents the right to challenge the content of records once their children have left the school possessing the records in order to assure that records still maintained by the school which could subsequently become available to parties outside the school do not contain inaccurate or inappropriate material.

In addition, the material subject to challenge is defined generically as "education records," eliminating the long list of illustrative examples contained in existing law. "Education records" are described as those records, files, documents, and other materials directly related to a student which are maintained by a school or by one of its agents. This definition is a key element in the amendment. An individual should be able to know, review, and challenge all information—with certain limited exceptions—that an institution keeps on him, particularly when the institution may make important decisions affecting his future, or may transmit such personal information to parties outside the institution. This is especially true when the individual is a minor. Parents need access to such information in order to protect the interest of their child.

The amendment makes certain reasonable exceptions to the access by parents and students to school records. The private notes and other materials, such as a teacher's daily record book, created by individual school personnel (such as teachers, deans, doctors, etc.) as memory aids would not be available to parents or students, provided they are not revealed to another person, other than in the case of a substitute who performs another's duties for a temporary period.

The law enforcement records of a law enforcement unit associated with a school would be excluded if its personnel are not allowed access to a student's education records, and if its records on a student are used solely for law enforcement purposes and are only available to other law enforcement officials of the same jurisdiction.

The employment records of a person not attending a given school would not be available to him, even though he has been a student at another school, if they are used for other than employment purposes.

College students would not be able directly to inspect medical psychiatric, or similar records which are used solely in connection with treatment purposes and only available to recognized professionals or para-professionals in connection with such treatment. Such students would, however, be able to have a doctor or other professional of their choice inspect their records.

The amendment also notes that the law does not alter the confidentiality of communications otherwise protected by law.

The law is not specific concerning the format, procedure, or mechanism for the conduct of such a hearing at the local level. It is the intent of the sponsors of these amendments that again a rule of reason would be followed by those participants involved. Since the hearing is to be conducted at the local level, a detailed specification of procedures cannot be drawn that could possibly apply to each of the thousands of school districts and colleges across the nation. Each has a slightly different organizational structure and pattern of procedure. Obviously, the hearing mechanism must be adapted in each instance to conform to these individual differences. In some cases, a school district might wish to offer the parent a hearing at the district level; in other instances, disputes about the content of records might be better handled at the local school level. It is not the intent of the Amendment to burden schools with onerous hearing procedures.

The amendment is intended to require educational agencies and institutions to conform to fair information record-keeping practices. It is not intended to overturn established standards and procedures for the challenge of susbtantive decisions made by the institution. It is intended, however, to open the bases on which decisions are made to more scrutiny by the students, or their parents about whom decisions are being made, and to give them the opportunity to challenge and to correct—or at least enter an explanatory statement—inaccurate, misleading, or inappropriate information about them which may be in their files and which may contribute, or have contributed to an important decision made about them by the institution.

The law intends that parents have a full and fair opportunity to present evidence to show that their children's records contain inaccurate, misleading or otherwise inappropriate information. The hearing should be held and the institution's decision rendered within a reasonable period after the parent's request. There has been much concern that the right to a hearing will permit a parent or student to contest the grade given the student's performance in a course. That is not intended. It is intended only that there be procedures to challenge the accuracy of institutional records which record the grade which was actually given. Thus, the parents or student could seek to correct an improperly recorded grade, but could not through the hearing required pursuant to this law contest whether the teacher should have assigned a higher grade because the parents or student believe that the student was entitled to the higher grade.

On the other hand, if a child has been labeled mentally or otherwise retarded and put aside in a special class or school, parents would be able to review the materials in the record which led to this institutional decision, and perhaps seek professional assistance, to see whether these materials contain inaccurate information or erroneous evaluations about their child.

In general, it is intended that the parent would be shown the actual documents contained in the child's education records. However, under certain circumstances this might not be possible—where, for instance,

it is impossible to separate information about one student from that about others. If a student's name is one in a long list of names, it would violate the others' right to privacy to have the entire list shown to that student's parents. In such a situation, the responsibility of the educational agency or institution is to make the information concerning the student known to the parent, without actually having to show him the document.

Existing law prohibits the furnishing of personally identifiable information contained in school records to other than a specific list of persons, primarily other school officials, without the written consent of the student's parents or that of the student when he becomes 18 or enters postsecondary education. A literal interpretation of this language has led school attorneys around the country to advise their clients no longer routinely to print football players' weights in athletic programs and to seek written consent of the cast of the school play that their names may be printed in the program. This narrow reading of the law is not what its author intended to achieve, and he so stated during the floor debate in May on the amendment.

Therefore, these amendments specifically provide that a school may safely provide what is termed "directory information"—such personal facts as name, address, and telephone number—to third parties without fear of having its Federal funds withdrawn. The institution providing such directory information would be required to give public notice of the information it planned to make available to the general public, and to allow parents time to notify the institution that any or all of that information should not be released. This would allow parents with unlisted telephone numbers, for example, to have the right to keep such numbers unlisted.

On the other hand, clarification of the definition of "directory information" can be significant in allowing the functioning of other programs. For example, under the Guaranteed Student Loan Program a student is allowed a nine-month grace period after his last date of attendance before he is required to begin repayment of his obligation. If a school cannot routinely inform the lender of the student's last date of attendance, the lender has no basis for calculating when he may begin to collect the loan. These amendments would avoid this problem by making such information available on a routine basis, without a requirement that the student give his consent.

Much concern has been expressed by institutions of higher education concerning the potential impact of the Buckley Amendment on a number of traditional institutional practices. For instance, letters of recommendation for admission are usually solicited under a promise that such letters will not be available to the student, to his parents, or to third parties not associated with the purpose of the recommendation. What is their status if they become part of a student's permanent official file? Also, in conjunction with an application for student financial aid, a parent may have to file a financial statement. Should a student be given the right to see such a statement? If a student has acquired rights under the Amendment, can an institution require or suggest that he waive those rights and preserve the confidentiality of its files? These amendments seek to answer these and other questions.

A number of exceptions to the blanket right to see and challenge education records are made for students attending institutions of postsecondary education. They shall not have the right, under the provisions of the Amendment, to see financial records of their parents. They shall not have the right to see confidential letters and statements of recommendation placed in education records prior to January 1, 1975, provided that they are not used for purposes other than those for which they were intended. And students may waive their rights of access to confidential recommendations in three areas—admissions, job placement, and receipt of awards. To protect students from wholesale abuse of such continued possibility of confidentiality, the amendments require that a student be notified of the names of all persons making confidential recommendations, if he does agree to waive his right of access. This notification would include not only those individuals suggested by the student as possible references, but also any others solicited by the institution or volunteering their comment.

With regard to letters of recommendation for a student in an institution of postsecondary education, two further clarifications are included. The use of confidential recommendations is limited solely to the purpose for which they were specifically intended. Such recommendations should not become a part of the student's on-going file and serve as a basis for continued official decision-making for purposes other than for which such letters were originally submitted. Second, the "student" to whom the right of access belongs is defined as any person concerning whom the educational agency maintains education records or personal information, but does not include anyone who has not been in attendance at such agency or institution. This means that the rejected applicant for admission is not given the right under the Buckley Amendment to see and challenge his letters of recommendation, nor does the amendment give him the right to challenge the institution's decision not to admit him. Such a right accrues only to the individual who actually attends the institution. For the purpose of this definition, a student who is only auditing a course, but on whom the institution maintains a personal file, would be included in the Amendment's coverage.

Section 438(b)(1) of existing law restricts transfer, without the consent of parents or students, of personally identifiable information concerning a student to other educational agencies or institutions, other school officials, auditors from the General Accounting Office and the Department of Health, Education, and Welfare, and in connection with the application for or receipt of student financial aid under certain specified conditions. It has become apparent in the last several months that these restrictions are too narrow and, if strictly applied, would seriously interfere in the operation of educational institutions. Therefore, after consultation with numerous educational representatives as well as students, the authors of these amendments have included a series of other potential recipients of student information, without the necessity of securing individual parents' consent.

First, these amendments permit the transmittal of personal information to State and local officials or authorities as required by State statute. It was not intended, in establishing a minimum Federal standard for record confidentiality and access, to preempt the States' authority in the field. Therefore, if a State law requires an educational official to transmit a specific piece of information about a student to State or local officials, or liberalizes a student's access to his own education records even farther than the Family Educational Rights and Privacy Act, such as in Maine, Idaho, and New Mexico, where the law permits students of any age to see their records, State law may be followed without securing a parent's specific consent. Of course, the provisions of the amendment do not affect whatever rights a student or his parents might have in civil proceedings, as in the case where confidentially-received material causes the student or his parents actionable damage.

Organizations such as the Educational Testing Service, the Law School Admissions Council, the College Entrance Examination Board, and the American Medical College Application Service, and others, develop and validate a number of tests which are used by institutions of higher education to predict the potential success of applicants for admission. These and other similar groups need student data in order to perform their function. The amendments would authorize release of such data to these organizations without individual parents' or students' consent, so long as the data are not personally identifiable to the individuals and organizations receiving such data.

Similarly, accrediting agencies form the basis for institutional eligibility to participate in a wide range of Federal assistance programs. In order to assess the quality of an institution's program and the strength of the institution itself, the agency must have access to certain confidential student data. The amendments would authorize such access to enable the accreditor to carry out its functions.

One concern that has been expressed about the working of existing law pertains to the transfer of all parental rights to information to the student about the latter's attaining the age of 18 or enrolling in postsecondary education. Colleges have been reluctant to send bills or grades of their students to the students' parents, for fear of violating the students' rights. The amendments proposed would make it clear that the parent of a dependent student, as defined for income tax purposes, would have a right to information about his child without the institution's having to seek the students' consent.

Finally, under certain emergency situations it may become necessary for an educational agency or institution to release personal information to protect the health or safety of the student or other students. In the case of the outbreak of an epidemic, it is unrealistic to expect an educational official to seek consent from every parent before a health warning can be issued. On the other hand, a blanket exception for "health or safety" could lead to unnecessary dissemination of personal information. Therefore, in order to assure that there are adequate safeguards on this exception, the amendments provided that the Secretary shall promulgate regulations to implement this subsection. It is expected that he will strictly limit the applicability of this exception.

Because of the concern that regionalizing the enforcement of the law may lead to multiple interpretations of it, and possibly work a hardship on parents, students, and institutions, the amendment authorizes that only activities involving the conduct of hearings by the Secretary's review board may be carried out in the regional offices of HEW.

The remainder of the amendment is purely technical in nature, correcting erroneous cross-references found in existing law which were created as a result of changes made in the bill on the floor of the Senate and in conference. The provisions of the amendment are retroactive to November 19, 1974, the date on which the Family Educational Rights and Privacy Act became effective.

With guidelines not yet published, the provisions of the Act, and its ramifications, have been the subject of much uncertainty, causing perplexity among school officials and frustations among parents and students. It is the hope of the sponsors of this amendment that it will do much to clear up many of the unanswered questions, so that the substance of the provisions may be carried out in schools and colleges across the country as soon as possible, and so that parents and students may properly begin to exercise their rights under the law, and the protection of their privacy may be assured.

Case 3:24-cv-02706-JD Document 164-1 Filed 04/14/26 Page 39 of 180



Mr. MONDALE. Mr. President, I am somewhat concerned as are Senator WILLIAMS and Senator JAVITS about the provision of this amendment that would permit students to waive their rights to confidentiality of or access to their records. Under the provisions of this amendment would a postsecondary institution be permitted to require, as a condition of application, acceptance, or any other service normally provided to students at the institution, that a student sign such a waiver?

Mr. PELL. There is nothing in the proposed language which would permit an institution to require such a waiver as a precondition of application, or any other service normally provided to students at the institution.

Mr. MONDALE. Would there be any conditions under which an institution could compel any of its students to sign such a waiver?

Mr. PELL. Under the proposed language an institution would be permitted to request such a waiver of applicants or students but would not be permitted to require that the student waive his rights to either the confidentiality of his records, or his access to those records as a precondition to enrollment or matriculation or any other service normally provided to students at the institution under any circumstances.

Mr. MONDALE. Could a postsecondary institution request a student, at time of application for admission, or any time thereafter, to sign a general waiver which would effectively waive the student's rights to examine any recommendations at any time in the future? For example, under the proposed language, confidential statements or recommendations are split into three classes: Recommendations for applications of admission, for employment, and for honors or awards. Would, then, a postsecondary institution have to request the waiver for each of those classes of recommendations at the appropriate time?

Mr. PELL. A postsecondary institution could not request a general waiver which would apply for all time, but would have to ask for a waiver at the appropriate time for each class of confidential statement or recommendation.

Mr. BUCKLEY. Mr. President, in the course of the past weeks, the Senator from Rhode Island and his staff and my staff and I have been in frequent contact about the questions and problems which have arisen regarding the act. We have discussed the problems with representatives of the various educational groups and institutions, student groups, and public interest organizations. We have received a great deal of valuable information and suggestions, and I believe we have succeeded, after many hours of working together, to incorporate them all in language that I believe will meet every legitimate question that has been raised about the proposed legislation.

At this time, I should like to take occasion to express my deep personal appreciation of the tremendous spirit of cooperation and understanding that has been extended to me by the distinguished chairman of the subcommittee and to express my appreciation for his enormous sense of fairness.

Mr. PELL. Mr. President, I thank the Senator from New York.

I fully support and am, indeed, the cosponsor of the series of amendments offered by Senator BUCKLEY to the Family Educational Rights and Privacy Act. The Senator has introduced into the RECORD an agreed upon explanation of the amendments we have prepared which will serve as legislative history in interpreting the language of the amendments. I will, at a suitable point in the RECORD ask unanimous consent for the printing of a document which in a report on legislation would be termed a cordon print. It will show the changes in the existing law; what has been deleted and where the new language fits and how it will be read after adoption of these amendments.

I wish to thank Mr. BUCKLEY for his most cooperative attitude over the past 2 months. Since the first week of October, I have been in contact with him numerous times over certain interpretations of the law.

There was some thought given to deferring the effective date of the law, but we, after numerous discussions decided on a series of amendments which will amend the law so that parents, students, and institutions could better interpret the provisions and exercise their rights under them.

Senator BUCKLEY and I have spent many hours working over the specific language changes. These amendments are not intended to deal with every single issue which has been raised. I fully expect that as students and institutions attempt to deal with the amended law further questions could arise. The Subcommittee on Education could well have oversight hearings on this matter next year after the law has been in operation.

In any event, I again thank Senator BUCKLEY for his actions on this matter.

I ask unanimous consent to have printed in the RECORD the document I have referred to.

There being no objection, the document was ordered to be printed in the RECORD, as follows:

CHANGES IN EXISTING LAW

PROTECTION OF THE RIGHTS AND PRIVACY OF PARENTS AND STUDENTS

SEC. 438. (a)(1) No funds shall be made available under any applicable program to any [State or local educational agency, any institution of higher education, any community college, any school, agency offering a preschool program, or any other educational institution] *educational agency or institution* which has a policy of denying, or which effectively prevents, the parents of students [attending any school of such agency, or attending such institution of higher education, community college, school, preschool, or other educational institution,] *who are or have been in attendance at a school of such agency or at such institution, as the case may be* the right to inspect and review [any and all official records, files, and data directly related to their children, including all material that is incorporated into each student's cumulative record folder, and intended for school use or to be available to parties outside the school or school system, and specifically including, but not necessarily limited to, identifying data, academic work completed, level of achievement (grades, standardized achievement test scores,) attendance data, scores on standardized intelligence, aptitude, and psychological tests, interest inventory results, health data, family background information, teacher or counselor ratings and observations, and verified reports of serious or recurrent behavior patterns.] *the education records of their children.* [Where such records or data include] *If any material or document in the education record of a student includes* information on more than one student, the parents of [any student shall be entitled to receive, or be informed of, that part of such record or data as pertains to their child.] *one of such students shall have the right to inspect and review only such part of such material or document as relates to such student or to be informed of the specific information contained in such part of such material.* Each [recipient] *educational agency or institution* shall establish appropriate procedures for the granting of a request by parents for access to [their child's school records] *the education records of their children* within a reasonable period of time, but in no case more than forty-five days after the request has been made.

*(B) The first sentence of subparagraph (A) shall not operate to make available to students in institutions of postsecondary education the following materials:*

*(i) financial records of the parents of the student or any information contained therein;*

*(ii) confidential letters and statements of recommendation, which were placed in the education records prior to January 1, 1975, if such letters or statements are not used for purposes other than those for which they were specifically intended;*

*(iii) if the student has signed a waiver of the student's right of access under this subsection in accordance with subparagraph (C), confidential recommendations—*

*(I) respecting admission to any educational agency or institution,*

*(II) respecting an application for employment, and*

*(III) respecting the receipt of an honor or honorary recognition; and*

*(C) A student or a person applying for admission may waive his right of access to confidential statements described in clause (iii) of subparagraph (B), except that such waiver shall apply to recommendations only if (i) the student is, upon request, notified of the names of all persons making confidential recommendations and (ii) in the case of recommendations described in clause (iii) of such subparagraph, such recommendations are used solely for the purpose for which they were specifically intended.*

(2) [Parents shall have an opportunity for a hearing to challenge the content of their child's school records,] *No funds shall be made available under any applicable program to any educational agency or institution unless the parents of students who are or have been in attendance at a school of such agency or at such institution are provided an opportunity for a hearing by such agency or institution, in accordance with regulations of the Secretary, to challenge the content of such student's education records, in order* to insure that the records are not inaccurate, misleading, or otherwise in violation of the privacy or other rights of students, and to provide an opportunity for the correction or deletion of any such inaccurate, misleading, or otherwise inappropriate data contained therein *and to insert into such records a written explanation of the parents respecting the content of such records.*

*(3) For the purposes of this section the term "educational agency or institution" means any public or private agency or institution which is the recipient of funds under any applicable program.*

*(4)(A) For the purposes of this section, the*

term "education records" means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which—

(i) contain information directly related to a student; and

(ii) are maintained by an educational agency or institution, or by a person acting for such agency or institution.

(B) The term "education records" does not include—

(i) records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute;

(ii) if the personnel of a law enforcement unit do not have access to education records under subsection (b)(1), the records and documents of such law enforcement unit which (I) are kept apart from records described in subparagraph (A), (II) are maintained solely for law enforcement purposes, and (III) are not made available to persons other than law enforcement officials of the same jurisdiction;

(iii) in the case of persons who are employed by an educational agency or institution but who are not in attendance at such agency or institution, records made and maintained in the normal course of business which relate exclusively to such person in that person's capacity as an employee and are not available for use for any other purpose; or

(iv) records on a student who is 18 years of age or older, or is attending an institution of postsecondary education, which are created or maintained by a physician, psychiatrist, psychologist, or other recognized professional or para-professional acting in his professional or para-professional capacity, or assisting in that capacity, and which are created, maintained, or used only in connection with the provision of treatment to the student, and are not available to anyone other than persons providing such treatment; provided, however, that such records can be personally reviewed by a physician or other appropriate professional of the student's choice.

(C) Nothing in this section shall be construed to alter the confidentiality of communications otherwise protected by law as confidential.

(5)(A) For the purposes of this section the term "directory information" relating to a student includes the following: the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student.

(B) Any educational agency or institution making public directory information shall give public notice of the categories of information which it has designated as such information with respect to each student attending the institution or agency and shall allow a reasonable period of time after such notice has been given for a parent to inform the institution or agency that any or all of the information designated should not be released without the parent's prior consent.

(6) For the purposes of this section, the term "student" includes any person with respect to whom an educational agency or institution maintains education records or personally identifiable information, but does not include a person who has not been in attendance at such agency or institution.

"(b)(1) No funds shall be made available under any applicable program to any [State or local educational agency, any institution of higher education, any community college, any school, agency offering a preschool program, or any other educational institution] educational agency or institution which has a policy or practice of permitting the release of [personally identifiable records or files (or personal information contained therein)] education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a)) of students without the written consent of their parents to any individual, agency, or organization, other than to the following—

(A) other school officials, including teachers within the educational institution or local educational agency [who], who have been determined by such agency or institution to have legitimate educational interests;

(B) officials of other schools or school systems in which the student seeks or, intends to enroll, upon condition that the student's parent be notified of the transfer, receive a copy of the record if desired, and have an opportunity for a hearing to challenge the content of the record;

(C) authorized representatives of (i) the Comptroller General of the United States, (ii) the Secretary, (iii) an administrative head of an education agency (as defined in section [409] 408(c) of this Act), or (iv) State educational authorities, under the conditions set forth in paragraph (3) of this subsection; and

(D) in connection with a student's application for, or receipt of, financial aid;

(E) State and local officials or authorities to which such information is specifically required to be reported or disclosed pursuant to State statute;

(F) organizations of educational agencies or institutions for the purpose of developing, validating, and administering predictive tests, if such information will not permit the identification of any person by the organization receiving such information;

(G) accrediting organizations in order to carry out their accrediting functions;

(H) parents of a dependent student of such parents, as defined in section 152 of the Internal Revenue Code of 1954; and

(I) subject to regulations of the Secretary, in connection with an emergency, appropriate persons if the knowledge of such information is necessary to protect the health or safety of the student or other persons.

(2) No funds shall be made available under any applicable program to any [State or local educational agency, any institution of higher education, any community college, any school, agency offering a preschool program, or any other educational institution] education agency or institution which has a policy or practice of [furnishing, in any form, any personally identifiable information contained in personal school records, to any present other than those listed in subsection (b)(1)] releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection unless—

(A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or

(B) such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency.

(3) Nothing contained in this section shall preclude authorized representatives of (A) the Comptroller General of the United States, (B) the Secretary, (C) an administrative head of an education agency or (D) State educational authorities from having access to student or other records which may be necessary in connection with the audit and evaluation of Federally supported education program, or in connection with the enforcement of the Federal legal requirements which relate to such programs: *Provided*, That, except when collection of personally identifiable data is specifically authorized by Federal law, any data collected by such officials with respect to individual students shall not include information (including social security numbers) which would permit the personal identification of such students or their parents [after the data so obtained has been collected] by such officials or agencies.

[(4)(A) With respect to subsections (c)(1) and (c)(2) and (c)(3), all persons, agencies, or organizations desiring access to the records of a student shall be required to sign a written form which shall be kept permanently with the file of the student, but only for inspection by the parents or student, indicating specifically the legitimate educational or other interest that each person, agency, or organization has in seeking this information. Such form shall be available to parents and to the school official responsible for record maintenance as a means of auditing the operation of the system.]

(4)(A) Each educational agency or institution shall maintain a record, kept with the education records of each student, which will indicate all individuals (other than those specified in paragraph (1)(A) of this subsection), agencies, or organizations which have requested or obtained access to a student's education records maintained by such educational agency or institution, and which will indicate specifically the legitimate interest that each such person, agency, or organization has in obtaining this information. Such record of access shall be available only to parents, to the school official and his assistants who are responsible for the custody of such records, and to persons or organizations authorized in, and under the conditions of, clauses (A) and (C) of paragraph (1) as a means of auditing the operation of the system.

(B) With respect to this subsection, personal information shall only be transferred to a third party on the condition that such party will not permit any other party to have access to such information without the written consent of the parents of the student.

(c) The Secretary shall adopt appropriate regulations to protect the rights of privacy of students and their families in connection with any surveys or data-gathering activities conducted, assisted, or authorized by the Secretary or an administrative head of an education agency. Regulations established under this subsection shall include provisions controlling the use, dissemination, and protection of such data. No survey or data-gathering activities shall be conducted by the Secretary, or an administrative head of an education agency under an applicable program, unless such activities are authorized by law.

(d) For the purposes of this section, whenever a student has attained eighteen years of age, or is attending an institution of postsecondary education the permission or consent required of and the rights accorded to the parents of the student shall thereafter only be required of and accorded to the student.

(e) No funds shall be made available under any applicable program [unless the recipient of such funds] to any educational agency or institution unless such agency or institution informs the parents of students, or the students, if they are eighteen years of age or older, or are attending an institution of postsecondary education, of the rights accorded them by this section.

(f) The Secretary, or an administrative head of an education agency, shall take appropriate actions to enforce provisions of this section and to deal with violations of this

section, according to the provisions of this Act, except that action to terminate assistance may be taken only if the Secretary finds there has been a failure to comply with the provisions of this section, and he has determined that compliance cannot be secured by voluntary means.

(g) The Secretary shall establish or designate an office and review board within the Department of Health, Education, and Welfare for the purpose of investigating, processing, reviewing, and adjudicating violations of the provisions of this section and complaints which may be filed concerning alleged violations of this section [according to the procedures contained in sections 434 and 437 of this Act]. *Except for the conduct of hearings, none of the functions of the Secretary under this section shall be carried out in any of the regional offices of such Department.*

The PRESIDING OFFICER. The question is on agreeing to the amendment of the Senator from New York and the Senator from Rhode Island.

The amendment was agreed to.

The PRESIDING OFFICER. The question is on agreeing to the motion of the Senator from Rhode Island to concur in the House amendment with an amendment.

The motion was agreed to.

Mr. PELL. Mr. President, I move that the Senate insist upon its amendments and ask for a conference with the House, and that the Chair be authorized to appoint the conferees on the part of the Senate.

The motion was agreed to; and the Presiding Officer (Mr. WILLIAMS) appointed Mr. PELL, Mr. RANDOLPH, Mr. WILLIAMS, Mr. KENNEDY, Mr. MONDALE, Mr. EAGLETON, Mr. CRANSTON, Mr. HATHAWAY, Mr. DOMINICK, Mr. JAVITS, Mr. SCHWEIKER, Mr. BEALL, and Mr. STAFFORD conferees on the part of the Senate.

## SUPPLEMENTAL APPROPRIATIONS, 1975—CONFERENCE REPORT

The Senate continued with the consideration of the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H.R. 16900) making supplemental appropriations for the fiscal year ending June 30, 1975, and for other purposes.

## CLOTURE MOTION

Mr. ROBERT C. BYRD. Mr. President, I send to the desk a cloture motion.

The PRESIDING OFFICER (Mr. WILLIAMS). The cloture motion having been presented under rule XXII, the Chair, without objection, directs the clerk to read the motion.

The legislative clerk read as follows:

CLOTURE MOTION

We, the undersigned Senators, in accordance with the provisions of Rule XXII of the Standing Rules of the Senate, hereby move to bring to a close the debate upon the amendment by the Senator from Pennsylvania (Mr. SCOTT) to House Amendment No. 17 to H.R. 16900, the Supplemental Appropriation Bill for 1975.

Pete Domenici, Robert Taft, Jr., Robert T. Stafford, Charles Percy, James B. Pearson, Jacob K. Javits, Hugh Scott, Clifford P. Case, Jennings Randolph, John O. Pastore, Warren G. Magnuson, Frank E. Moss, Claiborne Pell, Harrison A. Williams, Abraham Ribicoff, Frank Church, Quentin N. Burdick, Walter F. Mondale, Alan Cranston.

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that the 1 hour under rule XXII tomorrow customarily used for debate on the motion to invoke cloture, on the Scott amendment to the amendment in disagreement No. 17 of the Supplemental Appropriation conference report, be equally divided between the Senator from Alabama (Mr. ALLEN) and the Senator from Pennsylvania (Mr. HUGH SCOTT).

The PRESIDING OFFICER. Without objection, it is so ordered.

## AMENDMENT OF THE EXPORT-IMPORT BANK ACT—CONFERENCE REPORT

The Senate continued with the consideration of the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H.R. 15977) to amend the Export-Import Bank Act of 1945, and for other purposes.

## CLOTURE MOTION

Mr. ROBERT C. BYRD. Mr. President, I send to the desk a cloture motion.

The PRESIDING OFFICER (Mr. WILLIAMS). The cloture motion having been presented under rule XXII, the Chair, without objection, directs the clerk to read the motion.

The legislative clerk read as follows:

CLOTURE MOTION

We, the undersigned Senators, in accordance with the provisions of Rule XXII of the Standing Rules of the Senate, hereby move to bring to a close the debate upon the adoption of the conference report on H.R. 15977, the Export-Import Bank Act Amendment.

Bob Packwood, John Tower, Edward W. Brooke, Paul J. Fannin, J. Glenn Beall, Adlai Stevenson, Thomas J. McIntyre, Walter F. Mondale, Dick Clark, Frank E. Moss, Lee Metcalf, Daniel Inouye, Gale W. McGee, Harrison A. Williams, Claiborne Pell, Edward Kennedy, Robert Stafford, Robert Taft, Jr., Charles W. Percy, Jacob K. Javits.

## ORDER TO HOLD RESOLUTIONS ON DEFERRALS AT THE DESK

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that two resolutions at the desk on deferrals, one by Mr. BENNETT and one by Mr. HUMPHREY, be held at the desk for later disposition. I further request that the later disposition not be had without my having first been contacted.

The PRESIDING OFFICER. Without objection, it is so ordered.

## COMMITTEE MEETINGS DURING SENATE SESSIONS

Mr. ROBERT C. BYRD. Mr. President, on behalf of the Senator from Michigan (Mr. HART) I ask unanimous consent that the Subcommittee on Administrative Practices of the Committee on the Judiciary be authorized to conduct hearings on amnesty on Wednesday and Thursday, December 18 and 19.

The PRESIDING OFFICER. Without objection, it is so ordered.

Mr. ROBERT C. BYRD. I ask unanimous consent that the Committee on the Judiciary be authorized to meet on Thursday, December 19, to consider various nominations, and that the Committee on the Budget be authorized to meet Tuesday, December 17, Wednesday, December 18, and Thursday, December 19, to consider the impact of the changing economy on appropriate fiscal policies.

The PRESIDING OFFICER. Without objection, it is so ordered.

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that the Committee on the Judiciary be authorized to meet on Monday, December 16, to consider the nomination of Murray Saltzman to be a member of the Commission on Civil Rights.

The PRESIDING OFFICER. Without objection, it is so ordered.

## CONSIDERATION OF CERTAIN MEASURES ON THE CALENDAR

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that the Senate proceed to the immediate consideration of the following measures on the calendar: Calendar Order No. 1248, Calendar Order No. 1264, Calendar Order No. 1266, Calendar Order No. 1267, Calendar Order No. 1270, and Calendar Order No. 1272.

The PRESIDING OFFICER. Without objection, it is ordered.

## CHILDREN'S GIFT BELL MEMORIAL

The Senate proceeded to consider the joint resolution (S.J. Res. 212) to authorize the erection of a Children's Gift Bell and Memorial Tower in the District of Columbia, and for other purposes, which had been reported from the Committee on Public Works with an amendment to strike out all after the resolving clause and insert in lieu thereof:

That the American Freedom Train Foundation is authorized to erect a Children's Gift Bell memorial bell tower of appropriate design on public grounds in the District of Columbia or its environs, in honor of the bicentennial celebration of the signing of the Declaration of Independence.

SEC. 2. (a) The Secretary of the Interior is authorized and directed to select, with the approval of the National Commission of Fine Arts and the National Capital Planning Commission, a suitable site on public grounds in the District of Columbia, or its environs, upon which may be erected the memorial authorized in the first section of this Act: *Provided*, That if the site selected is on public grounds belonging to or under the jurisdiction of the government of the District of Columbia, the approval of the Mayor and City Council of the District of Columbia shall be obtained.

(b) The design and plans for such memorial bell tower shall be subject to the approval of the Secretary of the Interior, the National Commission of Fine Arts, and the National Capital Planning Commission.

SEC. 3. The memorial authorized to be erected by the first section of this Act shall be erected without expense to the United States and shall be maintained by the Secretary of the Interior.

SEC. 4. The authority granted by the first section of this Act shall terminate three

# EXHIBIT C

# SENATE—*Tuesday, May 13, 1975*

*(Legislative day of Monday, April 21, 1975)*

The Senate met at 12 noon, on the expiration of the recess, and was called to order by the President pro tempore (Mr. EASTLAND).

## PRAYER

The Chaplain, the Reverend Edward L. R. Elson, D.D., offered the following prayer:

O God and Father of us all, grant us now a sense of Thy nearness and Thy power. Impart to each of Thy servants in this place a measure of that higher wisdom which is Thy gift to those who trust in Thee. In this forum of democracy, amid the din of debate and the clash of differing opinions, keep us united in prayer and in that higher purpose which ever seeks to know and to do Thy will. Lift our vision above the troubled world that is, to that better world which is yet to be, when all men and all nations shall be gathered in Thy perfect kingdom.

Through Him who is Lord and Master. Amen.

## THE JOURNAL

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that the Journal of the proceedings of Monday, May 12, 1975, be approved.

The PRESIDENT pro tempore. Without objection, it is so ordered.

## COMMITTEE MEETINGS DURING SENATE SESSION

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that all committees may be authorized to meet during the session of the Senate today.

The PRESIDENT pro tempore. Without objection, it is so ordered.

## ORDER THAT NO ROLLCALL VOTES OCCUR TOMORROW BEFORE 12:30 P.M.

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that there be no rollcall votes tomorrow before 12:30 p.m., in order that committees may meet without interruption.

The PRESIDENT pro tempore. Without objection, it is so ordered.

## ORDER OF BUSINESS

The PRESIDENT pro tempore. The Senator from Michigan is recognized.

Mr. GRIFFIN. Mr. President, I yield the time allotted to the minority leader to the distinguished Senator from Nebraska.

The PRESIDENT pro tempore. The Senator from Nebraska is recognized.

Mr. CURTIS. I thank the distinguished Senator from Michigan.

## NATIONAL WELFARE REFORM ACT OF 1975—S. 1719

Mr. CURTIS. Mr. President, today I am being joined by 18 distinguished Members of the Senate in the introduction of a major welfare reform measure which is designed to correct many of the defects in the aid-to-families-with-dependent-children program, S. 1719.

This program, the Nation's largest cash assistance program, has grown alarmingly in recent years: It took 15 years, from 1940 to 1955, for the AFDC rolls to double. They doubled again from 1955 to 1965, and by 1970 the rolls had doubled once more. Now, in the cities of this Nation, we find that the ratio of children on welfare is one in five in Chicago and Detroit, one is four in New York and Newark, and one in three in St. Louis, Baltimore, Boston, and Washington.

Certainly, many of these are truly needy families, caught in a spiral of economic difficulty and dependency through no fault of their own.

Careful and detailed analysis of the AFDC program, however, reveals there are many defects in the Social Security Act itself which cause high-income people to be eligible for welfare, which have created loopholes enabling certain individuals to manipulate the system, and which permit opportunities for fraud and laxity at a time when the resources of this country for public assistance are so critically strained.

It is incumbent upon us to assess carefully the effect of every income exemption, every work-related expense deduction, and every eligibility criterion to make sure the Nation's resources are in fact going to the legitimately needy. The bill we are introducing today, entitled the National Welfare Reform Act, will:

Stop the practice of persons with high incomes remaining on the welfare rolls, by instituting a gross income limit and improving the method by which we compute earnings exemptions and work-related expense deductions;

Eliminate from eligibility persons who should not benefit from tax-supported assistance at all and curtail opportunities for fraud, by identifying and closing loopholes and tightening eligibility and identification requirements;

Carefully identify outside resources that are available to recipients and require their utilization in a cost/beneficial manner, so tax dollars do not replace resources that recipients in fact have available to them;

Affirm the concept of family responsibility and strengthen child support requirements; a parent who defaults on his family support responsibilities is at the heart of much of the welfare problem;

Strengthen work requirements and provide the States with needed latitude in designing effective programs to assist welfare recipients to return to self-sufficiency; and

Permit a more rational allocation of resources to persons who are legitimately in need.

The last point, Mr. President, is a critical one. It has been estimated that the provisions of this bill can save in excess of $1.5 billion, without harming recipients who are in legitimate need. Experience in a number of States with welfare reform has shown that through this careful, analytical approach, tax resources can be freed in massive amounts which can be redirected to areas of greatest need. This could be, at the discretion of the States, in any one of a number of areas: Direct increases in the grants to the truly needy, additional revenue to meet caseload growth resultant from unemployment, additional child care, or whatever social assistance programs the States have found to be most productive in alleviating dependency.

Mr. President, this Nation has called time and again for meaningful welfare reform. This bill represents a major effort to do what has long been needed at the Federal level: An identification of those many corrective steps that can be taken in the AFDC program without having an adverse effect on the legitimately needy, and that will, in fact, have a beneficial effect by making more resources available to meet their needs. This, in my judgment, is real welfare reform, and the bipartisan support for this measure reflects our conviction that this is the direction this Nation should follow in bringing our burgeoning welfare programs under control and in meeting the needs, at the same time, of those persons who, through no fault of their own, must rely on public assistance.

This proposal is the result of study and conferences on the part of a number of Senators. In this we have drawn heavily upon the experience of the State of California. I am happy to report that the following Senators have joined as cosponsors of this legislation: Mr. THURMOND, Mr. HARRY F. BYRD, JR., Mr. HELMS, Mr. HANSEN, Mr. TALMADGE, Mr. MCCLURE, Mr. HRUSKA, Mr. BUCKLEY, Mr. LAXALT, Mr. LONG, Mr. DOLE, Mr. FANNIN, Mr. GOLDWATER, Mr. WILLIAM L. SCOTT, Mr. BARTLETT, Mr. ROTH, Mr. TOWER, and Mr. BROCK.

Mr. President, all our welfare programs merit attention at this time. We should keep in mind that when we amend the law to prevent abuses and remove from the rolls individuals who should be removed, we can then increase the benefits for those in our midst who are truly needy as well as serve the best interests of the taxpayers.

Mr. THURMOND. Mr. President, since its beginning in 1936, the Nation's Aid to Families With Dependent Children has grown at a spiraling rate. Case loads have increased over 20 times. The ratio of children covered has grown from 1 in 50 to 1 in 8. The Aid to Families with Dependent Children portion of the Federal budget has risen 6,800 percent.

At every level of government, increasing fiscal distress has been experienced as this, and a number of other public assistance programs, has grown in a way that is an invitation to inherited dependency and involvement in a growing bureaucratic maze. Many States have embarked upon welfare reform efforts, some dramatically successful. But the experience of State, county, and city officials in the country has been that they

AUTHENTICATED U.S. GOVERNMENT INFORMATION GPO

is proceeding as quickly as it can. However, the removal of natural gas from Minnesota industries as required under FPC orders, if coupled with the reductions in oil availability that could result from implementation of the cited FEA rule, will leave our region with such an energy shortage that we may not have the capacity to move into the coal economy of the future.

In addition to priority allocation of Canadian crude, there are several steps which should be taken now to try to avert the consequences of an oil and gas squeeze on Minnesota. First and foremost among these are serious negotiations with the Canadians to explore the possibilities for continuing the supply of crude to the Northern Tier region beyond 1982. All forms of cooperation, including supply swaps and Alaska-Canada-Continental U.S. crude oil and gas pipelines, should be explored. Additionally, FEA and State should explore the possibilities of increasing the supply of natural gas at current prices from Canada, so that Minnesota's energy problems will not be exacerbated. The price of Canadian gas is currently sufficiently high to encourage exploration. Finally, we will need to take steps to increase domestic supplies of natural gas.

Now is the time for swift FEA action—on fair and equitable allocations of Canadian crude, and on securing Canadian agreement to cooperative efforts on energy supply questions. I urge you to act.

## ANNOUNCEMENT OF POSITION ON VOTE

Mr. PACKWOOD. Mr. President, I regret that I could not be in attendance yesterday afternoon when the Senate voted on Senator WEICKER's amendment No. 342 to the Consumer Protection Act of 1975, S. 200. I wish to make it known that, had I been present, I would have voted against this amendment offered by my distinguished colleague from Connecticut.

Senator WEICKER's amendment would strike from section 16 of S. 200, the exemptions for certain labor disputes. In effect, this would place management-labor negotiations within the purview of the Agency for Consumer Advocacy.

I submit that it would not be proper for the Agency to become involved in these negotiations. The Agency is designed primarily to invoke consumer interests into the regulatory process of our Federal Government and its authors did not intend the Agency to have a role in either the prices charged by management for products or the wages negotiated by labor for their services.

Should we at a future time decide that the collective-bargaining process in this country be adjusted, then I suggest we direct specific legislation toward the deficiencies that require attention. The Agency for Consumer Advocacy presents us neither with the time nor the place for such adjustments.

## THE GENOCIDE CONVENTION

Mr. PROXMIRE. Mr. President, nobody could or would raise objection to the purpose of the United Nations Convention which outlaws genocide. The primary objections which have been raised in the years since the convention was first submitted to the Senate have dealt with constitutional and other legal points.

But, over the years these objections have slowly subsided as it becomes clear that the convention does not challenge or violate the Constitution or any Federal laws. As Supreme Court Justice William Rehnquist, then Assistant Attorney General, said:

> Twenty years ago Solicitor General Perlman provided a detailed and scholarly statement to a subcommittee of the Foreign Relations Committee on the Constitutional and other legal questions surrounding the Genocide Convention. In 1950 some of the questions concerning Federal jurisdiction and the treaty power were considered somewhat novel. However, developments in the intervening years—the extensive use of the treaty power and the growth of Federal criminal jurisdiction—have, it seems, illuminated both these areas to the point where I believe I can safely say that the questions before the Committee and the Senate are more matters of legal power.

To me it seems that the only matter of policy left is whether we want to oppose genocide as strongly as the United Nations Convention does. I can see only the most beneficial results in lending our support. I believe that we have only to gain and I call again for immediate action.

## SENATOR BUCKLEY'S ADDRESS BEFORE THE LEGISLATIVE CONFERENCE OF THE NATIONAL CONGRESS OF PARENTS AND TEACHERS

Mr. BUCKLEY. Mr. President, not long ago I addressed the legislative conference of the National Congress of Parents and Teachers—PTA—on the reasons and beliefs that prompted me to introduce the Family Educational Rights and Privacy Act of 1974. Because I have had many inquiries from the public and from congressional offices on this subject, I ask unanimous consent that the text of my remarks be printed in the RECORD.

There being no objection, the remarks were ordered to be printed in the RECORD, as follows:

SPEECH OF SENATOR JAMES L. BUCKLEY BEFORE THE LEGISLATIVE CONFERENCE OF THE NATIONAL CONGRESS OF PARENTS AND TEACHERS, MARCH 12, 1975

I very much appreciate the opportunity to address this meeting of the National Parent-Teachers Association. Few organizations in the country are more important than yours. I say this as father of six children who shares your belief that education is too important to be left to the educators; that the family has and must continue to play a vital, dominate role in education, both for the good of the children and for the good of society as a whole.

In that PTA's 75 year history, it has been a vital link between parents and teachers, and it has served the nation's children well.

I understand you would like me to discuss briefly the reasons and beliefs that prompted me to introduce the Family Education Rights and Privacy Act, better known as the Buckley Amendment, and I am happy to do so. When I introduced the bill in the form of an amendment to the bill extending the Elementary and Secondary Education Act, I obviously thought it was an important measure—but I didn't expect it to generate such strong support and interest—or so many brickbats.

The immediate reason for the legislation was, of course, the growing evidence of the abuse of student records across the nation. Thousands of letters detailing these abuses have been sent by irate parents and students to such organizations as the Russell Sage Foundation, the National Committee for Citizens in Education, and the American Civil Liberties Union. The Russell Sage Foundation undertook a survey of record-keeping practices of representative school districts in the nation in the late 1960's. Partly as a result of this survey, the Foundation convened a conference of prominent educators, lawyers, and social scientists to consider the ethical and legal aspects of school record-keeping, and to develop guidelines for the collection, maintenance, and dissemination of these records. Among the abuses which the conference report pointed to were the following:

"Pupils and parents typically have little or, at best, incomplete knowledge of what information about them is contained in school records and what use is made of this information by the school.

"Parental and pupil access to school records typically is limited by schools to the pupil's attendance and achievement record (including standardized achievement-test scores).

"The Secrecy with which school records usually are maintained makes difficult any systematic assessments of the accuracy of information contained therein. Formal procedures permitting parental or pupil challenges of allegedly erroneous information do not exist. An unverified allegation of misconduct may therefore . . . become part of a pupil's permanent record.

"Procedures governing the periodic destruction of out-dated or no longer useful information do not exist in most systems.

"Within many school systems, few provisions are made to protect school records from examination by unauthorized school personnel.

"Information about both pupils and their parents is often collected by schools without the informed consent of either children or their parents. Where consent is obtained for the collection of information for one purpose, the same information is often used subsequently for other purposes.

"Access to pupil records by non-school personnel and representatives of outside agencies is, for the most part, handled on an ad hoc basis. Formal policies governing access by law-enforcement officials, the courts, potential employers, colleges, researchers and others do not exist in most school system."

"Sensitive and intimate information collected in the course of teacher-pupil of counselor-pupil contacts is not protected from subpoena by formal authority in most states."

The recommendations of the Conference in large part formed the basis of my amendment.

It was found that, while FBI agents and juvenile court and health department officials had access to the entire records—including sensitive psychological reports—in more than half the school systems surveyed and the local police in a third of them, parents were allowed access in less than 10 percent of the school systems. When a halt was called to the routine release of student information in New York City several years ago, no fewer than 28 separate and distinct categories of outsiders called the board of education to complain that their usual sources of information about students had been cut off.

One of the more serious abuses has been the insertion of potentially prejudicial anecdotal comments and factual inacuracies into children's school records. When parents and students are not allowed to inspect school records and make corrections, such material can have devastatingly negative effects on the academic future and job prospects of an innocent, unaware student. A simple inaccuracy or a comment by a spite-

ful, neurotic teacher can potentially ruin a student's future.

Access to their children's school records is particularly important when schools pin often questionable labels such as "mentally retarded" or "potential delinquent" on children and propose to isolate them in special classes. I know that the PTA has a particular interest in this problem.

A not untypical case was reported in New York, where the parents of a junior high student were told their daughter would not be able to attend graduation ceremonies because she was a "bad citizen." What did she do that was bad, the parents asked. Well, the principal said, the school had a whole file on her "poor citizenship," but the parents would be allowed to examine that file. In this Catch-22 case, one of the few to get a hearing, the State Commissioner of Education, Ewald B. Nyquist, stated flatly that the school's argument that it was acting in the best interest of the student in refusing to reveal the information to the parents—had no merit. The Commissioner concluded: "It is readily apparent that no one had a greater right to such information than the parents."

More fundamentally, my initiation of this legislation rests on my belief that the protection of individual privacy is essential to the continued existence of a free society. There has been clear evidence of frequent, even systematic violations of the privacy of students and parents by the schools through the unauthorized collection of sensitive personal information and the unauthorized, inappropriate release of personal data to various individuals and organizations. In addition, the growth of the use of computer data banks on students and individuals in general has threatened to tear away most of the few remaining veils guarding personal privacy, and to place enormous, dangerous power in the hands of the government, as well as private organizations. It was, therefore, most appropriate that the Congress saw fit to enact the Family Educational Rights and Privacy Act, as well as the landmark Federal Privacy Act of 1974, which establishes similar rights and protections of privacy to individuals on whom the federal government keeps files.

Another essential reason for my introduction of this bill is my belief in fair information practices. An individual should be able to know, review, and challenge all information—with certain limited exceptions—that an institution keeps on him, particularly when the institution may use such information when making important decisions regarding the individual's future, or may transmit such personal information to parties outside the institution. This is particularly true when the individual is a minor. Parents most certainly need access to such information and records in order to protect the interests of their children. It is this that my legislation, as adopted, now makes possible.

A Commission established at the Department of Health, Education and Welfare to review automated Personal Data Systems has drawn up a "code of Fair Information Practices" which rests on five basic principles:

There must be no personal data record-keeping systems whose very existence is secret:

There must be a way for an individual to find out what information about him is in a record and how it is used;

There must be a way for an individual to prevent information about him that was obtained for one purpose from being used or made available for other purposes without his consent;

There must be a way for an individual to correct or amend a record of identifiable information about him;

Any organization creating, maintaining, using, or disseminating records of identifiable personal data must assure the reliability of the data for their intended use and must take precautions to prevent misuse of the data.

It is in the context of the principles of Fair Information Practices that the appropriateness of the application of the law to higher education and college students becomes readily apparent.

I had hoped my legislation would accomplish even more. As you perhaps know, not all of my original amendment was passed. A key section of it was defeated in the Senate by two votes—only one if you discount the Senator who mistakenly voted against it because of confusion on the floor at the time. That section would have required parental consent before a child undergoes certain forms of testing or treatment, such as psychiatric, or divulges sensitive personal or family information, or partakes in certain behavior or value-changing courses or activities.

In addition, it required that parents be informed of the intended participation of their child in out-of-the ordinary research or experimentation projects. In some instances children are required to participate in experimental education programs, in medical research, or in programs or activities designed to affect their personal behavior, values, or social development—without their parents' adequate knowledge or consent. The Children's Defense Fund, headquartered here in Washington, has documented many disturbing cases of such abuses across the country.

Many schools do not ask parents' permission to give personality or psychiatric tests to their children, or to obtain data from the children on their parents and family life. Some of these tests include questions dealing with the most personal feelings and habits of children and their families. Some of this data, in personally identifiable form, is given to other government agencies or to private organizations. Some of it ends up on Federal computers in the caverns of the Department of Health, Education, and Welfare. A year ago this March a Federal office demanded information on pupil and family ethnic attitudes from over 100,000 New York City's elementary school pupils. Fortunately, the city board of education adamantly refused, even in the face of a reported threat to cut off all Federal education funds—over $200 million a year—to the city.

Attempts are made, of course, to excuse the collection and dissemination of such "data," which is in most cases not accessible for review by parents or students, on the basis that this is not done "in the best interest of the student." In my own State, the Parent-Teachers Associaion has rejected such assertions, and has taken a strong stand against these abuses, and has called for their correction. The attitudes of secrecy and the denial of the right of parents to find out what is being done to, asked of, and taught their children in school, reflect a shocking degree of arrogance on the part of many in the educational establishment.

The requirements of parental consent would inform parents about controversial programs, and would offer them and their children the best protection I can think of against possible educational abuses.

I plan to re-introduce the defeated section of the amendment as a separate bill. I hope that the National Congress of Parents and Teachers will, in its wisdom, be able to offer its support for the passage of this legislation.

This brings me to the most fundamental reason for having introduced the Family Educational Rights and Privacy Act: and that is, my firm belief in the basic rights and responsibilities—and the importance—of parents for the welfare and the development of their children. Parents are the first and most important teachers of their children. As Dr. Earl Schaefer, the University of North Carolina's highly respected child development and education specialist, has remarked:

"The amount of parental involvement in the child's education may explain up to four times as much of the variance in the child's intelligence and achievement test scores at age eleven as the quality of the schools . . . in a national sample of 5,000 children in England, (it was) found that parent interest and involvement with the child's education were far more important than the quality of schools, even after statistically controlling for family socio-economic status."

Yet, some educators seem to feel that they know much more about the welfare and best interests of the child than do the parents; and therefore, once a child comes under their sway, they think they have the right to do what they themselves think is best for the child, without regard for the values and beliefs and opinions of the parents. Some educators seem to have forgotten that parents have the primary natural, legal and moral responsibility for the upbringing of their children, and only entrust them to the schools for basic educational purposes. This entrusting to the schools is not an abdication of parental rights and responsibilities, but rather a sharing of them by the parents.

Such elitist attitudes reflect the widening efforts of some, both in and out of Government, to diminish the rights and responsibilities of parents for the upbringing of their children, and to transfer them to the State—to separate figuratively, and in some cases, literally, the child from his parents, and to turn him over to the care of the State, as represented by schools, pre-school centers, and other arms of its administration.

There has been an increasing chorus of complaints from parents in the last few days about just such attitudes and actions on the part of some educators. The sense of a loss of control over one's life and destiny, which many social commentators say is growing amongst our citizens, seems to be increasingly felt by parents with respect to the upbringing of their own children.

I believe that the recent disturbances over textbooks used in West Virginia reflect this feeling and are in fact symptomatic of a far more pervasive disenchantment with and alienation from the schools on the part of the public than is realized. In large part this has resulted from the tendency of the educational community to deny parents information and decision-making responsibilities regarding their children's education. As Jerry Abbott, a school principal in North Dakota, has written:

"We are not, and never have been, committed to the development of a partnership in education with parents. The school has too often viewed parental involvement as an intrusion. Parents send their children to school feeling that the professionals know best, and in that kind of relationship many real possibilities of growth are lost."

I introduced the Family Educational Rights and Privacy Act not only to correct certain abuses in the schools but also to re-assert and re-establish the basic rights, responsibilities and involvement of parents in their children's upbringing and education.

As regards implementation of the law, I am confident that the vast majority of schools will seek to comply with it in good faith. Of course, there will be some difficulty and uncertainty at first, but in time appropriate procedures should be worked out, although it may take a while for some individuals to adjust their attitudes towards increased openness with parents. HEW issued a set of proposed regulations for the law in record time, and within the next few months the final regulations will be issued, leavened by the recommendations offered during the extended public comment period.

There will be instances where certain schools and administrators will attempt to

circumvent the law. In such cases it is particularly important that local organizations such as the PTA take a leadership role in monitoring compliance with the law, in recording cases of violations, and in bringing such evidence to the attention of the appropriate local, state or federal authorities.

Equally important as the other expected effects of the new law is the real possibility that the obligation to provide parents with more information about their children's education will begin to close the gap of hostility and mistrust that too often exists between parents and teachers. The increased openness and communication with parents on the part of the schools which should follow from the laws should enhance parental involvement and interest in their children's education, and in the long run should lead to better educated youngsters, and more harmonious school-community relations.

Here again the role of the local PTAs is vitally important. The challenge and the opportuniy that face local PTAs is to take the lead in overcoming hostilities and mistrust where they exist and in closing the too frequent gaps between the community and the school. This can be done by encouraging greater interaction, understanding, and cooperation between the home and the school, and by making parents partners in education through promoting greater parental involvement in the educational process, in the school and in the home.

Surely this is what thoughtful parents and educators all seek. It is one of the major objectives of the PTA, namely, "To bring into closer relation the home and the school, that parents and teachers may cooperate intelligently in the education of children and youth."

In closing let me take this opportunity to express my admiration for the strong stand in favor of privacy which the National PTA has taken, and my deep appreciation for your enthusiastic and invaluable support of the Family Educational Rights and Privacy Act during its birth and through the critical period of its history last fall. Your encouragement helped give us the strength to persist in our efforts to protect the rights and privacy of America's families. I look forward to associating and working with you again on this and other projects in the future.

---

## SENATOR KENNEDY'S ADDRESS ON LAW DAY AT THE BOSTON COLLEGE SCHOOL OF LAW

Mr. HUMPHREY. Mr. President, on May 1, the distinguished Senator from Massachusetts (Mr. KENNEDY) addressed the law day ceremonies at the Boston College School of Law.

In his excellent address, Senator KENNEDY called upon the American people not to forget our Nation's continuing humanitarian responsibility for the human suffering which the Indochina war brought to millions of people. As chairman of the Subcommittee on Refugees, Senator KENNEDY brings a special understanding and sensitivity to the human tragedy of Indochina. Throughout the long years of conflict and suffering, his voice was a constant reminder that each new day of fighting and violence brought another day of death and devastation to millions of innocent war victims.

His important recommendations for our future relations with the peoples of Indochina—now that the war is behind us—should serve as a focus of national policy and debate. I commend Senator KENNEDY's remarks to the attention of all Senators, and I ask unanimous consent that the text of his speech be printed in the RECORD.

There being no objection, the speech was ordered to be printed in the RECORD, as follows:

ADDRESS OF SENATOR EDWARD M. KENNEDY

I am honored to be here this evening to take part in the 18th Annual Law Day Ceremonies sponsored by the Boston College Law School Alumni Association, and I wish to thank Father J. Donald Monan, President of the Law School, for inviting me to be with you and to deliver these remarks.

Graduates of the Boston College Law School have distinguished themselves in the service of the law throughout our Commonwealth, and they are also performing outstanding services in many other parts of America.

It is fitting tonight that you have gathered here on Law Day to commemorate the work of two outstanding servants of the law. Judge Jeremiah Sullivan deserves our praise for his knowledge of the law, his understanding of the people, and his warmth as a human being. We congratulate him upon his receipt of the Thomas More Award. And George McGrath, the alumnus of the year, has demonstrated his exceptional legal skill and talent during his tenure with the United States District Court and his prior service to the state's correctional system.

Throughout its history, Boston College Law School has ably prepared many outstanding persons for the responsibilities of leadership in the law. Today this law school stands among the nation's finest as a foundation of legal learning and a source of new ideas and insights for the rule of law and the development of our society.

As we meet here tonight, our own attention and the attention of the world has been on Vietnam. The tragedy of thirty years of war and bloodshed is over. Saigon has fallen. The American Embassy is empty and silent.

We feel relief that, at the end, America did not have to leave Vietnam with guns blazing. We feel relief that the evacuation of the last Americans and the final end of American involvement took place without vast loss of life. But we in this Commonwealth also feel a sense of special loss in those final difficult hours, because a son of Massachusetts, a young man from Woburn in the prime of life, was one of the last American casualties of the war.

We are also left with a deep sense of sadness about the long duration of the war. There is the memory of 55,000 Americans dead, of hundreds of thousands of wounded, of the many prisoners of war and missing in action. There is the memory of 2.5 million veterans who have come home—many scarred for life; all seeking the simple needs of a good job and hope for a decent life.

And there is the memory of the names scorched into the conscience of America by the decade of our massive national involvement in the war—who of us of our generation shall ever forget the deep feelings and the passions aroused by names like Tonkin Gulf and Saigon, DaNang and Khe Sanh and Cam Ranh Bay, Hanoi and Haiphong, Hue and My Lai, Hamburger Hill and Kent State?

And there is also the strong sense that had the American role in Indochina ended long ago, years of suffering of the Vietnamese people might have been avoided. Cambodia might never have felt the full violence of the war. It is time to admit that one of the greatest tragedies of the war was our failure to recognize that the American military role could not alter events to our design, without unacceptable destruction of the people of Indochina. There was never a light at the end of the tunnel. There was only a long tunnel, made longer by our presence.

Peace has now come, not by our power, not by our design, not by our hand. But it has come.

Although the curtain has fallen on the clashing armies, the human tragedy of the war goes on. And it brings a continuing responsibility for the United States. The suffering continues in both Cambodia and South Vietnam. Millions of people still are homeless; thousands are wounded or maimed; and countless others wait anxiously to see whether bloody reprisals will be exacted.

Nor is the human suffering limited to what is occurring in Indochina itself. There are now tens of thousands of Vietnamese who have joined the world's growing population of refugees.

We must give our own help, and we must seek the help of the international community, to share in providing new homes and new lives for these refugees. As a compassionate people—deeply mindful of the moral foundations of our nation and our own heritage of immigrants and refugees from tyranny in other lands—we must not fail to meet the needs of the Indochinese people.

We must do what we can to meet our clear responsibility to help salvage the battered lives of those who remain behind. We cannot ignore the millions of homeless people in Cambodia and South Vietnam. We cannot ignore the needs of orphans, of the wounded and the maimed, and of the countless other war victims in Indochina who cry out for protection and help.

The United Nations, the International Red Cross, and the voluntary agencies stand ready to help. And the humanitarian appeal of Secretary General Kurt Waldheim deserves our country's support. The time is overdue for us to meet our humanitarian obligations to the people of Indochina, and for the President to declare our country's support of international efforts to rehabilitate their lives.

At the same time, we must turn our attention to the aftermath of the war here at home. For a decade, the Indochina War preoccupied our government and cut deeply into American life and politics. It was borne with pain and suffering by millions of our people, at an economic cost of more than $150 billion. Rarely in our history has our nation been so divided on an issue or have so many other vital issues been neglected and ignored.

But as we seek to put the war behind us, we must also try to understand its lessons for our own nation and for our future role in the world.

Each of us will bring his own judgment to the meaning of the war. Years will pass before all the facts are known and the verdict of history is finally achieved. But already, in my view, there are some lessons that appear:

First, I would hope we can agree now, with the benefit of hindsight, that America's involvement in the war was a mistake, a lengthy, costly, deadly, tragic mistake that blighted our own nation for more years than any other conflict since our Civil War.

To historians in the future, it may well surpass understanding that a strong and democratic and rational nation like America could so hopelessly mire itself for so long in a foreign adventure that meant so little to our own vital interests.

In the weeks and months to come, there may be a tendency by some, encouraged by the passions of the end of our involvement, to seek scapegoats for the war, to point a finger and try to place the blame for failure. I believe that President Ford genuinely desires to avoid that nightmare of recrimination. The damage to America from the China debate of the 1950's should be a powerful warning against a bitter and divisive debate over Vietnam for the rest of the 1970's. When President Nixon made his dramatic opening to China in 1971, it was clear that the policy of hostility between America and China had been a twenty year mistake. In a similar

# EXHIBIT D

Published using Google Docs Report abuse Learn more

24-25 Parent-Student Handbook - English

Updated automatically every 5 minutes








**TABLE OF CONTENTS**

1. ATTENDANCE 11
1.1 COMPULSORY ATTENDANCE 11
1.2 TARDY POLICY 13
2. CURRICULUM 13
2.1 CHILD FIND SYSTEM/POLICIES AND PROCEDURES 13

Published using Google Docs Report abuse Learn more



2.8 EVERY STUDENT SUCCEEDS ACT (ESSA) 18
2.9 GRADING AND MARKING POLICY 19
2.10 GRADUATION REQUIREMENTS 22
2.11 HOMEWORK POLICY 23
2.12 LANGUAGE ACQUISITION PROGRAM 24
2.13 MILITARY PARENT OPT-OUT FORM 27
2.14 NOTICE OF ALTERNATIVE SCHOOLS 27
2.15 PE INSTRUCTIONAL MINUTES 27
2.16 PREGNANT AND PARENTING PUPILS 27
2.17 PROMOTION AND RETENTION POLICY 28
2.18 REVIEW OF CURRICULUM 29
2.19 SCHOOL ACCOUNTABILITY REPORT CARD 29
2.20 SECTION 504 29
2.21 SERVICES FOR STUDENTS WITH EXCEPTIONAL NEEDS OR A DISABILITY 30
2.22 SPECIAL EDUCATION 30
2.23 TESTING AND ASSESSMENT 31
2.24 TITLE I SCHOOLS 33
2.25 TRANSITIONAL KINDERGARTEN 33
3.0 STUDENT SAFETY / DISCIPLINE 34
3.1 DISCIPLINARY POLICY 34
3.2 EXPULSION PROCESS 35
3.3 SCHOOL SAFETY AND CODE OF CONDUCT 36
3.4 DRESS AND UNIFORM POLICY 39
3.5 DISASTER PREPAREDNESS AND SAFETY 42
4. STUDENT ENROLLMENT 43
4.1 CHANGE OF RESIDENCY/EMERGENCY INFORMATION 43
4.2 INTER-DISTRICT PERMIT POLICY AND DOCUMENTATION REQUIREMENTS 43
4.3 OPEN ENROLLMENT DISTRICT TRANSFER POLICY AND PROCESS 44
4.4 STUDENT RESIDENCY 46
4.5 VERIFICATION REQUIREMENTS FOR RESIDENT ENROLLMENT 46
4.6 WCCUSD/CA ED.G.E Initiative Parental Notice 47
5. STUDENT HEALTH AND SAFETY 50
5.1 COMPREHENSIVE SEXUAL HEALTH AND HIV/AIDS EDUCATION 50
5.2 MEDICAL AND HEALTH POLICY 50
5.3 TOBACCO-FREE SCHOOLS AND COMMUNITIES 53
6. PARENT / COMMUNITY INVOLVEMENT 53
6.1 PARENT/GUARDIAN INVOLVEMENT 53
6.2 PARENT PHOTOGRAPHS WHILE ON CAMPUS 57
6.3 SCHOOL & CLASSROOM VISITS 57
6.4 WCCUSD VOLUNTEER SERVICE AGREEMENTS 58
7. POLICIES / PROCEDURES AND NOTICES 59
7.1 UNIFORM COMPLAINT PROCEDURES (UCP) ANNUAL NOTICE FOR 2024-2025 59
7.2 BOARD POLICY 1312.1: COMPLAINTS CONCERNING DISTRICT EMPLOYEES 60
7.3 ADMINISTRATIVE REGULATION 1312.1: COMPLAINTS CONCERNING DISTRICT PERSONNEL 60
7.4 BOARD POLICY 5131.2: BULLYING 61
7.5 BOARD POLICY 1312.3: UNIFORM COMPLAINT PROCEDURES 63
7.6 ADMINISTRATIVE REGULATION 1312.3: UNIFORM COMPLAINT PROCEDURES 68
7.7 BOARD POLICY 5131: STUDENT CONDUCT 76
7.8 BOARD POLICY 5137: POSITIVE SCHOOL CLIMATE 78
7.9 BOARD POLICY BP 5145.3: NONDISCRIMINATION, HARASSMENT, INTIMIDATION, & BULLYING 79
7.10 ADMINISTRATIVE REGULATION 5145.3: DISCRIMINATION, HARASSMENT, INTIMIDATION, AND/OR BULLYING COMPLAINT PROCEDURES 81
7.11 BOARD POLICY 0415.3 ANTIRACISM 87
7.12 BOARD POLICY 5145.7 SEXUAL AND GENDER-BASED HARASSMENT 89
7.13.1 ADMINISTRATIVE REGULATION 5145.7: SEXUAL AND GENDER-BASED HARASSMENT 95
7.14 BOARD POLICY 5146: MARRIED/PREGNANT/PARENTING STUDENTS 100
7.15 ADMINISTRATIVE REGULATION 5145.71: TITLE IX HARASSMENT COMPLAINT PROCEDURES 106
7.16 BOARD POLICY 5145.9: HATE-MOTIVATED BEHAVIOR 115
7.17 BOARD POLICY BP 5145.13: IMMIGRATION ENFORCEMENT 117
7.18 BOARD POLICY 6163.4: STUDENT USE OF TECHNOLOGY 124
7.19 NOTICE OF STUDENT RIGHTS UNDER TITLE IX 126
7.20 CHILDREN IN HOMELESS/FOSTER CARE SITUATIONS, FORMER JUVENILE COURT SCHOOL STUDENTS, MIGRANT STUDENTS, AND NEWCOMERS 129
7.21 COMPLAINTS (SPECIAL EDUCATION) 130
7.22 CONTINUED EDUCATION OPTIONS FOR JUVENILE COURT SCHOOL STUDENTS 130
7.23 FLYER DISTRIBUTION 130
7.24 INSPECTION OF STUDENT RECORDS 131
7.25 LOCAL CONTROL ACCOUNTABILITY PLAN 132
7.26 LOST OR DAMAGED PERSONAL PROPERTY 132

Published using Google Docs Report abuse Learn more



7.33 TEMPORARY DISABILITY 135
7.34 BECOME A VOLUNTEER 136
8.DISTRICT FORMS 137
8.1 ANNUAL NOTIFICATION KNOW YOUR EDUCATIONAL RIGHTS 137
8.2 ANTI-HARASSMENT STATEMENT 140
8.3 SECONDARY SCHOOL CODE OF CONDUCT 142
8.4 CAL GRANT GPA OPT-OUT FORM 143
8.5 CONCUSSION INFORMATION SHEET 144
8.6 EXTRA-CURRICULAR 146
8.7 SECONDARY COMPREHENSIVE SEXUAL HEALTH EDUCATION (CSE) 147
8.9 CONTRA COSTA HEALTH SERVICES 148
8.10A STUDENT TECHNOLOGY ACCEPTABLE USE & INTERNET SAFETY POLICY 149
8.10B STUDENT TECHNOLOGY ACCEPTABLE USE & INTERNET SAFETY POLICY OVERVIEW 153
8.11 MEDIA OPT-OUT FORM 154
8.12 MILITARY PARENT OPT-OUT FORM 155
8.13 PESTICIDE USE LETTER AND INDIVIDUAL NOTIFICATION REQUEST 156
8.14 PESTICIDE WEED CONTROL 157
8.15 PESTICIDE LIST 158
8.16 COMPLAINT CONCERNING DISTRICT PERSONNEL 159
8.17 TITLE IX COMPLAINT FORM 161
8.18 UNIFORM COMPLAINT FORM 165

Published using Google Docs Report abuse Learn more



LEFT BLANK INTENTIONALLY

## DISTRICT ANNOUNCEMENT OF NON-DISCRIMINATION

**Nondiscrimination Statement**

The West Contra Costa Unified School District prohibits discrimination, intimidation, harassment (including sexual harassment) or bullying based on a person's actual or perceived ancestry, color, disability, gender, gender identity, gender expression, immigration status, nationality, race or ethnicity, religion, sex, sexual orientation, or association with a person or a group with one or more of these actual or perceived characteristics.

For questions or complaints, contact Equity Compliance Officer|Title IX Coordinator: Jose Espinoza, 1108 Bissell Avenue, Richmond, CA 94801, (510) 231-1118, jespinoza2@wccusd.net, and Section 504: Executive Directors' Office by school area. Area 1: DiShawn Givens (dishawn.givens@wccusd.net). Area 2: Jawan Eldridge (jeldridge@wccusd.net). Area 3: Jose De Leon (jdeleon@wccusd.net). 1108 Bissell Ave., Richmond, CA 94801, (510) 231-1483.

## NON-DISCRIMINATION POLICY CONTACTS

| Title IX | Title II, Title V, Title VI | 504 |
|---|---|---|
| Jose Espinoza<br>Director<br>Office of Educational Equity<br>Title IX Coordinator<br>Equity Compliance Officer | Paul Mansingh<br>Director<br>Curriculum & Instruction<br>State and Federal Programs | DiShawn Givens - Area 1<br>Jawan Eldridge - Area 2<br>Jose De Leon - Area 3<br>Executive Director<br>Educational Services |
| **Office Location:**<br>1108 Bissell Avenue<br>Richmond, CA 94801 | **Office Location:**<br>1400 Marina Way S<br>Richmond, CA 94804 | **Office Location:**<br>1108 Bissell Avenue<br>Richmond, CA 94801 |
| **Phone:** (510) 231-1118<br>**Email:** JEspinoza2@wccusd.net | **Phone**: (510) 307-4505 | **Phone**: (510) 231-1483<br>**Email:** DiShawn.givens@wccusd.net |

Published using Google Docs Report abuse Learn more



years. Board elections take place in November every other year. New board members are sworn in on or after the first Friday of December following elections. The board elects its president and clerk each year in December.

Regular Board meetings are held in the LoVonya DeJean Middle School Multipurpose Room, 3400 Macdonald Ave., Richmond. Public session begins at 6:30 p.m. An agenda for each meeting is published three working days prior to the meeting. Agendas are posted at the administration building and at each school. Complete board meeting packets are available for review at the administration building, the district's six high schools, and at public libraries throughout West County.

Following each Board meeting, a video recording of the meeting will be posted on our **Board homepage** and the **WCCUSD YouTube channel**, approximately 1-2 days following each meeting.

## BOARD OF EDUCATION MEMBERS

| | | |
|---|---|---|
| Jamela Smith-Folds, President | Trustee Area 1 | Email: jamela.smith@wccusd.net |
| Otheree Christian | Trustee Area 2 | Email: ochristian@wccusd.net |
| Mister Phillips | Trustee Area 3 | Email: mister.phillips@wccusd.net |
| Demetrio Gonzalez-Hoy, Clerk | Trustee Area 4 | Email: dgonzalez@wccusd.net |
| Leslie Reckler | Trustee Area 5 | Email: leslie.reckler@wccusd.net |

## 2024-25 PARENT—STUDENT HANDBOOK ACKNOWLEDGEMENT FORM

Parent/Guardian: The West Contra Costa Unified School District has a Parent-Student Handbook, which reflects important policies for our schools. Those policies are designated to guide our students through successful school experiences by governing attendance, tardiness, classwork, homework, discipline, dress, grading, promotion, and retention.

**Detach, sign, and return this page to your child's school indicating you have received a copy of the Parent / Student Handbook. Also, where specified on this page, indicate whether you have a child on continuing medication and if you do not wish directory information to be released.**

Student's Name:

___________________________________________________________________

School: ___________________________________________________ Grade:

_________________

Student is on a continuing medication program: (Please check one)

YES_____ NO_____

If YES, you have my permission to contact student's physician:

Physician's Name: _________________________________________ Telephone:

_________________

Medication: ______________________________________________ Dosage:

____________________

Medication: ______________________________________________ Dosage:

____________________

If the West Contra Costa Unified School District decides to release directory information, the West Contra Costa Unified School District shall provide an annual notice to parents and guardians, and "eligible students" in attendance, of the West Contra Costa Unified School District's directory information policy that includes:

1. The categories of information that the West Contra Costa Unified School District has classified as public directory information that may be disclosed without parental consent and which should only include the information specifically identified in Education Code section 49061, subdivision (c).
2. A statement that directory information does not include citizenship status, immigration status, place of birth, or any other information indicating national origin (except where the West Contra Costa Unified School District receives consent as required under state law).
3. The recipients of the directory information.
4. A description of the parent's or guardian's abilities to refuse release of the student's directory information, and how to refuse release.

Published using Google Docs Report abuse Learn more



and similar parties.

Do NOT release directory information regarding
_______________________________________________
(Pupil's Name)

Check if an exception may be made to include student information and photos in the yearbook.☐

I hereby acknowledge that I have received and read a copy of the Parent-Student Handbook of the West Contra Costa Unified School District.

Signature of Parent or Guardian: _________________________________________ Date: __________________________

*This form will be kept on file at the school office.*

# DIRECTORY OF SCHOOLS

## ELEMENTARY SCHOOLS

| School | Phone |
|---|---|
| Bayview | 231-1401 |
| Cameron | 231-1445 |
| Chavez | 231-1418 |
| Collins | 231-1446 |
| Coronado | 231-1419 |
| Dover | 231-1420 |
| Downer | 231-1435 |
| Ellerhorst | 231-1426 |
| Fairmont | 231-1448 |
| Ford | 231-1421 |
| Grant | 231-1422 |
| Hanna Ranch | 231-1441 |
| Harding | 231-1413 |
| Highland | 231-1424 |
| Kensington | 231-1415 |
| King | 231-1403 |
| Lake | 231-1451 |
| Lincoln | 231-1404 |
| Lupine Hills | 231-1411 |
| Madera | 231-1412 |
| Michelle Obama | 231-1456 |
| Mira Vista K-8 | 231-1416 |
| Montalvin K-8 | 231-1405 |
| Murphy | 231-1427 |
| Nystrom | 231-1406 |
| Ohlone | 231-1443 |
| Olinda | 231-1452 |
| Peres K-8 | 231-1407 |
| Riverside | 231-1409 |
| Shannon | 231-1454 |
| Sheldon | 231-1414 |
| Stege | 231-1425 |
| Stewart K-8 | 231-1410 |
| Tara Hills | 231-1428 |
| Valley View | 231-1455 |
| Verde K-8 | 231 -1408 |
| Washington | 231 -1417 |
| West County Mandarin K-8 | 231-1457 |

## MIDDLE SCHOOLS

Published using Google Docs Report abuse Learn more



Pinole 231-1456

## HIGH SCHOOLS

| School | Phone |
|---|---|
| De Anza | 231-1440 |
| El Cerrito | 231-1437 |
| Hercules | 231-1429 |
| Kennedy | 231-1433 |
| Middle College | 215-3881 |
| Pinole Valley | 231-1442 |
| Richmond | 231-1450 |

## ALTERNATIVE & ADULT EDUCATION

### Alternative School

| School | Phone |
|---|---|
| Greenwood Academy | 231-1402 |
| Vista Land/Vista Virtual | 231-1431 |

## ADULT SCHOOLS

| School | Phone |
|---|---|
| Alvarado | 231-1453 |

To view our School Day Start-End Times, School Location Maps, the Resident School Directory, please visit our website: www.wccusd.net

Published using Google Docs Report abuse Learn more



| | | | | | | |
|---|---|---|---|---|---|---|
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

## August '24

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | *19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | *29 | 30 | 31 |

School Days 10

- 13– New Teacher Orientation
- 14-15 – Professional Development
- 15– In- Service Training Day
- 16 – Teacher Work Day
- 19– First Day of School Min. Day
- 23 – Terence Martin Day (Memorial Day)
- 29 – Back to School Night- Elementary Schools (Min. Day)

## September '24

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | *13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | *27 | 28 |
| 29 | 30 | | | | | |

School Days 20

- 2 – Labor Day (District Holiday)
- 12 – Back to School Night- Middle Schools
- 13- Middle Schools Only- Min. Day
- 26 – Back to School Night- High Schools
- 27- High Schools Only-MIN day

## October '24

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | *23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | *31 | | |

School Days 22

- 14- No School (Classified Training) Indigenous People's Day
- 22 – End of 1st Quarter
- 23 – Minimum Day Middle/High Schools (Mark Report Cards)
- 31 – Minimum Day, K-8

## November '24

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | *4 | *5 | *6 | *7 | *8 | 9 |
| 10 | 11 | *12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | *22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

School Days 14E 15S

- 1– Elementary Conference Day (No School, Elementary Only- 4,5,6,7,8,12-Elementary Conference (Min. Days, Elementary Only) 5- Middle & High Schools – Min. Day
- 8– End of Trimester 1
- 11 – Veterans' Day Holiday
- 22 – Minimum Day All Schools
- 25-29 – No School
- 28-29 – Thanksgiving Holiday

## December '24

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | *20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

School Days 15

- *20 – Minimum Day All Schools
- 23 –31 Winter Recess (No School)
- 24,25– District Holidays

| | | | | | | |
|---|---|---|---|---|---|---|
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

School Days 19E 18S

- 20– Martin Luther King Holiday
- 21 – Secondary Work Day (No School Middle & High Schools)
- 31 – 100th day

## February '25

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | |

School Days 15

- 17-21– Presidents' Week Recess (District Holidays)

## March '25

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | *14 | 15 |
| 16 | 17 | 18 | 19 | 20 | *21 | 22 |
| 23 | 24 | 25 | 26 | *27 | 28 | 29 |
| 30 | 31 | | | | | |

School Days 20

- 5– End of Trimester 2
- 13 – Open House-Middle Schools
- 14– Middle Schools Only day
- 20 – Open House- High Schools-
- 21 – High Schools Only- MIN day
- 26 – End of 3rd Quarter
- 27- Middle & High School (Mark Report Cards- MIN day)
- 28-No School (reserved day)

## April '25

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | *17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

School Days 17

- 7-11– Spring Recess (No School)
- 7– District Holiday
- 17* – Open House Elementary Schools -Minimum Day

## May '25

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

School Days 20

- 23-Teachers Workday
- 23-No School (reserved day 3)
- 26 – Memorial Day - Holiday

## June '25

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | *11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

School Days 8

- 11– Last day of School (Noon Dismissal)
- 19-Juneteenth Holiday

Holiday
No School
Teacher Workday
Professional Development
New Teacher Orientation
8/23 Terence Martin Day
First/Last day of school
100th Day

**Total School Days 180**
**Total Teacher Workdays 185**
**{2 Self-Directed Learning Days}

*MIN-Minimum Day

First Semester 92
Second Semester 88

End-Trimester 1 -57
End-Trimester 2 - 62
End-Trimester 3 - 61

No School Reserved Days to be utilized for a foreseen circumstance

Board Approved: 10-25-23

Published using Google Docs Report abuse Learn more



LEFT BLANK INTENTIONALLY

## 1. ATTENDANCE

### 1.1 COMPULSORY ATTENDANCE

Compulsory attendance is mandated by the State of Education Code 48200. For admission into Transitional Kindergarten, a child must have his/her 5th birthday between September 2 and April 2 of the current academic year. For admission into kindergarten, a child must have his/her 5th birthday on or before September 1 of the current year. The legal age for leaving school prior to graduation is eighteen (18) years; students cannot voluntarily quit before age eighteen (18). Full time school attendance is compulsory for California students between the ages of six (6) and sixteen (16). Minimum attendance standards require students who are at least sixteen (16) years of age, but less than eighteen (18) years of age who are not enrolled in a traditional program attend a Continuation High School or Regional Occupational Program. If students are employed, a minimum schedule program is permitted for students sixteen (16) years of age or older.

**Definitions of Truancy:**

1. **Truant:** A student is classified as a truant upon their third unexcused absence or tardy in excess of thirty (30) minutes or any combination of the two within one school year.
2. **Chronic Truant:** Any student who is absent from school without a valid excuse for ten percent (10%) or more of the school days in one school year, from the date of enrollment to the current date.
3. **Habitual Truant:** The law further requires that after a student has been reported as a truant three or more times in one school year and after an appropriate school employee has made a conscientious effort to hold at least one meeting with the parent and the student, the student is deemed a *habitual truant.*

Published using Google Docs Report abuse Learn more



attending funeral services of a member of the immediate family.

In other words, schools will receive State funding only for students who actually attend school. If you find it necessary to keep your child out of school for reasons other than illness, you are encouraged to send your child to school for at least part of the day; your child will not be counted absent for the day and will not miss important school assignments.

You are also encouraged to take vacations or family trips during school holidays. If you must keep your child out of school, please contact the school regarding a temporary "Independent Study" contract.

**Communication:** The Education Code requires parents to communicate with school by phone, email, or note as to the reason for a student's absence. Although the school district will not receive funding for all-day absences, the following are considered excused absences for the purpose of Compulsory Attendance laws (see number 1 above) and laws/requirements related to CalWorks:

- **Illness or Quarantine**
- **Medical, Dental, Optometric, or Chiropractic Appointments**
- **Jury Duty**
- **Funeral Services for Immediate Family**
- **Exclusion for Immunization Needs**
- **Court Appearance**
- **Religious Observances**
- **Employment Conferences**
- **College or University Interviews**
- **School-Approved Extra-Curricular Activities**

**Extenuating Circumstances:** Absences due to other extenuating circumstances, as approved by the school administration, may also be considered excused.

Absences must be cleared within five (5) school days of the date of the absence. After five (5) school days, an un-cleared absence will be counted as unexcused. Unexcused absences include suspension or absences not verified by a parent according to the above criteria.

**Make-Up Work:** Students with excused absences may be allowed to complete all missed assignments and tests that can be ***reasonably provided***. Upon satisfactory completion and within a reasonable time limit as determined by the teacher, the student shall receive credit.

The teacher of any class from which a student is suspended may require the suspended student to complete all assignments and tests missed during the suspension which can reasonably be provided. Upon satisfactory completion and within a reasonable time limit as determined by the teacher, the student shall be given full credit.

**School Teams:** School Attendance Review Teams (SART), Student Study Teams and Student Success Teams (SSTs) are school site teams which include the parent and the student, teachers, counselors, and other appropriate professionals that meet to discuss the specific needs of at-risk students, including attendance and truancy issues. The goal of this team is to identify possible solutions to improving the students' attendance and/or behavior. At this meeting the student and their family agree to abide by the directions of the School Attendance Review Team (SART).

**SWAT:** The Student Welfare and Attendance Team (SWAT) Department focuses on prevention and reduction of truancy and chronic absenteeism. The truancy technicians may refer chronically absent and truant students to critical support services and interventions which will help them get back on track with their education.

Published using Google Docs Report abuse Learn more



factors that led to truancy.

**Students' Responsibilities:**

1. Attend school daily unless a valid excuse, considered an excused absence, is presented to the school.
2. Present a note to school personnel verifying the absence immediately upon return to school.
3. Make-up homework and class assignments as requested by the teacher for excused absences. Ask the teacher if work missed during an unexcused absence may be made up.
4. Complete the Independent Study Contract requirements.

**Parent/Guardians' Responsibilities:**

1. Make certain that the student is in school unless a valid excuse prevents that student from attending. The student should not arrive on campus earlier than fifteen (15) minutes before classes convene. (When supervision begins).
2. Send a note or make a personal phone call to verify an excused absence as soon as possible.
3. Submit a written request, whenever possible, to the Principal or designated representative at least five (5) days before a proposed acceptable absence to allow for Independent Study approval. Supervise the make-up of all homework and class assignments.
4. Should the student be found to be a chronic or habitual truant, attend all scheduled school meetings and hearings to correct the problem.
5. Absence Note: The absence note must be signed by the parent/guardian. It should contain the following:
   - Student's name and grade level
   - Days and dates of absence (for example, Monday – Tuesday, September 9-10)
   - Partial day or whole day
   - Reason for absence
   - Date the note is written
   - Parent/Guardian's signature and phone number
6. Parents/Guardians must come to the office to sign a student into or out of school after the school day begins.

**Teachers' Responsibilities:**

1. Keep an accurate record for attendance in the standard roll book or on the District required attendance card or sheet.
2. Consider unverified absences as unexcused.
3. Notify the parent/guardian of any student who has three (3) or more unexcused absences, or has been tardy in excess of thirty (30) minutes on each of more than three (3) days in one school year. Document this notification and submit it to the principal.
4. Refer any student who is a chronic truant to the principal.
5. Give make-up work for excused absences.
6. Initiate and complete the Independent Study Contract procedure.

**Administrators' Responsibilities:**

1. Make a conscientious effort to notify the parent/guardian of any student who has been absent or tardy from school for three (3) days without a valid excuse.
2. Keep a copy of each teacher's grading system and method of informing students and parents on file in the office for reference in a conference.
3. Make a conscientious effort to inform parents, students, and teachers of the functions of the Student Attendance Review Team (SART), School Attendance Review Board (SARB), and the Student Welfare and Attendance Team (SWAT).
4. Maintain a comprehensive attendance file that outlines corrective measures taken to eliminate attendance problems on truant students.
5. After diligent outreach, if attendance does not improve and continued truant events occur, refer the student to the SART for an attendance improvement plan.
6. Supervise the implementation of this policy.

**School Site Responsibilities:**

Develop a School Attendance Review Team (SART).

If attendance does not improve after a SART meeting and continued truant events occur, refer the student to the SARB for further attendance improvement planning and resolution.

Published using Google Docs Report abuse Learn more



2. Recognize that any unexcused tardy will result in disciplinary action by the teacher.

3. Recognize that four (4) or more unexcused incidents of tardiness per quarter in a class may result in progressive discipline.

**Parent/Guardians' Responsibilities:**

1. Encourage promptness. Send a note to class to inform the school about the reason for the student's tardiness.
2. Recognize that excessive tardiness disrupts a student's academic performance.

**Teachers' Responsibilities:**

1. Follow the established policy
2. Keep an accurate record of unexcused tardiness.
3. Take preventive and/or corrective action, such as assigning consequences, notifying parents/guardians, etc.
4. Refer to the administration any student after the third unexcused tardy within a quarter.

**Administrators' Responsibilities:**

1. Take disciplinary action when a student is referred.
2. Provide positive incentives for students to encourage good attendance.
3. Supervise implementation of this policy.
4. Hold conferences with parents/guardians and students to understand root causes of attendance difficulties and co-create a plan to support student success.

**School Site Responsibilities:x**

1. Develop, communicate and implement tardy procedures contained within the school-wide Discipline Plan that define student, parent, teacher and administrator responsibilities, expectations, and consequences.

## 2. CURRICULUM

### 2.1 CHILD FIND SYSTEM/POLICIES AND PROCEDURES

Any parent suspecting that a child has exceptional needs may request an assessment for eligibility for special education through their school or school of attendance if they are not enrolled in the public school system. The school then sets up an SST to review the request for assessment. Policy and procedures shall include written notification to all parents of their rights pursuant to Education Code section 56300 et seq. (Ed. Code, §56301, 34 C.F.R. § 104.32(b))

### 2.2 CLASSWORK POLICY

**Students' Responsibilities:**

- Attend class regularly with an academic mindset.
- Demonstrate Mutual Respect by not being disruptive.
- Come to class prepared with materials required to participate in the daily lessons.
- Seek assistance from the teacher when having difficulty understanding the class work.

**Parent/Guardians' Responsibilities:**

- Be aware of the student's progress in class by reviewing daily classwork, checking homework, and reviewing progress on Powerschool.
- Contact the teacher for a conference regarding any questions about the curriculum or the student's progress.
- Contact the counselor (secondary schools only) for a special report on the student's progress when concerned that the student is not achieving.
- Attend Back-to-School Night in the fall to learn about the course outline (syllabus), class procedures and expectations, and Open House in the spring, where student work is displayed.
- Be aware that Progress Reports are issued 15 days before the close of the marking period by teachers to students who may fail. Inquire to see if the student received a report.
- Review the report cards that are issued at the end of each quarter/trimester:
  Elementary: 3 Trimesters
  Secondary: 4 Quarters

Published using Google Docs Report abuse Learn more



standards, differentiated, and meaningful to the student's educational development.
- Maintain daily lesson plans. Explain course requirements and the way these requirements will be evaluated to students and to parents at Back to School Night.
- Explain the class work and due dates.
- Make appropriate comments and marks on assignments and return them in a timely manner to students or communicate achievement level to students.
- Keep a record of assignments and marks for the entire school year for each student. Assignments and marks are to be maintained in the PowerSchool system or a gradebook that must be turned in at the end of the school year.
- Provide assistance to students who have not mastered the content of the material adequately.
- Respond to requests for assignments missed because of absence and establish a due date for return of the make up work.
- Respond to a parent's concerns regarding the student's progress within 48 hours.
- For each class maintain seating charts and daily lesson plans in sufficient detail so that a substitute teacher can maintain continuity of instruction. In the event of an absence, teachers shall provide written lesson plans to the substitute teacher to assure continuity of instruction. These lesson plans could be special lesson plans created for the absence, the teacher's regular lesson plans, or emergency lesson plans. Teachers are to leave lesson plans in their classroom. Teachers will provide an electronic copy of emergency lesson plans to the principal at the beginning of each school year.

**Administrators' Responsibilities:**
- Supervise implementation of this policy.
- Assist teachers in providing an orderly learning environment.
- Monitor teacher records including Powerschool, grades, progress reports, seating charts, and lesson plans.

### 2.3 CAREER TECHNICAL EDUCATION (CTE) PATHWAYS

Career Technical Education (CTE) programs offer high school students a choice among several different multi-year sequences of courses in one of California's 15 identified industry sectors that prepares students for a variety of high-way, high-demand, and high-growth careers.

Pathways organized using an Academy model provide an integrated academic and technical program of study organized around a broad industry theme (e.g. health sciences; media, education, advanced manufacturing/engineering, technology, etc.) and students attend courses as a cohort. The Academy model operates as a small learning community where students learn both technical skills and academic content through the lens of the selected industry theme. Career Pathways designed with this cohort Academy model are designated below using an asterisk (*).

Other Pathways are organized using an elective sequence model. In this model, a student completes a series of elective courses that focus on building industry-specific technical skills in an identified industry sector.

All CTE Pathways programs that prepare high school students for a range of postsecondary options, including 2-and 4-year colleges or universities, apprenticeships, the military, formal postsecondary employment training and quality careers.CTE Pathways serve students in grades 9-12 or 10-12. During open enrollment, students interested in a Pathway that is not in their resident high school can utilize the open enrollment policy to apply to attend a district high school that does.

**Course Sequences**
The chart below is an example of course sequences for a Health Academy, an Engineering Academy, and a Construction Trades Pathway.

| | | | |
|---|---|---|---|
| **Engineering Academy**<br>**Richmond High School** | | | |
| **9th Grade**<br>English 1<br>Intro to Engineering Design | **10th Grade**<br>English 2<br>World History<br>Biology or Chemistry<br>Principles of Engineering | **11th Grade**<br>English 3<br>US History<br>Chemistry or Physics<br>Computer Science Principles | **12th Grade**<br>English 4<br>US Government/Economics<br>Physics<br>Computer Integrated Manufacturing |
| **Health Careers Academy**<br>**De Anza High School** | | | |
| | **10th Grade**<br>English 2<br>World History<br>BioMedical Sciences | **11th Grade**<br>English 3<br>US History<br>Health Science<br>Emergency Medicine | **12th Grade**<br>CSU Expository<br>US Government/Economics<br>Medical Terminology (Dual-Enrolled with CCC)<br>Emergency Health Records & Computer Applications (Dual-Enrolled with CCC) |
| **Construction Trades Pathway** | | | |

Published using Google Docs Report abuse Learn more



| | |
|---|---|
| **De Anza High School**<br>● Health Careers (Patient Care Focus) (gr. 10-12)*<br>● Information & Communication Technologies (Coding & Software Development Focus)(gr. 10-12)*<br>● Law and Justice (gr. 10-12)* | **El Cerrito High School**<br>● Information & Communication Technologies (Gaming & Simulation focus) (gr. 10-12)*<br>● Multimedia (Digital Media Production focus) (gr. 10-12)*<br>● Radio Broadcasting (gr 10-12)* |
| **Greenwood Academy**<br>● Health Careers Hospitality & Culinary | **Hercules High School**<br>● Health Careers (Pre-Med & Biotechnology focus)<br>● Computer Science<br>● Education & Teaching Careers |
| **John F. Kennedy High School**<br>● Information Technology (students choose between web design and coding) (gr. 10-12)*<br>● Health Careers (Patient Care Focus)*<br>● Advanced Manufacturing & Welding<br>● Building and Construction Trades | **Pinole Valley High School**<br>● Health Careers (Biomedical Science focus) (gr. 10-12*)<br>● Engineering* |
| **Richmond High School**<br>● Engineering (gr. 9-10)*<br>● Health Careers (Public Health, Mental Health, & Dental Focus) (gr. 9-10)*<br>● Law and Justice (Social Justice & Legal Practices focus) (gr. 9-10)*<br>● Multimedia & Communications (Digital Media Production focus) (gr. 9-10)*Business & Entrepreneurship<br>● Education - (Teacher Prep & Social Justice focus)<br>● Urban Agriculture - Farm to Table<br>● Fashion & Design | |

*Career Pathways with an asterisk (*) are designed with the Academy Model

### 2.4 COURSE ASSIGNMENTS

A school district is prohibited from assigning a student enrolled in any of grades 9 through 12 to any course period without educational content for more than one week in any semester, except under specified conditions. Under no circumstances can a district assign a student enrolled in any of grades 9 through 12 to a course period without educational content because there are not sufficient curricular course offerings for the student to take during the relevant period of the designated school day. (Ed. Code, § 51228.1)

A school district is prohibited from assigning a student enrolled in grades 9 through 12 to a course that the student has previously completed and received a grade determined by the district to be sufficient to satisfy the requirements and prerequisites for admission to the California public post-secondary schools and the minimum high school graduation requirements, except under specified conditions. Under no circumstances can a district assign a student enrolled in any of grades 9 through 12 to a course the student has previously completed and received a sufficient grade, as specified, because there are not sufficient curricular course offerings for the student to take during the relevant period of the designated school day. (Ed. Code, § 51228.2)
These sections do not apply to students in alternative schools, community day schools, continuation high schools or an opportunity school. A district may continue to authorize dual enrollment in community college, to run evening high school programs, to offer independent study, work experience education, and other specified courses.

A complaint of noncompliance may be filed under the District's Uniform Complaint Procedures and Title 5 of the California Code of Regulations. (Ed. Code, § 51228.3)

### 2.5 DISSECTION OF ANIMALS

If a student has a moral objection to dissecting or otherwise harming or destroying animals, or any part of an animal, the pupil must notify the teacher regarding such objection, and the objection must be substantiated with a note from the pupil's parent or guardian. If the pupil chooses to refrain from participating in such a project, and if the teacher believes that an adequate alternative education project is possible, then the teacher may work with the pupil to develop and agree upon an alternate education project for the purpose of providing the pupil an alternate avenue for obtaining the knowledge, information or experience required by the course of study. [Ed. Code § § 32255- 32255.6]

### 2.6 EXPANDED LEARNING PROGRAMS

West Contra Costa Unified School District (WCCUSD) operates 34 state and/or federally funded school-based after school programs throughout the District. These school-based expanded learning programs are overseen by the District's Expanded Learning Office and operate every day that school is in session, from the end of the

Published using Google Docs Report abuse Learn more



site, based on availability, with priority enrollment offered to McKinney Vento, foster students, students who qualify for Free and Reduced Priced Meals (FRPM), English Language Learners (ELL), and Newcomers. Students with siblings in the program and students who can attend the program daily can also be considered for priority enrollment.

TK-6th grade students who are enrolled at a school that does not have an onsite state and/or federally funded after school program are eligible to be bussed to a nearby elementary school site with a program.

Families can submit an application to their student's after school program through the Parent Portal on Powerschool.

| Elementary Programs | | | | |
|---|---|---|---|---|
| Bayview | Ford | Lincoln | Peres | Tara Hills |
| Chavez | Grant | Michelle Obama | Riverside | Verde |
| Coronado | Harding | Mira Vista | Shannon | Washington |
| Dover | Highland | Montalvin | Sheldon | |
| Downer | King | Murphy | Stege | |
| Fairmont | Lake | Nystrom | Stewart | |
| Middle School Programs | | | | |
| Betty Reid Soskin | | Helms | | |
| DeJean | | Korematsu | | |
| High School Programs | | | | |
| Greenwood Academy | | | | |
| Kennedy HS | | | | |
| Richmond HS | | | | |

## 2.7 EXTRA–CURRICULAR AND CO–CURRICULAR ACTIVITIES POLICY

**Philosophy of Student Code of Behavior**
Students who are selected for the privilege of participating in school extracurricular and co-curricular activities should conduct themselves as responsible representatives of their schools. The use of drugs, alcohol and tobacco is detrimental to the health of the participants and interferes with their performance. It is the intent of the Student Code of Behavior to encourage participating students to be drug, alcohol and tobacco free all of the time; however, student discipline or restrictions on extracurricular activities or co-curricular activities may be based only upon conduct of the student which occurs while on school grounds, going to or going from school, during lunch period (whether on or off campus), or during or while going to or going from a school-sponsored activity. [Ed. Code 48900 and Ed. Code 48901]

**Definition of Extracurricular, Co-curricular Activity**
Extracurricular or co-curricular activities include any activities that require the student to participate outside the regular school hours. Fine Arts classes that require performance as part of district curriculum standards are not considered co-curricular. Extracurricular activities include athletics, spirit squad, student government, pep squad/marching band, forensics, drama performances, and competitions. Co-curricular activities include specialty performances and competitions. Education Code 48900

Students are not to use, possess, distribute or be under the influence of alcohol beverages, unlawful drugs, controlled substances, hallucinogens or items purporting to be any of the foregoing while on school grounds, going to or going from school, during lunch period whether on or off campus, or during or while going to or going from a school-sponsored activity. Education Code 48901. No school shall permit the smoking or use of tobacco, or any product containing tobacco or nicotine products, by pupils of the school while the pupils are on campus or while attending school-sponsored activities or while under supervision and control of school district employees.

**Disciplinary Action**
Students who violate Education Code 48900 are subject to suspension from school for three (3) to five (5) days, and shall be required to attend a series of educational classes and/or shall be subject to expulsion. Refer to the WCCUSD Positive School Climate Resolution and Discipline Matrix for guidance with progressive discipline.

**ELIGIBILITY POLICY FOR STUDENT ACTIVITIES**
In compliance with Education Code 35160.5, West Contra Costa Unified School District students must earn twenty-five (25) credits in high school or pass a minimum of five (5) classes in Junior/Middle school and have earned a grade point average (G.P.A.) of 2.0 on a 4.0 scale for the most recent marking period in order to participate in extra/co-curricular activities.

**Determination of Eligibility:**

Published using Google Docs Report abuse Learn more



courses for the purpose of determining eligibility will be calculated as follows (N.C.S. 2094):

- The grade in a summer school course that is identical or equivalent in title and content to a course taken in the preceding grading period will replace the previous grade and the grade point average will be recalculated using the same number of courses as the divisor.
- The grade in a summer school course that is different in title and content from the courses taken in the preceding grading period will be added and the grade point average will be recalculated using all grades of the previous courses plus the new grade from the summer school course(s).
- Opportunity for Probation - One probationary period of one quarter shall be granted to students who fail to meet the eligibility requirements during their four years of high school. Middle school students shall be granted one probationary period.
- In order to qualify for probation, a student must have passed at least four (4) classes the previous marking period.
- The probationary period also applies to the following student groups:
- Student New to State
- Freshmen
- Middle School 6th Grade Students
- Middle School 7th Grade Students
- It is the intent of this policy to emphasize to each student that the student's primary responsibility is to meet the academic challenge of learning. School staff will work with students who, because of academic difficulties, lose eligibility.

**2.8 EVERY STUDENT SUCCEEDS ACT (ESSA)**

The Every Student Succeeds Act (ESSA) took full effect in 2018 to replace the No Child Left Behind Act and modify the Elementary and Secondary Education Act of 1965 (ESEA). If the California Department of Education provides updates, the following parent notice requirements may change, and new notice requirements may be added.

- **Information Regarding Professional Qualifications of Teachers, Paraprofessionals, and Aides:** Upon request, parents have a right to information regarding the professional qualifications of their student's classroom teachers, paraprofessionals, and aides. This includes whether the teacher meets the state qualifications and licensing criteria for the grades and subjects he/she teachers, whether the teacher is teaching under an emergency permit or other provisional status because of special circumstances, the teachers major or field of discipline for any degrees or certifications held by the teacher, and whether any instructional aides or paraprofessionals provide services to the parents' child and, if so, their qualifications. In addition, parents have a right to notice when the parent's child has been taught for four or more weeks by a teacher who does not meet state qualifications and licensing criteria for the grade levels and subject areas in which their child is assigned. (ESEA § 1111(h)(6) (as amended by ESSA))

- **Information Regarding Individual Student Reports on Statewide Assessments:** Upon request, parents have a right to information on the level of achievement of their student on every State academic assessment administered to the student. (ESEA § 1111(h)(6) (as amended by ESSA))

- **School Identified for Comprehensive Support and Improvement/Additional Targeted Support and Improvement:** Section 1111(d) of the ESSA requires the State to notify each LEA that serves schools that meet the criteria for CSI. Upon receiving notification from the State, and in partnership with stakeholders and for each school that meets the criteria, the LEA shall:
  Locally develop and implement a plan for the school to improve student outcomes
  Approve each plan
  The Plan must:
  - Be informed by all State indicators, including student performance against State-determined long-term goals;
  - Be based on a school-level needs assessment;
  - Include evidence-based interventions; and
  - Identify resource inequities, which may include a review of LEA- and school-level budgets, and address those inequities through implementation of the plan.

- **Limited English Proficient Students:** The Act requires notice be given to parents of limited English proficient students regarding limited English proficiency programs, not later than 30 days after the beginning of the school year (or, for students identified later in the school year, within two weeks). Notice includes: the reasons for the identification of the student as limited English proficient; the need for placement in a language instruction educational program; the student's level of English proficiency and how such level was assessed; the status of the student's academic achievement; the methods of instruction used in the available programs (including content, instructional goals, and the use of English and native language); how the recommended program will meet the student's

Published using Google Docs Report abuse Learn more



English Learner and the manner in which the program will meet the needs of a child identified as either a long-term English learner or English learner at risk of becoming a long-term English Learner. (Ed. Code, § 313.2)

The information provided above is available upon request from each student's school or the district office. Additional notices that may be required shall be sent separately. (20 U.S.C. § 6301 et seq.)

**2.9 GRADING AND MARKING POLICY**

**District Policy:** All Students are learning every day, and they do so at different rates and in different ways. Supporting all of our students requires that teachers and parents work together to ensure grade level mastery of standards and content as well as to provide additional support where necessary. Regular communication of learning is an integral part of this partnership. Grading and Report Cards serve as an important part of this ongoing communication.

**ELEMENTARY**

**Grades K-8** – Report cards are issued three times a year to students in elementary school. Parent conferences are held in early November. Parents will be notified by their school for report card distribution information and conference dates.

1. **Elementary Report Cards:**
   a. Each school decides on the manner in which report cards are distributed (in person, electronically, by mail, etc.) and shares this with parents on or before Back-to-School Night.
   b. Report cards are distributed approximately three weeks after the last day of the trimester. (See WCCUSD Calendar). Exact dates of distribution will be provided to parents by each elementary school.
   c. Each trimester is approximately sixty (60) days in length.
   d. Report Cards reflect a child's learning for that period of time and progress toward grade level standards, rather than timeliness or other factors which may be the result of circumstances outside a student's control.
   e. Students will be allowed to redo assignments for full credit.
   f. Elementary Report Cards will continue to include strengths-based narratives to describe what students currently can do and their next steps in the progression toward the mastery of skills and grade level standards. The strengths-based narratives will include specific data from district and site assessments, at least 3 specific skills that will be worked on in the coming trimester, and ways the parent can support student learning.
   g. A student who transfers from a school outside the District fifteen (15) days or less before the end of the trimester will not receive a report card for that trimester.
   h. District leaders, site administrators, teachers and community members are working together to better understand and define proficiency-based grading and developing a more refined, equity focused report card. A proficiency-based, standards-aligned section has been added to the report card.
2. **Progress Reports:** Progress reports are provided mid-trimester. They are a critical piece of communication particularly for students, K-8, who are struggling to meet grade level expectations. A copy of the progress report will be kept in the student's cumulative folder.
3. **English Learners:** Progress for English Learners is included on report cards and progress reports, indicating their progress toward CA English Language Development Standards with comments specifically targeted to their particular growth along the continuum: Emerging to Expanding to Bridging.
4. **Special Education Students:** Students who have an Individualized Education Plan (IEP) receive a Progress Toward Goals along with their regular report card.
5. **Section 504 Students:** A student's 504 Plan will determine the modifications necessary, if any, in grading.

**Students' Responsibilities:**

1. Deliver the progress report and/or the report card to the parent/guardian if not sent home electronically..

Published using Google Docs Report abuse Learn more



student who is currently working below grade level.
3. Know when report cards are issued.
4. Meet with the teacher if a conference is requested.
5. Discuss your child's growth, development and overall learning with him/her/them.
6. Take appropriate action to support the student.

**Teachers' Responsibilities:**
1. Evaluate student achievement and maintain records of student progress.
2. Issue a progress report for students who are performing below proficiency. Place a copy of the Progress Report in the student's cumulative folder.
3. Issue report cards three (3) times a year.
4. Maintain returned progress report signature forms, report card response forms or electronic communication..
5. Schedule and make a reasonable effort to have a conference with the parent/guardian of each student in the class.
6. Maintain ongoing communication with the parents/guardians of students.

**Administrators' Responsibilities:**
1. Review and approve all progress reports.
2. Review all grades and comments for students in grades K-8.
3. Supervise the implementation of this policy.

**SECONDARY**
Report card marks are given on a quarter and semester basis to inform the parent/guardian and student of the academic progress of the student. In high school semester, marks will be used to earn credits toward graduation and to compute grade point averages.

- Report cards are distributed within ten (10) school days after the last day of quarter or semester. Exact dates of distribution will be provided to parents by each secondary school.
- Each quarter is approximately forty-five (45) days in length.

**Eligibility for Report Card:** Any student who is enrolled for a minimum of fifteen (15) school days of any quarter must receive marks at time of leaving. Those enrolled for fourteen (14) or fewer school days will not receive report card marks. Their marks come from the sending school.

- **Report Card Marks:**
  A = Outstanding Achievement
  B = Good Achievement
  C = Satisfactory Achievement
  D = Minimum Achievement
  F = Unsatisfactory Achievement

- **Progress Reports:** A progress report is a report issued prior to the report card informing the parent/guardian of the student's progress to that date. Students receiving a mark of "D" or "F" must receive a progress report. The progress report will be issued at least fifteen (15) school days before the report is completed.

  - **Interim Action:** If any student who did not receive a D or F progress report is in danger of failing the class, the teacher must issue a progress report no later than ten (15) days before the end of the marking period if a student is in danger of receiving a failing grade.

  - **Purpose:** The purpose of the "D" or "F" progress report is to provide a warning for the student of possible failure in sufficient time to notify the student and parent of the need to improve prior to the end of each marking period. Teachers will mark comments on the progress report indicating the reasons for the "D" or "F."

  - **"F" Mark Requirement:** A student cannot receive an "F" mark on the report card without being given a "D" or "F" progress report.

- **Quarter and Semester Reviews and Final Examinations:** All courses should end with an assessment, project, or presentation that demonstrates mastery of the skills and standards covered during that semester. Student performance on this mastery based assessment may support a passing grade even if past performance did not demonstrate mastery. The intent is to be in accordance with mastery-based grading best practice and to use the 'latest and greatest' work to assess progress.

- **Repeat Course Credit**: If a student wishes to improve his/her GPA (from a D to a B, in Geometry for example), the student may repeat the course only once with prior approval from the counselor. If a student does not receive a "C" or better in a selected sequential course, i.e., Spanish 1 to Spanish 2, (See Section 7.0) the student may only repeat the course ONCE for graduation requirement credit. If a student does not receive a "C" or better the second time, the student may repeat the course to ensure sequence, but with elective credit only. The Superintendent's designee must approve any exceptions. Students who fail a quarter or semester of a course need repeat only the quarter/ semester, which they failed.

- **Special Education Students:** A student's IEP includes a statement of how the student's progress toward the annual goals will be measured and how the student's parents will be regularly informed of the student's progress

Published using Google Docs Report abuse Learn more



1. Review the progress report and contact the teacher or school if discussion is warranted.
2. Be aware that report card marks will be issued usually in early November, early February, mid April, and late June. Find out how report cards and progress reports will be issued.
3. Check PowerSchool website for your child's most recent report cards. Contact your child's school to receive login access.
4. Contact the school if you have not received any report card by the expected date.
5. Make any appeal about a quarter or semester mark by the end of the subsequent quarter.

**Teachers' Responsibilities:**

1. Complete progress reports with comment(s) about those students who are achieving at the D or F level no later than twenty (20) days before the end of the quarter and issued to parents no later than fifteen (15) days before the end of the quarter. All coaches/sponsors of extra-curricular activities will circulate rosters to classroom teachers at progress report time for posting of D or F marks.
2. After the issuance of the progress report, should a student's mark change from a passing mark to an F, the teachers must issue another progress report signed by the principal or designee no later than ten (10) days before the end of the marking period.
3. Issue a report card mark after considering all relevant data.
4. Keep all marked papers and/or projects not returned to the student for a period of time no less than one quarter beyond the end of a marking period in the event that a mark is challenged.

**Counselors' Responsibilities:**

- Maintain a file of the progress reports issued to his/her students.
- Conduct periodic achievement reviews with students and participate in the local review process.

**Administrators' Responsibilities:**

1. Supervise implementation of this policy.
2. Hold local Review Board/SST meetings on a quarterly basis to review the programs of students with two or more "F" marks and recommend adjustments in student programs to improve academic progress.
3. Respond during the school year to any parental appeal about a mark as soon as possible but no later than within ten (10) school days.
4. Should a student's mark be lowered to an "F" because of missing or incomplete work during the last twenty (20) days of the marking period, and if the student has not received a progress report, sign the progress report if issued ten (10) days before the end of the quarter. Should the teacher issue a progress report after ten (10) days before the end of the quarter, do not sign the progress report unless there are valid, extenuating circumstances

**Senior "F" Notice**

Purpose: The purpose of "F" notices for seniors are to ensure that seniors at risk of not graduating receive an additional progress report within ten days of the time that the senior graduation list is finalized. It is critical that both the parent and the student are aware of the possible failure.

- Letter 4: Seniors Quarter 3 This letter should be sent home during the regular local review process before senior "F" notices if/when applicable.
- Senior's who were failing at the end of quarter 3 should receive a Local Review letter specifying that they may not graduate if the grade/s do not improve.
- Seniors who have "F"s" in the second half of the fourth quarter and/or will receive an "F" for their semester grade must receive a senior "F" notice during 10 days before the graduation programs are finalized
- Teachers will complete senior "F" notices and give them to students' counselors
- Counselor's will distribute "F" notices to students and ask students to sign in receipt of the notice
- A designee will also call home to notify the parent of the "F" notice and document the phone call in the SIS
- If student signature of receipt cannot be obtained within three days, notice via certified mail is sent to home address & documented in SIS

**2.10 GRADUATION REQUIREMENTS**

**High School Graduation Requirements: Courses and credits required by the District in order to graduate from high school and to satisfy the UC/ CSU admission requirements as follows:**

| Graduation Requirements Subjects and credits | CSU/UC Admission Requirements<br>*Required A-G course must be completed with a C- or better |
|---|---|
| **English Language Arts - 40 credits** | Meets **B** Requirements<br>4 Years required |
| **Mathematics - 30 credits**<br>• *Including 10 credits of Algebra I or above* | Meets **C** Requirements<br>3 years required (e.g., Algebra, Geometry and Algebra 2), must complete a |

Published using Google Docs Report abuse Learn more



| | |
|---|---|
| • Physical Science (10) | Biological Science(e.g., Biology) and 1 year of physical science (e.g Chemistry or Physics) both with a lab component<br><br>3 years recommended |
| **Social Science - 30 Credits**<br>• *World History(10)*<br>• *U.S. History(10)*<br>• *Government (5)*<br>• *Economics (5)* | Meets **A** Requirements<br>2 years required including 1 year of U.S History or one semester of US history and one semester of American Government and 1 year of World History |
| **Physical Education - 20 credits** | Does Not Meet Any Requirements |
| **Fine Arts - 10 credits** | Meets **F** Requirements<br>1 year required or two one-semester courses in the same discipline |
| **World Language - 10 credits** | Meets **E** Requirements<br>2 years required or equivalent to the 2nd level of high school instruction) and courses must be taken in the same language<br><br>3 years recommended |
| **Electives**<br>Electives (A - G) 10 credits<br>Electives 55 credits | Meets **G** Requirements<br>1 year required of elective course work chosen from any area on approved A-G course list |
| **Other: New as of 2019-2020: Graduation requirement revised to 2 out of 3 classes in the categories of Visual/Performing Art, CTE, and Foreign Language. UC/CSU requirement remains the same.** | |
| Beginning with the graduating class of 2023, documentation that the student has completed and submitted FAFSA, CASAA, or opted out. | Does Not Meet Any Requirements |
| **TOTAL 225 credits** | |

**Career Technical Education (CTE):** CTE may be offered by the District as career and workforce preparation for high school students, preparation for advanced training, and the upgrading of existing skills. CTE provides high school students who are 16 years of age or older with valuable career and technical education so students can: (1) enter the workforce with skills and competencies to be successful; (2) pursue advanced training in postsecondary educational institutions; or (3) upgrade existing skills and knowledge. A CTE course may also satisfy a graduation requirement and a subject matter requirement for admission to the UC and CSU.
To learn more about the District's career technical education classes, please visit the District's website at: College and Career Pathways
Students are encouraged to meet with school counselors to help them choose courses at their school that will meet college admission requirements or to enroll in career technical education courses, or both.

**Diploma Requirements:** Effective July 1, 2007 the prescribed course of study for students in grades 9 through 12 shall include [BP. 6146.1]: Students transferring within the district must complete the last semester in the school in order to obtain a diploma from that school.

**High School Honor Graduation Requirements:**
High School Honor Graduation Status may be conferred to students who have earned a cumulative GPA of 3.5 or more with no grade lower than a "C" as listed in the weighted ranked GPA printout at the end of the first semester.

The weighted GPA is to be used as the official GPA for determining class ranking, honors, etc.
The GPA includes credit earned in all courses taken in grades 10 through 12, including repeats.
**Note:**
1. Grades from ninth grade are not to be included for the purpose of honor graduates.
2. "No grade lower than a "C" is a change. "C" includes C, C– and C+.

**2.11 HOMEWORK POLICY**

Homework extends learning in the classroom. Team teachers will coordinate the amount of work assigned. In addition, all students are expected to engage in a reading activity apart from homework assignments.

**Students' Responsibilities:**
- Be aware of the homework assignment and the due date.
- Complete the assignment neatly and by the date due.
- Seek assistance from the teacher when having difficulty completing the assignment.

**Parent/Guardians' Responsibilities:**
- Establish a time and a quiet place to study.
- Be aware of student's homework and progress.
- Insist that homework assignments be completed neatly, on time, and returned the following school day.

Published using Google Docs
Report abuse
Learn more



**Teachers' Responsibilities:**

- Select homework assignments that are appropriate, challenging and meaningful to the student.
- Explain the assignment and the due date.
- Assign work that the student can complete independently, or with caregiver support.
- Acknowledge the homework by collecting it, reviewing it in class, and/or keeping a record of work completed.
- Supervise homework correction if done by students in class.
- Return homework in a reasonable amount of time giving appropriate feedback and/or marks.
- Communicate homework procedures to **Parent/Guardians'** early in the year.

**Administrators' Responsibilities:**

- Supervise implementation of this policy.
- Provide information about the school's Homework Policy to parents and teachers if it elaborates on the district's homework policy.

**2.12 LANGUAGE ACQUISITION PROGRAM**

(Modified **from CA Ed.G.E. Initiative Parental Notice** at https://www.cde.ca.gov/sp/el/er/caedge.asp**)**

WCCUSD provides all parents or legal guardians with information on the types of language and language acquisition programs. WCCUSD provides this notification in the form of an annual parent handbook. For students who are enrolling after the beginning of the school year, the CA Ed.G.E. Initiative parental notice is to be provided upon enrollment.

WCCUSD Parental Notice

**Available Language Programs & Language Acquisition Programs**

**West Contra Costa Unified School District (WCCUSD)** offers the following language and language acquisition programs for student enrollment. Parents/Guardians may choose a language acquisition program that best suits their child (EC Section 310[a]).

A description of the language acquisition programs provided in the **West Contra Costa Unified School District** are listed below. Please select the program that best suits your child. (20 U.S.C. Section 6312[e][3][A][iii],[v])

☐ **Structured English Immersion (SEI) Program:** A language acquisition program for English learners in which nearly all classroom instruction is provided in English, but with curriculum and a presentation designed for pupils who are learning English. At minimum, students are offered ELD and access to grade level academic subject matter content.

☐ **Dual-Language Immersion (DLI) Program:** Also referred to as **Two-Way Immersion,** is a language acquisition program that provides language learning and academic instruction for native speakers of English and native speakers of another language, with the goal of high academic achievement, first and second language proficiency, and cross-cultural understanding. This program begins in transitional kindergarten/kindergarten (TK/K) and continues through sixth grade. **One-Way Immersion** programs are generally offered where the native speaker of English or the native speaker of another language is not large enough to offer Two-Way Immersion.

**In WCCUSD, we have DLI programs at the following Elementary schools:**
Dover, Grant, West County Mandarin, Downer, Chavez, Lincoln, Washington, Coronado, Lake, Ford, Stewart and Korematsu MS.

All Elementary English Learners have priority enrollment at these schools.

At The Secondary Level, we have the Newcomers Model at Helms MS, Kennedy HS, and Richmond HS. Newcomer ELs have priority enrollment in these programs.

**How to Enroll Your Child in a Language Acquisition Program:**
Submit a verbal or written request to the office at your local school or by central office online enrollment process. *Waivers" are no longer required.

**About Language Acquisition Programs and Language Programs**

| Program Type | Characteristics |
|---|---|
| Language Acquisition Program (English Learners) | The California Code of Regulations section 11309 requires that any language acquisition program provided by a school, district, or county shall:<br><br>• Be designed using evidence-based research and include both Designated and Integrated English Language Development; • Be allocated sufficient resources by the local educational agency (LEA) to be effectively implemented, including, but not limited to, certificated teachers with the |

Published using Google Docs Report abuse Learn more



| | |
|---|---|
| | language; and Achievement of the state-adopted academic content standards in English, and, when the program model includes instruction in another language, achievement of the state adopted academic content standards in that other language. |
| Language Program (non-English Learners) | • Language programs offer students who are not English learners opportunities to be instructed in languages other than English • May lead to proficiency in languages other than English |

**How to Request the Establishment of a New Program at a School**:
Schools in which the parents or legal guardians of 30 pupils or more per school or the parents or legal guardians of 20 pupils or more in any grade request a language acquisition program that is designed to provide language instruction shall be required to offer such a program to the extent possible. (EC Section 310[a].)

**Receiving and Tracking Parent Requests**

Each school is required to maintain written records of parent requests (including verbal requests) which include:
• Date of request
• Parent and child names
• Description of request
• Grade level

5 CCR section 11311 requires that schools:
• Assist parents in clarifying their request
• Maintain records of each request for three years
• Accept requests from students enrolled for the current year as well as the following school year
• Monitor the number of parent requests for language acquisition or language programs on a regular basis throughout the year
• Consider multilingual programs: When determining if a threshold is reached, schools must consider requests for a multilingual program model from parents of English-native students.

-Provide information: Schools must provide information on available language programs to parents or guardians, either when they enroll or as part of the annual parent notice.
-Explain program denials: If a school is unable to implement a requested program, they must provide a written explanation of the reasons and may offer an alternative option.

## Parent and Community Engagement

(Procedure Pending board Approval)

Parents may provide input regarding language and language acquisition programs in the LEA or to be considered in the LEA during the development of the Local Control and Accountability Plan (EC Section 52062.) If interested in a different program from those listed above, please contact the Director English Learner Achievement; Esaul Orozco at eorozco2@wccusd.net. Or the Director of Community Engagement; Martin Blake at martin.blake@wccusd.net.

The information required in 5 CCR section 11309(c) (CDE CA Ed.G.E. Initiative web page at https://www.cde.ca.gov/sp/el/er/caedge.asp)
**Reaching a Threshold**

When the parents of 30 pupils or more enrolled in a school, or when the parents of 20 pupils or more in the same grade enrolled in a school, request the same or substantially similar type of a language acquisition or language program, the school responds by notifying the LEA immediately and taking the following three actions:

1. **Communication**

Within 10 school days of reaching a threshold described above, the LEA notifies the parents of pupils attending the school, the school's teachers, administrators, and the LEA's English learner parent advisory committee and parent advisory committee, in writing, of the parents' requests for a language acquisition program.

2. **Cost and Resource Analysis**

The LEA then identifies costs and resources necessary to implement any new language acquisition or language program, including but not limited to:
a. Certificated teachers with the appropriate authorizations
b. Necessary instructional materials
c. Pertinent professional development for the proposed program
d. Opportunities for parent and community engagement to support the proposed program goals

Published using Google Docs Report abuse Learn more



• **Determination to implement a program at the school**: In the case that the LEA determines it can implement the requested program, the LEA creates and publishes a reasonable timeline of actions necessary to implement the program. As a part of the implementation, the LEA confers with school personnel, including administrators, and teachers with the authorizations required to provide or oversee programs and services for English learners, regarding the design and content of language acquisition programs.

• **Determination not to implement a program at the school:** In the case that the LEA determines it is not possible to implement the program requested by parents, the LEA provides a written explanation of the reason(s) why the program cannot be provided. Further, the LEA may offer an alternate option that can be implemented at the school.

Each school follows the process described above, even if the LEA, at the time the threshold is met, provides the requested language acquisition or language program at another school.

Citations: EC sections 305 and 310; 5 CCR section 11311 and 11312.

**2.13 MILITARY PARENT OPT-OUT FORM**

Our high schools may be requested to provide the names, addresses, and telephone numbers of high school students to military recruiters. You do not have to participate in this program. If you do not wish to have your child's name, address, and phone number disclosed to the groups that may request it, you must complete the Military Parent Opt-Out Form for Release of Student Name, Address, and Phone Number. Forms are available in the back of this booklet or at your high school's main office and on the district's website.

**2.14 NOTICE OF ALTERNATIVE SCHOOLS**

California State Law authorizes all school districts to provide for alternative schools. Section 58500 of the Education Code defines an alternative school as a school or separate class group within a school that is operated in a manner designed to:

a. Maximize the opportunity for students to develop the positive values of self-reliance, initiative, kindness, spontaneity, resourcefulness, courage, creativity and responsibility, and joy.
b. Recognize that the best learning takes place when the student learns because of his or her desire to learn.
c. Maintain a learning situation maximizing student self-motivation and encouraging the student in his or her own time to follow his or her own interests. These interests may be conceived by him or her totally and independently or may result in whole or in part from a presentation by his or her teachers of choice or learning projects.
d. Maximize the opportunity for teachers, parents and students cooperatively to develop the learning process and its subject matter. This opportunity shall be a continuous permanent process.
e. Maximize the opportunity for the students, teachers, and parents continuously to react to the changing world, including but not limited to the community in which the school is located.

In the event any parent, pupil, or teacher is interested in further information concerning alternative schools, the county superintendent of schools, the administrative office of this district, and the principal's office in each attendance unit have copies of the law available for parent information.

**2.15 PE INSTRUCTIONAL MINUTES**

The adopted course of study for grades 1 through 8 in an elementary school must include physical education for not less than 200 minutes each ten school days, exclusive of recesses and the lunch period. (Ed. Code, §§ 51210, 51223)

A complaint of noncompliance may be filed under the District's Uniform Complaint Procedures and Title 5 of the California Code of Regulations.

**2.16 PREGNANT AND PARENTING PUPILS**

All schools are required to provide parents and guardians with annual written notice of pregnant and parenting pupils. (Ed. Code, § 222.5) Pregnant and parenting pupils are entitled to accommodations that provide them with the opportunity to succeed academically while protecting their health and the health of their children. "Pregnant or parenting pupil" means a pupil who gives or expects to give birth or a parenting pupil who has not given birth and who identifies as the parent of the infant.

Published using Google Docs Report abuse Learn more



parent if under 18) may notify the school of the student's intent to exercise this right. Leave may still be taken even if notice was not provided.

During the leave, the student's absences shall be deemed excused, and the student shall not be required to complete academic work or other school requirements.

A pregnant or parenting pupil may return to the school and the course of study in which he or she was enrolled before taking parental leave. Upon return to school after taking parental leave, a pregnant or parenting pupil is entitled to opportunities to make up work missed during his or her leave, including, but not limited to, makeup work plans and re-enrollment in courses.

A pregnant or parenting pupil may remain enrolled for a fifth year of instruction in the school in which the pupil was previously enrolled when it is necessary in order for the pupil to be able to complete state and any local graduation requirements, unless the local educational agency makes a finding that the pupil is reasonably able to complete the local educational agency's graduation requirements in time to graduate from high school by the end of the pupil's fourth year of high school.

A student who chooses not to return to the school in which he or she was enrolled before taking the leave is entitled to alternative education options offered by the local educational agency to include educational programs, activities, and courses equal to those he or she would have been in if participating in the regular education program.

WCCUSD offers an Adolescent Parent Program (APP), which is a voluntary school-based program located on the Greenwood Continuation School campus for any pregnant teen in the West Contra Costa Unified School District. Its purpose is to keep pregnant teens on the graduation track during their pregnancy and to teach them the skills necessary to be a successful parent. School counselors will review any request to take part in APP.

A student will not incur any academic penalties as a result of using the accommodations in this section. (Ed. Code, § 46015)A complaint of noncompliance may be filed under the District's Uniform Complaint Procedures and Title 5 of the California Code of Regulations.

## 2.17 PROMOTION AND RETENTION POLICY

The existing Promotion and Retention Policy, BP 5123, was adopted August 20, 2008. Copies are available at your student's school or at the District Office, 1108 Bissell Avenue, Richmond, CA 94801.
Students need to proceed through school at a pace that allows them to acquire the basic grade level skills necessary for mastery of standards in all four (4) CORE areas, Language Arts, Math, Science, and Social Science.

**Student Success Team or Subcommittee of the SST:** This is the school site committee that reviews concerns about individual students. The SST serves as a regular education problem-solving process and is a forum to support classroom teachers in their efforts to provide quality classroom experience for all of their students. Parents shall be involved in this committee when their child's progress is discussed.

**Promotion Policy**
It is the policy of the WCCUSD that factors determining promotion decisions shall include report card marks, other district measures of academic achievement and other factors. *Age: Regarding chronological age, students may be considered for grade placement in:

Kindergarten if at least 5 years as of September 1
Grade 1 if at least 6 years as of September 1
Grade 2 if at least 7 years as of September 1
Grade 3 if at least 8 years as of September 1
Grade 7 if at least 12 years as of September 1
Grade 8 if at least 13 years as of September 1
Grade 9 if at least 14 years as of September 1
Grade 10 if at least 15 years as of September 1
Grade 11 if at least 16 years as of September 1
Grade 12 if at least 17 years as of September 1

**Retention Policy/Acceleration Policy**
West Contra Costa Unified School District's retention and acceleration policy focuses on placement of students in instructional settings where they will be most successful. The decision to retain or accelerate shall be based on many factors including core academic performance, maturity, and the success of Tier 1 and 2 instruction in and out of the classroom. For any student being considered for retention or acceleration, an SST meeting must be held formally and a Response to Intervention (RTI) Plan recommending academic interventions must be developed by November or at the earliest possible time during the school year.

**For Middle School Students**, a Local Review Board (LRB) meeting must be held to develop an intervention program at the end of the first semester for academically unsuccessful middle school students.

Published using Google Docs Report abuse Learn more



should be made in an I.E.P. meeting based on student progress.

To determine the retention status of academically unsuccessful students, the SST or LRB will meet to review student data and make one of three decisions:

- The student should be promoted with intervention requirements that are mandated.
- The student should attend Extended Learning during summer.
- The student should be retained. There is no provision for retaining a student more than one time.

Retention recommendation for the Special Education students should be made in an I.E.P. meeting based on student progress.

**Parents' Responsibilities:**
1. Attend parent/teacher conferences.
2. Assist the child to improve in the areas needing remediation and provide other special assistance.
3. Attend the SST meetings. (This is a requirement)
4. Parents may appeal the decision to retain their child. Appeals are to be sent to the State and Federal Program office.

**High School Credits**
A student will earn five (5) credits for every passing semester mark, A to D. A student who earns the minimum number of credits will be promoted or, if a senior, graduate in June of that year.
Number of credits needed for each grade:
Grade 10 - 55 credits
Grade 11 - 110 credits
Grade 12 - 165 credits
Graduation (includes passing required subjects): 225 credits

## 2.18 REVIEW OF CURRICULUM

A prospectus of curriculum, including titles, descriptions, and instructional aims of every course offered by each public school, is available at the school site for parent review upon request. Copies are available upon request for a reasonable fee not to exceed the actual copying cost. (Ed. Code, §§ 49063, 49091.14)

## 2.19 SCHOOL ACCOUNTABILITY REPORT CARD

The School Accountability Report Card (SARC) provides parents and the community with important information about each public school. The SARC can be an effective way for a school to report on its progress in achieving goals. The public may also use a SARC to evaluate and compare schools on a variety of indicators. Since November 1988, state law has required all public schools receiving state funding to prepare and distribute a SARC. A similar requirement is also contained in the federal Elementary and Secondary Education Act (ESEA).

[Ed. Code § 35256] School Accountability Report Cards are also available on our district webpage (https://www.wccusd.net/Page/11801) and on the California Department of Education's webpage (http://sarconline.org/). Home language versions of SARCs have been produced for schools with 15% or more English Learners with that home language. A hard copy of the SARC is available upon request.

## 2.20 SECTION 504

Section 504 of the Rehabilitation Act of 1973 (Section 504) is a federal law that prohibits discrimination against individuals with disabilities in programs and activities that receive financial assistance from the U.S. Department of Education. Discrimination/harassment in any form toward individuals on the basis of their actual or perceived disability is unacceptable and will not be tolerated. The District will promptly investigate all complaints of disability-based discrimination/harassment and take reasonable actions to stop future incidents of discrimination/ harassment.

Section 504 also requires that eligible students with disabilities be provided a free and appropriate public education. For students who are not eligible for special education services, but meet the federal definition of a person with a disability under Section 504, a Section 504 Plan is developed which indicates the accommodations, supplementary aids and/or services which can be provided through the general education program. Parents or guardians will be notified in writing of any District decisions which concern the identification, evaluation, and/or educational placement of students and their right to participate in, and/or appeal these decisions under Section 504.

**SECTION 504 CHILD FIND** (34 CFR § 104.32(a); 34 CFR § 300.111; and EC§§56300, 56301): The District has a duty under both Section 504 of the Rehabilitation Act of 1973 and the Individuals with Disabilities Education Act (IDEA) to identify, locate and assess children with disabilities who are in need of regular or special education and related aids and services. If you believe that your child may be a child with a disability, you may initiate a referral for assessment by contacting the school site principal.

Published using Google Docs Report abuse Learn more



State and federal law require that a free and appropriate public education (FAPE) in the least restrictive environment be offered to qualified pupils with disabilities ages 3 through 22 years. Please contact the local director of special education for specific information. (Ed. Code, § 56040 et seq.) In addition, services are available for students who have a disability which interferes with their equal access to educational opportunities. (Section 504 of the Rehabilitation Act of 1973, 34 C.F.R. § 104.32) The District officials listed below is responsible for handling requests for special education services and services under Section 504 and may be reached at the following address and telephone:

Special Education
Guthrie Fleischman, SELPA Director
3000 Parker Rd.
Richmond, CA 95806
510- 307-4630

Section 504
510-307-4633
*Please feel free to reach out to our Executive Directors in regards to Section 504. Area 1: DiShawn Givens (dishawn.givens@wccusd.net). Area 2: Jawan Eldridge (jeldridge@wccusd.net). Area 3: Jose De Leon (jdeleon@wccusd.net). 1108 Bissell Ave., Richmond, CA 94801, (510) 231-1483.

## 2.22 SPECIAL EDUCATION

**SPECIAL EDUCATION** (EC §56000 et seq.; 20 USC §1400 et seq.): State and federal law requires that a free appropriate public education (FAPE) be offered to eligible students with disabilities ages 3 through 21 years. For information concerning student eligibility, assessment, the provision of special education and related services, parental rights and procedural safeguards, or other related matters, please contact the District's Special Education Department at (510) 307- 4630. Information is also available online at WCCUSD.net.

**SPECIAL EDUCATION CHILD FIND** (34 CFR § 104.32(a); 34 CFR § 300.111; and EC§§56300, 56301): The District has a duty under both Section 504 of the Rehabilitation Act of 1973 and the Individuals with Disabilities Education Act (IDEA) to identify, locate and assess children with disabilities who are in need of regular or special education and related aids and services. If you believe that your child may be a child with a disability, you may initiate a referral for assessment by contacting the school site principal or the Special Education Department at (510) 307-4630.

**SPECIAL EDUCATION COMPLAINTS**: Federal and state laws contain several methods for resolving issues with the District. While the law contains more formal methods of dispute resolution, the District also has less formal means of addressing your concerns, which we encourage you to use. When you have a concern about your child's education, it is important that you call or contact your child's teacher or school-site administrators to talk about your child and any problems you see. When you have a concern, this informal conversation often solves the problem and helps maintain open communication. Staff in the District's Special Education Department can also answer questions about your child's education as well as your rights and procedural safeguards. Copies of your rights and procedural safeguards can be found on the Special Education District Website page - https://www.wccusd.net/Page/11206

Additional resources, including how to file a formal complaint, are listed at the end of Notice of Procedural Safeguards and Parents' Rights posted on the District's website at https://www.wccusd.net/Page/11206 and available from your school site principal.

For further information and/or assistance regarding Special Education, including how to obtain a copy of your parental rights and procedural safeguards under Individuals with Disabilities Education Act (IDEA) and/or how to file a complaint, please contact Guthrie Fleishman, SELPA Director, at (510) 307-4630.

## 2.23 TESTING AND ASSESSMENT

**STATE MANDATED AND OTHER ASSESSMENTS**
California Assessment of Student Performance and Progress (CAASPP) - The primary purpose of the CAASPP assessment system is to assist teachers, administrators, students and their parents / guardians by promoting high- quality teaching and learning through the use of a variety of assessment approaches and item types. The state-mandated assessments that comprise the 2024-25 CAASPP administration are all online assessments:

**Smarter Balanced (SBAC) English Language Arts/Literacy (ELA) and Mathematics** - In California, students in grades 3 through 8 and 11 will take the Smarter Balanced assessments in ELA and Mathematics. These online tests will be administered in the Spring of 2025. For 11th grade students, the scores will also be used for the California State University Early Assessment Program (CSU EAP).

**California Alternative Assessment (CAA)** – The CAA is designed for students in grades 3 through 8 and 11 who have significant cognitive disabilities and an Individualized Education Program (IEP) specifying the use of the California Alternate Assessment. These assessments, which cover English Language Arts and

Published using Google Docs Report abuse Learn more



California Department of Education has developed the CAST to align with these standards. In the Spring of 2025, WCCUSD students in grades 5, 8, and 11 will take the CAST. Additionally, 12th grade students who did not complete the test in the Spring of 2024 will also have the opportunity to do so. Once a high school student has taken the CAST, they have fulfilled the science assessment requirement.

**California Alternative Assessment for Science** - The California Alternate Assessment (CAA) for Science is an integral part of the California Assessment of Student Performance and Progress (CAASPP) System. Its goal is to assess what students know and can do, helping to identify and address gaps in knowledge or skills early on, so that students can receive the necessary support. Only students who are eligible for alternate testing participate in the CAA for Science, taking an alternate version of all assessments. The CAA for Science is administered to students in grades 5, 8, and once in high school (grades 11 or 12). Individualized Education Program (IEP) teams determine when students with the most significant cognitive disabilities should participate in this alternate assessment, which is aligned with alternate academic achievement standards known as the Science Core Content Connectors and linked to the California Next Generation Science Standards (CA NGSS). In the Spring of 2025, WCCUSD students in grades 5, 8, and 11 will take the CAA for Science. Additionally, 12th grade students who did not take the test in the Spring of 2024 will also have the opportunity to do so. Once a high school student has taken the CAA for Science, they have fulfilled the science assessment requirement.

**California Spanish Assessment (CSA)** - The California Standards Assessments (CSA) is a new online test designed to replace the Standards-based Tests in Spanish. This optional assessment evaluates students' abilities in reading, writing mechanics, and listening, using the Common Core State Standards en Español. It is administered to students receiving instruction in Spanish within California. The CSA aims to measure proficiency in Spanish reading and language arts, providing detailed data on students' Spanish language skills. The CSA will be given to students in grades 3-8 enrolled in Dual Language Immersion (DLI) programs in the Spring of 2025. High school students enrolled in Spanish courses may also take the CSA.

Pursuant to *California Code of Regulations, Title 5, Section 852(b)*, parents or guardians can submit a written request annually to excuse their child from any or all parts of the CAASPP tests. If an exemption request is submitted after testing has commenced, any tests completed prior to the request will be scored, and the results will be reported to the parent or guardian and included in the student's record.

**English Language Proficiency Assessments for California (ELPAC)** - The English Language Proficiency Assessments for California (ELPAC) is the state-mandated test for assessing English language proficiency (ELP) in students whose primary language is not English. Both state and federal laws require local educational agencies to administer this test to eligible students in grades kindergarten through twelve. In 2018, the California Department of Education (CDE) replaced the California English Language Development Test (CELDT) with the ELPAC. The ELPAC is aligned with the 2012 California English Language Development Standards and consists of two distinct assessments: one for initially identifying students as English learners (ELs) and another for the annual summative assessment to evaluate their progress in learning English and determine their level of ELP. The initial assessment is administered from July 1 to June 30, while the summative assessment takes place between February and May each year.

**Alternate English Language Proficiency Assessments for California (Alternate ELPAC) -** The alternate ELPAC is aligned to the 2012 California English Language Development Standards (2012 ELD Standards) through the English Language Development Connectors. For each of the 2012 ELD standards at each grade or grade span assessed on the ELPAC, the ELD Connectors provide an aligned expectation of student ELP that has been reduced in depth, breadth, and complexity in order to be appropriate for students with the most significant cognitive disabilities. The purpose of the Alternate ELPAC is twofold: The Initial Alternate ELPAC provides information to determine a student's initial classification as an English learner (EL) or as initial fluent English proficient (FEP). The Summative Alternate ELPAC provides information on annual student progress toward ELP and supports decisions on student reclassification as fluent English proficient (RFEP).

**National Assessment of Educational Progress (NAEP)** - Often referred to as the "Nation's Report Card," the National Assessment of Educational Progress (NAEP) is the sole national assessment that provides a representative measure of what American students know and can do across various subject areas. Since its inception in 1969, NAEP has periodically assessed students in subjects including reading, mathematics, science, writing, U.S. history, civics, geography, and the arts. Each year, schools are randomly selected to participate in these assessments.

**Physical Fitness Test (PFT)** - State law mandates that school districts administer the Physical Fitness Test (PFT) annually to students in grades 5, 7, and 9. The designated PFT is the FITNESSGRAM®, developed by the Cooper Institute. This assessment is designed to evaluate health-related fitness and to encourage students to establish lifelong habits of regular physical activity. The FITNESSGRAM® test battery measures student performance in the following areas: a) aerobic capacity, b) abdominal strength and endurance, c) trunk extensor strength and flexibility, d) upper body strength and endurance, and e) flexibility. Teachers and administrators are responsible for preparing students to perform their best on the test by offering instruction and practice in the relevant skills. It is recommended that schools

Published using Google Docs Report abuse Learn more



during the first two weeks of May. AP Exams cost approximately $97 each and students sign up for the exams with their AP Teacher and/or Counselor. The AP Exams are generally administered in grades 9-12. For more information, please visit the College Board website at: http://sat.collegeboard.org/home

Fee waivers are available to eligible students for the AP Exams. Students should contact their high school counselor for more information about fee waivers. Generally students participating in the free and reduced lunch program qualify for a fee waiver or reduction.

**International Baccalaureate (IB) Exams** are the culminating experience of the corresponding IB course and may be taken in junior or senior year, depending on the course. IB Exams are administered at each WCCUSD comprehensive high school authorized as an IB World School during the first three weeks of May. IB Exams cost approximately $119 each; students must be enrolled in an IB class to sit for the corresponding exam and may sign up for the exams with their IB Teacher and/or IB Coordinator. Families are advised to check with their desired college or university to understand how exam scores transfer as university credits. Fee waivers are available to eligible students for the IB Exams. For more information, please visit the International Baccalaureate website at: https://ibo.org/programmes/diploma-programme/assessment-and-exams/

### 2.24 TITLE I SCHOOLS

On December 10, 2015, President Obama signed into law the Every Student Succeeds Act (ESSA), which reauthorized the Elementary and Secondary Education Act of 1965 (ESEA). This Act provides parents of all children in all Title I schools with the right to request and receive the professional qualifications of their child's classroom teacher.

The Title I schools include:
**Title I Elementary Schools:** Bayview, Chavez, Collins, Coronado, Dover, Downer, Fairmont, Ford, Grant, Highland, King, Lake, Lincoln, Mira Vista, Montalvin, Murphy, Nystrom, Obama, Peres, Riverside, Shannon, Sheldon, Stege, Tara Hills, Valley View, Verde and Washington
**Title I Middle Schools:** Soskin, DeJean, Helms, Pinole Middle
**High Schools:** DeAnza, Greenwood, Kennedy, Middle College, Richmond, Vista

### 2.25 TRANSITIONAL KINDERGARTEN

Transitional kindergarten (TK) bridges the preschool and kindergarten years. It is considered the first year of a two-year kindergarten program, implemented in California for children who are not old enough yet for kindergarten but want to build their social, developmental, and early academic skills.

TK classrooms are taught by a multiple-subject credentialed teacher who has additional early childhood training and are supported by classroom aides, keeping the student to adult ratio low. The TK curriculum is based on the California Preschool/Transitional Kindergarten Learning Foundations (PTKLF). More information can be found on the California Department of Education's website at https://www.cde.ca.gov/sp/cd/re/psfoundations.asp.

TK is offered at many elementary schools within WCCUSD. The program is open to all WCCUSD students.

**Is Transitional Kindergarten mandatory?**
No, even if a child is TK eligible, parents have a choice of whether they want to enroll their child in TK or preschool.

**Who is eligible for Transitional Kindergarten (TK)?**
For the 2024–2025 school year in California, children who turn five years old between September 2, 2024 and June 2, 2025 are eligible for Transitional Kindergarten (TK). This is an expansion from previous years, when eligibility was based on earlier birth months. The goal is to fully phase in TK for all four-year-olds by the 2025–2026 school year.

## 3.0 STUDENT SAFETY / DISCIPLINE

Published using Google Docs Report abuse Learn more



Students who display inappropriate behavior may be subject to suspension as outlined in the California State Education Code 48900 and 48915. A student may be suspended or expelled for acts which are related to school activity or attendance while on the school grounds, while going to or coming from school, during the lunch period whether on or off campus, and during or while going to or coming from a school sponsored activity.

- The WCCUSD may implement disciplinary action, including suspension or expulsion, for the following conduct:Caused, attempted to cause, or threatened to cause physical injury to another person. [Ed. Code § 48900(a)(1)]
- Willfully used force or violence upon the person of another, except in self-defense. [Ed. Code § 48900(a)(2)]
- Possessed, sold, or otherwise furnished any firearm, knife, explosive, or other dangerous object unless, in the case of possession of any object of this type, the student obtained written permission to possess the item from a certificated school employee, which is concurred by the principal or the principal's designee. [Ed. Code § 48900(b)]
- Unlawfully possessed, used, sold, or otherwise furnished, or been under the influence of, any controlled substance, an alcoholic beverage, or an intoxicant of any kind. [Ed. Code § 48900(c)]
- Unlawfully offered, arranged, or negotiated to sell any controlled substance, an alcoholic beverage, or an intoxicant of any kind, and then either sold, delivered, or otherwise furnished to any person another liquid, substance, or material and represented the liquid, substance, or material as a controlled substance, alcoholic beverage, or intoxicant. [Ed. Code § 48900 (d)]
- Committed or attempted to commit robbery or extortion. [Ed. Code § 48900(e)]
- Caused or attempted to cause damage to school property or private property. [Ed. Code § 48900(f)]
- Stole or attempted to steal school property or private property. [Ed. Code§ 48900(g)]
- Possessed or used tobacco, or any products containing tobacco or nicotine products, including but not limited to, cigarettes, cigars, miniature cigars, clove cigarettes, smokeless tobacco, snuff, chew packets, and betel However, this section does not prohibit use by a student his or her own prescription products 48900(h).
- Committed an obscene act or engaged in habitual profanity or vulgarity. [Ed. Code § 48900(i)]
- Unlawfully possessed, or unlawfully offered, arranged, or negotiated to sell any drug paraphernalia. [Ed. Code § 48900 (j)]
- Disrupted school activities or otherwise willfully defied the valid authority of supervisors, teacher, administrators, school officials, or other school personnel engaged in the performance of their duties. [Ed. Code § 48900(k)] (Please see WCCUSD Positive School Climate Policy for further guidance related to suspensions of any student for defiance).

**Note:** Except for teacher-initiated suspensions [Ed. Code § 48910], students in grades K-3 shall not be suspended for disruption of school activities and/ or willful defiance, and no student in grades K-12 shall be recommended for expulsion solely due to disruption of school activities and/or willful defiance. [Ed. Code § 48900(k)(2)]

- Knowingly received stolen school property or private property. [Ed. Code § 48900(l)
- Possessed an imitation firearm, which is as substantially similar in physical properties to an existing firearm as to lead a reasonable person to conclude that it is a firearm. [Ed. Code § 48900(m)]
- Committed or attempted to commit a sexual assault as defined in Penal Code sections 261, 266c, 286, 288, 288a, or 289, or committed a sexual battery as defined in Penal Code Section 243.4. [Ed. Code § 48900(n)]
- Harassed, threatened, or intimidated a student who is a complaining witness or a witness in a school disciplinary proceeding for the purpose of either preventing that pupil from being a witness or retaliating against that pupil for being a witness, or both. [Ed. Code § 48900(o)]
- Unlawfully offered, arranged to sell, negotiated to sell, or sold the prescription drug SOMA. [Ed. Code § 48900(p)]

Published using Google Docs Report abuse Learn more



*harm, to any Student, or other person attending any school. [Ed. Code § 48900(q)]*

- Aids or abets, as defined in Penal Code section 31, the infliction or attempted infliction of physical injury to another person. For this offense, a Student may be suspended, but not expelled, except that a Student who has been adjudged by a juvenile court to have committed, as an aider and abettor, a crime of physical violence in which the victim suffered great bodily injury or serious bodily injury shall be subject to discipline pursuant to Education Code section 48900(a). [Ed Code § 48900(s)]
- Committed sexual harassment as defined in Education Code section 212.5 (grades 4-12 only). [Ed Code § 48900.2]
- Caused, attempted to cause, threatened to cause, or participated in an act of hate violence, as defined in Education Code section 33032.5 (grades 4-12 only). [Ed. Code § 48900.3]
- Intentional harassment, threat or intimidation of a student, or group of students, in a way that materially disrupts class work, creates substantial disorder, and invades the rights of that student or group of students by creating an intimidating or hostile educational environment. [Ed. Code § 48900.4]
- Making a terrorist threat against school officials or school property, or both. Terrorist threats include any statement, whether written or oral, by a person who willfully threatens to commit a crime which will result in death, great bodily injury to another person, or property damage in excess of $1000, with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out. The threat must be so unequivocal, unconditional, immediate and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, or for the protection of school district property, or the personal property of the person threatened or his or her immediate family. [Ed. Code § 48900.7]

Students and their parents/guardians should refer to Board Policies 5144 and 5144.1 and Administrative Regulations 5144, 5144.1 and 5144.2 for a comprehensive review of the District's practices and procedures regarding student discipline.

### 3.2 EXPULSION PROCESS

If a student is found to have violated Education Code 48900, 48900.2, 48900.3, 48900.4, 48900.7, or 48915, the site Principal or designee may suspend the student. Depending on the offense, a recommendation for expulsion may follow. Within five days of the suspension, a meeting with the student and their family must be held to determine whether the suspension will be extended. At this meeting, the site Principal may decide to extend the suspension pending the outcome of an expulsion hearing. Parents will be notified in writing of the expulsion recommendation and the related Education Code violations.

The Director of School Climate will meet with the parents and the student to discuss next steps, which may include a discussion about alternative education options. An expulsion hearing must be held within 30 days of the recommendation for expulsion. The final decision on expulsion will be made by the West Contra Costa Unified School District Board.

### 3.3 SCHOOL SAFETY AND CODE OF CONDUCT

Safe schools are priority ONE for the District. The Board of Trustees has identified the steps to make our schools safer:

1. **Required Wearing of Lanyards (For Secondary Students Only)**
   All students and staff at each secondary school are required to wear and display an identification badge attached to a lanyard. (A lanyard is a light, cloth material worn about the neck, allowing the student's identification card to be seen at a distance.) The cards will show the student's picture, school name, student's class, school colors and logo. Students will be given the initial badge and lanyard, but will be responsible for replacements. The card has multiple uses including: checking out text and library books, serving as a student body card, and student identification on campus. Student body ID pictures will be taken at each school's "walk-through" day in August. The lanyard and ID badge is MANDATORY, must be worn by each student in order to receive their class schedule, and MUST be displayed at all times while on campus.

2. **Steps for Volunteers**

Parent volunteers (parents/legal guardians) and community members (non-parents) who wish to volunteer at any WCCUSD schools:

Published using Google Docs Report abuse Learn more



b. **Front office staff** will provide you with a visitor's badge based on your level of clearance

c. Visitors and Volunteer Policy

i. Visitors will be required to use the check-in and check-out system at the school each time they enter and leave campus.

3. **Code of Conduct**
Parents/Guardians and Students: Please read the following Code of Conduct. A signed copy of the Code of Conduct, indicating that you have read the document and understand your rights and responsibilities must be returned to school on your registration day. For secondary students, it will be required in order for a student to receive his or her ID badge and lanyard.

**Code of Conduct [Reference BP5131]**
It is the mission of West Contra Costa Unified School District, in partnership with staff, parents, students, and the community, to provide a quality educational program for all students. We strive to help students develop the knowledge, skills, abilities, and values they need to flourish and reach their full potential.

4. **Consequences**
Without a safe and orderly learning environment, it is difficult if not impossible, to offer a positive climate for productivity and success. When determining the consequence, the following circumstances should be taken into consideration:
   1. Age and/or grade level of student.
   2. Frequency of misconduct.
   3. Seriousness of particular misconduct.
   4. Previous Interventions.
   5. Any other relevant factors including, for example, disabled students who are working under an Individualized Educational Program (IEP).

5. **Strategies for Improving Behavior**
Discipline is training that enables children to make appropriate choices in a climate of warmth and support. It is proof that we care. When children make good choices, positive consequences occur. It is as important to acknowledge good behavior as it is to punish misbehavior. Positive guidance and support must come from both the school and the home. Some possible strategies for encouraging positive student behavior are:

**School Environment:**
   1. Build relationships
   2. Give recognition
   3. Awards
   4. Restorative Conversations
   5. Assign leadership opportunities
   6. Conduct a positive student conference.
   7. Send positive notes to parents.
   8. Refer to the school administrator for recognition.
   9. Provide opportunities for meaningful student participation.
   10. Provide instruction in problem-solving techniques.
   11. Define school and classroom rules clearly and enforce them fairly and consistently.
   12. Use behavior contracts.
   13. Present citizenship awards.

We have two purposes in establishing a district discipline plan: (1) to promote learning and growth for students as they develop self-discipline; and (2) to provide a caring and respectful environment for all.

To achieve these goals, students must understand their rights and adhere to their responsibilities.

**Student Rights:**
   1. To be safe. We need to guarantee that students have the best environment conducive to learning.
   2. To be respected and treated with compassion, courtesy, and dignity regardless of race/ethnic background, gender, age, national origin, religion, physical/mental disability, sexual orientation, family structure, political beliefs, physical appearance, or financial status.
   3. To hear and be heard. To express opinions, ideas, and feelings without infringing on the rights of others. Communication is essential to support learning, teaching, working and participating.
   4. To have their property respected.
   5. To have privacy.

Published using Google Docs Report abuse Learn more



of all student rights and responsibilities delineated in this and related school documents. If a rule or policy is unclear, request a faculty member to explain its meaning.

3. To attend school regularly and be in class in your seat or assigned station with materials out, and ready to work.
4. To be considerate, respectful, and non-disruptive in classrooms, hallways, study areas, libraries, cafeterias, and on public transportation.
5. To listen to teachers, administrators, and classified employees who have student supervisory assignments with respect to student behavior during school activities.
6. To respect private, school, and district property,( i.e. no littering, no graffiti, no stealing, no extortion, etc).
7. To refrain from using electronic devices, unless explicitly required for classroom assignments. Students agree to follow specific school expectations related to electronics.
8. To stay off other school campuses, other than your own, unless you have explicit written permission from your principal or your principal's designee.
9. To abide by the school uniform/dress policy of your school site.
10. To understand and accept that the following is not accepted on WCCUSD campuses:

6. **Harassment of students or staff**, including bullying, intimidation, so- called "cyber bullying," hazing or initiation activity, ridicule, extortion, or any other verbal, written, or physical conduct that causes or threatens to cause bodily harm or emotional suffering.
   a. Cyber bullying includes posting of harassing messages, direct threats, social cruelty, or other harmful text or images on the Internet, social networking sites, or other digital technologies, as well as breaking into another person's account and assuming that person's identity in order to damage that person's reputation or friendship.
   b. Sexual harassment of any individual;
   c. Committing an obscene act or engaging in profanity or vulgarity;
   d. Alcohol, tobacco, and other drugs;
   e. Weapons or other dangerous items;
   f. Fighting, as well as encouraging or instigating a disruption or fight; spreading harmful rumors or falsehoods that result in a student conflict; leaving class or campus to watch a disruption; or refusing to respond to requests to leave the scene of a conflict.

(For Secondary Students) To wear safety ID's around the neck, visible at all times, while on campus, and to refrain from altering the safety IDs and lanyards. To dress according to the dress code defined in the school planner. This means no garments exposing the torso; no strapless tube tops; no vests without shirts; no short shorts; no garments with obscene or inappropriate words or pictures; no hats or other head coverings; no gang affiliated or related clothing; no see-through blouses or shirts; no low cut dresses; no sunglasses in class unless prescribed, etc.

**Parent/Guardian Responsibilities:**

1. To read, understand and follow District and school rules and regulations.
2. To support all students in reaching their full potential by making sure they are in school daily and completing all required homework on time.
3. To ensure that students understand their rights and their responsibilities.
4. To help schools promote the basic values listed above, and to provide the students with what they need to succeed.
5. To work with District and school staff to modify and correct inappropriate student behavior.
6. To respond to District and school staff in a manner that shows individual respect.
7. To protect and nurture all students demonstrating the true meaning of community spirit.

**Teachers' Responsibilities:**

1. To support and enforce all school rules and regulations fairly within classrooms, halls and campus.
2. To communicate with and respond to students and parents in a manner that shows individual respect.
3. To suggest conferences with parents, counselors, and administrators concerning students with serious behavioral problems.
4. To report to the principal, assistant principal, or counselor all serious or willful acts of misconduct by students and other individuals.
5. If desired, give detentions for tardiness, class cutting, or minor behavior infractions or institute other appropriate consequences for these kinds of behaviors.

Published using Google Docs Report abuse Learn more



district maintains in its ordinary course of business or receives from a law enforcement agency.

2. To communicate with and respond to students and parents in a fashion that shows individual respect.
3. To issue consequences for those students who demonstrate unacceptable behavior and who fail to honor this policy.
4. To give suspensions from one (1) to five (5) days to students when other means of correction fail to bring about good conduct or when the action of that student presents a danger to persons or property or threatens to disrupt the educational process.
5. To monitor at-risk students with ten (10) or more days of suspension, and keep parents informed about corrective actions being instituted to assist students to improve behavior.
6. To recommend expulsion to the assistant superintendent for conduct violations listed in Education Code Section 48900, when other means of correction are not feasible or have failed to bring about proper conduct, or when the presence of the student causes a continuing danger to the physical safety of the student or others.

**School Site Responsibilities:**
To develop, communicate and implement discipline procedures contained in the school-wide discipline plans consistent with California Education Code Sections 48900, 48900.2, 48900.3, 48900.4, 48900.7, and 48915.

**Community Responsibilities:**
On a limited basis, the community police may cooperate with the West Contra Costa Unified School District administration in the investigation of incidents where the law may have been violated.

Students who do not fulfill the responsibilities listed above may be subject to disciplinary action.

### 3.4 DRESS AND UNIFORM POLICY

The Board of Education has determined that certain gangs (also known as criminal gangs or street gangs) are operating in and around schools within the West Contra Costa Unified School District. In light of this fact, the governing board has also determined that the wearing of gang-related clothing on school premises or during school-sponsored activities threatens the health and safety of the students and impairs the school environment accordingly. Students may not wear, possess, use, distribute, or display any clothing, color, jewelry, emblem, badge, symbol, colored bandana, or sash which represents or associates membership or affiliation with any gang or promotes gang-related activity. Clothing which has been deemed through collaboration between West Contra Costa Unified School District and the local law enforcement or other experts to be gang-related is prohibited.

The Richmond Police Department has notified us of the presence of the following gangs within Contra Costa County: Hot Boyz, One-ways, Mainline, Bay Boyz, VSP – Vario San Pablo, MOB, SWAG Team, Central, North Richmond, and FAM or any reasonable derivations of those identified groups (i.e. derivations that use portions of those names or initials); hair nets, bandanas, doo-rags, or shower caps; t-shirts with creased sleeves, or creased down the center, and pants with split cuffs.

Because gang-related apparel changes frequently, the District and its school sites may change this list, and will provide notice by updating their websites and posting the changes in the school site offices.

Specific clothing or hats determined to be gang-related or otherwise inappropriate/associates under Board Policy and this regulation are prohibited. Each school site may provide parents with a site-specific hat policy that may be more restrictive than the items listed within this regulation, and prohibited headgear will be specified. These restrictions are subject to periodic review. Upon consultation with local law enforcement agencies, or other experts, additional rules that restrict gang-associated dress may be instituted by the school principal at any time with notice to students and parents.

WCCUSD historically has had a policy that allows school sites to adopt a school uniform policy at the school site in accordance with State laws concerning such adoptions. Under this policy, some schools have already adopted uniforms.

Many parents and community members have urged the District to adopt a district wide uniform policy as a means of countering the influence of gangs, minimizing disruption and improving the learning environment. After researching such policies in other districts, the WCCUSD Board of Education has found that use of school uniforms enhances school safety, improves the learning environment, reduces ethnic and racial tensions, bridges socioeconomic differences between children,

Published using Google Docs Report abuse Learn more



The uniform policy took effect October 9, 2006. All WCCUSD Elementary and Middle Schools have implemented a site uniform policy within the parameters set forth in the Board adopted district wide uniform policy. For the 2015 – 2016 school year, the uniform policy shall be in place as of the first day of school.

**Specific School Uniforms:**

A list of the specific uniforms for each school may be found on the District website. In addition, this information can be found by calling the school in question. Students are required to wear the school uniform unless they have received a 'Uniform Waiver' from the policy as outlined below.

**Information Dissemination:**

District and school support staff shall adequately communicate to parents information common to all school sites, including general guidelines for enforcement of the uniform policy.

District administrators will collaborate with school committees and administration to facilitate a clear understanding of the policy at the school site level, assist in the implementation of the policy, clarify procedures and provide financial assistance programs (see Section V below).

This information shall be communicated by one or more of the following: District newsletters; mailings to parents, District website, school newsletters; parent forums; telephonic notification or a telephone hotline; PTA meetings and newsletters; parent advisory meetings; television, radio, and/or newspaper announcements; posters displayed at school and in the community; registration materials.

Each school site, under the direction of site administration, shall adequately communicate to parents information specific to that school site, including description of the required site uniform, guidelines for enforcement of the uniform policy, waiver policy and financial assistance guidelines. District administrators will provide schools with templates and other support materials to facilitate this communication. District administration will also work with schools to facilitate implementation of financial assistance.

**Financial Support Considerations:**

No student shall be denied attendance to school, penalized, or otherwise subject to compliance measures for failing to wear a uniform due to financial hardship. Families needing financial assistance can apply for aid at the school site level using processes developed by the district. Information and guidelines for providing financial assistance will be provided to all school administrators.

The District shall designate a central administrator to coordinate efforts and information regarding the availability and sources of financial assistance.

The District shall compile and maintain a list of community agencies, uniform retailers, organizations and individuals willing to assist families in need. The District shall also create procedures to link identified uniform resources with participating schools.

Prior to the commencement of the uniform policy the district shall:

a. Develop a procedure and criteria to identify families in need of financial assistance;

b. Determine the form and type of financial assistance that will be offered;

c. Designate a specific staff member to assist those families in need of assistance;

d. Collaborate with business and community agency partners to identify resources for assisting families;

e. Prepare a flyer that:
- Describes in detail the default uniform and lists the range of costs for each competitively priced item of clothing as provided by a variety of vendors.
- States that in cases of severe financial hardship, parents may contact the designated district office by phone, mail or in person to request assistance.

f. This information is available at each school site

**<u>Uniform Waiver Process</u>:** Parents/Guardians should be aware that the required uniform policy is effective the first day of school. Parents/ Guardians may request a 'Uniform Waiver' form the district wide uniform policy requirements. To do so they follow these steps:

1. Obtain a Waiver Request form from your local school or by downloading the form from our district website.
2. Complete the Waiver Request form and return it to the principal of the school where the student is enrolled.
3. Attend a waiver-processing meeting with the principal of the school where the request is filed. These meetings will be held at the school where the waiver request is filed. In cases of hardship, the District will make a reasonable effort to schedule a phone conference or home visit. If you have children covered by this

Published using Google Docs Report abuse Learn more



If the parent fails to attend the scheduled meeting, they will be contacted and the meeting will be rescheduled. A second failure to attend a meeting will constitute a withdrawal of the waiver request. If a parent contacts the school to reschedule a meeting before the date of the meeting, this will not constitute a failure to attend. Meetings may be rescheduled twice.

**Elementary and Middle/High School Dress Code:** All elementary and middle/high school students must still follow the Board adopted dress code even if the students have received a waiver under the uniform policy. The dress code is as follows:

Students must dress appropriately at all times. Inappropriate dress is defined as any attire that causes a disruption, or a safety concern on campus. Clothing must be clean, neat and appropriate to an educational setting. Shoes must be worn for safety. The following items are not appropriate

- Garments where the torso is exposed.
- Strapless and sleeveless tops-Shirts or blouses must have sleeves that cover the shoulders.
- Vests without shirts.
- Short shorts or short skirts. Shorts and skirts must be no shorter than the tips of fingers when arms are held at the person's sides.
- Clothing or buttons that have obscene or other inappropriate words or pictures, swear words, sexually suggestive statements or display prohibited substances.
- Hats, other hair covering or hair curlers worn inside of the school building, unless such items are a cultural or religious requirement.
- See-through blouses, low cut shirts or dresses.
- Clothing worn in a manner that exposes the student's underwear.
- Pants must be worn at the natural waist level. The inseams of pants may not be longer than the heels of the person's shoes. (Pants may not be worn "sag or drag")
- Gang affiliated or related clothing and paraphernalia. Wearing of gang colors or other paraphernalia will result in immediate referral to the office.

Please note that school faculties, in conjunction with the site administration and School Site Councils, may establish additional dress regulations that are within the guidelines specified in the California Education Code.

**Students' and Parent/Guardians' Responsibilities:**

1. Be aware of what clothing is considered appropriate and inappropriate.
2. Abide by the dress policy.

**Teachers' Responsibilities:**

1. Be aware of what clothing is considered appropriate and inappropriate and contact the parent and site administrator if the student is wearing inappropriate clothes.
2. If necessary, refer the student to the appropriate counselor, assistant principal or principal for action if a conference with the student and parent contact does not yield sufficient results.
3. Be aware of and enforce the requirement for identification lanyards at middle and high school.

**Administrators' Responsibilities:**

1. Supervise implementation of this policy.
2. Notify the student and the parent of the action that may occur if the student wears inappropriate dress:

- 1st Infraction: Contact the parent and allow the pupil to change the inappropriate dress.
- 2nd Infraction: Parent contact and student detention.
- 3rd Infraction: Parent contact and student detention warning of possible student suspension for defying District policy.
- 4th Infraction: Parent conference-suspension. At this time it must be determined if the parent is not supporting the policy. If this is the case, the parent will be asked to complete the waiver process. If the parent is in support, but the student is non-compliant, a plan for compliance will be developed in conjunction with the parent.

**NOTE: Individual schools may offer further financial assistance options.**

**Secondary Mandatory Lanyard Policy:** WCCUSD has implemented the use of identification lanyards at all secondary schools. This policy was in place at high schools during the 2005-2006 school year and began in the middle schools in the 2006 – 2007 school year. Wearing identification lanyards has proved to be advantageous to the safety of our secondary campuses. **In accordance with the immediate action steps, as defined by the Board of Education, the lanyards are to be worn and displayed at all times by all staff and students at WCCUSD secondary schools.**

body ID pictures will be taken at each school's "walk-through" day in August. The lanyard and ID badge is **MANDATORY** and must be worn by the student in order to receive his/her class schedule and **MUST** be displayed at all times while on campus.

The following discipline plan is followed at all secondary schools for students not displaying their lanyard and identification badge.

- First Time: Assist. Principal, Teacher Aides, Volunteers call home
- Second Time: Detention
- Third Time: In-School Suspension

The school sites are encouraged to use positive reinforcement such as those listed below to help students adhere to this new, parent sponsored safety policy.

- Keep complete data and consistent enforcement of policies at all schools.
- Keep a fresh approach to monitoring – do some kind of weekly check at random times.
- Provide incentives and rewards for the classrooms with high/complete compliance with new policy.

It has been determined that all students should be provided with the initial lanyard and identification badge. This will be provided at no cost to the student. If the lanyard or the identification badge needs to be replaced however, it will be the responsibility of the student or parent/guardian to incur the cost of the replacement. The costs transferred to the student should be as follows:

- $2.00 for lanyard replacement only.
- $3.00 for identification badge replacement only.
- $5.00 for replacement of both lanyard and identification badge.

Again, this policy has greatly improved the safety and security of our campuses. We must be consistent in our implementation and enforcement of this policy.

### 3.5 DISASTER PREPAREDNESS AND SAFETY

The West Contra Costa Unified School District is committed to the safety and security of all students and staff. Disaster preparedness and safety procedures have been updated at every site. Each classroom, school office, and student use areas are equipped with classroom emergency guides outlining general emergency procedures. All school sites hold regular emergency drills.

The Office of Disaster Preparedness and Safety provides emergency management for WCCUSD. The office oversees the Safe School Plan system and provides guidance to schools for emergency response protocols, supplies and emergency drills. The Disaster Preparedness and Safety Office, which provides representation to the City of Richmond and Contra Costa County and coordinates with other agencies in a large emergency, manages the WCCUSD Emergency Operations Center. The office also coordinates the use of schools as public emergency shelters managed by the American Red Cross.

The district's disaster and preparedness plans are premised on the following four fundamental phases:

**Prevention and mitigation** – conducting vulnerability assessments at each of the district's sites to identify and attempt to correct preventable hazards (broken locks, compromised doors, etc.)

**Preparedness –** develop all hazards plans and procedures to natural and manmade disasters and emergencies, in collaboration with first responders (fire, police, etc.), to minimize damage to life and property and testing plans and procedures through routine drills.

**Response –** the district and first responders taking collaborative action (s) based on the respective plans and procedures in the district and local jurisdictions.

**Recovery –** the restoration of learning in the district, the process of healing while returning to a new level of normalcy following a disaster or emergency and providing resources and services to students, staff and families as available.
The district's website for disaster preparedness and safety will be updated periodically with information that will be useful for both school and home.

## 4. STUDENT ENROLLMENT

### 4.1 CHANGE OF RESIDENCY/EMERGENCY INFORMATION

It is the responsibility of parents, guardians and foster care and caregiver adults to inform the school of any change of address, telephone number or emergency information. Provided the school meets its responsibility regarding requirements of

Published using Google Docs Report abuse Learn more



**4.2 INTER-DISTRICT PERMIT POLICY AND DOCUMENTATION REQUIREMENTS**

**Inter-District Permit Information:** Ed. Code 46600-4611
Although students generally must attend school in the district where their parents/guardians reside, the district may, upon request, accept students from another district and may also allow students who live within the district to attend out-of-district schools.

**Inter-district attendance permits may be approved for the following reasons:**

1. **Employment:** A permit may be granted for students if at least one of the parents is employed within the boundaries of a school district that is outside of their district of residence. Parents must work full-time on a regular basis and no less than 30 hours per week during school hours.

2. **Childcare Needs:** A permit may be granted for childcare reasons only to students in grades K-8. The student must be cared for by a childcare center or by someone that lives within the requested school district boundaries.

3. **Continuation:** Provide proof of enrollment from current school/district, i.e. copy of most recent report card, district letter requesting renewal, or letter from current school.

4. **Sibling (brother or sister):** A permit may be granted when a sibling would be in attendance at the same time at the requested school/district.

5. **Special Needs:** A permit may be granted when a physician, school psychologist or other appropriate certified personnel certify special mental or physical health needs of the student.

6. **Relocating:** A permit may be granted when the parent/guardian provides legal documentation as evidence that the family will be moving to the receiving district in the immediate future and would like the student to start the school year in that district.

7. **Program:** A permit may be granted when there is valid interest in a particular educational program not offered in any of our schools serving 7-12 grades, in WCCUSD. The program must be offered in the student's grade level and be a sequential course of study up to the highest grade level at requested school. Such a program or service must be related to the student's academic advancement and not based solely on the student's interests or desires. Before and after school programs and sports are not considered valid educational interests. This criterion does not apply to elementary education programs.

8. **Other:** Highly unusual personal circumstances and if not of the above reasons apply to your request.

**Inter-District Permit Requirements –** Parents must provide the following required documents within their electronic application, before the application deadline. Applications can be accessed via clickable links within the Transfer & Enrollment webpage.:

**NOTE:** Time frame process for Inter-district permits is between 6 to 8 weeks. The district may deny a transfer due to space limitations. Incomplete applications will delay the process and will be denied. Inter- district permits must be renewed each year.

All required documentation must be attached to the application at the time of submission. Additional information may be requested. Applications must include::

**⇒ Verification of address, utility bill (PG&E, water or garbage bill only) under parent's name and no older than 45 days.**

**⇒ Documentation based on your request, please submit all applicable documentation.**

1. **Work Related:** Complete Verification of Employment form or provide a letter from employer on company's letterhead stating specific days and hours of employment, i.e. M-F, 7:00-3:00 p.m., and a copy of the most current paycheck stub. If self- employed provide a tax form, valid business license and utility Bill (at least two of these).
2. **Child Care - Grades K-8:** Complete verification of childcare and provide a copy of childcare's address verification, i.e. childcare license, most current utility bill (PG&E, water or garbage) with provider's name and address.

Published using Google Docs Report abuse Learn more



physician, school psychologist, or other appropriate certified personnel.

6. **Relocating:** If you are relocating to the requested district, you need to provide legal documentation as evidence i.e. rental agreement, lease, or escrow documents.
7. **Program:** Specify the name of the secondary program (grades 7-12)on the form and attach a description of the program from the school catalog or website. Description must include the school or district's logo and show that the program is sequential.
8. **Other:** Provide a written statement along with any supporting documentation that may better help make a decision on your request.

For more information about the Inter-District Permit Policy and Documentation Requirements, please review the clickable links within the Transfer & Enrollment webpage, or contact the Transfer Office via email to TransferOffice@wccusd.net.

### 4.3 OPEN ENROLLMENT DISTRICT TRANSFER POLICY AND PROCESS

**Statutory Notification to Parents/Guardians on Open Enrollment Transfers**

**The West Contra Costa Unified School District assigns students to schools according to designated attendance areas.**

**Options for meeting District residency requirements for school attendance:**

- Residing in the attendance area
- Residency of students in foster care
- Residency of students with guardian
- Families in transition and unhoused children are not subject to residency requirements. School is based on a case-by-case scenario.

**Open Enrollment Process for New Applications**
The Governing Board desires to provide open enrollment options that meet the diverse needs and interests of district students. If you wish to have your child attend a school other than the school of residence, please read the guidelines stated below and then complete the Open Enrollment Application form during the open enrollment period. **The Open Enrollment period takes place in the month of January.** The procedure for transfer application starts by completing the district's Open Enrollment Intra-district Transfer Application form online and providing address verification (PG&E Bill, water bill, or garbage bill) with the name of the parent/ guardian.

Transfer applications may be obtained online from our district webpage at **wccusd.net** under the Transfer Office Department page. **Open enrollment transfers are subject to space availability at the requested site.** WCCUSD anticipates that not all schools will have space for open enrollment requests. Open enrollment transfer requests will be considered according to the following priorities [BP5116.1]:

1. **Sibling (brother or sister):** transfers are considered only if they would be in attendance at the same time at the requested school. (Must provide proof of sibling's current enrollment) Having a sibling at the school requested does not guarantee that a transfer will be granted.
2. **Washington Elementary students**: Who do not wish to participate in the Dual Language Immersion Program (DLI)
3. **Employees:** Any student whose parent/guardian is assigned to that school as his/her primary place of employment.
4. **CSI Schools:** Any student enrolled in a persistently low performing district school that has been identified for Comprehensive Support and Improvement. A program improvement school is a school that has not made adequate yearly academic growth for two consecutive years as determined by the California Department of Education.
5. **Program Transfers:** Any student may request to attend a school outside his/her attendance area for a specific program (e.g. Pathways, Dual Immersion, TBE, etc.) offering that is not offered as his/her school of residence. Prerequisites may be necessary for enrollment in certain courses.
6. **Special Circumstances:** Upon a finding that special circumstances exist that might be harmful or dangerous to the student in the current attendance areas, Special circumstances include, but are not limited to, threats of bodily harm or threats to the emotional stability of the student. Any student may transfer to a district school that is at capacity and otherwise closed to transfers. To grant priority under these circumstances, the Superintendent or designee must have received either :( Ed Code 35160.5)
   a. A written statement from a representative of an appropriate state or local agency, including but not limited to a law enforcement official or social worker, or a properly licensed or registered professional, including, but not limited to, a psychiatrist, psychologist, or marriage and family therapist
   b. A court order, including a temporary restraining order and injunction
7. Any student who is requesting
8. **Continuing Student:** An elementary or middle/junior high school student may continue at a school for the rest of the school year if his/her

Published using Google Docs Report abuse Learn more



until he/she completes the highest grade offered at that school and shall not be subject to further displacement.

**Open Enrollment Selection Process**

Once priority is established, a random, unbiased selection process is used to select students to fill the spaces available.

**Open enrollment transfers are subject to space availability at the requested site.** WCCUSD anticipates that not all schools will have space for open enrollment transfer requests. Transfer not awarded before the school year begins will remain active for the duration of that school year only; after which, re-submission of an Open Enrollment application will be required each year during the Open Enrollment period for the upcoming school year.

Students awarded an Open Enrollment Intra-district transfer must maintain the specified criteria:

1. Maintain a minimum attendance rate of 95% for each grading period.
2. Maintain appropriate school behavior as outlined in the Student Handbook and Code of Conduct.
3. Maintain a cumulative grade point average of 2.0 for each grading period (Secondary Schools).

**Though not currently anticipated, students on transfer may be subject to displacement to their resident school due to excessive enrollment.**

**For more information about the Open Enrollment Transfer Policy and Process, please contact the Transfer Office at (510) 307-4535 or email to Transferoffice@wccusd.net.**

### 4.4 STUDENT RESIDENCY

Notwithstanding Section 48200, a pupil complies with the residency requirements for school attendance in a school district, if he or she is any of the following:

1. A pupil placed within the boundaries of that school district in a regularly established licensed children's institution, or a licensed foster home, or a family home pursuant to a commitment or placement under Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code.
2. An agency placing a pupil in a home or institution described in subparagraph shall provide evidence to the school that the placement or commitment is pursuant to law.
3. A pupil for whom inter-district attendance has been approved pursuant to Chapter 5 (commencing with Section 46600) of Part 26.
4. A pupil whose residence is located within the boundaries of that school district and whose parent or legal guardian is relieved of responsibility, control, and authority through emancipation.
5. A pupil who lives in the home of a caregiving adult that is located within the boundaries of that school district. Execution of an affidavit under penalty of perjury pursuant to Part 1.5 (commencing with Section 6550) of Division 11 of the Family Code by the caregiving adult is a sufficient basis for a determination that the pupil lives in the home of the caregiver, unless the school district determines from actual facts that the pupil is not living in the home of the caregiver.
6. A pupil residing in a state hospital located within the boundaries of that school district

### 4.5 VERIFICATION REQUIREMENTS FOR RESIDENT ENROLLMENT

**Resident Enrollment:** You will need to bring two pieces of documentation verifying your address and one form of **valid Photo ID** when you register your child. All documents must be original.

**Declaration of Residence:** For parent or guardian who indicates that their entire family is living doubled up with someone and cannot provide a utility bill or lease that includes utilities in their name. Declaration of Residence form filled out and signed by both parties in the presence of a school administrator. Declaration of residence must be updated annually.

**Caregiver Authorization Affidavit:** For an adult who is not the parent and is not the legal guardian of the student but who is allowing someone else's child to live with them. Caregiver Authorization Affidavit must be updated annually.

**Required documentation is:** Verification of residence: Parent, guardian or caregiver must have one of the following with their name and address;

- A utility bill dated within 45 days: PG&E (page 3), EBMUD, Richmond Sanitary, Sanitation, Cable/Internet
- In the instance that utilities are included in the rent, a rental/lease agreement must be used stating that utilities are included.

  **In addition, they must have one item listed below:**

Published using Google Docs Report abuse Learn more



- Official letter from a social service/government agency within 45 days- such as EDD, Social Security, DMV
- Bank statement within 60 days

**If an employee of the school district reasonably believes that the parent or legal guardian of the child has provided false, altered, or unreliable evidence of residency, the school district has authorization to make reasonable efforts to determine that the child actually meets the residency requirements.**

Additional documents that will be required at time of registration (contact school for a complete list of required documents):

- **Age Verification:** birth certificate or Baptismal record, Passport, California ID
- **Grade level verification:** transcript and most recent report card from the last school attended
- Immunization record

**Families in transition only:** Families in transition are families that reside at a non-permanent address such as a motel/hotel, shelter, car or are doubled up with relatives or friends. Transitional families who are unable to establish a permanent residence may contact the Families in Transition Office at 510-307- 4508 for assistance.

**4.6 WCCUSD/CA ED.G.E Initiative Parental Notice**

(Modified **from CA Ed.G.E. Initiative Parental Notice** at https://www.cde.ca.gov/sp/el/er/caedge.asp**)**

WCCUSD provides all parents or legal guardians with information on the types of language and language acquisition programs. WCCUSD provides this notification in the form of an annual parent handbook. For students who are enrolling after the beginning of the school year, the CA Ed.G.E. Initiative parental notice is to be provided upon enrollment.

WCCUSD Parental Notice

**Available Language Programs & Language Acquisition Programs**

**West Contra Costa Unified School District (WCCUSD)** offers the following language and language acquisition programs for student enrollment. Parents/Guardians may choose a language acquisition program that best suits their child (EC Section 310[a]).

A description of the language acquisition programs provided in the **West Contra Costa Unified School District** are listed below. Please select the program that best suits your child. (20 U.S.C. Section 6312[e][3][A][iii],[v])

☐ **Structured English Immersion (SEI) Program:** A language acquisition program for English learners in which nearly all classroom instruction is provided in English, but with curriculum and a presentation designed for pupils who are learning English. At minimum, students are offered ELD and access to grade level academic subject matter content.

☐ **Dual-Language Immersion (DLI) Program:** Also referred to as **Two-Way Immersion,** is a language acquisition program that provides language learning and academic instruction for native speakers of English and native speakers of another language, with the goal of high academic achievement, first and second language proficiency, and cross-cultural understanding. This program begins in transitional kindergarten/kindergarten (TK/K) and continues through sixth grade. **One-Way Immersion** programs are generally offered where the native speaker of English or the native speaker of another language is not large enough to offer Two-Way Immersion.

**How to Enroll Your Child in a Language Acquisition Program:**
Submit your online InfoSnap form and intradistrict transfer located on the district website.

*Waivers are no longer required.

**About Language Acquisition Programs and Language Programs**

| **Program Type** | **Characteristics** |
|---|---|
| Language Acquisition Program (English Learners) | The California Code of Regulations section 11309 requires that any language acquisition program provided by a school, district, or county shall:<br><br>• Be designed using evidence-based research and include both Designated and Integrated English Language Development; • Be allocated sufficient resources by the local educational agency (LEA) to be effectively implemented, including, but not limited to, certificated teachers with the |

Published using Google Docs Report abuse Learn more



| | |
|---|---|
| | language; and Achievement of the state-adopted academic content standards in English, and, when the program model includes instruction in another language, achievement of the state adopted academic content standards in that other language. |
| Language Program (non-English Learners) | • Language programs offer students who are not English learners opportunities to be instructed in languages other than English • May lead to proficiency in languages other than English |

**How to Request the Establishment of a New Program at a School**:
Schools in which the parents or legal guardians of 30 pupils or more per school or the parents or legal guardians of 20 pupils or more in any grade request a language acquisition program that is designed to provide language instruction shall be required to offer such a program to the extent possible. (EC Section 310[a].)

**Receiving and Tracking Parent Requests**

Each school is required to maintain written records of parent requests (including verbal requests) which include:
• Date of request
• Parent and child names
• Description of request
• Grade level 5 CCR section 11311 requires that schools:
• Assist parents in clarifying their request
• Maintain records of each request for three years
• Accept requests from students enrolled for the current year as well as the following school year
• Monitor the number of parent requests for language acquisition or language programs on a regular basis throughout the year
• Consider requests for a multilingual program model from parents of pupils enrolled in the school who are native speakers of English when determining whether a threshold is reached

**Parent and Community Engagement**

(Procedure Pending board Approval)

Parents may provide input regarding language and language acquisition programs in the LEA or to be considered in the LEA during the development of the Local Control and Accountability Plan (EC Section 52062.) If interested in a different program from those listed above, please contact the Director English Achievement; Esaul Orozco ar eorozco2@wccusd.net. Or the Director of Community Engagement; Martine Blake at martine.blake@wccusd.net.

The information required in 5 CCR section 11309(c) (CDE CA Ed.G.E. Initiative web page at https://www.cde.ca.gov/sp/el/er/caedge.asp)

**Reaching a Threshold**

When the parents of 30 pupils or more enrolled in a school, or when the parents of 20 pupils or more in the same grade enrolled in a school, request the same or substantially similar type of a language acquisition or language program, the school responds by notifying the LEA immediately and taking the following three actions:

1. **Communication**

Within 10 school days of reaching a threshold described above, the LEA notifies the parents of pupils attending the school, the school's teachers, administrators, and the LEA's English learner parent advisory committee and parent advisory committee, in writing, of the parents' requests for a language acquisition program.

2. **Cost and Resource Analysis**

The LEA then identifies costs and resources necessary to implement any new language acquisition or language program, including but not limited to:

• Certificated teachers with the appropriate authorizations
• Necessary instructional materials
• Pertinent professional development for the proposed program
• Opportunities for parent and community engagement to support the proposed program goals

3. **Determination**

Having completed the costs and resource analysis, the LEA determines, within 60 calendar days of reaching a threshold described above, whether it is possible to implement the requested language acquisition or language program. At that time, the LEA provides notice, in writing, to parents of pupils attending the school, the school's teachers, and administrators of its determination.

Published using Google Docs Report abuse Learn more



• **Determination not to implement a program at the school:** In the case that the LEA determines it is not possible to implement the program requested by parents, the LEA provides a written explanation of the reason(s) why the program cannot be provided. Further, the LEA may offer an alternate option that can be implemented at the school.

Each school follows the process described above, even if the LEA, at the time the threshold is met, provides the requested language acquisition or language program at another school.

Citations: EC sections 305 and 310; 5 CCR section 11311 and 11312.

## 5. STUDENT HEALTH AND SAFETY

### 5.1 COMPREHENSIVE SEXUAL HEALTH AND HIV/AIDS EDUCATION

The California Healthy Youth Act requires that comprehensive sexual health education and HIV prevention education be provided to students at least once in middle school or junior high school and once in high school, starting in grade 7. (There is no state requirement for lower grades, but many elementary sites do provide lessons around anatomy and healthy living in grades 5 and 6.)

Instruction must encourage students to communicate with parents, guardians or other trusted adults about human sexuality. Instruction must be medically accurate, age-appropriate and inclusive of all students. It must include the following:

- Information about HIV and other sexually transmitted infections (STIs), including transmission, FDA approved methods to prevent HIV and STIs, and treatment
- Information that abstinence is the only certain way to prevent unintended pregnancy and HIV and other STIs, and information about the value of delaying sexual activity
- Discussion about social views of HIV and AIDS
- Information about accessing resources for sexual and reproductive health care
- Information about pregnancy, including FDA approved prevention methods, pregnancy outcomes, prenatal care, and the newborn safe surrender law
- Information about sexual orientation and gender, including the harm of negative gender stereotypes
- Information about healthy relationships and avoiding unhealthy behaviors and situations

More information available at www.wccusd.net/science

### 5.2 MEDICAL AND HEALTH POLICY

1. **Immunizations:**

The District shall exclude from school any pupil who has not been immunized properly, unless the pupil is exempted from the immunization requirement pursuant to Health and Safety Code section 120370. The immunization exemption based on personal beliefs has been eliminated. (Health & Safety Code, § 120325). A student who, prior to January 1, 2016, submitted a letter or affidavit on file at the District, stating beliefs opposed to immunization, is permitted to enroll in that institution until the student enrolls in the next grade span. Grade span means: 1) birth to preschool; 2) kindergarten and grades 1 through 6, inclusive, including transitional kindergarten; and 3) grades 7 through 12, inclusive. On or after July 1, 2016, the District shall exclude from school for the first time or deny admittance or deny advancement to any student to the 7th grade unless the student has been immunized for his or her age as required by law. (Health & Safety Code, § 120335). A student may still be exempted from the immunization requirement based on medical condition or circumstances. A parent or guardian must file with the District a statement from a licensed physician saying that the immunization is not considered safe and is not recommended based upon the nature or duration of the medical condition or circumstances, including, but not limited to, the family medical history. (Health & Safety Code, § 120370) Add

A parent or guardian may consent in writing for a physician, surgeon, or health care practitioner acting under the direction of a supervising physician and surgeon to administer an immunizing agent to a pupil at school. (Ed. Code, §§ 48216, 48980(a), 49403, Health & Safety Code, §§ 120325, 120335)

**PARENTS' GUIDE TO IMMUNIZATIONS REQUIRED FOR SCHOOL ENTRY**

**Starting July 1, 2019:** Schedule provided by the State Department of Health Services:

Published using Google Docs
Report abuse
Learn more



3. **Parents' Right to Waive Exam**
[(Ed. Code 49451]
"A parent or guardian having control or charge of any child enrolled in the public schools may file annually with the principal of the school in which he is enrolled a statement in writing, signed by the parent or guardian, stating that he will not consent to a physical examination of his child. Thereupon the child shall be exempt from any physical examination, but whenever there is a good reason to believe that the child is suffering from a recognized contagious or infectious disease, he shall be sent home and shall not be permitted to return until the school authorities are satisfied that any contagious or infectious disease does not exist."

**Students Admitted at TK/K-12 Need:**

- **Diphtheria, Tetanus, and Pertussis (DTaP, DTP, Tdap, or Td) — 5 doses**
  - (4 doses OK if one was given on or after 4th birthday. 3 doses OK if one was given on or after 7th birthday.)
  - For 7th-12th graders, at least 1 dose of pertussis-containing vaccine is required on or after 7th birthday.
- **Polio (OPV or IPV) — 4 doses**
  - (3 doses OK if one was given on or after 4th birthday)
- **Hepatitis B — 3 doses**
  - (Not required for 7th grade entry)
- **Measles, Mumps, and Rubella (MMR) — 2 doses**
  - (Both given on or after 1st birthday)
- **Varicella (Chickenpox) — 2 doses**
- These immunization requirements apply to new admissions and transfers for all grades, including transitional kindergarten.

**Students Starting 7th Grade Need:**

- **Tetanus, Diphtheria, Pertussis (Tdap) —1 dose**
  - (Whooping cough booster usually given at 11 years and up)
- **Varicella (Chickenpox) — 2 doses**
  - (Usually given at ages 12 months and 4-6 years)
- In addition, the TK/K-12 immunization requirements apply to 7th graders who:
- previously had a valid personal beliefs exemption filed before 2016 upon entry between TK/Kindergarten and 6th grade
- are new admissions

**Records:**

- California schools are required to check immunization records for all new student admissions at TK/Kindergarten through 12th grade and all students advancing to 7th grade bef
  Parents must show their child's Immunization Record as proof of immunization.

4. **Oral Health Assessment**
[Ed. Code 49452.8]
State law requires that children entering public school for the first time, in kindergarten or first grade, are to have a dental check-up by May 31 of the first school year. A licensed dental professional must complete the evaluation. Oral health evaluations that occurred within the 12 months prior to school entry also meet this requirement.

Parents may obtain a waiver of this requirement if they cannot find a dental office that takes their child's insurance, cannot afford to pay for it, or the parent chooses not to have their child's oral health evaluated

5. **Vision and Hearing Tests**
[Ed. Code 49452-49457]
"The governing board of any school district shall, subject to Section 49451, provide testing of the sight and hearing of each pupil enrolled in the schools of the district." Upon first enrollment in a California school district of a child at a California elementary school, and at least every third year thereafter until the child has completed the eighth grade, the child's vision shall be appraised. This evaluation shall include tests for visual acuity and color vision; however color vision shall be appraised once and only on male children and the results of the appraisal shall be entered in the health record of the pupil. The evaluation may be waived if the child's parents so desire, by presenting a certificate from a physician and surgeon or an optometrist setting out the results of a determination of the child's vision, including visual acuity and color vision. [Ed. Code 49455]

Gross external observations of the children's eyes, visual performance and perception, as used in Education Code Section 49452, shall mean continuous observation by teachers of the appearance, behavior and complaints of pupils that might indicate vision problems. In addition, periodic investigation where pupils' school performance begins to give evidence that existence of the problem might be caused by a visual difficulty. Such an evaluation shall be done in consultation with the school nurse. (CCR Title 5, 596)

When a visual defect has been noted, a report shall be made to the parent or guardian of the child, asking the parent or guardian to take such action as will cure or correct the defect. [Ed Code 40456]

Each pupil shall be given a vision and hearing-screening test in kindergarten, second, fifth, and eighth grade. Hearing screening shall also be done in tenth or eleventh grade and first entry into the California public school system. A school district may request a waiver of the hearing screening test for tenth and/or eleventh grade pupils once each school year.

Published using Google Docs Report abuse Learn more



parental permission was denied.

7. **Specialized Physical Health Care Services**
Individual Disability Education Act, Amended 2004
The Individual Disability Education Act extends the guaranteed right to a free and appropriate public education to include all students who are medically fragile, technology dependent, or chronically ill. Provisions are made for Specialized Physical Health Care Services in accordance with the State Guidelines as outlined in the "Guidelines and Procedures" manual of the California Department of Education (referred to as the "Green Book"). The Specialized Physical Health Care Services/Procedures provided to the students while in school must have the physician's authorization and be performed according to the standards established by the State. These services/procedures can be individualized as long as they meet the safety standards of the BRN (Board of Registered Nursing) Nurse Practice Act. Procedures that do not meet the standardized guidelines will not be performed at school.

   **Note:** The RN follows the procedures that meet the standardized guidelines and physician orders, only. The parent cannot dictate any changes to the procedure if it is not a part of the procedure.

8. **Administration of Medication**
Parents are to notify the Principal if their child is on continuing medication. This notification shall include the completed WCCUSD Administration of Medication During School Hours form. With parental consent, the principal or school nurse may confer with the physician regarding possible effects of the drug, including symptoms of adverse side effects. The form must include the student's name, parent signature, name of the medication, dosage, time and physician's signature. This form must be renewed annually or whenever the prescription changes. Forms for administering medication may be obtained from the school secretary. Forms are also available for self-administration of prescription inhalers, epi-pens and insulin.

9. **Confidential Medical Service**
For students in grades 7-12 shall be notified and the parents or guardians of all pupils enrolled in the district, that school authorities may excuse any pupil from the school for the purpose of obtaining confidential medical services without the consent of the pupil's parent or guardian. (Ed. Code, § 46010.1)

10. **Medical Services and Insurance Coverage for Injuries:** The District provides accident insurance coverage up to $25,000 for students injured during school activities. District-provided coverage is secondary to student's primary insurance.

11. **Medical and Hospital Services & Insurance Coverage for Athletic Teams**
The District does not provide medical and hospital services for students injured while participating in athletic activities. However, all members of school athletic teams must have accidental injury insurance that covers medical and hospital expenses. (Ed. Code, §§ 32221.5, 49471)

12. **Contagious or Infectious Disease**
[Ed. Code 48211]
A child may be sent home if, for a good reason, he or she is believed to be suffering from a recognized contagious or infectious disease. The child shall not be permitted to return until school authorities are satisfied that the student is no longer contagious or infectious. In most cases, a physician's note must be presented to the school authorities upon the child's return to school.

13. **Child Health Information**
Health services personnel (nurses, in particular) are not readily available on school campuses. Nurses are available on an itinerant basis to assess the health needs and supervise the healthcare of students as needed, and to administer health screenings (vision and hearing). It is important that parents fully inform the office staff and each teacher who works with their student(s) regarding any significant health problems. Be sure to complete the emergency card and return it to the school office. If your child requires specialized health care during the school day, you will need to meet with a school administrator, and other school staff to design an individual plan.

### 5.3 TOBACCO-FREE SCHOOLS AND COMMUNITIES

The Governing Board recognizes the health hazards associated with smoking and the use of tobacco products, including the breathing of second-hand smoke, and desires to provide a healthy environment for students and staff.

The Board prohibits the use of products containing tobacco or nicotine, including but not limited to, smokeless tobacco, snuff, chew, and clove cigarettes, at any time in district-owned or leased property and in district vehicles. This prohibition also applies to electronic nicotine delivery systems, such as electronic cigarettes, electronic hookahs, and other vapor emitting devices, with or without nicotine content, that mimic the use of tobacco products any time. (Health and Safety Code 104420; Labor Code 6404.5; 20 USC 6083)

Published using Google Docs Report abuse Learn more



specified period. If deemed necessary by school administration, the local law enforcement agency may be called upon to assist with enforcement of this policy.

**Tobacco, Alcohol and Illicit Drugs:**

The Board recognizes that use of alcohol and other drugs adversely affects a student's ability to achieve academic success, is physically and emotionally harmful, and has serious social and legal consequences. It is the policy of the Board of Education to keep district schools free of tobacco and other drugs.

Students possessing, using or selling alcohol or other drugs or related paraphernalia shall be subject to disciplinary procedures including suspension or expulsion and/or referral to law enforcement. In addition, students may be referred to an appropriate intervention program, and/or be restricted from extracurricular activities, including athletics.

The Board recognizes that there are students who use alcohol and other drugs that can benefit from intervention. The Board supports qualified intervention programs that include the involvement of students, parents/ guardians and community agencies/organizations.

## 6. PARENT / COMMUNITY INVOLVEMENT

### 6.1 PARENT/GUARDIAN INVOLVEMENT

A critical dimension of effective schooling is parent involvement. Research has shown conclusively that parent involvement at home and in their children's education improves student achievement. Furthermore, when parents are involved at school, their children go further, and they go to better schools.

**Important facts:**

1. Families provide the primary education environment.
2. Parent involvement improves student achievement.
3. Parent involvement is most effective when it is comprehensive, supportive, long lasting, and well planned.
4. The benefits of parent involvement are not limited to early childhood or the elementary level; there are continuing positive effects through high school.
5. Involving parents in supporting their children's education at home is not enough. To ensure the quality of schools as institutions serving the community, parents must be involved at all levels in the schools.
6. The extent of parent involvement in a child's education is more important to student success than family income or education.
7. We cannot look at the school and the home in isolation from one another; families and schools need to collaborate to help children adjust to the world of school. This is particularly critical for children from families with different cultural and language backgrounds.

**Parent Involvement Policy:** The WCCUSD recognizes that when schools and parents form strong partnerships, our children's potential for educational success improves significantly. Teachers and school administrators become more aware of parent and community expectations and may implement their suggestions regarding programs and operations. Parents learn the scope of the school's instructional program and set high expectations for their children. As a result, schools can better focus on student growth and success. Schools have the responsibility to involve parents in this partnership. Therefore, the WCCUSD supports a variety of parent-involvement programs that require schools to involve parents at all grade levels in a broad range of roles. **For more information about Parent Involvement, please contact the Community Engagement Department (510-307-4526).**

**Parent Involvement Board Policy 6020 - For Parents in Title I Schools**

The Governing Board recognizes that parents/guardians are their children's first and most influential teachers and that sustained parent involvement in the education of their children contributes greatly to student achievement and a positive school environment. The Superintendent or designee shall work with staff and parents/guardians to develop meaningful opportunities at all grade levels for parents/guardians to be involved in district and school activities; advisory, decision-making, and advocacy roles, and activities to support learning at home.

Parents/guardians shall be notified of their rights to be informed about and to participate in their children's education and of the opportunities available to them to do so.

The Superintendent or designee shall regularly evaluate and report to the Board on the effectiveness of the district's parent involvement efforts, including, but not limited to, input from parents/guardians and school staff on the adequacy of parent involvement opportunities and barriers that may inhibit parent/guardian participation.

The Superintendent or designee shall regularly evaluate and report to the Board on the effectiveness of the district's parent involvement efforts.

**Title I Schools**

Each year the Superintendent or designee shall identify specific objectives of the district's parent involvement program for schools that receive Title I funding. He/she shall ensure that parents/guardians are consulted and participate in the planning,

Published using Google Docs Report abuse Learn more



The Superintendent or designee shall consult with parents/guardians of participating students in the planning and implementation of parent involvement programs, activities, and regulations. He/she also shall involve parents/guardians of participating students in decisions regarding how the district's Title I funds will be allotted for parent involvement activities. (20 USC 6318)

The Superintendent or designee shall ensure that each school receiving Title I funds develop a school-level parent involvement policy in accordance with 20 USC 6318.

**Non-Title I Schools**

The Superintendent or designee shall develop and implement strategies applicable to each school that does not receive federal Title I funds to encourage the involvement and support of parents/guardians in the education of their children, including, but not limited to, strategies describing how the district and schools will address the purposes and goals described in Education Code 11502. (Education Code 11504)

**Parent Involvement District Strategies for Title I Schools**

To ensure that parents/guardians of students participating in Title I programs are provided with opportunities to be involved in their children's education, the Superintendent or designee shall:

1) Involve parents/guardians of participating students in the joint development of the Title I local educational agency (LEA) plan pursuant to 20 USC 6312 and the process of school review and improvement pursuant to 20 USC 6316 (20 USC 6318). The Superintendent or designee may:
    a. Invite input on the LEA plan from other district committees and school site councils through meetings and other mutually agreed upon forums.
    b. Communicate with parents/guardians through the district newsletter, website, or other methods regarding the LEA plan and the opportunity to provide input.
    c. Ensure that there is an opportunity at a public Board meeting for public comment on the LEA plan prior to the Board's approval of the plan or revisions to the plan.
    d. Ensure that school-level policies on parent involvement address the role of school site councils and other parents/guardians as appropriate in the development and review of school plans.

2) In order to provide coordination, technical assistance, and other support necessary to assist Title I schools in planning and implementing effective parent involvement activities to improve student academic achievement and school performance (20 USC 6318), the Superintendent or designee may:
    a. Assign person (s) in the district office to serve as a liaison to the schools regarding Title I parent involvement issues.
    b. Provide training for the principal or designee of each participating school regarding Title I requirements for parent involvement, leadership strategies, and communication skills to assist him/her in facilitating the planning and implementation of parent involvement activities.
    c. Provide ongoing district-level workshops to assist school site staff and parents/guardians in planning and implementing improvement strategies.
    d. Provide information to schools about the indicators and assessment tools that will be used to monitor progress.

3) In order to build the capacity of schools and parents/guardians for strong parent involvement (20 USC 6318), the Superintendent or designee shall: (20 USC 6318)
    a. Assist parents/guardians in understanding such topics as the state's academic content standards and academic achievement standards, state and local academic assessments, the requirements of Title I, and how to monitor a child's progress and work with educators to improve the achievement of their children.
    b. Provide materials and training to help parents/guardians work with their children to improve their children's achievement, such as literacy training and using technology, as appropriate, to foster parent involvement.
    c. Ensure that information related to school and parent/guardian programs, meetings, and other activities is sent to the parents/ guardians of participating students in a format and, to the extent practicable, in a language the parents/guardians can understand.
    d. Provide other such reasonable support for parent involvement activities as parents/guardians may

Published using Google Docs Report abuse Learn more



a. Train parents/guardians to enhance the involvement of other parents/guardians.
b. Adopt and implement model approaches to improving parent involvement.
c. Make referrals to community agencies and organizations that offer literacy training, parent education programs, and/or other services that help to improve the conditions of parents/guardians and families.
d. Provide a master calendar of district activities and district meetings.
e. Provide information about opportunities for parent involvement through the district, web site, or other written or electronic means.
f. To the extent practicable, provide translation services at school sites and at meetings involving parents/guardians as needed.
g. Provide training and information to members of district and school site councils and advisory committees to help them fulfill their functions.
h. Include expectations for parent/guardian outreach and involvement in staff job descriptions and evaluations.

4) The Superintendent or designee may coordinate and integrate Title I parent involvement strategies with Reading First, Early Reading First, and public preschool, and other programs (20 USC 6318).

5) In order to conduct, with involvement of parents/guardians, an annual evaluation of the content and effectiveness of the parent involvement policy in improving the academic quality of the schools served by Title I (20 USC 6318), the Superintendent or designee shall:
a. Ensure that the evaluation includes the identification of barriers to greater participation in parent involvement activities, with particular attention to parents/guardians who are economically disadvantaged, are disabled, have limited English proficiency, have limited literacy, or are of any racial or ethnic minority background (20 USC 6318).
b. Use the evaluation results to design strategies for more effective parent involvement and, if necessary, to recommend changes in the parent involvement policy (20 USC 6318).

6) In order to involve parents/guardians in the activities of schools served by Title I (20 USC 6318), the Superintendent or designee may:
a. Include information about school activities in district communications to parents/guardians.
b. To the extent practicable, assist schools with translation services or other accommodations needed to encourage participation of parents/ guardians with special needs.
c. Establish processes to encourage parent/guardian input regarding
their expectations and concerns for their children.

The district's Board policy and administrative regulation containing parent involvement strategies shall be incorporated into the LEA plan and distributed to parents/guardians of students participating in Title I programs. (20 USC 6318)

**School-Level Policies for Title I Schools**

At each school receiving Title I funds, a written policy on parent involvement shall be developed jointly with and agreed upon by parents/ guardians of participating students. Such policy shall describe the means by which the school will: (20 USC 6318)

- Convene an annual meeting at a convenient time to which all parents/ guardians of participating students shall be invited and encouraged to attend, in order to inform parents/guardians of their school's participation in Title I and to explain Title I requirements and the right of parents/ guardians to be involved.
- Offer a flexible number of meetings, such as meetings in the morning or evening, for which related transportation, childcare, and/or home visits may be provided as such services relate to parent involvement.
- Involve parents/guardians in an organized, ongoing, and timely way in the planning, review, and improvement of Title I programs, including the planning, review, and improvement of the school's parent involvement policy and, if applicable, the joint development of the plan for school wide programs pursuant to 20 USC 6314.
- Provide the parents/guardians of participating students all of the following:
  a. Timely information about Title I programs.

Published using Google Docs Report abuse Learn more



- Jointly develop with the parents/guardians of participating students a school-parent contract that outlines how parents/guardians, the entire school staff, and students will share responsibility for improved student academic achievement and the means by which the school and parents/guardians will build a partnership to help students achieve state standards

  **This contract shall address:**

  a. The school's responsibility is to provide high-quality curriculum and instruction in a supportive and effective learning environment that enables participating students to achieve the state's student academic achievement standards.

  b. Ways in which parents/guardians will be responsible for supporting their children's learning, such as monitoring attendance, homework completion, and television viewing; volunteering in the classroom; and participating, as appropriate, in decisions related to their children's education and the positive use of extracurricular time.

  c. The importance of communication between teachers and parents/guardians on an ongoing basis through, at a minimum:
     - Parent-teacher conferences in elementary schools, at least annually, during which the compact shall be discussed as it relates to the student's achievement.
     - Frequent reports to parents/guardians on their children's progress.
     - Reasonable access to staff, opportunities to volunteer and participate in their child's classroom, and observation of classroom activities.

  d. Build the capacity of the school and parents/guardians for strong parent involvement by implementing the activities described in items #3.

  e. To the extent practicable, provide full opportunities for the participation of parents/guardians with limited English proficiency, parents/guardians with disabilities, including providing information and school reports required under 20 USC 6311(h) in a format and language such that parents/guardians can understand.

Each school's parent involvement policy shall be made available to the local community and distributed to parents/guardians of participating students in an understandable and uniform format and, to the extent practicable, provided in a language the parents/guardians can understand. (20 USC 6318)

Each school receiving Title I funds shall annually evaluate the effectiveness of its parent involvement policy. Such evaluation may be conducted during the process of reviewing the school's single plan for student achievement in accordance with Education Code 64001.

The principal or designee, jointly with parents/guardians of participating students, shall periodically update the school's policy to meet the changing needs of parents/guardians and the school. (20 USC 6318).

**For more information about Parental Involvement, please contact the Community Engagement Department at (510) 307-4526.**

### 6.2 PARENT PHOTOGRAPHS WHILE ON CAMPUS

The Education Code provides that "parents have the right and should have the opportunity, as mutually supportive and respectful partners in the education of their children to participate in the education of their children." (Ed. Code, § 51101(a).) The right to participate in their child's education includes a parent's right to observe their child's classroom. (Ed. Code, § 51101(a)(1).)

However, a parent's rights to participate in their child's education are not so broad as to permit unauthorized photography of other parents, pupils, or staff while on school grounds during school hours. Unauthorized photography while on school grounds during school hours may endanger student and staff privacy, and may disrupt the educational process. In addition, the Education Code prohibits individuals from willfully disturbing any public school or public school meeting, punishable by a misdemeanor charge. (Ed. Code, § 32210.) To the extent that the parent's behavior while on campus is willfully disturbing the activities of the public school, the District may alert the parent of these consequences.

The above advice is subject to one caveat. A District administrative regulation openly invites and allows parents, staff, and members of the public to photograph and video record school activities, such as performances and sporting events. (Administrative Regulation 3515.)

**For more information about Parental Involvement, please contact the Community Engagement Department at (510) 307-4526.**

### 6.3 SCHOOL & CLASSROOM VISITS

The Governing Board encourages parents/guardians and interested members of the community to visit the schools and view the educational program.

Published using Google Docs Report abuse Learn more



For purposes of school safety and security, the principal or designee may design a visible means of identification for visitors while on school premises, such as a visitor's badge that is distributed at and returned to the front office of the school.

No electronic listening or recording device may be used by students or visitors in a classroom without the teacher and principal's permission.

Additionally, no teacher may be required to accept a volunteer worker or observer in his/her classroom. However, parents of students enrolled in the class may make routine visits to the class, provided the teacher has been notified the day prior to the visit.

Board Policy 1250 & United Teachers of Richmond Contract, Article-10, Section-18.

### 6.4 WCCUSD VOLUNTEER SERVICE AGREEMENTS

**California Education Code 51101 states:**

*(a) Except as provided in subdivision (d), the parents and guardians of pupils enrolled in public schools have the right and should have the opportunity, as mutually supportive and respectful partners in the education of their children within the public schools, to be informed by the school, and to participate in the education of their children, as follows:*

*To volunteer their time and resources for the improvement of school facilities and school programs under the* ***supervision of district employees****, including, but not limited to, providing assistance in the classroom with the approval, and under the direct supervision, of the teacher. Although volunteer parents may assist with instruction, primary instructional responsibility shall remain with the teacher.*

**WCCUSD Administrative Regulations 1240 states:**

All volunteers must agree to follow the school and classroom rules and regulations listed below:

1. Spend my scheduled time with students doing site approved and/or assigned activities.
2. Volunteers will not have children with them while performing site approved and/or assigned volunteer activities.
3. Will respect the school's dress code: no sunglasses, hoodies with the hood up, flip-flops, bare midriffs, sagging pants; or, clothing with logos depicting drugs, tobacco, alcohol, or anything sexually suggestive or involving a racial/ethnic slur.
4. Never remove a child from the designated school area, or make plans to meet a student during non-school hours for any reason without the express permission or knowledge of the Principal.
5. Never discipline any child. In case of a situation that requires a disciplinary action, I will notify school staff immediately.
6. Will be free from the influence of alcohol or illegal drugs while volunteering.
7. Not use electronic devices such as cell phones, music players, smartphones, etc. while working with students. This includes connecting via social media.
8. Not engage in any act, which is discriminatory in nature towards another person's race, creed, ethnicity, national origin, sex, sexual orientation, age, physical condition, religious beliefs, political afflictions, veterans or marital status.
9. Agree to the above codes of conduct and will never purposefully endanger the wellbeing or life of a child.
10. Agree to pass on knowledge of or suspicion of child abuse to an appropriate West Contra Costa Unified School District staff member.

Any breach of these rules and regulations may result in the revocation of volunteer badge and privileges.

## 7. POLICIES / PROCEDURES AND NOTICES

Published using Google Docs Report abuse Learn more



**For students, employees, parents/guardians, school and district advisory committee members, private school officials, and other interested parties**

The West Contra Costa Unified School District annually notifies our students, employees, parents or guardians of its students, the district advisory committee, school advisory committees, appropriate private school officials, and other interested parties of the Uniform Complaint Procedures (UCP) process.

The UCP Annual Notice is available on our website.

The West Contra Costa Unified School District is primarily responsible for compliance with federal and state laws and regulations, including those related to unlawful discrimination, harassment, intimidation or bullying against any protected group, and all programs and activities that are subject to the UCP.

**Programs and Activities Subject to the UCP**

- Accommodations for Pregnant and Parenting Pupils
- Adult Education
- After School Education and Safety
- Agricultural Career Technical Education
- Career Technical and Technical Education; Career Technical; Technical Training Programs
- Child Care and Development Programs
- Compensatory Education
- Consolidated Categorical Aid Programs
- Course Periods without Educational Content (for grades nine through twelve)
- Discrimination, harassment, intimidation, or bullying against any protected group as identified under sections 200 and 220 and Section 11135 of the Government Code, including any actual or perceived characteristic as set forth in Section 422.55 of the Penal Code, or on the basis of a person's association with a person or group with one or more of these actual or perceived characteristics, in any program or activity conducted by an educational institution, as defined in Section 210.3, that is funded directly by, or that receives or benefits from, any state financial assistance.
- Educational and graduation requirements for pupils in foster care, pupils who are homeless, pupils from military families and pupils formerly in Juvenile Court now enrolled in a school district.
- Every Student Succeeds Act
- Local Control Accountability Plans (LCAP)
- Migrant Education
- Physical Education Instructional Minutes (for grades one through six)
- Pupil Fees
- Reasonable Accommodations to a Lactating Pupil
- Regional Occupational Centers and Programs
- School Plans for Student Achievement
- School Safety Plans
- School Site Councils
- State Preschool
- State Preschool Health and Safety Issues in LEA's Exempt From Licensing program

**Filing a UCP Complaint** (Uniform Complaint Form: English/Spanish)

A UCP complaint shall be filed no later than one year from the date the alleged violation occurred.

For complaints relating to Local Control and Accountability Plans (LCAP), the date of the alleged violation is the date when the reviewing authority approves the LCAP or annual update that was adopted by our agency.

A pupil enrolled in any of our public schools shall not be required to pay a pupil fee for participation in an educational activity.

A pupil fee complaint may be filed with the principal of a school or our superintendent or their designee.

A pupil fee or LCAP complaint may be filed anonymously, that is, without an identifying signature, if the complainant provides evidence or information leading to evidence to support an allegation of noncompliance.

We shall post a standardized notice of the educational rights of pupils in foster care, pupils who are homeless, and former juvenile court pupils now enrolled in a school district as specified in EC Sections 48645.7, 48853, 48853.5, 49069.5, 51225.1, and 51225.2. This notice shall include complaint process information, as applicable.

We shall post a notice to identify appropriate subjects of state preschool health and safety issues in each California state preschool program classroom in each school notifying parents, guardians, pupils, and teachers of (1) the health and safety requirements under Title 5 of the *California Code of Regulations* that apply to California state preschool programs pursuant to *HSC* section 1596.7925 and (2) where to get a form for a state preschool health and safety issues complaint.

Complaints within the scope of the UCP are to be filed with the person responsible for processing complaints:

District Ombudsperson
1108 Bissell Avenue
Richmond, CA 94801
Phone: (510) 307-7861 | Fax: (510) 236-0662
Email: jespinoza2@gmail.com

Complaints will be investigated and a written report with a decision will be sent to the complainant within sixty (60) days from the receipt of the complaint. This time period may be extended by written agreement of the complainant. The person responsible for investigating the complaint shall conduct and complete the investigation in accordance with our UCP policies and procedures.

The complainant has a right to appeal our decision of complaints regarding specific programs and activities subject to the UCP, pupil fees and the LCAP to the California Department of Education (CDE) by filing a written appeal within 15 days of receiving our decision. The appeal must be accompanied by a copy of the originally filed complaint and a copy of our decision.

We advise any complainant of civil law remedies, including, but not limited to, injunctions, restraining orders, or other remedies or orders that may be available under state or federal discrimination, harassment, intimidation, or bullying laws, if applicable.

Copies of our Uniform Complaint Procedures process shall be available free of charge.



### 7.2 BOARD POLICY 1312.1: COMPLAINTS CONCERNING DISTRICT EMPLOYEES

The Governing Board accepts responsibility for providing a means by which the public can hold employees accountable for their actions. The Board desires that complaints be resolved expeditiously without disrupting the educational process.

The Superintendent or designee shall develop regulations which permit the public to submit complaints against district employees in an appropriate way. These regulations shall protect the rights of involved parties. The Board may serve as an appeals body if the complaint is not resolved.

The Board prohibits retaliation against complainants. The Superintendent or designee at his/her discretion may keep a complainant's identity confidential, except to the extent necessary to investigate the complaint. The district will not investigate anonymous complaints unless it so desires.

**Legal Reference:**

**EDUCATION CODE**

33308.1 Guidelines on procedure for filing child abuse complaints

35146 Closed sessions

44031 Personnel file contents and inspection

44811 Disruption of public school activities

44932-44949 Resignation, dismissal and leaves of absence (rights of employee; procedures to follow)

48987 Child abuse guidelines

**GOVERNMENT CODE**

54957 Closed session; complaints re employees

54957.6 Closed session; salaries or fringe benefits

**PENAL CODE**

Published using Google Docs Report abuse Learn more



CDE LEGAL ADVISORIES

0910.93 Guidelines for parents to report suspected child abuse by school district employees or other persons against a pupil at school site (LO:4-93)

Policy WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT

adopted: November 7, 2007 Richmond, California

**7.3 ADMINISTRATIVE REGULATION 1312.1: COMPLAINTS CONCERNING DISTRICT PERSONNEL**

**West Contra Costa USD**

**Administrative Regulation**

**Complaints Concerning District Personnel**

AR 1312.1

**Community Relations**

The Superintendent or designee shall determine whether a complaint should be considered a complaint against the district and/or an individual employee, and whether it should be resolved by the district's process for complaints concerning personnel and/or other district procedures.

To promote prompt and fair resolution of the complaint, the following procedures shall govern the resolution of complaints against district employees:

1. Every effort should be made to resolve a complaint at the earliest possible stage. Whenever possible, the complainant should communicate directly to the employee in order to resolve concerns.
2. If a complainant is unable or unwilling to resolve the complaint directly with the employee, he/she may submit an oral or written complaint to the employee's immediate supervisor or the principal.
3. All complaints related to district personnel other than administrators shall be submitted in writing to the principal or immediate supervisor. If the complainant is unable to prepare the complaint in writing, administrative staff shall help him/her to do so. Complaints related to a principal or central office administrator shall be initially filed in writing with the Superintendent or designee. Complaints related to the Superintendent shall be initially filed in writing with the Board.
4. When a written complaint is received, the employee shall be notified within five days or in accordance with collective bargaining agreements.
5. A written complaint shall include:
    a. The full name of each employee involved
    b. A brief but specific summary of the complaint and the facts surrounding it
    c. A specific description of any prior attempt to discuss the complaint with the employee and the failure to resolve the matter
6. Staff responsible for investigating complaints shall attempt to resolve the complaint to the satisfaction of the parties involved within 30 days.
7. Both the complainant and the employee against whom the complaint was made may appeal a decision by the principal or immediate supervisor to the Superintendent or designee, who shall attempt to resolve the complaint to the satisfaction of the person involved within 30 days. Parties should consider and accept the Superintendent or designee's decision as final. However, the complainant, the employee, or the Superintendent or designee may ask to address the Board regarding the complaint.
8. Before any Board consideration of a complaint, the Superintendent or designee shall submit to the Board a written report concerning the complaint, including but not limited to:
    a. The full name of each employee involved
    b. A brief but specific summary of the complaint and the facts surrounding it, sufficient to inform the Board and the parties as to the precise nature of the complaint and to allow the parties to prepare a response
    c. A copy of the signed original complaint
    d. A summary of the action taken by the Superintendent or designee, together with his/her specific finding that the problem has not been resolved and the reasons
9. The Board may uphold the Superintendent's decision without hearing the complaint.
10. All parties to a complaint may be asked to attend a Board meeting in order to clarify the issue and present all available evidence.
11. A closed session may be held to hear the complaint in accordance with law.
12. The decision of the Board shall be final.

Any complaint of child abuse or neglect alleged against a district employee shall be reported to the appropriate local agencies in accordance with law, Board policy and administrative regulation.

Published using Google Docs Report abuse Learn more



## West Contra Costa USD
## Board Policy - Bullying

BP 5131.2
Students

The Governing Board recognizes the harmful effects of bullying on student well-being, student learning, and school attendance and desires to provide a safe school environment that protects students from physical and emotional harm. No individual or group shall, through physical, written, verbal, visual, or other means, harass, sexually harass, threaten, intimidate cyberbully, cause bodily injury to, or commit hate violence against any student or school personnel, or retaliate against them for filing a complaint or participating in the complaint resolution process.

The Superintendent or designee shall develop strategies for addressing bullying in district schools with the involvement of students, parents/guardians, and staff. As appropriate, the Superintendent or designee may also collaborate with social services, mental health services, law enforcement, courts, and other agencies and community organizations in the development and implementation of effective strategies to promote safety in schools and the community.

Such strategies shall be incorporated into the comprehensive safety plan and, to the extent possible, into the local control and accountability plan and other applicable district and school plans.

Any complaint of bullying shall be investigated and, if determined to be discriminatory, resolved in accordance with law and the district's uniform complaint procedures specified in AR 1312.3. If, during the investigation, it is determined that a complaint is about nondiscriminatory bullying, the principal or designee shall inform the complainant and shall take all necessary actions to resolve the complaint.

Any employee who permits or engages in bullying or retaliation related to bullying shall be subject to disciplinary action, up to and including dismissal.

**Legal Reference:**
**EDUCATION CODE**
200-262.4 Prohibition of discrimination 32282 Comprehensive safety plan 32283.5 Bullying; online training
35181 Governing board policy on responsibilities of students 35291-35291.5 Rules
48900-48925 Suspension or expulsion 48985 Translation of notices
52060-52077 Local control and accountability plan
**PENAL CODE**
422.55 Definition of hate crime
647 Use of camera or other instrument to invade person's privacy; misdemeanor
647.7 Use of camera or other instrument to invade person's privacy; punishment
653.2 Electronic communication devices, threats to safety
**CODE OF REGULATIONS, TITLE 5**
4600-4670 Uniform complaint procedures
**UNITED STATES CODE, TITLE 47**
254 Universal service discounts (e-rate)
**CODE OF FEDERAL REGULATIONS, TITLE 28**
35.107 Nondiscrimination on basis of disability; complaints CODE OF FEDERAL REGULATIONS, TITLE 34
104.7 Designation of responsible employee for Section 504
106.8 Designation of responsible employee for Title IX
110.25 Notification of nondiscrimination on the basis of age COURT DECISIONS
Wynar v. Douglas County School District, (2013) 728 F.3d 1062
J.C. v. Beverly Hills Unified School District, (2010) 711 F.Supp.2d 1094 Lavine v. Blaine School District, (2002) 279 F.3d 719

**Management Resources:**
CSBA PUBLICATIONS
Final Guidance: AB 1266, Transgender and Gender Nonconforming Students, Privacy, Programs, Activities & Facilities, Legal Guidance, March 2014
Providing a Safe, Nondiscriminatory School Environment for Transgender and Gender-Nonconforming Students, Policy Brief, February 2014
Addressing the Conditions of Children: Focus on Bullying, Governance Brief, December 2012 Safe Schools: Strategies for Governing Boards to Ensure Student Success, 2011 Cyberbullying: Policy Considerations for Boards, Policy Brief, rev. July 2010
Building Healthy Communities: A School Leaders Guide to Collaboration and Community Engagement, 2009
CALIFORNIA DEPARTMENT OF EDUCATION PUBLICATIONS
Bullying Module
California's Social and Emotional Learning: Guiding Principles, 2018 Social and Emotional Learning in California: A Guide to Resources, 2018
Health Education Content Standards for California Public Schools: Kindergarten Through Grade Twelve, 2008
Bullying at School, 2003
CALIFORNIA OFFICE OF THE ATTORNEY GENERAL PUBLICATIONS
Promoting a Safe and Secure Learning Environment for All: Guidance and Model Policies to Assist California K-12 Schools in Responding to Immigration Issues, April 2018
U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS PUBLICATIONS Dear Colleague Letter: Responding to Bullying of Students with Disabilities, October 2014
Guidance to America's Schools: Bullying of Students with Disabilities, October 2014
Dear Colleague Letter: Guidance on Schools' Obligations to Protect Students from Student-on-Student Harassment on the Basis of Sex; Race, Color and National Origin; and Disability, October 26, 2010

Published using Google Docs Report abuse Learn more



National School Safety Center: http://www.schoolsafety.us Partnership for Children and Youth: http://www.partnerforchildren.org
U.S. Department of Education: http://www.ed.gov

Policy WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT
adopted: December 18, 2019 Richmond, California

**7.5 BOARD POLICY 1312.3: UNIFORM COMPLAINT PROCEDURES**

Board Policy Manual
West Contra Costa Unified School District

Policy 1312.3: Uniform Complaint Procedures
Status: ADOPTED

Original Adopted Date: 11/07/2007 | Last Revised Date: 11/04/2020 | Last Reviewed Date: 11/04/2020

This policy and the corresponding administrative regulation contain rules and instructions about the filing, investigation, and resolution of a Uniform Complaint Procedures (UCP) complaint. UCP complaints include any complaint brought forth by a complainant alleging a failure by the West Contra Costa Unified School District to comply with federal or state laws or regulations governing educational programs, including allegations of unlawful discrimination (such as harassment, intimidation or bullying based on any of the protected classes stated herein) and non-compliance with laws relating to pupil fees and the District's Local Control and Accountability Plan (LCAP). A complainant, for purposes of this policy, is any individual, including a person's duly authorized representative or an interested third party, public agency, or organization who files a written complaint that is governed by this policy.

(cf. 5145.7 - Sexual Harassment)
(cf. 5145.3 - Nondiscrimination/Harassment/Intimidation/Bullying)
(cf. 5131.2 - Bullying)

The Board encourages early resolution of complaints whenever possible. To resolve complaints that cannot be resolved through an informal process, the Board adopts the uniform system of complaint processes specified in 5 CCR sections 4600-4670 and described herein.

The District shall establish an office entitled District Ombudsperson, who will report to the Superintendent, for the purpose of fair, objective and timely responses to complaints. The District shall protect all complainants from retaliation. In investigating complaints, the confidentiality of the parties involved shall be protected as required by and to the extent permitted by law. For any complaint alleging unlawful discrimination or retaliation (such as discriminatory harassment, intimidation, or bullying), the Superintendent or District Ombudsperson or designee shall keep the identity of the complainant confidential when appropriate and as long as the integrity of the complaint process is maintained.

**Complaints Subject to UCP**

The District's UCP shall be used to investigate and resolve the following complaints brought forth by any complainant, which include all complaints related to the matters addressed in Education Code section 33315(a)(1) and as indicated below:

1. Any complaint alleging District violation of state or federal law or regulations governing the following programs and activities that are implemented by the District, including: adult education programs; career technical and technical education training programs; child care and development programs; migrant child education; juvenile court schools; school safety plans; deficiencies related to state preschool health and safety issues for a California state preschool program; and any other District-implemented consolidated categorical aid program which are listed in Education Code section 64000(a), including: programs for tobacco use prevention; bilingual education programs; compensatory education programs; California peer assistance and review programs for teachers; school safety and violence prevention programs.

2. Any complaint, filed by a student or a student's duly authorized representative, alleging the occurrence of unlawful discrimination against any student, employee or other person participating in District programs and activities, including, but not limited to, those programs and activities funded directly by or that receive benefit from any state financial assistance.

   Unlawful discrimination includes, but is not limited to, discriminatory harassment, intimidation, or bullying based on the person's actual or perceived characteristics of race or ethnicity, color, ancestry, nationality,

Published using Google Docs Report abuse Learn more



Complaints and allegations that, if true, would meet the definition of "sexual harassment" under Title IX of the Education Amendments of 1972 (Title IX), must be addressed in a manner that complies with the applicable Title IX regulations, codified at 34 C.F.R. Part 106, and the UCP. To accomplish this, these complaints should be processed in accordance with AR 5145.71 - Title IX Sexual Harassment Complaint Procedures.

3. Any complaint alleging District noncompliance with the requirement to provide reasonable accommodation to a lactating student on school campus to express breast milk, breastfeed an infant child, or address other breastfeeding-related needs of the student

4. Any complaint alleging District noncompliance with the prohibition against requiring students to pay fees, deposits, or other charges for participation in educational activities.

5. Any complaint alleging District noncompliance with legal requirements related to the implementation of the local control and accountability plan.

   The LCAP is an important component of the Local Control Funding Formula (LCFF), the revised school finance system that overhauled how California funds its K-12 schools. Under the LCFF the District is required to prepare an LCAP, which describes how the District intends to meet annual goals for District pupils, with specific activities to address state and local priorities identified pursuant to Education Code section 52060(d).

6. Any complaint, by or on behalf of any student who is a foster youth, alleging District noncompliance with any legal requirement applicable to the student regarding placement decisions, the responsibilities of the District's educational liaison to the student, the award of credit for coursework satisfactorily completed in another school or District, school transfer, or the grant of an exemption from Board-imposed graduation requirements.

7. Any complaint, by or on behalf of a homeless student, as defined in 42 U.S.C. section 11434a, a former juvenile court school student, a child of a military family, as defined in Education Code section 49701, a student who is a migratory child, as defined in Education Code 54441(a), or a newly arrived immigrant student participating in a "Newcomer Program" as defined in Education Code section 51225.2(a)(6), who transfers into the District after his/her second year of high school, alleging District noncompliance with any requirement applicable to the student regarding the award of credit for coursework satisfactorily completed in another school or District or the grant of an exemption from Board-imposed graduation requirements.

8. Any complaint alleging District noncompliance with the requirements of Education Code sections 51228.1 and 51228.2 that prohibit the assignment of a student in grades 9-12 to a course without educational content for more than one week in any semester or to a course the student has previously satisfactorily completed, without meeting specified conditions.

9. Any complaint alleging District noncompliance with the physical education instructional minutes requirement for students in grades 1 to 6.

10. Any complaint alleging retaliation against a complainant or other participant in the complaint process or anyone who has acted to uncover or report a violation subject to this policy.

11. Any other complaint as specified in a District policy. However, only complaints listed in Title 5 California Code of Regulation section 4610 may be appealed to the California Department of Education pursuant to the corresponding administrative regulation.

12. Any other state of federal education program the State Superintendent of Public Instruction deems appropriate or necessary.

<u>Non-UCP Allegations and Complaints</u>

When an allegation that is not subject to the UCP is included in a UCP complaint, the District shall refer the non-UCP allegation to the appropriate staff or agency for further processing.

The following complaints shall be referred to other agencies for appropriate resolution and are not subject to the District's UCP process set forth in this document unless these procedures are made applicable by separate interagency agreements:

1. Allegations of child abuse or neglect shall be referred to County Department of Social Services (DSS), Protective Services Division or

Published using Google Docs Report abuse Learn more



related retaliation in employment shall be processed in accordance with Board Policy 4030 - Nondiscrimination in Employment, Board Policy and Administrative Regulation 4119.11 - Sexual Harassment, and/or Administrative Regulation 4119.12 – Title IX Sexual Harassment Complaint Procedures, and they shall be referred to the California Department of Fair Employment and Housing (DFEH), as is applicable or required. The complainant shall be notified in writing in a timely manner of any DFEH transferal.

Any complaint related to sufficiency of textbooks or instructional materials, emergency or urgent facilities conditions that pose a threat to the health or safety of students or staff, or teacher vacancies and misassignments shall be investigated and resolved in accordance with Administrative Regulation 1312.4 - Williams Uniform Complaint Procedures.

These procedures do not apply to complaints related to special education programs, which are governed by Title 34 Code of Federal Regulations sections 300.151 through 300.153 and by Title 5 California Code of Regulation section 3080 et seq.

These procedures do not apply to complaints regarding child nutrition programs, which are governed by Title 34 Code of Federal Regulations sections 210.19(a)(4), 215.1(a), 220.13(c), 225.11(b), 226.6(n) and 250.15(d) and by Title 5 California Code of Regulation section 15580 et seq.

**Notice and Record Keeping**

The Superintendent or District Ombudsperson shall provide the Board with quarterly updates about the state of complaints in the District.

The Superintendent or District Ombudsperson or designee shall provide training to District staff to ensure awareness and knowledge of current law and related requirements related to UCP, including the steps and timelines specified in this policy and the accompanying administrative regulation.

The Superintendent or District Ombudsperson or designee shall maintain records of each complaint and subsequent related actions, including steps taken during the investigations and all information required for compliance with 5 CCR 4600 et seq.

Legal Reference:
EDUCATION CODE
200-262.4 Prohibition of discrimination
8200-8498 Child care and development programs
8500-8538 Adult basic education
18100-18203 School libraries
32280-32289 School safety plan, uniform complaint procedures
35186 Williams uniform complaint procedures
46015 Parental leave for students
48853-48853.5 Foster youth
48985 Notices in language other than English
49010-49014 Student fees
49060-49079 Student records, especially:
49069.5 Records of foster youth
49490-49590 Child nutrition programs
49701 Interstate Compact on Educational Opportunity for Military Children
51210 Courses of study grades 1-6
51222 Physical education, secondary schools
51223 Physical education, elementary schools
51225.1-51225.2 Foster youth, homeless children, former juvenile court school students, military-connected students, migrant students, and newly arrived immigrant students; course credits; graduation requirements
51226-51226.1 Career technical education
51228.1-51228.3 Course periods without educational content
52060-52077 Local control and accountability plan, especially:
52075 Complaint for lack of compliance with local control and accountability plan requirements
52300-52462 Career technical education
52500-52616.24 Adult schools
54400-54425 Compensatory education programs
54440-54445 Migrant education
54460-54529 Compensatory education programs
59000-59300 Special schools and centers
64000-64001 Consolidated application process; school plan for student achievement
65000-65001 School site councils
GOVERNMENT CODE
11135 Nondiscrimination in programs or activities funded by state
12900-12996 Fair Employment and Housing Act
HEALTH AND SAFETY CODE

Published using Google Docs Report abuse Learn more



CODE OF REGULATIONS, TITLE 5
3080 Applicability of uniform complaint procedures to complaints regarding students with disabilities
4600-4670 Uniform complaint procedures
4680-4687 Williams uniform complaint procedures
4900-4965 Nondiscrimination in elementary and secondary education programs
UNITED STATES CODE, TITLE 20
1221 Application of laws
1232g Family Educational Rights and Privacy Act
1681-1688 Title IX of the Education Amendments of 1972
6301-6576 Title I Improving the Academic Achievement of the Disadvantaged
6801-7014 Title III language instruction for limited English proficient and immigrant students
UNITED STATES CODE, TITLE 29
794 Section 504 of Rehabilitation Act of 1973
UNITED STATES CODE, TITLE 42
2000d-2000e-17 Title VI and Title VII Civil Rights Act of 1964, as amended
2000h-2-2000h-6 Title IX of the Civil Rights Act of 1964
6101-6107 Age Discrimination Act of 1975
12101-12213 Title II equal opportunity for individuals with disabilities
CODE OF FEDERAL REGULATIONS, TITLE 28
35.107 Nondiscrimination on basis of disability; complaints
CODE OF FEDERAL REGULATIONS, TITLE 34
99.1-99.67 Family Educational Rights and Privacy Act
100.3 Prohibition of discrimination on basis of race, color or national origin
104.7 Designation of responsible employee for Section 504
106.8 Designation of responsible employee for Title IX
106.9 Notification of nondiscrimination on basis of sex
110.25 Notification of nondiscrimination on the basis of age

Management Resources:
CALIFORNIA DEPARTMENT OF EDUCATION PUBLICATIONS
Uniform Complaint Procedure 2020-21 Program Instrument
Sample UCP Board Policies and Procedures
U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS PUBLICATIONS
Dear Colleague Letter, September 22, 2017
Dear Colleague Letter: Title IX Coordinators, April 2015
Dear Colleague Letter: Responding to Bullying of Students with Disabilities, October 2014
Dear Colleague Letter: Harassment and Bullying, October 2010
Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, January 2001
U.S. DEPARTMENT OF JUSTICE PUBLICATIONS
Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 2002
WEB SITES
CSBA: http://www.csba.org
California Department of Education: http://www.cde.ca.gov
Family Policy Compliance Office: https://www2.ed.gov/policy/gen/guid/fpco
U.S. Department of Education, Office for Civil Rights: http://www.ed.gov/ocr
U.S. Department of Justice: http://www.justice.gov
Policy WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT
adopted: November 7, 2007 Richmond, California
revised: April 16, 2008
revised: November 6, 2013
revised: January 8, 2014
revised: March 4, 2015
revised: January 6, 2016
revised: April 27, 2016
revised: November 2, 2016
revised: June 28, 2017
revised: March 7, 2018
revised: October 17, 2018
revised: February 26, 2020
revised: November 4, 2020

Published using Google Docs Report abuse Learn more



Regulation 1312.3: Uniform Complaint Procedures Status: ADOPTED

Original Adopted Date: 04/04/2012 | Last Revised Date: 05/15/2023 | Last Reviewed Date: 05/15/2023

Except as the Governing Board may otherwise specifically provide in other district policies, these uniform complaint procedures (UCP) shall be used to investigate and resolve only the complaints specified in BP 1312.3.

## Compliance Officers

The district designates the individual(s), position(s), or unit(s) identified below as responsible for coordinating the district's response to complaints and for complying with state and federal civil rights laws. The individual(s), position(s), or unit(s) also serve as the compliance officer(s) specified in AR 5145.3 - Nondiscrimination/Harassment responsible for handling complaints regarding unlawful discrimination (such as discriminatory harassment, intimidation, or bullying). The compliance officer(s) shall receive and coordinate the investigation of complaints and shall ensure district compliance with law.

District Ombudsperson
1108 Bissell Avenue
Richmond, CA 94801
Telephone: (510) 307-7861
Facsimile: (510) 236-0662
Email: jespinoza2@wccusd.net

The compliance officer who receives a complaint may assign another compliance officer to investigate and resolve the complaint. The compliance officer shall promptly notify the complainant and respondent, if applicable, if another compliance officer is assigned to investigate the complaint.

In no instance shall a compliance officer be assigned to a complaint in which the compliance officer has a bias or conflict of interest that would prohibit the fair investigation or resolution of the complaint. Any complaint against a compliance officer or that raises a concern about the compliance officer's ability to investigate the complaint fairly and without bias shall be filed with the Superintendent or Ombudsperson or designee who shall determine how the complaint will be investigated.

The Superintendent or designee shall ensure that employees assigned to investigate and resolve complaints receive training and are knowledgeable about the laws and programs at issue in the complaints to which they are assigned. Training provided to such employees shall cover current state and federal laws and regulations governing the program, applicable processes for investigating and resolving complaints, including those alleging unlawful discrimination (such as discriminatory harassment, intimidation, or bullying), applicable standards for reaching decisions on complaints, and appropriate corrective measures. Assigned employees may have access to legal counsel as determined by the Superintendent or Ombudsperson or designee.

The compliance officer or, if necessary, any appropriate administrator shall determine whether interim measures are necessary during and pending the result of an investigation. If interim measures are determined to be necessary, the compliance officer or the administrator shall consult with the Superintendent, the Superintendent's designee, or, if appropriate, the site principal to implement one or more interim measures. The interim measures shall remain in place until the compliance officer determines that they are no longer necessary or until the district issues its final written decision, whichever occurs first.

## Notifications

The district's UCP policy and administrative regulation shall be posted in all district schools and offices, including staff lounges and student government meeting rooms. (Education Code 234.1)

In addition, the Superintendent or designee shall annually provide written notification of the district's UCP to students, employees, parents/guardians of district students, district advisory committee members, school advisory committee members, appropriate private school officials or representatives, and other interested parties. ( 5 CCR 4622)

The notice shall include:

1. A statement that the district is primarily responsible for compliance with federal and state laws and regulations, including those related to prohibition of unlawful discrimination, harassment, intimidation, or

Published using Google Docs Report abuse Learn more



complainant provides evidence or information leading to evidence to support the complaint

3. A statement that a student enrolled in a public school shall not be required to pay a fee for participation in an educational activity that constitutes an integral fundamental part of the district's educational program, including curricular and extracurricular activities

4. A statement that a complaint regarding student fees must be filed no later than one year from the date the alleged violation occurred

5. A statement that the district will post a standardized notice of the educational rights of foster youth, homeless students, former juvenile court school students now enrolled in the district, children of military families, migrant students, and immigrant students enrolled in a newcomer program, as specified in Education Code 48853, 48853.5, 49069.5, 51225.1, and 51225.2, and the complaint process

6. Identification of the responsible staff member(s), position(s), or unit(s) designated to receive complaints

7. A statement that complaints will be investigated in accordance with the district's UCP and a written decision will be sent to the complainant within 60 days from the receipt of the complaint, unless this time period is extended by written agreement of the complainant

8. A statement that the complainant has a right to appeal the district's decision to CDE by filing a written appeal, including a copy of the original complaint and the district's decision, within 15 days of receiving the district's decision

9. A statement advising the complainant of any civil law remedies, including, but not limited to, injunctions, restraining orders, or other remedies or orders that may be available under state or federal antidiscrimination laws, if applicable

10. A statement that copies of the district's UCP are available free of charge

The annual notification, complete contact information of the compliance officer(s), and information related to Title IX as required pursuant to Education Code 221.61 shall be posted on the district web site and may be provided through district-supported social media, if available.

The Superintendent or Ombudsperson or designee shall ensure that all students and parents/guardians, including students and parents/guardians with limited English proficiency, have access to the relevant information provided in the district's policy, regulation, forms, and notices concerning the UCP.

If 15 percent or more of students enrolled in a particular district school speak a single primary language other than English, the district's policy, regulation, forms, and notices concerning the UCP shall be translated into that language, in accordance with Education Code 234.1 and 48985. In all other instances, the district shall ensure meaningful access to all relevant UCP information for parents/guardians with limited English proficiency.

### Filing of Complaint

The complaint shall be presented to the compliance officer who shall maintain a log of complaints received, providing each with a code number and a date stamp.

All complaints shall be filed in writing and signed by the complainant. If a complainant is unable to put a complaint in writing due to conditions such as a disability or illiteracy, district staff shall assist him/her in the filing of the complaint. (5 CCR 4600)

Complaints shall also be filed in accordance with the following rules, as applicable:

1. A complaint alleging district violation of applicable state or federal law or regulations governing the programs specified in the accompanying Board policy (item #1 of the section "Complaints Subject to UCP") may be filed by any individual, public agency, or organization. (5 CCR 4630)

Published using Google Docs Report abuse Learn more



the school or with the Superintendent or Ombudsperson or designee. However, any such complaint shall be filed no later than one year from the date the alleged violation occurred. (Education Code 49013, 52075; CCR 4630)

3. A complaint alleging unlawful discrimination (such as discriminatory harassment, intimidation, or bullying) may be filed only by a person who alleges that they personally suffered unlawful discrimination, or who believes that an individual or any specific class of individuals has been subjected to unlawful discrimination. The complaint shall be initiated no later than six months from the date that the alleged unlawful discrimination occurred, or six months from the date that the complainant first obtained knowledge of the facts of the alleged unlawful discrimination. The time for filing may be extended for up to 90 days by the Superintendent or designee for good cause upon written request by the complainant setting forth the reasons for the extension. (5 CCR 4630)

4. When a complaint alleging unlawful discrimination (such as discriminatory harassment, intimidation, or bullying) is filed anonymously, the compliance officer shall pursue an investigation or other response as appropriate, depending on the specificity and reliability of the information provided and the seriousness of the allegation.

5. When the complainant of unlawful discrimination (such as discriminatory harassment, intimidation, or bullying) or the alleged victim, when not the complainant, requests confidentiality, the compliance officer shall inform the complainant or victim that the request may limit the district's ability to investigate the conduct or take other necessary action. When honoring a request for confidentiality, the district shall nevertheless take all reasonable steps to investigate and resolve/respond to the complaint consistent with the request.

### Investigation of Complaint

Within 10 business days after the compliance officer receives the complaint, the compliance officer shall begin an investigation into the complaint.

Within one business day of initiating the investigation, the compliance officer shall provide the complainant and/or the complainant's representative with the opportunity to present the information contained in the complaint to the compliance officer and shall notify the complainant and/or representative of the opportunity to present the compliance officer with any evidence, or information leading to evidence, to support the allegations in the complaint. Such evidence or information may be presented at any time during the investigation.

In conducting the investigation, the compliance officer shall collect all available documents and review all available records, notes, or statements related to the complaint, including any additional evidence or information received from the parties during the course of the investigation. The compliance officer shall individually interview all available witnesses with information pertinent to the complaint, and may visit any reasonably accessible location where the relevant actions are alleged to have taken place. At appropriate intervals, the compliance officer shall inform both parties of the status of the investigation.

To investigate a complaint alleging retaliation or unlawful discrimination (such as discriminatory harassment, intimidation, or bullying), the compliance officer shall interview the alleged victim(s), any alleged offenders, and other relevant witnesses privately, separately, and in a confidential manner. As necessary, additional staff or legal counsel may conduct or support the investigation.

A complainant's refusal to provide the district's investigator with documents or other evidence related to the allegations in the complaint, failure or refusal to cooperate in the investigation or engagement in any other obstruction of the investigation may result in the dismissal of the complaint because of a lack of evidence to support the allegation. Similarly, a respondent's refusal to provide the district's investigator with documents or other evidence related to the allegations in the complaint, failure or refusal to cooperate in the investigation, or engagement in any other obstruction of the investigation may result in a finding, based on evidence collected, that a violation has occurred and in the imposition of a remedy in favor of the complainant. (5 CCR 4631)

In accordance with law, the district shall provide the investigator with access to records and other information related to the allegation in the complaint and shall not in any way obstruct the investigation. Failure or refusal of the district to

Published using Google Docs Report abuse Learn more



### Timeline for Final Decision

Unless extended by written agreement with the complainant, the compliance officer shall prepare and send to the complainant, a written report, as described in section "Final Written Decision" below, within 60 calendar days of the district's receipt of the complaint. (5 CCR 4631)

For any complaint alleging unlawful discrimination (such as discriminatory harassment, intimidation, and bullying), the respondent shall be informed of any extension of the timeline agreed to by the complainant. The respondent also shall be sent the district's final written decision at the same time it is provided to the complainant.

### Final Written Decision

For all complaints, the decision shall include: (5 CCR 4631)

1. The findings of fact based on the evidence gathered. In reaching a factual determination, the following factors may be taken into account:
   a. Statements made by any witnesses
   b. The relative credibility of the individuals involved
   c. How the complaining individual reacted to the incident
   d. Any documentary or other evidence relating to the alleged conduct
   e. Past instances of similar conduct by any alleged offenders
   f. Past false allegations made by the complainant
2. The Conclusion(s) of law
3. Disposition of the complaint
4. The rationale for such a disposition

   For complaints of retaliation or unlawful discrimination (such as discriminatory harassment, intimidation, or bullying), the disposition of the complaint shall include a determination for each allegation as to whether retaliation or unlawful discrimination has occurred.

   The determination of whether a hostile environment exists may involve consideration of the following:

   a. The manner in which the misconduct affected one or more students' education
   b. The type, frequency, and duration of the misconduct
   c. The relationship between the alleged victim(s) and offender(s)
   d. The number of persons engaged in the conduct and at whom the conduct was directed
   e. The size of the school, location of the incidents, and context in which they occurred
   f. Other incidents at the school involving different individuals
5. Corrective action(s), including any actions that have been taken or will be taken to address the allegations in the complaint and including, with

Published using Google Docs Report abuse Learn more



a. The corrective actions imposed on the respondent

b. Individual remedies offered or provided to the complainant or another person who was the subject of the complaint, but this information should not be shared with the respondent

c. Systemic measures the school has taken to eliminate a hostile environment and prevent recurrence

6. Notice of the complainant's and respondent's right to appeal the district's decision to the CDE within 15 calendar days, and procedures to be followed for initiating such an appeal.

The decision may also include follow-up procedures to prevent recurrence or retaliation and for reporting any subsequent problems.

In consultation with district legal counsel, information about the relevant part of a decision may be communicated to a victim who is not the complainant and to other parties who may be involved in implementing the decision or are affected by the complaint, as long as the privacy of the parties is protected. In a complaint alleging unlawful discrimination (such as discriminatory harassment, intimidation, and bullying), notice of the district's decision to the alleged victim shall include information about any sanction to be imposed upon the respondent that relates directly to the alleged victim.

If the complaint involves a limited-English-proficient student or parent/guardian and the student involved is enrolled in a school at which 15 percent or more of the students speak a single primary language other than English, then the decision shall also be translated into that language pursuant to Education Code 48985. In all other instances, the district shall ensure meaningful access to all relevant information for parents/guardians with limited English proficiency.

For complaints alleging unlawful discrimination based on state law (such as discriminatory harassment, intimidation, and bullying), the decision shall also include a notice to the complainant that:

1. The complainant may pursue available civil law remedies outside of the district's complaint procedures, including, seeking assistance from mediation centers or public/private interest attorneys, 60 calendar days after the filing of an appeal with the CDE. (Education Code 262.3)

2. The 60 days moratorium does not apply to complaints seeking injunctive relief in state courts or to discrimination complaints based on federal law. (Education Code 262.3)

3. Complaints alleging discrimination based on race, color, national origin, sex, gender, disability, or age may also be filed with the U.S. Department of Education, Office for Civil Rights at www.ed.gov/ocr within 180 days of the alleged discrimination.

## Corrective Actions

When a complaint is found to have merit, the compliance officer shall adopt any appropriate corrective action permitted by law. Appropriate corrective actions that focus on the larger school or district environment may include, but are not limited to, actions to reinforce district policies; training for faculty, staff, and students, updates to school policies; or school climate surveys.

For complaints involving retaliation or unlawful discrimination (such as discriminatory harassment, intimidation, or bullying), appropriate remedies that may be offered to the victim but not communicated to the respondent may include, but are not limited to, the following:

1. Counseling

2. Academic support

3. Health services

6. Separation of the victim from any other individuals involved, provided the separation does not penalize the victim
7. Restorative justice
8. Follow-up inquiries to ensure that the conduct has stopped and there has been no retaliation

For complaints involving retaliation, unlawful discrimination (such as discriminatory harassment, intimidation, or bullying), appropriate corrective actions that focus on a student offender may include, but are not limited to, the following:

1. Transfer from a class or school as permitted by law
2. Parent/guardian conference
3. Education regarding the impact of the conduct on others
4. Positive behavior support
5. Referral to a student success team
6. Denial of participation in extracurricular or co-curricular activities or other privileges as permitted by law
7. Disciplinary action, such as suspension or expulsion, as permitted by law

When an employee is found to have committed retaliation or unlawful discrimination (such as discriminatory harassment, intimidation, or bullying), the district shall take appropriate disciplinary action, up to and including dismissal, in accordance with applicable law and collective bargaining agreement.

The district may also consider training and other interventions for the larger school community to ensure that students, staff, and parents/guardians understand the types of behavior that constitute unlawful discrimination (such as discriminatory harassment, intimidation, or bullying), that the district does not tolerate it, and how to report and respond to it.

When a complaint is found to have merit, an appropriate remedy shall be provided to the complainant or other affected person.

However, if a complaint alleging noncompliance with the laws regarding student fees, deposits, and other charges, physical education instructional minutes for students in elementary schools, or any requirement related to the LCAP is found to have merit, the district shall provide a remedy to all affected students and parents/guardians subject to procedures established by regulation of the State Board of Education. (Education Code 49013, 51223, 52075)

For complaints alleging noncompliance with the laws regarding student fees, the district shall attempt in good faith, by engaging in reasonable efforts, to identify and fully reimburse all affected students and parents/guardians who paid the unlawful student fees within one year prior to the filing of the complaint. (Education Code 49013; 5 CCR 4600)

### Appeals to the California Department of Education

Any complainant who is dissatisfied with the district's final written decision on a complaint regarding any specified federal or state educational program subject to UCP may file an appeal in writing with the CDE within 15 days of receiving the district's decision. ( 5 CCR 4632)

The complainant shall specify the basis for the appeal of the decision and how the facts of the district's decision are incorrect and/or the law has been misapplied. The appeal shall be sent to CDE with with a copy of the original locally filed complaint and a copy of the district's decision in that complaint . (5 CCR 4632)

When a respondent in any complaint alleging unlawful discrimination (such as discriminatory harassment, intimidation, and bullying) is dissatisfied with the district's final written decision, the respondent, in the same manner as the complainant, may file an appeal with CDE.

Published using Google Docs Report abuse Learn more



2. A copy of the decision

3. A summary of the nature and extent of the investigation conducted by the district, if not covered by the decision

4. A copy of the investigation file including, but not limited to, all notes, interviews, and documents submitted by the parties and gathered by the investigator

5. A report of any action taken to resolve the complaint

6. A copy of the district's uniform complaint procedures

7. Other relevant information requested by the CDE

---

**7.7 BOARD POLICY 5131: STUDENT CONDUCT**

The West Contra Costa Unified School District Board of Education, hereinafter referred to as the Board, is committed to equal opportunity for all individual in education within a safe school environment that allows all students equal access and opportunities to all of the District's programs and activities, including academic programs, educational supports, services and enrichment activities.

The Board is committed to providing a safe educational environment and positive school climate to all students. In the West Contra Costa Unified School Districts, all students have the right to be educated in a positive and safe environment that is free from disruption.

Students shall be expected to exhibit appropriate conduct that does not infringe upon the rights of others or interfere with District programs while on school grounds, while going to or coming from school, while at school activities on or off school grounds, while on district transportation, or while otherwise in a District program or activity.

The Superintendent or designee shall ensure that each school site develops standards of student conduct and discipline in compliance with District policies and administrative regulations. Students and parents/guardians shall be notified of District and school standards of conduct.

Prohibited student conduct includes, but is not limited to:

1. Conduct that endangers students, staff, or others, including, but not limited to, physical violence, possession of a firearm or other weapon, and terrorist threats;
2. Discrimination, harassment, intimidation, or bullying of students or staff, including sexual and gender-based harassment, hate-motivated behavior, cyberbullying, or initiation activity, extortion, or any other verbal, written, or physical conduct that causes or threatens to cause violence, bodily harm or substantial disruption;
3. Conduct that disrupts the orderly classroom or school environment;
4. Willful defiance of staff's authority. School sites will develop standards that define defiance in a clear and nondiscriminatory way that minimizes discretion, and will establish safeguards to ensure standards are enforced in a nondiscriminatory manner;
5. Damage to or theft of property belonging to students, staff, or the district. The District shall not be responsible for students' personal belongings which are brought or campus or to a school activity and are lost, stolen, or damaged;
6. Obscene acts or use of profane, vulgar, or abusive language;
7. Possession, use, or being under the influence of tobacco, alcohol, or other prohibited drugs;
8. Possession or use of laser pointers on school premises, unless used for a valid instructional or other school-related purpose, including employment (Penal Code 417.27). Prior to bringing a laser pointer on school premises for a valid instructional or school-related purpose, a student shall obtain permission from the principal or designee;
9. Use of a cellular/digital telephone, pager, or other mobile communications device during instructional time, unless such use is necessary to accommodate a student with a disability.
   a) Such devices shall be turned off in class, except when being used for a valid instructional or other school-related purpose as determined by the teacher or other district employee, and at any other time directed by a District employee. Any device with camera, video, or voice recording function shall not be

Published using Google Docs Report abuse Learn more



10. Plagiarism or dishonesty in school work or on tests;
11. Inappropriate attire. School sites will adopt clear and fair standards to notify students of what is considered inappropriate;
12. Tardiness or unexcused absence from school; and
13. Failure to remain on school premises in accordance with school rules.

Employees are expected to provide appropriate supervision to enforce standards of conduct and, if they observe or receive a report of a violation of these standards, to immediately intervene or call for assistance. If an employee believes a matter has not been resolved, the employee shall refer the matter to their supervisor or administrator for further investigation.

When a school official suspects that a search of a student or their belongings will turn up evidence of the student's violation of the law or school rules, such a search shall be conducted in accordance with Board Policy /Administrative Regulation 5145.12 - Search and Seizure.

When a student uses any prohibited device, or uses a permitted device in any unethical or illegal activity, a district employee may confiscate the device. The employee shall store the item in a secure manner until an appropriate time.

Students who violate district or school rules and regulations may be subject to discipline or other interventions including, but not limited to, suspension, expulsion, transfer to alternative programs, referral to a student success team or counseling services, or denial of participation in extracurricular or co-curricular activities or other privileges in accordance with Board policy and administrative regulation. The Superintendent or designee shall notify local law enforcement as appropriate.

Students also may be subject to discipline in accordance with law, Board policy, and administrative regulation for any off-campus conduct during non-school hours which poses a threat or danger to the safety of students, staff, or district property or substantially disrupts school activities.

**Legal Reference:**

**EDUCATION CODE**
200-262.4 Prohibition of discrimination
32280-32289 Comprehensive safety plan
35181 Governing board authority to set policy on responsibilities of students
35291-35291.5 Rules
44807 Duty concerning conduct of students
48900-48925 Suspension and expulsion
51512 Prohibition against electronic listening or recording device in classroom without permission
**CIVIL CODE**
1714.1 Liability of parents and guardians for willful misconduct of minor
**PENAL CODE**
288.2 Harmful matter with intent to seduce
313 Harmful matter
417.25-417.27 Laser scope or laser pointer
647 Use of camera or other instrument to invade person's privacy; misdemeanor
653.2 Electronic communication devices, threats to safety
**VEHICLE CODE**
23123-23124 Prohibitions against use of electronic devices while driving
CODE OF REGULATIONS, TITLE 5
300-307 Duties of students
UNITED STATES CODE, TITLE 42
2000h-2000h6 Title IX, 1972 Education Act Amendments
**COURT DECISIONS**
J.C. v. Beverly Hills Unified School District, (2010) 711 F.Supp.2d 1094
LaVine v. Blaine School District, (2000, 9th Cir.) 257 F.3d 981
Emmett v. Kent School District No. 415, (2000) 92 F.Supp. 1088
Bethel School District No. 403 v. Fraser, (1986) 478 U.S. 675
New Jersey v. T.L.O., (1985) 469 U.S. 325
Tinker v. Des Moines Independent Community School District, (1969) 393 U.S. 503
**Management Resources:**
CSBA PUBLICATIONS
Safe Schools: Strategies for Governing Boards to Ensure Student Success, 2011
Providing a Safe, Nondiscriminatory School Environment for All Students, Policy Brief, April 2010
Cyberbullying: Policy Considerations for Boards, Policy Brief, July 2007
CALIFORNIA DEPARTMENT OF EDUCATION PUBLICATIONS
Bullying at School, 2003
**WEB SITES**
CSBA: http://www.csba.org
California Department of Education, Safe Schools Office: http://www.cde.ca.gov/ls/ss
Center for Safe and Responsible Internet Use: http://cyberbully.org
National School Boards Association: http://www.nsba.org
National School Safety Center: http://www.schoolsafety.us
U.S. Department of Education: http://www.ed.gov

**Policy WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT**
adopted: August 20, 2008 Richmond, California
revised: July 8, 2009

Published using Google Docs Report abuse Learn more





Policy 5137: Positive School Climate
Status: ADOPTED
Original Adopted Date: 08/20/2008 | Last Revised Date: 03/12/2014

The West Contra Costa Unified School District Board of Education, hereinafter referred to as the Board, is committed to equal opportunity for all individuals in education within a safe school environment that allows all students equal access and opportunities to all of the District's programs and activities, including academic programs, educational supports, services, and enrichment activities.

The Board is committed to providing a safe educational environment and positive school climate to all students. In the West Contra Costa Unified School District, all students have the right to be educated in a positive and safe environment that is free from disruption.

Students shall be expected to exhibit appropriate conduct that does not infringe upon the rights of others or interfere with District programs while on school grounds, while going to or coming from school, while at school activities on or off school grounds, while on District transportation, or while otherwise in a District program or activity (Board Policy 5131 – Student Conduct).

All staff are expected to serve as role models for students by demonstrating positive, professional attitudes and respect toward each student and other staff members. Teachers shall use effective classroom management techniques based on clear expectations for student behavior. Staff shall consistently enforce Board policies and regulations which establish rules for appropriate student conduct (Board Policy 5131 – Student Conduct).

The District's curriculum shall include age-appropriate character education which includes, but is not limited to, the principles of equality, human dignity, mutual respect, fairness, honesty, and citizenship. Teachers are encouraged to employ cooperative learning strategies that foster positive interactions in the classroom among students from diverse backgrounds.

The Superintendent or designee may develop other strategies to enhance students' feelings of connectedness with the schools, such as campus beautification projects, development of extracurricular activities and after-school programs, pairing of adult mentors with individual students, recognition of student achievement, and encouragement of strong family and community involvement in the schools.

Students shall have opportunities to voice their concerns about school policies and practices and to share responsibility for solving problems that affect their school.

The schools shall promote nonviolent conflict resolution techniques to encourage attitudes and behaviors that foster harmonious relations. Students shall be taught the skills necessary to reduce violence, including, but not limited to, communication, anger management, bias reduction, and mediation skills.

All District staff shall receive professional development to sustain a positive school climate, including, but not limited to, classroom management, conflict resolution techniques, and communications with students, parents/guardians, and colleagues.

Legal Reference:
EDUCATION CODE
233-233.8 Hate violence prevention
32280-32289 School safety plans
32295.5 Teen court programs
35181 Governing board policy on responsibilities of students
35291-35291.5 Rules
44807 Teachers' duty concerning conduct of students
48900-48925 Suspension and expulsion

Management Resources:
CSBA PUBLICATIONS
Cyberbullying: Policy Considerations for Boards, Policy Brief, July 2007
Protecting Our Schools: Governing Board Strategies to Combat School Violence, rev. 1999
CALIFORNIA DEPARTMENT OF EDUCATION PUBLICATIONS
Bullying at School, 2003
Creating Safe and Drug-Free Schools: An Action Guide, 1996
U.S. DEPARTMENT OF EDUCATION PUBLICATIONS

Published using Google Docs Report abuse Learn more



Schools: http://www.ed.gov/offices/OESE/SDFS

adopted: August 20, 2008
revised: March 12, 2014

**7.9 BOARD POLICY BP 5145.3: NONDISCRIMINATION, HARASSMENT, INTIMIDATION, & BULLYING**

Board Policy Manual
West Contra Costa Unified School District

Policy 5145.3: Nondiscrimination/Harassment
Status: ADOPTED
Original Adopted Date: 08/20/2008 | Last Revised Date: 07/17/24 | Last Reviewed Date: 07/17/24

The West Contra Costa Unified School District Board of Education, hereinafter referred to as the Board, is committed to equal opportunity for all individuals in education within a safe school environment that allows all students equal access and opportunities to all of the district's programs and activities, including academic programs, educational support, services, and enrichment activities.

The Board is committed to providing a safe educational environment and positive school climate to all students. In the West Contra Costa Unified School District, all students have the right to be educated in a positive and safe environment that is free from harassment and discrimination.

The Board is committed to providing a safe school environment that allows all students equal access and opportunities in the District's academic and other educational support programs, services, and activities.

This policy applies to all acts related to school activity or school attendance occurring within a school under the jurisdiction of the local educational agency, and all acts of the governing board or body of the local educational agency, the superintendent of the school district, and the county superintendent of schools in enacting policies and procedures that govern the local educational agency.

The Board prohibits, at any district school, school activity, or attendance within a school under the jurisdiction of the superintendent of the school district, unlawful discrimination, harassment, intimidation, and bullying of any student based on the student's actual race, color, ancestry, national origin, immigration status, ethnic group identification, age, religion, marital or parental status, physical or mental disability, sex, sexual orientation, gender, gender identity or gender expression; the perception of one or more of such characteristics, or association with a person or group with one or more of these actual or perceived characteristics. For questions or complaints, contact Equity Compliance Officer|Title IX Coordinator: Jose Espinoza, 1108 Bissell Avenue, Richmond, CA 94801, (510) 231-1118, jespinoza2@wccusd.net; and Section 504: (510) 307-4633; Executive Directors' Office by school area. Area 1- DiShawn Givens, Area 2 - Jawan Eldridge, Area 3 - Vacant, 1108 Bissell Ave., Richmond, CA 94801, (510) 231-1483.

Gender identity is a person's personal sense of gender (e.g., being a boy or a girl), which may or may not be the same as their biological sex at birth. For transgender persons, the sex at birth (i.e., male or female) does not match their own internal sense of their gender identity. Since gender identity is internal, it isn't necessarily visible to others. Gender expression is a person's external manifestation of their gender identity. Gender expression is visible to others - it's the way a person expresses their gender identity through clothing, behavior, posture, mannerisms, speech patterns, activities and more.

The Board prohibits discrimination or harassment of any student by any employee, student or other person in the district. Staff shall be alert and immediately responsive to conduct that interferes with a student's ability to participate in or benefit from school services, activities or privileges.

The Board hereby designates the following person as Compliance Officer to handle complaints regarding discrimination and inquiries regarding the district's nondiscrimination policies:

Jose Espinoza
Director, Office of Educational Equity | Title IX Coordinator | Equity Compliance Officer
1108 Bissell Avenue,
Richmond, CA 94801
Tel: (510) 231-1118
Email: jespinoza2@wccusd.net

Published using Google Docs Report abuse Learn more



An employee who receives such a complaint, otherwise becomes aware, or personally observes possible harassment shall intervene when it is safe to do so and immediately report it to the District's Compliance Officer or the principal or vice principal of the relevant school site. Such reports will be processed in accordance with Administrative Regulation 5145.7.

---

**7.10 ADMINISTRATIVE REGULATION 5145.3: DISCRIMINATION, HARASSMENT, INTIMIDATION, AND/OR BULLYING COMPLAINT PROCEDURES**

Board Policy Manual
West Contra Costa Unified School District

| Regulation 5145.3: Nondiscrimination/Harassment |
| --- |
| Status: ADOPTED |
| Original Adopted Date: 05/23/2014 \| Last Revised Date: 05/15/2023 \| Last Reviewed Date: 05/15/2023 |

## Purpose and Authority

1. The West Contra Costa Board of Education (hereinafter referred to as the Board) recognizes that the District must comply with applicable federal and/or state laws and regulations governing discrimination, harassment, intimidation, and/or bullying. The District shall investigate complaints alleging failure to comply with applicable federal and/or state laws and regulations.

2. The District's obligations include identifying, investigating and documenting possible discrimination, intimidation, harassment (including sexual harassment) or bullying based on a person's actual or perceived ancestry, color, disability, gender, gender identity, gender expression, immigration status, nationality, race or ethnicity, religion, sex, sexual orientation, or association with a person or a group with one or more of these actual or perceived characteristics. For questions or complaints, contact Equity Compliance Officer/Title IX Coordinator: Jose Espinoza, 1108 Bissell Avenue, Richmond, CA 94801, (510) 231-1118, jespinoza2@wccusd.net and for Section 504 call (510) 307-4630 or contact our Executive Directors based on your school area. The District shall follow this Administrative Regulation 5145.3 (AR5145.3) to address allegations of such conduct.

3. The Superintendent shall ensure that employees designated to investigate and resolve complaints are knowledgeable about relevant laws and the programs for which they are responsible. Such employees may have access to legal counsel as determined by the Superintendent or designee.

4. The Board recognizes that a neutral mediator can often suggest a resolution that is agreeable to all parties. The Superintendent or designee shall ensure that the mediation results are consistent with federal and/or state laws and regulations. Complainants will be informed of the option to participate in mediation, but are not obligated to do so. The complainant will never be asked to work out the problem directly with the person accused; rather, a trained individual will facilitate the mediation process. Complainants have the right to end the process at any time and request an investigation. Mediation is never appropriate in the case of sexual assault.

## Compliance Officer

The Board designates the following Compliance Officer to receive and investigate complaints and ensure District compliance with the law:

> Jose Espinoza
> Director, Office of Educational Equity | Title IX Coordinator | Equity Compliance Officer
> 1108 Bissell Avenue
> Richmond, CA 94801
> Phone: (510) 231-1118
> Email: jespinoza2@wccusd.net

The Compliance Officer may designate an individual or individuals to investigate complaints under his supervision.

## Notifications

This complaint procedure and corresponding complaint form (Attachment A) shall be distributed to every student and family in the Parent/Student Handbook that is sent home every year, and distributed at parent teacher meetings, site council

Published using Google Docs Report abuse Learn more



procedure shall be distributed in different languages to students of schools where 15% or more students speak a primary language other than English. The District will make additional copies of this procedure and the complaint form available free of charge.

### Complaint Procedure

The following procedure shall be used to address all complaints that allege a violation of federal and/or state laws or regulations governing discrimination, harassment, intimidation, and/or bullying.

#### 1. Filing of a Complaint

Any student, parent/guardian, third party, other individual, or public agency or organization may file a complaint with the Compliance Officer. Complaints alleging discrimination, harassment, intimidation, and/or bullying, including conduct prohibited by the District's Nondiscrimination/Harassment Policy - BP 5145.3, Sexual Harassment Policy - BP 5145.7, and Hate-Motivated Behavior Policy 5145.9, must be made no later than six months from later of (a) the date of the last act of alleged discrimination, harassment, intimidation, and/or bullying, or (b) the date the complainant became aware of the last alleged act. Complaints should be made in writing when possible, preferably using the complaint form provided by the District (Attachment A). If the Compliance Officer or designee receives a report of discrimination, harassment, intimidation or bullying, the Compliance Officer or designee shall inform the individual making the report of the resolution options under this procedure. If the complainant is unable to put a complaint in writing due to reasons such as illiteracy or disability, the Compliance Officer or designee shall help the complainant file the complaint. If a complaint is presented in another written format, such as a letter or email, the District may request that the complainant complete the form. If there is a delay in obtaining a completed form, or the complainant refuses to transfer the information or otherwise complete the form but wishes to pursue the formal complaint process, the District may attach the letter to the form and open an investigation. The District will investigate reports of discrimination, harassment, intimidation or bullying falling under this procedure regardless of whether they are made in writing.

Consistent with the Board's Policies on Nondiscrimination/Harassment - BP 5145.3, Sexual and Gender-Based Harassment - BP 5145.7, and Hate-Motivated Behavior - BP 5145.9, any employee who receives such a complaint, or becomes aware of discrimination, harassment, intimidation or bullying, shall immediately report it to the Compliance Officer or principal or vice principal of the relevant school site. If the principal or vice principal receives such a report, they shall immediately inform the Compliance Officer so that the District may ensure it provides an appropriate response to the incident. If the incident involves a sexual assault, the Compliance Officer will contact law enforcement immediately if the principal or vice principal has not already done so.

#### 2. Investigation of Discrimination, Harassment, Intimidation, And/Or Bullying Complaints

a. Within 10 calendar days of receiving the complaint, the Compliance Officer or designee shall meet with the complainant by telephone or in person to allow the complainant and/or their representative(s) an opportunity to present the complaint and any evidence, or information that may lead to evidence, to support the allegation(s) in the complaint.

b. During the course of the investigation, the Compliance Officer or designee shall collect relevant documents, consider available physical evidence, and interview witnesses with information pertinent to the complaint.

c. Alternatively or in addition, the complainant or complainant's representative or the other witnesses may also present information relevant to the complaint in writing to the Compliance Officer or designee.

d. The Compliance Officer or designee may obtain statements from other individuals who were witnesses to the alleged violation or who can provide relevant information concerning the alleged violation and review documents that may provide information relevant to the alleged violation.

e. Refusal by the complainant to provide the Compliance Officer or designee with documents or other evidence related to the allegations in the complaint, or to otherwise fail or refuse to cooperate in the investigation or engage in any other obstruction of the investigation may result in the dismissal of the complaint because of a lack of evidence to support the allegations.

Published using Google Docs Report abuse Learn more



g. Throughout the investigation, the Compliance Officer or Designee will maintain ongoing contact with the student allegedly targeted.

### 3. Confidentiality

The District respects students' and employees' rights to privacy. Discrimination complaints shall be investigated in a manner that protects the confidentiality of the parties and the facts to the extent possible. This includes keeping the identity of the complainant confidential except as necessary to carry out the investigation and implement remedies, as determined by the Compliance Officer or Designee on a case-by-case basis. The Compliance Officer or designee will inform witnesses and others involved in the resolution process of the importance of maintaining confidentiality.

If a complainant requests that the District not reveal their name or other identifiable information to the alleged perpetrator or that no investigation or disciplinary action be pursued, then the Compliance Officer or designee will inform the complainant that honoring the request may limit the ability to respond effectively, and that the District prohibits retaliation. If the complainant continues to request confidentiality, the Compliance Officer or designee must evaluate the request in the context of its responsibility to provide a safe and nondiscriminatory environment for all students; the Compliance Officer will consider factors such as the seriousness of the alleged harassment, the complainant's age, and whether there have been other harassment complaints about the same individual.

If the Compliance Officer or designee determines that the District can honor the student's confidentiality request, the District will take reasonable steps to respond to the complaint consistent with the request. This may include, for example, increasing monitoring, supervision, or security where the misconduct occurred; providing relevant education for students and employees; counseling the alleged perpetrator if this may be done without indirectly revealing the identity of the complainant; and actions to protect the complainant, such as providing support services, or changing schedules, assignments, or tests.

### 4. Interim Measures

The Compliance Officer or designee will consider whether, prior to the final outcome of the investigation, interim steps are necessary to protect the student allegedly targeted and the broader school community. Examples of interim measures include, but are not limited to:

a. Notifying the student targeted of how to receive mental and other health services, counseling, and other victim services;

b. Providing academic support services to the student targeted;

c. Ensuring no contact between the student targeted and alleged perpetrator in District programs and activities (e.g., through stay away orders); the District will take care to minimize the burden of such steps on the student targeted;

d. Informing student targeted of option to transfer to a new school or academic program, if desired; and

e. Informing the student targeted of, how to report any recurring conduct or retaliation.

In the case of alleged sexual assault, the Compliance Officer or designee will take additional steps as necessary to ensure the targeted student is safe. This may include, for example, creating a safety plan and designating an individual at the site level to act as a support person during the investigation.

If the circumstances suggest a threat to others, the Compliance Officer or designee will ensure that the District informs relevant members of the school community. This may include, for example, notifying parents and employees if a student is sexually assaulted on the way home from school, or notifying employees of areas where harassment frequently occurs.

### 5. Referral to Law Enforcement, Other Agencies

Some alleged conduct may constitute both a violation of District policies and criminal activity. The Compliance Officer or designee will refer matters to law enforcement and other agencies as appropriate under the law or District policy, and inform the complainant of the right to file a criminal complaint.

The Compliance Officer or designee will follow this procedure regardless of whether the alleged conduct is also being investigated by another agency, unless the fact finding process would impede a law enforcement investigation. In such cases, the Compliance Officer or designee will determine whether interim measures to protect the well-being of the complainant and the school community and prevent

Published using Google Docs Report abuse Learn more



The Compliance Officer or designee will review all relevant evidence gathered to: make factual determinations based on a preponderance of the evidence 1 for each allegation; reach conclusions regarding whether any substantiated conduct constituted discrimination, harassment, intimidation or bullying; and, where discrimination, harassment, intimidation or bullying is found, determine the appropriate remedial action. Remedial action will be designed to end the conduct, prevent its recurrence and address its effects on the student targeted and the broader school community.

Where remedial action includes proposed discipline of an employee, the District's Human Resources Department will give substantial weight to the factual findings, legal conclusions and recommendations of the Compliance Officer or designee in the disciplinary process; consult with the Compliance Officer or designee during the disciplinary process; and inform the Compliance Officer or designee of the final outcome of the disciplinary process.

Examples of appropriate remedial action for harassment, intimidation or bullying include:

a. Interventions for the individual who engaged in the conduct, such as parent notification, counseling, guidance, education about the impact of the conduct, positive behavior support, referral to a student success team, transfer to alternative programs, denial of participation in extracurricular or co-curricular activities or other privileges, and discipline.

b. Interventions for the student targeted, such as counseling, academic support, health services, assigning an escort to allow the student to move safely between classes, and instruction on how to report other incidents of harassment or retaliation.

c. Separating the student targeted and the individual who engaged in the conduct, provided the separation does not penalize the student targeted.

d. Follow-up inquiries with the student targeted and witnesses to ensure that the conduct has stopped and that they have not experienced any retaliation.

e. Training or other interventions for the larger school community to ensure that students, staff and parents understand the types of behavior that constitute harassment, intimidation and bullying, that the District does not tolerate it, and how to report it.

The Compliance Officer or designee will contact the student targeted periodically for a reasonable period of time following conclusion of the investigation to determine whether there has been recurrence of the conduct or retaliation, and to assess the effectiveness of the remedial measures.

### 7. Notice to Complainant of Resolution of Complaint

a. Within 60 calendar days of receiving the complaint, the Compliance Officer or designee shall prepare and send to the complainant a written report of the findings and decision, unless the complainant agrees in writing to extend the timeline. The timeline may be extended by the Compliance Officer or designee due to extenuating circumstances. If the timeline is extended, the Compliance Officer or designee will inform the complainant in writing of the extension and reason for the extension.

   The report shall include:

   (1) A statement of the allegations investigated;

   (2) A summary of the steps taken to investigate the allegations;

   (3) The findings of fact based on a preponderance of the evidence gathered;

   (4) The District's conclusion of whether discrimination, harassment, intimidation or bullying did or did not occur;

   (5) The disposition of the complaint;

   (6) The rationale for the disposition of the complaint;

   (7) If the District concluded discrimination, harassment, intimidation or bullying occurred, a description of the District's response;

   (8) Notice of the complainant's right to appeal to the California Department of Education (CDE) within 15 days of receiving the District's final determination and the procedures to be

Published using Google Docs Report abuse Learn more



notice of the right to file a complaint with the United States Department of Education, Office for Civil Rights, and contact information for that agency; and;

(10) For a discrimination complaint, notice of right to seek civil law remedies no sooner than 60 days after filing an appeal with California Department of Education shall also be provided to the complainant by the District, as described in more detail in Section E of this regulation.

b. If an employee is disciplined as a result of the complaint, the report will specify all sanctions of which the complainant needs to be aware in order for the sanctions to be fully effective, such as requiring that the employee stay away from the complainant, temporarily or permanently prohibiting the employee from coming to work, or transferring the employee to another work location. The report shall otherwise state that effective action was taken and that the employee was informed of District expectations. The report shall not give any further information as to the nature of the disciplinary action.

### 8. Appeals to the California Department of Education or the Office For Civil Rights

The complainant may appeal the District's decision to the California Department of Education within 15 days of the District's written report of findings and decision and that the appeal must specify the reason(s) for appealing the District's decision and should include a copy of the original complaint and the district's decision resolving the complaint.

The complainant may file a complaint with the U.S. Department of Education, Office for Civil Rights within 60 days of the District's written report of findings or within 180 days of the underlying conduct.

### 9. Record Keeping

The Compliance Officer or designee will maintain all documentation of complaint investigations and any corrective actions taken in a system that allows the Compliance Officer or others to track incidents by school site and throughout the District.

### 10. Retaliation

Complainants and those who participate in the complaint resolution process are protected from retaliation by law and District policy. The Compliance Officer or designee will inform all involved individuals that retaliation is prohibited, and that anyone who feels they have experienced harassment, coercion, intimidation, or discrimination for filing a complaint or participating in the resolution process should inform the Compliance Officer or designee. The District will investigate reports of retaliation and, where retaliation is found, take separate remedial action.

### 11. Civil Law Remedies

Nothing in this administrative regulation precludes a complainant from pursuing available civil law remedies outside of the District's discrimination, harassment, intimidation, and/or bullying complaint procedure. Such remedies may include, but are not limited to, mediation centers, public/private interest attorneys, injunctions, and restraining orders. For discrimination complaints, a complainant must wait until sixty (60) calendar days have elapsed from the filing of an appeal with the California Department of Education before pursuing civil law remedies. The moratorium does not apply to injunctive relief or discrimination complaints under federal law, and is applicable only if the District has appropriately, and in a timely manner, apprised the complainant of their right to file a complaint. If the complainants elect to seek help and or retain the services of these public or private agencies, the District shall not bear the costs for these services.

For assistance, you may contact:
The U.S. Department of Education, Office for Civil Rights
American Civil Liberties Union
Contra Costa Legal Services
NAACP Legal Defense Fund

approved: May 23, 2014
revised: October 17, 2018

---

**7.11 BOARD POLICY 0415.3 ANTIRACISM**

Board Policy Manual

Published using Google Docs Report abuse Learn more



The Governing Board is committed to the work of antiracism: the conscious and active effort to identify, challenge, and correct racial inequities in the systems and institutions within our schools and community. Racism, explicit or implicit, stands in direct conflict to the fundamental principles of District education. To carry District education into the future, we recognize that we must continually renew and reflect on the roots of racism and develop new ideas to meet the times.

The Governing Board recognizes the impact of racialized harm and racial trauma on the district's ability to provide such an environment. Racialized harm occurs when biased speech, conduct, or expressions are made against someone of another race. Harm can also occur when racialized slurs are used within schools by people of the same or different race. Racial trauma refers to the mental and emotional injury caused by encounters with racial bias and ethnic discrimination, racism, and hate crimes. Any individual that has experienced an emotionally painful, sudden, and uncontrollable incident of racialized harm is at risk of suffering from racial trauma.

Unjust ideas and policies, and the racial inequity they produce, have shaped us and have had impacts on our society. The Board strives to uncover unconscious biases and practice anti-racism as individuals and as Board members. We challenge ourselves to persist through the discomfort necessary for growth and learning, to deepen our listening and our examination of racism and oppression, and to develop a strong understanding of how our personal experiences and feelings fit into a larger picture of racism and oppression.

Each member of our Governing Board, individually and collectively, is responsible for creating and nurturing an ant- iracist learning environment where each student, staff member, and community partner is a respected and valued member of the District community. The Governing Board is uniquely positioned, and it is our responsibility to identify and dismantle racist ideas and inequitable policies in ourselves and across the District.

Therefore, we commit to supporting anti-racist policies, programs, and practices for our children's education and well-being, while building strong and inclusive school communities. The Board commits to holding each Board member accountable towards these goals and moving the work of anti-racism forward. We also commit to holding West Contra Costa Unified School District staff, students, and community to living these standards of anti-racism in our schools.

State References Description

Ed. Code 200-262.4 Prohibition of discrimination

Ed. Code 51007 Legislative intent: state policy

Ed. Code 51204.5 Social sciences instruction; contributions of specified groups

Ed. Code 51501 Nondiscriminatory subject matter

Ed. Code 52077 Local control and accountability plan

Ed. Code 60040-60052 Requirements for instructional material

5 CCR 4600-4670 Uniform complaint procedure

5 CCR 4900-4965 Nondiscrimination in elementary and secondary education programs receiving state or federal financial assistance

Gov. Code 11000 Definitions

Gov. Code 11135 Prohibition of discrimination

Pen. Code 422.55 Definition of hate crime

Pen. Code 422.6 Crimes; harassment

Federal References Description

20 USC 6312

Local education agency plan

42 USC 2000d - 2000d-7 Title

VI, Civil Rights Act of 1964

42 USC 2000e-2000e-17 Title VII,

Civil Rights Act of 1964 as amended 42 USC

2000h-2000h-6 Title IX, Miscellaneous

provisions

34 CFR 100.1-100.13 Nondiscrimination in federal programs, effectuating Title VI

Published using Google Docs Report abuse Learn more



CA Office of the Attorney General Promoting a Safe and Secure Learning Environment for All: Guidance and Model Policies to Assist California's K-12 Schools in Responding to Immigration Issues, April 2018

Center for Urban Education Publications Protocol for Assessing

Equity-Mindedness in State Policy, 2017 CSBA Publication Math

Misplacement, 2015

CSBA Publication The School Board Role in Creating the Conditions for Student Achievement, 2017 African-American Students in Focus: Closing Opportunity and Achievement Gaps for African American Students, 2016

CSBA Publication African-American Students in Focus, Issues 1, 2, & 3, 2016

CSBA Publication Latino Students in California's K-12 Public Schools, 2016

U.S. DOE & U.S. DOJ Civil Rights Div. Dear Colleague Letter: Resource on Confronting Racial Discrimination in Student Discipline, May 2023

U.S. DOE, Office for Civil Rights Pub. Nondiscrimination in Employment Practices in Education, August 1991

U.S. DOE, Office for Civil Rights Pub. Dear Colleague Letter: Race and

School Programming, August 2023 Website California

Department of Education: http://www.cde.ca.gov

Website California Office of the Attorney General: https://oag.ca.gov/

Website CSBA: http://www.csba.org

Website National Museum of African-American History and Culture, Educators Resources: https://nmaahc.si.edu/learn/educators

Website Racial Equity Tools:

https://www.racialequitytools.org

Website U.S. Department of Education, Office for Civil Rights: https://www2.ed.gov/about/offices/list/ocr/index.html

Website U.S. Department of Justice, Civil Rights Division: https://www.justice.gov/crt

**7.12 BOARD POLICY 5145.7 SEXUAL AND GENDER-BASED HARASSMENT**

Board Policy Manual
West Contra Costa Unified School District

Policy 5145.7: Sexual Harassment

Status: ADOPTED

Original Adopted Date: 11/03/2010 | Last Revised Date: 11/04/2020 | Last Reviewed Date:11/04/2020

BP 5145.7 Students

Sexual and Gender-Based Harassment

The West Contra Costa Unified School District Board of Education, hereinafter referred to as the Board, is committed to maintaining a safe school environment that is free from harassment and discrimination. The Board prohibits sexual and gender-based harassment of students by other students, employees, or other persons, while on school grounds, while going to or coming from school, while at school activities on or off school grounds, while on District transportation, or while otherwise in a District program or activity. The Board also prohibits retaliatory behavior or action against any persons who files a complaint, testifies, or otherwise participates in District complaint procedures.

Sexual Harassment Under District Policy

"Sexual harassment" under District policy means unwelcome sexual advances, unwanted requests for sexual favors, or other unwanted verbal, visual, or physical

Published using Google Docs Report abuse Learn more



academic decisions affecting the student.

3. The conduct has the purpose or effect of having a negative impact on the student's academic performance or of creating an intimidating, hostile, or offensive educational environment.
4. Submission to or rejection of the conduct by the student is used as the basis for any decision affecting the student regarding benefits and services, honors, programs, or activities available at or through any District program or activity.

(cf. 0410 - Nondiscrimination in District Programs and Activities)
(cf. 5131 - Conduct)
(cf. 5131.2 - Bullying)
(cf. 5137 - Positive School Climate)
(cf. 5145.3 – Nondiscrimination, Harassment, Intimidation & Bullying)
(cf. 5145.71 - Title IX Sexual Harassment Complaint Procedures)

Sexual harassment also includes nonconsensual touching and cyber sexual bullying, as defined and prohibited by the California Penal Code and Education Code.

"Non consensual touching," as defined in Penal Code section 243.4, means touching another person's intimate part against that person's will. "Touch" means direct physical contact or contact through the clothing of either person. "Intimate part" means sexual organ, anus, groin, or buttocks of any person, or the breast of a female.

"Cyber sexual bullying," as defined in Education Code section 48900(r)(2)(A)(iii), means electronic dissemination of or solicitation or incitement to electronically disseminate a sexually explicit image or recording, by a student to another student or to school personnel, that causes the student to be in fear of harm, or a substantially detrimental effect on the student's physical or mental health, or the student's ability to benefit from the educational environment.

Examples of conduct that may constitute sexual harassment under District policy, if unwelcome, include:

1. Suggestive or obscene letters, notes, invitations, graffiti, jokes, or comments; slurs; epithets; sexual gestures; and displays of sexually suggestive objects, pictures, or cartoons.
2. Groping, sexual touching, leering, and impeding or blocking movement.
3. Sexual conduct that would be considered criminal activity, including sexual assault and sexual exploitation.
4. Continuing to express sexual interest after being informed that the interest is unwelcome (reciprocal attraction, among peers, is not considered sexual harassment).
5. Threatening to withhold grades earned or deserved or suggesting a scholarship recommendation or college application will be denied, as a condition of receiving sexual favors.
6. Engaging in sexual behavior to control, influence, or affect the educational opportunities, grades, and/or learning environment of a student.
7. Offering favors or educational benefits, such as grades, assessments, assignments, and recommendations in exchange for sexual favors.
8. Inappropriate sexual touching between students that, even if consensual, contributes to a sexually charged environment for other students who witness the behavior.
9. Any sexual conduct or expression of sexual interest by an adult toward a student regardless of reciprocity.

### Gender-Based Harassment Under District Policy

Gender-based harassment is sexual harassment and includes acts of verbal, nonverbal, or physical aggression, intimidation, or hostility that are based on sex, although they are not necessarily sexual in nature. Prohibited conduct includes harassment of a student for exhibiting what is perceived as a stereotypical characteristic for their sex, or for nonconformance with stereotypical notions of masculinity and femininity.

"Gender" means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth." (Education Code §210.7).

"Gender identity" refers to a person's gender-related identity, appearance or behavior whether or not different from that traditionally associated with the person's physiology or assigned sex at birth.

Published using Google Docs Report abuse Learn more



male gender identity. "Transgender girl" and "transgender female" refer to an individual assigned the male sex at birth who has a female gender identity. An individual can express or assert a transgender gender identity in a variety of ways, which may but do not always include specific medical treatments or procedures. Medical treatments or procedures are not considered a prerequisite for one's recognition as transgender.

"Gender nonconformity" refers to one's gender expression, gender characteristics, or gender identity that does not conform to gender stereotypes "typically" associated with one's legal sex assigned at birth, such as "feminine" boys, "masculine" girls and those who are perceived as androgynous. Sexual orientation is not the same as gender identity. Not all transgender youth identify as gay, lesbian or bisexual, and not all gay, lesbian and bisexual youth display gender-nonconforming characteristics.

Examples of conduct that may constitute gender-based harassment include:

1. Disparaging remarks made to a student or aggression toward a student because that student displays mannerisms or a style of dress perceived as indicative of the other sex.
2. Hostility toward a student because that student participates in an athletic activity more typically favored by a student of the other sex.
3. Intimidating a student to discourage that student from enrolling in a particular area of study because of his/her gender.
4. Use of gender-specific slurs, whether written or spoken.
5. Taunting a student who wishes to participate in an extracurricular activity because that activity is more typically favored by a student of the other sex.

Any conduct prohibited under this policy, whether it be sexual harassment or gender-based harassment, that occurs off-campus or outside of school-related or school-sponsored programs or activities will be regarded as sexual harassment in violation of District policy, if it has a continuing effect on or creates a hostile school environment for the targeted student. Moreover, any conduct that meets the definition of "sexual harassment" under Title IX of the Education Amendments of 1972 (Title IX), as detailed below, is prohibited under District policy.

### Sexual Harassment Under Title IX

Some sexual harassment prohibited by District policy, as described above, may also be prohibited under Title IX. Under Title IX, sexual harassment toward a student means conduct on the basis of sex that satisfies at least one of the following:

1. An employee conditioning the provision of an aid, benefit, or service of the District on the student-victim's participation in unwelcome sexual conduct.
2. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a student equal access to the District's educational program or activity.
3. Sexual assault, dating violence, domestic violence, or stalking as defined in 20 U.S.C. § 1092 or 34 U.S.C. § 12291.

"Sexual assault" means actual or intentional physical sexual acts against a person without consent that may include: rape, rape and seduction, sodomy, lewd and lascivious acts, oral copulation, sexual penetration, sexual battery, and sexual assault, as defined under Education Code section 48900(n) and Penal Code section 261, 266c, 286, 288, 288a, 289 and 243.4.

"Dating violence" means violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. (34 U.S.C. § 12291(a)(10).)

"Domestic violence" means felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction receiving grant monies, or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws. (Ed. Code, § 48900, subd. (n).)

"Stalking" means engaging in a course of conduct directed at a specific person that would cause a reasonable person to: (A) fear for his or her safety or the safety of others; or (B) suffer substantial emotional distress. (34 U.S.C. § 12291(a)(30).)

"Without consent" or "against that person's will" may include: force, duress, violence, fear of immediate harm, or one's inability to consent.

Published using Google Docs Report abuse Learn more



teacher or any other employee.

An employee who receives such a complaint, or otherwise becomes aware of or personally observes possible sexual or gender-based harassment shall immediately report it to the District's Title IX Coordinator, or the principal or vice principal of the relevant school site. Once notified, the Title IX Coordinator, principal, vice principal, or designee shall take the steps to address the complaint or report in a manner that is consistent with the appropriate administrative regulation. Appropriate supportive measures shall also be offered to the complainant-victim upon receipt of any complaint or report.

(cf. 1312.3 - Uniform Complaint Procedures)
(cf. 5141.4 - Child Abuse Prevention and Reporting)
(cf. 5145.71 - Title IX Sexual Harassment Complaint Procedures)

### Notice and Instruction Related to District Policy on Sexual Harassment

The Superintendent or designee shall inform students and parents/guardians of the District's sexual harassment policy by disseminating it through parent/guardian notifications, publishing it on the District's website, and including it in the student and staff handbooks. The District shall also create a poster that notifies students of the District's sexual harassment policy, and display the poster in a prominent and conspicuous location in the main administrative building or other area where notices of District rules, regulations, procedures, and standards of conduct are posted, and in each bathroom and locker room on campus.

The Superintendent or designee shall ensure that all District students receive age-appropriate information on sexual harassment. All District staff shall be trained regarding the District policies that prohibits sexual harassment of students.

### Complaint Processes

Title IX Complaints:

If the alleged conduct, if taken to be true, meets the definition sexual harassment under Title IX, as defined above, the complaint or allegation(s) shall be investigated or otherwise resolved in accordance with the procedures outlined in Title IX and AR 5145.71 – Title IX Sexual Harassment Complaint Procedures. This determination shall be made by the Title IX Coordinator. If a complaint does not rise to the level of sexual harassment under Title IX, it may need to be formally dismissed pursuant to Title IX and AR 5145.71.

All Other Sexual and Gender-Based Harassment Complaints:

If the alleged conduct, even if taken to be true, is sexual in nature or based on sex or gender, but does not meet the definition of sexual harassment under Title IX, the complaint or allegation(s) shall be investigated or otherwise resolved in accordance with the law and District procedures specified in AR 1312.3 - Uniform Complaint Procedures. This determination shall be made by the Title IX Coordinator.

(cf. 1312.3 - Uniform Complaint Procedures)
(cf. 5145.71 – Title IX Sexual Harassment Complaint Procedures)

### Disciplinary and Other Measures

Upon completion of an investigation of a sexual or gender-based harassment complaint, whether the investigation followed AR 1312.3 or AR 5145.71, any student found to have engaged in sexual or gender-based harassment in violation of this policy or Title IX will receive interventions and may be subject to disciplinary action. Examples of interventions include counseling, guidance, education about the impact of harassment, positive behavior support, referral to a student success team, transfer to alternative programs, and denial of participation in extracurricular or co-curricular activities or other privileges. For students in grades 4 through 12, disciplinary action may include suspension and/or expulsion, provided that in imposing discipline the entire circumstances of the incident(s) shall be taken into account.

(cf. 5144 - Discipline)
(cf. 5144.1 - Suspension and Expulsion/Due Process)

Upon completion of an investigation of a sexual or gender-based harassment complaint, any employee found to have engaged in sexual or gender-based harassment toward any student shall be subject to disciplinary action, up to and including termination in accordance with law and the applicable collective bargaining agreement.

(cf. 4118 - Dismissal/Suspension/Disciplinary Action)
(cf. 4119.11/4219.11/4319.11 - Sexual and Gender-Based Harassment)

Published using Google Docs Report abuse Learn more



The superintendent or designee shall maintain a record of all reported cases of sexual and gender-based harassment to enable the District to monitor, address and prevent repetitive harassing behavior in its schools. Additional record-keeping requirements for complaints that fall under Title IX are detailed in AR 5145.71 – Title IX Sexual Harassment Complaint Procedures.

(cf. 3580 - District Records)
(cf. 5145.71 - Title IX Sexual Harassment Complaint Procedures)

All complaints and allegations of sexual and gender-based harassment shall be kept confidential except as necessary to carry out the investigation or take other subsequent necessary action. (5 CCR § 4964).

Legal Reference:

EDUCATION CODE

200-262.4 Prohibition of discrimination on the basis of sex
48900 Grounds for suspension or expulsion
48900.2 Additional grounds for suspension or expulsion; sexual harassment
48904 Liability of parent/guardian for willful student misconduct
48980 Notice at beginning of term

CIVIL CODE

51.9 Liability for sexual harassment; business, service and professional relationships
1714.1 Liability of parents/guardians for willful misconduct of minor

GOVERNMENT CODE

12950.1 Sexual harassment training

CODE OF REGULATIONS, TITLE 5

4600-4687 Uniform complaint procedures
4900-4965 Nondiscrimination in elementary and secondary education programs

UNITED STATES CODE, TITLE 20

1092 Definition of sexual assault

1221 Application of laws

1232g Family Educational Rights and Privacy Act

1681-1688 Title IX of the Education Amendments of 1972

UNITED STATES CODE, TITLE 34

12291 Definition of dating violence, domestic violence, and stalking

UNITED STATES CODE, TITLE 42

1983 Civil action for deprivation of rights
2000d-2000d-7 Title VI, Civil Rights Act of 1964
2000e-2000e-17 Title VII, Civil Rights Act of 1964 as amended

CODE OF FEDERAL REGULATIONS, TITLE 34

106.1-106.71 Nondiscrimination on the basis of sex in education programs

COURT DECISIONS

Donovan v. Poway Unified School District, (2008) 167 Cal.App.4th 567
Flores v. Morgan Hill Unified School District, (2003, 9th Cir.) 324 F.3d 1130
Reese v. Jefferson School District, (2001, 9th Cir.) 208 F.3d 736
Davis v. Monroe County Board of Education, (1999) 526 U.S. 629
Gebser v. Lago Vista Independent School District, (1998) 524 U.S. 274
Oona by Kate S. v. McCaffrey, (1998, 9th Cir.) 143 F.3d 473
Doe v. Petaluma City School District, (1995, 9th Cir.) 54 F.3d 1447

Management Resources:

CSBA PUBLICATIONS

Providing a Safe, Nondiscriminatory School Environment for Transgender and Gender-Nonconforming Students, Policy Brief, February 2014

Safe Schools: Strategies for Boards of Education to Ensure Student Success, 2011

U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS PUBLICATIONS

Q&A on Campus Sexual Misconduct, September 2017
Dear Colleague Letter: Title IX Coordinators, April 2015

Published using Google Docs Report abuse Learn more



CSBA: http://www.csba.org
California Department of Education: http://www.cde.ca.gov
U.S. Department of Education, Office for Civil Rights:
http://www.ed.gov/about/offices/list/ocr

Policy WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT

adopted: November 3, 2010 Richmond, California
revised: March 26, 2014
revised: November 4, 2020

---

**7.13.1 ADMINISTRATIVE REGULATION 5145.7: SEXUAL AND GENDER-BASED HARASSMENT**

Board Policy Manual
West Contra Costa Unified School District

Regulation 5145.7: Sexual Harassment

Status: ADOPTED

Original Adopted Date: 01/09/2012 | Last Revised Date: 05/15/2023 | Last Reviewed Date: 05/15/2023

Sexual and Gender-Based Harassment

Reporting Process

Any student, parent/guardian, or other person who believes a student has been subjected to sexual harassment, which includes any form of sex or gender-based harassment, by another student, an employee, or any third party, or who has witnessed an incident of possible sexual harassment, is strongly encouraged to report the incident the student's teacher, vice principal, principal, the District's Title IX Coordinator, or any other available school employee, and/or to submit a complaint pursuant to AR 1312.3 - Uniform Complaint Procedures or AR 5145.71 – Title IX Sexual Harassment Complaint Procedures.

Any employee who receives a complaint or report of sexual harassment shall, within one school day of receiving the complaint or report, or within one school day of observing an incident of potential sexual harassment that involves a student, forward the complaint or report, or prepare and forward a written description of a verbal report or observation, to the principal or the Title IX Coordinator. The employee shall take these actions whether or not the alleged victim submits a complaint, and even if the alleged victim requests their identity or the triggering incident be kept confidential. The Title IX Coordinator shall be responsible for assessing a victim's request for confidentiality, and will only initiate the Title IX Sexual Harassment Complaint Process – AR 5145.71 against a victim's wishes if doing so is not clearly unreasonable in light of the known circumstances.

If a complaint or report of sexual harassment is initially submitted to the principal, the principal shall forward the complaint or report to the Title IX Coordinator that same day, or as soon as is reasonably possible.

In any case of sexual harassment involving the principal, Title IX Coordinator, or any other person to whom the incident would ordinarily be reported, the complaint or report may instead be submitted to the Superintendent or designee who shall determine who will investigate or otherwise process the complaint or report.

When a verbal or informal report of sexual harassment is submitted, the principal and/or Title IX coordinator shall inform the student or parent/guardian of their right to file a formal written complaint in accordance with applicable District complaint procedures. As detailed in AR 5145.71, if the alleged conduct meets the definition of sexual harassment under Title IX, the Title IX Coordinator must notify the student-victim of this right. If a complainant-victim refuses to reduce their complaint to writing in accordance with either AR 1312.3 or AR 5145.71, the Title IX Coordinator or designee shall reduce the verbal complaint to writing and may initiate an investigation into the verbal allegations pursuant to AR 1312.3 or AR 5145.71.

(cf. 1312.3 – Uniform Complaint Procedures)
(cf. 5141.4 - Child Abuse Prevention and Reporting)
(cf. 5145.71 - Title IX Sexual Harassment Complaint Procedures)

Title IX Coordinators

The District designates the following individual, who holds the title of Title IX Coordinator, as the employee responsible for coordinating its efforts to comply with

Published using Google Docs Report abuse Learn more



Jose Espinoza
Director, Office of Educational Equity | Title IX Coordinator | Equity Compliance Officer
1108 Bissell Avenue
Richmond, CA 94801
Phone: (510) 231-1118
Email: jespinoza2@wccusd.net

(cf. 1312.3 - Uniform Complaint Procedures)
(cf. 5145.71 – Title IX Sexual Harassment Complaint Procedures)

Supportive Measures and Response Pending Investigation

When an incident of sexual harassment is reported, the Title IX Coordinator or designee, in consultation with the Title IX Coordinator, shall determine whether supportive measures are necessary during and pending the result of an investigation to stop the alleged discrimination and ensure that all students have access to the educational program and a safe school environment. Supportive measures will be implemented on a case by case basis and offered to both complainant-victims and respondents (or the accused), as appropriate. Any supportive measures adopted to address alleged sexual harassment, or related retaliation, shall be designed to preserve equal access to the district's educational program or activity without unreasonably burdening the other involved party. The supportive measures shall remain in place until the Title IX Coordinator determines that they are no longer necessary.

Supportive measures may include, but are not limited to, counseling, course-related adjustments, modifications of class schedules, academic support, mutual restrictions on contact, increased security, and monitoring of certain areas of the campus. All supportive measures shall be implemented in accordance with law and Board policy. Such actions shall be considered even when a student chooses to not file a formal complaint or if the alleged sexual harassment occurs off school grounds or outside school-sponsored or school-related programs or activities.

Complaint Investigation and Resolution

The Title IX Coordinator or designee investigates and/or resolves the complaint in accordance with law and District policy. The Title IX Coordinator will determine, based on the allegations brought forth and how sexual harassment is defined under Title IX and District policy, whether the complaint or allegations therein should be processed in accordance with AR 1312.3 - Uniform Complaint Procedures or AR 5145.71 – Title IX Sexual Harassment Complaint Procedures. Complaints that are filed but do not meet the definition of sexual harassment under Title IX may need to be formally dismissed pursuant to AR 5145.71.

(cf. 1312.3 – Uniform Complaint Procedures)
(cf. 5145.71 - Title IX Sexual Harassment Complaint Procedures)

When a complaint or report of sexual harassment involves off-campus conduct that was outside a district program or activity, the Title IX Coordinator, or a designee who has consulted with the Title IX Coordinator, shall assess whether the conduct may create or contribute to the creation of a hostile school environment. If the Title IX Coordinator or designee determines that a hostile environment may be created, the complaint shall be investigated and resolved, as is deemed appropriate under the circumstances. At a minimum, supportive measures will be offered to the victim.

In investigating a sexual harassment complaint, evidence of past sexual relationships of the complainant-victim shall not be considered, except to the extent that such evidence may relate to the complainant-victim's prior relationship with the respondent.

If sexual harassment is found following an investigation, the Title IX Coordinator, or designee in consultation with the Title IX Coordinator, shall take prompt action to stop the sexual harassment, prevent recurrence, and address any continuing effects.

Notifications

A copy of the District's sexual harassment policy and regulation shall:

1. Be included in the notifications that are sent to parents/guardians at the beginning of each school year. (Education Code § 48980; 5 CCR § 4917)

(cf. 5145.6 - Parental Notifications)

2. Be displayed in a prominent location in the main administrative building or other area where notices of District rules, regulations, procedures, and

Published using Google Docs Report abuse Learn more



gymnasiums, auditoriums, and cafeterias. The poster shall display the rules and procedures for reporting a charge of sexual harassment; the name, phone number, and email address of an appropriate school employee to contact to report a charge of sexual harassment; the rights of the reporting student, the complainant, and the respondent; and the responsibilities of the school. (Education Code § 231.6)

4. Be posted in a prominent location on the District's website in a manner that is easily accessible to parents/guardians and students. This shall include the name or title, office address, email address, and telephone number of the employee designated as the District's Title IX Coordinator. (Education Code § 236; 34 CFR § 106.8) The posting shall include the rights of a student and the public and the responsibilities of the District under Title IX, which shall include, but shall not be limited to, Internet Web links to the California Department of Education's Office for Equal Opportunity and the United States Department of Education Office of Civil Rights, as well as the list of rights specified in Education Code Section 221.8. (Education Code § 221.61) The list of rights in Education Code Section 221.8 include:

   a. The right to fair and equitable treatment and to not be discriminated against based on sex.

   b. The right to be provided with an equitable opportunity to participate in all academic extracurricular activities, including athletics.

   c. The right to inquire of the athletic director of the school as to the athletic opportunities offered by the school.

   d. The right to apply for athletic scholarships.

   e. The right to receive equitable treatment and benefits in the provision and maintenance of all of the following: equipment and supplies; scheduling of games and practices; transportation and daily allowances; access to tutoring; coaching; locker rooms; practice and competitive facilities; medical and training facilities and services; and publicity.

   f. The right to have access to a gender equity coordinator to answer questions regarding gender equity laws.

   g. The right to contact the State Department of Education and the California Interscholastic Federation to access information on gender equity laws.

   h. The right to file a confidential discrimination complaint with the United States Office of Civil Rights or the State Department of Education if discriminated against or given unequal treatment on the basis of sex.

   i. The right to pursue civil remedies if you have been discriminated against.

   j. The right to be protected against retaliation if you file a discrimination complaint.

(Education Code § 221.8.)

The posting shall also include a description of how to file a Title IX complaint, which contains:

   a. An explanation of the statute of limitations within which a complaint must be filed after an alleged incident of discrimination has occurred, and how a complaint may be filed beyond the statute of limitations;

   b. An explanation of how the complaint will be investigated and how the complainant may further pursue the complaint, including, but not limited to, Internet Web links to this information on the United States Department of Education Office for Civil Rights' website; and

   c. An Internet Web link to the United States Department of Education Office for Civil Rights complaints form, and the contact information for the office, which shall include the phone number and email address for the office.

(cf. 1113 - District and School Websites)

5. Be provided as part of any orientation program conducted for new and continuing students at the beginning of each quarter, semester, or summer session. (Education Code § 231.)

Published using Google Docs Report abuse Learn more



Instruction/Information

The Superintendent or designee shall ensure that all District students receive age-appropriate information on sexual harassment. Such instruction and information shall include:

1. Notice regarding which acts and behaviors constitute sexual harassment, including the fact that sexual harassment could occur between people of the same sex and could involve sexual violence.

2. A clear message that students do not have to endure sexual harassment under any circumstance.

3. Encouragement to report observed incidents of sexual harassment even when the alleged victim of the harassment has not complained.

4. A clear message that student safety is the District's primary concern, and that any separate rule violation involving an alleged victim or any other person reporting a sexual harassment incident will be addressed separately and will not affect the manner in which the sexual harassment complaint will be received, investigated, or resolved.

5. A clear message that, regardless of a complainant's noncompliance with the writing, timeline, or other formal filing requirements, every sexual harassment allegation that involves a student, whether as the complainant, respondent, or victim of the harassment, shall be investigated and prompt action shall be taken to respond to harassment, prevent recurrence, and address any continuing effect on students, in a manner deemed appropriate by a Title IX Coordinator.

6. Information about the district's procedures for investigating complaints and the person(s) to whom a report of sexual harassment should be made

7. Information about the rights of students and parents/guardians to file a civil or criminal complaint, as applicable, including the right to file a civil or criminal complaint while the district investigation of a sexual harassment complaint continues.

8. A clear message that, when needed, the District will implement supportive measures to ensure a safe school environment for a student who is the complainant-victim of sexual harassment, and the respondent. Supportive measures will be designed to restore or preserve equal access to the district's educational program or activity without unreasonably burdening the other involved party.

Gender Based Harassment in Athletics and Clubs

No person shall on the basis of sex, sexual orientation, gender, ethnic group, identification, race, ancestry, national origin, religion, color or mental or physical disability, be excluded from participation in, be denied the benefits of, be denied equivalent opportunity in, or otherwise discriminated against in interscholastic, intramural or club athletics. (5 CCR § 4920).

The District also shall not provide or otherwise carryout any extracurricular or activities separately, or require or refuse participation therein by any of its pupils on the basis of sex, sexual orientation, gender, ethnic group identification, race, ancestry, national origin, religion, color, or mental or physical disability.

A student shall be permitted to participate in sex-segregated school programs and activities, including athletic teams and competitions, and use facilities consistent with their gender identity, irrespective of the gender listed on the student's records. (Education Code. § 221.5(f)).

The District shall ensure that Athletic programs supported by public funds provide equal opportunity to both sexes for participation and for use of facilities. (Education Code § 221.7(b)). The District may provide separate toilet, locker room and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex. (34 C.F.R. § 106.33).

All pupil clubs shall have equal access to District facilities to conduct meetings, and a fair opportunity to meet within the limited open forum of the District.

The District will accommodate the interests and abilities in athletics of both sexes by any of the following tests:

1. Opportunities for interscholastic-level participation for male and female pupils are provided in numbers substantially proportionate to their respective enrollments.
2. The history of the program and continuing practice of program expansion are demonstrably responsive to the developing interest and abilities of members of the sex that has been and is underrepresented among interscholastic athletes.
3. Interests and abilities of the members of the underrepresented sex have been fully and effectively accommodated by the present program. (Education Code § 230(d)).

If the District only provides one team in a particular sport for members of one sex, but provides no team in the same sport for members of the other sex, and athletic opportunities in the total program for that sex have previously been limited, members of the excluded sex must be allowed to try out and compete with the District team. The same standards for eligibility shall be applied to every pupil trying out for a team, regardless of sex or sexual orientation or other protected group status. (5 CCR § 4921(b)).

The District ensures that each public elementary school and secondary school offering competitive athletics shall make all of the following information publicly available at the end of the school year: (1) total enrollment of the school, classified by gender; (2) number of pupils enrolled at the school who participate in competitive athletics, classified by gender; and (3) number of boys' and girls' teams, classified by sport and competition level. (Education Code § 221.9(a)).

a. The information shall reflect the total number of players on a team roster on the first official day of team competition. (Education Code § 221.9(b)).
b. This information shall be posted on the district's website, with the information for each school disaggregated by school site. (Education Code § 221.9(c)).
c. All materials used to compile each school's information shall be retained by the school for a minimum of three years after the information is posted on the internet. (Education Code § 221.9(d)).

If the District reduces its athletic budget, it does so consistently with its legal obligation to comply with both state and federal gender equity laws. (Education Code § 230(e)).

### 7.14 BOARD POLICY 5146: MARRIED/PREGNANT/PARENTING STUDENTS

Board Policy Manual
West Contra Costa Unified School District

Policy 5146: Married/Pregnant/Parenting Students
Status: ADOPTED
Original Adopted Date: 08/20/2008 | Last Revised Date: 11/15/2023 | Last Reviewed Date: 11/15/2023

Students

The Governing Board recognizes that early marriage, pregnancy or parenting and related responsibilities may disrupt a student's education and increase the chance of a student dropping out of school. The Board therefore desires to provide instruction and services designed to assist in pregnancy prevention. The Board also desires to support married, pregnant, and parenting students to attain strong academic and parenting skills and to promote the healthy development of their children.

Married, expectant and parenting students shall have the same educational and extracurricular opportunities as all students. Participation in special programs or schools shall be voluntary.
The district shall apply no rule concerning a pupil's actual or potential parental family, or marital status that treats pupils differently on the basis of sex. (Education Code 221.51(a); 5 CCR 4950; 34 CFR 106.40(a).)

The district shall not discriminate against any student on the basis of the student's marital status, pregnancy, childbirth, false pregnancy, termination of pregnancy, or related recovery. (Education Code 230; 34 CFR 106.40)

The district shall not make a pre-admission inquiry as to the marital status of an applicant for admission, including whether such applicant is "Miss" or "Mrs." The

Published using Google Docs Report abuse Learn more



106.40(b)(4).)
For school-related purposes, married students under the age of 18 are emancipated minors and have all the rights and privileges of students who are 18, even if the marriage has been dissolved. (Family Code 7002)

## Notices

The district shall notify pregnant and parenting students of their rights and options available under the law through the annual school year welcome packets and through independent study packets. (Education Code 222.5(a).)
The district shall also annually notify parents/guardians of pupils at the beginning of the regular school term of the rights and options available to pregnant and parenting students under the law. (Education Code 222.5(b).)

Education and Support Services for Pregnant and Parenting Students

The Board is committed to providing to expectant and parenting students and their children a comprehensive, continuous, community-linked program that reflects the cultural and linguistic diversity of the community.

The Superintendent or designee shall collaborate with the County Superintendent of Schools and other community agencies and organizations to ensure that appropriate educational and related support services are available to meet the needs of expectant and parenting students and their children.

Expectant and parenting students shall retain the right to participate in any comprehensive school or educational alternative programs. School placement and instructional strategies for participating students shall be based on the needs and learning styles of individual students. The classroom setting shall be the preferred instructional strategy unless an alternative is necessary to meet the needs of the individual student and/or child. (Education Code 54745)

Any education program or activity that is offered separately to pregnant students, including any class or extracurricular activity, shall be equal to that offered to other district students. A student's participation in such programs shall be voluntary. (5 CCR 4950)

The district will permit any minor, regardless of age, who is pregnant or is a parent actively engaged in raising one or more of the minor's children, to enroll in any adult education course or class defined in Education Code 41976. (Education Code 52610.5)

As required for other students with physical or emotional conditions or temporary disabilities, the Superintendent or designee may require a student, based on pregnancy, childbirth, false pregnancy, termination of pregnancy, or related recovery, to obtain certification from a physician indicating that the student is physically and emotionally able to participate in an educational program or activity. (34 CFR 106.40)

The district will provide individual instruction at home or in a hospital to a student with a temporary disability that makes attendance in regular day classes or alternative educational program impossible or inadvisable. (Education Code 48206.3(a).)

To the extent feasible, educational and related support services shall be provided, either through the district or in collaboration with community agencies and organizations, to meet the needs of pregnant and parenting students and their children. Such services may include, but are not limited to:

1. Child care and development services for the children of parenting students on or near school site(s) during the school day and during school-sponsored activities
2. Parenting education and life skills instruction
3. Special school nutrition supplements for pregnant and lactating students pursuant to Education Code 49553, 42 USC 1786, and 7 CFR 246.1-246.28
4. Health care services, including prenatal care
5. Tobacco, alcohol, and/or drug prevention and intervention services
6. Academic and personal counseling

Published using Google Docs Report abuse Learn more



In addition to providing a quality education program for expectant and parenting students, the district's program shall provide parenting education and life skills instruction, special school nutrition supplements for pregnant and lactating students, and a child care and development program on or near the school site for the children of enrolled students. The district's program may provide other support services authorized by Education Code 54746 as necessary to meet the needs of students and their children. (Education Code 54745)

### Absences

Pregnant or parenting students may be excused for absences related to confidential medical appointments in accordance with BP/AR 5113 - Absences and Excuses.

The Superintendent or designee shall grant a student a leave of absence due to pregnancy, childbirth, false pregnancy, termination of pregnancy, and related recovery for as long as it is deemed medically necessary by a physician. At the conclusion of the leave, the student shall be reinstated to the status held when the leave began. (34 CFR 106.40)

A parenting student may request exemption from attendance because of personal services that must be rendered to a dependent.

### Parental Leave

A pregnant or parenting student is entitled to eight weeks of parental leave, which the student may take before the birth of the student's infant if there is medical necessity, and after childbirth during the school year in which the birth takes place. (Education Code 46015(a)(1).)

- A pregnant or parenting student is entitled to receive more than eight weeks of parental leave if deemed medically necessary by the student's physician. (Education Code 46015(a)(3).)
- A pregnant or parenting student is not required to complete academic work or other school requirements during parental leave. (Education Code 46015(a)(5).)
- A pregnant or parenting student may return to their previous school and course of study, and is entitled to make up opportunities for any work missed during the leave. (Education Code 46015(a)(6).)
- A pregnant or parenting student may enroll for a fifth year in the school where they were previously enrolled in order to complete state and local graduation requirements. (Education Code 46015(a)(8).)
- A pregnant or parenting student who does not wish to reenroll in his or her previous school is entitled to alternative education options offered by the local education agency, which should be equal to the programs, activities, and courses they could have been in if participating in the regular program. (Education Code 46015(a)(10); Education Code 221.51(d).)

### Reasonable Accommodations

When necessary, the district shall provide reasonable accommodations to pregnant and parenting students to enable them to access the educational program.

A pregnant student shall have access to any services available to other students with temporary disabilities or medical conditions. (34 CFR 106.40)

The school shall provide reasonable accommodations to any lactating student to express breast milk, breastfeed an infant child, or address other needs related to breastfeeding. A student shall not incur an academic penalty for using any of these reasonable accommodations, and shall be provided the opportunity to make up any work missed due to such use. Reasonable accommodations include, but are not limited to: (Education Code 222)

1. Access to a private and secure room, other than a restroom, to express breast milk or breastfeed an infant child
2. Permission to bring onto a school campus a breast pump and any other

Published using Google Docs Report abuse Learn more



4. Access to a place to store expressed breast milk safely

5. A reasonable amount of time to accommodate the student's need to express breast milk or breastfeed an infant child

### Complaints

Any complaint of discrimination on the basis of pregnancy or marital or parental status shall be addressed through the district's uniform complaint procedures in accordance with 5 CCR 4600-4687 and BP/AR 1312.3 - Uniform Complaint Procedures. Any complaint alleging district noncompliance with the requirements to provide reasonable accommodations for lactating students also may be filed in accordance with the district's procedures in AR 1312.3 - Uniform Complaint Procedures. A complainant who is not satisfied with the district's decision may appeal the decision to the California Department of Education (CDE). If the district or the CDE finds merit in an appeal, the district shall provide a remedy to the affected student. (Education Code 222; 5 CCR 4600- 4687)

### Pregnancy Prevention Program

The Superintendent or designee shall ensure that age-appropriate, culturally sensitive and community-sensitive instruction and services are available to assist in the prevention of pregnancy among minors. The district's program shall be based on strategies that have proven effective in delaying the onset of sexual activity and reducing the incidence of pregnancy among school-age youth. Instruction shall be consistent with the district's family life/sex education curriculum.

---

Policy Reference Disclaimer:

These references are not intended to be part of the policy itself, nor do they indicate the basis or authority for the board to enact this policy. Instead, they are provided as additional resources for those interested in the subject matter of the policy.

| State | Description |
|---|---|
| 22 CCR 101151-101239.2 | General requirements; licensed child care centers |
| 22 CCR 101351-101439.1 | Infant care centers |
| 5 CCR 4600-4670 | Uniform complaint procedures |
| 5 CCR 4950 | Nondiscrimination; marital and parental status |
| Civ. Code 51 | Unruh Civil Rights Act |
| Ed. Code 221.51 | Nondiscrimination; married, pregnant, and parenting students |
| Ed. Code 222 | Reasonable accommodations; lactating students |
| Ed. Code 222.5 | Pregnant and parenting students; notification of rights |
| Ed. Code 230 | Sex discrimination |
| Ed. Code 46015 | Parental leave |
| Ed. Code 48050 | Residents of adjoining states |
| Ed. Code 48205 | Excused absences |
| Ed. Code 48206.3 | Temporary disability; definition |
| Ed. Code 48220 | Compulsory education requirement |
| Ed. Code 48410 | Persons exempted from continuation classes |
| Ed. Code 48980 | Parent/Guardian notifications |
| Ed. Code 49553 | Nutrition supplements for pregnant/lactating students |
| Ed. Code 51220.5 | Parenting skills and education |
| Ed. Code 51745 | Independent study |

Published using Google Docs Report abuse Learn more



H&S Code 104460 parenting students

| Federal | Description |
|---|---|
| 20 USC 1681-1688 | Title IX of the Education Amendments of 1972; discrimination based on sex |
| 34 CFR 106.40 | Marital or parental status |
| 42 USC 1786 | Special supplemental nutrition program for women, infants, and children |
| 7 CFR 246.1-246.28 | Special supplemental nutrition program for women, infants, and children |

| Management Resources | Description |
|---|---|
| Attorney General Opinion | 87 Ops.Cal.Atty.Gen. 168 (2004) |
| California Women's Law Center Publication | Pregnant Students and Confidential Medical Services, 2013 |
| California Women's Law Center Publication | Educational Rights of Pregnant and Parenting Teens: Title IX and California State Law Requirements, 2012 |
| California Women's Law Center Publication | The Civil Rights of Pregnant and Parenting Teens in California Schools, 2002 |
| Court Decision | American Academy of Pediatrics et al v. Lungren et al (1997) 16 Cal.4th 307 |
| U.S. Department of Education Publication | Supporting the Academic Success of Pregnant and Parenting Students under Title IX of the Education Amendments of 1972, rev. June 2013 |
| Website | CSBA District and County Office of Education Legal Services |
| Website | California Women's Law Center |
| Website | U.S. Department of Agriculture, Women, Infants, and Children Program |
| Website | U.S. Department of Education |
| Website | California Department of Education |

Cross References

| Code | Description |
|---|---|
| 0410 | Nondiscrimination In District Programs And Activities |
| 1312.3 | Uniform Complaint Procedures |
| 1312.3 | Uniform Complaint Procedures |
| 1400 | Relations Between Other Governmental Agencies And The Schools |
| 4131 | Staff Development |
| 5030 | Student Wellness |
| 5112.1 | Exemptions From Attendance |
| 5113 | Absences And Excuses |
| 5113.1 | Chronic Absence And Truancy |
| 5131.6 | Alcohol And Other Drugs |
| 5131.62 | Tobacco |
| 5141.25 | Availability Of Condoms |
| 5141.6 | School Health Services |
| 5145.3 | Nondiscrimination/Harassment |
| 5145.3 | Nondiscrimination/Harassment |
| 5145.6 | Parent/Guardian Notifications |

Published using Google Docs Report abuse Learn more



| | |
|---|---|
| 6143 | Courses Of Study |
| 6158 | Independent Study |
| 6164.5 | Student Success Teams |
| 6184 | Continuation Education |

---

**7.15 ADMINISTRATIVE REGULATION 5145.71: TITLE IX HARASSMENT COMPLAINT PROCEDURES**

Board Policy Manual
West Contra Costa Unified School District

Regulation 5145.71: Title IX Sexual Harassment Complaint Procedures Status: ADOPTED
Original Adopted Date: 11/03/2020 | Last Revised Date: 05/15/2023 | Last Reviewed Date: 05/15/2023

**Title IX Sexual Harassment Complaint Procedures**

**Sexual Harassment Under Title IX**

The complaint procedures described in this administrative regulation shall be used to address any complaint governed by Title IX of the Education Amendments of 1972 (Title IX) alleging that a student was subjected to one or more of the following forms of sexual harassment: (34 CFR § 106.30)

A District employee conditioning the provision of a District aid, benefit, or service on the student's participation in unwelcome sexual conduct.

1. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a student equal access to the District's education program or activity.

2. Sexual assault, dating violence, domestic violence, or stalking as defined in 20 U.S.C. § 1092 or 34 U.S.C. § 12291.

"Sexual assault" means actual or intentional physical sexual acts against a person without consent that may include: rape, rape and seduction, sodomy, lewd and lascivious acts, oral copulation, sexual penetration, sexual battery, and sexual assault, as defined under Education Code section 48900(n) and Penal Code section 261, 266c, 286, 288, 288a, 289 and 243.4.

"Dating violence" means violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. (34 U.S.C. § 12291(a)(10).)

"Domestic violence" means felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction receiving grant monies, or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws. (Ed. Code, § 48900, subd. (n).)

"Stalking" means engaging in a course of conduct directed at a specific person that would cause a reasonable person to: (A) fear for his or her safety or the safety of others; or (B) suffer substantial emotional distress. (34 U.S.C. § 12291(a)(30).)

"Without consent" or "against that person's will" may include: force, duress, violence, fear of immediate harm, or one's inability to consent.

The District shall respond to allegations of sexual harassment that, if true, meet the definition of sexual harassment under Title IX, when the alleged conduct occurs in the school's education program or activity, and against a person in the United States.

Published using Google Docs Report abuse Learn more



The determination as to whether the allegations meet the definition of sexual harassment under Title IX shall be made by the Title IX Coordinator:

Jose Espinoza
Director, Office of Educational Equity | Title IX Coordinator | Equity Compliance Officer
1108 Bissell Avenue
Richmond, CA 94801
Tel: (510) 231-1118
Email: jespinoza2@wccusd.net

(cf. 1312.3 - Uniform Complaint Procedures)

**Reporting and Filing a Formal Complaint of Sexual Harassment Under Title IX**

Upon receiving a report of sexual harassment, the Title IX Coordinator shall promptly meet with the complainant. A "complainant" under Title IX means an individual who is alleged to be the victim of conduct that could constitute sexual harassment, or that victim's parent(s)/guardian(s). The Title IX Coordinator shall listen to the complainant's concerns, and inform the complainant of the process for filing a formal complaint, and their right to file or not file a formal complaint. The Title IX Coordinator shall also discuss supportive measures with the complainant, and explain that supportive measures will be available regardless of whether a formal complaint is filed. The Title IX Coordinator may, as appropriate, designate these duties to a trained administrator.

A "formal complaint" under Title IX means a document filed by a or signed by a Title IX Coordinator alleging sexual harassment against a respondent, or individual who has been reported to be the perpetrator of conduct that could constitute sexual harassment, and requesting that the District investigate the allegation. At the time of filing a formal complaint, the complainant must be participating in or attempting to participate in the District's educational program or activity.

A formal complaint, with the complainant's physical or digital signature, may be filed with the Title IX Coordinator, using the contact information listed in AR 5145.7 - Sexual Harassment, in person, by mail, by email, or by any other method authorized by the District. (34 CFR § 106.30)

(cf. 5145.7 - Sexual Harassment)

Even if the alleged victim chooses not to file a formal complaint, the Title IX Coordinator shall file a formal complaint in situations in which a safety threat exists. In addition, the Title IX Coordinator may file a formal complaint in other situations as permitted under the Title IX regulations, including as part of the District's obligation to not be deliberately indifferent to known allegations of sexual harassment. In such cases, the Title IX Coordinator is not a party to the case, and the victim will be treated as a party and receive notices as required under Title IX at specific points in the complaint process.

The Superintendent or designee shall ensure that the Title IX Coordinator, investigator, decision-maker, or a facilitator of an informal resolution process does not have a conflict of interest or bias for or against complainants or respondents generally, or an individual complainant or respondent, and that such persons receive training in accordance with 34 CFR § 106.45. (34 CFR § 106.45)

**Supportive Measures**

Upon receipt of a report of Title IX sexual harassment, even if a formal complaint is not filed, the Title IX Coordinator shall promptly contact the complainant-victim to discuss the availability of supportive measures which are nondisciplinary, nonpunitive, and do not unreasonably burden the other party. Supportive measures shall be designed to restore or preserve equal access to the District's educational program or activity without unreasonably burdening the other party. They shall also be designed to protect the safety of all parties or the District's educational environment, and to deter sexual harassment. Such supportive measures may include, but are not limited to, counseling, course-related adjustments, modifications of class schedules, mutual restrictions on contact, increased security, and monitoring of certain areas of the campus. The Title IX Coordinator shall consider the complainant's wishes with respect to supportive measures. Supportive measures, including those detailed herein, shall also be offered to the respondent upon receipt of a formal complaint. (34 CFR § 106.30, 106.44)

**Emergency Removal from School**

The District is prohibited from disciplining a student for alleged sexual harassment under Title IX until a full Title IX investigation has been completed. (34 CFR §106.44, subd. (a).) However, on an emergency basis, the District may remove a student from the District's education program or activity, provided that the District conducts an

Published using Google Docs
Report abuse
Learn more



If a District employee is the respondent, the employee may be placed on administrative leave during the pendency of the formal complaint process. (34 CFR § 106.44)

**Mandatory and Discretionary Dismissals of Title IX Complaints**
The Title IX Coordinator shall dismiss a formal complaint if the alleged conduct would not constitute sexual harassment as defined in 34 CFR § 106.30, even if proved. The Title IX Coordinator shall also dismiss any complaint wherein the alleged conduct did not occur in the District's education program or activity or did not occur against a person in the United States, or wherein the complainant-victim was not participating or attempting to participate in the educational program at the time the complaint was filed. The Title IX Coordinator may dismiss a formal complaint if the complainant notifies the District in writing that the complainant would like to withdraw the complaint or any allegations in the complaint, the respondent is no longer enrolled or employed by the District, or sufficient circumstances prevent the District from gathering evidence sufficient to reach a determination with regard to the complaint. (34 CFR § 106.30(a), 34 CFR § 106.45)

Upon dismissal, the Title IX Coordinator shall promptly and simultaneously send written notice of the dismissal and the reasons for the dismissal to the parties (i.e., the complainant and respondent). (34 CFR § 106.45) Both parties have the right to appeal a dismissal in accordance with the appeal procedures set forth below

If a complaint is dismissed on the grounds that the alleged conduct does not constitute sexual harassment as defined in 34 CFR § 106.30, or on another appropriate basis, the allegations shall still be addressed pursuant to BP/AR 1312.3 - Uniform Complaint Procedures or other District policies and procedures, as is deemed appropriate under the circumstances.

**Informal Resolution Process**
When a formal complaint of sexual harassment is filed, the District may offer an informal resolution process, such as mediation, at any time prior to reaching a determination regarding responsibility. The District shall not require a party to participate in the informal resolution process or to waive the right to an investigation and adjudication of a formal complaint. (34 CFR § 106.45)

The District may facilitate an informal resolution process provided that the District:

1. Provides the parties with written notice disclosing the allegations, the requirements of the informal resolution process, the right to withdraw from the informal process and resume the formal complaint process, and any consequences resulting from participating in the informal resolution process, including that records will be maintained or could be shared.

2. Obtains the parties' voluntary, written consent to the informal resolution process.

3. Does not offer or facilitate an informal resolution process to resolve allegations that an employee sexually harassed a student.

(34 CFR § 106.45)

As part of an informal resolution, the parties may agree upon discipline, including suspension or expulsion, without the need for an investigation. (Unofficial Title IX Regulations, pg. 1390.

**Formal Complaint Process**

**Written Notice**

If a formal complaint is filed, the Title IX Coordinator shall provide the known parties with written notice of the following: (34 CFR § 106.45)

1. The District's complaint process, including any informal resolution process.

2. The allegations potentially constituting sexual harassment with sufficient details known at the time, including the identity of parties involved in the incident if known, the conduct allegedly constituting sexual harassment, and the date and location of the alleged incident if known. Such notice

Published using Google Docs Report abuse Learn more



3. A statement that the respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the complaint process.

4. The opportunity for the parties to have an advisor of their choice who may be, but is not required to be, an attorney, and the ability to inspect and review evidence.

5. The prohibition against knowingly making false statements or knowingly submitting false information during the complaint process.

**Investigation Procedures**
During the investigation process, the District and/or the District's designated investigator shall: (34 CFR § 106.45)

1. Provide an equal opportunity for the parties to present witnesses, including fact and expert witnesses, and other inculpatory and exculpatory evidence.

2. Not restrict the ability of either party to discuss the allegations under investigation or to gather and present relevant evidence.

3. Provide the parties with the same opportunities to have others present during any grievance proceeding, including the opportunity to be accompanied to any related meeting or proceeding by the advisor of their choice, who may be, but is not required to be, an attorney.

4. Not limit the choice or presence of an advisor for either the complainant or respondent in any meeting or grievance proceeding, although the District may establish restrictions regarding the extent to which the advisor may participate in the proceedings as long as the restrictions apply equally to both parties.

5. Provide, to a party whose participation is invited or expected, written notice of the date, time, location, participants, and purpose of all investigative interviews or other meetings, with sufficient time for the party to prepare to participate.

6. Send in an electronic format or hard copy to both parties and their advisors, if any, the evidence obtained as part of the investigation that is directly related to the allegations raised in the complaint, and provide the parties at least 10 days to submit a written response for the investigator to consider prior to the completion of the investigative report.

7. Objectively evaluate all relevant evidence, including both inculpatory and exculpatory evidence, and determine credibility in a manner that is not based on a person's status as a complainant, respondent, or witness.

8. Create an investigative report that fairly summarizes relevant evidence and, at least 10 days prior to the determination of responsibility, send to the parties and their advisors, if any, the investigative report in an electronic format or a hard copy, for their review and written response.

After sending the investigative report to the parties and before reaching a determination regarding responsibility, the decision-maker, who shall not be the Title IX Coordinator or investigator assigned to the matter, shall afford each party the opportunity to submit written, relevant questions that the party wants asked of any party or witness, provide each party with the answers, and allow for additional, limited follow-up questions from each party

Published using Google Docs Report abuse Learn more



Privacy rights of all parties to the complaint shall be maintained in accordance with applicable state and federal laws.

If the complaint is against an employee, rights conferred under an applicable collective bargaining agreement shall be applied to the extent they do not conflict with the Title IX requirements.

**Written Decision**

The decision-maker shall issue, and simultaneously provide to both parties, a written decision as to whether the respondent is responsible for the alleged conduct. (34 CFR § 106.45)

The written decision shall be issued within 60 calendar days of the receipt of the complaint, unless extended by written agreement from both parties.

In making this determination, the decision-maker shall use the "preponderance of the evidence" standard for all formal complaints of sexual harassment. The same standard of evidence shall be used for formal complaints against students as for complaints against employees. (34 CFR § 106.45)

The written decision shall include the following: (34 CFR § 106.45)

1. Identification of the allegations potentially constituting sexual harassment as defined in 34 CFR § 106.30.

2. A description of the procedural steps taken from receipt of the formal complaint through the written decision, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held if the District includes hearings as part of the grievance process.

3. Findings of fact supporting the determination.

4. Conclusions regarding the application of the District's code of conduct or policies to the facts.

5. A statement of, and rationale for, the result as to each allegation, including a decision regarding responsibility, all corrective actions, including any disciplinary sanctions the District imposes on the respondent, and whether remedies designed to restore or preserve equal access to the District's educational program or activity will be provided by the District to the complainant.

6. The District's procedures and permissible bases for the complainant and respondent to appeal, as well as any civil law remedies that may be available under state or federal laws.

The written decision shall comply with the requirements outlined in the uniform complaint procedures for the issuance of an investigation report and appeal rights, as is necessary and required under the law.

**Appeals**

Either party may appeal the District's decision or dismissal of a formal complaint or any allegation in the complaint, if the party believes that a procedural irregularity affected the outcome, new evidence is available that could affect the outcome, or a conflict of interest or bias by the Title IX Coordinator, investigator(s), or decision-maker(s) affected the outcome. If an appeal is filed, the District shall: (34 CFR § 106.45)

Notify the other party in writing when an appeal is filed and implement appeal procedures equally for both parties.

1. Ensure that the decision-maker(s) for the appeal is trained in accordance with 34 CFR § 106.45 and is not the same decision-maker(s) who reached

Published using Google Docs Report abuse Learn more



3. Issue a written decision describing the result of the appeal and the rationale for the result.

4. Provide the written decision simultaneously to both parties.

An appeal must be filed in writing within 10 calendar days of receiving the notice of dismissal of a Title IX complaint or a written determination, stating the grounds for the appeal and including any relevant documentation in support of the appeal. Appeals submitted after this deadline are not timely and shall not be considered. A written decision on the appeal shall be provided to the parties within 20 calendar days from the receipt of the appeal.

In accordance with the uniform complaint procedures, a complainant may also file an appeal of the District's written decision (referred to by the California Department of Education ("CDE") as the "Investigation Report") to CDE within 30 days from the date of the written decision.

The appeal must be signed by the complainant and specify and explain the basis for the appeal that includes at least one of the following: (1) the District failed to follow its complaint procedures; (2) the written decision (or Investigation Report) lack of material findings of fact necessary to reach a conclusion of law; (3) the material findings of fact are not supported by substantial evidence; (4) the District's legal conclusions are inconsistent with the law; and/or (5) the corrective actions, listed herein, fail to provide a proper remedy. The appeal shall be accompanied by a copy of the locally filed complaint.

The appeal should be sent to:

California Department of Education
ATTN: Office of Equal Opportunity
1430 N Street
Sacramento, CA 95814-5901

Either party has the right to file a complaint with the U.S. Department of Education's Office for Civil Rights 180 days from the date of most recently alleged misconduct.

**Remedies**
When a determination of responsibility for sexual harassment has been made against the respondent, the District shall provide remedies to the complainant. Such remedies may include the same individualized services described above in the section "Supportive Measures," but need not be nondisciplinary or non punitive and need not avoid burdening the respondent. (34 CFR § 106.45)

**Corrective/Disciplinary Actions**

The District shall not impose any disciplinary sanctions or other actions against a respondent, other than supportive measures as described above in the section "Supportive Measures," until the complaint procedure has been completed and a determination of responsibility has been made. (34 CFR § 106.44)

For students in grades 4-12, discipline for sexual harassment may include suspension and/or expulsion. After the completion of the complaint procedure, if it is determined that a student at any grade level has committed sexual assault or sexual battery at school or at a school activity off school grounds, the principal or Superintendent shall immediately suspend the student and shall recommend expulsion. (Education Code § 48900.2, 48915)

(cf. 5144 - Discipline)
(cf. 5144.1 - Suspension and Expulsion/Due Process)

Other actions that may be taken with a student who is determined to be responsible for sexual harassment include, but are not limited to:

1. Transfer from a class or school as permitted by law.

2. Parent/guardian conference.

3. Education of the student regarding the impact of the conduct on others.

Published using Google Docs Report abuse Learn more



6. Denial of participation in extracurricular or co curricular activities or other privileges as permitted by law

7. (cf. 6145 - Extracurricular and Co-curricular Activities)

When an employee is found to have committed sexual harassment or retaliation, the District shall take appropriate disciplinary action, up to and including dismissal, in accordance with applicable law and collective bargaining agreement.

(cf. 4118 - Dismissal/Suspension/Disciplinary Action)
(cf. 4119.11/4219.11/4319.11 - Sexual Harassment And Gender-Based Harassment)

**Record-Keeping**
The Superintendent or designee shall maintain for a period of seven years a record of the following:

For formal complaints, the District shall maintain record of each Title IX investigation of sexual harassment, including any determinations of responsibility, any audio or audiovisual recording and transcript if applicable, any disciplinary sanctions imposed, any remedies provided to the complainant, and any appeal or informal resolution and the results therefrom. (34 CFR § 106.45)

Where a Title IX allegation was reported, regardless of whether or not a formal complaint was filed, the District shall maintain a record of any actions, including supportive measures, taken in response to a report or formal complaint, or why it is reasonable that no supportive actions were taken, why the District's response was not deliberately indifferent, and the measures taken that were designed to restore or preserve equal access to the education program or activity.

The Superintendent or designee shall also maintain for a period of seven years all materials used to train the Title IX Coordinator, investigator(s), decision-maker(s), and any person who facilitates an informal resolution process. The District shall make such training materials publicly available on its website, or if the District does not maintain a web site, available upon request by members of the public. (34 CFR § 106.45)

(cf. 3580 - District Records)

Legal Reference:

EDUCATION CODE
200-262.4 Prohibition of discrimination on the basis of sex
48900 Grounds for suspension or expulsion
48900.2 Additional grounds for suspension or expulsion; sexual harassment
48985 Notices, report, statements and records in primary language

CIVIL CODE
51.9 Liability for sexual harassment; business, service and professional relationships
1714.1 Liability of parents/guardians for willful misconduct of minor

GOVERNMENT CODE
12950.1 Sexual harassment training

CODE OF REGULATIONS, TITLE 5
4600-4670 Uniform complaint procedures
4900-4965 Nondiscrimination in elementary and secondary education programs

UNITED STATES CODE, TITLE 20
1092 Definition of sexual assault
1221 Application of laws
1232g Family Educational Rights and Privacy Act
1681-1688 Title IX of the Education Amendments of 1972

UNITED STATES CODE, TITLE 34
12291 Definition of dating violence, domestic violence, and stalking

UNITED STATES CODE, TITLE 42
1983 Civil action for deprivation of rights
2000d-2000d-7 Title VI, Civil Rights Act of 1964
2000e-2000e-17 Title VII, Civil Rights Act of 1964 as amended

CODE OF FEDERAL REGULATIONS, TITLE 34
99.1-99.67 Family Educational Rights and Privacy
106.1-106.82 Nondiscrimination on the basis of sex in education programs

Published using Google Docs Report abuse Learn more



Management Resources:

CSBA PUBLICATIONS
Providing a Safe, Nondiscriminatory School Environment for Transgender and Gender-Nonconforming Students, Policy Brief, February 2014
Safe Schools: Strategies for Governing Boards to Ensure Student Success, 2011
U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS PUBLICATIONS
Q&A on Campus Sexual Misconduct, September 2017
Examples of Policies and Emerging Practices for Supporting Transgender Students, May 2016
Dear Colleague Letter: Title IX Coordinators, April 2015
Sexual Harassment: It's Not Academic, September 2008
Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, January 2001

WEB SITES
CSBA: http://www.csba.org
California Department of Education: http://www.cde.ca.gov
U.S. Department of Education, Office for Civil Rights: http://www.ed.gov/about/offices/list/ocr

Regulation approved: November 3, 2020 WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT Richmond, California

---

**7.16 BOARD POLICY 5145.9: HATE-MOTIVATED BEHAVIOR**

The West Contra Costa Unified School District Board of Education, hereinafter referred to as the Board, is committed to equal opportunity for all individuals in education within a safe school environment that allows all students equal access and opportunities to all of the district's programs and activities, including academic programs, educational supports, services, and enrichment activities.

The Board is committed to providing a safe educational environment and positive school climate to all students. In the West Contra Costa Unified School District, all students have the right to be educated in a positive and safe environment that is free from disruption.

The Board affirms the right of every student to be protected from hate-motivated behavior. It is the intent of the Board to promote understanding of and respect for human rights, diversity, and tolerance in a multicultural society and to provide strategies to manage conflicts constructively.
The Board is committed to providing a safe school environment that allows all students equal access and opportunities in the district's academic and other educational support programs, services, and activities. The Board prohibits, at any district school, school activity, or attendance within a school under the jurisdiction of the superintendent of the school district, unlawful discrimination, harassment, intimidation, and bullying of any student based on the student's actual race, color, ancestry, national origin, immigration status, ethnic group identification, age, religion, marital or parental status, physical or mental disability, sex, sexual orientation, gender, gender identity or gender expression; the perception of one or more of such characteristics, or association with a person or group with one or more of these actual or perceived characteristics. Gender identity is a person's personal sense of gender (e.g., being a boy or a girl), which may or may not be the same as their biological sex at birth. For transgender persons, the sex at birth (i.e., male or female) does not match their own internal sense of their gender identity. Since gender identity is internal, it isn't necessarily visible to others. Gender expression is a person's external manifestation of their gender identity. Gender expression is visible to others - it's the way a person expresses their gender identity through clothing, behavior, posture, mannerisms, speech patterns, activities and more.

The Superintendent or designee shall collaborate with regional programs and community organizations to promote safe environments for youth. These efforts shall be focused on providing an efficient use of district and community resources.

The district shall provide age-appropriate instruction to help promote understanding of and respect for human rights, diversity, and tolerance in a multicultural society and to provide strategies to manage conflicts constructively. (Education Code 233.8)

The Superintendent or designee shall ensure that staff receive training on recognizing hate-motivated behavior and on strategies to respond appropriately to such behavior.

**Complaint Process**

Published using Google Docs Report abuse Learn more



the District Compliance Officer or the principal or vice principal of the relevant school site. Such reports will be processed in accordance with Administrative Regulation 5145.7.

The Superintendent or designee shall ensure that any complaints regarding hate-motivated behavior are immediately investigated in accordance with Administrative Regulation 5145.7.

When the Superintendent or designee has determined that hate-motivated behavior has occurred, he/she shall take prompt, appropriate action to end the hate-motivated behavior, prevent its recurrence and address its effects on the victim.

A student who has been found to have demonstrated hate-motivated behavior shall receive interventions and/or be subject to discipline in accordance with law, Board policy, and administrative regulation.

In addition, the district shall provide counseling and appropriate anti-bias training and diversity education for students about the impact of exhibiting hate-motivated behavior.

The district shall also provide counseling, guidance and support, as necessary, to those students who are the victims of hate-motivated behavior and to students who exhibit such behavior. (Education Code 233.8)

**Legal Reference:**
**EDUCATION CODE**
200-262.4 Prohibition of discrimination
32282 School safety plans
48900.3 Suspension for hate violence
48900.4 Suspension or expulsion for threats or harassment
PENAL CODE
422.55 Definition of hate crime
422.6 Crimes, harassment
CODE OF REGULATIONS, TITLE 5
4600-4687 Uniform Complaint Procedures
4900-4965 Nondiscrimination in elementary and secondary education programs

**Management Resources:**
CALIFORNIA DEPARTMENT OF EDUCATION LEGAL ADVISORIES
California Student Safety and Violence Prevention - Laws and Regulations, April 2004
U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS & NATIONAL ASSOCIATION OF ATTORNEYS GENERAL PUBLICATIONS
Protecting Students from Harassment and Hate Crime: A Guide for Schools, 1999
U.S. DEPARTMENT OF JUSTICE PUBLICATIONS
Preventing Youth Hate Crimes: A Guide for Schools and Communities, 1997
WEB SITES
CSBA: http://www.csba.org
California Association of Human Relations Organizations: http://www.cahro.org
California Department of Education: http://www.cde.ca.gov
National Youth Violence Prevention Resource Center: http://www.safeyouth.org
U.S. Department of Education, Office for Civil Rights: http://www.ed.gov/about/offices/list/ocr
U.S. Department of Justice, Community Relations Service: http://www.usdoj.gov/crs

Policy WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT
adopted: July 29, 2009 Richmond, California
revised: March 26, 2014
revised: April 23, 2014
revised: October 17, 2018

**7.17 BOARD POLICY BP 5145.13: IMMIGRATION ENFORCEMENT**

**Board Policy Manual**
**West Contra Costa Unified School District**

**Policy 5145.13: Response To Immigration Enforcement**
**Status:** ADOPTED

**Original Adopted Date:** 11/14/2018 | **Last Revised Date:** 07/12/2023 | **Last Reviewed Date:** 07/12/2023

Published using Google Docs Report abuse Learn more



No student shall be denied equal rights and opportunities nor be subjected to unlawful discrimination, harassment, intimidation, or bullying in the district's programs and activities on the basis of his/her immigration status. (Education Code 200, 220, 234.1)

The Superintendent or designee shall notify parents/guardians regarding their children's right to a free public education regardless of immigration status or religious beliefs and their rights related to immigration enforcement. (Education Code 234.7)

Consistent with requirements of the California Office of the Attorney General, the Superintendent or designee shall develop procedures for addressing any requests by a law enforcement officer for access to district records, school sites, or students for the purpose of immigration enforcement.

Teachers, school administrators, and other school staff shall receive training regarding immigration issues, including information on responding to a request from an immigration officer to visit a school site or to have access to a student.

The Superintendent or designee shall report to the Board in a timely manner any requests for information or access to a school site by an officer or employee of a law enforcement agency for the purpose of enforcing the immigration laws. Such notification shall be provided in a manner that ensures the confidentiality and privacy of any potentially identifying information. (Education Code 234.7)

The Board provides the following guidelines to the Superintendent or designee related to the issue of immigration enforcement.

**1. Visitors/Outsiders**

a. The district shall adopt measures for responding to outsiders that avoids classroom interruptions, and preserves the peaceful conduct of the school's activities, consistent with local circumstances and practices.

b. The district shall post signs at the entrance of its school grounds to notify outsiders of the hours and requirements for registration.

c. District personnel shall report entry by immigration-enforcement officers to any on-site school police or other appropriate administrator as would be required for any unexpected or unscheduled outside visitor coming on campus.

d. No visitor/outsider¬óincluding immigration-enforcement officers¬óshall enter or remain on school grounds of the district during school hours without having registered with the principal or designee.

e. If there are no exigent circumstances necessitating immediate action, and if the immigration officer does not possess a judicial warrant or court order that provides a basis for the visit, the officer must provide the information to the principal or designee:

- ❖ Name, address, occupation;
- ❖ Age, if less than 21;
- ❖ Purpose of entering school grounds;
- ❖ Proof of identity; and
- ❖ Any other information as required by law.

**2. Student And Family Privacy Rights**

a. The Superintendent or designee shall maintain in writing district policies and procedures for gathering and handling sensitive student information, and appropriate personnel shall receive training regarding those policies and procedures.

b. The district shall not allow school resources or data to be used to create a registry based on race, gender, sexual orientation, religion, ethnicity, or national origin.

c. The district shall avoid the disclosure of information that might indicate a student's or family's citizenship or immigration status if the disclosure is not authorized by Family Educational Rights and Privacy Act (FERPA).

d. Inquiries Regarding Immigration Status, Citizenship Status, and National Origin Information

i. District personnel shall not inquire specifically about a student's citizenship or immigration status or the citizenship or immigration status of a student's parents or guardians; nor shall personnel seek or require, to the exclusion of other permissible documentation or information, documentation or information that may indicate a student's immigration status, such as a green card, voter registration, a passport, or citizenship papers.

ii. Where any law contemplates submission of national origin related information to satisfy the requirements of a special program, district personnel shall solicit that documentation or information separately from the school enrollment process.

iii. Where permitted by law, the Superintendent or designee of the district shall enumerate alternative means to establish residency, age, or other eligibility criteria for enrollment or programs, and those alternative means shall include among them documentation or information that are available to persons regardless of immigration status, citizenship status, or national origin, and that do not reveal information related to citizenship or immigration status.

iv. Where residency, age, and other eligibility criteria for purposes of enrollment or any program may be established by alternative documents or information permitted by law or this policy, the district's procedures and

Published using Google Docs Report abuse Learn more



description of the immigration officer's request.

c) Document any verbal or written request for information by immigration authorities.

d) Unless prohibited, provide students and parents/guardians with any documents issued by the immigration-enforcement officer.

e. Inquiries about Social Security Numbers or Cards

i. The district shall not solicit or collect entire Social Security numbers or cards. The district shall solicit and collect the last four digits of an adult household member's Social Security number only if required to establish eligibility for federal benefit programs. When collecting the last four digits of an adult household member's Social Security number to establish eligibility for a federal benefit program, the district shall explain the limited purpose for which this information is collected, and clarify that a failure to provide this information will not bar the student from enrolling in or attending the school.

ii. The district shall treat all students equitably in the receipt of all school services, including, but, not limited to, the gathering of student and family information for the free and reduced lunch program, transportation and educational instruction.

**3. Admission**

a. If the district possesses information that could indicate immigration status, citizenship status, or national origin information, the district shall not use the acquired information to discriminate against any students or families or bar children from enrolling in or attending school.

b. If parents or guardians choose not to provide information that could indicate their or their children's immigration status, citizenship status, or national origin information, the district shall not use such actions as a basis to discriminate against any students or families or bar children from enrolling or attending school.

**4. Student Records**

a. The district shall require written parental or guardian consent for release of student information, unless the information may be released without parental consent or includes directory information only. No exception permits disclosing information to immigration authorities for immigration-enforcement purposes; no student information shall be disclosed to immigration authorities for immigration-enforcement purposes without a court order or judicial subpoena.

b. The district's request for written parental or guardian consent for release of student information must include the following information: (1) the signature and date of the parent, guardian, or eligible student providing consent; (2) a description of the records to be disclosed; (3) the reason for release of information; (4) the parties or class of parties receiving the information; and (5) if requested by the parents, guardians or eligible student, a copy of the records to be released. The district shall permanently keep the consent notice with the record file.

c. The parent, guardian, or eligible student is not required to sign the consent form. If the parent, guardian or eligible student refuses to provide written consent for the release of student information that is not otherwise subject to release, the district shall not release the information.

d. Except for investigations of child abuse, child neglect, or child dependency, or when the subpoena served on the local educational agency prohibits disclosure, the district shall provide parental or guardian notification of any court orders, warrants, or subpoenas before responding to such requests.

**5. Bullying**

a. The district shall adopt and publicize policies that prohibit discrimination, harassment, intimidation, and bullying on the basis of a student's actual or perceived nationality, ethnicity, or immigration status. Those policies must be translated in the student's primary language if at least 15 percent of the students enrolled in the school speak a single primary language other than English.

b. The district shall notify parents and guardians of their children's right to a free public education, regardless of immigration status or religious beliefs. This information shall include information related to the "Know Your Rights" immigration enforcement established by the Attorney General.

c. The district shall inform students who are victims of hate crimes of their right to report such crimes.

d. The district shall educate students about the negative impact of bullying other students based on their actual or perceived immigration status or their religious beliefs or customs.

e. The district shall also train teachers, staff, and personnel to ensure that they are aware of their legal duty to take reasonable steps to eliminate a hostile environment and respond to any incidents of harassment based on the actual or perceived characteristics noted above. Such training should, at minimum, provide agency personnel with the skills to do the following:

i. Discuss the varying immigration experiences among members of the student body and school community;

ii. Discuss bullying-prevention strategies with students, and teach students to recognize the behavior and characteristics of bullying perpetrators and victims;

iii. Identify the signs of bullying or harassing behavior;

iv. Take immediate corrective action when bullying is observed; and

Published using Google Docs Report abuse Learn more



- gender
- gender identity
- gender expression
- nationality
- race or ethnicity
- religion
- sexual orientation
- association with a person or group with one or more of the aforementioned characteristics
- Immigration status

The complaint process must include, but is not limited to, the following steps:

1. A requirement that, if school personnel witness an act of discrimination, harassment, intimidation, or bullying, they shall take immediate steps to intervene when safe to do so;
2. A timeline to investigate and resolve complaints of discrimination, harassment, intimidation, or bullying that shall be followed by all schools under the jurisdiction of the local educational agency; and
3. An appeal process afforded to the complainant should he or she disagree with the resolution of a complaint.
4. The district shall ensure that complaint procedures contain confidentiality safeguards for immigration status information.
5. The district shall prohibit retaliation against a person who submits a complaint of discrimination, harassment, intimidation, or bullying.

**6. Responding To The Detention Or Deportation Of A Student's Family Member**

a. The district shall encourage that families and students have and know their emergency phone numbers and know where to find important documentation, including birth certificates, passports, Social Security cards, doctors' contact information, medication lists, lists of allergies, etc., which will allow them to be prepared in the event that a family member is detained or deported.

b. The district shall permit students and families to update students' emergency contact information as needed throughout the school year, and provide alternative contacts if no parent or guardian is available. The district shall ensure that families may include the information of an identified trusted adult guardian as a secondary emergency contact in case a student's parent or guardian is detained. The district shall communicate to families that information provided within the emergency cards will only be used in response to specified emergency situations, and not for any other purpose.

c. In the event a student's parent/guardian has been detained or deported by federal immigration authorities, the district shall use the student's emergency card contact information and release the student to the person(s) designated as emergency contacts. Alternatively, the district shall release the student into the custody of any individual who presents a Caregiver's Authorization Affidavit on behalf of the student. The district shall only contact Child Protective Services if the district personnel are unsuccessful in arranging for the timely care of the child through the emergency contact information that the school has, a Caregiver's Authorization Affidavit, or other information or instructions conveyed by the parent or guardian.

**7. Parental Notifications**

a. The district must provide an annual notice to parents and guardians of the school's general information policies that includes:

i. Assurances that the district will not release information to third parties for immigration enforcement purposes, except as required by law or court order.

ii. A description of the types of student records maintained by the district.

iii. A list of the circumstances or conditions under which the district might release student information to outside people or entities.

iv. A statement that, unless the district is providing information for a legitimate educational purpose under FERPA and the California Education Code or directory information, the district shall notify parents or guardians and eligible students¬óand receive their written consent¬óbefore it releases a student's personally identifiable information.

b. If the district decides to release directory information, the district shall provide an annual notice to parents and guardians, and "eligible students" in attendance, of the district's directory information policy that includes:

i. The categories of information that the district has classified as public directory information that may be disclosed without parental consent and which should only include the information specifically identified in Education Code section 49061, subdivision (c).

ii. A statement that directory information does not include citizenship status, immigration status, place of birth, or any other information indicating national origin (except where the district receives consent as required under state law).

iii. The recipients of the directory information.

iv. A description of the parent's or guardian's abilities to refuse release of the student's directory information, and how to refuse release.

v. The deadline in which the parent, guardian or student must notify the school in writing that he or she does not want the information designated

Published using Google Docs Report abuse Learn more



warrants, etc.).

ii. In addition to notifying the Superintendent or designee, district personnel shall take the following action steps in response to an officer present on the school campus specifically for immigration-enforcement purposes:

a) Advise the officer that before proceeding with his or her request, and absent exigent circumstances, school personnel must first receive notification and direction from the Superintendent or designee.

b) Ask to see, and make a copy of or note, the officer's credentials (name and badge number). Also ask for and copy or note the phone number of the officer's supervisor.

c) Ask the officer for his/her reason for being on school grounds and document it.

d) Ask the officer to produce any documentation that authorizes school access.

e) Make a copy of all documents provided by the officer. Retain one copy of the documents for school records.

f) If the officer declares that exigent circumstances exist and demands immediate access to the campus, district personnel should comply with the officer's orders and immediately contact the Superintendent or designee.

g) If the officer does not declare that exigent circumstances exist, respond according to the requirements of the officer's documentation. If the immigration-enforcement officer has:

1. An ICE (Immigrations and Customs Enforcement) administrative warrant, district personnel shall inform the agent that he or she cannot consent to any request without first consulting with the district's counsel or other designated agency official.
2. A federal judicial warrant (search-and-seizure warrant or arrest warrant), prompt compliance with such a warrant is usually legally required. If feasible, consult with the district's legal counsel or designated administrator before providing the agent access to the person or materials specified in the warrant.
3. A subpoena for production of documents or other evidence, immediate compliance is not required. Therefore, district personnel shall inform the district's legal counsel or other designated official of the subpoena, and await further instructions on how to proceed.

iii. While district personnel should not consent to access by an immigration-enforcement officer, except as described above, he/she should not attempt to physically impede the officer, even if the officer appears to be exceeding the authorization given under a warrant or other document. If an officer enters the premises without consent, district personnel shall document his or her actions while on campus.

a) After the encounter with the officer, district personnel shall promptly take written notes of all interactions with the officer. The notes shall include the following items:

1. List or copy of the officer's credentials and contact information;
2. Identity of all school personnel who communicated with the officer;
3. Details of the officer's request;
4. Whether the officer presented a warrant or subpoena to accompany his/her request, what was requested in the warrant/subpoena, and whether the warrant/subpoena was signed by a judge;
5. District personnel's response to the officer's request;
6. Any further action taken by the agent; and
7. Photo or copy of any documents presented by the agent.

b) District personnel shall provide a copy of those notes, and associated documents collected from the officer, to the [local educational agency's legal counsel or other designated agency official].

c) In turn, the district's legal counsel or other designated official shall submit a timely report to the District's governing board regarding the officer's requests and actions and the district's response(s).

d) E-mail the Bureau of Children's Justice in the California Department of Justice, at BCJ@doj.ca.gov, regarding any attempt by a law-enforcement officer to access a school site or a student for immigration-enforcement purposes.

**9. Parental Notification Of Immigration-Enforcement Actions**

a. District personnel must receive consent from the student's parent or guardian before a student can be interviewed or searched by any officer seeking to enforce the civil immigration laws at the school, unless the officer presents a valid, effective warrant signed by a judge, or presents a valid, effective court order.

Published using Google Docs Report abuse Learn more



**Policy Reference Disclaimer:**

These references are not intended to be part of the policy itself, nor do they indicate the basis or authority for the board to enact this policy. Instead, they are provided as additional resources for those interested in the subject matter of the policy.

| State | Description |
|---|---|
| Ed. Code 200 | Equal rights and opportunities in state educational institutions |
| Ed. Code 220 | Prohibition of discrimination |
| Ed. Code 234.1 | Student protections relating to discrimination, harassment, intimidation, and bullying |
| Ed. Code 234.7 | Student protections relating to immigration and citizenship status |
| Ed. Code 48204.4 | Evidence of residency for school enrollment |
| Ed. Code 48980 | Parent/Guardian notifications |
| Ed. Code 48985 | Notices to parents in language other than English |
| Gov. Code 8310.3 | California Religious Freedom Act |
| Pen. Code 422.55 | Definition of hate crime |
| Pen. Code 627-627.10 | Access to school premises |

| Federal | Description |
|---|---|
| 20 USC 1232g | Family Educational Rights and Privacy Act (FERPA) of 1974 |

| Management Resources | Description |
|---|---|
| CA Office of the Attorney General Publication | Promoting a Safe and Secure Learning Environment for All: Guidance and Model Policies to Assist California's K-12 Schools in Responding to Immigration Issues, April 2018 |
| Court Decision | Plyler v. Doe, 457 U.S. 202 (1982) |
| CSBA Publication | Legal Guidance on Providing All Children Equal Access to Education, Regardless of Immigration Status, February 2017 |
| Website | CSBA District and County Office of Education Legal Services |
| Website | U.S. Immigration and Customs Enforcement, Online Detainee Locator System |
| Website | California Attorney General's Office |
| Website | California Office of the Attorney General |
| Website | CSBA |
| Website | U.S. Department of Education, Office for Civil Rights |
| Website | U.S. Immigration and Customs Enforcement |
| Website | California Department of Education |
| Website | California Civil Rights Department |

Cross References

| Code | Description |
|---|---|
| 0410 | Nondiscrimination In District Programs And Activities |
| 1340 | Access To District Records |
| 1340 | Access To District Records |
| 5111 | Admission |
| 5125 | Student Records |
| 5125 | Student Records |
| 5125.1 | Release Of Directory Information |
| 5141 | Health Care And Emergencies |
| 5141 | Health Care And Emergencies |

Published using Google Docs Report abuse Learn more



6143 Courses Of Study

**7.18 BOARD POLICY 6163.4: STUDENT USE OF TECHNOLOGY**

The Governing Board intends that technological resources provided by the district be used in a responsible and proper manner in support of the instructional program and for the advancement of student learning.

The Superintendent or designee shall notify students and parents/guardians about authorized uses of district computers, user obligations and responsibilities, as well as consequences for unauthorized use and/or unlawful activities.

**On-Line Services/Internet Access**

The Superintendent or designee shall provide age-appropriate instruction regarding safe and appropriate behavior on social networking sites, chat rooms, and other Internet services. Such instruction shall include, but not be limited to, the dangers of posting personal information online, misrepresentation by online predators, how to report inappropriate or offensive content or threats, behaviors that constitute cyber bullying, and how to respond when subjected to cyberbullying.

The Board desires to protect students from access to inappropriate matters on the Internet or other on-line services.

The Superintendent or designee shall implement rules and procedures designed to restrict students' access to harmful or inappropriate matter on the Internet. He/she also shall establish regulations to address the safety and security of students and student information when using electronic mail, chat rooms, and other forms of direct electronic communication.

Staff shall supervise students while they are using on-line services and may ask teacher aides and student aides to assist in this supervision.

Before using the district's on-line resources, each student and his/her parent/guardian shall sign and return an Acceptable Use Agreement specifying user obligations and responsibilities. In that agreement, the student and his/her parent/guardian shall agree to not hold the district or any district staff responsible for the failure of any technology protection measures, violations of copyright restrictions, or users' mistakes or negligence. They shall also agree to indemnify and hold harmless the district and district personnel for any damages or costs incurred.

In order to help ensure that the district adapts to changing technologies and circumstances, the Superintendent or designee shall regularly review this policy, the accompanying administrative regulation, and other relevant procedures. He/she shall also monitor the district's filtering software to help ensure its effectiveness.

**Legal Reference:**
**EDUCATION CODE**
51006 Computer education and resources
51007 Programs to strengthen technological skills
51870-51874 Education technology
60044 Prohibited instructional materials
**PENAL CODE**
313 Harmful matter
502 Computer crimes, remedies
632 Eavesdropping on or recording confidential communications
653.2 Electronic communication devices, threats to safety
**UNITED STATES CODE, TITLE 15**
6501-6506 Children's Online Privacy Protection Act
**UNITED STATES CODE, TITLE 20**
6751-6777 Enhancing Education Through Technology Act, Title II, Part D, especially:
6777 Internet safety
**UNITED STATES CODE, TITLE 47**
254 Universal service discounts (E-rate)
**CODE OF FEDERAL REGULATIONS, TITLE 16**
312.1-312.12 Children's Online Privacy Protection Act
**CODE OF FEDERAL REGULATIONS, TITLE 47**
54.520 Internet safety policy and technology protection measures, E-rate discounts

**Management Resources:**
CSBA PUBLICATIONS
Cyber bullying: Policy Considerations for Boards, Policy Brief, July 2007
FEDERAL TRADE COMMISSION PUBLICATIONS
How to Protect Kids' Privacy Online: A Guide for Teachers, December 2000
MY SPACE.COM PUBLICATIONS
The Official School Administrator's Guide to Understanding MySpace and Resolving Social Networking Issues
**WEB SITES**
CSBA: http://www.csba.org

Published using Google Docs Report abuse Learn more



U.S. Department of Education: http://www.ed.gov
Web Wise Kids: http://www.webwisekids.org
Policy WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT
adopted: June 6, 2007 Richmond, California
revised: May 23, 2012

**7.19 NOTICE OF STUDENT RIGHTS UNDER TITLE IX**

**WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT**

# Notice of Student Rights Under Title IX

(34 C.F.R. § 106.8, subd. (b); Cal. Ed. Code § 221.61.)

Federal Title IX of the Education Amendments of 1972 ("Title IX"), implemented at 34 C.F.R. § 106.31, subd. (a), provides that no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any academic, extracurricular, research, occupational training, or other education program or activity operated by a recipient which receives federal financial assistance.

Relevant here, Title IX requires that school districts take immediate and appropriate action to address any potential Title IX violations that are brought to its attention. Any inquiries about the application of Title IX, this notice, and who is protected by Title IX may be referred to one of the West Contra Costa Unified School District ("District") Title IX Coordinators, listed below, and/or the Assistant Secretary for Civil Rights from the United States Department of Education.

Title IX Coordinator

**Jose Espinoza**
Director
Office of Educational Equity | Title IX Coordinator | Equity Compliance Officer
1108 Bissell Avenue, Richmond, CA 94801
E-mail: jespinoza2@wccusd.net
Tel: (510) 231-1118

**Sexual Harassment Under Title IX**

Sexual harassment under Title IX means conduct on the basis of sex that satisfies one or more of the following:

1. An employee of the school district conditioning the provision of an aide, benefit, or service of the school district on an individual's participation in unwelcome sexual conduct (*quid pro quo*);

2. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity; or

3. "Sexual assault" as defined in 20 U.S.C. 1092(f)(6)(A)(v), "dating violence" as defined in 34 U.S.C. 12291(a)(10), "domestic violence" as defined in 34 U.S.C. 12291(a)(8), or "stalking" as defined in 34 U.S.C. 12291(a)(30).

Alleged conduct that does not rise to the level of sexual harassment under Title IX will be addressed in accordance with other District policies that prohibit sexual harassment and/or sex-based discrimination, or other forms of inappropriate conduct, as is deemed appropriate.

**Filing a Title IX Complaint with The District**

Any person may report sex discrimination, including sexual harassment (whether or not the person reporting is also the alleged victim), in person, by mail, by telephone, or by e-mail, using the contact information listed for the District's Title IX Coordinator, or by any other means that results in the Title IX Coordinator receiving the person's verbal or written report. Such reports may be made at any time, including during non-business hours, by using the telephone number or e-mail address, or by mail to the office address listed for the Title IX Coordinator.

Published using Google Docs Report abuse Learn more



the request for an extension of time to file a written complaint. To qualify as a Title IX complaint, the complainant/victim must also be participating in or attempting to participate in the recipient's education program or activity. The length of time elapsed between an incident of alleged sexual harassment, and the filing of a formal complaint, may, in specific circumstances, prevent a recipient from collecting enough evidence to reach a determination, justifying a discretionary dismissal under Title IX.

The District will process all formal complaints in accordance with Title IX and District Board Policy ("BP") and Administrative Regulation ("AR"), BP/AR 5145.7 – Sexual Harassment, and other applicable policies. In certain matters, the involved parties may be offered the option to have their complaint informally resolved. Under Title IX, a formal complaint means a document filed by a victim, or signed by the Title IX Coordinator, that alleges sexual harassment against a respondent and requests that the school district investigates the allegation of sexual harassment. Complaints that do not rise to the level of a Title IX complaint will be processed in accordance with BP/AR 1312.3 – Uniform Complaint Procedures, or in a manner that is otherwise deemed appropriate.

All investigations will be conducted as confidentially as possible. Upon receipt of any formal complaint, the District will provide all known parties with adequate notice of the District's complaint process and the underlying allegations. During the course of the investigation, the District will provide the complainant and respondent (or "the parties") with an equal opportunity to present witnesses and evidence. The District will not restrict the ability of the parties to discuss the allegations under investigation, and it will allow parties to utilize an advisor of their choice. Prior to the conclusion of the investigation, the complainant and respondent will have the opportunity to inspect and respond to evidence directly related to the allegations in the complaint that was gathered during the course of the investigation. Thereafter, and prior to any final decision being made, the parties will receive a copy of the investigation report that fairly summarizes relevant evidence, and they will have an opportunity to submit written, relevant questions to be asked of the other party. Next, a determination regarding responsibility will be made and issued to both parties. Under Title IX and District policy, the responding party is presumed not responsible for the alleged conduct until a determination regarding responsibility is made at the end of the complaint process. Any party not satisfied with the final determination will have the option to appeal the final determination.

Additionally, any complainant who is dissatisfied with the District's determination may file an appeal in writing with the California Department of Education within 30 calendar days of receiving the District's

final written decision. Complaints made by or on behalf of students may also be filed with the U.S. Department of Education, Office of Civil Rights within 180 calendar days of the date of the alleged discrimination, unless the time for filing is extended by the Office of Civil Rights for good cause shown under certain circumstances.

**Student Rights Pursuant to Education Code Section 221.8**

In addition to federal law, the California Education code similarly prohibits schools from discriminating against their students on the basis of sex. Education Code section 221.8 provides as follows:

The following list of rights, which are based on the relevant provisions of the federal regulations implementing Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.), may be used by the department for purposes of Section 221.6:

(a) You have the right to fair and equitable treatment and you shall not be discriminated against based on your sex.

(b) You have the right to be provided with an equitable opportunity to participate in all academic extracurricular activities, including athletics.

(c) You have the right to inquire of the athletic director of your school as to the athletic opportunities offered by the school.

(d) You have the right to apply for athletic scholarships.

(e) You have the right to receive equitable treatment and benefits in the provision of all the following:

1. Equipment and supplies.
2. Scheduling of games and practices.
3. Transportation and daily allowances.
4. Access to tutoring.
5. Coaching.
6. Locker rooms.
7. Practice and competitive facilities.
8. Medical and training facilities and services.
9. Publicity.

(f) You have the right to have access to a gender equity coordinator to answer questions regarding gender equity laws.

(g) You have the right to contact the State Department of Education and the California Interscholastic Federation to access information on gender equity laws.

Published using Google Docs Report abuse Learn more



(j) You have the right to be protected against retaliation if you file a discrimination complaint.

**Additional Resources**

- United States Department of Education Office for Civil Rights: https://www2.ed.gov/about/offices/list/ocr/index.html
- United States Department of Education Office for Civil Rights Complaint: https://www2.ed.gov/about/offices/list/ocr/complaintintro.html
- United States Department of Education Office for Civil Rights Contact Information: 1-800-421- 3481 or ocr@ed.gov
- California Department of Education Office of Equal Opportunity: https://www.cde.ca.gov/re/di/or/oeo.asp
- Link to the District's Office of Educational Equity: https://www.wccusd.net/Page/13203
- Link to Access Board Policy and Administrative Regulation 1312.3 – Uniform Complaint Procedures, Board Policy and Administrative Regulation 5145.3 – Nondiscrimination/Harassment, Board Policy and Administrative Regulation 5145.7 – Sexual Harassment, and other District policies: https://www.wccusd.net/Page/8195

**Training Materials**

Materials used to train Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process, are available upon request and may be found on the District's website at https://www.wccusd.net/cms/lib/CA01001466/Centricity/Domain/1146/Implementing the New Title IX Regulations Training.pdf.

**7.20 CHILDREN IN HOMELESS/FOSTER CARE SITUATIONS, FORMER JUVENILE COURT SCHOOL STUDENTS, MIGRANT STUDENTS, AND NEWCOMERS**

Each local district shall designate a staff person as a liaison for homeless children who shall ensure the dissemination of public notice of the educational rights of students in homeless situations. (Ed. Code, § 48852.5, 42 U.S.C. § 11432(g)(1)(J)(ii))

A district serving a homeless child must allow the child to continue his/her education in the school of origin through the duration of homelessness at the point of any change or any subsequent change in residence once a child becomes a homeless child. If the child's status changes before the end of the academic year so that he/she is not homeless, the district must allow a child in high school to continue his/her education in the school of origin through graduation. For a child in grades K through 8, the district must allow the formerly homeless child to continue his/her education in the school of origin until the end of the academic school year. A homeless child transitioning between school grade levels must be allowed to continue in the school district of origin in the same attendance area. If a homeless child is transitioning to a middle or high school where the school designated for matriculation is in another school district, the homeless child must be allowed to continue to the school designated for matriculation in that school district. The new school is required to enroll the child immediately regardless of any outstanding fees, fines, textbooks or other items or money due to the school last attended or if the child is unable to produce clothing or records normally required for enrollment, including medical records, proof of immunization history, and proof of residency. (Ed. Code, § 48852.7)

Each local district shall also designate a staff person as the educational liaison for foster children. The educational liaison shall disseminate a standardized notice to foster children that has been developed by the State Department of Education and includes complaint process information. (Ed. Code, § 48853.5)

The district serving the foster child shall allow the foster child to continue his/her education in the school of origin under specified circumstances. If it is determined that it is in the best interests of the foster child to transfer to a school other than the school of origin, the foster child shall immediately be enrolled in the new school, regardless of any outstanding fees, fines, textbooks, or other items or moneys owed to the school last attended or if the child is unable to produce clothing or records normally required for enrollment, including immunization history. The last school attended must provide all records to the new school within two business days of receiving the request. (Ed. Code, §§ 48853, 48853.5)

The district receiving a transfer request or notification of a student in homeless/foster care shall, within two business days, transfer the student out of school and deliver the educational information and records to the next educational placement. Grades and credits will be calculated as of the day the student left school and no lowering of grades will occur as a result of the student's absence due to the decision to change placement or for a verified court appearance or related court activity. (Ed. Code, § 49069.5)

Published using Google Docs Report abuse Learn more



student, a migratory child, or a pupil in a newcomer program while attending another school. The district is prohibited from requiring those students to retake courses or partial courses they have satisfactorily completed elsewhere. (Ed. Code, § 51225.2)

A complaint of noncompliance alleging violations of these sections, except for Education Code section 48852.7, may be filed under the District's Uniform Complaint Procedures and Title 5 of the California Code of Regulations.

**7.21 COMPLAINTS (SPECIAL EDUCATION)**

Parents may file a complaint concerning violations of federal or state law or regulations governing special education related services. Parents may submit a description of the manner in which the parent believes special education programs for students with disabilities do not comply with state or federal law or regulations to:

Guthrie Fleischman, SELPA Director
3000 Parker Road
Richmond, CA 94806
(510) 307-4633

**7.22 CONTINUED EDUCATION OPTIONS FOR JUVENILE COURT SCHOOL STUDENTS**

A Juvenile court school student, or the person holding the right to make educational decisions for the student, may voluntarily defer or decline issuance of their diploma until after the student is released from the juvenile detention facility, thereby allowing the student to take additional coursework at a local education agency. The county office of education will notify the student, the person holding to right to make educational decisions for the student, and the student's social worker or probation officer of all of the following:

a) The student's right to a diploma;
b) How taking coursework and meeting other educational requirements will affect the student's ability to gain admission to a post-secondary educational institution;
c) Information about transfer opportunities available through the California Community Colleges; and
d) The option to defer or decline the diploma and take additional coursework. (Ed. Code, §§ 48645.3(a), 48645.7)

**7.23 FLYER DISTRIBUTION**

The West Contra Costa Unified School District expects the primary focus of each school to be at all times the academic program of that school. Accordingly, it expects time at school to be devoted to teaching and learning and intends to protect this time from unnecessary disruptions. At the same time, the school district recognizes that because of its obligation to serve the community and the school district's respect for the valuable work that external organizations contribute toward preparing young people to be successful and satisfied citizens, the district should assist those agencies in making students and parents aware of additional opportunities for growth and development. The following is an overview of the procedures for distributing/posting flyers within our district establishments.

The District will approve electronic flyers from Community Groups and Outside Organizations that meet the following requirements:

- They publicize services, special events, public meetings, or other gatherings of interest to students or parents/guardians offered by community-based, non-profit organizations.
- Information shared is reasonably related to the District's educational mission and offers learning or enrichment opportunities for children, families and/or staff.
- Bear the name and contact information of the sponsoring entity.
- Include the following disclaimer stating that the distribution, posting, or publishing of the materials does not imply district endorsement of the group's activities, products, or services. "This event/activity/program (choose one) is not sponsored by WCCUSD. Approval to distribute flyers is a community service rather than an endorsement."

Prior to the distribution, the District will review the materials and may impose content-based restrictions in order to minimize chances of abuse, the appearance of favoritism and the risk of imposing upon a captive audience.

The District will not accept for distribution, or allow on school property, any materials or advertisements that:

- Are lewd, obscene, libelous, or slanderous
- Incite students to commit unlawful acts, violate school rules, or disrupt the orderly operation of the schools

Published using Google Docs Report abuse Learn more



- Discriminate against, attack, or denigrate any group on account of any unlawful consideration
- Promote the use or sale of materials or services that are illegal or inconsistent with school objectives, including, but not limited to, materials or advertisements for tobacco, intoxicants, and movies or products unsuitable for children
- Promote during the school day any food or beverage that does not comply with state nutritional standards pursuant to Education Code 49430-49434.
- Solicit funds or services for an organization, with the exception of solicitations authorized in Board policy
- Distribute unsolicited merchandise for which an ensuing payment is requested
- Require the use of District/school resources beyond the use of Peachjar platform to assist in the printing, posting, or promotion of non-school material.

The District may also consider the educational value of the materials or advertisements, the age or maturity of the students in the intended audience, and whether the materials or advertisements support the basic educational mission of the district, directly benefit the students, or are of intrinsic value to the students or their parents/guardians.

Each school site Principal or designee shall decide whether it wishes to distribute/post to its students **district approved** flyers submitted by external organizations. If a school elects to distribute/post flyers from external organizations, the external organization must abide by the rules, procedures and schedules established by the site administration in accordance with the rules set forth in the Rules for Distribution/Posting of Flyers at WCCUSD Schools. If a school elects not to distribute/post flyers from external organizations, it must be consistent and fair in its consideration.

### 7.24 INSPECTION OF STUDENT RECORDS

State law requires that the District notify you of the following rights pertaining to student records. [Ed. Code § 49063]

a. A parent or guardian has the right to inspect and review student records relating directly to their child during school hours or obtain a copy of such records within five (5) business days of his/her request.
b. Any parent who wishes to review the types of student records and information contained therein may do so by contacting the principal at his/her child's school. The principal of each school is ultimately responsible for maintenance of student records.
c. A parent with legal custody has a right to challenge information contained in his/her child's records. Any determination to expunge a student's record is made after a review of said record(s) by site administrators and certificated staff. Following an inspection and review of student records, the parent may challenge the content of the student's record. The right to challenge becomes the sole right of the student when the student becomes eighteen (18) years of age.

A parent may file a written request with the Superintendent of the District to remove any information recorded in the written records concerning the child which is alleged to be:

1. Inaccurate
2. An unsubstantiated personal conclusion or inference
3. A conclusion or inference outside of the observer's area of competence
4. Not based on the personal observation of a named person with the time and place of the observation noted.
5. Misleading
6. In violation of the privacy or other rights of the pupil.

Within thirty (30) days, the Superintendent shall meet with the parent/guardian and the certificated employee, who recorded the information, if any, and if the person is still employed with the District, to sustain or deny the allegations. If the allegations are sustained, the Superintendent shall order the correction, removal or destruction of the information. If the Superintendent denies the allegations, the parent may appeal the decision to the Governing Board within thirty (30) days. The Board shall determine whether to sustain or deny the allegations. If the Board sustains the allegation, it shall order the Superintendent immediately to correct, remove or destroy the information from the written records of the student.

If the final decision of the Board is unfavorable to the parents, or if the parent accepts an unfavorable decision by the District Superintendent, the parent shall have the right to submit a written statement of objections to the information. This statement shall become a part of the student's school record until the time that the information objected to is removed.

Both the Superintendent and the Board have the option of appointing a hearing panel in accordance with Education Code sections 49070-49071 to assist in the decision-making. The decision as to whether a hearing panel is to be used shall be

Published using Google Docs Report abuse Learn more



e. School officers or employees having a legitimate educational interest may access student records without first obtaining parental consent. "School officers and employees" are persons employed by the District as an administrator, supervisor, instructor, or support staff member (including health or medical staff and District-employed law enforcement personnel) a Board member, a person or company with whom the District has contracted to perform a special service (auditor, medical consultant, special education service provider or therapist) or a parent or student serving as an official in performing his or her tasks. A "legitimate educational interest" is one held by a school officer or employee whose duties and responsibilities create a reasonable need for access.

f. Parents and guardians have the right to authorize the release of student records to themselves. Only parents and guardians with legal custody can authorize the release of student records.

g. Parents and guardians will be charged ten cents ($.10) per page for the reproduction of student records.

h. Parents have the right to file a complaint with the U.S. Department of Education for alleged violations of parent rights related to student records.

i. Parents may obtain a copy of the District's complete student records policy by contacting the Director of Student Services.

**7.25 LOCAL CONTROL ACCOUNTABILITY PLAN**

California's Local Control Funding Formula (LCFF) provides base and supplemental / concentration (S&C) funding to school districts. S&C funds are targeted to improve student outcomes for all students - especially for English learners, foster youth, and low income students. The Local Control Accountability Plan (LCAP) shows how these funds will improve student outcomes and performance for all students - especially English learners, low-income students, and foster youth.

The LCAP process relies heavily on input from stakeholders: parents, students, teachers, staff, and community members. Learn how to become involved at www.wccusd.net/lcap.

**7.26 LOST OR DAMAGED PERSONAL PROPERTY**

Parents are advised that the district is not responsible for any personal property of a student that is damaged, lost or stolen. Additionally, the district is not responsible for vandalism to automobiles or bicycles that are stolen or vandalized while parked on school property.

**7.27 PUPIL-FREE STAFF DEVELOPMENT DAY AND MINIMUM DAY SCHEDULE**

A copy of the District's pupil-free staff development day and minimum day schedules is attached for reference. A pupil's parent or guardian will be notified during the school year of any additional minimum days and pupil-free staff development days no later than one month before the actual date. (Ed. Code, §48980(c))

**7.28 NOTIFICATION OF RIGHTS UNDER FERPA**

The Family Educational Rights and Privacy Act (FERPA) affords parents and students over 18 years of age ("eligible students") certain rights with respect to the student's education records. These rights are:

1. The right to inspect and review the student's education records within 45 days of the day the School receives a request for access.

Parents or eligible students should submit to the School principal [or appropriate school official] a written request that identifies the record(s) they wish to inspect. The school official will make arrangements for access and notify the parent or eligible student of the time and place where the records may be inspected.

2. The right to request amendment of the student's education records that the parent or eligible student believes are inaccurate, misleading, or otherwise in violation of the student's privacy rights under FERPA.

Parents or eligible students may ask the School to amend a record that they believe is inaccurate or misleading. They should write to the School principal, clearly identify the part of the record they want changed, and specify why it is inaccurate or misleading.

If the School decides not to amend the record as requested by the parent or eligible student, the School will notify the parent or eligible student of the decision and advise the parent or eligible student of the right to a hearing regarding the request for amendment. Additional information regarding the hearing procedures will be provided to the parent or eligible student when notified of the right to a hearing.

Published using Google Docs Report abuse Learn more



serving on the School Board; a person or company with whom the School has contracted to perform a special task (such as an attorney, auditor, medical consultant, or therapist); or a parent or student serving on an official committee, such as a disciplinary or grievance committee, or assisting another school official in performing his or her tasks.

A school official has a legitimate educational interest if the official needs to review an education record in order to fulfill his or her professional responsibility.

Upon request, the School discloses education records, without prior consent, to officials of another school district in which a student seeks or intends to enroll.

4. The right to file a complaint with the U.S. Department of Education concerning alleged failures by the school to comply with the requirements of FERPA. The name and address of the Office that administers FERPA are:

Family Policy Compliance Office
U.S. Department of Education
400 Maryland Avenue, SW
Washington, DC 20202-5920

The general rule under FERPA is that personally identifiable information (PII) from education records cannot be disclosed without written consent. However, FERPA includes several exceptions that permit the disclosure of PII from education records without consent. Two of these exceptions are discussed in this document: the studies exception and the audit or evaluation exception. The two exceptions contain specific, and slightly different, requirements, described more fully in the implementing regulations (34 CFR Part 99).

***What is the purpose of this document?***

The audience for this document includes schools, school districts (also referred to as local educational agencies (LEAs)), postsecondary institutions, and State educational authorities (such as State educational agencies (SEAs)) that may disclose PII from education records. Our intent is to provide these entities with information about requirements and best practices for data disclosures under the studies exception and the audit or evaluation exception.

***What is the Studies Exception?*** *(see 20 U.S.C. §1232g(b)(1)(F) and §99.31(a)(6))*

The studies exception allows for the disclosure of PII from education records without consent to organizations conducting studies for, or on behalf of, schools, school districts, or postsecondary institutions. Studies can be for the purpose of developing, validating, or administering predictive tests; administering student aid programs; or improving instruction.

> **Example**: An SEA may disclose PII from education records without consent to an organization for the purpose of conducting a study that compares program outcomes across school districts to further assess what programs provide the best instruction and then duplicate those results in other districts.

What is the Audit or Evaluation Exception? (see 20 U.S.C. 1232g(b)(1)(C), (b)(3), and (b)(5) and §§99.31(a)(3) and 99.35)

The audit or evaluation exception allows for the disclosure of PII from education records without consent to authorized representatives of the Comptroller General of the U.S., the Attorney General, the Secretary of Education, and State or local educational authorities (FERPA-permitted entities). Under this exception, PII from education records must be used to audit or evaluate a Federal- or State-supported education program, or to enforce or comply with Federal legal requirements that relate to those education programs (audit, evaluation, or enforcement or compliance activity). The entity disclosing the PII from education records is specifically required to use reasonable methods to ensure to the greatest extent practicable that its designated authorized representative complies with FERPA and its regulations.

> **Example**: An LEA could designate a university as an authorized representative in order to disclose, without consent, PII from education records on its former students to the university. The university then may disclose, without consent, transcript data on these former students to the LEA to permit the LEA to evaluate how effectively the LEA prepared its students for success in postsecondary education.

The audit or evaluation exception allows for the disclosure of PII from education records without consent to authorized representatives of the Comptroller General of the U.S., the Attorney General, the Secretary of Education, and State or local educational authorities (FERPA-permitted entities). Under this exception, PII from education records must be used to audit or evaluate a Federal- or State-supported education program, or to enforce or comply with Federal legal requirements that relate to those education programs (audit, evaluation, or enforcement or compliance activity). The entity disclosing the PII from education records is specifically required to use reasonable methods to ensure to the greatest extent practicable that its designated authorized representative complies with FERPA and its regulations.

> **Example**: An LEA could designate a university as an authorized representative in order to disclose, without consent, PII from education

Published using Google Docs Report abuse Learn more



Commencing in SY 2022–23, *Education Code* (*EC*) 49501.5 requires public school districts, county offices of education, and charter schools serving students in grades transitional kindergarten through grade 12 (TK–12) to provide two meals free of charge (breakfast and lunch) during each school day to students requesting a meal, regardless of their free or reduced-price meal eligibility.

**7.30 PUPIL FEES**

A pupil enrolled in a public school must not be required to pay a pupil fee for participation in an educational activity. (Ed. Code, § 49011)

a. The following requirements apply to prohibited pupil fees:

   I. All supplies, materials, and equipment needed to participate in educational activities must be provided to pupils free of charge.

   II. A fee waiver policy shall not make a pupil fee permissible.

   III. School districts and schools shall not establish a two-tier educational system by requiring a minimal educational standard and also offering a second, higher educational standard that pupils may only obtain through payment of a fee or purchase of additional supplies that the school district or school does not provide.

   IV. A school district or school shall not offer course credit or privileges related to educational activities in exchange for money or donations of goods or services from a pupil or a pupil's parents or guardians, and a school district or school shall not remove course credit or privileges related to educational activities, or otherwise discriminate against a pupil, because the pupil or the pupil's parents or guardians did not or will not provide money or donations of goods or services to the school district or school.

b. Solicitation of voluntary donations of funds or property and voluntary participation in fundraising activities are not prohibited. School districts, schools, and other entities are not prohibited from providing pupils prizes or other recognition for voluntarily participating in fundraising activities. (Ed. Code, § 49010 et seq.)

A complaint of noncompliance may be filed under the District's Uniform Complaint Procedures and Title 5 of the California Code of Regulations. (Ed. Code, § 49013)

**7.31 RELEASE OF STUDENT INFORMATION**

The District does not release information or educational records concerning pupils to non-educational organizations or individuals without parent, adopted parent or legal guardian consent except by court order, receipt of a lawfully issued subpoena, or when otherwise required by law. The following categories of directory information may be made available to persons, agencies or institutions unless the parent, adopted parent or legal guardian notifies the District in writing not to release such information:

Name, address, telephone, date of birth, email address, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, diplomas and awards received, and most recent previous educational institution attended. (Ed. Code, §§ 49060 et seq., 49073, 20 U.S.C. § 1232g, 34 C.F.R. § 99.7) In accordance with state and federal law, the District may also make available photographs, videos, and class rosters. Directory information will not be released regarding a pupil identified as a homeless child or youth unless a parent, or pupil accorded parental rights, has provided written consent that directory information may be released. (Ed. Code, § 49073(c), 20 U.S.C. § 1232g, 42 U.S.C. § 11434a(2))

**7.32 STUDENT PARENT LACTATION ACCOMMODATIONS**

The District is required to provide reasonable accommodations to a lactating student on a school campus to address breast-feeding needs. (Ed. Code, § 222)

A student may not be penalized academically because of the reasonable accommodations provided during the school day. A student must also be given the opportunity to make up missed work.

A complaint of noncompliance may be filed under the District's Uniform Complaint Procedures and Title 5 of the California Code of Regulations.

The school shall provide reasonable accommodations to any lactating student to express breast milk, breastfeed an infant child, or address other needs related to breastfeeding. A student shall not incur an academic penalty for using any of these reasonable accommodations, and shall be provided the opportunity to make up any work missed due to such use. Reasonable accommodations include, but are not limited to: (Education Code 222)

1. Access to a private and secure room, other than a restroom, to express breast milk or breastfeed an infant child
2. Permission to bring onto a school campus a breast pump and any other equipment used to express breast milk
3. Access to a power source for a breast pump or any other equipment used to express breast milk
4. Access to a place to store expressed breast milk safely
5. A reasonable amount of time to accommodate the student's need to express breast milk or breastfeed an infant child.

Please refer to Board Policy 5146: Married/Pregnant/Parenting Students, for additional information.

### 7.33 TEMPORARY DISABILITY

**Temporary Disability:** Students temporarily disabled by accident or by physical, mental or emotional illness may receive individual instruction at home or in a hospital or residential health facility within the district. Home or hospital instruction may be provided for students who must be hospitalized or remain at home due to a temporary but extended illness or disability. The goal of home or hospital instruction is maintenance of the student's former level of performance while recovering. It is the responsibility of the student's parent or guardian to notify the school district in which the student resides of the student's need for home or hospital instruction and to provide all required documentation.

**Home Hospital Instruction:** The district in which the student resides is to provide individual instruction if the student is receiving the instruction in his or her home. Individual instruction in a pupil's home pursuant to section 48206.3 shall commence no later than five working days after a school district has determined that the pupil shall receive this instruction.

**Hospital or Health Facility Instruction**: The school district in which the hospital or other residential health facility, excluding a state hospital, is located must provide individual instruction to a student with a temporary disability. Within five working days of receipt of the notification, the district must determine whether the pupil will be able to receive individual instruction, and, if so, when the individual instruction will begin ( a doctor's note/health care plan is needed to determine the length of individual instruction will begin and end). A student with a temporary disability who is in a hospital or other residential health facility, other than a state hospital, which is located outside the student's school district of residence shall be deemed to comply with the residency requirements of the school district in which the hospital is located. A school district may continue to enroll a pupil with a temporary disability who is receiving individual instruction in a hospital or residential health facility to facilitate the timely reentry of the pupil after the hospitalization has ended, or in order to provide a partial week of instruction. On days in which the student is not receiving individual instruction in a hospital or other residential health facility, he or she may attend school in his or her district of residence if well enough to do so. A pupil receiving individual instruction who is well enough to return to a school shall be allowed to return to the school, including a charter school, that he or she attended immediately before receiving individual instruction, if returning during the same school year. (Ed. Code, §§ 48206.3, 48207, 48207.3, 48207.5, 48208, 48980(b))

Pregnancy, childbirth, false pregnancy, termination of pregnancy, and recovery therefrom shall be treated in the same manner and under the same policies as any other temporary disabling condition. (Ed. Code, § 221.51)

### 7.34 BECOME A VOLUNTEER

***Where do I start?***

Parent volunteers (parents/legal guardians) and community members (non-parents) who wish to volunteer at any WCCUSD schools:

1. **Visit a school site or district front office** to complete a volunteer application and scan any of the following identifications:

Published using Google Docs Report abuse Learn more



## 8.DISTRICT FORMS

### 8.1 ANNUAL NOTIFICATION KNOW YOUR EDUCATIONAL RIGHTS

**WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT**
1108 Bissell Avenue, Richmond CA 94801 • (510) 231-1100 • www.wccusd.net

## ANNUAL NOTIFICATION KNOW YOUR EDUCATIONAL RIGHTS 2024-2025

### Addendum to Board Policy 5145.13

**For students, employees, parents/guardians, school and district advisory committee members, private school officials, and other interested parties**

The West Contra Costa Unified School District annually notifies our students, employees, parents or guardians of its students, the district advisory committee, school advisory committees, appropriate private school officials, and other interested parties of the know your educational rights process.

### Know Your Educational Rights

**Your Child has the Right to a Free Public Education**

- All children in the United States have a Constitutional right to equal access to free public education, regardless of immigration status and regardless of the immigration status of the students' parents or guardians.
- In California:
  - All children have the right to a free public education.
  - All children ages 6 to 18 years must be enrolled in school.
  - All students and staff have the right to attend safe, secure, and peaceful schools.
  - All students have a right to be in a public school learning environment free from discrimination, harassment, bullying, violence, and intimidation.
  - All students have equal opportunity to participate in any program or activity offered by the school, and cannot be discriminated against based on their race, nationality, gender, religion, or immigration status, among other characteristics.

**Information Required for School Enrollment**

- When enrolling a child, schools must accept a variety of documents from the student's parent or guardian to demonstrate proof of child's age or residency.
- You never have to provide information about citizenship/immigration status to have your child enrolled in school. Also, you never have to provide a Social Security number to have your child enrolled in school.

**Confidentiality of Personal Information**

- Federal and state laws protect student education records and personal information. These laws generally require that schools get written consent from parents or guardians before releasing student information, unless the release of information is for educational purposes, is already public, or is in response to a court order or subpoena.
- Some schools collect and provide publicly basic student "directory information." If they do, then each year, your child's school district must provide parents/guardians with written notice of the school's directory information policy, and let you know of your option to refuse release of your child's information in the directory.

Published using Google Docs Report abuse Learn more



Petition for Appointment of Temporary Guardian of the Person, which may enable a trusted adult the authority to make educational and medical decisions for your child.

**Right to File a Complaint**

- Your child has the right to report a hate crime or file a complaint to the school district if he or she is discriminated against, harassed, intimidated, or bullied on the basis of his or her actual or perceived nationality, ethnicity, or immigration status.

Please return the bottom portion of this form with a signature, to your child's school.

✂ ----------------------------------------------------------------------------------------------------------------------------------------------------------------

________________________________________ ________________________________

Parent Signature Date

KYR Annual Notice 07/2022

JE:mv OEE revised 07/24

The West Contra Costa Unified School District does not store Social Security Numbers or Immigration Status.

The West Contra Costa Unified School District stores Country / State of Birth when that is provided by the family during enrollment.

Information Stored on our Student Information System:

Addresses (home and mailing)
Parent/Guardians contacts
Phones
Federal Ethnicity and Race
Gender
Foster Program
Homeless Program
Armed Forces Family Member
Email addresses
Emergency contacts and medical info
Health (immunizations etc.)
Attendance
Enrollment
Grades
Graduation Progress
Incidents
Educational Setting & Programs
Career Technical Education Pathway
Workplace Education

The Governing Board recognizes the importance of maintaining the confidentiality of directory information and therefore authorizes the release of such information only in accordance with law, Board policy, and administrative regulation. The Superintendent or designee may release student directory information to representatives of the news media or nonprofit organizations in accordance with Board policy and administrative regulation.

The Superintendent or designee may limit or deny the release of specific categories of directory information to any public or private nonprofit organization based on his/her determination of the best interests of district students. (Education Code 49073)

Colleges and prospective employers, including military recruiters, shall have access to directory information. Military recruiters shall have access to a student's name, address, and telephone number, unless the parent/guardian has specified that the information not be released in accordance with law and administrative regulation. (20 USC 7908; 10 USC 503; Education Code 49603) Under no circumstances shall directory information be disclosed to a private profit-making entity, except for representatives of the news media and prospective employers, in accordance with Board policy. Private schools and colleges may be given the names and addresses of 12th-grade students and students who are no longer enrolled provided that they use this information only for purposes directly related to the institution's academic or professional goals. (Education Code 49073)

The directory information does not include citizenship status, immigration status, place of birth, or any other information indicating national origin and the district will not release such information without parental consent or a court order.
The District will not release information to third parties for immigration enforcement purposes, except as required by law or court order. Unless the District

Published using Google Docs Report abuse Learn more



1. The categories of information that the District has classified as public directory information that may be disclosed without parental consent and which should only include the information specifically identified in Education Code section 49061, subdivision (c).
2. A statement that directory information does not include citizenship status, immigration status, place of birth, or any other information indicating national origin (except where the district receives consent as required under state law).
3. The recipients of the directory information.
4. Parents or guardians may refuse the release of the student's directory information by making such a request to the principal or the District office. Forms will be available for this purpose.
5. The deadline to notify the school in writing that he or she does not want the information designated as directory information to be released is October 1st of each school year.

District personnel must receive consent from the student's parent or guardian before a student can be interviewed or searched by any officer seeking to enforce the civil immigration laws at the school, unless the officer presents a valid, effective warrant signed by a judge, or presents a valid, effective court order.

District personnel shall immediately notify the student's parents or guardians if a law-enforcement officer requests or gains access to a student for immigration-enforcement purposes, unless such access was in compliance with a judicial warrant or subpoena that restricts the disclosure of the information to the parent or guardian.

KYR Annual Notice 07/2022

JE:mv OEE revised 07/24

**8.2 ANTI-HARASSMENT STATEMENT**

**WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT**

1108 Bissell Avenue | Richmond, CA 94801-3135
Office: (510) 231-1101 | Fax: (510) 236-6784
www.wccusd.net

**Kenneth C. Hurst Sr., Ed.D**
Superintendent

**West Contra Costa School District – *Anti-Harassment Statement***

The West Contra Costa School District is committed to providing a safe educational environment and positive school climate to all students. In our schools, all students have the right to be educated in a positive and safe environment that is free from sexual harassment and gender-based harassment.

To put it simply, sexual harassment and gender-based harassment will not be tolerated in our District.

Any student who believes they have been a victim of sexual or gender-based harassment is strongly encouraged to immediately report the harassment to Jose Espinoza, Director, Office of Educational Equity | Title IX Coordinator | Equity Compliance Officer. He can be reached by telephone at (510) 307-7861, and by email at jespinoza2@wccusd.net or in person at 1108 Bissell Avenue, Richmond, CA 94801. Students, parents, and staff can also talk to a teacher or administrator at their school, who will immediately report the complaint to Mr. Espinoza.

The District will promptly investigate all reports of sexual and gender-based harassment. When the District has determined that harassment has occurred, we will take prompt, appropriate action to end the harassment, prevent its recurrence, and address its effects on the victim and the school community.

Any student who engages in sexual or gender-based harassment of anyone at school or at a school-sponsored or school-related program or activity will receive interventions and may be subject to disciplinary action. Examples of interventions include counseling, guidance, education about the impact of harassment, positive behavior support, referral to a student success team, transfer to alternative programs, and denial of participation in extracurricular or

Published using Google Docs Report abuse Learn more



the back of this page and have a family discussion that sets clear limits and consequences around this unacceptable behavior.

By working together - students, parents, and staff- we can prevent sexual and gender-based harassment.

Sincerely,

Kenneth C. Hurst Sr., Ed.D., Superintendent

**Definition of Sexual Harassment**. Sexual harassment is unwelcome conduct of a sexual nature. Examples of conduct that may constitute sexual harassment, if unwelcome, include:

1. Suggestive or obscene letters, notes, invitations, graffiti, jokes, or comments; slurs; epithets; sexual gestures; and displays of sexually suggestive objects, pictures, or cartoons;
2. Groping, sexual touching, leering, and impeding or blocking movement;
3. Sexual conduct that would be considered criminal activity, including sexual assault and sexual exploitation;
4. Continuing to express sexual interest after being informed that the interest is unwelcome (reciprocal attraction, among peers, is not considered sexual harassment);
5. Threatening to withhold grades earned or deserved or suggesting a scholarship recommendation or college application will be denied, as a condition of receiving sexual favors;
6. Engaging in sexual behavior to control, influence, or affect the educational opportunities, grades, and/or learning environment of a student;
7. Offering favors or educational benefits, such as grades, assessments, assignments, and recommendations in exchange for sexual favors;
8. Inappropriate sexual touching between students that, even if consensual, contributes to a sexually charged environment for other students who witness the behavior;
9. Any sexual conduct or expression of sexual interest by an adult toward a student regardless of reciprocity.

**Definition of Gender-Based Harassment**. Gender-based harassment includes acts of verbal, nonverbal, or physical aggression, intimidation, or hostility that are based on sex, although they are not necessarily sexual in nature. Prohibited conduct includes harassment of a student for their gender identity or gender expression, or for exhibiting what is perceived as a stereotypical characteristic for their sex, or for nonconformance with stereotypical notions of masculinity and femininity. *Gender identity* is a
person's personal sense of gender (e.g., being a boy or a girl), which may or may not be the same as their biological sex at birth. For transgender persons, the sex at birth (i.e., male or female) does not match their own internal sense of their gender identity. Since gender identity is internal, it isn't necessarily visible to others. *Gender expression* is a person's external manifestation of their gender identity. Gender expression is visible to others – it's the way a person expresses their gender identity through clothing, behavior, posture, mannerisms, speech patterns, activities and more. Examples of conduct that may constitute gender-based harassment include:

1. Disparaging remarks made to a student or aggression toward a student because that student displays mannerisms or a style of dress perceived as indicative of the other sex;
2. Hostility toward a student because that student participates in an athletic activity more typically favored by a student of the other sex;
3. Intimidating a student to discourage that student from enrolling in a particular area of study because of his/her gender;
4. Use of gender-specific slurs, whether written or spoken;
5. Taunting a student who wishes to participate in an extracurricular activity because that activity is more typically favored by a student of the other sex.

**8.3 SECONDARY SCHOOL CODE OF CONDUCT**

**WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT**
**SECONDARY SCHOOL CODE OF CONDUCT**

Published using Google Docs Report abuse Learn more



young adults of the future.

To achieve these goals, students must understand their rights and adhere to their responsibilities.

**Student Rights:**

· To be safe. We need to guarantee that students have the best environment conducive to learning.
· To be respected and treated with compassion, courtesy, and dignity regardless of race/ethnic background, gender, age, national origin, religion, physical/mental disability, sexual orientation, family structure, political beliefs, physical appearance, or financial status.
· To hear and be heard; to express opinions, ideas, and feelings without infringing on the rights of others. Communication is essential to support learning, teaching, working, and participating.
· To have their property respected.
· To have privacy.
· To be informed about what is expected of them.
· To have fun and enjoy their high school years.

**Student Responsibilities:**

· To take advantage of the academic opportunities offered and to strive for high achievement.
· To follow district and school rules and to demonstrate knowledge of all student rights and responsibilities delineated in this and related school documents, and the secondary District Basic Commitment Program.
· To attend school regularly and be in class, in my seat or assigned station with materials out, and ready to work when the tardy bell rings.
· To be considerate, respectful, and non-disruptive in classrooms, hallways, study areas, libraries, cafeteria, and public transportation.
· To respect private, school, and district property, i.e. no littering, no graffiti, no stealing, no extortion, etc.
· To wear safety IDs around the neck, visible at all times, while on campus, and to refrain from altering the safety IDs and lanyards.
· To refrain from using electronic devices including CD players, cell phones, games, etc., at school, except before and after school and during lunch. And to comply with the WCCUSD rule that the use of electronic equipment during class time and passing times is strictly prohibited.
· To dress according to the dress code defined in the school planner and Secondary District Basic Commitment Program. This means no garments exposing the torso; no strapless tube tops; no vests without shirts; no short shorts or short skirts; no garments with obscene or inappropriate words or pictures; no hats or other head coverings; no gang affiliated or related clothing; no see-through blouses or shirts; no low-cut dresses; no sunglasses in class unless prescribed, etc.
· To stay off every school campus, other than my own, unless I have explicit written permission from my principal or my principal's designee.
· To understand and accept that the following are not tolerated on campus:

1. Sexual harassment of any individual.
2. Committing an obscene act or engaging in profanity or vulgarity
3. Alcohol, tobacco, and other drugs.
4. Weapons or other dangerous items.
5. Fighting (which is a cause for expulsion), as well as encouraging or instigating a disruption or fight; spreading harmful rumors or falsehoods that result in a student conflict; leaving class or campus to watch a disruption; or refusing to respond to requests to leave the scene of a conflict.

**Parent/Guardian Responsibilities:**

· To support all students in reaching their full potential by making sure they are in school daily and completing all required homework on time.
· To ensure that students understand their rights and their responsibilities—including students being in class every day and being on time
· To help the school promote the basic values listed above, and to provide the students with what they need to succeed.
· To protect and nurture all students demonstrating the true meaning of community spirit.

Students who do not fulfill the responsibilities listed above will be subject to disciplinary action.

________________________ ________________________________ __________
Student Name (Please print clearly) Date Parent/Guardian Name (Please print clearly) Date

________________________ ____ _____________________________________ __________
Student Signature Date Parent/Guardian Signature Date

**This form must be signed and returned to your child's school.**

Published using Google Docs Report abuse Learn more



school Grade Point Average (GPA) to the California Student Aid Commission by October 1 for all graduating seniors, unless the student or parent has opted out. California Education Code section 69432.9 requires the school district or charter school, to notify all grade 11 pupils and their parent/guardian (if under the age of 18), in writing and no later than January 1 of a pupil's grade 11 academic year, that the pupil will be deemed a Cal Grant applicant unless the pupil has opted out prior to the date below (as specified by the high school). Students who do not opt out will have their GPA submitted to the Commission to be considered for a Cal Grant award.

If you **do not** want your school to report a GPA, please complete this form and **return it to your high school counselor** by ☐☐ ☐☐ ☐☐☐☐

GPAs will be submitted to the Commission starting ☐☐ ☐☐ ☐☐☐☐

## STUDENT INFORMATION

1. Please print your LAST NAME

2. Please print your FIRST NAME and MIDDLE INITIAL

3. Please print your MAILING ADDRESS

   Number and Street

   City State ZIP

4. Please print your DATE OF BIRTH (MM DD YYYY

5. Please print your EMAIL ADDRESS

By signing this form, I am electing **not** to have my school report my high school Cal Grant GPA information to the California Student Aid Commission for use in the Cal Grant application process.

**Student Signature** **Student Phone Number** **Date**

The student named on this form is under the age of 18. I am the parent or legal guardian of the above named minor, and I **do not** authorize the release of his/her high school GPA information to the California Student Aid Commission for use in the Cal Grant application process.

**Parent/Legal Guardian Signature** **Parent Phone Number** **Date**

**Print Parent Name** **Parent email address**

Please visit www.csac.ca.gov/post/privacy-policy for the California Student Aid Commission's privacy statement.

GPA OPT-OUT | February 2019

### 8.5 CONCUSSION INFORMATION SHEET

## WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT
## CONCUSSION INFORMATION SHEET

Page 1

A concussion is a brain injury and all brain injuries are serious. They are caused by a bump, blow, or jolt to the head, or by a blow to another part of the body with the force transmitted to the head. They can range from mild to severe and can disrupt the way the brain normally works. Even though most concussions are mild, **all concussions are potentially serious and may result in complications including prolonged brain damage and death if not recognized and managed properly.** In other words, even a "ding" or a bump on the head can be serious. You can't see a concussion and most sports concussions occur without loss of consciousness. Signs and symptoms of concussion may show up right after the injury or can take hours or days to fully appear. If your child reports any symptoms of concussion, or if you notice the symptoms or signs of concussion yourself, seek medical attention right away.

**Symptoms may include one or more of the following:**

| | |
|---|---|
| · Headaches<br>· "Pressure in head "Nausea or vomiting<br>· Neck pain<br>· Balance problems or dizziness<br>· Blurred, double, or fuzzy vision<br>· Sensitivity to light or noise<br>· Feeling sluggish or slowed down | · Amnesia<br>· "Don't feel right"<br>· Fatigue or low energy<br>· Sadness<br>· Nervousness or anxiety<br>· Irritability<br>· More emotional<br>· Confusion |

Published using Google Docs Report abuse Learn more



| | |
|---|---|
| · Appears dazed<br>· Vacant facial expression<br>· Confused about assignment<br>· Forgets plays<br>· Is unsure of game, score, or opponent<br>· Moves clumsily or displays incoordination<br>· Answers questions slowly | · Slurred speech<br>· Shows behavior or personality changes<br>· Can't recall events prior to hit<br>· Can't recall events after hit<br>· Seizures or convulsions<br>· Any change in typical behavior or personality<br>· Loses consciousness |

**WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT**
**CONCUSSION INFORMATION SHEET**
Page 2

**What can happen if my child keeps on playing with a concussion or returns too soon?**

Athletes with the signs and symptoms of concussion should be removed from play immediately. Continuing to play with the signs and symptoms of a concussion leaves the young athlete especially vulnerable to greater injury. There is an increased risk of significant damage from a concussion for a period of time after that concussion occurs, particularly if the athlete suffers another concussion before completely recovering from the first one. This can lead to prolonged recovery, or even to severe brain swelling (second impact syndrome) with devastating and even fatal consequences. It is well known that adolescent or teenage athletes will often under report symptoms of injuries. And concussions are no different. As a result, education of administrators, coaches, parents and students is the key for student-athlete's safety.

**If you think your child has suffered a concussion**

Any athlete even suspected of suffering a concussion should be removed from the game or practice immediately. No athlete may return to activity after an apparent head injury or concussion, regardless of how mild it seems or how quickly symptoms clear, without medical clearance. Close observation of the athlete should continue for several hours. The new CIF Bylaw 313 now requires implementation of long and well-established return to play concussion guidelines that have been recommended for several years:

> "A student-athlete who is suspected of sustaining a concussion or head injury in a practice or game shall be removed from competition at that time and for the remainder of the day."

Published using Google Docs Report abuse Learn more



concussion. Remember it's better to miss one game than miss the whole season. And when in doubt, the athlete sits out.

-

For current and up-to-date information on concussions you can go to: http://www.cdc.gov/headsup/youthsports/index.html

______________________________ ______________________________ ______________________

Student-athlete Name Printed Student-athlete Signature Date

______________________________ ______________________________ ______________________

Parent or Legal Guardian Printed Parent or Legal Guardian Signature Date

**8.6 EXTRA-CURRICULAR**

**West Contra Costa Unified School District**

**SIGNATURE FORM FOR STUDENTS' PARTICIPATING IN EXTRA-CURRICULAR AND CO-CURRICULAR ACTIVITIES**

______________________________________________________________________

**Name of Student (PLEASE PRINT)**

THE WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT IS CONCERNED FOR YOUR WELL-BEING. IN ORDER FOR THE SCHOOL TO KNOW THAT YOU AND YOUR PARENT/GUARDIAN ARE AWARE OF THE DRUG, ALCOHOL AND TOBACCO DISCIPLINE POLICY/STUDENT CODE OF BEHAVIOR AND UNDERSTAND THE GOALS OF ASSISTING STUDENTS AND SETTING CLEAR LIMITS, YOU AND YOUR PARENT/GUARDIAN ARE REQUIRED TO SIGN THIS SIGNATURE FORM. THANK YOU.

I have read the Drug, Alcohol and Tobacco Discipline Policy/Student Code of Behavior, which encourages students to be drug, alcohol and tobacco free. I understand that students in extracurricular and co-curricular activities who violate the Drug and Tobacco Policy will be subject to disciplinary action that will also affect eligibility for performance.

______________________________________________ __________________________

**Student Signature** **Date**

I have read the Drug, Alcohol and Tobacco Discipline Policy/Student Code of Behavior that encourages students to be drug, alcohol and tobacco free. I understand that students in extracurricular and co-curricular activities who violate the Drug, Alcohol and Tobacco Policy will be subject to disciplinary action and will affect their eligibility for performance. I agree to support the Drug, Alcohol and Tobacco Policy and consequences for students.

______________________________________________ __________________________

Parent/Guardian Signature Date

Activity___________________________________________________________________________

Published using Google Docs Report abuse Learn more



**8.7 SECONDARY COMPREHENSIVE SEXUAL HEALTH EDUCATION (CSE)**

WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT
Curriculum, Instruction, and Assessment
1108 Bissell Ave. Room 208
Richmond, CA 94801
Phone No. 510-307-4533

Dear Parent/Guardian:

The California Healthy Youth Act requires that comprehensive sexual health education and HIV prevention education be provided to students at least once in middle school or junior high school and once in high school, starting in grade 7. Middle school students will receive comprehensive sexual health education in 7th/8th grade Science, and high school students will receive it in the 9th/10th grade Biology, or in a class designated by site administration.

Instruction must encourage students to communicate with parents, guardians or other trusted adults about human sexuality. Instruction must be medically accurate, age-appropriate and inclusive of all students. It must include the following:

- Information about HIV and other sexually transmitted infections (STIs), including transmission, FDA approved methods to prevent HIV and STIs, and treatment
- Information that abstinence is the only certain way to prevent unintended pregnancy and HIV and other STIs, and information about the value of delaying sexual activity
- Discussion about social views of HIV and AIDS
- Information about accessing resources for sexual and reproductive health care
- Information about pregnancy, including FDA approved prevention methods, pregnancy outcomes, prenatal care, and the newborn safe surrender law
- Information about sexual orientation and gender, including the harm of negative gender stereotypes
- Information about healthy relationships and avoiding unhealthy behaviors and situations

Parents have the right to view the curriculum at the office of Curriculum, Instruction & Assessment (510-307-4567) or online at www.wccusd.net/science. State law allows you to remove your student from this instruction. **If you do not want your student to participate** in comprehensive sexual health and HIV prevention education, please submit a written note to the principal or vice principal before the delivery of instruction. Any questions regarding your child's participation in the curriculum can be directed to your school administration.

**8.9 CONTRA COSTA HEALTH SERVICES**

Published using Google Docs Report abuse Learn more



CONTRA COSTA HEALTH

2500 Bates Avenue, Suite B | Concord, CA 94520 |
cchealth.org

Continuing in the 2024-25 school year, Contra Costa Health (CCH) will offer a full range of health care services for students at several middle and high schools throughout West Contra Costa Unified School District. These services will include any of the following: healthy teen exams, sports physicals, immunizations (Kennedy only), hearing, vision, confidential services and dental health (services may vary at each school site). A consent for medical services must be signed annually by a parent or guardian before a student can receive medical services by CCH, unless the student is receiving confidential services.

**Who can access these services?**

- West Contra Costa Unified School District students who are covered through Medi-Cal and Contra Costa Health Plan are eligible to receive services.
- Students who are uninsured may receive limited services. We encourage students to apply.
- Those students with Kaiser or other private health insurance will not be eligible for health care services by CCH but may receive assistance with making appointments or contacting their health care provider.
- In addition, all students regardless of insurance are eligible for confidential sensitive services.

**How can a student make an appointment?**

- Stop by the Health Center or CCH Mobile Clinic at the school campus.

We look forward to making this a healthy year for all students.

Sincerely,

K.Cullom

Kimberly Cullom
Director of Public Health Clinics Services CCH School-Based Clinic Program

**8.10A STUDENT TECHNOLOGY ACCEPTABLE USE & INTERNET SAFETY POLICY**

**WCCUSD STUDENT Technology Acceptable Use & Internet Safety Policy**

WCCUSD strongly believes in the educational value of technology and the Internet. In this connected world, students must have access to tools that enable them to effectively communicate, collaborate, and create in order to prepare them to become effective, responsible global citizens.

**Access to Computers** WCCUSD is dedicated to ensuring access to learning for all students.

**District Issued Devices** as with textbooks, Chromebooks are available to all students to be checked out for take-home use. Once checked out, the student will keep the device from year to year. While off campus, content is filtered on the Chromebooks just as it would be if the device were at school.

**Google accounts** are provided for all WCCUSD students allowing them to use the Google suite of tools, including Google Drive, Docs, Classroom, Meet, to foster communication, collaboration and creativity.

- Gmail accounts enabling communication outside of WCCUSD are for students grades 9 to Adult.
- Gmail accounts enabling communications only within WCCUSD are for students in grades 6-9.
- Gmail accounts will not be provided to elementary students.

Students are expected to take proper care of all district-issued devices and report any misuse immediately. In case of theft, please submit a support ticket through the Incident IQ Help Desk. See the Student Device Handbook on the WCCUSD

Published using Google Docs Report abuse Learn more



the computer network may be treated like school lockers. Administrators may review any and all information to maintain system integrity and ensure that students are acting responsibly.

Additionally, all information transmitted on the WCCUSD computer network is filtered through a content filter in accordance with the Children's Internet Protection Act (CIPA). The content filter flags inappropriate content and blocks it from being viewed by the intended recipient.

**Personal Devices** such as, smartphones, tablets and laptops may be connected to the district's wireless network. The wireless network is provided to allow personal devices limited access to educational content available on the Internet. All Internet access is filtered in accordance with the Children's Internet Protection Act (CIPA) as it would be on any district-issued device. Electronic messages and files sent on the district's wireless network may be treated like any other school property. Administrators, staff, or network personnel may review files and messages to maintain system integrity and, if necessary, to ensure that users are acting responsibly.

Personal devices shall be turned off during instructional time. However, a student shall not be prohibited from possessing or using a personal device under any of the following circumstances:

- In the case of an emergency, or in response to a perceived threat of danger.
- When a teacher or administrator grants permission to the student to possess or use a personal device, subject to any reasonable limitation imposed by that teacher or administrator.
- When a licensed physician or surgeon determines that the possession or use is necessary for the student's health and well-being.
- When the possession or use is required by the student's individualized education program or Section 504 plan.

School site specific policies regarding permitted use of personal devices during non-instructional time can be obtained from the school faculty or administration.

**Personal Device liability** WCCUSD and its member schools are not responsible for damage, theft, or loss of personal electronic communication equipment. WCCUSD will not repair or troubleshoot personal devices. Students should not leave personal laptops or devices unattended. Students are fully responsible for the cost of replacement should their electronic device become lost, stolen, or damaged.

**Unauthorized Uses** of district issued devices, or its wireless network includes a person who knowingly or intentionally:

1. Accesses non-educationally related material, applications, websites, or other content;
2. Accesses applications, websites, networks, systems, programs, or devices to circumvent the district's content filter;
3. Accesses network or personally identifiable information without prior permission;
4. Introduces a computer contaminate, such as malware, or assists in providing a means of accessing the district's computer devices, computer system, or computer network to a third party;
5. Accesses any part of a computer system or computer network without the consent of the owner of the computer system or computer network, or without the consent of the owner's licensee.

Unauthorized uses, including but not limited to the above actions, may constitute computer trespass, a Class A misdemeanor, under California Penal Code section 502.

**Consequences** – Any violation of the district's Acceptable Use Policy may result in loss of access to some or all district-issued devices and/or the district's wireless network. Additional disciplinary action may be imposed pursuant to existing policies regarding student conduct. When and where applicable, law enforcement agencies may be involved.

**Internet safety** Teachers will instruct students in the proper use of the Internet and will guide them in digital citizenship. Outside of school, families bear the same responsibility for guiding students in their search for appropriate learning resources. It is a shared responsibility of district staff and parents/guardians to supervise student access to Internet content, and it is the student's responsibility to avoid accessing inappropriate material. Inappropriate content is filtered by WCCUSD's content filter in accordance with the Children's Internet Protection Act (CIPA).

**Student Data Privacy** WCCUSD has a duty to protect the privacy of our students and families when using electronic tools and resources. We take this responsibility seriously and have taken steps to secure the personally identifiable information (PII) both inside and outside our physical network. We take the approach that the information must be secured while it is stored in our servers, transits our network, and by limiting access to the information to staff who have a "need to know" in

Published using Google Docs Report abuse Learn more



- We require contract language that states that these providers comply with FERPA and COPPA rules.
- These contracts can be viewed on the California Student Data Privacy Alliance website

Under the Children's Online Privacy Protection Act (COPPA), third party service providers must provide parental notification and obtain parental consent before collecting personal information from children under the age of 13. The law permits school districts such as ours to consent to the collection of personal information on behalf of all of its students, thereby eliminating the need for individual parental consent given directly to the website operator.

COPPA also provides parents or guardians the right to opt their students aged 13 and younger out of online services. The Federal Educational Records Privacy Act (FERPA) and COPPA provide parents or guardians the right to inspect their student's records, including the PII that is contained in these electronic systems. If you are a parent or guardian of a student in the district, and you have concerns about your student's use of online electronic systems that store PII, we encourage you to speak with your school's principal or teachers to find out why we use the system and to inspect your student's stored work and information.

**Use of Artificial Intelligence**

Artificial Intelligence (AI) is a system of machine learning that is capable of performing complex and original tasks such as problem solving, learning, reasoning, understanding natural language, and recognizing patterns in data. AI has become increasingly prevalent in many areas, including the education sector. The use of AI can, when used appropriately, enhance student learning by improving the efficiency of education, providing new and creative ways to support learning, and encourage independent research, curiosity, critical thinking, and problem solving. AI has the potential to serve as a supplemental tool to support and expand on classroom instruction, facilitate personalized learning opportunities, and increase educational and learning opportunities.

WCCUSD has developed the following guidelines and protocols for the use of AI:

1. Any student use on AI on schoolwork must be cited to as any other source and may not be submitted as the student's original work.
2. Students should not rely on AI tools as a fact-checker to confirm their work or research as AI may not always provide accurate or up-to-date information.
3. Students are prohibited from using any AI system to access, create, or display harmful, deceptive, or inappropriate matter that is threatening, obscene, disruptive, or sexually explicit, or that could be construed as harassment or disparagement of others based on their race/ethnicity, national origin, sex, gender, sexual orientation, age, disability, religion, or political beliefs or interact with the AI in a manner that supports any of the above.
4. Students shall not share confidential information or personally identifiable information with an open AI system of themselves, another student, staff member, or other person. Personally identifiable information includes, but is not limited to, a person's name, address, email address, telephone number, Social Security number, or other similar personally identifiable information.

Unpermitted use of AI may lead to penalties for academic misconduct. Inappropriate use may also result in disciplinary action and/or legal action in accordance with the law and Board Policies.

**Use of Social Media**

Social media is changing the way the education system works. Social media, when used appropriately, has the ability to empower parents, students, and teachers to use new ways of sharing information and preparing for work, life, and citizenship. When used inappropriately, social media can cause a distraction to each student and their peers, can result in harm and violate privacy.

**Cyberbullying** will not be tolerated. Cyberbullying includes, but is not limited to, harassing, denigrating, excluding, tricking, outing, gossiping, impersonating, or cyberstalking. Students may not send emails, post, or share content with the intent of bullying or humiliating anyone online. Engaging in or encouraging these behaviors, or any online activities intended to harm (physically or emotionally) another person, will result in disciplinary action in accordance with the law and Board Policies. In some cases, cyberbullying can be a crime.

A student may be subject to discipline for use of social media, even when used off school grounds, if it poses a threat or danger to the safety of students, staff, or district property or substantially disrupts school activities.

**Student agreements**

We value communication, collaboration, and creativity. We will:

Published using Google Docs
Report abuse Learn more



discussed between our parents and teachers/administrators.

We value privacy. We will:

- keep our login accounts secret from anyone other than our family and teachers.
- not give out any private information - such as full name, date of birth, address, phone number, or audio recordings or photos of ourselves or others - without family permission.
- understand that anything we do online is public and can be monitored.

We value honesty and safety. We will:

- avoid downloading or accessing tools that circumvent the measures taken to protect student data privacy and/or its content filters.
- access, post, submit, publish, and display appropriate, constructive, or educational content.
- represent ourselves honestly both online and offline.
- properly give credit to those whose work we reference in our own projects.
- stop talking to anyone who makes us feel pressured or uncomfortable online, and we will tell our family and/or teacher about it.

We value respect for self and others. We will:

- not bully, cyberbully, humiliate, or upset anyone online – whether through sharing photos, videos, or screenshots; spreading rumors or gossip; encouraging others to do so; or setting up fake profiles – and stand up to those who do.
- use only our own district-issued Google accounts on district-issued devices at all times.
- take proper care of our devices and immediately report misuse or lost devices to adults. As with all school property, vandalism, misuse, unauthorized access, and/or intentional damage will be subject to disciplinary action.
- Respect our devices for what they do and not attempt to install, run, or circumvent software on them.

We value learning. We will:

- use the internet responsibly and primarily for educational purposes.
- carefully evaluate the validity of information presented online.
- bring our devices to school fully charged every day.

In exchange, our school community agrees to:

- recognize that using technology devices and digital media are important components of learning.
- talk with us about our concerns with digital media and technology use.
- talk with us about our interests and embracing our world, including helping us find tools that help us to learn, create, and collaborate.
- Take action to keep us safe online.

**Signatures**

- ❑ STUDENTS: I have read the Acceptable Use Policy and agree to follow these rules and guidelines when using technology. This applies while I am at WCCUSD as well as when I am off campus.

____________________________________________________________

- ❑ PARENT / GUARDIANS: I have read the Acceptable Use Policy and agree to support my child in following these rules and guidelines when using technology. This applies while at WCCUSD as well as when off campus. I understand that WCCUSD encourages parents and guardians to supervise and monitor any online activity.

____________________________________________________________

PARENT/GUARDIAN: If you **DO NOT** want your student to have access to district-provided Internet or devices and learning applications for school, please notify your student's Principal in written form to OPT OUT. This opt out process must take place at the beginning of every school year to remain in effect. **Warning:** Opting your student out of these services will make it more difficult for the school to properly assess your student's academic needs and meet them. Because we believe these tools are essential to a 21st Century learning experience, we encourage you to speak with your principal or teachers before you elect to opt your student out of these tools.

**8.10B STUDENT TECHNOLOGY ACCEPTABLE USE & INTERNET SAFETY POLICY OVERVIEW**

Published using Google Docs Report abuse Learn more



**Access to Technology**
💻District Issued Devices: Chromebooks are available for all students to take home and keep from year to year. Internet content is filtered, both at school and off-campus.
💻Google Accounts: Provided to all students for using tools like Google Drive and Classroom. Email accounts vary by grade level, with limited access for younger students.
💻Personal Devices: Students can connect their devices to the school's network for educational purposes. Personal devices should be turned off during class unless exceptions apply.

**Responsibilities**
💻Device Care: Students must take care of district-issued devices and report misuse. Theft must be reported following the Stolen Device Reporting procedure.
💻Network Use: Information on the district's network is not private and can be reviewed by administrators. Internet content is filtered for inappropriate material.

🦺**Internet Safety**
Teachers will guide students on proper Internet use and digital citizenship. Parents are encouraged to supervise their children's online activities at home.

🔒**Student Data Privacy**
WCCUSD protects student privacy and limits access to personal information. Contracts with third-party service providers ensure compliance with privacy laws.

**Use of AI and Social Media**
💻AI: Students must cite AI sources and avoid using AI for inappropriate purposes or sharing personal information.
💻Social Media: Appropriate use is encouraged, but cyberbullying and harmful activities are prohibited and may result in disciplinary action.

**Student Agreements**
Students commit to:
💻Using appropriate language and behavior online.
💻Protecting their privacy and that of others.
💻Acting honestly and safely online.
💻Respecting themselves, others, and their devices.
💻Using the Internet responsibly for education.

**8.11 MEDIA OPT-OUT FORM**

# Media Opt-out Form

Please sign and return the attached form only if you DO NOT want your child to be photographed or filmed by school or district staff, media outlets or other organizations for use in print, television, film, radio or Internet publications.

Dear Parent or Guardian,

There are times when your child's school may be featured in various media. District staff may wish to photograph, film, record or interview your student for articles or promotional materials that may be featured in district newsletters, social media, websites, printed publications or other forms of media. News reporters, photographers and/or film crews from newspapers, magazines, internet publications or TV and radio stations may wish to photograph, film, record or interview your child in relation to a story about district schools, programs or students. Your child's name, image and grade may be included in the report.

District schools are also visited by community organizations or partners who are providing services to students. These organizations or partners may wish to photograph your child and may want to use the photograph and/or your child's name and the name of the school in their publications and informational materials.

We will make every effort to honor your request, however, please be aware that there may be circumstances when your child may be photographed or

Published using Google Docs Report abuse Learn more



___ I DO NOT want my child to be photographed, filmed, recorded or interviewed by school or district employees, members of the media, organizations or agencies at school, for use in print or Internet publications, documentaries, films or video, to the extent that the school can prevent such contact.

Student Name: ______________________________________
School:_______________________________

Grade: __________________ Teacher: _______________________________________________________

Parent/Guardian Signature:_______________________________________
Date: ______________________

WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT

Communications Department (510) 231-1150

**Office Note: Please file under Media Release Binder**

**8.12 MILITARY PARENT OPT-OUT FORM**

**WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT**
**1108 Bissell Avenue**
**Richmond, CA 94801-3135**
**Phone: 510.231.1140**

Dear Parent/Guardian

Our school may be requested to provide the names, addresses, and telephone numbers of secondary students to military recruiters, colleges, and other groups. **You do not have to participate in this program**

If you do not wish to have your child's name, address, and phone number disclosed to the groups that may request it, check the appropriate box(es) below. ***If you filled out this form as an 11th grader, you MUST fill this form out again if you want your information to remain unavailable to requesting parties.***

**If you do not return this form, the school/district will assume that you authorize us to release the requested information and, therefore, the student's name, address, and phone number may be released.**

**MILITARY ADULT STUDENT CONSENT FORM**
**For**
**RELEASE OF STUDENT NAME, ADDRESS, AND PHONE NUMBER**

☐ DO NOT DISCLOSE my child's contact information without my prior permission.

**or**

☐ DO NOT DISCLOSE my child's name, address, and telephone number to the entities checked below without my prior permission:

☐ US military (Army, Navy, Air Force, Marines, etc.)

☐ Colleges and other educational institutions

☐ Prospective employers

☐ Other Vendors

Published using Google Docs Report abuse Learn more



**8.13 PESTICIDE USE LETTER AND INDIVIDUAL NOTIFICATION REQUEST**

**Facilities and Operations Center**
**1400 Marina Way South**
**Richmond, CA 94804**
**Tel: (510) 620-2188**

Director, Maintenance & Operations

**PESTICIDE USE LETTER AND**
**INDIVIDUAL NOTIFICATION REQUEST**

Dear Parents, Guardians and Staff,

The West Contra Costa Unified School District has adopted a policy to reduce the use of pesticides and herbicides at schools in our district. This policy, called an Integrated Pest Management Policy (IPM), will guide our staff in finding non-chemical, preventative measures to use first in controlling pests, including weeds, at our facilities. Our goal is to protect the health and safety of students and staff and to maintain school buildings and grounds both by controlling pests and by using the safest methods for people and the environment.

While we are working to reduce and eliminate the use of chemical pesticides, including herbicides, we recognize that the district may need to apply these chemicals when all other alternatives have failed. Attached is a list of pesticides and herbicides that the district **may** need to apply. Under the Healthy Schools Act of 2000, California School Districts are required to provide parents and/ or guardians of students with an annual written notification of expected pesticide use on school sites. Additionally, schools will be posted for use of pesticides on a case-by-case basis as the school season progresses. The notification identifies the active ingredient(s) in each product and lists the Internet address ( **http://www.cdpr.ca.gov**) for further information on pesticides and their alternatives.

Besides a general notice, parents, guardians and staff may also request prior notification of individual pesticide applications at school sites. If you would like to receive this notification, please complete the form below and mail it to:

**West Contra Costa Unified School District**
**Attn: Director of Maintenance and Operations**
**1400 Marina Way South**
**Richmond, CA 94804**

If you have any questions, please contact Director of Maintenance and Operations at

(510)778-6035

**WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT**

**REQUEST FOR INDIVIDUAL PESTICIDE APPLICATION NOTIFICATION**

I understand that, upon request, the West Contra Costa Unified School District is required to supply information about individual pesticide applications at least 72 hours before application. I would like to be notified before each pesticide application at the listed site (s) indicated below.

I would prefer to be contacted by (**circle one**) U.S. Mail E-mail Phone

Name of Parent, Guardian, Staff: ____________________________________________

School Site(s): ____________________________________________

Street Address: ______________________ City and Zip Code______________________

E-mail:____________________________________________

Day Phone:______________________ Night Phone:______________________

Published using Google Docs Report abuse Learn more



Director, Maintenance & Operations

## PARENT LETTER REGARDING USE OF PESTICIDE WEED CONTROL

July 1, 2023

Dear Parents,

The District Maintenance Department may be spraying pesticides throughout the District for weed control using:

| Name of Product | Active Ingredient | EPA Registration # | Manufacturer | USE/ Type |
|---|---|---|---|---|
| Burnout Weed Killer | Citric Acid, Clove Oil | Exempt | Bonide | Paved areas, beds & cinder/ non-selective |
| Turflon Ester Ultra | Triclopyr | 62719-566 | Dow AgroSciences | Turf weeds/ Selective broadleaf |
| Weed Slayer | Clove Oil, Molasses Oil | Exempt | Agro Research International LLC | Paved areas, beds & cinder/ non-selective |
| WeedRot Naturally Systemic Weed Killer | Citric Acid - 14% Sodium Lauryl Sulfate-4% | Exempt | WeedRot | Paved areas, beds & cinder/ non-selective |
| Mirimichi Green Pro Weed Control | Ammonium Nonanoate | 8766-90778 | Mirimichi Green | Paved areas, beds & cinder/ non-selective |

The proposed timeline is as follows:
**December 20, 2024 – December 30, 2024- Weeds as needed**
**April 7 – 11, 2025– Weeds and Poison Oak as needed**

24-hour notices will be posted prior to any application.

Sincerely,
Director
Maintenance and Operations

### 8.15 PESTICIDE LIST

**WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT**

**Facilities and Operations Cent**
**1400 Marina Way South**
**Richmond, CA 94801**
**Tel: (510) 620-2188**

## PESTICIDE LIST

Dear Parent, Guardian and Staff,

The Healthy Schools Act of 2000 requires all California School Districts to notify parents, guardians and staff of pesticides, including herbicides, which they **may** expect to apply during the school year. Our goal is to utilize the least toxic materials whenever possible. However, should a situation arise where a least toxic material is not adequate to control a specific
Director, Maintenance & Operations

infestation, the following materials **may** be used at any District site this year. If you have any questions, please contact the Director of Maintenance and Operations for West Contra Costa Unified School District at 510-778-6035.

Listed below are pesticides, including herbicides, which **may** be used during the WCCUSD 2023-2024 school year and will require an annual, written notification of expected use. You can find more information regarding these pesticides and pesticide use reduction at the Department of Pesticide Regulation's website at www.cdpr.ca.gov

| Name of Product | Active Ingredient | EPA Registration # | Manufacturer |
|---|---|---|---|

Published using Google Docs Report abuse Learn more



| | | | |
|---|---|---|---|
| Alpine Flea with IGR | Dinotefuran, Pyripoxyfen, Prallethrin | 499-540-ZA | BASF |
| Gentrol Point Source | Hydroprene | 2724-469-ZA | Wellmark |
| Premise Pro | Imidacloprid | 432-1449-ZA | Bayer |
| Suspend Polyzone | Deltamethrin | 432-1514-AA | Bayer |
| Suspend SC | Deltamethrin | 432-763-ZB | Bayer |
| Termidor SC | Fipronil | 7969-210-AA | Aventis |
| Ditrac All Weather Blox | Diphacinone | 12455-80 | Bell Laboratories |
| MaxForce Ant Gel | Fipronil | 432-1264 | Envu |

**8.16 COMPLAINT CONCERNING DISTRICT PERSONNEL**

**WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT**

## Complaint Concerning District Personnel

**Preliminary steps in AR 1312.1 must be followed prior to submitting this form**

Date:

Last Name: First Name:

Street Address/Apt. #

City: Zip:

Home Phone ( ) Message/Work Phone ( )

Date of Incident:

Location of Incident:

Has the complaint been discussed with the school principal, employee or his/her supervisor?

To whom have you spoken? (Write name(s) in space provided.)

- District Office Staff ________________________________
  Date: _______________
- Principal ________________________________
  Date: _______________
- Assistant Principal ________________________________
  Date: _______________
- Counselor ________________________________
  Date: _______________
- Teacher ________________________________
  Date: _______________
- Supervisor ________________________________
  Date: _______________
- Staff Member ________________________________
  Date: _______________

What was the result of the discussion?

Published using Google Docs Report abuse Learn more



If you desire a remedy or wish the District to take a particular course of action, please specify what you

would like:

___________________________________________

___________________________________________

___________________________________________ ________________________

Signature of Complainant Date submitted

Distribution: Complaint #:

______________________

Superintendent/Designee Date

Received:____________________

Supervisor

Employee

Rev. 8.15.19/rh (BLUE FORM) AR 1312.1 Attached

**8.17 TITLE IX COMPLAINT FORM**

## WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT

### Office of Educational Equity | Title IX
### Title IX Complaint Form

34 C.F.R. Part 106;

Board Policies/Administrative Regulations 4119.11, 4119.12, 5145.7, 5145.71

This form may be used by any District employee, student, or parent/guardian who believes they or their child has been subjected to sexual harassment prohibited under Title IX of the Educational Amendments of 1972 ("Title IX") or by one of the District's Title IX Coordinators to file a formal Title IX complaint and request that the District investigate the underlying allegations of sexual harassment pursuant to Title IX. This form may also be used by non-victims to report issues of potential sexual harassment alleging a violation of Title IX. *This form will be reviewed to determine whether Title IX applies to your concerns.*[1]

Please complete the following Title IX Complaint Form to the best of your ability. If you would like help completing the form, please contact the Office of Educational Equity by phone at (510) 307-7861, or by email at jespinoza2@wccusd.net, or in person at 1108 Bissell Avenue, Richmond, CA 94801.

Sexual Harassment Under Title IX

Section 106.30 of title 34 of the Code of Federal Regulations and the District's Title IX policy (AR 4119.12, 5145.71) define sexual harassment under Title IX as conduct on the basis of sex that satisfies one or more of the following:

1. An employee of the school district conditioning the provision of an aide, benefit, or service of the school district on an individual's participation in unwelcome sexual conduct (*quid pro quo*);

Published using Google Docs Report abuse Learn more



U.S.C. § 12291(a)(30).

---

**I. YOUR CONTACT INFORMATION**

Please provide the following information about yourself:

Name: (first) ______________________________ (last)

____________________________________

Street Address: ____________________________ City:

__________________ State: ____ ZIP: _______

Phone: (____) _____-______ Work | Home | Mobile | Email:

____________________________

-

**II. COMPLAINANT**

Who are you filing this Complaint on Behalf of?

Yourself | Your Child | Another Student | Other (explain):

____________________________

Name of Complainant/Victim (if not yourself): (first)___________________

(last)_____________________ Attending School or

District Work Site:

_____________________________________________________

If a Minor, Name of Parent/Guardian: (first) _______________________

(last)_______________________

DOB: ____/____/______| Grade____ | Phone # of Injured Person:

(_____) _______-_________

---

**III. BASIS OF COMPLAINT** (Check all that apply)

Sex:____

Sexual Orientation:_____

Gender | Gender Identity | Gender Expression:____

---

**IV. PLEASE TELL US WHAT HAPPENED**

Name of Respondent/Accused:

___________________________________________________________

Time/Date(s) of the

Incident:____________________________________________________________

Where the Incident Occurred:

___________________________________________________________

Names of any Potential **Witnesses** and their Relationship to the Complainant: __________________________________

______________________________________

__________________________________

______________________________________

Please describe in as much detail as possible, the incident(s) of sexual harassment and what led to this complaint. Include **what** happened, **when, where, how** it happened, and **who** was there. If you are not the victim of the

Published using Google Docs Report abuse Learn more



______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________

Please **list all individuals involved** in the incident(s) and their relationship to the Complainant:

______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________

**What steps**, if any, have you taken to resolve this issue before filing a complaint?

______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________

If you are the Complainant/Victim of the alleged conduct, are you open to/interested in resolving this complaint through the informal resolution process? Please circle: **YES** or **NO**

By signing this document, I hereby declare and certify that the above-stated information is true to the best of my knowledge. I am also requesting that the District accept this document as a formal Title IX Complaint and that the District move forward and investigate the allegations, detailed above.

**Name** (print): _______________________ **Signature**:

_______________________ **Date**: ____/____/_____

**<u>Submittal Instructions</u>**

Please complete this form and submit it to the District's Title IX Coordinator, in person, by email, or by using the following contact information:

**Jose Espinoza, Director**
**Office of Educational Equity|Title IX Coordinator|Equity Compliance Officer**
**1108 Bissell Avenue, Richmond, CA 94801**

**Phone: (510) 231-1118 • Email:** jespinoza2@wccusd.net

*If this form is received by any other District administrator or employee, it should be promptly forwarded to the Title IX Coordinator.

**<u>What to Expect After Submitting this Form</u>?**

This form will be reviewed by the Title IX Coordinator, who will evaluate whether Title IX, or a separate District policy, regulation, or procedure, is more appropriate to process the complaint.

If the conduct herein triggers Title IX, the Title IX Coordinator, or designee, will reach out to the Complainant/Victim to offer supportive measures and discuss their rights under Title IX.

FOR OFFICE USE ONLY

Received By: _________________________________________ Signature: ______________________________

(Print Name & Title)

Date Filed: _______/______/_________ Time Filed: _____ : _____ AM | PM

[1] *Please note that if the conduct you are reporting does no rise to the level of sexual harassment under Title IX, the District will take steps to appropriately investigate and address your report in accordance with any applicable alternative District policies, regulations, and procedures.*

JE:mv Revised 04/2023

Published using Google Docs Report abuse Learn more



**8.18 UNIFORM COMPLAINT FORM**

## West Contra Unified School District
## Uniform Complaint Form

Date:

Last Name: First Name:

Street Address/Apt. #

City: Zip:

Home Phone: ( ) Message/Work Phone: ( )

School/Office of Alleged Violation:

Please check the category(ies) referred to in your complaint:

_____Adult Education

_____Pre-school

_____Child Nutrition Programs

_____Special Education

_____Migrant Education

_____Foster and Homeless Youth

_____Career and Technical Education

_____Consolidated Categorical Aid Programs

_____Student Fees

_____Physical Educational Instructional Minutes

_____Implementation of Local Control Funding Formula and Accountability Plan

_____Regional Occupation Centers and Programs

Unlawful Discrimination (based on actual or perceived race, ancestry, national origin, immigration status, ethnic group identification, religion, age, gender, gender identity, gender expression, color, sex, sexual orientation, physical or mental disability, or on the basis of a person's association with a person or group with one or more of these actual or perceived characteristics)

**Office Use Only**

Date Received: By:

_____Informal Complaint

_____Formal Complaint

_____Not Resolved

_____Date of Informal Resolution

_____Date of Formal Resolution

Published using Google Docs Report abuse Learn more

24-25 Parent-Student Handbook - English

Updated automatically every 5 minutes