# Exhibit 6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

EMILY CHERKIN, et al.,
Plaintiffs,
vs. No. 3:24-CV-02706-JD
POWERSCHOOL HOLDINGS, INC.,
Defendants.
/

VIDEOTAPED DEPOSITION OF DAVID CONCEPCION

Stenographically Reported by
ANGELA SINCLAIR, CSR No. 13902
RDR, RMR, RPR, CRR, CCRR

August 19, 2025

tracking grades electronically?
A. No.
Q. Do you want your school to stop tracking any other kind of student information electronically?
A. No. And as long as it's kept, like I said before, safe and secure.
Q. Now, as to PowerSchool, as part of this lawsuit do you want PowerSchool to stop making it possible for your school district to provide information to you electronically such as school grades?
A. No.
Q. So you would be okay with PowerSchool continuing to enable your school to collect, store, and otherwise make available to parents basic education records like grades and the like?
A. Either PowerSchool or another company that would provide equally similar services that are safe and secure.
Q. As part of this lawsuit, do you want to stop PowerSchool from making it possible for your district to collect assignments or forms or annual forms or the like?
A. I would say no with the same response as before, as long as it's PowerSchool or another

company that is doing it equally safe and storing information safely and not sharing it.

Q. And so even if PowerSchool is the one that's hosting or holding on to the information from the school, as long as it's holding it for the school, you do not see a problem with that and you're not trying to change that in this case?

A. Correct.

Q. Do you want to force PowerSchool to provide services to your school for free?

A. I don't want to force them, but it would be great for the school district if they could save money on that and give it back to the teachers.

Q. But you do not see anything problematic from your perspective of PowerSchool being paid by your school district for providing a service to your school district?

A. As long as they fix their practices and the school board and the school attorneys deem that this is an adequate product that is properly storing and safely keeping information and not sharing it, that's their responsibility.

Q. So you mentioned that the school district's evaluating and choosing and deciding that the product is properly storing and safely keeping information.

school attorneys, their IT staff, it went through the school board, it went through a formal hearing and the school board approved it.

Is PowerSchool doing anything wrong to you or to L.M.C., to M.M.C., or any other student in providing the services that the school board agreed to accept by that process?

MS. SIEHL: Object to the form.

You can answer.

THE WITNESS: Can you repeat the question?

BY MR. TEMCHENKO:

Q. Yeah. So let me use an example.

Let's say that PowerSchool's collecting of annual forms goes through that same review that you just talked about, that they go through being reviewed by the attorneys at the school, the school board, the school board votes on it, the school board has a hearing on it, and they decide to hire PowerSchool to collect and store and manage all those annual forms for the school district.

Is there anything wrong then in PowerSchool providing that service to the school in your opinion?

MS. SIEHL: Object to the form.

THE WITNESS: As long as PowerSchool is abiding by the regulations and the confines of the

contract that they've submitted and signed and approved by the school board, there shouldn't be.

BY MR. TEMCHENKO:

Q. Okay. And is your -- are your privacy expectations or L.M.C.'s privacy expectations or M.M.C.'s privacy expectations, is there any violation or are they upset if PowerSchool were to provide a service that they went through a contracting process with the school board to provide?

MS. SIEHL: Object to the form.

You can answer.

THE WITNESS: I would have to see what other practices that they reviewed and approved and voted on.

MS. SIEHL: I just got an email. Lunch is ready.

MR. TEMCHENKO: Well, perfect. We can go ahead and just pause right here.

THE WITNESS: Okay.

MS. SIEHL: Okay, great.

THE VIDEOGRAPHER: Do you want to go off the record?

MR. TEMCHENKO: Yeah, let's go off the record and just think about this real quick. I know you got the 1:30.

THE VIDEOGRAPHER: This is the end of Media Number 3. We are going off the record. The time is 12:20 p.m.

(Lunch break taken at 12:20 p.m.)

THE VIDEOGRAPHER: This is the beginning of Media Number 4. We are going back on the record. The time is 12:51 p.m.

BY MR. TEMCHENKO:

Q. Mr. Concepcion, right before the break we started talking about school boards again, and I want to get us back now to talk about the school board for your district, the West Contra Costa Unified School District.

Do you know who is on the school board right now?

A. I only know my school board rep.

Q. And who is your school board rep?

A. Leslie Reckler.

Q. Are they elected officials or are they appointed by somebody?

A. Elected.

Q. So when they're elected officials, is the idea then that they're representing everybody in the school district?

A. Ideally, yes.

Q. What's the role of the school board for the West Contra Costa Unified School District?

A. To generally -- I'm assuming 'cause I haven't looked at their mission. It should be financial oversight, oversight of school district management in general, not day to day but just in general, and ensuring that there is adequate curriculum for schools and that every student has access to equal education. That's part of their constitutional requirement.

Q. When the school board acts on an issue of financial oversight, let's say open a school/close a school, hire teachers, fire teachers, those kinds of big questions, are they acting as your representatives in making those decisions?

A. My school board member should be.

Q. Do they have the authority to bind you to whatever decision they make even if it affects you?

A. Can you rephrase that question?

Q. Yeah. Suppose that they wanted to close Kensington Hilltop Elementary School while your school still attends. Hopefully they won't, but if they did and you have to travel to another school as a result, do they have the authority to do -- to make that decision?

A. Yes. In our school district they do.
Q. And what -- why do they have the authority to do that?
A. It's part of their duties as a school board member to make recommendations to open or close a school wherever they feel it's necessary or if it's performing or not performing.
Q. Do they have to seek the permission of every affected parent before they make those kind of decisions?
A. I don't know if that's part of the requirement in WCCUSD. It is in some districts. I haven't looked into that.
Q. And if it is not part of the requirements to seek permission to make a decision, then would you say that they have the authority to act -- to act on that decision?
A. If it's not part of it, I guess it's an assumption to say yes.
Q. Is there any kind of decision that the West Contra Costa Unified School District board that -- sorry. Let me restart that.
Is there anything that the West Contra Costa Unified School District's not authorized to decide that would affect you or your kids when it comes to

better and more accurate data collection to create better and more accurate data reporting."

Do you see that?

A. Yes.

Q. What do you understand that to mean?

A. What it's trying to say is they will collect information, make processes easier for the people in the IT department.

Q. If that --

A. And it seems like the IT department is removing their responsibility and giving it fully to this company that's going to be collecting this data.

Q. Did the school board have the authority to enter into this contract?

MS. SIEHL: Object to the form. Sorry.

THE WITNESS: I don't --

MS. SIEHL: Calls for legal conclusion.

You can answer.

THE WITNESS: I don't know. I'm not an attorney. I haven't read the contract that you're referring to.

BY MR. TEMCHENKO:

Q. More in general, would the school board have the rights to act on your behalf to hire a vendor for all data storing hosted in this way?

A. They do have that authority, yeah.

Q. And so they would have your -- they have the right to act on your behalf when entering into such deal?

A. No.

MS. SIEHL: Objection. Calls for legal conclusion. Sorry.

THE WITNESS: Sorry.

BY MR. TEMCHENKO:

Q. And so why do you say that they don't have the authority to act on your behalf to enter into such contract?

A. 'Cause I can't give them that authority. That's given to them by the state constitution or the school board constitutional documents.

Q. Okay. So I think I understand. They do have that authority but not because you gave it to them, rather it is the product of the constitutional democracy in which we live?

A. Yes, essentially.

Q. If PowerSchool was -- the only thing that PowerSchool was doing -- and I understand I'm asking you to make an assumption here.

But if the only thing PowerSchool was doing was providing a way for the school to collect

REPORTER'S CERTIFICATE

I, ANGELA SINCLAIR, a Stenographic Certified Shorthand Reporter, holding a valid and current license issued by the State of California, duly authorized to administer oaths, do hereby certify:

That DAVID CONCEPCION, in the foregoing deposition named, was present and by me sworn as a witness in the above-entitled action at the time and place therein specified.

That said deposition was taken before me at said time and place, and was taken down in shorthand by me and was thereafter transcribed into typewriting, and that the foregoing transcript constitutes a full, true and correct report of said deposition and of the proceedings that took place.

The dismantling, unsealing, or unbinding of the original transcript will render the Reporter's Certificate null and void.

Should the signature of the witness not be affixed to the deposition, the witness shall not have availed himself/herself of the opportunity to sign or the signature has been waived.

I further certify that I am neither counsel for nor related to any party in the foregoing deposition and caption named nor in any way interested in the outcome thereof.

That before completion of the proceedings, review of the transcript was NOT requested pursuant to Federal Rule 30(e).

IN WITNESS WHEREOF, I have hereunder subscribed my hand this 3rd day of September 2025.

ANGELA SINCLAIR, CSR No. 13902
RDR, RMR, RPR, CRR, CCRR
State of California