# Exhibit 38

2013 CA A.B. 1584 (NS)
2013 California Assembly Bill No. 1584, California 2013-2014 Regular Session

CALIFORNIA COMMITTEE REPORT

VERSION: General
June 23, 2014
Version Date June 23, 2014
Buchanan (Principal coauthor: Chau).

**TEXT:**
BILL ANALYSIS

SENATE JUDICIARY COMMITTEE Senator Hannah-Beth Jackson, Chair 2013-2014 Regular Session

AB 1584 (Buchanan) As Amended June 3, 2014 Hearing Date: June 24, 2014 Fiscal: No Urgency: No TH

SUBJECT

Pupil records: privacy: third-party contracts: digital storage services and digital educational software

DESCRIPTION

This bill would authorize a local educational agency to enter into a contract with a third party to provide services for the digital storage, management, and retrieval of pupil records, provided the contract includes specific provisions about the use, ownership, and control of the pupil records.

BACKGROUND

According to recent studies, school districts are increasingly turning to technologies such as cloud computing to satisfy their educational objectives. These new technologies often present schools with new opportunities for cost savings, service flexibility, and endurance, allowing schools to deploy on-demand resources to users 24 hours a day. With the adoption of cloud computing services, many schools are transferring large quantities of student information to third-party providers, raising concerns among stakeholders about maintaining student privacy and keeping control over transferred information. A recent nationwide survey examining this trend concluded that: 95 percent of districts rely on cloud services for a diverse range of functions including data mining related to student performance, support for classroom activities, student guidance, data hosting, as well as special services such as cafeteria payments and transportation planning; cloud services are poorly understood, non-transparent, and weakly governed: only 25 percent of districts inform parents (more) of ?

of their use of cloud services, 20 percent of districts fail to have policies governing the use of online services, and a sizeable plurality of districts have rampant gaps in their contract documentation, including missing privacy policies; districts frequently surrender control of student information when using cloud services: fewer than 25 percent of service agreements specify the purpose for disclosures of student information, fewer than 7 percent of the contracts restrict the sale or marketing of student information by vendors, and many agreements allow vendors to change the terms without notice; an overwhelming majority of cloud service contracts do not address parental notice, consent, or access to student information. Some services even require parents to activate accounts and, in the process, consent to privacy policies that may contradict those in a district's agreement with the vendor; and district cloud service agreements generally do not provide for data security and may even allow vendors to retain student information in perpetuity. (Privacy and Cloud Computing in Public Schools (Dec. 2013) (as of June 19, 2014).)

This bill would authorize a local educational agency to enter into a contract with a third party to provide services for the digital storage, management, and retrieval of pupil records, as defined, provided that the contract includes specific provisions about the use, ownership, and control of the pupil records. Specifically, this bill would require such contracts to: state that pupil records continue to be the property of and under the control of the local educational agency; prohibit the third party from using personally identifiable information from pupil records for commercial or advertising purposes; prohibit the third party from using personally identifiable information from pupil records for any purpose other than for the requirements of the contract; describe the procedures by which a parent, legal guardian, or eligible pupil may review a pupil's records and correct erroneous information, and by which notification will be given in the event of an unauthorized disclosure of the records; and certify that a pupil's records shall not be retained or available to the third party upon completion of the terms of the contract.

of ?

This bill would also state that a contract which fails to comply with these provisions shall become voidable and shall require the third party to return all pupil records in its possession to the educational agency.

CHANGES TO EXISTING LAW

Existing law provides that, among other rights, all people have an inalienable right to pursue and obtain privacy. (Cal. Const., art. I, Sec. 1.)

Existing case law permits a person to bring an action in tort for an invasion of privacy and provides that in order to state a claim for violation of the constitutional right to privacy, a plaintiff must establish the following three elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant that constitutes a serious invasion of privacy. (Hill v. National Collegiate Athletic Assn. (1994) 7 Cal.4th 1.) Existing law recognizes four types of activities considered to be an invasion of privacy, giving rise to civil liability including the public disclosure of private facts. (Id.)

Existing federal law requires an operator of an Internet Web site or online service directed to a child, as defined, or an operator of an Internet Web site or online service that has actual knowledge that it is collecting personal information from a child to provide notice of what information is being collected and how that information is being used, and to give the parents of the child the opportunity to refuse to permit the operator's further collection of information from the child. (15 U.S.C. Sec. 6502.)

Existing federal law , the Federal Educational Rights and Privacy Act, restricts a school that receives federal funds from releasing educational records (or personally identifiable information contained therein) of students without the written consent of their parents, as specified. Existing law also gives the parents of students who are or have been in attendance at a school the right to inspect and review the education records of their children. (20 U.S.C. Sec. 1232g.)

This bill would provide that a local educational agency, as defined, may enter into a contract with a third party for either or both of the following purposes: to provide services, including cloud-based services, for the of ?

digital storage, management, and retrieval of pupil records; and to provide digital educational software that authorizes a third-party provider of digital educational software to access and acquire pupil records.

This bill would require a local educational agency that enters into such a contract with a third party to ensure the contract contains: a statement that pupil records continue to be the property of and under the control of the local educational agency; a prohibition against the third party using personally identifiable information in individual pupil records for commercial or advertising purposes; a prohibition against the third party using any information in the pupil record for any purpose other than for the requirements of the contract; a description of the procedures by which a parent, legal guardian, or eligible pupil may review the pupil's records and correct erroneous information; a description of the actions the third party will take, including the designation and training of responsible individuals, to ensure the security of pupil records; a description of the procedures for

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

notifying the affected parent, legal guardian, and eligible pupil in the event of an unauthorized disclosure of the pupil's records; a certification that a pupil's records shall not be retained or available to the third party upon completion of the terms of the contract; a description of how the local educational agency and the third party will jointly ensure compliance with relevant federal law; and a provision stating that a contract that fails to comply with these requirements shall be voidable and all pupil records in possession of the third party shall be returned to the local educational agency.

This bill would define "local educational agency" to mean school districts, county offices of education, and charter schools.

This bill would define "pupil records" to mean both any information directly related to a pupil that is maintained by the local educational agency, and any information acquired directly from the pupil through the use of instructional software or applications assigned to the pupil by a teacher or other local educational agency employee. However, pupil records of ?

would not mean records of teachers and school administrators that are kept in their sole possession and not revealed to any other individual except a substitute teacher.

This bill would state that if its provisions are in conflict with the terms of a contract in effect before January 1, 2015, these provisions shall not apply to the local educational agency or the third party subject to that agreement until the expiration, amendment, or renewal of the agreement.

COMMENT

1. Stated need for the bill

The author writes:

The Federal Educational Rights and Privacy Act (FERPA) does a poor job of protecting student records that are transferred to third parties in electronic form. It is silent on how its provisions should be implemented and its protections ensured. In addition, private companies are beyond the regulatory reach of the U.S. Department of Education, which has the responsibility of enforcing FERPA.

AB 1584 fills this gap by outlining specific actions and specifying certain provisions that third parties must contractually agree to that ensure student privacy. The bill ensures that the protections of FERPA apply when student records are maintained by a school district and are not lost simply because those records have been transferred to a third party in electronic form. It does so by specifying provisions that must be addressed in a contract between a local educational agency and a third party that involves cloud-based, online or other Internet services.

2. Maintaining student privacy

Staff notes that the right to privacy is a fundamental right protected by Section 1 of Article I of the Constitution of California. This bill builds upon that fundamental right by requiring contracts entered into with third party technology providers to include specific terms to help keep student records private and to prevent student records from being used for unauthorized purposes, such as advertising. Aside from requiring privacy protections, this bill also requires these contracts to provide means for parents, legal guardians, and of ?

students themselves (upon reaching 18 years of age) to review pupil records in the possession of third party contractors and to correct erroneous information. The Association of California School Administrators, writing in support, states:

School districts continue to expand their learning platforms in order to personalize learning providing teachers with real-time feedback. The increased collection, storage, and sharing of educational data poses real threats to students and their families. Standard vendor user agreements often come up short with respect to security of student data.

While this bill includes a number of robust privacy protections, it does not require contracts to explicitly state how student privacy will be ensured. To correct this oversight, the author offers the following amendment:

Author's Amendment :

On page 2, line 27, following "security" insert: and confidentiality

3. Scope of definitions

In its current form, this bill defines "pupil records" to mean both any information directly related to a pupil that is maintained by the local educational agency, and any information acquired directly from the pupil through the use of instructional software or applications assigned to the pupil by a teacher or other local educational agency employee. However, the bill specifies that pupil records would not mean records of teachers and school administrators that are kept in their sole possession and not revealed to any other individual except a substitute teacher. The Internet Association, writing in opposition, has expressed concern that this definition is too broad, and may cause confusion for parties entering into educational services contracts. They write:

This [definition] would conceivably include any information generated through the student's use of the educational application or software, whether that information is sensitive - like a student's home address or social security number - or not, like data on a student's user experience with the educational software, including what features improved learning outcomes for the student, what features were less helpful, and other pieces of information that could otherwise of ?

be used by the third party to innovate and improve the educational product. When combined with the other provisions of the bill . . . the inclusion of this expansive "catch all" provision in the definition of "pupil records" will create technological compliance challenges for third party providers, limit their ability to innovate and improve their products, and provide no perceivable benefit to schools, teachers, or students who gain from the use of these educational technologies.

The Technology Association of America similarly suggests that this definition:

[goes] far beyond what is in current law and practice. We believe the new definition would include non-identifiable information as well as "any information acquired directly from the pupil" which could include de-identified metadata which is necessary for the operation and improvement of the software application and would interfere with necessary and legitimate education activities.

The author recognizes that the definition of "pupil records" is crucial to setting the scope of information or data to be covered by this bill should it become law. As such, a balance must be struck between ensuring student privacy and preventing the commodification and sale of student data on one side, and allowing technology companies an appropriate measure of freedom to innovate and operate their products on the other. The author offers the following amendments to more acutely define the breadth of information enveloped by this bill:

Author's Amendments :

On page 2, line 15, following "agency." insert: For purposes of this subparagraph, "pupil records" do not include pupil-generated content. (2) A description of the means by which pupils may retain possession and control of their own pupil-generated content, if any.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

On page 2, strike lines 16 through 18

On page 3, strike lines 27 through 29

On page 3, between lines 35 and 36, insert: (4) "Pupil records" does not mean any of the following:

of ?

(i) De-identified information, including aggregated de-identified information, used by the third party to improve educational products, for adaptive learning purposes, and for customizing student learning; (ii) De-identified information, including aggregated de-identified information, used to demonstrate the effectiveness of the operator's products, including in their marketing; and (iii) De-identified information, including aggregated de-identified information, used for the development and improvement of educational sites, services, or applications.

On page 3, strike lines 36 through 38

On page 4, between lines 3 and 4, insert: (5) "Pupil-generated content" means materials created by a pupil, including, but not limited to, essays, research reports, portfolios, creative writing, music or other audio files, and photographs. (6) "De-identified" means information that cannot be used to identify an individual pupil.

Staff notes that these amendments to the definition of "pupil record" not only refine the scope of information subject to the restrictions in this bill, but also ensure that students do not lose whatever intellectual property interest they may have in their own original works and creations. These amendments also remove "de-identified information" -- data that cannot be linked back to a particular student -- from the scope of pupil records to ensure that technology providers are able to gather "metadata" necessary to ensure the proper operation of instructional software and applications.

4. Consequences for noncompliance

Independent of any other penalties, this bill would provide that a contract that fails to comply with the requirements of this bill shall be voidable and shall require all pupil records in the possession of the third party to be returned to the local educational agency. The bill, however, fails to specify exactly who has the option to void a non-conforming contract. Conceivably, any of the following individuals or entities could have cause to void such a contract under the right scenario: the third party technology provider, the local educational of ?

agency, the parent or guardian of a student as a third party beneficiary, or perhaps even the students themselves. To avoid potential confusion about who may render a nonconforming contract void, the author offers the following amendments to clarify the conditions upon which a contract becomes void for noncompliance with this bill:

Author's Amendments :

On page 3, strike lines 18 through 20

On page 3, between lines 20 and 21, insert: (c) In addition to any other penalties, a contract that fails to comply with the requirements of this section shall be rendered void if, upon notice and a reasonable opportunity to cure, the non-compliant party fails to come into immediate compliance and cure any defect. Notice of non-compliance may be given by any party or intended beneficiary of the contract, and must be in writing. All parties subject to a contract avoided under this subdivision shall immediately return all pupil records in their possession to the local educational agency.

On page 3, line 21, strike "(c)" and insert "(d)"

On page 4, line 4, strike "(d)" and insert "(e)"

Support : Association of California School Administrators; California State PTA

Opposition : Internet Association; Technology Association of America

HISTORY

Source : Author

Related Pending Legislation :

SB 501 (Corbett) would require social networking Web sites to remove the personal information of a registered user, upon request, and permit a parent or legal guardian of a registered user who identifies himself or herself as under 18 years of age to request the social networking Internet Web sites to remove personal identifying information of their children. This bill is in the Assembly Arts, Entertainment, Sports, Tourism, and Internet Media Committee.

of ?

SB 1177 (Steinberg) would prohibit an operator of an Internet Web site, online service, online application, or mobile application designed and marketed for K-12 school purposes from using, sharing, disclosing, or compiling specified information about a K-12 student for any purpose other than the K-12 school purpose or for maintaining, developing, and improving the integrity and effectiveness of the site, service, or application. This bill is in the Assembly Arts, Entertainment, Sports, Tourism, and Internet Media Committee.

AB 1442 (Gatto) would authorize a school district, county office of education, or charter school to adopt a program to gather or maintain personal information from social media on enrolled pupils only if certain specified conditions are met. This bill is set for hearing in the Senate Judiciary Committee.

Prior Legislation :

SB 568 (Steinberg, Ch. 336, Stats. 2013) prohibits an operator of an Internet Web site, online service, online application, or mobile application, from marketing or advertising a product or service to a minor if the minor cannot legally purchase the product or participate in the service in the State of California. This bill also prohibits an operator from using, disclosing, or compiling, or allowing a third party to knowingly use, disclose, or compile, the personal information of a minor for the purpose of marketing goods or services that minors cannot legally purchase or engage in the State of California.

AB 1291 (Lowenthal, 2013) would have created the Right to Know act of 2013, repealing and reorganizing certain provisions of existing law pertaining to the disclosure of a consumer's personal information. This bill died in the Assembly Judiciary Committee.

SB 761 (Lowenthal, 2012) would have required the Attorney General, by July 1, 2012, to adopt regulations that would require online businesses to provide California consumers with a method for the consumer to opt out of the collection or use of his or her information by the business. This bill died in the Senate Appropriations Committee.

SB 242 (Corbett, 2011) would have prohibited a social networking Internet Web site from displaying the home address or telephone number, in specified text fields, of a registered user who identifies himself or herself as under 18 years of age. This of ?

bill failed passage on the Senate floor.

SB 1361 (Corbett, 2010) would have prohibited a social networking Internet Web site, as defined, from displaying, to the public or other registered users, the home address or telephone number of a registered user of that Internet Web site who is under 18 years of age, as provided. This bill failed passage in the Assembly Arts, Entertainment, Sports, Tourism, and Internet Media Committee.

SB 632 (Davis, 2009) would have required a social networking Internet Web site to provide a disclosure to users that an image which is uploaded onto the Web site is capable of being copied, without consent, by persons who view the image, or copied in violation of the privacy policy, terms of use, or other policy of the site. This bill was vetoed.

ACR 106 (Nava, 2008) would have urged user-generated content Web sites to work with the Safety Technical Task Force and law enforcement to reduce the use of those Web sites for purposes of criminal behavior. This resolution died on the Assembly Floor.

Prior Vote :

Senate Education Committee (Ayes 7, Noes 0) Assembly Floor (Ayes 75, Noes 0) Assembly Committee on Education (Ayes 10, Noes 0) Assembly Committee on Judiciary (Ayes 7, Noes 0)

**************

2013 CA A.B. 1584 (NS)

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.