# Exhibit 40

2013 CA A.B. 1584 (NS)
2013 California Assembly Bill No. 1584, California 2013-2014 Regular Session

CALIFORNIA COMMITTEE REPORT

**TITLE: Pupil Records: Privacy: Third Party Contracts**
VERSION: General
April 27, 2014
Version Date April 27, 2014
Buchanan (Principal coauthor: Chau).

**TEXT:**
BILL ANALYSIS

Date of Hearing: April 29, 2014

ASSEMBLY COMMITTEE ON JUDICIARY Bob Wieckowski, Chair AB 1584 (Buchanan) - As Amended: April 22, 2014

PROPOSED CONSENT

SUBJECT : Pupil Records: Privacy: Third Party Contracts

KEY ISSUE : Should contractors that provide schools with digital storage or educational software be contractually prohibited from using student information for purposes unrelated to the contract and required to take reasonable steps to protect the privacy of student information?

SYNOPSIS

This bill seeks to ensure that, when schools contract with third parties to provide digital storage and educational software services, that student privacy is properly protected. According to recent news reports, where schools have entered into agreements with providers of educational software packages, including Google's "Apps for Education" tool suite, the students who use the services have allegedly been the subjects of targeted advertising. The author believes that the growing use of online and cloud-based services for providing educational software and record management "has put student privacy at risk." This bill would authorize schools to enter into such contracts, but only if the contracts require third-party providers to ensure the security of student information and prohibit the third-party from using student information for commercial and advertising purposes, or indeed for any purpose beyond the requirements of the contract. The bill would also require the contracts to contain other protections, including a means by which a parent, guardian, or student could review and correct information, a certification that student information will not be retained by the third party after the student is no longer enrolled in the district, and a description of how the third party and the school will ensure compliance with federal and state privacy and notification laws. Any contract that fails to comply with these requirements will be voidable and any records or information in possession of the third party shall be returned to the school. This bill passed out of the Assembly Education Committee on a 7-0 vote. There is no opposition to this measure.

SUMMARY : Authorizes a local educational agency to enter into a contract with a third party to provide digital record management, so long as the contract prohibits certain uses of the information and ensures the privacy of student records, as specified. Specifically, this bill :

1)Authorizes a local educational entity to enter into a contract with a third party for either or both of the following purposes:

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

a) To provide cloud-based services for the digital storage, management, and retrieval of student records. b) To provide digital educational software that authorizes a third-party provider of digital educational software to access and acquire student records.

1)Requires a local educational agency that enters into a contract for purposes of the above to ensure that the contract contains all of the following:

a) A statement that student records shall continue to be the property and under the control of the local educational agency. b) A prohibition against the third party using information in individual student records for commercial or advertising purposes. c) A prohibition against the third party from using any information in the student record for any purpose other than for the requirements of the contract. d) A description of the procedures by which a parent, legal guardian, or eligible student may review the students records and correct erroneous information. e) A description of the actions the third party will take, including the designation and training of responsible individuals, to ensure security of records; however, compliance with this requirement will not absolve the third-party of liability for unauthorized disclosure of student records. f) The assignment of liability and the procedures for notifying the affected parent, legal guardian, and eligible student in the event of an unauthorized disclosure of student records. g) A certification that a student's records shall not be retained or available to the third party when that student is no longer enrolled in the local educational agency and a description of how that certification will be enforced. h) A description of how the local educational agency and the third party will jointly ensure compliance with federal privacy law.

2)Provides that any contract that fails to comply with the above requirements shall be voidable and student records in possession of the third party shall be returned to the local educational agency.

3)Specifies that if the provisions of this bill conflict with the terms of an agreement in effect before January 1, 2015, the provisions of this bill shall not apply until the expiration, amendment, or renewal of that agreement.

EXISTING LAW :

1)Prohibits a school district from permitting access to student records to any person without written parental consent or pursuant to a judicial order, subject to specified exceptions. (Education Code Section 49076.)

2)Provides, notwithstanding the above, that access to particular records relevant to the legitimate educational interest of the requester shall be permitted to the following:

a) Members of a school attendance review board, and designated school officials and employees, for the purpose of providing follow up services to students referred to the board.

b) Officials or employees of other public schools or school systems for purposes of transfer of enrollment, subject to parental notification, as specified.

c) Other federal, state, and local officials as authorized by federal or state law.

d) A student 16 years of age or older, or who has completed grade 10, and who requests access.

e) A district attorney, judge, or probation officer who is participating in or conducting a truancy mediation program or participating in the presentation of evidence in a truancy petition, as specified.

f) A prosecuting agency for consideration of prosecution against a parent or guardian for failure to comply with compulsory education laws.

g) A probation officer or district attorney for the purposes of conducting a criminal investigation or an investigation in regards to declaring a person a ward of the court, or involving a violation of a condition of probation.

h) A county agency engaged in the placement of foster youth for the purpose of fulfilling case management responsibilities. (Education Code Section 49076 (a) (1)-(11).)

3)Provides that a school district may release information from student records to the following:

a) Appropriate persons in connection with an emergency if the knowledge of the information is necessary to protect the health or safety of a student or other persons.

b) Agencies or organizations in connection with the application of a student for financial aid, as necessary to determine financial aid eligibility.

c) County election officials for the purpose of identifying students eligible to register to vote, as specified.

d) Accrediting associations as necessary to carry out accrediting functions.

e) A contractor or consultant with a legitimate educational interest who has a formal written agreement or contract with the school district regarding the provision of outsourced institutional services or functions by the contractor or consultant.

f) Organizations conducting studies on behalf of educational agencies or institutions, relating to the development, validation, or administration of predictive tests, the administration of student aid programs, or the improvement of instruction.

g) Officials and employees of private schools for purposes of transferring enrollment, subject to parental notification, as specified. (Education Code Section 49076 (b).)

4)Permits a school district to participate in an interagency data information system that permits access to a computerized database within and between government agencies, subject to certain security protections. (Education Code Section 49076 (c).)

5)Notwithstanding the above provisions, a school district shall release information relating to a student's identify and location, as it relates to a student's transfer to another school, to a designated peace officer when a proper police purpose exists for that information. (Education Code Section 49076.5.)

6)Provides, under the federal Family Educational Rights and Privacy Act (FERPA), that no federal funds shall be made available to any educational agency or institution which has a policy or practice of permitting the release of educational records (or personally identifiable information contained therein) of a student without express written parental consent, except as provided. (20 U.S.C. Section 1232g (b); 34 CFR Part 99.)

7)Prohibits, as of January 1, 2015, an operator of an Internet Web site or online service from knowingly using, disclosing, compiling, or allowing a third party to use, disclose, or compile the personal information of a minor for the purpose of marketing specified products that a minor could not legally use or purchase. (Business & Professions Code Section 22580.)

FISCAL EFFECT : As currently in print this bill is keyed non-fiscal.

COMMENTS : Protecting the privacy of a student's educational records and personal information has long been a priority of both federal and state law. The federal Family Educational Rights and Privacy Act (FERPA) protects the privacy of students by prohibiting a person from having access to a student's records without written parental consent, subject to narrow exemptions. FERPA applies to all schools that receive funds from the United States Department of Education (USDE) and prohibits the

disbursement of funds to any school that does not meet FERPA privacy criteria. The California Education Code contains parallel protections that at least meet and, in some ways, exceed the requirements of federal law. FERPA, that is, sets a minimum baseline for student privacy that states must meet in order to continue receiving federal funds. States may enact measures that offer more privacy protection than FERPA without creating a preemption problem.

FERPA and the parallel provisions in the California Education Code focus primarily on student records and the responsibilities of the school or school district to protect those records from unauthorized disclosures; however, these statutes have less to say about the responsibilities of private parties that may gain access to student records when they contract to perform some service that would otherwise be performed by the school. Indeed, California law expressly permits a school to release information to a "contractor or consultant with a legitimate educational interest who has a formal written agreement or contract with the school district regarding the provision of outsourced institutional services or functions by the contractor or consultant." (Education Code Section 49076(b)(G)(i).) These third party contractors and consultants are not subject to FERPA regulations or their state law corollaries.

In theory, nothing would prevent a school from requiring, contractually, that the third party adopt certain privacy protections or refrain from using or disclosing student information for certain purposes. But there is nothing in law that requires it, and the Committee lacks adequate information to know if existing contracts contain such requirements as a matter of practice. However, news reports about third party software providers using student information for commercial and advertising purposes would suggest that at least some school districts do not impose such requirements in the contract. This bill would require that when a "local education agency" (LEA) - a school district, county office of education, or charter school - enters into an agreement with a third party provider for digital storage or educational software services, that the third party provider be limited in the ways that it can use student information and that it take affirmative steps to protect the privacy of student records.

Structurally, this bill proceeds in two parts. First, the bill authorizes a LEA to enter into a contract with a third party to do either or both of the following: (1) to provide services for the digital storage, management, and retrieval of student records, including cloud-based services; (2) to provide digital educational software that authorizes the third-party provider to access and acquire student information. The bill appears to create an after-the-fact "authorization" given that many schools are already contracting for these services, hence the need for the bill. Second, and more substantively, this bill would require the contract to include a statement that student records will continue to be the property and under the control of the school agency. The contract would prohibit the third party from using student information for commercial or advertising purposes, or indeed for any purpose other than fulfilling the requirements of the contract. The contract would be required to describe all of the following: how the third party and the LEA will jointly ensure compliance with FERPA; the procedures by which a parent, guardian, or student may review and correct records; and the actions that the third party will take to ensure the security of the information and who shall be responsible for notifying the parent, guardian, or student in the event of a security breach. The contract will also certify that student records shall not be retained by or available to the third party after the student is no longer enrolled in the school. A contract that fails to comply with these requirements shall be voidable and all student records shall be returned to the LEA.

Background : This bill reflects a growing concern over the tendency of schools to contract with companies that provide digital record-keeping services, including "cloud-computing," or that provide schools with online and digital educational software services. The virtues of high-tech, data-driven education have been touted by political leaders, school officials, and the high-tech industry. President Obama recently announced that industry leaders have pledged more than $750 million to give students and classrooms greater access to the Internet, electronic devices, and software. (New York Times, February 20, 2014.) Digital storage and management provide schools with alternatives to bulky, wasteful, and inefficient paper storage. Digital and online educational software allows students and teachers to work collaboratively in the classroom or at home, access an almost infinite array of data and documents, submit assignments, or interact with other students and teachers on blogs or discussion boards. Other services may provide access to more traditional educational material in digital form, including images, historical documents, or interactive graphs and maps. Some of these products - like Google's "Apps for Education" - provide a "suite of tools" that provide "free web-based email, calendar & documents for collaborative study anytime, anywhere." (See "Google Apps for Education" page at http://www.google.com/edu/apps/)

While these new products may create the potential for more interactive and engaging approaches to education, they also pose potential risks to student privacy, both in the case of cloud-based storage, which essentially hands over student records to a private entity, and interactive educational software that may give the service provider access to student records and personal information, depending on the nature of the service. Given the business model of Internet commerce, it seems likely, if not inevitable, that information will be used to target advertisements to students who use the products for educational purposes and to complete class assignments. Indeed, a pending lawsuit against Google alleges that the company scanned millions of e-mail messages sent by college student users of Google's "Apps for Education" tool suite. It is well known that Google uses a software program that scans the e-mail of its "Gmail" users to search for keywords, which are in turn used to provide targeted advertising on other Google products, such Google Search, Google+, and YouTube; however, it was generally assumed that Google did not scan e-mails of student users of Apps for Education. Google still maintains, according to one report, that "ads in Gmail are turned off by default for Google Apps for Education and we have no plans to change that in the future." ("Google under Fire for Data-Mining Student Email Messages," Education Week March 13, 2014.) Whether Google turns off its screening software when students use the "Apps for Education" tool suite or not, it is nonetheless apparent that a school's reliance on private, outside parties to provide digital storage and educational software services exposes student information in ways that might necessitate new forms of privacy protection.

Bill Would Likely Apply to Any Agreement, Including One That Provides "Free" Services: Because this measure would apply to any contract between a LEA and a third-party provider, it would appear to apply to contracts between schools and "free"

services, such as Google's "Apps for Education" tool suite. For example, according to a report in Education Week, even though "Apps for Education" is nominally "free," school districts adopt the tool suite by agreement. Indeed, some of these agreements may already contain restrictions on the use of data for the purpose of serving ads to students. (Education Week, March 13, 2014.) The "consideration" granted to the company in such contracts is presumably the opportunity for product exposure and development.

Comparison to Related Pending Legislation : Reports of schools entering agreements with digital storage and software providers has prompted at least three bills this session. In addition to the bill under consideration, SB 1177 (Steinberg) would prohibit the operator of an Internet Web site, online service, or application with "actual knowledge" that its site, service, or application is used by students for "K-12 [educational] purposes" from using, sharing, or disclosing student information for commercial or advertising purposes. Like the bill under consideration, SB 1177 would also require the operator to secure the information in its possession, a requirement that can be met by adopting National Institute of Standards and Technology (NIST) standards. A key difference between the bill under consideration and SB 1177 is that the bill under consideration is much more specific in that it applies to a contract between a school district and a provider, while SB 1177 applies to any operator that has "actual knowledge" that its site, service, or application is being used for "K-12 purposes," regardless of whether there is a contract between the LEA and the service provider. On the other hand, while SB 1177 is wider in scope, it is arguably more ambiguous as to when it would apply, depending on how one determines "actual knowledge" or understands the definition "K-12 purposes."

ARGUMENTS IN SUPPORT : According to the author, the "growing use of online and cloud- based services for providing instructional software and assessment and for maintaining student records has put student privacy at risk. Private companies are currently acquiring access to student records without parental consent or knowledge and with little oversight to ensure the confidentiality of those records. At least one company is known to have used information mined from the use of free instructional software to target ads. K-12 education agencies in California are subject to the requirements of the federal Family Educational Rights and Privacy Act (FERPA) and related state law. FERPA allows education agencies to grant access to student records to private for-profit and not-for-profit entities for evaluation or auditing purposes or to perform a function that would otherwise be performed by the education agency's own employees. In these cases, private entities can be granted access to student records without the prior written consent-or even knowledge-of parents or guardians. Neither state nor federal law provides sufficient safeguards to ensure that the privacy of student records will be assured and that student records will not be misused when they are released to private entities."

Pending Related Legislation : AB 1442 (Gatto) requires a LEA that considers a program to gather or maintain in its records personal information obtained through social media on any student enrolled in the school district shall notify students, parents, and guardians about the proposed program and provide an opportunity for public comment prior to the adoption of any such program and to take other specified steps. (The bill passed in the Assembly Judiciary on a 9-0 vote and in the Assembly Education Committee on a 7-0; it is currently pending on the Assembly Floor.)

AB 2504 (Chau) requires a school district contract with a cloud service provider to specify the types of data transferred or collected and include a limit or prohibition on the re-disclosure of student data. (The bill is pending in the Assembly Education Committee.)

SB 1177 (Steinberg) prohibits K-12 online educational sites, services, and applications from compiling, sharing, or disclosing student personal information and from facilitation, marketing, or advertising to K-12 students. (The bill passed in the Senate Education on a 9-0 vote and is scheduled to be heard today in the Senate Judiciary Committee.)

REGISTERED SUPPORT / OPPOSITION :

Support

None on file

Opposition

None on file

Analysis Prepared by : Thomas Clark / JUD. / (916) 319-2334

2013 CA A.B. 1584 (NS)

**End of Document**

© 2026 Thomas Reuters. No claim to original U.S. Government Works.