# Exhibit 42

(A) representatives of local, statewide, regional, and national institutions, agencies, organizations, and associations which provide library and information services to the public;

(B) representatives of educational institutions, agencies, organizations, and associations (including professional and scholarly associations for the advancement of education and research):

(C) persons with special knowledge of, and special competence in, technology as it may be used for the improvement of library and information services; and

(D) representatives of the general public.

(c)(1) The conference shall be planned and conducted under the direction of the National Commission on Libraries and Information Science (hereinafter referred to as the "Commission").

(2) In administering this joint resolution, the Commission shall—

(A) when appropriate, request the cooperation and assistance of other Federal departments and agencies in order to carry out its responsibilities;

(B) make technical and financial assistance (by grant, contract, or otherwise) available to the States to enable them to organize and conduct conferences and other meetings in order to prepare for the Conference; and

(C) prepare and make available background materials for the use of delegates to the Conference and associated State conferences, and prepare and distribute such reports of the Conference and associated State conferences as may be appropriate.

(3)(A) Each Federal department and agency is authorized and directed to cooperate with, and provide assistance to, the Commission upon its request under clause (A) of paragraph (2); and, for that purpose, each Federal department and agency is authorized to provide personnel to the Commission in accordance with section 3341 of title 5, United States Code. For the purposes of such section 3341 and this paragraph, the Commission shall be deemed to be a part of any executive or military department of which a request is made under clause (A) of paragraph (2).

(B) the Librarian of Congress is authorized to detail personnel to the Commission, upon request, to enable the Commission to carry out its functions under this joint resolution.

(4) In carrying out the provisions of this joint resolution, the Commission is authorized to engage such personnel as may be necessary, without regard for the provisions of title 5, United States Code, governing appointments in the competitive civil service, and without regard for chapter 51, and subchapter III of chapter 53 of such title relating to classification and General Schedule pay rates.

(5) The Commission is authorized to publish and distribute for the Conference the reports authorized under this joint resolution without regard for section 501 of title 44, United States Code.

(6) Members of the Conference may, while away from their homes or regular places of business and attending the Conference, be allowed travel expenses, including per diem in lieu of subsistence, as may be allowed under section 5703 of title 5, United States Code, for persons serving without pay. Such expenses may be paid by way of advances, reimbursement, or in installments as the Commission may determine.

(d) A final report of the Conference, containing such findings and recommendations as may be made by the Conference, shall be submitted to the President not later than one hundred and twenty days following the close of the Conference, which final report shall be made public and, within ninety days after its receipt by the President, transmitted to the Congress together with a statement of the President containing the President's recommendations with respect to such report.

(e)(1) There is hereby established a twenty-eight member advisory committee to the Conference composed of (A) at least three members of the Commission designated by the Chairman thereof; (B) two persons designated by the Speaker of the House of Representatives; (C) two persons designated by the President pro tempore of the Senate; and (D) not more than twenty-one persons appointed by the President. Such advisory committee shall assist and advise the Commission in planning and conducting the Conference. The Chairman of the Commission shall serve as Chairman of the Conference.

(2) The Chairman of the Commission is authorized, in his discretion, to establish, prescribe functions for, and appoint members to, such advisory and technical committees as may be neecssary to assist and advise the Conference in carrying out its functions.

(3) Members of any committee established under this subsection who are not regular full-time officers or employees of the United States shall, while attending to the business of the Conference, be entitled to receive compensation therefor at a rate fixed by the President but not exceeding the rate of pay specified at the time of such service for grade GS-18 in section 5332 of title 5, United States Code, including traveltime. Such members may, while away from their homes or regular places of business, be allowed travel expenses, including per diem in lieu of subsistence, as may be authorized under section 5703 of title 5, United States Code, for persons in the Government service employed intermittently.

(f) The Commission shall have authority to accept, on behalf of the Conference, in the name of the United States, grants, gifts, or bequests of money for immediate disbursement by the Commission in furtherance of the Conference. Such grants, gifts, or bequests offered the Commission, shall be paid by the donor or his representative to the Treasurer of the United States, whose receipts shall be their acquittance. The Treasurer of the United States shall enter such grants, gifts, and bequests in a special account to the credit of the Commission for the purposes of this joint resolution.

(g) For the purpose of this joint resolution, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands, and the Trust Territory of the Pacific Islands.

(h) There are authorized to be appropriated without fiscal year limitations such sums, but not to exceed $10,000,000, as may be necessary to carry out this joint resolution. Such sums shall remain available for obligation until expended.

Amend the title so as to read: "A joint resolution to authorize and request the President to call a White House Conference on Library and Information Services in 1978, and for other purposes."

The PRESIDING OFFICER. The question is on agreeing to the amendment in the nature of a substitute.

Mr. BUCKLEY. Mr. President, I offer, on behalf of myself and the distinguished Senator from Rhode Island (Mr. PELL), an amendment to the amendment that has just been offered by Mr. Pell.

The PRESIDING OFFICER. The amendment will be stated.

The legislative clerk read as follows:

The Senator from New York (Mr. BUCKLEY) proposes an amendment to the amendment of the Senator from Rhode Island.

Mr. ROBERT C. BYRD. Mr. President, what is the amendment? Has anyone asked that further reading be dispensed with?

Mr. BUCKLEY. Mr. President, I ask unanimous consent that further reading of the amendment be dispensed with.

The PRESIDING OFFICER. Without objection, it is so ordered; and without objection, the amendment will be printed in the RECORD.

The amendment is as follows:

SEC. 2. (a)(1)(A) The first sentence of section 438(a)(1) of the General Education Provisions Act is amended by striking out "State and local educational agency, any institution of higher education, any community college, any school agency offering a preschool program, or any other educational institution" and inserting in lieu thereof "educational agency or institution".

(B) Such first sentence is amended by striking out "attending any school of such agency, or attending such institution of higher education, community college, school, preschool, or other educational institution" and inserting in lieu thereof "who are or have been in attendance at a school of such agency or at such institution, as the case may be".

(C) The third sentence of such section is amended by striking out "recipient" and inserting in lieu thereof "educational agency or institution".

(D) Paragraph (1) of section 438(b) of such Act is amended by striking out "State or local educational agency, any institution of higher education, any community college, any school, agency offering a preschool program, or any other educational institution" and inserting in lieu thereof "educational agency or institution".

(E) Paragraph (2) of such section is amended by striking out "State and local educational agency, any institution of higher education, any community college, any school, agency offering a preschool program, or any other educational institution" and inserting in lieu thereof "educational agency or institution".

(F) Subsection (e) of section 438 of such Act is amended by striking out "unless the recipient of such funds" and inserting in lieu thereof "to any educational agency or institution unless such agency or institution".

(G) Section 438(a) of such Act is amended by inserting at the end thereof the following new pargaraph:

"(3) For the purposes of this section the term 'educational agency or institution' means any public or private agency or institution which is the recipient of funds under any applicable program.".

(2)(A) The first sentence of section 438(a)(1) of such Act is amended by striking out "any and all official records, files, and data directly related to their children, including all material that is incorporated into each student's cumulative record folder, and intended for school use or to be available to parties outside the school or school system, and specifically including, but not necessarily limited to, identifying data, academic work completed, level of achievement (grades, standardized achievement test scores), attendance data, scores on standardized intelligence, aptitude, and psychological tests, interest inventory results, health data, family background information, teacher or counselor ratings and observations, and verified reports of serious or recurrent behavior patterns." and inserting in lieu thereof "the education records of their children.".

(B)(i) The second sentence of such section is amended by striking out "Where such records or data include" and inserting in

Case 3:24-cv-02706-JD Document 170-39 Filed 05/12/26 Page 3 of 8



lieu thereof "If any material or document in the education record of a student includes".

(ii) Such second sentence is amended by striking out "any student shall be entitled to receive, or be informed of, that part of such record or data as pertains to their child" and inserting in lieu thereof "one of such students shall have the right to inspect and review only such part of such material or document as relates to such student or to be informed of the specific information contained in such part of such material".

(C) The third sentence of such section is amended by striking out "their child's school records" and inserting in lieu thereof "the education records of their children".

(D) Section 438(b)(1) of such Act is amended by striking out "personally identifiable records or files (or personal information contained therein)" and inserting in lieu thereof "education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a))".

(E) Paragraph (2) of such section is amended by striking out "furnishing, in any form, any personally identifiable information contained in personal school records, to any persons other than those listed in subsection (b)(1)" and inserting in lieu thereof "releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection.".

(F) Section 438(a) of such Act is amended by adding at the end thereof the following new paragraphs:

"(4)(A) For the purposes of this section, the term 'education records' means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which—

"(i) contain information directly related to a student; and

"(ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.

"(B) The term 'education records' does not include—

"(i) records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute;

"(ii) if the personnel of a law enforcement unit do not have access to education records under subsection (b)(1), the records and documents of such law enforcement unit which (I) are kept apart from records described in subparagraph (A), (II) are maintained solely for law enforcement purposes, and (III) are not made available to persons other than law enforcement officials of the same jurisdiction;

"(iii) in the case of persons who are employed by an educational agency or institution but who are not in attendance at such agency or institution, records made and maintained in the normal course of business which relate exclusively to such person in that person's capacity as an employee and are not available for use for any other purpose; or

"(iv) records on a student who is 18 years of age or older, or is attending an institution of postsecondary education, which are created or maintained by a physician, psychiatrist, psychologist, or other recognized professional or para-professional acting in his professional or para-professional capacity, or assisting in that capacity, and which are created, maintained, or used only in connection with the provision of treatment to the student, and are not available to any one other than persons providing such treatment; provided, however, that such records can be personally reviewed by a physician or other appropriate professional of the student's choice.

"(C) Nothing in this section shall be construed to alter the confidentiality of communications otherwise protected by law as confidential.

"(5)(A) For the purposes of this section the term 'directory information' relating to a student includes the following: the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student.

"(B) Any educational agency or institution making public directory information shall give public notice of the categories of information which it has designated as such information with respect to each student attending the institution or agency and shall allow a reasonable period of time after such notice has been given for a parent to inform the institution or agency that any or all of the information designated should not be released without the parent's prior consent.".

(3) Section 438(a)(1) of such Act is amended by inserting "(A)" after section "Sec. 438. (a)(1)" and adding at the end thereof the following new subparagraph:

"(B) The first sentence of subparagraph (A) shall not operate to make available to students in institutions of postsecondary education the following materials:

"(i) financial records of the parents of the student or any information contained therein;

"(ii) confidential letters and statements of recommendation, which were placed in 1975, if such letters or statements are not the education records prior to January 1, used for purposes other than those for which they were specifically intended;

"(iii) if the student has signed a waiver of the student's right of access under this subsection in accordance with subparagraph (C), confidential recommendations—

"(I) respecting admission to any educational agency or institution,

"(II) respecting an application for employment, and

"(III) respecting the receipt of an honor or honorary recognition; and

"(C) A student or a person applying for admission may waive his right of access to confidential statements described in clause (iii) of subparagraph (B), except that such waiver shall apply to recommendations only if (i) the student is, upon request, notified of the names of all persons making confidential recommendations and (ii) in the case of recommendations described in clause (iii) of such subparagraph, such recommendations are used solely for the purpose for which they were specifically intended.".

(4)(A) Paragraph (2) of section 438(a) is amended by striking out that part thereof which precedes "to insure" and inserting in lieu thereof the following: "No funds shall be made available under any applicable program to any educational agency or institution unless the parents of students who are or have been in attendance at a school of such agency or at such institution are provided an opportunity for a hearing by such agency or institution, in accordance with regulations of the Secretary, to challenge the content of such student's education records, in order"

(B) Such paragraph (2) is amended by inserting before the period at the end thereof the following: "and to insert into such records a written explanation of the parents respecting the content of such records".

(5) Section 438(a) of such Act is amended by adding at the end thereof the following new paragraph:

"(6) For the purposes of this section, the term 'student' includes any person with respect to whom an educational agency or institution maintains education records or personally identifiable information, but does not include a person who has not been in attendance at such agency or institution.".

(6) Section 438(b)(1) of such Act is amended by striking out "and" at the end of clause (C), by striking out the period at the end of clause (D) and inserting in lieu thereof a semicolon, and by adding at the end thereof the following new clauses:

"(E) State and local officials or authorities to whom such information is specifically required to be reported or disclosed pursuant to State statute;

"(F) organizations of educational agencies or institutions for the purpose of developing, validating, and administering predictive tests, if such information will not permit the identification of any person by the organization receiving such information;

"(G) accrediting organizations in order to carry out their accrediting functions;

"(H) parents of a dependent student of such parents, as defined in section 152 of the Internal Revenue Code of 1954; and

"(I) subject to regulations of the Secretary, in connection with an emergency, appropriate persons if the knowledge of such information is necessary to protect the health or safety of the student or other persons.".

(7) Section 438(g) of such Act is amended by adding at the end thereof the following new sentence: "Except for the conduct of hearings, none of the functions of the Secretary under this section shall be carried out in any of the regional offices of such Department.".

(8)(A) Paragraph (1) of section 438(b) of such Act is amended by inserting "or practice" after "which has a policy".

(B) Clause (A) of section 438(b)(1) of such Act is amended by striking out "who" and inserting in lieu thereof ", who have been determined by such agency or institution to".

(C) Clause (B) of such section 438(b)(1) is amended by inserting "seeks or" after "student".

(D) Section 438(b)(3) of such Act is amended by striking out "after the data" down through "collected" and inserting in lieu thereof "by such officials or agencies".

(9) Paragraph (4)(A) of section 438(b) of such Act is amended to read as follows:

"(4)(A) Each educational agency or institution shall maintain a record, kept with the education records of each student, which will indicate all individuals (other than those specified in paragraph (1)(A) of this subsection), agencies, or organizations which have requested or obtained access to a student's education records maintained by such educational agency or institution, and which will indicate specifically the legitimate interest that each such person, agency, or organization has in obtaining this information. Such record of access shall be available only to parents, to the school official and his assistants who are responsible for the custody of such records, and to persons or organizations authorized in, and under the conditions of, clauses (A) and (C) of paragraph (1) as a means of auditing the operation of the system.".

(10)(A) Clause (C) of section 438(b)(1) of such Act is amended by striking out "section 409 of this Act" and inserting in lieu thereof "section 408(c)".

(B) Section 438(g) of such Act is amended by striking out ", according to the procedures contained in section 434 and 437 of this Act".

(b) The amendments made by subsection (a) shall be effective, and retroactive to, November 19, 1974.

Mr. BUCKLEY. Mr. President, since the enactment in October of the Family Educational Rights and Privacy Act of

1974, the educational community has pointed to certain ambiguities that have been contained in the language and provisions—that because there was none of the normal legislative history, it means that HEW does not have an adequate record on the basis of which to develop the necessary regulations.

After consultation with the Senator from Rhode Island, we concluded that the most appropriate way to handle the situation would be to offer at this time the amendment I have just submitted to the desk on our joint behalf, which incorporates the necessary clarifications.

I also send to the desk at this time a statement that Senator PELL and I have agreed to, which provides a narrative and explanation of the meaning and intent of the various provisions of the amendment. I ask unanimous consent that the statement be printed in the RECORD.

There being no objection, the statement was ordered to be printed in the RECORD, as follows:

JOINT STATEMENT IN EXPLANATION OF BUCKLEY/PELL AMENDMENT

The Family Educational Rights and Privacy Act of 1974, section 513 of the Education Amendments of 1974, was signed into law by President Ford on August 21, 1974. Its provisions became effective ninety days after enactment, on November 19.

The purpose of the Act is two-fold—to assure parents of students, and students themselves if they are over the age of 18 or attending an institution or postsecondary education, access to their education records and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent. The Secretary of Health, Education, and Welfare is charged with enforcement of the provisions of the Act, and failure to comply with its provisions can lead to withdrawal of Office of Education assistance to the educational agency or institution.

Since the passage of the Act, commonly referred to as the Buckley Amendment, after its principal sponsor, a number of ambiguities in its provisions have come to light. Since the language was offered as an amendment on the Senate floor, rather than having been the subject of Committee consideration, traditional legislative history materials such as hearings and Committee reports have not been available to serve as a guide to educational institutions, to students, and to the Department of Health, Education, and Welfare in carrying out their various responsibilities under the Act. The amendments being proposed are designed to remedy certain omissions in the provisions of existing law and to clarify other portions of the Act which have been the subject of extensive questioning and concern. It is the hope of the sponsors of these amendments that they provide a suitable response to the issues surrounding existing law which have been raised by parents, students, and institutions.

Existing law lists specifically, at several points in the Act, the institutions and agencies to which the provisions apply. However, these lists are not always identical, creating questions of the applicability of the Act to certain institutions under certain circumstances. The amendment, to standardize the Act's applicability, defines the term "educational agency or institution" as any public or private agency or institution which is the recipient of funds under any applicable program. This definition serves to clarify a number of issues. First, it makes uniform the Act's applicability under all its subsections, so that no question remains of a school's inclusion under one part of the Buckley Amendment but not under another. Second, by defining the term generically rather than specifically, the amendment eliminates the possibility that any agency or institution not meeting the specific definition might fall outside the Act's coverage. Finally, by explicitly limiting the definition to those institutions participating in applicable programs, the amendment makes it clear that the Family Educational Rights and Privacy Act applies only to Office of Education programs and those programs delegated to the Commissioner of Education for administration. The entire Buckley Amendment is an amendment to Part C of the General Education Provisions Act, which by its own terms applies only to the Office of Education. However, there has been some question as to whether the Amendment's provisions should be applied to other HEW education-related programs such as Headstart or the educational research programs of the National Institute of Education. As rewritten, the limited nature of the Act's coverage should be clear.

Under the Family Educational Rights and Privacy Act, a parent is given the right to challenge the contents of his child's records to insure that they are not inaccurate, misleading, or otherwise in violation of the student's privacy or other rights. This provision, section 438(a)(2) of the General Education Provisions Act, has raised a number of questions which these amendments seek to answer—1) who has the right to challenge, 2) what records are covered, and 3) what sort of proceeding should be undertaken.

First, these amendments clarify that the parent need not have a child still in attendance at the educational agency or institution at the time a hearing is sought in order to have the right to seek a hearing on the accuracy or appropriateness of material in his child's file. The Buckley Amendment does give parents the right to challenge the content of records once their children have left the school possessing the records in order to assure that records still maintained by the school which could subsequently become available to parties outside the school do not contain inaccurate or inappropriate material.

In addition, the material subject to challenge is defined generically as "education records," eliminating the long list of illustrative examples contained in existing law. "Education records" are described as those records, files, documents, and other materials directly related to a student which are maintained by a school or by one of its agents. This definition is a key element in the amendment. An individual should be able to know, review, and challenge all information—with certain limited exceptions—that an institution keeps on him, particularly when the institution may make important decisions affecting his future, or may transmit such personal information to parties outside the institution. This is especially true when the individual is a minor. Parents need access to such information in order to protect the interest of their child.

The amendment makes certain reasonable exceptions to the access by parents and students to school records. The private notes and other materials, such as a teacher's daily record book, created by individual school personnel (such as teachers, deans, doctors, etc.) as memory aids would not be available to parents or students, provided they are not revealed to another person, other than in the case of a substitute who performs another's duties for a temporary period.

The law enforcement records of a law enforcement unit associated with a school would be excluded if its personnel are not allowed access to a student's education records, and if its records on a student are used solely for law enforcement purposes and are only available to other law enforcement officials of the same jurisdiction.

The employment records of a person not attending a given school would not be available to him, even though he has been a student at another school, if they are used for other than employment purposes.

College students would not be able directly to inspect medical psychiatric, or similar records which are used solely in connection with treatment purposes and only available to recognized professionals or para-professionals in connection with such treatment. Such students would, however, be able to have a doctor or other professional of their choice inspect their records.

The amendment also notes that the law does not alter the confidentiality of communications otherwise protected by law.

The law is not specific concerning the format, procedure, or mechanism for the conduct of such a hearing at the local level. It is the intent of the sponsors of these amendments that again a rule of reason would be followed by those participants involved. Since the hearing is to be conducted at the local level, a detailed specification of procedures cannot be drawn that could possibly apply to each of the thousands of school districts and colleges across the nation. Each has a slightly different organizational structure and pattern of procedure. Obviously, the hearing mechanism must be adapted in each instance to conform to these individual differences. In some cases, a school district might wish to offer the parent a hearing at the district level; in other instances, disputes about the content of records might be better handled at the local school level. It is not the intent of the Amendment to burden schools with onerous hearing procedures.

The amendment is intended to require educational agencies and institutions to conform to fair information record-keeping practices. It is not intended to overturn established standards and procedures for the challenge of susbtantive decisions made by the institution. It is intended, however, to open the bases on which decisions are made to more scrutiny by the students, or their parents about whom decisions are being made, and to give them the opportunity to challenge and to correct—or at least enter an explanatory statement—inaccurate, misleading, or inappropriate information about them which may be in their files and which may contribute, or have contributed to an important decision made about them by the institution.

The law intends that parents have a full and fair opportunity to present evidence to show that their children's records contain inaccurate, misleading or otherwise inappropriate information. The hearing should be held and the institution's decision rendered within a reasonable period after the parent's request. There has been much concern that the right to a hearing will permit a parent or student to contest the grade given the student's performance in a course. That is not intended. It is intended only that there be procedures to challenge the accuracy of institutional records which record the grade which was actually given. Thus, the parents or student could seek to correct an improperly recorded grade, but could not through the hearing required pursuant to this law contest whether the teacher should have assigned a higher grade because the parents or student believe that the student was entitled to the higher grade.

On the other hand, if a child has been labeled mentally or otherwise retarded and put aside in a special class or school, parents would be able to review the materials in the record which led to this institutional decision, and perhaps seek professional assistance, to see whether these materials contain inaccurate information or erroneous evaluations about their child.

In general, it is intended that the parent would be shown the actual documents contained in the child's education records. However, under certain circumstances this might not be possible—where, for instance,

it is impossible to separate information about one student from that about others. If a student's name is one in a long list of names, it would violate the others' right to privacy to have the entire list shown to that student's parents. In such a situation, the responsibility of the educational agency or institution is to make the information concerning the student known to the parent, without actually having to show him the document.

Existing law prohibits the furnishing of personally identifiable information contained in school records to other than a specific list of persons, primarily other school officials, without the written consent of the student's parents or that of the student when he becomes 18 or enters postsecondary education. A literal interpretation of this language has led school attorneys around the country to advise their clients no longer routinely to print football players' weights in athletic programs and to seek written consent of the cast of the school play that their names may be printed in the program. This narrow reading of the law is not what its author intended to achieve, and he so stated during the floor debate in May on the amendment.

Therefore, these amendments specifically provide that a school may safely provide what is termed "directory information"—such personal facts as name, address, and telephone number—to third parties without fear of having its Federal funds withdrawn. The institution providing such directory information would be required to give public notice of the information it planned to make available to the general public, and to allow parents time to notify the institution that any or all of that information should not be released. This would allow parents with unlisted telephone numbers, for example, to have the right to keep such numbers unlisted.

On the other hand, clarification of the definition of "directory information" can be significant in allowing the functioning of other programs. For example, under the Guaranteed Student Loan Program a student is allowed a nine-month grace period after his last date of attendance before he is required to begin repayment of his obligation. If a school cannot routinely inform the lender of the student's last date of attendance, the lender has no basis for calculating when he may begin to collect the loan. These amendments would avoid this problem by making such information available on a routine basis, without a requirement that the student give his consent.

Much concern has been expressed by institutions of higher education concerning the potential impact of the Buckley Amendment on a number of traditional institutional practices. For instance, letters of recommendation for admission are usually solicited under a promise that such letters will not be available to the student, to his parents, or to third parties not associated with the purpose of the recommendation. What is their status if they become part of a student's permanent official file? Also, in conjunction with an application for student financial aid, a parent may have to file a financial statement. Should a student be given the right to see such a statement? If a student has acquired rights under the Amendment, can an institution require or suggest that he waive those rights and preserve the confidentiality of its files? These amendments seek to answer these and other questions.

A number of exceptions to the blanket right to see and challenge education records are made for students attending institutions of postsecondary education. They shall not have the right, under the provisions of the Amendment, to see financial records of their parents. They shall not have the right to see confidential letters and statements of recommendation placed in education records prior to January 1, 1975, provided that they are not used for purposes other than those for which they were intended. And students may waive their rights of access to confidential recommendations in three areas—admissions, job placement, and receipt of awards. To protect students from wholesale abuse of such continued possibility of confidentiality, the amendments require that a student be notified of the names of all persons making confidential recommendations, if he does agree to waive his right of access. This notification would include not only those individuals suggested by the student as possible references, but also any others solicited by the institution or volunteering their comment.

With regard to letters of recommendation for a student in an institution of postsecondary education, two further clarifications are included. The use of confidential recommendations is limited solely to the purpose for which they were specifically intended. Such recommendations should not become a part of the student's on-going file and serve as a basis for continued official decision-making for purposes other than for which such letters were originally submitted. Second, the "student" to whom the right of access belongs is defined as any person concerning whom the educational agency maintains education records or personal information, but does not include anyone who has not been in attendance at such agency or institution. This means that the rejected applicant for admission is not given the right under the Buckley Amendment to see and challenge his letters of recommendation, nor does the amendment give him the right to challenge the institution's decision not to admit him. Such a right accrues only to the individual who actually attends the institution. For the purpose of this definition, a student who is only auditing a course, but on whom the institution maintains a personal file, would be included in the Amendment's coverage.

Section 438(b)(1) of existing law restricts transfer, without the consent of parents or students, of personally identifiable information concerning a student to other educational agencies or institutions, other school officials, auditors from the General Accounting Office and the Department of Health, Education, and Welfare, and in connection with the application for or receipt of student financial aid under certain specified conditions. It has become apparent in the last several months that these restrictions are too narrow and, if strictly applied, would seriously interfere in the operation of educational institutions. Therefore, after consultation with numerous educational representatives as well as students, the authors of these amendments have included a series of other potential recipients of student information, without the necessity of securing individual parents' consent.

First, these amendments permit the transmittal of personal information to State and local officials or authorities as required by State statute. It was not intended, in establishing a minimum Federal standard for record confidentiality and access, to preempt the States' authority in the field. Therefore, if a State law requires an educational official to transmit a specific piece of information about a student to State or local officials, or liberalizes a student's access to his own education records even farther than the Family Educational Rights and Privacy Act, such as in Maine, Idaho, and New Mexico, where the law permits students of any age to see their records, State law may be followed without securing a parent's specific consent. Of course, the provisions of the amendment do not affect whatever rights a student or his parents might have in civil proceedings, as in the case where confidentially-received material causes the student or his parents actionable damage.

Organizations such as the Educational Testing Service, the Law School Admissions Council, the College Entrance Examination Board, and the American Medical College Application Service, and others, develop and validate a number of tests which are used by institutions of higher education to predict the potential success of applicants for admission. These and other similar groups need student data in order to perform their function. The amendments would authorize release of such data to these organizations without individual parents' or students' consent, so long as the data are not personally identifiable to the individuals and organizations receiving such data.

Similarly, accrediting agencies form the basis for institutional eligibility to participate in a wide range of Federal assistance programs. In order to assess the quality of an institution's program and the strength of the institution itself, the agency must have access to certain confidential student data. The amendments would authorize such access to enable the accreditor to carry out its functions.

One concern that has been expressed about the working of existing law pertains to the transfer of all parental rights to information to the student about the latter's attaining the age of 18 or enrolling in postsecondary education. Colleges have been reluctant to send bills or grades of their students to the students' parents, for fear of violating the students' rights. The amendments proposed would make it clear that the parent of a dependent student, as defined for income tax purposes, would have a right to information about his child without the institution's having to seek the students' consent.

Finally, under certain emergency situations it may become necessary for an educational agency or institution to release personal information to protect the health or safety of the student or other students. In the case of the outbreak of an epidemic, it is unrealistic to expect an educational official to seek consent from every parent before a health warning can be issued. On the other hand, a blanket exception for "health or safety" could lead to unnecessary dissemination of personal information. Therefore, in order to assure that there are adequate safeguards on this exception, the amendments provided that the Secretary shall promulgate regulations to implement this subsection. It is expected that he will strictly limit the applicability of this exception.

Because of the concern that regionalizing the enforcement of the law may lead to multiple interpretations of it, and possibly work a hardship on parents, students, and institutions, the amendment authorizes that only activities involving the conduct of hearings by the Secretary's review board may be carried out in the regional offices of HEW.

The remainder of the amendment is purely technical in nature, correcting erroneous cross-references found in existing law which were created as a result of changes made in the bill on the floor of the Senate and in conference. The provisions of the amendment are retroactive to November 19, 1974, the date on which the Family Educational Rights and Privacy Act became effective.

With guidelines not yet published, the provisions of the Act, and its ramifications, have been the subject of much uncertainty, causing perplexity among school officials and frustations among parents and students. It is the hope of the sponsors of this amendment that it will do much to clear up many of the unanswered questions, so that the substance of the provisions may be carried out in schools and colleges across the country as soon as possible, and so that parents and students may properly begin to exercise their rights under the law, and the protection of their privacy may be assured.

Mr. MONDALE. Mr. President, I am somewhat concerned as are Senator WILLIAMS and Senator JAVITS about the provision of this amendment that would permit students to waive their rights to confidentiality of or access to their records. Under the provisions of this amendment would a postsecondary institution be permitted to require, as a condition of application, acceptance, or any other service normally provided to students at the institution, that a student sign such a waiver?

Mr. PELL. There is nothing in the proposed language which would permit an institution to require such a waiver as a precondition of application, or any other service normally provided to students at the institution.

Mr. MONDALE. Would there be any conditions under which an institution could compel any of its students to sign such a waiver?

Mr. PELL. Under the proposed language an institution would be permitted to request such a waiver of applicants or students but would not be permitted to require that the student waive his rights to either the confidentiality of his records, or his access to those records as a precondition to enrollment or matriculation or any other service normally provided to students at the institution under any circumstances.

Mr. MONDALE. Could a postsecondary institution request a student, at time of application for admission, or any time thereafter, to sign a general waiver which would effectively waive the student's rights to examine any recommendations at any time in the future? For example, under the proposed language, confidential statements or recommendations are split into three classes: Recommendations for applications of admission, for employment, and for honors or awards. Would, then, a postsecondary institution have to request the waiver for each of those classes of recommendations at the appropriate time?

Mr. PELL. A postsecondary institution could not request a general waiver which would apply for all time, but would have to ask for a waiver at the appropriate time for each class of confidential statement or recommendation.

Mr. BUCKLEY. Mr. President, in the course of the past weeks, the Senator from Rhode Island and his staff and my staff and I have been in frequent contact about the questions and problems which have arisen regarding the act. We have discussed the problems with representatives of the various educational groups and institutions, student groups, and public interest organizations. We have received a great deal of valuable information and suggestions, and I believe we have succeeded, after many hours of working together, to incorporate them all in language that I believe will meet every legitimate question that has been raised about the proposed legislation.

At this time, I should like to take occasion to express my deep personal appreciation of the tremendous spirit of cooperation and understanding that has been extended to me by the distinguished chairman of the subcommittee and to express my appreciation for his enormous sense of fairness.

Mr. PELL. Mr. President, I thank the Senator from New York.

I fully support and am, indeed, the cosponsor of the series of amendments offered by Senator BUCKLEY to the Family Educational Rights and Privacy Act. The Senator has introduced into the RECORD an agreed upon explanation of the amendments we have prepared which will serve as legislative history in interpreting the language of the amendments. I will, at a suitable point in the RECORD ask unanimous consent for the printing of a document which in a report on legislation would be termed a cordon print. It will show the changes in the existing law; what has been deleted and where the new language fits and how it will be read after adoption of these amendments.

I wish to thank Mr. BUCKLEY for his most cooperative attitude over the past 2 months. Since the first week of October, I have been in contact with him numerous times over certain interpretations of the law.

There was some thought given to deferring the effective date of the law, but we, after numerous discussions decided on a series of amendments which will amend the law so that parents, students, and institutions could better interpret the provisions and exercise their rights under them.

Senator BUCKLEY and I have spent many hours working over the specific language changes. These amendments are not intended to deal with every single issue which has been raised. I fully expect that as students and institutions attempt to deal with the amended law further questions could arise. The Subcommittee on Education could well have oversight hearings on this matter next year after the law has been in operation.

In any event, I again thank Senator BUCKLEY for his actions on this matter.

I ask unanimous consent to have printed in the RECORD the document I have referred to.

There being no objection, the document was ordered to be printed in the RECORD, as follows:

CHANGES IN EXISTING LAW

PROTECTION OF THE RIGHTS AND PRIVACY OF PARENTS AND STUDENTS

SEC. 438. (a)(1) No funds shall be made available under any applicable program to any [State or local educational agency, any institution of higher education, any community college, any school, agency offering a preschool program, or any other educational institution] *educational agency or institution* which has a policy of denying, or which effectively prevents, the parents of students [attending any school of such agency, or attending such institution of higher education, community college, school, preschool, or other educational institution,] *who are or have been in attendance at a school of such agency or at such institution, as the case may be* the right to inspect and review [any and all official records, files, and data directly related to their children, including all material that is incorporated into each student's cumulative record folder, and intended for school use or to be available to parties outside the school or school system, and specifically including, but not necessarily limited to, identifying data, academic work completed, level of achievement (grades, standardized achievement test scores,) attendance data, scores on standardized intelligence, aptitude, and psychological tests, interest inventory results, health data, family background information, teacher or counselor ratings and observations, and verified reports of serious or recurrent behavior patterns.] *the education records of their children.* [Where such records or data include] *If any material or document in the education record of a student includes* information on more than one student, the parents of [any student shall be entitled to receive, or be informed of, that part of such record or data as pertains to their child.] *one of such students shall have the right to inspect and review only such part of such material or document as relates to such student or to be informed of the specific information contained in such part of such material.* Each [recipient] *educational agency or institution* shall establish appropriate procedures for the granting of a request by parents for access to [their child's school records] *the education records of their children* within a reasonable period of time, but in no case more than forty-five days after the request has been made.

*(B) The first sentence of subparagraph (A) shall not operate to make available to students in institutions of postsecondary education the following materials:*

*(i) financial records of the parents of the student or any information contained therein;*

*(ii) confidential letters and statements of recommendation, which were placed in the education records prior to January 1, 1975, if such letters or statements are not used for purposes other than those for which they were specifically intended;*

*(iii) if the student has signed a waiver of the student's right of access under this subsection in accordance with subparagraph (C), confidential recommendations—*

*(I) respecting admission to any educational agency or institution,*

*(II) respecting an application for employment, and*

*(III) respecting the receipt of an honor or honorary recognition; and*

*(C) A student or a person applying for admission may waive his right of access to confidential statements described in clause (iii) of subparagraph (B), except that such waiver shall apply to recommendations only if (i) the student is, upon request, notified of the names of all persons making confidential recommendations and (ii) in the case of recommendations described in clause (iii) of such subparagraph, such recommendations are used solely for the purpose for which they were specifically intended.*

(2) [Parents shall have an opportunity for a hearing to challenge the content of their child's school records.] *No funds shall be made available under any applicable program to any educational agency or institution unless the parents of students who are or have been in attendance at a school of such agency or at such institution are provided an opportunity for a hearing by such agency or institution, in accordance with regulations of the Secretary, to challenge the content of such student's education records, in order* to insure that the records are not inaccurate, misleading, or otherwise in violation of the privacy or other rights of students, and to provide an opportunity for the correction or deletion of any such inaccurate, misleading, or otherwise inappropriate data contained therein *and to insert into such records a written explanation of the parents respecting the content of such records.*

*(3) For the purposes of this section the term "educational agency or institution" means any public or private agency or institution which is the recipient of funds under any applicable program.*

*(4) (A) For the purposes of this section, the*

*term "education records" means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which—*

*(i) contain information directly related to a student; and*

*(ii) are maintained by an educational agency or institution, or by a person acting for such agency or institution.*

*(B) The term "education records" does not include—*

*(i) records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute;*

*(ii) if the personnel of a law enforcement unit do not have access to education records under subsection (b)(1), the records and documents of such law enforcement unit which (I) are kept apart from records described in subparagraph (A), (II) are maintained solely for law enforcement purposes, and (III) are not made available to persons other than law enforcement officials of the same jurisdiction;*

*(iii) in the case of persons who are employed by an educational agency or institution but who are not in attendance at such agency or institution, records made and maintained in the normal course of business which relate exclusively to such person in that person's capacity as an employee and are not available for use for any other purpose; or*

*(iv) records on a student who is 18 years of age or older, or is attending an institution of postsecondary education, which are created or maintained by a physician, psychiatrist, psychologist, or other recognized professional or para-professional acting in his professional or para-professional capacity, or assisting in that capacity, and which are created, maintained, or used only in connection with the provision of treatment to the student, and are not available to anyone other than persons providing such treatment; provided, however, that such records can be personally reviewed by a physician or other appropriate professional of the student's choice.*

*(C) Nothing in this section shall be construed to alter the confidentiality of communications otherwise protected by law as confidential.*

*(5)(A) For the purposes of this section the term "directory information" relating to a student includes the following: the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student.*

*(B) Any educational agency or institution making public directory information shall give public notice of the categories of information which it has designated as such information with respect to each student attending the institution or agency and shall allow a reasonable period of time after such notice has been given for a parent to inform the institution or agency that any or all of the information designated should not be released without the parent's prior consent.*

*(6) For the purposes of this section, the term "student" includes any person with respect to whom an educational agency or institution maintains education records or personally identifiable information, but does not include a person who has not been in attendance at such agency or institution.*

"(b)(1) No funds shall be made available under any applicable program to any [State or local educational agency, any institution of higher education, any community college, any school, agency offering a preschool program, or any other educational institution] *educational agency or institution which has a policy or practice* of permitting the release of [personally identifiable records or files (or personal information contained therein)] *education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a))* of students without the written consent of their parents to any individual, agency, or organization, other than to the following—

(A) other school officials, including teachers within the educational institution or local educational agency [who], *who have been determined by such agency or institution to* have legitimate educational interests;

(B) officials of other schools or school systems in which the student *seeks or*, intends to enroll, upon condition that the student's parents be notified of the transfer, receive a copy of the record if desired, and have an opportunity for a hearing to challenge the content of the record;

(C) authorized representatives of (i) the Comptroller General of the United States, (ii) the Secretary, (iii) an administrative head of an education agency (as defined in section [409] 408(c) of this Act), or (iv) State educational authorities, under the conditions set forth in paragraph (3) of this subsection; and

(D) in connection with a student's application for, or receipt of, financial aid;

*(E) State and local officials or authorities to which such information is specifically required to be reported or disclosed pursuant to State statute;*

*(F) organizations of educational agencies or institutions for the purpose of developing, validating, and administering predictive tests, if such information will not permit the identification of any person by the organization receiving such information;*

*(G) accrediting organizations in order to carry out their accrediting functions;*

*(H) parents of a dependent student of such parents, as defined in section 152 of the Internal Revenue Code of 1954; and*

*(I) subject to regulations of the Secretary, in connection with an emergency, appropriate persons if the knowledge of such information is necessary to protect the health or safety of the student or other persons.*

(2) No funds shall be made available under any applicable program to any [State or local educational agency, any institution of higher education, any community college, any school, agency offering a preschool program, or any other educational institution] *education agency or institution* which has a policy or practice of [furnishing, in any form, any personally identifiable information contained in personal school records, to any present other than those listed in subsection (b)(1)] *releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection* unless—

(A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or

(B) such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency.

(3) Nothing contained in this section shall preclude authorized representatives of (A) the Comptroller General of the United States, (B) the Secretary, (C) an administrative head of an education agency or (D) State educational authorities from having access to student or other records which may be necessary in connection with the audit and evaluation of Federally supported education program, or in connection with the enforcement of the Federal legal requirements which relate to such programs: *Provided*, That, except when collection of personally identifiable data is specifically authorized by Federal law, any data collected by such officials with respect to individual students shall not include information (including social security numbers) which would permit the personal identification of such students or their parents [after the data so obtained has been collected] *by such officials or agencies.*

[(4)(A) With respect to subsections (c)(1) and (c)(2) and (c)(3), all persons, agencies, or organizations desiring access to the records of a student shall be required to sign a written form which shall be kept permanently with the file of the student, but only for inspection by the parents or student, indicating specifically the legitimate educational or other interest that each person, agency, or organization has in seeking this information. Such form shall be available to parents and to the school official responsible for record maintenance as a means of auditing the operation of the system.]

*(4)(A) Each educational agency or institution shall maintain a record, kept with the education records of each student, which will indicate all individuals (other than those specified in paragraph (1)(A) of this subsection), agencies, or organizations which have requested or obtained access to a student's education records maintained by such educational agency or institution, and which will indicate specifically the legitimate interest that each such person, agency, or organization has in obtaining this information. Such record of access shall be available only to parents, to the school official and his assistants who are responsible for the custody of such records, and to persons or organizations authorized in, and under the conditions of, clauses (A) and (C) of paragraph (1) as a means of auditing the operation of the system.*

(B) With respect to this subsection, personal information shall only be transferred to a third party on the condition that such party will not permit any other party to have access to such information without the written consent of the parents of the student.

(c) The Secretary shall adopt appropriate regulations to protect the rights of privacy of students and their families in connection with any surveys or data-gathering activities conducted, assisted, or authorized by the Secretary or an administrative head of an education agency. Regulations established under this subsection shall include provisions controlling the use, dissemination, and protection of such data. No survey or data-gathering activities shall be conducted by the Secretary, or an administrative head of an education agency under an applicable program, unless such activities are authorized by law.

(d) For the purposes of this section, whenever a student has attained eighteen years of age, or is attending an institution of postsecondary education the permission or consent required of and the rights accorded to the parents of the student shall thereafter only be required of and accorded to the student.

(e) No funds shall be made available under any applicable program [unless the recipient of such funds] to *any educational agency or institution unless such agency or institution* informs the parents of students, or the students, if they are eighteen years of age or older, or are attending an institution of postsecondary education, of the rights accorded them by this section.

(f) The Secretary, or an administrative head of an education agency, shall take appropriate actions to enforce provisions of this section and to deal with violations of this

section, according to the provisions of this Act, except that action to terminate assistance may be taken only if the Secretary finds there has been a failure to comply with the provisions of this section, and he has determined that compliance cannot be secured by voluntary means.

(g) The Secretary shall establish or designate an office and review board within the Department of Health, Education, and Welfare for the purpose of investigating, processing, reviewing, and adjudicating violations of the provisions of this section and complaints which may be filed concerning alleged violations of this section [according to the procedures contained in sections 434 and 437 of this Act]. *Except for the conduct of hearings, none of the functions of the Secretary under this section shall be carried out in any of the regional offices of such Department.*

The PRESIDING OFFICER. The question is on agreeing to the amendment of the Senator from New York and the Senator from Rhode Island.

The amendment was agreed to.

The PRESIDING OFFICER. The question is on agreeing to the motion of the Senator from Rhode Island to concur in the House amendment with an amendment.

The motion was agreed to.

Mr. PELL. Mr. President, I move that the Senate insist upon its amendments and ask for a conference with the House, and that the Chair be authorized to appoint the conferees on the part of the Senate.

The motion was agreed to; and the Presiding Officer (Mr. WILLIAMS) appointed Mr. PELL, Mr. RANDOLPH, Mr. WILLIAMS, Mr. KENNEDY, Mr. MONDALE, Mr. EAGLETON, Mr. CRANSTON, Mr. HATHAWAY, Mr. DOMINICK, Mr. JAVITS, Mr. SCHWEIKER, Mr. BEALL, and Mr. STAFFORD conferees on the part of the Senate.

## SUPPLEMENTAL APPROPRIATIONS, 1975—CONFERENCE REPORT

The Senate continued with the consideration of the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H.R. 16900) making supplemental appropriations for the fiscal year ending June 30, 1975, and for other purposes.

## CLOTURE MOTION

Mr. ROBERT C. BYRD. Mr. President, I send to the desk a cloture motion.

The PRESIDING OFFICER (Mr. WILLIAMS). The cloture motion having been presented under rule XXII, the Chair, without objection, directs the clerk to read the motion.

The legislative clerk read as follows:

CLOTURE MOTION

We, the undersigned Senators, in accordance with the provisions of Rule XXII of the Standing Rules of the Senate, hereby move to bring to a close the debate upon the amendment by the Senator from Pennsylvania (Mr. SCOTT) to House Amendment No. 17 to H.R. 16900, the Supplemental Appropriation Bill for 1975.

Pete Domenici, Robert Taft, Jr., Robert T. Stafford, Charles Percy, James B. Pearson, Jacob K. Javits, Hugh Scott, Clifford P. Case, Jennings Randolph, John O. Pastore, Warren G. Magnuson, Frank E. Moss, Claiborne Pell, Harrison A. Williams, Abraham Ribicoff, Frank Church, Quentin N. Burdick, Walter F. Mondale, Alan Cranston.

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that the 1 hour under rule XXII tomorrow customarily used for debate on the motion to invoke cloture, on the Scott amendment to the amendment in disagreement No. 17 of the Supplemental Appropriation conference report, be equally divided between the Senator from Alabama (Mr. ALLEN) and the Senator from Pennsylvania (Mr. HUGH SCOTT).

The PRESIDING OFFICER. Without objection, it is so ordered.

## AMENDMENT OF THE EXPORT-IMPORT BANK ACT—CONFERENCE REPORT

The Senate continued with the consideration of the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H.R. 15977) to amend the Export-Import Bank Act of 1945, and for other purposes.

## CLOTURE MOTION

Mr. ROBERT C. BYRD. Mr. President, I send to the desk a cloture motion.

The PRESIDING OFFICER (Mr. WILLIAMS). The cloture motion having been presented under rule XXII, the Chair, without objection, directs the clerk to read the motion.

The legislative clerk read as follows:

CLOTURE MOTION

We, the undersigned Senators, in accordance with the provisions of Rule XXII of the Standing Rules of the Senate, hereby move to bring to a close the debate upon the adoption of the conference report on H.R. 15977, the Export-Import Bank Act Amendment.

Bob Packwood, John Tower, Edward W. Brooke, Paul J. Fannin, J. Glenn Beall, Adlai Stevenson, Thomas J. McIntyre, Walter F. Mondale, Dick Clark, Frank E. Moss, Lee Metcalf, Daniel Inouye, Gale W. McGee, Harrison A. Williams, Claiborne Pell, Edward Kennedy, Robert Stafford, Robert Taft, Jr., Charles W. Percy, Jacob K. Javits.

## ORDER TO HOLD RESOLUTIONS ON DEFERRALS AT THE DESK

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that two resolutions at the desk on deferrals, one by Mr. BENNETT and one by Mr. HUMPHREY, be held at the desk for later disposition. I further request that the later disposition not be had without my having first been contacted.

The PRESIDING OFFICER. Without objection, it is so ordered.

## COMMITTEE MEETINGS DURING SENATE SESSIONS

Mr. ROBERT C. BYRD. Mr. President, on behalf of the Senator from Michigan (Mr. HART) I ask unanimous consent that the Subcommittee on Administrative Practices of the Committee on the Judiciary be authorized to conduct hearings on amnesty on Wednesday and Thursday, December 18 and 19.

The PRESIDING OFFICER. Without objection, it is so ordered.

Mr. ROBERT C. BYRD. I ask unanimous consent that the Committee on the Judiciary be authorized to meet on Thursday, December 19, to consider various nominations, and that the Committee on the Budget be authorized to meet Tuesday, December 17, Wednesday, December 18, and Thursday, December 19, to consider the impact of the changing economy on appropriate fiscal policies.

The PRESIDING OFFICER. Without objection, it is so ordered.

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that the Committee on the Judiciary be authorized to meet on Monday, December 16, to consider the nomination of Murray Saltzman to be a member of the Commission on Civil Rights.

The PRESIDING OFFICER. Without objection, it is so ordered.

## CONSIDERATION OF CERTAIN MEASURES ON THE CALENDAR

Mr. ROBERT C. BYRD. Mr. President, I ask unanimous consent that the Senate proceed to the immediate consideration of the following measures on the calendar: Calendar Order No. 1248, Calendar Order No. 1264, Calendar Order No. 1266, Calendar Order No. 1267, Calendar Order No. 1270, and Calendar Order No. 1272.

The PRESIDING OFFICER. Without objection, it is ordered.

## CHILDREN'S GIFT BELL MEMORIAL

The Senate proceeded to consider the joint resolution (S.J. Res. 212) to authorize the erection of a Children's Gift Bell and Memorial Tower in the District of Columbia, and for other purposes, which had been reported from the Committee on Public Works with an amendment to strike out all after the resolving clause and insert in lieu thereof:

That the American Freedom Train Foundation is authorized to erect a Children's Gift Bell memorial bell tower of appropriate design on public grounds in the District of Columbia or its environs, in honor of the bicentennial celebration of the signing of the Declaration of Independence.

SEC. 2. (a) The Secretary of the Interior is authorized and directed to select, with the approval of the National Commission of Fine Arts and the National Capital Planning Commission, a suitable site on public grounds in the District of Columbia, or its environs, upon which may be erected the memorial authorized in the first section of this Act: *Provided*, That if the site selected is on public grounds belonging to or under the jurisdiction of the government of the District of Columbia, the approval of the Mayor and City Council of the District of Columbia shall be obtained.

(b) The design and plans for such memorial bell tower shall be subject to the approval of the Secretary of the Interior, the National Commission of Fine Arts, and the National Capital Planning Commission.

SEC. 3. The memorial authorized to be erected by the first section of this Act shall be erected without expense to the United States and shall be maintained by the Secretary of the Interior.

SEC. 4. The authority granted by the first section of this Act shall terminate three