Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
904 Rio Grande St., Suite 100
Austin, Texas 78701
Telephone: 512-200-8028
julie.liddell@edtech.law
andrew.liddell@edtech.law

[Additional Counsel Listed on Signature Page]

*Counsel for Plaintiffs and the Putative Class Members*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

EMILY CHERKIN, et al.,

Plaintiffs,

v.

POWERSCHOOL HOLDINGS, INC.,

Defendant.

Case No.: 3:24-cv-02706-JD

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON POWERSCHOOL'S CONSENT DEFENSES**

Judge: The Honorable James Donato

Hearing
Date: August 13, 2026
Time: 11:00 a.m.
Courtroom: 11, 19th Floor

**TO THE COURT, DEFENDANT, AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 13, 2026, at 11:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 11, 19th Floor of the Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs move the Court for an Order under Federal Rules of Civil Procedure 56 that:

(1) as a matter of law, FERPA does not provide a private defense to the alleged conduct;

(2) there is no evidence that schools are parents' agents for the purpose of obtaining parents' express or implied consent to the alleged conduct;

(3) PowerSchool's contracts with its school customers are not evidence that schools did, in fact, obtain express parent consent to the alleged conduct; and

(4) there is no evidence that parents impliedly consented to the alleged conduct.

Dated: May 26, 2026

Respectfully submitted,

By /s/ *Julie U. Liddell*
Julie U. Liddell (*pro hac vice*)
W. Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
904 Rio Grande St. Suite 100
Austin, Texas 78701
Telephone: (512) 200-8028
julie.liddell@edtech.law
andrew.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602)840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Whitney Siehl (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite2410
Chicago, Illinois 60611
whitneys@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

*Attorneys for Plaintiffs and the Putative Class Members*

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The First Affirmative Defense fails because the affirmative defense of consent must be based on consent provided directly by plaintiffs or through their agent. .......... 2

B. Schools' purported compliance with student-records statutes do not support PowerSchool's First Affirmative Defense .......... 3

C. Statutes regulating schools' disclosure of student records do not preempt all other laws protecting students' informational privacy. .......... 6

D. PowerSchool is bound to its contentions regarding its first defense that it articulated in response to Plaintiffs' interrogatory request. .......... 8

III. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
No. 11-CV-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) (Koh, J.) .................................... 9, 10

*Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*,
377 F. Supp. 3d 990 (N.D. Cal. 2019) .................................... 9, 10

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
227 F.R.D. 313(C.D. Cal. 2004) .................................... 10

*Costello v. Grundon*,
651 F.3d 614 (7th Cir. 2011) .................................... 3, 4

*DeGrassi v. City of Glendora*,
207 F.3d 636 (9th Cir. 2000) .................................... 4

*Dudding v. Automatic Gas Co.*,
145 Tex. 1, 193 S.W.2d 517 (1946) .................................... 5

*Farnsworth v. Massey*,
365 S.W.2d 1 (Tex. 1963) .................................... 4

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) (Donato, J.) .................................... 2, 3

*Hall v. Fiat Chrysler Am. US LLC*,
No. SA CV 21-00762-CJC, 2023 WL 11518071 (C.D. Cal. May 15, 2023) .................................... 9

*Heldt v. Guardian Life Ins. Co. of Am.*,
No. 16-CV-885-BAS-NLS, 2019 WL 651503 (S.D. Cal. Feb. 15, 2019) .................................... 2, 3

*Hill v. Nat'l Collegiate Athletic Assn.*,
865 P.2d 633 (Cal. 1994) .................................... 7

*Howard v. Omni Hotels Mgmt. Corp.*,
203 Cal. App. 4th 403 (2012) .................................... 5

*Jacob B. v. Cnty. of Shasta*,
154 P.3d 1003 (Cal. 2007) .................................... 7, 8

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .................................... 2, 3

*Law v. Gen. Motors Corp.*,
114 F.3d 908 (9th Cir. 1997) .................................... 7

*Mathews v. Becerra*,
455 P.3d 277 (Cal. 2019) ....... 8

*Metro. Life Ins. Co. v. Oyedele*,
No. 12-CV-04607-JD, 2014 WL 6985079 (N.D. Cal. Dec. 10, 2014) ....... 1

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*,
256 F.R.D. 678 (C.D. Cal. 2009) ....... 9

*Ramirez v. Plough, Inc.*,
863 P.2d 167 (1993) ....... 4

*Rental Hous. Owners Assn. of S. Alameda Cnty., Inc. v. City of Hayward*,
200 Cal. App. 4th 81 (2011) ....... 3

*Slater v. Fed. Deposit Ins. Corp.*,
No. 23-CV-03703-JD, 2025 WL 2917318 (N.D. Cal. Oct. 14, 2025) (Donato, J.) ....... 11

*St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*,
218 F.3d 232 (3d Cir. 2000) ....... 4

*Urenia v. Pub. Storage*,
2013 WL 4536562 (C.D. Cal. Aug. 27, 2013) ....... 4

**Statutes**

Cal. Educ. Code § 49073 ....... 8

Family Educational Rights and Privacy Act ....... *passim*

**Other Authorities**

California Constitution ....... 7, 8, 10

Restatement (Second) of Torts § 892A (1979) §§ 1, 2(a) ....... 2, 3

Federal Rule of Civil Procedure 11 ....... 9

Federal Rule of Civil Procedure Rule 26 ....... 9

## I. INTRODUCTION

In its Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Opposition"), PowerSchool discusses several issues that are nonresponsive to Plaintiffs' Motion for Summary Judgment on PowerSchool's Consent Defenses ("Motion"), mischaracterizes arguments in Plaintiffs' Motion, mischaracterizes and disregards much of its own response to a contention interrogatory about its consent defenses, and attempts to bring untimely new defensive theories. *See* Opposition [Dkt. 170].[1]

Plaintiffs' Motion narrowly focuses on only PowerSchool's affirmative defenses of consent.[2] *See* Motion [Dkt. 164]. Contrary to PowerSchool's mischaracterizations, Plaintiffs do not contend that the Family Educational Rights and Privacy Act ("FERPA"), its California counterpart, or PowerSchool's contracts with schools are irrelevant, and they do not ask this Court to "overturn state statutes and undermine the [Education Department]'s FERPA regulation." Opposition [Dkt. 170] at 9, 21, 32.[3] Rather, they assert that, as a matter of law, those statutes and contracts do not constitute a valid *affirmative defense* to any of Plaintiffs' claims.

PowerSchool's Opposition only further confirms that its First Affirmative Defense is not valid because (1) PowerSchool insists that its first defense is not based on actual parental consent—either directly or through an agent, as a showing of consent requires—and is instead based on government authorizations and principles of representative democracy, and (2) the "governmental authorizations" cited by PowerSchool simply do not constitute an affirmative defense in this case.

---

[1] PowerSchool's seven-page "BACKGROUND" section consists almost entirely of substantive, if irrelevant, arguments. *See* Opposition [Dkt. 170] at 10–12 (arguments concerning the lawfulness of PowerSchool's data practices), 12–13 (arguments regarding the effect of disputed statutes), 13–16 (arguments about community involvement in school contracts), 16 (arguments concerning school representations). None of these facts are material to the issues raised in Plaintiffs' Motion and need not be considered, as the Motion addresses only PowerSchool's affirmative defenses of consent. As this Court has stated: "Only disputes over material facts will preclude summary judgment; factual disputes that are irrelevant or unnecessary will not be counted." *Metro. Life Ins. Co. v. Oyedele*, No. 12-CV-04607-JD, 2014 WL 6985079, at *3 (N.D. Cal. Dec. 10, 2014) (Donato J.) (cleaned up).

[2] Plaintiffs' Motion challenges PowerSchool's First Affirmative Defense and a portion of its Third Affirmative Defense. Because PowerSchool withdrew the challenged portion of its Third Affirmative Defense in its Opposition, [Dkt. 170] at 10, 32, Plaintiffs address only PowerSchool's First Affirmative Defense in this reply brief.

[3] "ED" is the preferred acronym for the U.S. Department of Education. "DOE" stands for the Department of Energy. *See* ED*Facts* Acronym List, https://www.ed.gov/sites/ed/files/about/inits/ed/edfacts/eden/ess/acronym-list.pdf (accessed May 25, 2026).

Because PowerSchool's First Affirmative Defense fails as a matter of law and PowerSchool withdraws the challenged portion of its Third Affirmative Defense, the Court should grant Plaintiffs' Motion in its entirety.

## II. ARGUMENT

### A. The First Affirmative Defense fails because the affirmative defense of consent must be based on consent provided directly by plaintiffs or through their agent.

A party may prove the affirmative defense of consent only if the purported consent was provided by the person alleging harm or that person's agent. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574–75 (N.D. Cal. 2025) (Donato, J.) (Consent must be "actual," and "is only effective if *the person alleging harm* consented to the particular conduct, or to substantially the same conduct) (emphasis added) (cleaned up); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) ("*Plaintiffs*' consent is a defense to [California common-law and constitutional privacy claims]") (emphasis added); *Heldt v. Guardian Life Ins. Co. of Am.*, No. 16-CV-885-BAS-NLS, 2019 WL 651503, at *6 (S.D. Cal. Feb. 15, 2019) ("A plaintiff cannot have a reasonable expectation of privacy if *she* consented to the intrusion[,]"and "[c]onsent is effective if *the person alleging harm* consented to the particular conduct") (quoting *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (emphases added); Restatement (Second) of Torts § 892A (1979) §§ 1, 2(a) ("One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it" and "[t]o be effective, consent must be by one who has the capacity to consent or by a person empowered to consent for him[.]").

In its Opposition, PowerSchool repeatedly stresses that its First Affirmative Defense is based on government authorization and principles of representative democracy and *not* on actual consent from parents either directly or through their agent. Specifically, PowerSchool states that the defense "does not turn at all on whether parents also consented on their own behalf to the challenged conduct." Opposition [Dkt. 170] at 31. Instead, PowerSchool argues that it obtained consent from "governments—including legislatures and elected school boards," which have statutory "authority as representatives of the people" to do to so on parents' behalf. *Id.* PowerSchool concludes that "the question of whether schools actually obtained parental consent per their contractual commitments to PowerSchool is irrelevant to the [First Affirmative Defense]." *Id.* at 31–32.

PowerSchool further emphasizes that its First Affirmative Defense is not based on common-law agency principles. It states that "[p]laintiffs [were] wrong [in their Motion] to treat the [First Affirmative Defense] as raising common law agency," that "PowerSchool's [First Affirmative Defense] does not raise a principal-agent argument," and that "schools represent and bind parents because of statutes and principles of representative democracy, not common law agency." *Id.* at 28, 31. But PowerSchool cites no law that would permit "governments" to consent on plaintiffs' behalf to the collection of their personal information. Rather, only an authorized agent may consent on a person's behalf, the requirements of which are defined at common law. *Rental Hous. Owners Assn. of S. Alameda Cnty., Inc. v. City of Hayward*, 200 Cal. App. 4th 81, 91 (2011) ("Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Absent mutual consent, therefore, there can be no agency.") (cleaned up). Because PowerSchool concedes that its first defense is not based on consent obtained directly from plaintiffs or through their agents, PowerSchool does not allege a valid affirmative defense of consent. *See Frasco*, 349 F.R.D. at 574–75; *Lakes*, 777 F. Supp. 3d at 1058; *Heldt*, 2019 WL 651503, at *6; *Rental Hous.*, 200 Cal. App. 4th at 91; Restatement (Second) of Torts § 892A (1979) §§ 1, 2(a).

**B. Schools' purported compliance with student-records statutes do not support PowerSchool's First Affirmative Defense.**

Aware that its consent theory is baseless, PowerSchool now contends that only "governmental authorization"—and not consent—forms the basis of its First Affirmative Defense. Opposition [Dkt. 170] at 17, 31–32.

PowerSchool first argues that "Plaintiffs did not cite cases in support for their position" that FERPA does not serve as a private defense to non-FERPA claims "because it is wrong." *Id.* at 17. In support, PowerSchool cites *Costello v. Grundon*, 651 F.3d 614, 622–24 (7th Cir. 2011), for the proposition that "[n]o private right of action under a statute is necessary to assert . . . that statute as an affirmative defense." *Id.* at 17–18. But PowerSchool grossly misrepresents that case by omitting three crucial words: that sentence actually reads, "No private right of action under a statute is necessary to assert ***a violation of*** that statute as an affirmative defense." *Costello*, 651 F.3d at 624 (emphasis added). Because PowerSchool does not raise a violation of FERPA as an affirmative defense to Plaintiffs' claims, *Costello* and its authority are wholly

irrelevant.[4] Further, *St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*, 218 F.3d 232, 241 (3d Cir. 2000), has nothing to do with statutory violations as a defense to liability and instead discusses federal preemption of state law for purposes of evaluating standing.

PowerSchool then misleadingly conflates that authority with cases discussing the defense of statutory compliance, an entirely different defense than the statutory-violation defense discussed in *Costello* or the standing challenge brought in *St. Thomas*. Opposition [Dkt. 170] at 18. PowerSchool correctly notes that courts have found that when a company complies with applicable labeling regulations, a plaintiff cannot prevail on a product-liability claim based on inadequate labeling. *Id.* PowerSchool then erroneously argues that it complies with FERPA and analogous state law and thus is shielded from liability under privacy laws. *Id.* at 18–20.

The cases PowerSchool cites stand for the uncontroversial proposition that, in certain cases, courts may treat a defendant's compliance with laws that govern the defendant as a defense to liability for claims not brought under those laws.[5] *See Ramirez v. Plough, Inc.*, 863 P.2d 167, 172-77 (1993) (holding that company's compliance with federal regulations expressly prescribing industry standards of care was a defense to product liability); *DeGrassi v. City of Glendora*, 207 F.3d 636, 643–44 (9th Cir. 2000) (affirming district court's dismissal of plaintiff's civil-rights claim against the city because the city complied with statutes regulating the city's conduct that was the basis of the claim). *Farnsworth v. Massey*, 365 S.W.2d 1, 5 (Tex. 1963) (holding bank not liable for fraud where it managed the business transaction at issue in compliance with laws governing banks'

---

[4] This Court's standing order makes clear that "[a]ll case citations and factual statements must be completely accurate." Standing Order for Civil Cases Before Judge James Donato (Jan. 5, 2017) at ¶ 23. Specifically, it states that "Counsel must ensure that use of ellipses or elisions in quotes does not mislead the Court or misrepresent the substance of the holding or other authority." *Id.* Any such misrepresentations, "however subtle, may result in sanctions and a referral to the District's Standing Committee on Professional Conduct." *Id.* This is not the first time counsel for PowerSchool has misrepresented the plain meaning of case law to this Court. *See* Plaintiffs' Opposition to Defendant PowerSchool Holding, Inc's Motion to Amend its Answer [Dkt. 113] at 15; Reply Brief, *infra* at 7-8 & n.7 (misleadingly omitting critical language from cited authority and replacing it with PowerSchool's own language that mischaracterizes the omitted language).

[5] PowerSchool also misrepresents the relevance of another case, *see* Opposition [Dkt. 170] at 18 n.45: *Urenia v. Pub. Storage*, 2013 WL 4536562, at *2 (C.D. Cal. Aug. 27, 2013), did not involve a defense of statutory compliance; instead, the court rejected plaintiffs' claim that the bank improperly foreclosed on her property because it failed to follow HUD guidelines, noting in *dicta* only that "HUD regulations may prevent a foreclosure before it occurs, after a foreclosure happens a plaintiff may not use those regulations to 'bring a private right of action against the lenders.'"

management of such transactions); *Dudding v. Automatic Gas Co.*, 145 Tex. 1, 7, 193 S.W.2d 517, 520-21 (1946) (rejecting nuisance claim against gas company where challenged conduct was expressly authorized by "comprehensive regulations for the safe handling of liquefied petroleum gases" governing gas companies and adopted by the legislature). But the question of whether a regulated company's compliance with regulations governing the company can shield the company from liability stemming from regulated conduct does not speak to the issue here, which is whether schools' compliance with laws regulating schools' policies governing disclosure of student records shields their *third party vendor* from liability for the vendor's collection, use, and disclosure of student information.

PowerSchool's cases are thus distinguishable for all the reasons discussed in the Motion, most notably: (1) FERPA regulates only schools and does not regulate companies; (2) FERPA does not create a comprehensive regulatory scheme governing student privacy; (3) FERPA does not preempt claims against private companies that are not subject to FERPA; and (4) construing FERPA as creating a private defense but not a private right of action would wholly and impermissibly subvert FERPA's express purpose. Motion [Dkt. 164] at 11–17.

Instead of engaging with those arguments, PowerSchool simply equates itself with its school customers for the sole purpose of avoiding liability. Opposition [Dkt. 170] at 17–20. It then further argues that Plaintiffs do not accuse PowerSchool of violating its contracts with schools. *Id.* at 20. True: Plaintiffs have not sued PowerSchool for breach of contract; they have sued PowerSchool for violating their privacy in taking, using, and sharing their personal information. And now they contend that PowerSchool may not raise its school customers' purported compliance with FERPA or analogous state law—or PowerSchool's purported adherence to its contracts with schools—as an affirmative defense to their claims.

The present case is more akin to typical product-liability cases, in which evidence that the defendant complied with governmental regulations does not preclude imposition of liability for a defective product; rather, it is merely evidence to be considered by the jury in assessing liability. *See Howard v. Omni Hotels Mgmt. Corp.*, 203 Cal. App. 4th 403, 421 (2012). Similarly, evidence that PowerSchool receives and uses student information in keeping with student-records statutes governing schools may help show that its conduct does not violate students' privacy, just as evidence that PowerSchool takes, uses, and shares student information in

excess of those statutes may help show that it does. No such evidence, however, would operate as a complete defense to liability, as those statutes do not provide a comprehensive, preemptive scheme regulating a company's collection, use, and disclosure of student information. Indeed, they do not regulate companies at all.

### C. Statutes regulating schools' disclosure of student records do not preempt all other laws protecting students' informational privacy.

PowerSchool next contends that Plaintiffs' claims are preempted by FERPA and analogous state law regulating schools' policies governing disclosure of student records. It inexplicably argues that "Plaintiffs' motion fails because they never address preemption and instead ask the Court to use their common law and broad constitutional claims to overturn state statutes and undermine the [Education Department]'s FERPA regulation." Opposition [Dkt. 170] at 21.

Plaintiffs do address preemption: Section IV(A)(5) of their Motion is entitled, "**FERPA does not preempt more protective state law**." Motion [Dkt. 164] at 16. There, Plaintiffs explain why FERPA does not preempt their claims. *Id.* at 16–17. To recap: FERPA regulates schools, not companies, and thus does not preempt state laws governing companies; FERPA is a spending-clause statute, which is more akin to a contract between federal and state governments than a comprehensive regulatory scheme; federal statutes rarely preempt state laws on matters traditionally governed by states, such as minors' privacy; and California courts have only held that FERPA preempts *less* protective state law. *Id.*

Instead of engaging with Plaintiffs' arguments, PowerSchool argues that California's student-records statute preempts Plaintiffs' claims. Opposition [Dkt. 170] at 22–24. But, to the extent PowerSchool preserved this argument, it is mostly a recasting of its arguments that purported compliance with that statute creates a complete defense to Plaintiffs' claims. Again, while such evidence, if it exists, may militate in favor of PowerSchool in a balancing of factors relevant to analysis of Plaintiffs' privacy claims, it does not support an affirmative defense of consent and is not dispositive of any claim.

PowerSchool's FERPA arguments similarly rehash its previous arguments, *id.* at 24-25, which also fails for the reasons already discussed. As to preemption, PowerSchool merely cites FERPA regulations that

describe how FERPA works. *Id.* at 25–26.[6] But nothing in that language overcomes the "strong presumption" that FERPA does not preempt more protective state law or laws that govern private conduct rather than school conduct. *See Law v. Gen. Motors Corp.*, 114 F.3d 908, 910 (9th Cir. 1997) ("[P]re-emption will not lie unless it is the clear and manifest purpose of Congress.") (cleaned up).[7]

Rather than advance arguments in support of preemption, PowerSchool impermissibly uses the occasion to advance a defense to Plaintiffs' privacy claim under the California Constitution that it waived. Opposition [Dkt. 170] at 24. PowerSchool cites myriad policy arguments in support of California's student-records statute's parental-consent exemptions, such as schools' data-management needs, schools' interest in "opportunities for cost savings, service flexibility, and endurance," and product development. Opposition at 22–24, 23 n.61. It then notes that the "'[t]he constitutional right to privacy has never been absolute,'" quoting *Jacob B. v. Cnty. of Shasta*, 154 P.3d 1003, 1012 (Cal. 2007). Once again, however, PowerSchool misleadingly omits critical language from that sentence, which states: "The constitutional right to privacy has never been absolute; *it is subject to a balancing of interests*." *Id.* (emphasis added) (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 655 (Cal. 1994)). Such "countervailing interests" must be raised as an affirmative defense, *Hill*, 865 P.2d at 657, one which PowerSchool waived.[8] *See* Motion for Leave to Amend [Dkt. 111] at 3 ("The

---

[6] In footnote 59, PowerSchool advances a byzantine argument that Plaintiffs contend that FERPA "creat[es] a blanket privacy expectation[,]" which would mean that Plaintiffs' claims are barred by FERPA. Opposition [Dkt. 170] at 21 n.59. First, the Court need not address "[a]rguments buried in footnotes," Standing Order at ¶ 22. Second, Plaintiffs have never argued that FERPA alone governs students' expectation of privacy and have consistently argued that it does not. *See*, *e.g.*, Motion [Dkt. 164] at 16 (FERPA "cannot be construed as creating a comprehensive regulatory scheme governing student privacy, let alone one that would preempt state-law claims against private entities not subject to FERPA.").

[7] In footnote 62, PowerSchool argues that Education Department guidance supports its position, but again (1) the Court need not address "[a]rguments buried in footnotes," Standing Order at ¶ 22, and (2) counsel misleadingly cites that guidance, which is neither binding nor addresses preemption or companies' parental-consent obligations. *See* Opposition [Dkt. 170] at 26 n.62; Ex. 43 [Dkt. 170–40] at 2, 5 (expressly states that "the contents of this guidance do not have the force and effect of law" and describes when a school may disclose records without parental consent); Exs. 44–45 [Dkt. 170–41] at 2, [170–42] at 2 (excerpts from an online FAQ that discuss only when a *school* need not obtain parental consent); Exs. 46-48 (PowerSchool misleadingly describes as "decision[s] on EdTech vendors" that "deem[ed] all such data sharing as lawful[,]" Opposition [Dkt. 170] at 26 n.62, when in fact those were simply letters from the ED stating that it lacked sufficient information to decide that certain *schools* had violated FERPA, not a decision that all data sharing of any "EdTech vendor" was lawful, as PowerSchool falsely states).

[8] Although *Jacob* held that where "the Legislature has already done the balancing" of competing interests, a court need not conduct additional balancing, it did not overrule *Hill*'s holding that a party must raise those

affirmative defense is that if any invasion of privacy occurred, even though PowerSchool denies such an invasion at all, it would be 'justified because it substantively furthers one or more countervailing interests."') and Order, [Dkt. 121] (denying motion). PowerSchool may not now cite a California statute regulating schools' policies governing disclosure of student records as a countervailing interest justifying PowerSchool's invasion of students' privacy.

Beyond simply omitting the last part of the quoted sentence from *Jacob*, PowerSchool substitutes its own language that "state statutes define the scope of the privacy right." Opposition [Dkt. 170] at 24. That language misleadingly suggests that the right to privacy under the California Constitution is exclusively defined by, or is simply coextensive of, statutes. But *Jacob* contains no such sweeping language and, as the concurring opinion observed, "[b]ecause a statute is subordinate to, and must be in conformity with, the state Constitution, a statutory privilege cannot of its own force defeat a right of action that is required or guaranteed by the state Constitution." *Jacob*, 154 P.3d at 1013 (Kennard, J., concurring). The California Supreme Court has since confirmed that point, observing that "when a statute intrudes on a privacy interest protected by the state Constitution, it is our duty to independently examine the relationship between the statute's means and ends." *Mathews v. Becerra*, 455 P.3d 277, 298 (Cal. 2019). Thus, the existence of FERPA and analogous state law does not supplant or define the boundaries of the right to privacy under the California Constitution. The Court should reject PowerSchool's effort to circumvent its order by mischaracterizing applicable law and shoehorning a waived defense into one timely raised.

Because PowerSchool fails to show that student-record statutes create an affirmative defense to Plaintiffs' claims, Plaintiffs are entitled to summary judgment on its First Affirmative Defense.

### D. PowerSchool is bound to its contentions regarding its first defense that it articulated in response to Plaintiffs' interrogatory request.

In its Opposition, PowerSchool attempts to articulate several new defensive theories, including that

---

interests (even if statutorily codified) as an affirmative defense. *See generally Jacob*, 154 P.3d 1003. Further, unlike the immunity statute at issue in *Jacob*, California's student-records statute does not constitute a comprehensive legislative balancing of all factors relevant to students' informational privacy interests, as it narrowly regulates schools' disclosure of student records to third parties, *not* a private company's collection, use, and disclosure of all personal information of students. *See* Cal. Educ. Code § 49073 *et seq*. Thus, evidence of that statute or statutory compliance would merely constitute a "countervailing interest" this Court could have considered in evaluating Plaintiffs' claim—had PowerSchool timely raised it.

"elected representatives at every level of government" have "the statutory authority to consent to PowerSchool's contracts on their constituents' behalf." Opposition [Dkt. 170] at 28–30. PowerSchool may not, however, belatedly advance new theories and is limited to those pled in its answer and explained in its interrogatory response, as explained below.

Four months after filing suit, Plaintiffs served a contention interrogatory seeking information about PowerSchool's theories regarding its consent defense and then served complimentary requests for production of documents supporting its consent defense. *See* Motion, Exhibit A [Dkt. 164-1] at 21–28, Opposition to Amend Answer [Dkt. 113–1] at 14–16; *Hall v. Fiat Chrysler Am. US LLC*, No. SA CV 21-00762-CJC (DFMX), 2023 WL 11518071, at *10 (C.D. Cal. May 15, 2023) (*citing Baker v. Perez*, No. 09-2757, 2011 WL 2414504, at *2 (E.D. Cal. June 9, 2011)) (serving contention interrogatory under Federal Rule of Civil Procedure 33(a)(2) and then request for production of documents is proper discovery vehicle for seeking information regarding affirmative defense); *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (procedure is consistent with Rule 11, which requires parties to "have some factual basis for their claims and allegations.").

Contention interrogatories "serve an important purpose in helping to discover facts supporting the theories of the parties. Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation." *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003 (N.D. Cal. 2019) (*citing Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012)). Because "answers to contention interrogatories evolve over time as theories of liability and defense begin to take shape . . . . Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, be corrected or supplemented to reflect those changes." *Id.* at 1003–04 (citing *Woods*, 692 F.3d at 1280). Parties have a duty to amend their responses to contention interrogatories "in a timely manner." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) (in a patent case, excluding defendant's late-disclosed theories of "anticipation, obviousness, and other grounds of [the affirmative defense of] invalidity," when the defendant failed to timely amend its response to a contention interrogatory seeking that information) (Koh, J.).

Two months after Plaintiffs served their contention interrogatory, PowerSchool responded to it, providing three theories regarding its First Affirmative Defense, including that (1) FERPA and its California counterpart authorize PowerSchool's practices without requiring it to obtain parental consent, (2) schools consent as parents' agents, and (3) schools contractually agree that they obtained or will obtain parental consent. *See* Mot., Exhibit A. If PowerSchool intended to advance new theories in support of its defenses, it had a duty to supplement its response as the case progressed and before the close of discovery. *Asia Vital*, 377 F. Supp. 3d at 1003–04; *Apple*, 2012 WL 3155574, at *5. It did not do so.

Because PowerSchool never raised those theories, Plaintiffs' Motion did not address them. PowerSchool may not take this opportunity to raise arguments that it failed to timely raise. Instead, it is limited to the theories offered in its response to the interrogatory and is not permitted to raise several new theories in its Opposition. Accordingly, the Court may strike the portion of PowerSchool's Opposition advancing new theories. *See Apple,* 2012 WL 3155574, at *5 (affirming district court's exclusion of new theories not disclosed in response to contention interrogatory and before close of fact discovery); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.,* 227 F.R.D. 313, 324–25, 325 n.39(C.D. Cal. 2004) (striking new liability theories raised by plaintiff for the first time in summary-judgment motion).

**E. Even if PowerSchool had preserved its arguments, they are meritless.**

Quoting broadly from the California Constitution and statutes to John Locke and Thomas Aquinas, PowerSchool explains that laws are both permissible and necessary, including those that govern education. Opposition [Dkt. 170] at 28–29. However, Plaintiffs do not argue, and have never argued, that states may not pass laws, that individuals need not follow such laws, or that laws are not a necessary part of a functioning society or education system. The legal and philosophical legitimacy of such laws does not change the fact that those laws do not create an affirmative defense in favor of PowerSchool to Plaintiffs' claims, as explained exhaustively herein.

Further, that local governments are involved in the procurement process is similarly irrelevant. *Id.* at 30. That school boards may enter into agreements with PowerSchool for services is not dispositive of whether PowerSchool may take, use, and share student information without effective parental consent. PowerSchool

cites no law granting school boards carte blanche authority to permit private companies to mine and monetize students' data without parental consent, and none exists.

PowerSchool then argues that "schools' agreement to obtain any necessary consents from parents does not change that" school boards represent their constituents. *Id.* at 31. Correct: a school may agree to obtain parental consent; if it fails to do so, however, its representations—while perhaps supporting a contract claim against the school—would not shield PowerSchool from liability for its nonconsensual collection of use of student information.

Confoundingly, PowerSchool next contends that its contracts with schools are irrelevant to its first defense because "[t]he defense ***does not turn at all on whether parents also consented on their own behalf to the challenged conduct***." *Id.* (emphasis in original). But PowerSchool cites those contracts extensively in support of its first defense, including its Opposition. *See*, *e.g.*, Defendant PowerSchool Holdings, Inc.'s Answer to First Amended Class Action Complaint [Dkt. 146] at 115–16 (citing school contracts in which schools purportedly consent on behalf of parents); Motion, Exhibit A [Dkt. 164-1] at 23–26 (same); Opposition at 8–9, 13–16, 19, 30; Opposition Exs. 20, 21, 22. And, again, PowerSchool is free to present evidence of such contracts and argue that it militates against a finding of liability. But those contracts simply do not create an affirmative defense in favor of PowerSchool.

## III. CONCLUSION

Plaintiffs respectfully request that the Court grant summary judgment in favor of Plaintiffs as to PowerSchool's First Affirmative Defense in its entirety for the reasons stated, and as to PowerSchool's Third Affirmative Defense in part, both for the reasons stated and because PowerSchool agreed to withdraw that portion of its defense.

To the extent that the Court concludes that Plaintiffs are not entitled to summary judgment as to the entire First Affirmative Defense, Plaintiffs respectfully request that the Court grant summary judgment as to those portions of the defense for which there is no genuine issue of material fact. *See Slater v. Fed. Deposit Ins. Corp.*, No. 23-CV-03703-JD, 2025 WL 2917318, at *1 (N.D. Cal. Oct. 14, 2025) ("The Court may dispose of less than the entire case and even just portions of a claim or defense.") (Donato, J.) (citations omitted).

Dated: May 26, 2026

Respectfully submitted,

By /s/ *Julie U. Liddell*

Julie U. Liddell (*pro hac vice*)
W. Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
904 Rio Grande St. Suite 100
Austin, Texas 78701
Telephone: (512) 200-8028
andrew.liddell@edtech.law
julie.liddell@edtech.law

Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602)840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Whitney Siehl (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite2410
Chicago, Illinois 60611
whitneys@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

*Attorneys for Plaintiffs and the Putative Class Members*