# Exhibit 5



# Student Data Privacy Project

Department of Education, Advocacy Listening Session
Thursday, February 17, 2022

Good afternoon-

Thank you to the Department of Education, SPPO and PTAC for inviting us here to speak today. My name is Joel Schwarz. I am an attorney, a consultant on privacy and data protection, and an adjunct law professor, teaching courses on privacy and cybersecurity. I'm also co-founder and Board Member of the Student Data Privacy Project (SDPP), and a concerned parent with 4 children; 3 in the Montgomery County, Maryland Public School system, and one soon to join them.

While I'd usually dedicate some time initially to discussing the history of the Family Educational Rights and Privacy Act (FERPA), I wouldn't presume to delve into an area that I'm confident you're far more familiar with than I.  So let me jump right to the heart of the problems we're seeing.

Even before the pandemic, many parents were growing increasingly concerned about technology in the classroom, and the personal information being collected, maintained and shared. With COVID-19 and the shift to remote learning, reliance on Ed Tech providers has increased exponentially.[1]  And while many parents have tried to address this problem through our local schools, we've been woefully unsuccessful, largely due to the fact that schools are consenting to this sharing on our children's behalf, without our input or consent, and in some cases without even our knowledge.

Of course, I'm speaking of **FERPA's "School Official Exception,"** which allows schools to disclose our children's data to an Ed Tech provider, for a legitimate educational purpose, without parental consent, so long as the school maintains "direct control" over the provider.

And as you know, the **Department of Education (DoE) has consistently asserted that direct control can be established through use of a contract** between the parties, regardless of how one-sided or oppressive those contracts may be in the tech space. **Even a website Terms of Service (ToS) can suffice** to fulfill this "direct control" obligation, according to DoE.

But realistically speaking, we all know that contracts and ToS from tech providers are generally take-it-or-leave-it propositions, always heavily balanced in favor of the party offering the contract or ToS.  In law school, we called these contracts of adhesion.  In Ed Tech, we call these contractually validated free-for-alls.

Considering the purpose for FERPA's "direct control" requirement, does anyone truly believe that a contract or ToS with Google or Naviance really provides a school with direct control over them?  It's questionable whether even Congress is able to assert direct control over Google, much less a small school district somewhere in the middle of the U.S.

---

[1] *See What's At Stake*, THE STUDENT DATA PRIVACY PROJECT, https://www.studentdataprivacyproject.com/.

Page | 1

CHERKIN_005299



# Student Data Privacy Project

Just as importantly, how many schools have the knowledge and resources to actually oversee these Ed Tech providers and enforce any privacy oversight provisions in these contracts or ToS', assuming they even exist?

To take our school district for example - Montgomery County Public Schools (MCPS), in Maryland - there is no dedicated privacy officer, despite being the largest school district in the State, with over 160,000 students.

Yet not having the resources or knowledge to oversee these Ed Tech providers, hasn't stopped MCPS from approving the use of literally hundreds of Ed Tech providers and their apps for use in the schools. **As of February 15, 2022, MCPS listed 253 "approved" apps for use in its school.[2] Does anyone really believe a school district is maintaining "direct control" over 250+ Ed Tech providers?**

In essence, schools struggle with limited resources, lack dedicated privacy resources, and have little to no experience in oversight, yet willingly allow hundreds of Ed Tech providers to hoover up student data, all day, every day. **Even if a school district wanted to exercise "direct control," it's just not practical to do so.**

Yet from the school perspective, there's really no downside to enabling 100's of Ed Tech providers to gather up student data, when all you need is to sign a once and done contract or Terms of Service, and there's no clear obligation to actively oversee that relationship and validate that these providers are properly maintaining, handling and delating student data. So they're not.

**Why is that? Because DoE has not really done much to dissuade schools from doing this**; the DoE has had no public enforcement actions relating to sharing student PII with, and school use of, Ed Tech, has allowed FERPA complaints filed by parents to linger in limbo for literally years without resolution, and has failed to issue clear and explicit guidance about how FERPA obligations apply to Ed Tech providers, metadata, etc., emboldening schools to continue funneling student data to Ed Tech providers, without a second thought.

Fact is, schools are **<u>not</u>** maintaining "direct control" over Ed Tech providers, nor are they holding those providers accountable, which explains why 67% of public schools share children's personal data with 3rd party advertising and analytics companies.[3]

The lack of "direct control" by schools' nationwide was further driven home by our work at the Student Data Privacy Project, when parents across the country filed FERPA access requests with their schools, seeking the data and metadata held by Ed Tech providers on their children. **Not a single one of the over a dozen parent FERPA requests - from North Carolina to Alaska - resulted in securing all of the information collected on our children. And in most cases, parents got nothing.**

---

[2] https://www.montgomeryschoolsmd.org/data-privacy-security/technology.aspx
[3] https://www.adexchanger.com/data-exchanges/60-of-school-apps-are-improperly-sharing-student-data-with-third-parties/?fbclid=IwAR2_IKNkfQjZBlBJFs_Tlm2V4XsB8U2P7mhQ-Te6XoJAlPWa0Mbx9m1VDmo

Page | 2

CONFIDENTIAL



# Student Data Privacy Project

Instead, school responses ranged from:
- claims that FERPA does not apply to PII held by Ed Tech providers because the Ed Tech records are not "centrally stored"; a misinterpretation of the Supreme Court case, *Owasso Independent School District v. Falvo*, 534 U.S. 426 (S. Ct. 2002)
- providing a child's log in user-ID and password (which the parents already had), which does not allow access to tests and survey questions answered, metadata, data stored about students from previous semesters, etc.
- to no response at all

In many cases, schools seemed unable to get the providers to respond, and/or didn't even know how to articulate the request to the provider.

And for the one parent in Minnesota who did get *some* of what was requested, this parent received **over 2,000 files**, none of which contained the metadata requested, but did **reveal a disturbing amount of personal information held by an EdTech provider, including the child's baby pictures, videos of her in an online yoga class, her artwork and answers to in-class questions**. One doesn't need a strong imagination to see how this data could potentially be used to profile this child now, and later in life, based upon any number of factors, to include race, religion, sexual preference, etc.

This only further highlighted the concern we all have about what Ed Tech providers are collecting, and maintaining on our children, then packaging into neat little dossiers and selling/bartering/sharing as they wish, without any oversight, accountability, or questions asked.

As a result, we eventually filed FERPA complaints with DoE in July of 2021. But to date, there's been no substantive action on this. Yet we continue to hear from parents who have been fighting similar battles with schools and Ed Tech providers, some having filed independent complaints with DOE, but who have also been waiting years without resolution.

I should note that just this week your policy office began sending letters to our SDPP parents saying that they've reached out to the impacted districts about these complaints. But that's almost 9 months after our dozen plus parent complaints were filed. **Almost another school year of student data siphoned off and sold by Ed Tech providers, without any supervision by schools, under the guise of "direct control"**.

Notably, the only parent who received a definitive response from DoE was the parent whose complaint was kicked out by your agency on a technicality; she made a mistake in the date she wrote on the front of the form, although the detailed facts she included clearly established that her complaint was timely. **Sadly, this further reinforced the message that DoE is not interested in addressing the Ed Tech problem, so much as taking the easy road, which leads back to 1974 at the birth of FERPA, before the Internet existed.**

To better understand the scope of this problem, consider the recent investigative reporting series published by *The Markup* in January 2022, in which it was revealed that **Naviance software** – required of MCPS students beginning in 6th grade –**collects sensitive PII from our children, and then sells it to the very colleges and universities that the students are using the software to assess, so that those schools can**

Page | 3

CHERKIN_005301



# Student Data Privacy Project

then **"target students with paid advertisements," even allowing those admissions officials to use race** to "select what kinds of students will see their recruiting messages." [4]  Just as alarming, according to a companion piece by *The Markup*, Naviance is owned by PowerSchool, which holds data on more than 75 percent of North American K-12 students.  PowerSchool is in turn **owned by private equity firm Vista Equity Partners, which has built "an educational software empire that wields unseen influence over the educational journeys of tens of millions of children."**[5]

And all due to the acquiescence, indifference and/or lack of oversight y schools, because **FERPA eliminates parental consent** under the **antiquated, and false presumption** that the school will ensure children's safety and security through "direct control" of providers. But clearly that's not the case.

Unfortunately, DoE's inaction with regard to school use of Ed Tech providers has **also had reverberations in other areas of student data privacy** over which DoE has jurisdiction, **like the Protection of Pupil Rights Amendment (PPRA)**. While I can only speak to our school district –MCPS - what I can tell you is that despite the PPRA requirement that schools secure parental consent (and offer an opt-out) in advance of surveys required of students that involve invasive questions about topics such as mental or psychological issues, we continue to learn about these surveys only second hand, often after the fact.

And when our parents try and exercise their rights under the PPRA to review the survey materials, MCPS has refused, claiming, amongst other reasons, that the materials can't be provided because of the IP rights of the Ed Tech company running the survey. In other words, **our school district is far more concerned about the rights of the Ed Tech providers administering these surveys, than the statutory rights of our children and parents under the PPRA and FERPA.**

Surely, if schools had real, effective "direct control" over the Ed Tech providers administering these surveys, they could contractually incorporate the ability for parents to exercise their PPRA right to reviews these surveys. But they do not, because practically speaking, there's no negative ramifications for these schools, given the complete absence of any enforcement of this right by DoE.

Indeed, one of our parents, who is also an SDPP co-founder, recently requested a copy of a survey being given to our children that included questions regarding student physical and emotional safety, bullying, and controlled-substance abuse, all clearly within the 8 categories of data DoE has made clear is subject to the PPRA. But she was denied.  Instead, the school turned her PPRA request into a Freedom of Information request, and then subsequently refused to provide a copy of the actual survey, offering her only "sample" questions.

---

[4] https://themarkup.org/machine-learning/2022/01/13/college-prep-software-naviance-is-selling-advertising-access-to-millions-of-students
[5] https://themarkup.org/machine-learning/2022/01/11/this-private-equity-firm-is-amassing-companies-that-collect-data-on-americas-children

CONFIDENTIAL                                                                                    CHERKIN_005302

# Student Data Privacy Project

**In short, schools are engaging Ed Tech providers to administer these invasive surveys to students, without any notice to parents, and without affording parents their PPRA rights of access, ability to opt-out their children, etc.**

Perhaps what's most frustrating to us parents is the lack of good options for holding Ed Tech providers accountable for the data they're vacuuming up from our children, absent your agency proactively acting, because:

- It's difficult to sue Ed Tech providers, since the schools have the direct contractual relationships with the Ed Tech providers; yet the schools are not overseeing or otherwise holding Ed Tech accountable

- We can't depend on our Attorney General in Maryland, AG Frosh, to protect our children's privacy; when we raised these concerns with his office in the past, we were basically told that his office would need to defend MCPS in a lawsuit, and thus they were conflicted out of helping us and sharing info

- We can't sue under FERPA – the very law designed to protect student privacy rights – because FERPA doesn't allow for a private right of action

- It's difficult to sue Ed Tech providers under a state privacy law because these laws generally do not recognize a violation when consent is given; and as noted previously, FERPA allows schools to consent on our behalf

So, until DoE updates its regulations, Congress updates the law, or an Executive Order is issued, parents are left with no recourse.
- No options for stopping schools from signing once-and-done contracts, and then walking away from any responsibility to monitor and oversee Ed Tech providers' use of our children's data
- No way to prevent exploitation of our children's personal information by Ed Tech providers
- No way of preventing scenarios such as the massive acquisition and sale of student data by private equity firms like Naviance and Vista Equity Partners

**In short, no way of holding schools and Ed Tech providers accountable.**

Vice President Harris is well known for her work on this issue during her time as Attorney General for the State of California, having issued a white paper in 2016, "Ready for School: Recommendations for the Ed Tech Industry to Protect the Privacy of Student Data."[6]  So now is the time to take up that call from 2016, and close this gap that knowingly exploits children and their personal information, before it's too late.

Joel Schwarz, JD, CIPP, CDPSE
Co-Founder & Board Member
*Student Data Privacy Project (SDPP)*

---

[6] https://oag.ca.gov/news/press-releases/attorney-general-kamala-d-harris-releases-comprehensive-recommendations-protect

Page | 5

CONFIDENTIAL

CHERKIN_005303