Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
904 Rio Grande Street, Suite 100
Austin, Texas 78701
Telephone: (512) 200-8028
julie.liddell@edtech.law
andrew.liddell@edtech.law

[Additional Counsel on Signature Page]

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMILY CHERKIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>Defendant. | Case No.: 3:24-cv-02706-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT POWERSCHOOL HOLDINGS, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)**<br><br>Judge: The Honorable James Donato<br><br><u>Hearing</u><br>Date: January 14, 2027<br>Time: 11:00 a.m.<br>Courtroom: 11, 19th Floor |

# FILED UNDER SEAL

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF COMMON FACTS ........ 2

III. ARGUMENT ........ 4

A. Standing depends on resolving disputed materials facts. ........ 4

B. Plaintiffs have Article III standing. ........ 6

1. Plaintiffs suffered an injury in fact. ........ 6

a. Plaintiffs suffered a concrete injury. ........ 6

b. Plaintiffs have particularized injuries. ........ 10

c. Plaintiffs have sustained actual injuries. ........ 12

2. Plaintiffs' injuries are fairly traceable to the challenged conduct of PowerSchool. ........ 13

3. Plaintiffs' injuries are redressable. ........ 14

C. Though the issue is premature, the Damages Classes have standing. ........ 15

IV. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Black v. IEC Grp., Inc.*,
No. 25-5952, 2026 WL 3031874 (9th Cir. Oct. 9, 2026) .......... 10

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) .......... 4, 5

*de Ayora v. Inspire Brands, Inc.*,
No. 25-CV-03645-AGT, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......... 10, 11

*Campbell v. Facebook, Inc.*,
951 F.3d 1106, 1117 (9th Cir. 2020) .......... 12

*Diaz v. Paramount Skydance Corp.*,
No. EDCV 25-02945-KK-DTBX, 2026 WL 1090958 (C.D. Cal. Apr. 20, 2026) .......... 9

*Doe 1 v. AOL LLC*,
719 F. Supp. 2d 1102 (N.D. Cal. 2010) .......... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 5, 13

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 8

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 11

*Greenstein v. Noblr Reciprocal Exch.*,
No. 22-17023, 2024 WL 3886977 (9th Cir. Aug. 21, 2024) .......... 5

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) .......... 15

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020) .......... 13

*Khamooshi v. Politico LLC*,
No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......... 9, 10

*Kisil v. Illuminate Educ., Inc.*,
No. 23-4114, 2025 WL 2589000 (9th Cir. Sept. 8, 2025) .......... 9

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) .......... 8, 9, 10, 11

*Larson v. Valente*,
456 U.S. 228 (1982) .... 14

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .... 4

*Maghoney v. Dotdash Meredith, Inc.*,
No. 24-CV-2394-AJB-BJW, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .... 9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .... 5, 10

*Murthy v. Missouri*,
603 U.S. 43 (2024) .... 12

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) .... 1, 5

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) .... 12

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) .... 3, 5, 12

*In re Otter.AI Priv. Litig.*,
No. 25-CV-06911-EKL, 2026 WL 2351237 (N.D. Cal. Aug. 13, 2026) .... 8, 12

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) .... 11

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) .... 9, 10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .... *passim*

*In re PowerSchool Holdings, Inc. & PowerSchool Grp., LLC Customer Sec. Breach Litig.*,
No. 25-MD-03149-BEN-MSB, 2026 WL 772329 (S.D. Cal. Mar. 18, 2026) .... 9

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .... 4

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 341 (2016) .... 4, 6, 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .... 4, 5, 6, 9

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021) .... 14

*Varnado v. Midland Funding LLC*,
43 F.Supp.3d 985 (N.D. Cal 2014) ........ 11

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 2, 5, 8, 10

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........ 9

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) ........ 9

**Statutes and Regulations**

15 U.S.C. § 6501 *et seq*. ........ 8

20 U.S.C. § 1232g ........ 8

16 CFR Part 312 ........ 8

34 CFR Part 99 ........ 8

**Other Authorities**

64 F.R. 59888 ........ 8

California Constitution ........ 5, 7

Fed. R. Civ. P. 12(b)(1) ........ 1, 4, 6

Restatement (Second) of Torts § 652B ........ 2, 4, 5, 8, 10

# TABLE OF EXHIBITS

**Exhibits already of record**[1]

| Dkt. | Exhibit | Description | Page |
|---|---|---|---|
| 197 | A | Expert Report of Christopher Schulte | 2 |
| 197 | B | Expert Report of Dr. Cathy O'Neil | 3, 6, 12 |
| 197 | C | Expert Report of Dr. Suzanne Barber | 6, 7, 10, 12 |
| 197-1 | 2 | DPIA Report – PowerSchool SIS [PWRSCHL_00644395] | 2, 3, 6, 7, 15 |
| 197-1 | 3 | DPIA Report – Connected Intelligence [PWRSCHL_00644386] | 6, 7, 15 |
| 197-1 | 4 | Excerpts of the September 18, 2025 Deposition of Christopher Cirillo | 2, 7 |
| 197-1 | 5 | DPIA Report – Naviance [PWRSCHL_00644472] | 6, 7, 15 |
| 197-1 | 6 | DPIA Report – Schoology Learning [PWRSCHL_00644375] | 6, 7, 15 |
| 197-1 | 7 | DPIA Report – MTSS [PWRSCHL_00646371] | 6, 7, 15 |
| 197-1 | 9 | Excerpts of the December 1, 2025 30(b)(6) Deposition of Darron Flagg | 3 |
| 197-1 | 12 | PowerSchool's 2021 Form 10-K [PWRSCHL_00005197] at 11 | 2, 3 |
| 197-1 | 14 | Excerpts of the June 19, 2025 Deposition of Nicole Shinton | 2 |
| 197-1 | 19 | DPIA Report – Analytics and Insight Platform [PWRSCHL_00644311] | 3, 6, 7, 15 |
| 197-1 | 20 | DPIA Report – Behavior Support [PWRSCHL_00644501] | 6, 7, 15 |
| 197-1 | 21 | DPIA Report – Performance Matters Assessment [PWRSCHL_00644447] | 6, 7, 15 |
| 197-1 | 24 | Hosted PS SIS Customer Info chart [PWRSCHL_00300715] | 3 |
| 197-1 | 25 | Supplemental Contract Incorporating Sourcewell Contract for Procurement of Educational Software and Services from PowerSchool [PWRSCHL_00007269] | 3, 12 |

[1] To avoid burdening the Court with hundreds of duplicate pages of exhibits, this Opposition cites to recently filed exhibits already in the record for support rather than attaching additional copies. *See Turney v. Collins*, 119 P.2d 954, 958 (Cal. Ct. App. 1941) ("In the federal courts, from their very inception, it has been sufficient to file an exhibit with the clerk, and by reference to incorporate the exhibit in any pleading filed in the case."). If desired, Plaintiffs will provide copies of all cited exhibits for the Court's convenience.

| Dkt. | Exhibit | Description | Page |
|---|---|---|---|
| 197-1 | 26 | 2022 Booking Raw Data report [PWRSCHL_00231378] | 2, 3, 12 |
| 197-1 | 27 | ByFinanceProduct report [PWRSCHL_00117279] | 3 |
| 197-1 | 28 | Booking report [PWRSCHL_00702684] | 2, 3 |
| 197-1 | 29 | Clean – from mgmt report [PWRSCHL_00343564] | 3 |
| 197-1 | 30 | SIS Customer Base report [PWRSCHL_00374163] | 2, 3 |
| 197-1 | 31 | Request for Proposal Student Information Systems [PWRSCHL_00141839] | 3 |
| 197-1 | 32 | Student Data Privacy Agreement for Seattle School District No. 1 and PowerSchool [PWRSCHL_00007183] | 2 |
| 197-1 | 33 | Excerpts of the August 19, 2025 Deposition of David Concepción | 12, 13 |
| 197-1 | 36 | Excerpts of the August 26, 2025 Deposition of S.G. | 13 |
| 197-1 | 37 | Excerpts of report 1579025626462 [PWRSCHL_00170053] | 2 |
| 197-1 | 38 | September 1, 2021 email [PWRSCHL_00072231] | 2, 3, 12 |
| 197-1 | 39 | UPDATE – Master SFDC Report [PWRSCHL_00282149] | 2 |
| 197-1 | 40 | Excerpts of a data report [PWRSCHL_00001060] | 2 |
| 197-1 | 41 | Excerpts of a raw data report [PWRSCHL_00077702] | 2 |
| 197-1 | 42 | Excerpts of the December 5, 2025 Deposition of Judith Jaeger | 3 |
| 197-1 | 43 | Excerpts of PS SIS Customers with hosting report [PWRSCHL_00627056] | 3 |
| 197-1 | 48 | PowerSchool Holdings, Inc.'s Supplemental Responses and Objections to Plaintiffs' Non-Uniform Interrogatories 2, 3, 7, 8 | 6, 7, 14, 15 |
| 197-1 | 49 | May 6, 2024 email regarding M.M.C.'s attendance report [CONCEPCION_000001] | 3 |
| 197-1 | 50 | May 6, 2024 email regarding L.M.C.'s attendance report [CONCEPCION_000014] | 3 |
| 197-1 | 51 | August 21, 2023 email from a West Contra Costa Unified School District principal regarding the submission of personal information to the school, including medical information [CONCEPCION_000142] | 3 |

| Dkt. | Exhibit | Description | Page |
|---|---|---|---|
| 197-1 | 52 | August 19, 2022 email from West Contra Costa Unified School District personnel requesting that David submit information using PowerSchool [CONCEPCION_000275] | 3 |
| 197-1 | 53 | May 28, 2020 email from West Contra Costa Unified School District personnel requesting M.M.C.'s birth certificate so that changes can be made in the school district's system run by PowerSchool [CONCEPCION_000304] | 3 |
| 197-1 | 54 | PowerSchool spreadsheet containing product data [PWRSCHL_00008714] | 3, 12 |
| 197-1 | 55 | PowerSchool spreadsheet containing product data [PWRSCHL_00702684] | 3, 12 |
| 197-1 | 56 | Excerpts from a PowerSchool spreadsheet containing S.G.'s data [PWRSCHL_00702665] | 3 |
| 197-1 | 57 | Excerpts from a PowerSchool spreadsheet containing S.G.'s data [PWRSCHL_00702668] | 3 |
| 197-1 | 58 | Excerpts from a PowerSchool spreadsheet containing S.G.'s data [PWRSCHL_00702682] | 3, 7, 11 |
| 197-1 | 59 | Excerpts from a PowerSchool spreadsheet containing S.G.'s data [PWRSCHL_00702683] | 3 |
| 197-1 | 60 | Excerpts from a PowerSchool database containing S.G.'s data [PWRSCHL_00702671] | 3 |
| 198-2 | | Excerpts of the February 25, 2026 Deposition of Catherine O'Neil | 14 |
| 220-1 | 1 | Notice of Data Breach | 11 |

## I. INTRODUCTION

PowerSchool does not dispute what it did. PowerSchool admits that it never obtained informed, voluntary consent from any parent before its products collected, stored, and processed the sensitive personal data of millions of children, and that it has offered and shared that student data with at least 213 third parties. PowerSchool's corporate representative further confirmed that it never tested its Student Profiling and Prediction Products for accuracy, bias, or reliability, yet PowerSchool uses that same nonconsensually obtained student data to fuel those products and generate "insights" and predictions about children. Unable to contest the conduct, PowerSchool argues that its conduct injured no one.

PowerSchool's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), Dkt. 198 ("Mot." Or "Motion") rests on a misstatement of the governing law. It recasts intrusion upon seclusion as a disclosure or publicity tort, demands proof of downstream consequences the tort has never required, and asks the Court to resolve disputed merits questions, including whether PowerSchool's conduct is "highly offensive," under the guise of a jurisdictional motion.

Plaintiffs allege that PowerSchool committed the tort of intrusion upon seclusion, which is one of the four common-law torts that the Supreme Court and the Ninth Circuit have identified as the touchstone for concrete privacy injuries. This tort "consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019). Plaintiffs' standing rests on at least two independent, concrete injuries, each traceable to PowerSchool's own uniform conduct: (1) PowerSchool's warehousing and processing of a defined set of sensitive Baseline Data elements that PowerSchool offers and shares with at least 213 third parties without consent; and (2) PowerSchool's use of that same student data to power Student Profiling and Prediction Products that it never tested for accuracy, bias, or reliability, and from which it has been unjustly enriched. *See* Dkt. 197 at 1–6; Dkt. 220 at 1. Both injuries establish standing.

PowerSchool, however, imports a publication or disclosure element that is not a requirement and then faults Plaintiffs for failing to present such evidence. Once the correct standard is applied, PowerSchool's Motion to Dismiss collapses because the harm Plaintiffs have shown—PowerSchool's taking, warehousing, and sharing of student data without consent, and its use of that data to power untested prediction products—

is the harm intrusion upon seclusion has always redressed. Because standing is sufficiently established, PowerSchool's Motion should be denied.

## II. STATEMENT OF COMMON FACTS

PowerSchool sells software to K-12 schools, including its Student Information System ("SIS") and its Connected Intelligence data-warehousing product, along with a suite of analytics and prediction products. Through these products, PowerSchool collects and hosts a defined set of baseline data elements for every student which PowerSchool itself describes in its Data Privacy Impact Assessments. For SIS alone, which is "used by nearly every school constituent on a day-to-day basis,"[2] PowerSchool's own assessment describes 31 data elements, including social security numbers and health information, and describes the SIS product as being "aimed at processing considerable amounts of data." Dkt. 197, Ex. A; Dkt. 197-1, Ex. 2.

After building its fortune intruding upon the "considerable amounts of data" of millions of children without consent, PowerSchool now claims its conduct is "hardly 'highly offensive'" and that even "unlawfully obtained" data does not give rise to standing. Mot., Dkt 198 at 10. This misstates the law and is a concerning stance from a company purportedly "deeply committed to safeguarding student, family, and educator data."[3] The fact remains that PowerSchool does not obtain effective consent before sharing and using the private records of millions of children,[4] which is a quintessential example of actionable conduct for an intrusion upon seclusion claim. *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1216 (C.D. Cal. 2017) (citing Restatement (Second) of Torts § 652B, cmts. b, c (1977)).

For the Plaintiffs themselves, PowerSchool claims that "there are only a few data points" about Plaintiff S.G., and even fewer for L.M.C. and M.M.C., Mot., Dkt. 198 at 1, but the evidence says otherwise. For Plaintiff S.G., the school district S.G. attends uses the following Data Warehouse Products: PowerSchool SIS, Schoology, Naviance, and MTSS.[5] The district also uses Analytics and Insights and Performance Matters, each a Student Profiling and Prediction Product.[6] Notably, SPS hosts its data for Unified Insights and

[2] Dkt. 197-1, Ex. 12, PWRSCHL_00005197 at 11 (PowerSchool SIS used daily by nearly all customers).
[3] *PowerSchool SIS*, PowerSchool, https://www.powerschool.com/products/student-information/sis/ (last visited Oct. 15, 2026).
[4] Dkt. 197-1, Ex. 14, Shinton Tr. 12:3–13; 15:21–18:8; Ex. 4, Cirillo Tr. 240:12–241:12.
[5] Dkt. 197-1, Exs. 26, 28, 30, 32, 37-41.
[6] *Id.*

Naviance on PowerSchool's cloud servers.[7] There is substantial evidence that S.G.'s data was collected using PowerSchool's products.[8] Rebutting PowerSchool's assertion that "there are only a handful of data points about S.G.," PowerSchool's own disclosures prove that, at a minimum, PowerSchool collected data about S.G.'s name, gender, age, birthdate, race, ethnicity, language, email, ID numbers, school, test scores, grade level, enrollment status, graduation year, IP addresses, browser information, and log-in times.[9]

For Plaintiffs L.M.C. and M.M.C., PowerSchool argues that there is no evidence about what data PowerSchool stores about Plaintiffs. Mot., Dkt. 198 at 11. However, evidence shows that L.M.C.'s and M.M.C.'s data was collected through their school ("WCC") using PowerSchool's products[10] The school district uses Student Data Warehouse Products, specifically PowerSchool SIS[11] and Naviance,[12] to collect, process, and store, at a minimum, a baseline set of data about every student. PowerSchool SIS is the workhorse for PowerSchool, containing massive amounts of data about students and their families.[13] The district also used Unified Insights, a Student Profiling and Prediction Product that was once known as Hoonuit and is now known as Analytics and Insights from at least 2021 through at least 2023, when L.M.C. and M.M.C. were attending school there.[14] While there is no data from the Unified Insights product, likely because WCC quit using the product and deleted the information, it is undisputed that WCC used the product and the product does not work without student data, including the very PowerSchool databases used by WCC.[15] Given the substantial evidence that PowerSchool collected data about L.M.C. and M.M.C., it is not relevant to standing whether PowerSchool was unable to find internal evidence that L.M.C. and M.M.C.'s data "was shared or put into an 'untested' analytics product", Dkt. 198 at 1, because intrusion upon seclusion becomes actionable upon the intrusion itself. *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1059 (N.D. Cal.

---

[7] Dkt. 197-1, Ex. 42, Judith Jaeger Tr. 50:24–51:9; Ex. 43 (confirming that PowerSchool hosts SPS data).
[8] *See, e.g.*, Dkt. 197-1, Exs. 56–60.
[9] *Id.*
[10] *See, e.g.,* Dkt. 197-1, Ex. 28 (contracts for SIS at WCC from July 1, 2020, to June 2025); Exs. 49–53.
[11] Dkt. 197-1, Exs. 24–28.
[12] Dkt. 197-1, Ex. 27 (contracts for Naviance from July 1, 2021 to June 30, 2025); Exs. 29–30.
[13] *See, e.g.*, Dkt. 197-1, Exs. 2, 12, 31 ([redacted]).
[14] Dkt. 197-1, Exs. 25–26, 38, 54 (listing PowerSchool products used by WCC), 55.
[15] Dkt. 197-1, Ex. 9, Flagg Tr. at 181:6–182:12 (PowerSchool admits that its analytics products draw data "mostly [from] SIS" and that data from all products can be uploaded into Unified Insights for analysis); Ex. 19; Dkt. 197, Ex. B, O'Neil Rpt. at 22 ("Analytics & Insights would not function without the student data").

2014) ("The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind" (citing Restatement (Second) of Torts § 652B, cmt. a (1977))).

## III. ARGUMENT

PowerSchool asks this Court to dismiss Plaintiffs' claims under Rule 12(b)(1) for lack of subject matter jurisdiction on the theory that Plaintiffs lack standing on the factual record. Dkt. 198 at 7. The Motion should be denied for three reasons. First, standing here is intertwined with the merits of Plaintiffs' privacy claims and turns on disputed material facts, which must be left to the trier of fact. Second, under the correct legal standard and viewing the evidence in the light most favorable to Plaintiffs, each named Plaintiff has standing for each form of relief sought. Third, PowerSchool's challenge to the standing of absent class members is premature and, in any event, fails.

### A. Standing depends on resolving disputed materials facts.

PowerSchool concedes that, after discovery, standing is assessed "under the same evidentiary standard that governs in the summary judgment context." Mot., Dkt. 198 at 7 (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). That standard cuts against PowerSchool, not for it. Like summary judgment, "when a court is faced with a factual attack on standing pursuant to Rule 12(b)(1), the court 'must leave the resolution of material factual disputes to the trier of fact when the issue of standing is intertwined with an element of the merits of the plaintiff's claim.'" *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144 (9th Cir. 2024) (citation modified) (citing *Leite*, 749 F.3d at 1122). In determining whether the issue of standing is intertwined with the merits of the claims, courts "consider whether 'the question of standing is dependent on the resolution of factual issues going to the merits of the action.'" *Id.* (citation modified) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). PowerSchool's Motion largely restates the factual arguments in its pending Motion for Summary Judgment: that schools control student data, that "ordinary" data processing is not highly offensive, and that the record contains "minimal" data about Plaintiffs. *Compare* Dkt. 198 at 2–6, 9–14, *with* Dkt. 201. Those are merits disputes, and the Court has already held that "[c]ontested questions of fact with respect to consent preclude judgment without a trial." Order, Dkt. 187 at 1.

For standing, "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

Such harms include intangible injuries— "Chief among them are injuries …[from] intrusion upon seclusion." *Id.* at 425 (citations omitted). The standing question is therefore bound up with the merits: whether Plaintiffs allege a harm closely related to intrusion upon seclusion, the very claims they assert.

An intrusion upon seclusion claim under California law asks two questions, whether "(1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy, and [whether] (2) the intrusion occurred in a manner highly offensive to a reasonable person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). "A claim for invasion of privacy under the California Constitution involves similar elements . . . [so] courts consider the claims together." *Id.* "Intrusion upon seclusion 'does not depend upon any publicity given to the person whose interest is invaded or to his affairs.'" *Nayab*, 942 F.3d at 491 (citing Restatement (Second) of Torts § 652B, cmt. a (1977)). "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the . . . information." *Opperman*, 87 F. Supp. 3d at 1059 (citing Restatement (Second) of Torts § 652B, cmt. a (1977)). "[E]xamining a person's private correspondence or records without consent" is an example of actionable conduct. *In re Vizio*, 238 F. Supp. 3d at 1216 (citing Restatement (Second) of Torts § 652B, cmts. b, c (1977)).

Whether PowerSchool's conduct of collecting and processing the data and records of millions of children and sharing and offering to share those data and records with 213 third-parties without parental consent bears a close relationship to examining private records without consent, and whether that conduct is considered highly offensive, depends on the facts of this case and is a question intertwined with both the issue of standing and the merits of Plaintiffs' claims, and raises raise genuine fact disputes. *See Greenstein v. Noblr Reciprocal Exch.*, No. 22-17023, 2024 WL 3886977, at *3 (9th Cir. Aug. 21, 2024).

The Court must "leave the resolution of material factual disputes regarding Article III standing to the trier of fact." *Bowen*, 118 F.4th at 1146 (citation modified). The record is replete with genuine disputes as to standing. PowerSchool contends that Plaintiffs suffered no concrete injury because its conduct is not highly offensive; Plaintiffs have shown a concrete injury caused by PowerSchool's highly offensive intrusion into a pervasive set of sensitive data. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). PowerSchool contends that it holds only a handful of data points about students; Plaintiffs have shown that

PowerSchool's products collect a defined, sensitive dossier of baseline data about every student.[16] PowerSchool's authority placing Plaintiffs on "the lack-of-standing side of the line" turns on the specificity and sensitivity of the data collected. Here, Plaintiffs have shown that this baseline data is indeed sensitive.[17] PowerSchool contends that it is not in the chain of causation, but Plaintiffs have shown that PowerSchool is the direct cause of their injuries.[18] These genuine disputes of material fact preclude dismissal under Rule 12(b)(1).

**B. Plaintiffs have Article III standing.**

Should the Court resolve standing now, PowerSchool's Motion fails on the merits. To have Article III standing, a plaintiff must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Dkt. 198 at 7 (quoting *Spokeo*, 578 U.S. at 338). Properly applied, the very authorities PowerSchool cites confirm that Plaintiffs satisfy each element.

**1. Plaintiffs suffered an injury in fact.**

For the first "injury in fact" element of standing, Plaintiffs "must show that he or she suffered an invasion of a legally protected interest that is [1] concrete and [2] particularized and [3] actual or imminent." Dkt. 198 at 7 (citing *Spokeo*, 578 U.S. at 339).

**a. Plaintiffs suffered a concrete injury.**

"Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 414. However, "we do not require an exact duplicate" to the traditionally recognized harm. *Id.* at 433. Most of the cases PowerSchool cites to rely on the Ninth Circuit's *Popa* decision. Mot., Dkt. 198 at 7–10 (citing *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025)). PowerSchool claims that *Popa* "rejected a 'free-roaming privacy right' holding that a plaintiff cannot establish standing for a data privacy suit merely by alleging a violation of a statutory privacy right." *Id.* at 8 (citing *Popa*, 153 F.4th at 792). But PowerSchool omits the end of the quotation: "there existed no free-roaming privacy right at common law but rather four discrete torts

[16] *See, e.g.,* Dkt. 197-1, Exs. 2–3, 5–7, 19-21 (DPIAs for each product), Ex. 48 at 6–7.

[17] *See, e.g.*, Expert Report of Dr. Cathy O'Neil, Dkt. 197, Ex. B at 2–24 (describing products), 25–30 (identifying risks); Expert Report of Dr. Suzanne Barber, Dkt. 197, Ex. C at 10–29.

[18] *Id.*

that protected specific kinds of privacy-related harms." *Popa*, 153 F.4th at 792. Intrusion upon seclusion is one of them, and the Ninth Circuit and the U.S. Supreme Court recognize it as a claim that confers standing. *See id.*

Unlike in *Popa*, Plaintiffs' claims are not "free-roaming": they expressly assert an intrusion upon seclusion claim and its analogue under the California constitution. PowerSchool interfered with the private affairs of millions of children as the data it intruded upon is uniformly and objectively sensitive. PowerSchool's DPIAs and interrogatory responses confirm that its products collect, at minimum, names, demographic data, academic records, behavioral assessments, and health-related information.[19] For example, PowerSchool admits that it located records showing S.G.'s name, gender, race, age, school name and login statistics. Mot., Dkt. 198 at 5. One of these records PowerSchool produced is a spreadsheet of S.G.'s personal data with data columns for sensitive personal information such as birthdate, ethnicity, school ID, graduation year, citizenship, various test scores, and social security number.[20]

As for the absent class members, PowerSchool products automatically collect a baseline set of data elements.[21] PowerSchool's Data Warehouse Products are used by virtually all its school and school district customers, and collect, process, and store massive amounts of student data, including, *inter alia,* highly personal, sensitive data such as: social security numbers, academic grades, rankings, health treatment, medication, health symptoms, "online account credential or information that in combination would enable access to user's online account," "online user name and password," race, ethnicity, gender, and age.[22]

These facts are readily distinguishable from *Popa*. In *Popa*, "the information allegedly collected by defendants reveals nothing more than the products that interested … Popa and thus is not the type of private information that the law has historically protected." *Popa*, 153 F.4th at 787. In other words, Popa "identifie[d]

---

[19] Dkt. 197-1, Exs. 2-3, 5-7, 19-21, 48 at 7 (these DPIAs "identify the categories and uses of data relating to each such product").

[20] Dkt 197-1, Ex. 58.

[21] *See, e.g.*, Dkt 197-1, Exs. 2-3, 5-7; *see also* Dkt. 197, Ex. C, Dr. Suzanne Barber Report at 12-24 (describing the minimum data elements collected by PowerSchool's products) ("Barber Rpt."); Ex. 48 at 6-7.

[22] Dkt 197-1, Ex. 2, DPIA – PowerSchool SIS, PWRSCHL_00644395 at 398–99 ("performs large-scale processing operations aimed at processing considerable amounts of data and could affect many individuals"); Ex. 3, PWRSCHL_00644386 at 390, DPIA – Connected Intelligence ([redacted]; Ex. 4, Christopher Cirillo Tr. 244:16–245:7 (confirming that Connected Intelligence gives customers access to data in products that customer has purchased); *see also* Exs. 5-7.

no embarrassing, invasive, or otherwise private information collected by" defendant such that defendant's conduct was "highly offensive". *Id.* at 791 (collecting plaintiff's pet-store preferences and street name). The *Popa* court explained that defendant's conduct was "similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales"[23] and that "[t]his is quite different from the hypotheticals set out in the Restatement." *Popa*, 153 F.4th at 791.

Unlike the data in *Popa*, the law has historically protected the information at issue in this case. No store clerk could, by visual observation alone, compile a complete dossier of, *inter alia*, social security numbers, academic grades, rankings, health treatment, medication, health symptoms, online account credential or information that in combination would enable access to user's online account, online user name and password, race, ethnicity, gender, and age of the millions of children whose data PowerSchool collected. In fact, PowerSchool's intrusion into private records without consent mirrors the hypotheticals set out in the Restatement. The "Second Restatement identified as examples of actionable conduct . . . [such as] examining a person's private correspondence or records without consent." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1216 (C.D. Cal. 2017) (citing Restatement (Second) of Torts § 652B, cmts. b, c (1977)). That is precisely the conduct PowerSchool engages in—the nonconsensual invasive examination and use of private records.

What's more, this case involves the private records of minor children for which the law provides heightened protections, and has done for decades. For example, FERPA demonstrates that all students have a reasonable expectation of privacy in their education records,[24] and COPPA demonstrates that children under age 13 have a reasonable expectation of privacy in their personal information online.[25] Thus, "[t]his alleged intrusion is therefore materially more invasive than the monitoring of browsing activity in *Popa*, both in terms of the sensitivity of the information at issue and the nature of the intrusion." *See In re Otter.AI Priv. Litig.*, No. 25-CV-06911-EKL, 2026 WL 2351237, at *3 (N.D. Cal. Aug. 13, 2026).

---

[23] Courts use the store clerk comparison to determine whether an intrusion is highly offensive. *See, e.g., In re Otter*, 2026 WL 2351237, at *3 (obtaining "sensitive" information is distinguishable from a "store clerk's observing shoppers"); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 865 (N.D. Cal. 2026); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 867 (N.D. Cal. 2025).

[24] 20 U.S.C. § 1232g; *see also* 34 CFR Part 99 (FERPA Regulations).

[25] 15 U.S.C. § 6501 *et seq.*; *see also* 16 CFR Part 312 (COPPA Rule); 64 F.R. 59888 (FTC's Statement of Basis and Purpose for the COPPA Rule).

The remaining cases PowerSchool cites also supports a finding that Plaintiffs' intrusion upon seclusion claim is viable and that they have standing. In *Kisil*, Plaintiffs brought common law and statutory claims that were not "'benchmarked' to one of four distinct privacy torts". *Kisil v. Illuminate Educ., Inc.*, No. 23-4114, 2025 WL 2589000, at *1 (9th Cir. Sept. 8, 2025). The court explained that although Plaintiffs argued harms "similar to those from the specific privacy tort of intrusion upon seclusion and non-privacy tort of defamation, they have waived these arguments by failing to raise them sufficiently for the trial court to rule on them." *Id.* Unlike *Kisil*, Plaintiffs in this case do expressly allege an intrusion upon seclusion claim and resulting harms.[26]

*Khamooshi* also did not involve intrusion upon seclusion claims, *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *1 (N.D. Cal. Oct. 2, 2025), which is why PowerSchool cites an inapplicable rule claiming that plaintiffs need to show "'disclosure of a kind that would be 'highly offensive' to a reasonable person' like the sale of data for targeted advertising or publication of embarrassing private facts." Mot., Dkt. 198 at 8 (citing *Khamooshi*, 2025 WL 2822879 at *3). However, *Khamooshi*, like *Popa*, *TransUnion*, and *Kisil*, also acknowledges that intrusion upon seclusion results in concrete harms sufficient for standing. *Khamooshi*, 2025 WL 2822879 at *2. *Phillips* yet again did not involve an intrusion upon seclusion claim; however, it too acknowledged intrusion upon seclusion claims as sufficient to provide standing. *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 990-94 (9th Cir. 2023).

The remaining cases PowerSchool cites simply analyze whether the elements of an intrusion upon seclusion claims have been shown.[27] When doing so, "courts must be reluctant to reach a conclusion at the

[26] Moreover, *Kisil* involves a data breach and is an unpublished decision that "lacks precedential value" even when cited in other data breach litigation. *In re PowerSchool Holdings, Inc. & PowerSchool Grp., LLC Customer Sec. Breach Litig.*, No. 25-MD-03149-BEN-MSB, 2026 WL 772329, at *3-4 (S.D. Cal. Mar. 18, 2026) (finding PowerSchool's reliance on *Kisil* "illogical").

[27] *Compare Krzyzek*, 817 F. Supp. 3d at 865 (applying the two elements of an intrusion upon seclusion claim and explaining that defendant "allegedly tracks, compiles, and sells massive amounts of information on plaintiffs" which "is very different from being observed by a retailer while shopping in a store", so "plaintiffs' intrusion on seclusion claim can proceed") *with Diaz v. Paramount Skydance Corp.*, No. EDCV 25-02945-KK-DTBX, 2026 WL 1090958, at *5 (C.D. Cal. Apr. 20, 2026) (finding that there was not an expectation of privacy in mere video viewing history and the intrusion was not highly offensive); *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139 (E.D. Cal. 2025) (explaining that "the invasive nature of the information collected was crucial" and finding that intercepting IP and email addresses was not highly offensive); *Maghoney v. Dotdash Meredith, Inc.*, No. 24-CV-2394-AJB-BJW, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (explaining that intercepting search queries unlinked to plaintiff's "name, postal address, email address, telephone number, or any other personal identifiers" was not highly offensive).

pleading stage about how offensive or serious the privacy intrusion is," because "whether conduct rises to the level of highly offensive 'is indeed a factual question best left for a jury'." *In re Meta*, 647 F. Supp. 3d at 799 (citing *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018). Thus, whenever the intrusion extends beyond what a store clerk may publicly observe, concrete harm is typically found. *See, e.g.*, *Krzyzek*, 817 F. Supp. 3d at 865; *de Ayora v. Inspire Brands, Inc.*, No. 25-CV-03645-AGT, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025) ("Using the same analogy in *Popa*, the alleged information at issue here [website cookie data] is beyond what would be observable to a store clerk tasked with monitoring shoppers."). As explained above, Plaintiffs have shown that PowerSchool intrudes upon, at a minimum, numerous baseline data elements for the Plaintiffs and unnamed class members including highly personal, sensitive data.[28] There is no basis in case law or common sense that children do not have an expectation of privacy in this data or that the nonconsensual intrusion into this data was not highly offensive as a matter of law.

PowerSchool nonetheless contends that its collection and retention of data is "far from the 'highly offensive' interferences" actionable at common law. Mot., Dkt. 198 at 10 (citing *Phillips*, 74 F.4th at 988–89, 995–96, which did not involve an intrusion upon seclusion claim). Not so: "examining a person's private correspondence or records without consent" is a paradigmatic example of actionable intrusion. *Vizio*, 238 F. Supp. 3d at 1216 (citing Restatement (Second) of Torts § 652B, cmts. b, c (1977)). And PowerSchool's conduct goes well beyond storage. As set out below, PowerSchool disclosed student data to at least 213 third parties and used it to power untested prediction products that generate "insights" about children's behavior, performance, and life outcomes.[29] Dkt. 197 at 1–6. The heightened risk of exposure created by PowerSchool's indefinite retention of that data, which Dr. Barber analyzes, is further evidence of offensiveness, even though Plaintiffs' standing does not depend on it. *See* Dkt. 197, Ex. C, Barber Rpt. at 30–31.

**b. Plaintiffs have particularized injuries.**

For the same reasons, Plaintiffs show that their injury is particularized. Again, the only cases PowerSchool relies upon for this argument do not involve intrusion upon seclusion claims. Mot., Dkt 198 at

---

[28] *See* analysis at Section III.B.1.a. *supra* at 7, note 22 at 7-8.

[29] This unauthorized disclosure of data that was meant to be kept private is an additional harm that establishes standing independent of any other conduct and regardless of the offensiveness of the category of information. *Black v. IEC Grp., Inc.*, No. 25-5952, 2026 WL 3031874, at *2-6 (9th Cir. Oct. 9, 2026) ("a trust betrayed *is* the harm" no matter how "mundane such disclosed data might seem.").

11 (citing *Spokeo*, 578 U.S. at 339 and *Khamooshi* 2025 WL 2822879, at *3 both of which do not involve intrusion upon seclusion claims).

Moreover, PowerSchool claims that "there is little to no data about the Plaintiffs in the record" and that "there are only a handful of data points about S.G. in the record." Mot., Dkt. 198 at 11. However, PowerSchool admits that it located records showing S.G.'s name, gender, race, age, school name and login statistics, *id.* at 5, yet PowerSchool concerningly considers this to be "only a handful of data points." *Id.* at 11. One of these records PowerSchool produced is a spreadsheet of S.G.'s personal data with data columns for sensitive personal information such as the child's birthdate, ethnicity, school ID, graduation year, citizenship, various test scores, and even social security number.[30] Contrary to PowerSchool's subjective belief that their intrusion is minimal, intrusion upon seclusion claims are evaluated under an objective standard. *See, e.g., Varnado v. Midland Funding LLC*, 43 F.Supp.3d 985, 992 (N.D. Cal 2014). Under an objective analysis, as explained above, children have an expectation of privacy in this data and the intrusion into such is highly offensive as demonstrated by prior cases finding standing for intrusion upon seclusion claims involving less-sensitive data over adults.[31] Thus, a Defendant "engaging in unauthorized tracking and data collection, allowing it to compile detailed profile of each plaintiff . . . is actionable." *Krzyzek*, 817 F. Supp. 3d at 865 (citation modified).

As for the lack of evidence of what data PowerSchool stores or stored for L.M.C. and M.M.C., PowerSchool admits that their data was stored in PowerSchool's products and taken as part of the 2024 PowerSchool data breach. Dkt. 220-1, Ex. 1. Also, their school currently licenses at least one PowerSchool product, Student Information Systems, and has used another product, Analytics & Insights, during the relevant period while L.M.C. and M.M.C. attended school. Mot., Dkt. 198 at 3–4. There is also evidence that

---

[30] Dkt 197-1, Ex. 58.

[31] *See, e.g., Ayora*, 2025 WL 3707561 at *2 (involving data regarding "search queries, the user's name, age, gender, email address, location, and/or payment information, demographic information, and also device information, session information, and/or geolocation data"); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025) (involving data regarding "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data."); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1274 (9th Cir. 2019) (colleting biometric identifiers sufficiently conferred standing); *Krzyzek*, 817 F. Supp. 3d at 863 (involving data from cookies and website tracking).

L.M.C.'s and M.M.C.'s school district utilized numerous PowerSchool products.[32] Further, Plaintiff David Concepción, L.M.C.'s and M.M.C.'s father, testified that PowerSchool is misusing his children's information without his or his children's authorization.[33] The court need look no further than the baseline data elements that PowerSchool collects from every school district over every student. Again, "[t]he intrusion itself makes the defendant subject to liability." *Opperman*, 87 F. Supp. 3d at 1059. Therefore, it is the intrusion into Plaintiffs' seclusion that makes PowerSchool subject to liability and there is overwhelming evidence that PowerSchool intruded into Plaintiffs' and the other putative class members' private data.[34]

**c. Plaintiffs have sustained actual injuries.**

With an intrusion upon seclusion claim, the intrusion itself is the harm. *See In re Otter*, 2026 WL 2351237, at *3 ("The Ninth Circuit explained that the 'intrusion itself makes the defendant subject to liability' because the common-law privacy tort of intrusion upon seclusion does not require additional consequences to be actionable." (citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020)). Here, this harm is ongoing as PowerSchool continues its practice of non-consensually intruding upon millions of children's seclusion, and is a far cry from a mere risk of future harm.

Plaintiffs also have standing to seek injunctive relief. For prospective relief, Plaintiffs must show a substantial risk of future injury. *See* Mot., Dkt. 198 at 12 (citing *Murthy v. Missouri*, 603 U.S. 43, 69 (2024)). That standard is met where, as here, the challenged conduct is ongoing. Plaintiffs' data is still at risk: WCC continues to license PowerSchool SIS, and Seattle continues to contract with PowerSchool to use PowerSchool SIS and Unified Insights. Mot., Dkt. 198 at 3, 5. As such, PowerSchool continues to host and process their data without effective parental consent. Dkt. 197 at 2–3. Unlike in *Clapper v. Amnesty Int'l USA*, where the plaintiffs could only speculate that the government would surveil them, 568 U.S. 398, 410–14 (2013), there is no speculation here. PowerSchool admits the practice and defends it as lawful. *See Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1275 (9th Cir. 1998) (finding the mere retention of wrongfully obtained information a "continuing 'irreparable injury' for purposes of equitable relief"); *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) (finding standing for injunctive relief when defendant

---

[32] Dkt 197-1, Exs. 25, 26, 38, 54 (listing PowerSchool products used by WCC), 55.
[33] Dkt 197-1, Ex. 33, Concepcion Tr. 129:9–18.
[34] *See* analysis at Section III.B.1.a. *supra* at 7, note 22 at 7-8; Dkt. 197, Ex. C, Barber Rpt. at 1-2; Ex. B, O'Neil Rpt. at 26-29.

"continues to collect and disseminate the same type of data"—an ongoing injury). The injunctive relief Plaintiffs seek is aimed at stopping that ongoing conduct. Dkt. 197 at 24.

PowerSchool's reliance on deposition and expert testimony is misplaced. PowerSchool emphasizes that the minor Plaintiffs answered "No" when asked whether they could think of ways they were harmed, that Mr. Concepción did not feel "surveilled," and that Plaintiffs' experts do not opine on harm to the named Plaintiffs. Dkt. 198 at 4–7, 10–12. But Article III injury is measured by an objective standard. *See In re Facebook*, 956 F.3d at 606 (describing reasonable-person standard for intrusion upon seclusion claims). It does not depend on whether a child can articulate a legal theory at a deposition. Plaintiffs testified to the harm that matters: their private information was taken and used without consent. S.G. testified that it would harm her if PowerSchool created products using her data or shared it with third parties outside her school. Dkt. 197-1, Ex. 36, S.G. Tr. at 154:1–155:7. Mr. Concepción testified that PowerSchool is misusing his children's information without authorization. Dkt. 197-1, Ex. 33, Concepción Tr. 126:13–134:22. Nor does standing require expert testimony. Plaintiffs' experts were retained to address offensiveness, risk, and classwide damages, not to diagnose individualized injury.

Overall, by comparing Plaintiffs' allegations and the available evidence to the proper intrusion upon seclusion standard, PowerSchool cannot argue that there is not a concrete, particularized and actual injury here.

**2. Plaintiffs' injuries are fairly traceable to the challenged conduct of PowerSchool.**

PowerSchool next argues that "independent decisions made by non-party schools or school districts caused the injury," so any injury "is not traceable to PowerSchool." Mot., Dkt. 198 at 13. This misstates both the record and the law. Traceability does not require that the defendant be the sole or last cause of the injury. PowerSchool cites *Juliana*, which explains that "causation can be established even if there are multiple links in the chain, as long as the chain is not hypothetical or tenuous." *Juliana v. United States*, 947 F.3d 1159, 1169 (9th Cir. 2020) (citation modified). Therefore, even if PowerSchool was operating solely at the direction of school districts (it was not), or if the school districts were the intruders into the children's seclusion (it was PowerSchool), PowerSchool is a direct and necessary component in this causal chain.

Further, while examining a causal chain may be necessary if Plaintiffs brought claims against school districts, Plaintiffs allege that PowerSchool is the direct actor. It is PowerSchool that (1) uses its Data

Warehouse Products to collect, process, and store student data; (2) offers and shares that data with third parties; (3) designs and supplies the baseline predictive algorithms in its prediction products; and (4) does so without obtaining effective consent. Dkt. 197 at 4; Dkt. 220 at 6–7. The Baseline Data elements are defined by PowerSchool's products, not chosen school by school. Dkt. 197 at 13–14; Dkt. 197-1, Ex. 48 at 6–7. And the class definitions are limited to students whose data PowerSchool itself hosts. Dkt. 197 at 9. It is nonsensical to argue that the traceability does not exist for the direct party intruding upon one's seclusion even if PowerSchool claims that someone else told them to do so. The risk of inaccuracy, moreover, is "all of a piece" and stems from PowerSchool's untested system, not merely from how schools use it. Dkt. 198-2, O'Neil Tr. 93:9–94:20.

**3. Plaintiffs' injuries are redressable.**

PowerSchool's redressability argument fails for three reasons. First, Plaintiffs seek damages for injuries that have already occurred, and an award of money from the party that caused the injury necessarily redresses it. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 291–92 (2021). PowerSchool's contention that "there is no past harm to redress," Dkt. 198 at 14, simply restates its injury argument. Second, the injunctive relief Plaintiffs seek is directed at PowerSchool's own conduct, *see* Dkt. 197 at 24, and the remedies would directly reduce Plaintiffs' ongoing injury and are within PowerSchool's power to provide. Third, Plaintiffs need not show that a favorable decision will remedy every injury, only that it will afford some meaningful relief. *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).

PowerSchool's assertions that it "does not make predictions" and that "only schools decide whether and with whom to share data," Dkt. 198 at 15, are strawmen. Plaintiffs' claims that PowerSchool offers and shares student data with 213 third parties does not depend on whether schools give consent to share the data because they cannot, only parents can. *See* Dkt. 164; Pl.s' Concurrently Filed Opp. to Mot. for Summ. J. at 8-9, 14-15. Similarly, Plaintiffs claims related to the prediction products are not premised on actual predictions schools make, but on the fact that PowerSchool sold untested prediction products to schools that are powered by student data and parents do not give consent to use their children's data in that manner. At best, these issues go to the merits, not jurisdiction. That schools are not parties is likewise immaterial. Plaintiffs challenge PowerSchool's conduct, and the Court can order PowerSchool to change it.

**C. Though the issue is premature, the Damages Classes have standing.**

Once again PowerSchool cites an inapplicable rule in arguing that absent class members lack standing. PowerSchool explains that "[a]t summary judgment, both 'named and unnamed members of a certified class for money damages' must 'demonstrate that there is a genuine dispute of material fact over standing.'" Mot., Dkt. 198 at 15 (citing *Healy v. Milliman, Inc.*, 164 F.4th 701, 710 (9th Cir. 2026)). However, a class has not been certified in this case yet. Therefore, this issue of standing over unnamed class members is better addressed either after or through the class certification process, which is fully briefed and set for hearing.[35] At a minimum, this issue should be held in abeyance until this Court rules on class certification.

Should the Court reach the issue now, PowerSchool's argument fails on its own terms. "Article III's requirements are satisfied before a class is certified as long as at least one named plaintiff has standing." *Healy*, 164 F.4th at 706. And Plaintiffs have shown that each Plaintiff has standing. More importantly, absent class members share Plaintiffs' injuries. The damages classes are limited to students whose data PowerSchool hosts. Dkt. 197 at 2. PowerSchool's products collect the same Baseline Data for every such student.[36]. And PowerSchool's failure to obtain effective consent is uniform.[37] PowerSchool's complaint that the record contains no data about any absent class member, Dkt. 198 at 15, ignores that PowerSchool's own DPIAs and interrogatory responses identify the data its products collect.[38] Finally, as explained above, there are genuine disputes of material fact over standing, so it would be improper to grant PowerSchool's Motion.

## IV. CONCLUSION

Although dependent upon the trier of fact to make certain determinations, when analyzed under the correct standards, it is clear that Plaintiffs have sufficiently established standing to bring their claims. PowerSchool uses and shares Plaintiffs' private data without consent. That is a concrete, particularized, and actual injury, fairly traceable to PowerSchool and redressable by this Court. Therefore, the Court should deny PowerSchool's Motion to Dismiss in its entirety.

---

[35] *See* Dkt. 197.
[36] Dkt. 197-1, Exs. 2–3, 5–7, 19–21 (DPIAs for each product), Ex. 48 at 6–7.
[37] Dkt. 197 at 13.
[38] Dkt. 197-1, Exs. 2–3, 5–7, 19–21 (DPIAs for each product), Ex. 48 at 6–7.

Dated: November 3, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ Leonard W. Aragon
Leonard W. Aragon (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Julie Liddell (*pro hac vice*)
Andrew Liddell (*pro hac vice*)
EDTECH LAW CENTER PLLC
904 Rio Grande Street, Suite 100
Austin, Texas 78701
Telephone: (512) 200-8028
julie.liddell@edtech.law
andrew.liddell@edtech.law

Whitney Siehl (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
whitneys@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Attorneys for Plaintiffs