Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Amelia H. Bailey (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Cristina Martinez Squiers (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
cristina.squiers@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for the Defendant PowerSchool Holdings, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMILY CHERKIN, et al<br><br>Plaintiffs,<br><br>v.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>Defendant. | CASE NO. 3:24-cv-02706-JD<br><br>**DEFENDANT POWERSCHOOL HOLDINGS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)**<br><br>Judge: Hon. James Donato<br>Hearing Date: January 14, 2027<br>Time: 11:00 a.m.<br>Courtroom: 11, 19th Floor |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

ARGUMENT ........ 1

I. No genuine dispute of material fact precludes dismissal at this stage of litigation. ........ 1

II. Based on the undisputed facts, Plaintiffs lack Article III standing because they have no injury. ........ 2

A. Merely alleging a claim for intrusion upon seclusion does not confer a concrete injury because serious intrusion is required to constitute an actionable harm. ........ 3

B. Plaintiffs' theories of harm are not concrete, particularized, or actual or imminent. ........ 4

III. Plaintiffs' purported injuries are not traceable to PowerSchool. ........ 8

IV. Plaintiffs' claims are not redressable. ........ 9

V. Because the named Plaintiffs lack standing, the putative damages classes also lack standing. ........ 10

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMCO Ins. Co. v. Morfe*,
749 F. App'x 531 (9th Cir. 2018) ....................2

*In re Apple Data Priv. Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026) ....................3

*Diaz v. Paramount Skydance Corp.*,
2026 WL 1090958 (C.D. Cal. Apr. 20, 2026) ....................3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 598, 598–99 (9th Cir. 2020) ....................5

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ....................5

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) ....................10

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020) ....................9

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ....................4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................1, 8

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ....................9

*McIndoe v. Huntington Ingalls Inc.*,
817 F.3d 1170 (9th Cir. 2016) ....................1

*Murthy v. Missouri*,
603 U.S. 43 (2024) ....................1, 8

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) ....................3

*In Re Otter.AI Priv. Litig.*,
2026 WL 2351237 (N.D. Cal. Aug. 13, 2026) ....................5

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................3, 4

*R.W. Beck & Assoc. v. City and Borough of Sitka*,
27 F.3d 1475 (9th Cir. 1994) ........................................1

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........................................8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................2, 8

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................5

**Rules**

Fed. R. Civ. P. 56(a) ........................................1

**Other Authorities**

Restatement (Second) of Torts § 652B (1977) ........................................3

## INTRODUCTION

Plaintiffs have sued over a nonexistent harm not traceable to PowerSchool. Plaintiffs incorrectly claim that their schools choosing to process data via PowerSchool products for educational purposes is inherently an injury akin to an unauthorized person rifling through someone's wallet. But PowerSchool is not an intruder. Schools would collect the data at issue here in the normal course; they hire vendors to do so more efficiently and effectively. Federal and state law explicitly permit schools to share data with vendors in this way—without parental consent. PowerSchool does nothing with the data other than process it for the schools; it does not "use" the data for its own purposes, including data sharing or developing or improving any products. Under the weight of these undisputed facts, Plaintiffs' theories of injury crumble.

Moreover, the alleged harms (simply that *schools* put their students' data into PowerSchool products and *schools* decide to share this data with other school vendors or use the data for predictive algorithms) are not traceable to PowerSchool. Schools alone are the ones who direct all data processing. For the same reason, Plaintiffs' injuries are not redressable. All of the same arguments apply to absent class members, were this case to proceed as a class action. The Court should therefore dismiss Plaintiffs' claims and the claims of any putative class member seeking damages for lack of standing.

## ARGUMENT

### I. No genuine dispute of material fact precludes dismissal at this stage of litigation.

Plaintiffs first argue that material fact disputes intertwined with the merits preclude consideration of the standing question. Opp. 4-5, Dkt. 226. But this argument presupposes that Plaintiffs have actually raised genuine disputes of material fact. They have not. *See* Fed. R. Civ. P. 56(a); Dkt. 201, Mot. Summ. J. ("MSJ"), 10-22. To raise a genuine fact dispute, Plaintiffs "cannot rest on 'mere allegations,' but must instead point to factual evidence." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "Arguments based on conjecture or speculation are insufficient." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (quoting *R.W. Beck & Assoc. v. City and Borough of Sitka*, 27 F.3d 1475, 1480 n. 4

(9th Cir. 1994)). As are "unsubstantiated assertions." *AMCO Ins. Co. v. Morfe*, 749 F. App'x 531, 533 (9th Cir. 2018).

Plaintiffs argue that there is a fact dispute as to whether PowerSchool controls students' data, what student data PowerSchool collects, and whether that data collection is offensive. Opp. 4. But Plaintiffs have failed to point to sufficient evidence (or, on certain issues, *any* evidence) to create a genuine material dispute as to these issues. MSJ 10–22.[1]

As PowerSchool explained in detail in its motion for summary judgment and opening brief, the undisputed evidence shows that schools alone control the data and data processing at issue, including the decisions about what data to collect, what data to input into PowerSchool products, and how to use those products. *Id.* Moreover, there is no evidence that PowerSchool did anything with student data outside of what schools requested for educational purposes. *Id.* 13, 21.

Further, there is insufficient evidence in the record for a jury to determine what sensitive student data is at issue for the Plaintiffs. Plaintiffs confirm the point by citing only a handful of documents about their data and twice pointing to "a spreadsheet of S.G.'s personal data with data columns for sensitive personal information." Opp. 7, 11. But many of the columns in that document are blank, including the ones with purportedly "sensitive personal information" like citizenship and social security number. *See* Dkt. 197-1 Ex. 58. As for the putative class members, there is no evidence about their data at all. *Id.* Plaintiffs cannot fill this evidentiary gap with the DPIAs, which simply state what types of information a school *could* put into a PowerSchool product. MSJ 8–9; 11–12. As such, Plaintiffs have failed to create any genuine issue of material fact that precludes the Court from considering whether Plaintiffs have standing.

## II. Based on the undisputed facts, Plaintiffs lack Article III standing because they have no injury.

Plaintiffs' claims against PowerSchool fail from the outset because Plaintiffs cannot demonstrate a concrete injury, much less show any injury that is particularized and actual or imminent. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

---

[1] For the same reasons, and as described in PowerSchool's Mtn. for Summary Judgment, there are no material fact disputes on the merits, *see* MSJ and Reply (Dkts. 201, 232). Thus, Plaintiffs' cases about when fact issues related to standing intertwine with the merits are inapposite. *See* Opp. 4-5.

**A. Merely alleging a claim for intrusion upon seclusion does not confer a concrete injury because serious intrusion is required to constitute an actionable harm.**

First, Plaintiffs are incorrect that merely bringing a claim for intrusion upon seclusion automatically confers standing. Opp. 4-5. Although it is true that a plaintiff alleging an intangible privacy harm must demonstrate that the harm is analogous to a common-law privacy tort, such as intrusion upon seclusion, simply asserting that cause of action is insufficient to confer standing. Rather, courts must "assess whether an individual plaintiff has suffered a *harm* that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (emphasis added). To make that determination, courts "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Id.* (emphasis in original); *see also Diaz v. Paramount Skydance Corp.*, 2026 WL 1090958, at *5 (C.D. Cal. Apr. 20, 2026) (considering the specific facts of the plaintiffs' invasion of privacy and intrusion upon seclusion claims and finding that they would not have been actionable at common law).

Under this correct standard, Plaintiffs cannot demonstrate a specific underlying harm that is analogous to an intrusion upon seclusion claim "that has traditionally been actionable." *Popa*, 153 F.4th at 791. Actionable claims for intrusion upon seclusion require a plaintiff to prove an "intentional interference" that would be "highly offensive to a reasonable man." *Id.* (quoting *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) (citation modified)). This determination largely depends on context. *See In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 903 (N.D. Cal. 2026). For an intrusion alone to be a sufficient harm, it must be severe, considering the specific circumstances. The Restatement (Second) of Torts provides some examples: opening and perusing a person's private mail or searching a person's safe or wallet. Restatement (Second) of Torts § 652B cmt b (1977). As the Ninth Circuit noted in *Popa*, citing the Restatement, another example would be: "A [] rents a room in a house adjoining B's residence, and for two weeks looks into the windows of B's upstairs bedroom through a telescope taking intimate pictures with a telescopic lens." *Popa*, 153 F.4th at 791. What these examples show is that a traditional harm under intrusion upon seclusion involves a serious, unexpected invasion into a private thing or place by a person who should not be there.[2]

[2] Plaintiffs attempt to set up a different standard than the Restatement by citing *Popa* for the proposition that "whenever the intrusion extends beyond what a store clerk may publicly observe,

These examples are light years away from the facts here, where the only conduct at issue is PowerSchool's ordinary data processing at a school's direction for educational purposes. This is not private data that would have always stayed in the student's "safe." Schools will use this data whether or not their vendors assist in that process. And the undisputed evidence here is that when schools choose to use PowerSchool to process their data, PowerSchool does nothing beyond what schools request. MSJ 13, 21. Given this context, Plaintiffs cannot invoke intrusion upon seclusion and call it a day. They must show harm that is "traditionally actionable," *Popa*, 153 F.4th at 791. As explained next, Plaintiffs have no such harm.

**B. Plaintiffs' theories of harm are not concrete, particularized, or actual or imminent.**

Plaintiffs offer the following three theories of harm: Their data is stored in PowerSchool products, their data is shared via PowerSchool products, and their data is used to "power" analytics products. Opp. 1. No theory meets Article III's injury requirements, especially at this stage of litigation where Plaintiffs must meet the same evidentiary burden as summary judgment. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)

*1. Data storage*

Plaintiffs argue that their injury is concrete because schools can use PowerSchool products to store and process sensitive student data "without consent." Opp. 7-8. The key inquiry here revolves around the identity of the person looking at the data—i.e., are they an "intruder"? The undisputed facts show that PowerSchool is not an intruder. Plaintiffs do not contend that schools properly have student data. Schools simply contract with PowerSchool to store that data. Mot. 2-3. Plaintiffs do not argue that PowerSchool acts outside of these contracts. These contracts are authorized by federal and state law, which explicitly allow schools to contract with PowerSchool "without express parental consent." MSJ 5–7. Thus, parental consent is irrelevant to the question of whether PowerSchool is acting as an intruder. In this context, PowerSchool is nothing like a stranger rifling through someone's wallet; it is

---

concrete harm is typically found." Opp. 10. *Popa* established no such floor for intrusion upon seclusion; it merely invoked the example of a store clerk as an analogy to the facts in that case. *See Popa*, 153 F.4th at 791.

an expected service provider performing a non-invasive and ordinary service. Simply put, the facts here cannot be a concrete injury.

Indeed, the facts of this case are completely inapposite to cases, including the ones Plaintiffs cite, where courts have found the possession of data to be a concrete injury. This is not a case of surreptitious data collection or data sharing for targeted advertising. *See In Re Otter.AI Priv. Litig.,* 2026 WL 2351237, at *1 (N.D. Cal. Aug. 13, 2026) (cited at Opp. 8, 12) (holding that plaintiffs alleged a cognizable harm based on the interception and commercial use of their private communications by a “silent” AI notetaker); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1212 (C.D. Cal. 2017) (cited at Opp. 5, 8) (holding that plaintiffs adequately pleaded Article III standing based on allegations that defendant secretly used software “to collect and report consumers’ content viewing histories”); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 598, 598–99 (9th Cir. 2020) (cited at Opp. 5) (holding that the plaintiffs had alleged a concrete injury where Facebook “continued to collect [the plaintiffs’] data after they had logged off the social media platform” to create detailed user “profile[s] without users’ consent”); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865 (N.D. Cal. 2025) (finding that the plaintiffs established a concrete injury where the defendant continued to track users’ information despite users expressly opting out).

Plaintiffs’ data storage theory also requires that the intrusion involves *sensitive* data to suggest any harm. But the record does not provide evidence to draw that conclusion. Plaintiffs simply state what products their school districts license for use somewhere within the district, *see* Opp. 11, but that says nothing about these Plaintiffs’ particular data or how that data was allegedly misused.

Plaintiffs also repeat their conclusively refuted assertion that the DPIAs show that PowerSchool products uniformly collect a baseline set of data about each student. *See id.* 15-16. A mountain of undisputed evidence shows that PowerSchool collects no such baseline data. *See* MSJ 8–9. In fact, the very documents Plaintiffs rely on, *see* Opp. 6 n.16, refute their argument. For example, the DPIAs Plaintiffs cite expressly state that school “[d]istricts have vastly different data collection requirements that are required by an education authority,” and “a customer can decide what fields are required or not for both core and extended data.” 197-1 Ex. 2 at 12-13. The other product DPIAs state the same. *See, e.g.*, Connected Intelligence DPIA (Dkt. 139-18, PWRSCHL_00644386 at 5)

("Connected Intelligence replicates PowerSchool and Non-PowerSchool data sources and has no stand-alone data requirements."); Schoology DPIA (Dkt. 139-20, PWRSCHL_00644375 at 5) ("The product offers customers the flexibility to customize and determine the specific data elements they need to collect based on their requirements"); Analytics & Insights DPIA (Dkt. 117-1 Ex. 19, PWRSCHL_00644311 at 5) ("Data sources originate from School/District staff entering or importing data from other integrated systems as authorized by the School/District.").

Other documents Plaintiffs cite also undermine their argument. Plaintiffs rely heavily on a notice from the Concepción's' school district that their data was "taken as part of the" cyberattack PowerSchool suffered in 2024, believing this proves their sensitive data was taken. *Id.* But this generic district-wide email said a cyberattack occurred and some unspecified data across the district "*may* have been compromised." *See* Dkt. 220-1, Ex. 1 (emphasis added). In fact, the notice also says: "[I]t's important to note that the District does not input social security numbers into PowerSchool; thus, this highly sensitive information is not part of this breach." *Id.* This document directly contradicts Plaintiffs' argument elsewhere in their brief that PowerSchool collects baseline data for every student, "including social security numbers," Opp. 2. S.G. similarly points to a spreadsheet that Plaintiffs claim contains "data columns for sensitive personal information such as . . . social security number." *Id.* 7. The document does have a "data column" called "SSN," *but it is blank*. *See* Dkt. 197-1, Ex. 58. The columns for citizenship and grade point average are similarly blank. *Id.*

Finally, for the limited data that is actually in the record, Plaintiffs fail to explain how it connects to their harm theories. Plaintiffs claim their harm is not about a few points of sensitive data but stems from the fact that PowerSchool has a "complete dossier" of information, including social security numbers, medication, and health treatment, about every student. Opp. 8. There is no evidence that is true. In fact, the evidence, as just explained, is that Plaintiffs' social security numbers, as well as their medication and health treatment information, are not in the record.

Without any specific evidence linked to their theory of harm, Plaintiffs cannot ask the Court to make the unsupported leap that PowerSchool must have a "complete dossier" of sensitive data and therefore they must be harmed.

*2. Data sharing*

Next, Plaintiffs try to analogize to the Restatement examples by arguing that "PowerSchool disclosed student data to at least 213 third parties." Opp. 10. This supposed harm is not concrete, particularized, or actual or imminent.

There is no evidence that the Plaintiffs' data was ever shared with any of these authorized third parties. There is also no evidence in the record generally about what data—from any student—was shared with these partners. Each school has different vendors and makes different choices about what data it needs to (or does not need to) share with those other vendors through PowerSchool products. *See* Dkt. 197-1, Ex. 13 at 16-26. PowerSchool's interrogatory response says nothing more than some data was shared with each of the listed partners at the direction of some school at some point in time. *Id.* And again, *schools* share data (if they choose) with their selected vendors through PowerSchool's products; PowerSchool does not direct any sharing with anyone. *Id.* Thus, the data sharing is not attributable to PowerSchool, it is not a harm like those traditionally actionable at common law involving an unexpected intruder, and, in any event, Plaintiffs cannot demonstrate their data was ever actually shared with anyone.

*3. Analytics*

Finally, Plaintiffs argue that PowerSchool used student data "to power untested prediction products that generate 'insights' about children's behavior, performance, and life outcomes." Opp. 10. But this harm, too, is not concrete or particularized. PowerSchool generates no insights, and it does not "use" student data to create products, including any "prediction product." Rather, the undisputed evidence is that PowerSchool does *not* use its customer data to develop or improve products. MSJ 12-13. This is not a traditional harm: Simply providing a platform that schools can use to analyze data that students provided to their schools is nothing like an intruder looking through a safe.

Further, Plaintiffs never argue that their data (or any specific data) was used in an analytics product, because there is no evidence to support that argument. The Concepción's' district only licensed analytics products for one year, and there is no indication the Concepción's' data was ever

analyzed in any way.[3] There is likewise no evidence that S.G.'s data was ever analyzed. Plaintiffs are thus left asserting harms that they cannot demonstrate happened to them personally—the opposite of alleging a particularized injury. *Spokeo*, 578 U.S. at 339 (explaining that a particularized injury is one that "affect[s]" a plaintiff "in a personal and individual way.") (quoting *Lujan*, 504 U.S. at 560). This is insufficient.

* * *

All in all, Plaintiffs cannot show "any harm to [their] privacy" based on PowerSchool's ordinary data processing at the express direction of schools for educational purposes. *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025). Because Plaintiffs have failed to demonstrate any actual injury to themselves, their claims for damages fail. *Spokeo,* 578 U.S. at 338. And because Plaintiffs' request for prospective relief is based on the same unproven theories, Plaintiffs' claims for injunctive relief fail too.[4]

**III. Plaintiffs' purported injuries are not traceable to PowerSchool.**

Even if Plaintiffs have an injury (they do not), they cannot, as a matter of law, establish that their injury is traceable to PowerSchool. Plaintiffs' Opposition asserts both that "PowerSchool is the direct actor" causing their purported harm, and that "PowerSchool is a direct and necessary *component* in th[e] causal chain." Opp. 13 (emphasis added). Both arguments are insufficient to satisfy standing's traceability requirement.

First, PowerSchool is not the direct actor. As detailed above, Plaintiffs offer zero evidence demonstrating that PowerSchool ever unilaterally acts outside the schools' direction. Schools collect data, share data, and use data, entirely at their discretion. Plaintiffs attempt to create a fact issue on this point by boldly asserting that PowerSchool "[does not] operat[e] solely at the direction of the school districts," but they provide no citation or evidence to support this statement. *Id.* The unrefuted

---

[3] *See* WCCUSD Board of Education Regular Meeting, June 23, 2021, Agenda Item C.16, (Dkt. 138-47, Ex. 60); Dkt. 202-17 Ex. 35, PWRSCHL_00008714.

[4] Plaintiffs fail to demonstrate any risk—much less substantial risk—that they will be harmed by PowerSchool in the future. *See Murthy*, 603 U.S. at 69. Plaintiffs' only argument is that their school districts "continue[] to license" PowerSchool products and that "PowerSchool continues to host and process their data without effective parental consent." Opp. 12. But, as explained above, Plaintiffs have no past harm to point to and thus they cannot use the same arguments to show future harm.

evidence overwhelmingly demonstrates the reverse: Schools direct everything PowerSchool does. *See* MSJ 12–15. Since all relevant decisions are made by schools, PowerSchool cannot be the direct actor liable for the purported harm.

With respect to the predictions products, Plaintiffs argue that PowerSchool is the "direct actor" because it "designs and supplies the baseline predictive algorithms in its prediction products." Opp. 13-14. But Plaintiffs' own algorithm expert testified that predictive algorithms require two ingredients: "historical data and a definition of success." MSJ Ex. 44, O'Neil Dep. at 29:23-30:13, 31:4–11. The undisputed evidence is that schools supply both of those ingredients. MSJ 21–22. The schools choose which data and configure the algorithms to achieve their own goals. *Id.* Thus, the schools, not PowerSchool, are the "direct actor" with the prediction products.

Plaintiffs' alternative argument that PowerSchool is a direct and necessary component in the casual chain fails as well. PowerSchool's connection is too tenuous to establish traceability. Plaintiffs are correct that causation "can be established even if there are multiple links in the chain, as long as the chain is not hypothetical or tenuous." *Juliana v. United States*, 947 F.3d 1159, 1169 (9th Cir. 2020) (citation modified); Opp. 13. But "in cases where a chain of causation involves numerous third parties whose independent decisions collectively have a *significant effect* on plaintiffs' injuries, . . . the causal chain is too weak to support standing." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citation modified). Here, it is the schools that exclusively choose what products to use, what data to collect in those products, and how to use those products. MSJ 4–5. In fact, it is schools, not PowerSchool, that perform *each* of the actions that Plaintiffs claim constitutes "harm:" "taking, warehousing, and sharing of student data" and using data "to power untested prediction products." Opp. 1. It is therefore undisputed that schools "have a significant effect" on Plaintiffs' purported injuries stemming from the use of PowerSchool products. *Maya*, 658 F.3d at 1070. Plaintiffs' alleged injuries are simply not sufficiently traceable to PowerSchool.

**IV. Plaintiffs' claims are not redressable.**

Plaintiffs' only arguments on redressability that are not already addressed above are that PowerSchool can offer redress because (1) PowerSchool did not secure parent consent; and (2) "PowerSchool sold untested predictions products to schools." Opp. 14. The first point is foreclosed by

federal and state law, which permit schools to contract with PowerSchool "without express parental consent." MSJ 5–7. The second point only confirms that any supposed injury is not to Plaintiffs. Whether PowerSchool sold "untested" products *to schools* is disconnected from Plaintiffs, especially since there is no evidence their data was put into an analytic product, much less that they were harmed in any way from a lack of testing. Thus, any relief requested on this point would not redress Plaintiffs' purported injuries. Nonetheless, there is nothing in the record that suggests PowerSchool somehow deceived schools when selling the analytics products. PowerSchool never marketed these products as being "tested" for things like racial bias. Nor could PowerSchool even conduct this testing, as schools are the ones who provide the data and set the thresholds for analytics products. *Id.* 4–5. Plaintiffs' own algorithm expert stated that testing would require thousands of data points *from schools*. O'Neil Rep. 29–30, Dkt. 142-2. As such, Plaintiffs have no claim against PowerSchool.

### V. Because the named Plaintiffs lack standing, the putative damages classes also lack standing.

Plaintiffs argue that "Article III's requirements are satisfied before a class is certified as long as at least one named plaintiff has standing." *Healy v. Milliman, Inc.*, 164 F.4th 701, 706 (9th Cir. 2026). But the standard at summary judgment, which is the procedural posture of this case, is different. At summary judgment, Plaintiffs must demonstrate not only their own standing but also that unnamed class members seeking damages have standing. *Id.*

To meet this burden, Plaintiffs lean again on their argument that the DPIAs show that PowerSchool collects baseline data. But for the reasons already stated, this argument fails. The data schools collect to input into PowerSchool products varies entirely by school (and even student). MSJ 8–9; 11–12. Thus, without any evidence concerning the specific data in PowerSchool products for the unnamed class members, Plaintiffs cannot show harm based on the use of that unknown data. Neither Plaintiffs nor the absent class members have standing.

## CONCLUSION

For all these reasons, the Court should dismiss Plaintiffs' and the proposed damages classes' claims for lack of standing.

DATED: November 17, 2026

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Olivia Adendorff*

Olivia Adendorff, P.C.

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Amelia Bailey (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Cristina Martinez Squiers (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
cristina.squiers@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*