Robyn E. Bladow
Kirkland & Ellis LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Amelia H. Bailey (*pro hac vice*)
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Cristina Martinez Squiers (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
Kirkland & Ellis LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
cristina.squiers@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | | |
|---|---|---|
| EMILY CHERKIN, et al | ) | CASE NO. 3:24-CV-02706-JD |
| | ) | |
| Plaintiffs, | ) | **DEFENDANT POWERSCHOOL HOLDINGS, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS OF DR. K. SUZANNE BARBER** |
| v. | ) | |
| POWERSCHOOL HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | Judge: Hon. James Donato<br>Hearing Date: January 14, 2027<br>Time: 11:00 a.m.<br>Courtroom: 11, 19th Floor |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Dr. Barber Employed No Reliable Methodology to Conclude Data Held by PowerSchool Is "Sensitive." .......... 2

B. Dr. Barber's Opinion that Data Held by PowerSchool Is Under "Constant Attack" and at Risk of Exposure Is Impermissibly Speculative. .......... 3

C. Dr. Barber's Opinion that PowerSchool Exposes Students to Risk of Harm Is Based on Unreliable Methodology and Irrelevant Evidence. .......... 5

1. Dr. Barber Parrots Inadmissible Hearsay. .......... 5

2. Dr. Barber's Use of the UTCID Database Is Not Reliable. .......... 6

3. Plaintiffs Cannot Show Dr. Barber's Conclusions Drawn from the UTCID Database Fit the Facts of this Case. .......... 8

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*,
2014 WL 1494026 (W.D. Wash. Apr. 16, 2014)....................4

*Babakhanlou v. L.A. Cnty.*,
2026 WL 637321 (C.D. Cal. Jan. 28, 2026)....................3

*Bakst v. Cmty. Mem'l Health Sys., Inc.*,
2011 WL 13214315 (C.D. Cal. Mar. 7, 2011)....................8

*Benefit Cosms. LLC v. e.l.f. Cosms., Inc.*,
2024 WL 3558848 (N.D. Cal. July 25, 2024)....................6

*Dep't of Toxic Substances Control v. Technichem, Inc.*,
2016 WL 1029463 (N.D. Cal. Mar. 15, 2016)....................5

*Domingo ex rel. Domingo v. T.K.*,
289 F.3d 600 (9th Cir. 2002)....................7, 9

*DZ Rsrv. v. Meta Platforms, Inc.*,
2022 WL 912890 (N.D. Cal. Mar. 29, 2022) (Donato, J.)*, vacated in part on other grounds*, 96 F.4th 1223 (9th Cir. 2024)....................4

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....................2, 8

*Grodzitsky v. Am. Honda Motor Co.*,
957 F.3d 979 (9th Cir. 2020)....................2

*Hernandez v. Hillsides, Inc.*,
211 P. 3d 1063 (Cal. 2009)....................9

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018)....................4

*Koger v. Costco Wholesale Corp.*,
2023 WL 8188842 (N.D. Cal. Nov. 27, 2023) (J. Donato)....................6

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)....................7

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014)....................5

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108 (S.D. Cal. 2022) .......... 2, 4

*S.F. Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085 (N.D. Cal. 2022) .......... 3

*San Diego Comic Convention v. Dan Farr Prods.*, 2017 WL 4227000 (S.D. Cal. Sep. 22, 2017) .......... 3

*Siqueiros v. Gen. Motors LLC*, 2022 WL 74182 (N.D. Cal. Jan. 7, 2022) .......... 2, 6

*USI Ins. Servs. LLC v. Alliant Ins. Servs. Inc.*, 2025 WL 1767988 (D. Ariz. June 26, 2025) .......... 2

**Rules**

Fed. R. Evid. 702 .......... 2, 6, 8

## I. INTRODUCTION

Plaintiffs' Opposition, Opp. Dkt. 229-2, confirms Dr. Barber should be excluded because she failed to employ any reliable methodology and cannot offer testimony that would help a trier of fact assess the evidence in this case. Although Plaintiffs try to claim otherwise, both sides actually agree that Dr. Barber does not opine on harm to putative class members based on the alleged conduct in this case. *See, e.g.*, Mot. 1, 9, Dkt. 204; Opp. 2. Plaintiffs offer her only to opine on the ***risk*** of potential harm ***if*** data is stolen ***by a malicious third party*** and subsequently misused. Her opinion rests on third-party reports of identity theft and data fraud cases compiled by others into the UTCID database, 90% of which involved only adult data. Dr. Barber admits she has ***no*** knowledge of any PowerSchool-specific risk and ***no*** evidence of any harm to the putative class members. Plaintiffs nonetheless claim her testimony will aid a jury in determining whether ***PowerSchool's*** conduct in processing or storing putative class member data provided to it by schools was offensive or unjust. Opp. 2. In other words, Plaintiffs assert that hearsay evidence regarding data stolen and money lost in criminal identity theft cases should be introduced through an expert witness at a trial about PowerSchool's ordinary course storing and processing of student data on behalf of schools.

Plaintiffs' position cannot be reconciled with the facts of this case. Potential harms that might occur in the future to any individual with electronic data stored with any third party based on the conduct of criminal actors simply do not shed light on whether PowerSchool's alleged actions in this case are offensive or unjust. Rather than providing any help, Dr. Barber's testimony will confuse and prejudice the jury. It should be excluded in full for the following reasons.

***First***, with respect to her most basic opinion, Dr. Barber cannot opine that PowerSchool products "control and process highly sensitive [PII]." Mot. Ex. A ¶ 3, Dkt. 204-2 ("Barber Rep."). Dr. Barber admitted that she does not know what data elements PowerSchool holds for putative class members, and she used no methodology to categorize data elements as "sensitive" beyond her own say-so. ***Second***, Dr. Barber cannot reliably opine that data stored and processed by PowerSchool "is under constant attack by a variety of threats," *id.*, because it is nothing more than speculation. ***Third***, Dr. Barber's opinion that PowerSchool exposes class members to risk of harm is inadmissible. Dr. Barber rests this opinion on the

description of third-party data breaches in the UTCID database, but Dr. Barber does not (i) do anything more than parrot the hearsay database's contents, (ii) employ any reliable or testable methodology, or (iii) justify her extrapolation from a database of almost exclusively adult identity theft cases to the facts here. For all of these reasons, PowerSchool's Motion to Exclude Dr. Barber should be granted in full.

## II. ARGUMENT

### A. Dr. Barber Employed No Reliable Methodology to Conclude Data Held by PowerSchool Is "Sensitive."

Dr. Barber's first opinion—that "PowerSchool products control and process highly sensitive [PII]," (Barber Rep. ¶ 3)—is inadmissible because she applied no reliable methodology to reach it. At the outset, Plaintiffs do not deny that Dr. Barber does not know what data elements PowerSchool actually possesses for any putative class-members. They likewise concede that Dr. Barber did nothing more than regurgitate record evidence to conclude what data PowerSchool may possess. Opp. 5 ("[Dr. Barber] obtained the data elements collected and processed by PowerSchool ***directly*** from several 'Data Privacy Impact Assessments' ('DPIA Reports')." *Id.* (emphasis added). Her opinion should be excluded for this reason alone. *Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *8 (N.D. Cal. Jan. 7, 2022); *see also Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986 (9th Cir. 2020).[1]

In addition, Dr. Barber's first opinion should be excluded because "sensitive data" is defined by nothing more than her say-so. *Siqueiros*, 2022 WL 74182, at *14. Plaintiffs' Opposition asserts Dr. Barber developed her own definition of "sensitive data" based on "her extensive experience" in the cybersecurity space. Opp. 7. But invoking experience, without more, is not enough. *See* Fed. R. Evid. 702 advisory committee's note (2000); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (explaining that expert opinions cannot be "connected to existing data only by the *ipse dixit* of the expert"); *USI Ins. Servs. LLC*

---

[1] Plaintiffs asserted in their Motion for Class Certification that Dr. Barber established that PowerSchool products "automatically" collect "minimum" data elements. Dkt 196-3 at 13, n.79, 18, n.95. PowerSchool moved to preclude Dr. Barber from offering that opinion at trial. Indeed, Dr. Barber disclaimed that opinion during her deposition. Mot. Ex. B 103:12-104:5, 142:20-143:21, Dkt. 204-3 ("Barber Tr.") ("It's probably not an automatic collection for any of [the products]."). Accordingly, and because Plaintiffs do not address this argument in their response brief, Dr. Barber should be precluded from testifying regarding any "automatic" collection of "minimum data elements" by PowerSchool products. *See, e.g.*, *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1171 (S.D. Cal. 2022).

*v. Alliant Ins. Servs. Inc.*, 2025 WL 1767988, at *3 (D. Ariz. June 26, 2025) (excluding expert's pricing standard because he failed to explain "how [his experience] impacted his analysis to arrive at specific numbers that define the boundaries," making assessment of the standard impossible). Dr. Barber never explained how her definitional standard worked beyond declaring "[t]his data is sensitive" and repeating the same definition. *See* Barber Rep. ¶¶ 34, 37, 40, 44, 47, 50, 53, 58, 64. Nor does she offer evidence that her "sensitive data" standard has any scientific basis or industry recognition. *See, e.g.*, *Babakhanlou v. L.A. Cnty.*, 2026 WL 637321, at *4 (C.D. Cal. Jan. 28, 2026) (excluding expert's testimony that made no reference to "the reliable data or methodology of his field"); *San Diego Comic Convention v. Dan Farr Prods.*, 2017 WL 4227000, at *6-7 (S.D. Cal. Sep. 22, 2017) (excluding linguist expert's testimony that phrase was "generic," in part, because he failed to explain his methodology, "why he chose to employ the factors he did," or whether his "tests and principles" were widely used "to determine genericness").

Plaintiffs' insistence that Dr. Barber's methodology is "the opposite of circular" is unavailing. Opp. 7. They say the UTCID database is "not a substitute" for Dr. Barber's definition of "sensitive data." *Id.* But they also assert that Dr. Barber "determine[d] that [the data elements collected by PowerSchool] are sensitive based on her application of the elements to the published UTCID model." *Id.* at 8; *see also* Ex. C, Barber Tr. 191:5-7 ("[T]his data is sensitive based on our [UTCID model] empirical findings"). If the UTCID database drives her sensitivity analysis, it inherits all of the database's flaws as "arbitrary," "untestable," and an "impermissible black box." Mot. 7. If not, her "sensitivity" conclusions rest on nothing but her say-so. Either way, the opinion is inadmissible.

### B. Dr. Barber's Opinion that Data Held by PowerSchool Is Under "Constant Attack" and at Risk of Exposure Is Impermissibly Speculative.

Dr. Barber's next opinion is that data "controlled and processed by PowerSchool products is under constant attack by a variety of threats" and "[t]here are numerous possible causes for exposure of the PII controlled and processed by PowerSchool products." Barber Rep. ¶ 3. This opinion is nothing more than generalized speculation. Dr. Barber did not review any evidence regarding PowerSchool's systems, security controls, or conduct. Mot. 8. She identifies no threats to, or attacks on, PowerSchool beyond the 2024 data breach, let alone evidence sufficient to establish any attacks or threats are "numerous" and "constant." *See S.F. Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085, 1093–94 (N.D. Cal. 2022)

(holding expert testimony "not supported by sufficient facts" inadmissible). Indeed, Dr. Barber disclaimed her "risk of exposure" opinion at her deposition: "I don't know what their risk of exposure is." Barber Tr. at 277:15-278:8. This warrants exclusion. *See, e.g.*, *Persian Gulf Inc.*, 632 F. Supp. 3d at 1171 (collecting cases); *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 2014 WL 1494026, at *8 (W.D. Wash. Apr. 16, 2014) (excluding expert's testimony because of his "repudiation of any investigation into . . . or opinion on the issue").

Plaintiffs assert that Dr. Barber's "risk of exposure" opinion "rests on facts in this record," specifically PowerSchool's DPIAs, its "sharing of student data with third parties," and the 2024 data breach. Opp. 9. None of this evidence supports the opinion or otherwise renders it admissible. ***First***, Dr. Barber does not cite any DPIA in support of her "risk of exposure" opinion. Barber Rep. ¶ 65-71. In any event, knowing which data elements PowerSchool products may store says nothing about the risk that putative class-member data is exposed to third party bad actors. ***Second***, Dr. Barber never explains why PowerSchool's sharing of certain student information with third parties at its customers' direction evidences an increased risk of unauthorized disclosure, let alone "constant attacks" or threats on data held by PowerSchool. Critically, PowerSchool's practice of sharing student data at the direction of schools is untethered to Dr. Barber's risk-of-harm opinions, which concern only identity theft, not approved disclosure to third parties generally. *See infra*. ***Third***, as to the 2024 data breach, Dr. Barber does not explain why the existence of one prior breach necessarily means attempts at additional breaches are taking place "constantly." And even in its most basic form—*i.e.*, that a prior breach means there is risk of additional breaches—Dr. Barber's assumption is inadmissible because it involves no expert analysis and requires no expert testimony. *See, e.g.*, *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 992 (N.D. Cal. 2018) (expert testimony should be excluded "where the jury is in as good a position as the expert to draw conclusions from the evidence, and is capable of drawing its own inferences") (cleaned up); *DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022) (Donato, J.), *vacated in part on other grounds*, 96 F.4th 1223 (9th Cir. 2024) (excluding expert whose reliance materials were "reasonably intelligible to a jury without special assistance"). Moreover, Dr. Barber admitted she is

not aware of ***any*** harm that occurred to students as a result of the 2024 data breach or PowerSchool's conduct more generally. Ex. C, Barber Tr. 211:6-212:10.

Dr. Barber's "risk of exposure" opinion is thus "unsupported," "speculative," and "inherently unreliable." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014). It should be excluded. *See id.*; *Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) (excluding testimony as "speculative" where expert's investigation was "cursory and unscientific").[2]

### C. Dr. Barber's Opinion that PowerSchool Exposes Students to Risk of Harm Is Based on Unreliable Methodology and Irrelevant Evidence.

Dr. Barber's opinion that PowerSchool exposes class members "to the risk of diverse, longstanding, and significant harm" rests on the UTCID database. Barber Rep. ¶ 3. This "risk of harm" opinion is inadmissible for three reasons.

1. *Dr. Barber Parrots Inadmissible Hearsay.*

Plaintiffs assert that Dr. Barber's "risk of harm" opinion is based on her "analysis" of two things (1) PowerSchool's DPIAs, and (2) the UTCID database. Opp. 11. But Dr. Barber applied no methodology and performed no analysis of either source; she merely repeated their contents in her report.

As Plaintiffs concede, Dr. Barber performed no analysis of the DPIAs: "she obtained the data elements collected and processed by PowerSchool ***directly*** from several [DPIAs]." *Id.* at 5 (emphasis added). The same is true of the UTCID database. Dr. Barber had her research assistant search the database for the DPIA data elements and pull the metrics in her report— risk of exposure, vulnerability, influence, and monetization value—directly from there. Ex. C, Barber Tr. 50:2-54:21. The only "analysis" Dr. Barber described is "ranking" the values for two of her metrics, vulnerability and influence. *Id.* at 50:2-51:5 ("Monetization value and risk of exposure were based on just querying the CID database, and then I

[2] Plaintiffs assert these cases are distinguishable because they "involved opinions built on assumptions with no support in the record." Opp. 9. Not so. These cases excluded experts who relied on record evidence that the courts found insufficient to render the proffered opinions admissible. *See Ollier*, 768 F.3d at 861 (excluding expert opinions based on visual inspections and site visits because those inspections were too "superficial"); *Dep't of Toxic Substances Control*, 2016 WL 1029463, at *1 (excluding expert who did "not analyze his source materials so much as repeat their contents" (citation omitted)). Regardless, Dr. Barber's opinion that PowerSchool faces "constant" attacks from "various" threats ***is*** entirely unsupported in the record.

took the raw values of vulnerability and influence . . . and then I created a ranking of them, which I thought would be a more intuitive way of reporting it."). Her use of the UTCID database is thus plainly ***not*** a "statistical analysis." Opp. 13-14. As Dr. Barber stated, her assignment was "just reporting on what [she] found in those [UTCID] cases [she] looked at." Barber Tr. 217:4-220:2. But reporting of out-of-court statements "without applying any methodology is not appropriate under Rule 702." *Siqueiros*, 2022 WL 74182, at *10.

Plaintiffs respond that Dr. Barber does not offer the UTCID database for the truth of the matter asserted. Opp. 13. Dr. Barber's own testimony contradicts this. She described her work in this case as "looking at cases that we had already looked at" and explaining how data "has been used" in those cases, including "the inherent value" of that data, "the range of those values," and "the range of the harms" that occurred. Barber Tr. 217:4-218:13. In other words, Dr. Barber intends to testify that the 5,000 identify theft cases reflected in the UTCID database did occur, involved certain data elements, and involved certain monetary losses. This is quintessential hearsay offered for the truth of the matter asserted. It requires exclusion. *See, e.g.*, *Koger v. Costco Wholesale Corp.*, 2023 WL 8188842, at *2 (N.D. Cal. Nov. 27, 2023) (J. Donato) ("Experts are not permitted to repackage inadmissible hearsay as expert testimony.").

2. *Dr. Barber's Use of the UTCID Database Is Not Reliable.*

Plaintiffs do not deny that the UTCID database, as used by Dr. Barber, produces absurd, and thus unreliable, results. They claim, however, that Dr. Barber's "risk of harm" opinion is admissible because any irrational results were caused by "how [data] elements were recorded in the underlying cases," not Dr. Barber, and can be "addressed" on cross examination. Opp. 12. Not so. Dr. Barber cannot "address" the unsound results of her own report because she does not know what lies behind the empirical data she pulled verbatim from the database. Ex. C, Barber Tr. at 50:2-51:5. Courts regularly exclude experts, like Dr. Barber, who fail to "interrogate" the data they rely on "for accuracy." *Benefit Cosms. LLC v. e.l.f. Cosms., Inc.*, 2024 WL 3558848, at *6 (N.D. Cal. July 25, 2024) (excluding expert opinion because expert pulled empirical data from third-party sources that "she did not interrogate for accuracy"); *see also Koger*, 2023 WL 8188842, at *2 (excluding expert's recitation of reports absent interrogation of underlying data or methodologies).

Plaintiffs try to sidestep this fundamental problem by minimizing Dr. Barber's conclusions regarding the UTCID database. They assert Dr. Barber is not assigning "purported market values" to any data element but instead "showing how some data elements are more valuable to actors in identity theft and fraud cases than others." Opp. 12. This does not save Dr. Barber's testimony. Dr. Barber assigned a "monetization value" for each data element, which she described as the "financial loss" associated with that data element. Barber Rep. ¶ 92. PowerSchool's cases—which Plaintiffs do not distinguish—make clear that such confusing expert testimony, which invites the jury to give undue weight to apparently illustrative numbers, is inadmissible. *See* Mot. 11. Nor do Plaintiffs explain how Dr. Barber can accurately compare the value of any data elements when her valuation results are nonsensical in the first place. For example, to compare the "monetization value" of email and address, Dr. Barber could compare "email address" ($60,377,857) with "address" ($91,087,415), concluding that address is significantly more valuable than email address. Barber Rep. App. A, at 39, 40. She could also compare "email address" ($60,377,857) with "mail address" ($60,379,377), concluding address is only slightly more "valuable." *Id.* at 39. Or she could compare "email address" ($60,377,857) with "physical address" ($382,861), concluding email is significantly more valuable. *Id.* at 39, 41. Finally, Dr. Barber could even compare "email" ($4,179) with any of the proxies for address described above, concluding that email is virtually worthless. *Id.* at 41. Dr. Barber never explains how she would choose which comparison to undertake, let alone how to reconcile their disparate results. Nor could she, since Plaintiffs exclusively blame the underlying data in the UTCID database for these incomprehensible results, of which Dr. Barber has disclaimed all knowledge.

Accordingly—and even accepting Plaintiffs' assertion that Dr. Barber seeks only to "show that some data elements held by PowerSchool are more valuable than others," Opp. 12—her "methodology" of pulling empirical values directly from the UTCID database does not provide a "reliable foundation" for her testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *see also Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002).

3. *Plaintiffs Cannot Show Dr. Barber's Conclusions Drawn from the UTCID Database Fit the Facts of this Case.*

Plaintiffs offer no persuasive justification for Dr. Barber's use of the UTCID database to determine "the value and risk associated with the data elements collected and stored by PowerSchool." Opp. 11. Nor could they. Dr. Barber did not determine what data PowerSchool possesses, does not know PowerSchool's "risk of exposure," and failed to explain why the UTCID database of criminal identity theft cases is an appropriate proxy for this case. There is thus "simply far too great an analytical gap between the data and opinion proffered." *Gen. Elec. Co.*, 522 U.S. at 146.

Plaintiffs make several assertions to argue that, in spite of this unresolved analytical gap, Dr. Barber's testimony is relevant. None can save her opinion.

***First***, Plaintiffs encourage the Court to ignore the disconnect between the facts of this case and the UTCID database because "a data element's capacity to cause harm does not depend on whether it was taken from a school or a corporation." Opp. 11. Whether or not this unsupported assertion is true, Dr. Barber certainly cannot say. Her results come from a database almost entirely limited to cases of adult data misappropriated from non-educational entities. Barber Tr. 308:3-309:18. She has no basis to say whether the empirical data in her report would change if limited to relevant underlying cases, *i.e.*, student data misappropriated from schools, because she simply never considered the question. The same is true of Dr. Barber's qualitative conclusions. Beyond the UTCID database, Dr. Barber cites only one source for her conclusions that exposed data can cause "reputational harm," "emotional distress," and other "longitudinal harm,"—a report from the Identity Theft Resource Center. Barber Rep. ¶¶ 72-78; *see also* Opp. 11. But this report was limited to ***adult*** victims of identity theft. Ex. D, ITRC 2025 Report at 5 (showing 0% of respondents were under the age of 18). Dr. Barber never addresses this mismatch or the obvious disconnect between the alleged misconduct in this case (hosting and processing data on behalf of schools without consent) and the conduct reflected in her reliance materials (identity theft). Without bridging these gaps, her testimony is inadmissible. *See Gen. Elec. Co.*, 522 U.S. at 146; *Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214315, at *20 (C.D. Cal. Mar. 7, 2011) ("Experts who render an opinion about a plaintiff's future . . . harm based on . . . assumptions not present in the plaintiff's case" do not meet Rule 702's requirements) (cleaned up).

***Second***, Plaintiffs half-heartedly argue Dr. Barber "explained how she extrapolated from the UTCID data to the data elements at issue here." Opp. 11 (citing Barber Tr. 377:12-379:14). The cited testimony shows no such thing. It instead reflects Dr. Barber's assertion that she is ***not*** opining on any specific value of data held by PowerSchool, only that PowerSchool holds data with "a non-0 value." Barber Tr. 377:12-379:1. This, of course, contradicts Plaintiffs' description of Dr. Barber's testimony as shedding light on the relative value of data elements. *See* Opp. 11. But whether Dr. Barber opines that data in PowerSchool's systems has a specific, quantifiable value or some unknown, non-zero value, she cannot support either opinion because she failed to "set forth the steps used to reach the conclusion that the [UTCID database] is applicable" in this case. *Domingo ex. Rel. Domingo*, 289 F.3d at 606.

***Third***, Plaintiffs argue Dr. Barber should be permitted to opine generally that "data has 'a non-zero value' in the hands of bad actors" because it "helps the jury assess how serious [PowerSchool's] intrusion is." Opp. 14. Plaintiffs' argument is nonsensical. As stated *supra*, the alleged intrusion in this case—that PowerSchool stored and processed student data on behalf of schools without parental consent—is entirely untethered from the "patterns" of harm in the identify theft cases Dr. Barber purportedly identified from the UTCID database. Barber Tr. 217:4-12. As the Ninth Circuit explained in *In re Facebook, Inc. Internet Tracking Litigation*—which Plaintiffs repeatedly cite, *see, e.g.*, Opp. 3, 4, 14—the analysis of "the likelihood of serious harm to the victim," along with other factors within the "highly offensive" analysis, "involves a policy determination as to whether the ***alleged intrusion*** is highly offensive ***under the particular circumstances***." 956 F.3d 589, 606 (9th Cir. 2020) (emphasis added) (quoting *Hernandez v. Hillsides, Inc.*, 211 P. 3d 1063, 1073 (Cal. 2009)). Dr. Barber says nothing about the alleged intrusion (*i.e.*, storing and processing class-member data without parental consent) or particular circumstances (*i.e.*, acting as a technology vendor for schools who control class-member data) in this case. Nor could she; she knows nothing about PowerSchool's conduct, the putative class-member data it holds, or how it stores and processes that data. Plaintiffs fail to cite even a single case where evidence of criminal identity theft or data fraud was introduced through expert testimony in analogous circumstances. In short, a generalized opinion that PII has a "non-zero" value when misappropriated by criminal actors will confuse and prejudice—not help—the jury.

## III. CONCLUSION

For these reasons, the Court should grant PowerSchool's Motion in full and exclude all opinions offered by Dr. Barber.

DATED: November 17, 2026

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Olivia Adendorff*
Olivia Adendorff, P.C.

Robyn E. Bladow
Kirkland & Ellis LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Martin L. Roth, P.C. (*pro hac vice*)
Alyssa C. Kalisky, P.C. (*pro hac vice*)
Amelia H. Bailey (*pro hac vice*)
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
martin.roth@kirkland.com
alyssa.kalisky@kirkland.com
amelia.bailey@kirkland.com

Olivia Adendorff, P.C. (*pro hac vice*)
Cristina Martinez Squiers (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
Kirkland & Ellis LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
olivia.adendorff@kirkland.com
cristina.squiers@kirkland.com
eugene.temchenko@kirkland.com

*Attorneys for Defendant PowerSchool Holdings, Inc.*